**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**The Rottlund Company, Inc. d/b/a/ Rottlund Homes, a Minnesota Corporation**

**Plaintiff,**

**v.**

**Pinnacle Corporation d/b/a/ Town & Country Homes, an Illinois Corporation**

**Defendant.**

**Civil No. 01-1980 (DSD/SRN)**

**REPORT AND RECOMMENDATION**

---

David A. Davenport, Esq., on behalf of Plaintiff.

Cynthia A. Moyer, Esq. and Dean R. Karau, Esq., on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on April 22, 2002, on Defendant's Motion to Dismiss (Doc. No. 17). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, this Court recommends that Defendant's Motion to Dismiss be denied.

## I. DEFENDANT'S MOTION TO DISMISS

### A. Background.

#### 1. Procedural History.

Plaintiff is a Minnesota corporation that owns a copyright on an architectural design plan for an eight-unit town home complex. (Affidavit of David A. Davenport (Davenport Aff.), Ex. A

MAY 21 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

at ¶ 10.) The copyright specifically covers a technical drawing entitled Rush Creek Villa II, 8 unit w/no step.[1] Id. On November 1, 2001, Plaintiff served the Complaint, claiming: (1) copyright infringement; (2) false advertising under the Lanham Act; (3) violation of the Minnesota Uniform Deceptive Trade Practices Act; and (4) unfair competition. Plaintiff alleges that these claims arise from Defendant purchasing land and constructing homes in Maple Grove, Minnesota. On February 15, 2002, Defendant brought its motion to dismiss for lack of personal jurisdiction.

**2. Facts Related to Personal Jurisdiction.**

Defendant is an Illinois corporation headquartered in Lombard, Illinois. (Affidavit of Thomas E. Ryan (T. Ryan Aff.) at ¶ 2.) Defendant does not own, lease, or otherwise possess offices or real estate in Minnesota. Id. at ¶ 3. Defendant has no business address or telephone listing in Minnesota. Id. Defendant also maintains no agent for service of process in Minnesota, and is not registered to do business in Minnesota. Id. Defendant was not awarded the right to construct housing on the Maple Grove property in question. Id. at ¶ 4.

Defendant maintains a website to advertise its products. (Affidavit of David A. Davenport (Davenport Aff.), Ex. G at 1.) On the website, Defendant states that it is "one of the largest and most successful homebuilders in the nation, with divisions in Chicago, Minneapolis and Southeast Florida." Id. at 3, 6, 8, 10, and 11. Defendant states that it is a "family-run company which was founded in 1958." Id. at 3. Defendant also states, "[b]ased in Lombard, Ill., the company closed 1,099 homes in 2000," and "has built more than 30,000 homes since its

---

[1]Plaintiff has recently successfully registered a copyright for the architectural work, and has moved to amend the Complaint to include this copyright. That motion will be addressed in a separate Order.

founding in 1958." Id. at 3 & 7. Defendant's website advertises a "Harvest Hills" community in St. Charles, Illinois, and a "Homestead Collection" community in Aurora, Illinois. Id. at 5-6, 9-10, and 12. The website contains a link to the website for Town & Country Homes, Inc., a Minnesota corporation (TCM). Id. at 1.

TCM was incorporated on March 8, 1993. (Davenport Aff., Ex. J.) TCM displays Defendant's trademark design logo and the trade name Town & Country Homes on its own website, and in printed advertisements appearing in Minnesota. (Davenport Aff., Ex I & Affidavit of Todd M Stutz, Ex. B.) Four of the Minnesota housing developments on the website are listed as "Homestead Collections," with the Plymouth site further listed as "Harvest Hills." (Davenport Aff., Ex. I at 15.) The TCM website refers to Town & Country Homes, stating that it has been in business since 1958. Id at 5. The website also makes the following statements: (1) "[o]ur dazzling, all-new designs are backed by the financial strength and resources of a national builder, and the hometown craftsmanship and service of our dedicated Twin Cities team of professionals,"; (2) "Town & Country is the national builder who deserves to be your local choice. We fully utilize the resources of one of the nation's largest homebuilders to meet and exceed your expectations"; and (3) "[w]ith 42 years' experience planning & building over 100 new communities, you can rely on us for ideal, close-in locations, and communities & homesites that maximize & enhance the natural amenities of the land." Id at 8, 9, 13.

Michael Ryan is TCM's Chief Executive Officer and also Defendant's Chief Executive Officer. (Affidavit of Michael J. Ryan (M. Ryan Aff.) at ¶¶ 1 & 2.) Art Plante is TCM's President. (Affidavit of Todd M. Stutz (Stutz Aff.) at ¶ 3 & Ex. A.) TCM employees' business cards display Defendant's trademark logo and name, and list TCM as a Minnesota Division. Id.

Thomas Bump, a former TCM employee, states that during his employment "members of the Ryan family would fly to Minnesota and make decisions about housing projects in Minnesota." (Affidavit of Thomas J. Bump (Bump Aff.) at ¶ 2.) Bump states further that purchase orders for payment of contractors doing work in Minnesota "had to go through the Illinois headquarters before these contractors could be paid for the work they performed on these Minnesota housing projects." Id at ¶ 3. Copies of one of Bump's earning statements, check stubs, and W-2 earnings summaries each list TCM, but with an address in Illinois.[2] Id. at Ex. A.

Michael Swanson, an employee of Plaintiff, states that in 2000 he was approached by a "head hunter" of behalf of Defendant who asked if he was interested in becoming Vice President of operations for TCM. (Affidavit of Michael A. Swanson (Swanson Aff.) at ¶ 3.) Swanson states that "it was apparent to me that Mr. Ryan would be involved in the final decision over whether I was going to be offered a position of employment with Town & Country Homes' Minnesota division." Id. at ¶ 3. During negotiations, Plante and Michael Ryan interviewed Swanson in Minnesota. Id. at ¶ 4. Defendant eventually offered Swanson the vice president position, but he did not accept it. Id. at ¶¶ 5 & 6. Swanson states that Richard Palmiter, a former employee of Plaintiff and current employee of Defendant, was offered a position with Defendant only after being flown to Illinois for meetings. Id. at ¶ 8.

The purchase agreement for the property in question contains the following provisions: "THIS PURCHASE AGREEMENT (The "**Agreement**") is entered into effective as of the ____ day of December, 1998, by and between the Estate of Hildur Hollander . . . and Town & Country

---

[2]The earnings statement and check stub list an address in Westchester, Illinois, and the W-2 earnings summary lists an address in Oakbrook, Illinois.

Homes, Inc., a Minnesota corporation ("**Purchaser**")." (Davenport Aff., Ex. L at 1.)

The signature block to the agreement lists the purchaser as Town & Country Homes, Inc. Id. at 14. The provision for sending notice lists the following information for the purchaser:

| | |
|---|---|
| Purchaser: | Town & Country Homes<br>c/o Peter Brennan, Esq.<br>4 Westbrook Corporate Center<br>Suite 500<br>Westchester, IL 60154<br>Fax No. (708) 409-9563 |
| With a Copy To: | Town & Country Homes<br>c/o Art Plante<br>11471 Valley View Road<br>Eden Prairie, Minnesota 55344<br>Fax No. (612) 944-3487 |

Id. at 12.

**B. Discussion.**

**1. Legal Standard.**

"To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." Digi-Tel Holdings, Inc. v. Proteq Telecommunications, Ltd., 89 F.3d 519, 521 (8th Cir. 1996). In determining whether a prima facie showing has been made, the Court must view the evidence in the light most favorable to the plaintiff, and resolve all factual disputes in the plaintiff's favor. See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." 3D Systems, Inc. v. Aarotech Laboratories, Inc., 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). Hence, "an assessment of personal jurisdiction involves two inquiries: (1) whether the applicable state long-arm statute, Minnesota Statute §

543.19, is satisfied, and (2) whether this Court's exercise of jurisdiction is consistent with the requisites of due process." Multi-Tech Systems, Inc. v. Vocaltec Communications, Inc., 122 F. Supp.2d 1046, 1049 (D. Minn. 2000) citing 3D Systems 160 F.3d 1373.

"Minnesota has consistently held that its legislature intended the long-arm statute to have the maximum extraterritorial effect allowed under the Fourteenth Amendment." Minnesota Mining & Mfg. Co. v. Nippon Carbide Industries Co., Inc., 63 F.3d 694, 697 (8th Cir. 1995). Therefore, the discussion to follow must focus on whether exercising personal jurisdiction over Defendant comports with federal due process. See id.

> To evaluate the propriety of jurisdiction, "[w]e consider: (1) the nature and quality of the contacts with the forum state, (2) the quantity of the contacts with the forum state, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties."

Bell Paper Box, Inc. v. Trans Western Polymers, 53 F.3d 920, 922 (8th Cir. 1995) quoting Dakota Indus., 946 F.2d at 1390, citing Land-O-Nod Co. v. Basset Furniture Indus., 708 F.2d 1338 (8th Cir. 1983). "The first three factors are of primary importance." Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 819 (8th Cir. 1994). "In determining whether the contacts are sufficient, a court must consider all of a defendant's contacts with the forum in the aggregate and examine the totality of the circumstances." Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc., 943 F. Supp. 1117, 1122 (D. Minn. 1996) citing Northrup King v. Compania Productora Semillas, 51 F.3d 1383, 1387-88 (8th Cir. 1995).

In certain cases, jurisdiction may be proper even when a cause of action is not related to a defendant's contacts with the forum state. See Morris v. Barkbuster, Inc., 923 F.2d 1277, 1281-82 (8th Cir. 1991). "However, a defendant may only be subject to this type of 'general

jurisdiction,' *Helicopteros*, 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9, where the defendant's contacts with the forum are 'continuous and systematic.' *Helicopteros*, 466 U.S. at 416, 418-19, 104 S.Ct. at 1872-73, 1874-75." Id.

**2. Positions of the Parties.**

Defendant states that the Court lacks personal jurisdiction over it. Defendant maintains that personal jurisdiction over it can not exist simply because TCM is referred to as one of its divisions. Further, according to Defendant, Plaintiff can not satisfy any valid legal theory by which to attribute TCM's actions to it.

Defendant asserts that piercing the corporate veil is unjustified in the present case. Defendant explains that under Minnesota law, piercing the corporate veil is only appropriate in extremely rare cases, and Plaintiff has failed to plead facts necessary to take this drastic measure. Cases such as Bielicki v. Empire Stevedoring Co., Ltd., 741 F. Supp. 758, 762 (D. Minn. 1990) enumerate the factors a court must consider when deciding whether to pierce the corporate veil. Defendant explains that "Rottlund has never alleged any facts, much less presented any evidence, regarding the majority of these factors."

Defendant also cites Fletcher v. Atex, Inc., 68 F.3d 1451 (2nd Cir. 1995) in support of this argument. It explains that in Fletcher, the court considered two companies' shared use of a logo in promotional literature, their description of themselves as a "business unit," and the subsidiary's description of itself as a "recent acquisition," "new division," and "unincorporated division." The court concluded that these facts were insufficient to justify piercing the corporate veil. Defendant adds that "Rottlund has no evidence that TCM disregards its corporate structure. Therefore, . . . Rottlund's argument that Pinnacle is in Minnesota because TCM is in Minnesota

must be rejected."

Defendant also argues that it lacks sufficient contacts with Minnesota to subject it to personal jurisdiction. Defendant admits that it operates a website containing a hyperlink to TCM's website, it contends, however, that "those features are insufficient as a matter of law to create personal jurisdiction over Pinnacle in Minnesota." Defendant explains that it and TCM operate separate and distinct websites, each with its own registrant. Defendant notes that courts in cases such as Mink v. AAAA Development LLC, 190 F.3d 333, 336-7 (5th Cir. 1999) have concluded that jurisdiction could not be based on websites over which defendants did not conduct business, even though they were accessible to residents of the forum state, and contained email addresses. Further, Defendant states that Bensusan Restaurant Corp. v. King, 126 F.3d 25, 29 (2nd Cir. 1997) established that a website containing a hyperlilnk to a business in the forum state with the same name did not demonstrate that a defendant could have reasonably expected consequences in the forum state. Defendant concludes from these authorities that "the nature and quality of the commercial activities on Pinnacle's website are insufficient for this Court to obtain personal jurisdiction over Pinnacle."

Defendant explains that TCM, rather than it, purchased the Hollander Estate property in Maple Grove, Minnesota. Defendant emphasizes that the purchase agreement itself lists TCM as the purchaser. Defendant acknowledges that the notice provision does not specifically list Town & Country Homes, Inc., but argues, "that does not change the fact that notice is going to TCM, not Pinnacle. Moreover, TCM requested that notice be sent to Peter Brennan because he is the General Counsel for TCM." In addition, the vesting deeds indicate that TCM, not Defendant, took title to the property. Therefore, that sale can not support the exercise of personal

jurisdiction.

Defendant argues that Plaintiff has simply sued the wrong party, because all of the issues in the present suit concern TCM's activities. Defendant states that Michael Ryan's involvement in this matter "has always been in his capacity as CEO of TCM." Hence, his trips to Minnesota, and the interviews he conducted, were on behalf of TCM not Defendant. Defendant also explains that TCM's payroll was being processed in Illinois because that is where TCM's chief financial officer is located. Further, Defendant states that "[w]here TCM's payroll is processed does not have any bearing on whether Pinnacle is present in Minnesota for purposes of personal jurisdiction." In addition, any contact through the payroll processing predated the current causes of actions, and, therefore, can not be used to support the exercise of personal jurisdiction. Defendant adds that TCM's use of its logo "cannot form the basis for personal jurisdiction over Pinnacle."

Neither the "effects test," nor the stream of commerce theory is applicable in this case, according to Defendant, because it did not build the homes in question. The "effects test" fails because "any Pinnacle conduct outside of Minnesota that may reach Minnesota does not relate to Rottlund's causes of action." The stream of commerce theory fails, because Defendant put no product into the stream of commerce. In addition, Defendant states that the stream of commerce theory is limited to products liability cases.

Defendant concludes that it has no contacts with Minnesota, and therefore, can not satisfy the first two prongs of the personal jurisdiction analysis. Because it has no contacts with Minnesota, the present causes of action can not have arisen from any of its activities. Consequently, the third prong of the analysis is also not satisfied. Defendant then cites Digi-Tel

Holding, Inc. v. Proteq Telecommunications Ltd., 89 F.3d 519, 525 (8th Cir. 1996) for its argument that "[w]hile Minnesota has an interest in providing a forum for its residents, this interest cannot make up for the absence of minimum contacts." Accordingly, Defendant concludes that the exercise of personal jurisdiction is not proper in the present case.

Plaintiff responds that Defendant has purposefully availed itself of the privilege of conducting business in Minnesota, and, therefore, the Court should exert personal jurisdiction over Defendant. Plaintiff argues that Defendant is representing to the public that it is doing business in Minnesota. Plaintiff explains that Defendant's website "promotes the sale of homes in Minnesota by instructing consumers that if they are searching for a home in Minnesota, Town & Country will assist these customers in choosing the Minnesota community that interests them." Plaintiff further emphasizes that Defendant's name and logo appear on advertisements distributed in Minnesota.

TCM's website states that TCM "fully utilize(s) the resources of one of the nation's largest homebuilders." The website also states that it: (1) has been in the business of constructing and selling homes since 1958, the year Defendant began operating, while TCM did not exist until 1993; (2) has experience planning and building over 100 communities; and (3) has sold over 25,000 homes since 1958. Because all of these statements refer to Defendant, Plaintiff argues that there is no meaningful distinction between TCM and Defendant for personal jurisdiction purposes. Moreover, even if TCM and Defendant are affiliates, rather than the same entity, they are affiliated for the purpose of doing business in Minnesota. Therefore, personal jurisdiction is still proper over Defendant.

Plaintiff also emphasizes that Defendant: (1) travels to Minnesota to interview potential

employees, or has them flown to Illinois; (2) negotiates compensation for potential Minnesota employees, and makes the final hiring decisions; and (3) issues paychecks and W-2 forms and earnings summary information from its Illinois headquarters. As Plaintiff explains, "the facts overwhelmingly demonstrate that Town & Country directs and exercises control over its Minnesota division employees and the Minnesota division. Town & Country, therefore, has sufficient minimum contacts with Minnesota to justify the Court's exercise of personal jurisdiction over it."

While it states there are facts to justify piercing the corporate veil, Plaintiff maintains that is not the basis for finding personal jurisdiction. Instead of an imputed liability theory, Plaintiff asserts that Defendant's direct contacts with Minnesota support personal jurisdiction. According to Plaintiff, Defendant's business activities, and TCM's use of Defendant's resources led to the purchase of the Maple Grove property. Further, even if the Court finds that Defendant "is not actively involved and participating in controlling its Minnesota division's operation and has conducted no business in Minnesota, the exercise of personal jurisdiction is still proper." Citing Wells' Dairy Inc. v. Estate of Richardson, 89 F. Supp.2d 1042 (N.D. Iowa 2000), Plaintiff argues that personal jurisdiction is proper, because Defendant's logo is used in its own and TCM's websites and also in printed advertisements in Minnesota.

Under the "effects test," Plaintiff argues that Defendant's intentional violation of the Lanham Act supports the exercise of personal jurisdiction. Under the stream of commerce theory, Plaintiff argues that personal jurisdiction is also proper, because Defendant's activities pertain to the homes, plans, and advertisements that are at issue in this case.

Finally, Plaintiff explains that the fourth and fifth prongs of the personal jurisdiction

inquiry favor the Court exerting personal jurisdiction. Because it is a Minnesota resident, Plaintiff states that Minnesota has an interest in providing a forum for its suit. In addition, Defendant purchased property in Minnesota that is at issue in this case, as well as other housing developments in Minnesota. Further, Defendant has been aware of a potential copyright infringement case since July 2001, and has been represented since then by Minnesota counsel. Therefore, according to Plaintiff, Minnesota is a convenient forum for both parties.

**3. The Court's Recommendation.**

The Court recommends denying Defendant's motion. Defendant is clearly representing on both websites that it is doing business in Minnesota. It states on its own website that "the company closed 1,099 homes in 2000," and that "Town & Country Homes . . has built more than 30,000 homes since its founding in 1958.", these totals include houses built in Minnesota. Other sections of the website refer to a division in Minnesota, which Defendant states is a separate entity, but the above-mentioned statements contain no such qualification. In addition, the large totals and starting date of 1958 imply that TCM can not be credited with all of the sales. Hence, Defendant is stating that it has built numerous homes in Minnesota.

TCM's website is also clearly including Defendant in its statements about doing business in Minnesota. TCM offers Minnesotans the opportunity to choose a national homebuilder with 42 years of experience. Further, TCM relies on Defendant's resources to make it more attractive to potential clients in Minnesota. Defendant's trademark name and logo also appear on this website and in printed advertisements in Minnesota.

At this stage, the Court is bound to view the evidence in the light most favorable to Plaintiff. See Dakota Indus., Inc, 946 F.2d at 1387. Therefore, the Court concludes from

Defendant's statements that it is doing business in Minnesota, and should reasonably anticipate being haled into court in Minnesota. Defendant bolsters sales in Minnesota and nationally by representing to the public that it successfully builds and sells homes in Minnesota. It would be inequitable to permit Defendant to make use of its activities in the state without also requiring it to respond to claims such as Plaintiff's in this forum. Consequently, exerting personal jurisdiction is proper in this case. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (explaining that "[w]hen a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' it has clear notice that it is subject to suit there") (internal citation omitted).

Further, personal jurisdiction is proper whether TCM and Defendant are working together in Minnesota, or simply making use of one another's resources and marketing. As the Supreme Court has explained, "[w]e have previously noted that when commercial activities are "carried on in behalf of" an out-of-state party those activities may sometimes be ascribed to the party, at least where he is a "primary participan[t]" in the enterprise and has acted purposefully in directing those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 480 n.22 (1985) (citations omitted). Defendant and TCM make no meaningful distinctions between themselves in the representations that are on their websites. Therefore, the Court concludes that TCM's commercial activities may justifiably be ascribed to Defendant for personal jurisdiction purposes.

To clarify, this determination is not based on any particular qualities of these websites themselves, such as their level of commercial interactivity. The websites are significant here simply because of the statements Defendant makes on them. It is unimportant that these representations were made on websites, as opposed to being made through any other advertising

medium by which Defendant might have sought customers. These statements, when viewed in the light most favorable to Plaintiff, demonstrate that Defendant is doing business in Minnesota and has sufficient contacts to support personal jurisdiction. That is the reason they are relevant to the current issue.

Consequently, the Court does not find that its decision conflicts with the reasoning of cases Defendant cites, such as Multi-Tech, Mink, and Bensusan. The courts in those cases evaluated "the nature and quality of the commercial activity conducted on the Internet" to determine whether the defendants had availed themselves of the benefits and protections of the forum state. See e.g. Multi-Tech, 122 F. Supp.2d at 1050. In other words, the courts were determining whether the websites themselves could serve as minimum contacts for purposes of personal jurisdiction. The analysis did not include representations the defendants made on the websites. In the present case, however, it is not the existence of the websites that is significant. Instead, it is the particular representations that are being made. Therefore, the above-mentioned cases are factually distinguishable.

The use of Defendant's trademark name and logo on Minnesota advertisements, Michael Ryan's presence in this state along with his involvement in hiring Minnesota employees, and the listing of Defendant's name on the notice provisions of the purchase agreement further lead the Court to recommend denying Defendant's motion. Defendant argues that the use of a trademark alone can not support personal jurisdiction. But the Court must look at all the contacts in the aggregate and consider the totality of the circumstances. See Minnesota Mining & Mfg, 943 F. Supp. at 1122. Consequently, the trademark use should not be discounted as a contact simply because it can not support jurisdiction by itself. In addition, the trademark's appearance on

TCM's website is consistent with the statements on the websites indicating Defendant is involved in the business in Minnesota.

Ryan's activities also can not be discounted simply by stating he is TCM's CEO, because he is also Defendant's CEO. While an officer clearly can conduct separate business for more than one company in certain instances, Defendant and TCM do not make a clear distinction between themselves with respect to business in Minnesota. Therefore, his activities further suggest that Defendant is present in the state. Moreover, these contacts all relate to the purchase, development, and sale of land in Minnesota. Consequently, the current causes of action arise out of the contacts.

Because Defendant is directly involved in Minnesota, the question of piercing the corporate veil is not relevant to the issue of personal jurisdiction. Defendant cites Bielicki for the proposition that the Court must determine that piercing the corporate veil is proper in this case in order to exert personal jurisdiction. But the court in Bielicki was discussing "long arm derivative jurisdiction." 741 F. Supp. at 761. This doctrine was previously put forward by the Eight Circuit in Lakota Girl Scout Council, Inc. v. Havey Fund-Rais. Man., Inc., 519 F.2d 634, 637 (8th Cir.1975). In a subsequent case, one court summarized the doctrine by stating, "[p]ersonal jurisdiction can properly be asserted over a corporation not physically present in the forum state if another with sufficient minimum contacts is acting as its alter ego." In re North Dakota Personal Injury Asbestos Litig. No. 1, 737 F.Supp. 1087, 1094 (D.N.D.1990).

Unlike these cases, personal jurisdiction over Defendant in the present case is not being derived from TCM's activities. Instead, the Court is relying on Defendant and TCM's statements that Defendant itself is engaged in business in Minnesota. Therefore, no

determinations need to be made concerning derivative liability to reach this conclusion.

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

Defendant's Motion to Dismiss (Doc. No. 17) be **DENIED**.

Dated: May 20, 2002

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by June 3, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.