**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**The Rottlund Company, Inc. d/b/a/ Rottlund Homes, a Minnesota Corporation**

**Plaintiff,**

**v.**

**Pinnacle Corporation d/b/a/ Town & Country Homes, an Illinois Corporation and Town & Country Homes, Inc., a Minnesota Corporation,**

**Defendants.**

**Civil No. 01-1980 (DSD/SRN)**

**ORDER**

---

David A. Davenport, Esq. and Craig S. Krummen, Esq., on behalf of Plaintiff.

Robin Preble, Esq. and Dean R. Karau, Esq., on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on July 15, 2002, on Plaintiff's Motion to Compel Discovery (Doc. No. 51).

This Order addresses that motion.

## I. BACKGROUND

Plaintiff is a Minnesota corporation that owns a copyright on an architectural design plan for an eight-unit town home complex. The copyright specifically covers a technical drawing entitled Rush Creek Villa II, 8 unit w/no step. Plaintiff also owns a copyright for the architectural work itself. In the Complaint, Plaintiff claims: (1) copyright infringement; (2) false

FILED OCT 8 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

advertising under the Lanham Act; (3) violation of the Minnesota Uniform Deceptive Trade Practices Act; and (4) unfair competition.

## II. DISCUSSION

The Eighth Circuit has considered the breadth of Rule 26 and the possible abuses discovery requests which can result from it.

> Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence. *Kramer v. Boeing Co.*, 126 F.R.D. 690, 692 (D. Minn. 1989) (and cases cited therein). While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery), *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122 (S.D. N.Y. 1986), this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

Hofer v. Mack Trucks, Inc., 981 F.2d 377 (8th Cir. 1992).

### A. Plaintiff's Motion to Compel Discovery

1. **Document Request No. 2:**[1] Please produce all documents that relate to and/or constitute the gross revenues you have received and/or expect to receive from the sale of all homes sold within your Centennial Crossing Development located in Maple Grove, Minnesota. Include, but do not limit, in your response sales journals and/or logs, accounts receivable reports, and/or account registers.

   **Response:** TCM objects to this request on the grounds that it is overly

---

[1]Plaintiff's Document Request Nos. 3-5 & 25 request the same type of information related to Defendant's other housing developments at issue in the present case. TCM responded identically to these requests as it did to Document Request No. 2.

> broad, unduly burdensome and seeks confidential and proprietary business information the disclosures of which would irreparably harm TCM. TCM also objects to this request on the grounds that it seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; despite request, Plaintiff has failed to abide by its obligation, pursuant to Fed. R. Civ. P. 26(a)(1)(C), to disclose any theory of damages, let alone its calculation of damages under any theory, that would render this request relevant or reasonably calculated to lead to the discovery of admissible evidence for any claim in this matter.
>
> **Interrogatory No. 16:** Please identify your total annual sales of all homes advertised and/or sold by you or for you by someone acting on your behalf for each year during the relevant time period of these discovery requests.
>
> **Response:** TCM objects to this request on the grounds that it is overly broad, unduly burdensome, seeks information protected by the attorney-client privilege and/or the work-product doctrine and seeks confidential and proprietary business information the disclosures of which would irreparably harm TCM. TCM also objects to this request on the grounds that it seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; despite request, Plaintiff has failed to abide by its obligation, pursuant to Fed. R. Civ. P. 26(a)(1)(C), to disclose any theory of damages, let alone its calculation of damages under any theory, that would render this request relevant or reasonably calculated to lead to the discovery of admissible evidence for any claim in this matter.

Plaintiff argues that it is essential for it to discover Defendant's gross revenues. Plaintiff states that it must present proof of these profits, because under 17 U.S.C. § 504(b), it is entitled to recover any profits attributable to the infringement. Moreover, Plaintiff argues that TCM must disclose its gross revenue information concerning its Starwood town homes. TCM constructs these town homes together with the Bayview town homes in back-to-back eight unit arrangements. Further, Plaintiff states that TCM must disclose gross revenue information related to each development where it is constructing, advertising, and selling Bayview town home products. Plaintiff explains that if infringement is found, it is entitled to recover all profits that

are attributable to wrongful conduct. "Accordingly, courts consistently permit copyright owners, like Rottlund, to recover an infringer's indirect profits, such as increased revenues realized through the sale of non-infringing products, where the infringer fails to satisfy its burden of proving that elements of its profits are attributable to factors other than the copyrighted work that it has infringed."

Plaintiff contends that the Bayview town homes contribute to the profits TCM realizes on other houses constructed in the same development, because the Bayview town homes contribute to the "unique neighborhood appearance," and "high density is created to meet increasingly stringent municipal and housing market demands." In addition, Plaintiff states it needs this information in order to determine whether Defendant is attempting to deduct from its revenue figures costs that are not attributable to the infringing town homes. For example, Defendant might attempt to deduct the cost of laying ponds, or building non-infringing homes, from the gross revenue related to the infringing town homes, thereby unfairly reducing the profits to which Plaintiff is entitled.

Plaintiff also states that TCM is not permitted to rely on its allegations that Plaintiff failed to disclose any theory of damages, as a basis for refusing to comply with discovery obligations. In addition, Plaintiff's Rule 26(a) disclosures provide that its damages fall into three categories: (1) actual damages; (2) Defendant's wrongful profits; and (3) statutory damages.

Defendant responds that Plaintiff's request for gross revenues from all of its developments is irrelevant and contrary to law. Defendant states that under 17 U.S.C. § 504(b), a copyright owner may establish its damages in part by showing the alleged infringer's profits that are attributable to the infringement. Defendant explains that in cases such as Taylor v. Meirick,

712 F.2d 1112, 1122 (7th Cir. 1983) and On Davis v. The Gap, Inc., 246 F.3d 152, 159 (2d Cir. 2001), courts have been careful to interpret § 504's term "gross revenue" to mean gross revenue reasonably related to the infringement, and not gross revenue related to all of an alleged infringer's sales. Moreover, the court in Eiben v. Epstein & Sons Int'l, Inc., 57 F. Supp.2d 607 (N.D. Ill. 1999), applied this same approach when addressing architectural copyrights; disallowing evidence of the defendant's gross revenue for the entire project, and limiting the plaintiff to demonstrating gross revenue from the infringing portion.

Defendant argues that in the present case, Plaintiff has only alleged that the Bayview town home infringes its copyright. Therefore, according to Defendant, Plaintiff is not entitled to gross revenues from entire developments where this allegedly infringing town home may not even be found. Consequently, Defendant argues that these discovery requests are overly broad and irrelevant. In addition, Defendant states that if Plaintiff is concerned to check the accuracy of any cost deductions by which Defendant might reduce its revenue, then Plaintiff should specifically request cost information. Gross revenue alone, according to Defendant, will not demonstrate what costs Defendant is claiming.

Defendant also contends that Plaintiff may not aggregate revenues where gross profits from sales of the specifically accused product are separable and ascertainable. Defendant cites In re Indep. Serv. Org. Litig., 23 F. Supp.2d 1242 (D. Kan. 1998), for the proposition that "a copyright owner may only introduce gross revenues from the sales of the allegedly infringing products."

Defendant distinguishes cases such as Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000) and Frank Music Corp. v. Metro-Goldwyn-Mayer, 886 F.2d 1545 (9th Cir. 1989),

by stating they involved "package deals." In Bolton, the plaintiff presented evidence of gross revenues from an entire album, although only a single song on the album was allegedly infringing. Defendant states the court considered this larger revenue calculation because consumers could not purchase the infringing song without buying the entire album. Defendant explains that,

> it was reasonable to allow the plaintiff to show the album's revenues, and to place the burden on the defendant to separate the non-infringing portion. Even in those circumstances, however, the plaintiff did not come forward with evidence of all of Bolton's and his publishing company's revenues from every album ever produced.

Defendant argues that in the present case, the Bayview homes are separable items and revenues may be traced to them, because consumers do not buy entire eight-unit complexes or the even larger housing developments. In addition, Defendant emphasizes that it and Plaintiff are direct competitors in the Twin Cities housing market. Consequently, Defendant states "the relevance of such confidential and proprietary information as TCM's gross revenues/total annual sales must be abundantly and unquestionably clear before TCM is forced to disclose it to Rottlund." Because, this information is not relevant, Defendant concludes that Plaintiff's discovery requests should be denied.

The Court grants Plaintiff's motion with respect to this discovery. The town homes at issue in the present case may be distinguishable from "package deals" in which it is impossible to purchase some larger item without also purchasing the infringing product. If so, revenue from Defendant's single family home sales would not be attributed to the allegedly infringing town homes in the same manner as in Bolton and Frank Music Corp. Defendant could then properly

argue to Judge Doty prior to trial, that the larger gross revenue figures should be excluded. But that is an issue of admissibility, rather than discoverability, of evidence. The standard of relevance in the context of discovery is broader than in the context of admissibility. And in the present case, Plaintiff has made the threshold showing of relevance and is entitled to discovery's broad standard of relevance.

In addition, the holdings cited from Bolton and Frank Music do not address the issue of costs. In the present case, there is also the problem of determining how Defendant attributes costs in order to determine profits. If Defendant wishes to preserve the right to claim expenses other than those directly related to the town homes in question, it will have to produce sufficient information to document what those costs are, and why they are attributable to the town homes rather than the larger development. This will require disclosing larger gross revenue figures. The Court recognizes that gross revenue figures are sensitive financial information, but there is a protective Order in place in the present case for that reason. Defendant does not, however, have to disclose gross revenue figures for any developments that do not contain the allegedly infringing town homes. Those developments do not present the problem of attributing costs. Plaintiff argues that the larger development revenues are indirectly attributable to the allegedly infringing town homes, because the town homes allow the developer to meet housing density requirements. But that argument would not apply to developments containing none of the town homes at issue. Therefore, those gross revenues are not relevant.

**2. Interrogatory Nos. 13-17.**

Plaintiff states that these interrogatories seek information related to the Hollander Property, TCM's gross revenues, Defendant's allegedly false and deceptive advertising practices,

and answers to questions related to Defendant's claims and defenses. It explains that all of this information is relevant for the same reasons it stated in support of its previous discovery requests.

Defendant argues that Interrogatory Nos. 13 through 15 are duplicative and seek the same gross revenue information that was the subject of previous requests. Further, Interrogatory No. 15 seeks such information dating back to 1958. Defendant repeats its argument that "revenues from sales of products not accused of infringement is legally irrelevant." Accordingly, it concludes that Interrogatory Nos. 13 through 15 should be denied.

Defendant states that Interrogatory No. 17 should also be denied, because "how TCM advertised and/or marketed single family and other non-Bayview town homes is completely irrelevant."

The Court grants Plaintiff's motion with respect Interrogatory Nos. 13, 14, & 16. As stated in the previous section, Defendant's gross revenues are relevant for determining how to attribute costs and profits to the allegedly infringing town homes. The parties are instructed to apply the same restrictions to production that were specified in the preceding section. Developments containing none of the allegedly infringing homes are not relevant for determining damages, and their gross revenues need not be produced. For the same reason, information concerning development and advertising that occurred prior to building the allegedly infringing homes is also irrelevant.

The Court grants Plaintiff's motion with respect to Interrogatory No. 15, but limits its scope. Rather than dating back to 1958, Defendant is instructed to provide responsive information beginning from the earliest date for which there is evidence of the allegedly

infringing town homes.

The Court denies Plaintiff's motion without prejudice with respect to Interrogatory No. 17. Plaintiff admitted at the July 15, 2002 hearing, that it had not yet found any evidence to suggest that Defendant's single family homes infringed its copyrights. As will be discussed below, Plaintiff's counsel will be permitted to review the architectural designs other than those currently alleged to be infringing on an attorneys' eyes only basis. If Plaintiff's counsel finds evidence of further infringement, Plaintiff will be permitted to renew its motion with respect to Interrogatory No. 17.

3. **Document Request No. 27:** Please produce architectural design plans for each and every unit identified in response to Interrogatory No. 24.

**Response:** TCM objects to this request on the grounds that it is overly broad, unduly burdensome and seeks confidential and proprietary business information the disclosures of which would irreparably harm TCM. TCM also objects to this request on the grounds that it seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; despite request, Plaintiff has failed to abide by its obligation, pursuant to Fed. R. Civ. P. 26(a)(1)(C), to disclose any theory of damages, let alone its calculation of damages under any theory, that would render this request relevant or reasonably calculated to lead to the discovery of admissible evidence for any claim in this matter.

**Document Request No. 28:** Please produce specimens of each advertisement and/or marketing brochure and related information prepared by you and for you by someone acting on your behalf related to each and every home identified in response to Interrogatory No. 24.

**Response:** TCM objects to this request on the grounds that it is overly broad, unduly burdensome, seeks information protected by the attorney-client privilege and/or work-product doctrine and seeks confidential and proprietary business information the disclosure of which would irreparably harm TCM. TCM also objects to this request on the grounds that it seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; despite request, Plaintiff has failed to abide by its obligation, pursuant to Fed. R. Civ. P. 26(a)(1)(C), to disclose any theory of damages, let alone its calculation of damages under any

theory, that would render this request relevant or reasonably calculated to lead to the discovery of admissible evidence for any claim in this matter.

Interrogatory No. 24 requires TCM to identify the name of all home styles it has constructed, advertised and/or sold or is currently planning to construct, advertise and/or sell, and the name of each development in which each such home was constructed, advertised and/or sold. Plaintiff contends that it is entitled to determine the full measure of TCM's copyright infringement with respect to homes constructed, advertised, and sold under product names other than Bayview and Garfield. Plaintiff states that despite diligent investigation, it has not yet been able to determine the full measure of Defendant's infringement. Specifically, it has not been able to determine if home products sold under names other than Bayview and Garfield also infringe its intellectual property rights. It notes that at a minimum, Defendant is currently constructing allegedly infringing homes under two separate names, in six housing developments located in Minnesota and Illinois.

Defendant states that Plaintiff's request for copies of every architectural plan for every home it has constructed is plainly improper. Defendant maintains that this request is merely a "fishing expedition" by which Plaintiff hopes to find information that it otherwise has no basis to believe exists. Defendant notes it has already disclosed the location where all Bayview and Garfield town homes are being built. If Plaintiff fears that Defendant is building these homes under other names, Defendant states that a simple interrogatory will answer that question. Hence, Plaintiff's current requests are also overly broad and burdensome. Consequently, Defendant maintains that Document Request No. 27 and Interrogatory No. 24 should be denied. For the same reasons, Defendant argues that Document Request No. 28, which seeks "specimens of each advertisement and/or marketing brochure . . . related to each and every home identified in

response to Interrogatory No. 24," should be denied.

The Court grants Plaintiff's motion with respect to Document Request No. 27. The Court can not accept Defendant's suggestion that Plaintiff simply serve an interrogatory asking whether Defendant is building the allegedly infringing homes under another name. The parties obviously disagree on the question of infringement. Plaintiff could serve an interrogatory asking Defendant to identify which of its homes infringe Plaintiff's copyright, or in what other developments Defendant is building infringing homes. But Defendant would respond that none of its homes infringe, and therefore, it is unnecessary to identify any of their particular details. Plaintiff can not be expected to rely on such a representation. Instead, Plaintiff is entitled to examine the evidence and make its own determination.

Defendant has a legitimate concern, however, not to disclose confidential business information to a direct competitor. Therefore, any architectural designs other than those currently alleged to be infringing should be designated attorneys' eyes only. This will allow Plaintiff's counsel to determine if there is any basis for including them in its infringement claims.

The Court grants in part and denies, without prejudice, in part Plaintiff's motion respect to Document Request No. 28. The Court grants Plaintiff's motion with respect to advertising and marketing related to Bayview homes. The Court denies Plaintiff's motion without prejudice with respect to all other homes. As with Interrogatory No. 17 in the preceding section, this information would only be relevant if homes other than the Bayview homes were infringing. To date, Plaintiff has no evidence that they are. If, after reviewing the architectural plans, Plaintiff's counsel finds evidence of further infringement, Plaintiff will be permitted to renew its motion with respect to this information.

4. **Interrogatory No. 10:**[2] Please identify all persons, including third-parties, who were involved in or contributed to, in any way, your purchase of the real property upon which your Centennial Crossing development, located in Maple Grove, Minnesota, is being constructed. For each person identified state their name, title, place and position of employment, and specify in all possible detail, without limitation, their involvement and/or contribution.

**Response:** TCM objects to this request on the grounds that it is overly broad, unduly burdensome and seeks confidential and proprietary business information the disclosures of which would irreparably harm TCM. TCM also objects to this request on the grounds that it seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; despite request, Plaintiff has failed to abide by its obligation, pursuant to Fed. R. Civ. P. 26(a)(1)(C), to disclose any theory of damages, let alone its calculation of damages under any theory, that would render this request relevant or reasonably calculated to lead to the discovery of admissible evidence for any claim in this matter.

**Document Request No. 13:**[3] Please produce all documents that relate to and/or constitute, directly or indirectly, development proposals, purchase offers and/or contract bids or offers submitted to Marquette Advisors, any attorneys, agents and/or representatives of Hildur P. Hollander, and/or any other third-party related to your purchase of the real property upon which your Centennial Crossing Development, located in Maple Grove, Minnesota, is being constructed.

**Response:** TCM objects to this request on the grounds that it is overly broad, unduly burdensome, seeks information protected by the attorney-client privilege and/or the work-product doctrine, and seeks confidential and proprietary business information the disclosures of which would irreparably harm TCM. TCM also objects to this request on the grounds that it seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; despite request, Plaintiff has failed to abide by its obligation, pursuant to Fed. R. Civ. P. 26(a)(1)(C), to disclose any theory of damages, let alone its calculation of damages under any theory, that would render this request relevant or reasonably

---

[2]Interrogatory Nos. 11 & 12 also concern Marquette Advisors, Hildur Hollander, and the Centennial Crossing Development.

[3]Document Request Nos. 14-16 also concern Marquette Advisors, Hildur Hollander, and the Centennial Crossing Development.

> calculated to lead to the discovery of admissible evidence for any claim in this matter.

Plaintiff argues that TCM's purchase of the Hollander Property relates to Plaintiff's false advertising, deceptive trade practices, and unfair competition claims. In addition, TCM's bid encompassed construction of 381 town homes, which were to include the eight-unit town home buildings discussed in the previous section. Therefore, according to Plaintiff, the information called for in this document request is also relevant to its copyright infringement claim.

Plaintiff also states that the information sought is relevant to Defendant's claims and defenses, including the issue of personal jurisdiction. Plaintiff explains that a letter of credit that Defendant used to purchase the Hollander Property stated that Harris Bank provides "a $25,000,000 revolving line of credit of land acquisition, land development and home construction activities exclusively for Town & Country's Minnesota operations" because Town & Country has been a "valued customer at Harris Trust and Savings Bank for over twenty years."

Defendant argues that its acquisition of the Hollander Property has no relevance to any of Plaintiff's claims, and, consequently, Plaintiff's corresponding discovery requests should be denied. Defendant states that its acquisition of land has no relevance to copyright issues. It did not engage in advertising when it bid for the property, and, hence, the bid is unconnected to any false advertising claim. Defendant also asserts that its bid is irrelevant to any claim under the Minnesota Deceptive Trade Practices Act. And finally, Defendant states that the bid is irrelevant to any unfair competition claim, because nowhere in Rottlund's Complaint does it allege that Defendant "acted improperly in any way with respect to the bidding or acquisition of the Hollander Property." Consequently, Defendant maintains that Document Request Nos. 13-16

and Interrogatory Nos. 10-12 should be denied.

The Court grants Plaintiff's motion with respect to these discovery requests. The Hollander property is directly at issue in the present case. Marquette Advisors solicited bids for the Hollander Property that would encompass constructing 381 town homes. Defendant's bid included the allegedly infringing town homes. Consequently, the Hollander Property is relevant to the infringement claim. In addition, Defendant's bid and any representations they may have made concerning the town homes is relevant to the claims for deceptive trade practices and unfair competition. Finally, Defendant Pinnacle's involvement in the purchase is relevant to the issue of personal jurisdiction. Pinnacle's original motion to dismiss for lack of personal jurisdiction was denied. But it has indicated that it is continuing to pursue that defense. Therefore, Plaintiff is entitled to this discovery.

**5. Third-Party Subpoenas.**

This issue was discussed in more detail during a September 11, 2002 hearing, and will be disposed in the Court's Order addressing that hearing. Therefore, the Court denies Plaintiff's motion as moot with respect to this issue.

**THEREFORE, IT IS HEREBY ORDERED that:**

Plaintiff's Motion to Compel Discovery (Doc. No. 51) is:

(1) **GRANTED** as to Document Request Nos. 2-5, 25, 27 and Interrogatory Nos. 13-16, with certain limitations more fully discussed in this Order;

(2) **GRANTED** as to Interrogatory Nos. 10-12 and Document Request Nos. 14-16;

(3) **DENIED WITHOUT PREJUDICE** as to Interrogatory No. 17;

(4) **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE** as to Document Request No. 28;

(5) **DENIED AS MOOT** as to Third-Party Subpoenas.

Dated: October 7, 2002.

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge