UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Rottlund Company, Inc.
d/b/a/ Rottlund Homes, a Minnesota
Corporation

Civil No. 01-1980 (DSD/SRN)

Plaintiff,

v.

**REPORT AND RECOMMENDATION**
**FILE UNDER SEAL**

Pinnacle Corporation
d/b/a/ Town & Country Homes,
an Illinois Corporation and
Town & Country Homes, Inc.,
a Minnesota Corporation,

Defendants,

and

Town & Country Homes, Inc.,
a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster
Architects & Planners of Iowa, Inc.,
an Iowa Corporation

Third-Party Defendant.

---

David A. Davenport, Esq. and Craig S. Krummen, Esq., on behalf of Plaintiff.

Darren B. Schwiebert, Esq., on behalf of Defendant Town & Country Homes, Inc.

Matthew I. Farmer, Esq. and Scott W. Petersen, Esq., on behalf of Defendant Pinnacle Corporation.

Holly J. Newman, Esq., and John B. Patrick, Esq., on behalf of Third-Party Defendant Bloodgood Sharp Buster.

---

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on May 9, 2003, on Defendants' Motion to Dismiss and Strike the Second Amended Complaint (Doc. Nos. 182-1 & 182-2). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, this Court recommends that Defendants' Motion be granted in part, denied in part without prejudice, and denied in part.

## I. BACKGROUND

Plaintiff is a Minnesota corporation that owns a copyright on an architectural design plan for an eight-unit town home complex. The copyright specifically covers a technical drawing entitled Rush Creek Villa II, 8 unit w/no step. Plaintiff also owns a copyright for the architectural work itself.

The Third Amended Complaint includes the following Counts which are relevant to Defendants' Motion: against **TCM**: (III) contributory infringement; (IV) vicarious liability (V) false advertising under the Lanham Act; (VI) violation of Minnesota Uniform Trade Practices Act; and (VII) unfair competition, and against **Pinnacle**: (X) contributory infringement; (XI) vicarious liability (XII) false advertising under the Lanham Act; (XIII) violation of Minnesota Uniform Trade Practices Act; and (XIV) unfair competition.

The relevant paragraphs concerning vicarious and contributory copyright liability state the following:

> 42. Upon information and belief, Defendants Pinnacle and TCM are profiting from sales of Infringing Town Home Units and other

substantially similar products, which are made by entities under Defendants Pinnacle and TCM control, including, but not limited to, the following entities named in Defendant Pinnacle Corporations Financial statements: TCH, Inc. ("TCH"), National Developers, Inc. ("NDI"), Pinnacle Corp. of Central Florida, Inc. ("PCCF"), Town & Country Builders (Boca Raton, Florida) ("TCFL"), WRC Partners ("WRC"), and Foxford Development LLC ("Foxford").

62. In addition to Defendants Pinnacle and TCM's direct infringement, upon information and belief, Defendant Pinnacle has, through itself and/or related, commonly-owned entities TCM, TCH, NDI, PCCF, TCFL, WRC, and Foxford, among other things, induced, caused, participated and/or materially contributed to the infringing conduct of Defendant TCM with knowledge of the infringing activity.

63. In addition to Defendants Pinnacle and TCM's direct infringement, upon information and belief, Defendant Pinnacle Corporation d/b/a Town & Country Homes, has, through itself and/or related, commonly-owned entities TCM, TCH, NDI, PCCF, TCFL, WRC, and Foxford, among other things, participated in, supervised, exercised control over, coalesced with and financially benefitted from Defendant TCM's exploitation of Plaintiff's copyright protected original works of authorship.

64. In addition to Defendants Pinnacle and TCM's direct infringement, upon information and belief, Defendant TCM has, through itself and/or related, commonly-owned entities Pinnacle, TCH, NDI, PCCF, TCFL, WRC, and Foxford, among other things, induced, caused, participated and/or materially contributed to the infringing conduct of Defendant Pinnacle with knowledge of the infringing activity.

65. In addition to Defendants Pinnacle and TCM's direct infringement, upon information and belief, Defendant TCM has, through itself and/or related, commonly-owned entities Pinnacle, TCH, NDI, PCCF, TCFL, WRC, and Foxford, among other things, participated in, supervised, exercised control over, coalesced with and financially benefitted from Defendant Pinnacle's exploitation of Plaintiff's copyright protected original works of authorship.

85. Upon information and belief, Defendant TCM, with

> knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of Pinnacle, TCH, NDI, PCCF, TCFL, WRC, and/or Foxford.
>
> 86. Upon information and belief, Defendant TCM has derived profits off sales of Infringing Town Home Units and other substantially similar products made or sold by Pinnacle, TCH, NDI, PCCF, TCFL, WRC, and/or Foxford.
>
> 90. Upon information and belief, Defendant TCM has the right and ability to supervise the copyright infringement activities of Pinnacle, TCH, NDI, PCCF, TCFL, WRC, and/or Foxford.
>
> 92. Upon information and belief, Defendant TCM's economic interests are intertwined with the economic interests of Pinnacle, TCH, NDI, PCCF, TCFL, WRC, and/or Foxford.
>
> 127. Upon information and belief, Defendant Pinnacle, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of TCM, TCH, NDI, PCCF, TCFL, WRC, and/or Foxford.
>
> 128 &135. Upon information and belief, Defendant Pinnacle has derived profits off sales of Infringing Town Home Unites and other substantially similar products similar products made or sold by TCM, TCH, NDI, PCCF, TCFL, WRC, and/or Foxford.
>
> 134. Upon information and belief, Defendant Pinnacle's economic interests are intertwined with the economic interests of TCM, TCH, NDI, PCCF, TCFL, WRC, and/or Foxford.

The Third Amended Complaint also contains the following three paragraphs, all of which are the subject of Defendants' motion to strike:

> 19. Where the same creator owns both the original and derivative copyrights, the only sound interpretation of the Copyright Act is that the derivative work carries forward all preexisting copyrights in the original work.
>
> 23. Plaintiff's copyrights on the Villa II product incorporates and protects any and all original copyrighted works in the Original

Villa and/or New Villa upon which the Villa II product is based.

> 24. Plaintiff is not required to allege and prove multiple copyright violations which are dependent upon the exact number of prior copyrights which carry forward and are incorporated into the Villa II copyrights.[1]

## II. DISCUSSION

### A. 12(b)(6) Standard.

In considering a Rule 12(b)(6) motion to dismiss, the Court assumes all facts alleged in the complaint as true. Hishon v. 799 King & Spalding, 467 U.S. 69 (1984). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996). Dismissal is appropriate only if "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." Coleman v. Watt, 40 F.3d 255, 258 (8th. Cir. 1994). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Young v. City of St. Charles, Missouri, 244 F.3d 623, 627 (8th Cir. 2001).

### B. Derivative Liability.

"Although the Copyright Act does not expressly impose liability on anyone other than direct infringers, courts have long recognized that in certain circumstances, vicarious or contributory liability will be imposed." Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 261 (9th Cir. 1996) (citing Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 435,

---

[1]At the time Defendants filed their motion, Plaintiff had not filed its Third Amended Complaint. Under the Second Amended Complaint, which was originally the subject of Defendants' motion, these paragraphs were numbered 17, 21, and 22. Their wording was identical to current paragraph numbers 19, 23, and 24.

(1984)).

> Contributory infringement, under this standard, plainly does not lie without primary infringement. This, of course, does not mean that the primary infringer must be a co-defendant in the case; there may be many reasons why a party may not be held accountable for its conduct in court. What is important is that contributory infringement be hinged upon an act of primary infringement, even if the primary infringer for some reason escapes judicial scrutiny. *Cf. Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S., 518, 526, 92 S.Ct. 1700, 1706, 32 L. Ed.2d 273 (1972) (patent case) ("But it is established that there can be no contributory infringement without the fact or intention of a direct infringement.").

Danjaq, S.A., v. MGM/UA Communications Co., 773 F. Supp. 194, 201 (C.D. Cal. 1991).

"Contributory infringement necessarily must follow a finding of direct or primary infringement."

Cable/Home Communication v. Network Productions, 902 F.2d 829, 845 (11th Cir. 1990).

### C. Lanham Act Violations and the Copyright Act.

Nothing in Section 301(a) or elsewhere in the Copyright Act . . . 'annuls or limits any rights or remedies under any other Federal Statute.' . . . Nonetheless, courts have limited application of the Lanham Act so as not to encroach on copyright interests." Melvin B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 1.01[D], at 1-79-80 (2002). One court has explained the basis for this approach as follows:

> Section 43 of the Lanham Act, 15 U.S.C. § 1125, "prohibits any misrepresentation likely to cause confusion as to the source or the manufacturer of a product." *Lipton v. The Nature Co.*, 71 F.3d 464, 472 (2d Cir.1995). In claiming that defendants falsely attributed authorship of the two Songs by excluding his name, plaintiff alleges "a practice termed 'reverse passing off' in which 'A' sells 'B's' product under 'A's' name." *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 780 (2d Cir.1994). The elements of a reverse passing off claim are: "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to

> cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *Lipton*, 71 F.3d at 472.
>
> . . .
>
> Aware that nearly every copyright-based claim involves a charge of improper failure to credit a purported author, the Second Circuit has limited the extent to which a copyright-based claim may support a Lanham Act claim, repeatedly cautioning that " 'we reject ... attempt[s] to convert all copyright claims into Lanham Act violations.' " *Lipton*, 71 F.3d at 473 (quoting *Kregos v. Associated Press*, 937 F.2d 700, 711 (2d Cir.1991) ("*Kregos* (1991)")). *Lipton* held that "as a matter of law, a false copyright notice alone cannot constitute a false designation of origin within the meaning of § 43(a) of the Lanham Act." 71 F.3d at 473. This holds even where a plaintiff is successful on the copyright claim. *See Kregos* (1991), 937 F.2d at 710-11.
>
> For the Lanham Act to apply to a copyright-based claim, an aggrieved author must show more than a violation of the author's copyright- protected right to credit and profit from a creation. The author must make a greater showing that the designation of origin was false, was harmful, and stemmed from "some affirmative act whereby [defendant] falsely represented itself as the owner." *Lipton*, 71 F.3d at 473-474 (quoting *Cognotec Servs., Ltd. v. Morgan Guar. Trust Co.*, 862 F.Supp. 45, 51 (S.D.N.Y.1994)). *Compare, e.g., Cognotec Servs., Ltd.*, 862 F.Supp. at 51 (finding no § 43(a) liability based on copyright infringement alone), *with Eden Toys v. Florelee Undergarment Co.*, 697 F.2d 27, 37 (2d Cir.1982) (finding § 43(a) liability where copyright notice not only was false but also asserted that product was "original"). This rule is analogous to the preemption rule that a state law claim requires an "extra element," beyond those tracing to any copyright, that "changes the 'nature of the action so that it is qualitatively different from a copyright infringement claim,' " *Kregos* (1993), 3 F.3d at 666 (quoting *Computer Assocs. Int'l*, 982 F.2d at 716).

Weber v. Geffen Records, Inc., 63 F. Supp.2d 458, 463-64 (S.D. N.Y. 1999).

## D. Lanham Act Claims for Substantially Similar Products.

Within the context of reverse passing off, there is a disagreement among circuit courts as to whether a plaintiff can state a claim based on allegations that a defendant is producing a

substantially similar product, or whether a Lanham Act claim is limited to instances of bodily appropriation. The Ninth Circuit has "implicitly limited the 'reverse passing off' doctrine to situations of bodily appropriation." Shaw v. Linheim, 919 F.2d 1353, 1362 (9th Cir. 1990). In Waldman, the Second Circuit declined to apply "such a bright-line rule," finding that consumers were likely to be confused by misrepresentations as to the sources of certain books even though the books in question were substantially similar rather than bodily appropriations of the plaintiff's books. 43 F.3d at 784.

**E. State Law Deceptive Trade Practices (Counts VI and XIII).**

The Copyright Act "expressly preempted rights under state law that are equivalent to any of the bundle or rights encompassed by a federal copyright." Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 674 n.20 (7th Cir. 1986). "[T]wo conditions must be met for a right under state law to be preempted: (1) the work in which the right is asserted must be fixed in a tangible form and come within the subject matter of copyright and (2) the right must be equivalent to any of the rights specified in § 106." Marobie-Fl, Inc. v. National Ass'n of Fire and Equipment Distributors & Northwest Nexus, Inc., 983 F. Supp. 1167, 1180 (N. D. Ill. 1997) (citing Baltimore Orioles, 805 F.2d at 674).

> A right under state law is 'equivalent' to one of the rights within the general scope of copyright if it is violated by the exercise of any of the rights set forth in § 106. . . .Thus, a right is equivalent to one of the rights comprised by a copyright if it is infringed by the mere act of reproduction, performance, distribution or display.

Baltimore Orioles, 805 F.2d at 676-77. (citations omitted). "But if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of

copyright, and there is no preemption." Computer Assoc. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir.1992) (citations omitted).

**F. Unfair Competition.**

> [U]nder Minnesota law, "[u]nfair competition is not a tort with specific elements," but rather, "it describes a general category of torts which courts recognize for the protection of commercial interests." *Zimmerman Group v. Fairmont Foods of Minnesota*, 882 F.Supp. 892, 895 (D.Minn.1994), quoting *Rehabilitation Specialists, Inc. v. Koering*, 404 N.W.2d 301, 305-06 (Minn.Ct.App.1987). Torts included under the rubric of unfair competition include product disparagement, *see, id.*, citing *Advanced Training Systems v. Caswell Equipment Co.*, supra, tortious interference with contractual interests, and improper use of trade secrets. *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 632 (Minn.1982). Therefore, to remain viable, a common law unfair competition claim "must identify the underlying tort which is the basis for [the claim]." *Zimmerman Group v. Fairmont Foods of Minnesota*, supra. Moreover, if the underlying tort is duplicative of another Count of the Complaint, the claim for unfair competition cannot stand. *Id.*

LensCrafters, Inc v. Vision World, Inc., 943 F.Supp. 1481, 1490 (D. Minn.1996).

**G. Striking Material From the Pleadings.**

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f). The Eighth Circuit has noted that because Rule 12(f) is written in the permissive, the district court enjoys liberal discretion thereunder. Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000). "Despite this broad discretion however, striking a party's pleadings is an extreme measure, and, as a result, we have previously held that motions to strike

under Fed .R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted." Id. (citations omitted).

## III. DEFENDANTS' MOTION TO DISMISS

### A. The Parties' Positions.

Defendants move to dismiss Counts III, IV, VI, and VII directed at TCM, and Counts X, XI, XII, XIII, and XIV directed at Pinnacle, and to strike paragraphs 19, 23, and 24.

#### 1. Derivative Liability (Counts III, IV, X, and XI).

Defendants argue that Counts III, IV, X, and XI fail to state a claim for either contributory negligence or vicarious liability, because the Complaint fails to allege primary liability on the part of TCH, NDI, PCCF, TCFL, WRC, and Foxford. Plaintiff alleges that TCM and Pinnacle engaged in infringing activities, and TCH, NDI, PCCF, TCFL, WRC, and Foxford benefitted from Pinnacle's exploitation of the copyrighted works, and in addition, that Pinnacle profited from the sale of infringing homes. Plaintiff never actually alleges, however, that TCH, NDI, PCCF, TCFL, WRC, and Foxford built or sold infringing homes. Defendants assert that Plaintiff specifically chose not to allege that these six companies infringed because it knows that they did not. According to Defendants, the only exception to the requirement of alleging direct infringement occurs in instances in which the direct infringer is not subject to service of process or is unknown. Citing extensive case law establishing that there must be direct liability in order for there to be derivative liability, Defendants conclude that Counts III, IV, X, and XI must be dismissed.

Plaintiff responds that it does not have to allege direct liability against the six other entities in order to claim vicarious and contributory liability against Defendants. Plaintiff cites

case law establishing that a defendant can be found derivatively liable even if it is unaware of the infringement. Further, the primary infringers in these cases were not even named defendants. Plaintiff concedes that there must be some infringement in order for copyright liability to exist. It states, however, that "all that is necessary is that someone infringe upon Plaintiff's § 106 rights, either TCM, Pinnacle, BSB or Defendants' related and commonly owned entities; it is not necessary for all of these parties to be named in the litigation or face claims of copyright infringement." Plaintiff also maintains that Defendants' reasoning is circular when they claim Plaintiff must sue a direct infringer in order to bring a vicarious liability claim, but then object to Plaintiff's claims for both direct and vicarious liability as duplicative.

**2. Lanham Act Violations (Counts V and XII).**

Defendants argue that Counts V and XII are duplicative and merely restate the allegations in the copyright claims. Because section 301 of the Copyright Act limits the right to similar relief, both state and federal, Counts V and XII should be dismissed. In addition, Defendants argue that a reverse passing off Lanham Act claim cannot be brought in the present case because Plaintiff is not alleging the actual sale of its own town home, but is alleging the sale of similar town homes. Defendants explain that the Lanham Act penalizes the actual sale of another's products as one's own, "[t]hus, a copyright plaintiff alleging products are 'similar' cannot properly make out a Lanham Act claim because the Lanham Act prohibits removing the designation or re-designating goods before 'reselling goods produced by someone else.'" In addition, Defendants argue that the Lanham Act is a consumer protection statute whose purpose will not be furthered by expanding it to include Plaintiff's claims in the present case.

With respect to Plaintiff's current allegations that Defendants misrepresent their corporate

status in their advertisements, Defendants note that "nothing in this new litany of allegedly false statements has anything to do with the claims in the complaint regarding 'Infringing Town Home Units.'" Defendants add that Plaintiff cannot change the substance of its allegations in its response brief. And finally, Defendants' representations in their advertisements are not actionable because the Lanham Act concerns representations regarding goods and services rather than corporate status.

Plaintiff argues that its Lanham Act remedies are not duplicative of its copyright claims and should not be reversed. Because, in their affirmative defenses, Defendants have contested the validity and enforceability of Plaintiff's copyrights, Plaintiffs states it is entirely appropriate that it plead reverse passing off as an alternative claim. Plaintiff maintains that it is not preempted from pursuing this claim unless and until Defendants stipulate that it owns valid and enforceable copyrights.

In addition, Plaintiff cites case law for the proposition that the misuse of one author's work by another can produce different harms leaving two separate causes of action under both the Copyright Act and the Lanham Act.

Plaintiff also argues that Defendants ignore an additional aspect of its Lanham Act claims. It states that Defendants have made false and misleading statements concerning the source, characteristics, and design of their product. Hence, Plaintiff's claims do not only concern false designation of origin. Plaintiff explains that in their advertisements, Pinnacle and TCM make assertions concerning their histories and resources which are inconsistent with representations they make in support of Pinnacle's lack of personal jurisdiction affirmative defense. If Defendants truly have the limited resources they describe in their pleadings,

according to Plaintiff, customers, land-owners, subcontractors, and other individuals who rely on their advertisements, may be misled into believing they are doing business with companies that are more able to satisfy their objectives than Defendants actually are. Moreover, in cases of willful false advertising, customer confusion is presumed. Therefore, Plaintiff concludes that its Lanham Act claims should remain unless and until Pinnacle withdraws its lack of personal jurisdiction affirmative defense and Defendants move the Court to strike the representations they made concerning their business practices and resources.

### 3. State Law Deceptive Trade Practices (Counts VI and XIII).

Defendants argue that the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA) and section 106 of the Copyright Act prohibit the same forms of passing off goods or services as those of another, and deceptive representations regarding the origin of goods and services. Although consumer deception need not be pleaded to state a claim for copyright infringement, Plaintiff's allegations of misrepresentation in the present case are based solely on the alleged reproduction and sale of the copyrighted work. Specifically, Plaintiff has not alleged the extra element necessary to render its deceptive trade practices claims qualitatively different from a copyright infringement claim. Therefore, Defendants conclude that as pleaded, the deceptive trade practices claims are essentially equivalent to the claims under the Copyright Act. As a result, they state that the MUDTPA claims are preempted by the Copyright Act.

Plaintiff responds that the MUDTPA claims are not preempted by the Copyright Act. As with the Lanham Act claims, Plaintiff explains that its deceptive trade practices claims are not based solely on the allegation that Defendants falsely represented the origin and source of their products. Rather, the deceptive trade practices claims are partially based on Defendants' alleged

false advertising. In addition, Plaintiff cites McCarthy on Trademarks and Unfair Competition, § 6:15 (2002) for the proposition that a claim against a defendant for falsely claiming to be the designer of a copyrightable design is a legal claim that is significantly different from copyright infringement and not preempted by copyright law.

**4. Unfair Competition.**

Defendants argue that Counts VII and XIV for unfair competition do not allege an underlying tort. Instead, these Counts simply state that Defendants' actions constitute unfair competition. Defendants contend that copyright infringement cannot qualify as an underlying tort for purposes of stating an unfair competition claim. Further, even if copyright infringement could serve this purpose, the unfair competition claim would then be barred as duplicative of another Count of the Complaint. In addition, such a claim would also be preempted by the Copyright Act. As a result, Defendants conclude that Counts VII and XIV fail as a matter of law.

Plaintiff states that its unfair competition claims incorporate each of the allegations in the Complaint preceding those counts. In addition, the unfair competition claim is an alternative claim and dismissal should not be considered at least until the summary judgment stage. Because the unfair competition claims are based on false representations, passing off, and false advertising, these claims are not preempted by the Copyright Act.

**5. Paragraphs 19, 23, and 24.**

Defendants argue that these paragraphs improperly contain legal argument rather than factual assertions and should be stricken from the Complaint. They explain that all of these paragraphs contain legal conclusions and theories that are disputed and will need to be resolved

through motions or at trial. Defendants contend that "the plaintiff cannot simply allege legal conclusions or authority in its complaint in order to have those conclusions accepted as true because those conclusions have absolutely no bearing on whether plaintiff states a factual claim." Further, Defendants state that Plaintiff has assumed the mantle of a court by declaring legal conclusions and authority in the Complaint.

Plaintiff responds that Rule 12(f) motions are to be granted only where the pleadings contain obviously false and clearly injurious allegations or allegations that are unrelated to the subject matter of the case. Therefore, Plaintiff states that it is inappropriate to strike paragraphs from a Complaint simply because they contain legal argument. Moreover, Plaintiff maintains that paragraphs 19, 23, and 24 actually contain application of law to facts. It concludes, therefore, that "since Plaintiff's factual allegations sought to be stricken are not obviously false, nor clearly injurious to Defendants or unmistakably unrelated to the subject matter at issue in the case, there is no legal basis upon which to strike."

**B. <u>The Court's Recommendation.</u>**

**1. Derivative Liability (Counts III, IV, X and XI).**

The Court recommends granting Defendants' motion with respect to Counts III, IV, X, and XI. Plaintiff is not required to name the six related entities TCH, NDI, PCCF, TCFL, WRC, and Foxford as defendants in order to state claims for contributory infringement and vicarious liability. Plaintiff is, however, required to allege some act or acts of primary infringement by these entities. The paragraphs of the Complaint concerning these entities: (1) generally refer to infringing town homes and substantially similar products which are made by them; (2) state that they have participated in and contributed to the exploitation of Plaintiff's original works of

authorship; and (3) state that TCM has derived profits from infringing town homes and substantially similar products which are made or sold by them. The Complaint does not, however, identify any fact concerning an actual act or product through which these entities committed infringement. Paragraphs 25-53 of the Complaint allege facts, which if proven, could demonstrate that Defendants TCM and Pinnacle produced and sold infringing town homes. The Complaint, however, contains no such facts with respect to the other six entities, and the conclusory statements or allegations that these entities infringed Plaintiff's copyright are insufficient to survive a motion to dismiss. See Young, 244 F.3d at 627 (stating a complaint must allege sufficient facts to state a claim, rather than mere legal conclusions).

**2. Lanham Act Violations (Counts V and XII).**

The Court recommends denying Defendants' motion without prejudice with respect to the Lanham Act claims. Given the state of the record, it is premature to determine whether the Lanham Act claims are duplicative of Plaintiff's copyright infringement claims. Defendants have made clear that they intend to bring a motion to dismiss all of the copyright infringement claims based on the argument that the arrangement and composition of spaces and elements, or gestalt, of the Villa II is not entitled to protection under the Copyright Act. If the Court finds that the Villa II's gestalt is entitled to protection under the Copyright Act, and, thus the copyright infringement claims survive, Defendants will be free to renew their motion to dismiss the Lanham Act claims as duplicative.

The Court recognizes that Plaintiff argues its Lanham Act claims are also based on the allegedly false representations Pinnacle and TCM have made concerning their sales figures, financial resources, and corporate status. Therefore, Plaintiff concludes that the Lanham Act

claims cannot be duplicative of its infringement claims. There are two problems with this argument. First, these allegations are not included as a basis for the Lanham Act claims in Plaintiff's Third Amended Complaint. Second, and more importantly, a company's misrepresentations of itself, rather than of its or its competitors goods and services, are not actionable under 15 U.S.C. § 1125(a). As courts have explained, "in addition to proving falsity, the plaintiff must also show that the defendants misrepresented an inherent quality or characteristic of the product." S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001) (citations omitted). Thus, courts have recognized that one of the elements of such a Lanham Act claim is that "the defendant made false statements of fact about its own products, or the plaintiff's products, in an advertisement." Lens Crafters, Inc. v. Vision World, Inc., 943 F. Supp. 1481, 1488 (D. Minn. 1996). And, more generally, "[t]he Lanham Act does not prohibit false statements generally. It prohibits only false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services." Groden v. Random House, Inc., 61 F.3d 1045, 1052 (2d Cir. 1995). Therefore, Pinnacle's and TCM's statements concerning their sales figures, financial resources, and corporate status cannot provide a basis for the Lanham Act claims.

### 3. Minnesota Uniform Deceptive Trade Practices Act (Counts VI and XIII).

The Court also recommends denying Defendants' motion without prejudice with respect to the MUDTPA claims. As with the Lanham Act claims, it is premature to determine whether the MUDTPA claims are duplicative of Plaintiff's copyright infringement claims. If, when ruling on Defendants' upcoming motion to dismiss Plaintiff's infringement claims, the Court

finds that the Villa II's gestalt is entitled to protection under the Copyright Act, and, thus the infringement claims survive, Defendants will be free to renew their motion to dismiss the MUDTPA claims as duplicative.

**4. Unfair Competition (Counts VII and XIV).**

The Court recommends granting Defendants' motion with respect to the Unfair Competition Counts. Plaintiff fails to allege any of the three underlying torts which could form the basis of an unfair competition claim. Although these Counts state that they incorporate the previous paragraphs, the Court finds nothing in those paragraphs concerning product disparagement, tortious interference with contractual interests, or improper use of trade secrets. Further, Plaintiff has not identified in its response memorandum or during oral argument what facts alleged in the Complaint constitute any of those three underlying torts. Therefore, the Counts fail to state a claim upon which relief can be granted and should be dismissed.

**6. Paragraphs 19, 23, and 24.**

The Court denies Defendants' motion with respect to striking paragraphs 19, 23, and 24. Motions to strike are viewed with disfavor and infrequently granted. See Stansbury Law Firm, 221 F.3d at 1063. One court has explained that "[i]f the material pleaded fairly presents a question of law or fact which the court ought to hear, it may not be stricken as impertinent. Gateway Bottling, Inc. v. Dad's Rootbeer Co., 53 F.R.D. 585, 588 (W.D. Penn. 1971) (citing See 2A Moore's Federal Practice, Paragraph 12.21). In addition, "[t]o strike material as scandalous it must be obviously false and unrelated to the subject matter of the action." Id. Because these paragraphs contain a potentially relevant legal argument rather than obviously false facts, it is inappropriate to take the extreme measure of striking them from the pleadings.

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

Defendants' Motion to Dismiss and Strike the Second Amended Complaint (Doc. Nos. 182-1 & 182-2) be **GRANTED** as to Counts III, IV, VII, X, XI, and XIV, **DENIED WITHOUT PREJUDICE** as to Counts V, VI, XII, and XIII, and **DENIED** as to paragraphs 19, 23, and 24.

Dated: July 21, 2003

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by August 4, 2003, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.