UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| The Rottlund Company, Inc.,<br>d/b/a Rottlund Homes,<br>a Minnesota Corporation,<br><br>Plaintiff,<br>v.<br><br>Pinnacle Corporation,<br>d/b/a Town & Country Homes,<br>an Illinois Corporation,<br>et al.,<br><br>Defendants,<br><br>and,<br><br>Town & Country Homes, Inc.,<br>a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br>v.<br><br>Bloodgood Sharp Buster<br>Architects & Planners of Iowa, Inc.,<br>an Iowa Corporation,<br><br>Third-Party Defendant. | Civil Action No. 01-CV-1980 DSD/SRN<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(ORAL ARGUMENT REQUESTED)** |

---

> [A]n analysis of the objective similarities in the details of the works depends on expert testimony. Plaintiff's expert, James Larson, failed to identify similarities in the *details* of the Hoeffel Home and Purtell Home. Eschewing the actual floor plans and using 'bubble diagrams,' Plaintiff's expert illustrates *generic* similarities between the homes. Highlighting similarities in the general ideas of locating functional elements of the home is insufficient to create a genuine issue of fact.

*Kootenia Homes, Inc. v. Reliable Homes, Inc.*, No. 00-1117, 2002 WL 15594, at * 6 (D. Minn. 2002) (emphasis in original). Defendants are entitled to summary judgment for the same reason as the defendants in *Kootenia*.

The threshold issues in Rottlund's lawsuit against defendants are whether the protectable elements of Villa II technical drawings, bearing Registrations VAu 447-395 and VAu 546-285, and Rottlund's Villa II as an architectural work, bearing Registration VAu 534-723 are substantially similar to (1) the Homestead Collection townhomes built and sold by TCM; (2) the Chateau Collection townhomes built and sold by TCM; or (3) the 4-unit and 6-unit townhomes that Pinnacle builds and sells at its Washington Square development in Aurora, Illinois.[1] This Court now has before it the information it needs to conclude as a matter of law that neither defendants' buildings nor its technical drawings are substantially similar to Rottlund's works.

In addition, Rottlund has failed to develop facts sufficient to prevent summary judgment regarding the indirect copyright claims against the defendants.

## STATEMENT OF FACTS

### 1. The Homestead Collection designed by BSB and built by TCM.

BSB designed the Homestead Collection that was built by TCM at Centennial Crossing in Maple Grove, Harvest Hills in Plymouth, Providence Pointe in Shakopee, Cornerstone Lake in Lakeville, and Springbrook in Lakeville (Affidavit of Darren Schwiebert Aff., Exs. A - E). Although all of the Homestead Collection plans are based upon the design for Centennial Crossing, there are some differences between the plans. For example, the Cornerstone Lake and Springbrook plans include a required "safe room" that is not present in any of the other designs – or in

---

[1] These are the only copyrights asserted by Rottlund in this litigation. Other copyrights have been discussed as they relate to validity. However, Rottlund's complaint, as clarified by the several Court Orders, does not allege infringement of these copyrights. *See e.g.*, Order dated December 24, 2003 at 2; Order dated March 29, 2004 at 7.

the Villa II product. (Schwiebert Aff., Ex. D & E) Only the Harvest Hills plans contain a room for housing the sprinkler pipes that are required by the city of Plymouth. (Schwiebert Aff., Ex. B)

**2. The Chateau Collection Designed By Tushie Montgomery And Built By TCM.**

Tushie Montgomery designed the Chateau Collection that is being built by TCM at Pinebrook Commons in Brooklyn Park and the Traditions at Clover Ridge in Chaska. (Schwiebert Aff., Exs. F & G). The Chateau Collection plans are not related in any way to the Homestead Collection (other than the fact that they are both built by TCM). In fact, a comparison of the Homestead Collection and Chateau Collection illustrates dramatic differences. (*Compare* Schwiebert Aff., Exs. A - E *with* Schwiebert Aff., Exs. F & G); *see also* (Schwiebert Aff., Ex. H at 2-5).

**3. The Washington Square development in Aurora, Illinois.**

Pinnacle builds and sells certain 4-unit and 6-unit townhomes at its Washington Square development in Aurora, Illinois. Rottlund refers to these townhomes as the "Washington Square Back-to-Back[s]" (*See* Sixth Amended Complaint ¶40.) Both the four-unit and six-unit "Washington Square Back-to-Backs" contain homes called the Arlington and the Garfield. The four-unit buildings contain two Garfield homes and two Arlington homes. The six-unit building contains four Garfield homes and two Arlington homes. The basic floor plan for Pinnacle's Garfield unit resembles the basic floor plan for TCM's Bayview home; the basic floor plan for Pinnacle's Arlington unit resembles the basic floor plan for TCM's Starwood home. Each of those four floor plans has many options. (*See* Affidavit of Christopher Murdoch at Exs. A-C).

**4. Rottlund's Claimed Copyrights On Drawings.**

Rottlund alleges that the technical drawings for the Homestead Collection, Chateau Collection, and Washington Square back-to-backs infringe upon the technical drawings bearing Registrations VAu 447-395 and VAu 546-285. (*See* Sixth Amended Complaint, Counts I & VII) The 447-395 copyright is entitled "Rush Creek Villa II, 8 unit w/no step." (Murdoch Aff., Ex. E) The certificate of registration identifies it as a Technical Drawing and claims the work was completed in 1997. (*Id.*) Section 6 of the Certificate, dealing with derivative works, is labeled "NA" for "not applicable. (*Id.*) The 546-285 copyright is entitled "The Reserve Villa II 8 unit building." (Murdoch Aff., Ex. F) Like the 447-395 copyright, the 546-285 copyright is identified as a Technical Drawing as opposed to an Architectural Work. (*Id.*) Rottlund claims the work was completed in 2001. (*Id.*) Rottlund did not identify it to be a derivative work. (*Id.*)

The deposit materials for the 447-395 and 546-285 registrations generally depict eight-unit town home structures arranged in a four-by-four, back-to-back configuration. The townhomes have two unit styles: four exterior units on the corners of the building, and four interior units with three party walls and front exposures only. The floor plans are "mirrored" to create this configuration, so that all of the exterior units are identical to each other, as are all of the interiors. The only alleged difference between the 546-285 registration and the 447-395 registration is that the former includes a room at one end of the building containing the required sprinkler pipes. (*Compare* Murdoch Aff., Ex. G at D00011 *with* Murdoch Aff., Ex. H at RCI 004161).

**5. The Court's Order Dated October 10, 2002.**

On October 10, 2002, the Court denied as premature defendants' motion to compel discovery relating to identification of the allegedly protectable elements in the asserted copyrights and the allegedly copied expression. The Court did order Rottlund to provide these required details along with its expert reports. (Order at 14). ("The Court grants in part and denies in part Defendant's motion with respect to Interrogatory Nos. 3 – 8. The level of detail sought by this discovery is premature, and <u>should be provided along with expert disclosures</u>.") (emphasis added)

In opposing defendants' motion, Rottlund argued that identification of the objective details was premature because expert testimony is necessary for the analytic dissection required in the extrinsic step:

> TCM also argues that Rottlund should describe each and every design element and/or feature of TCM's infringing townhomes in detail prior to expert disclosures. However, as discussed above, courts employ a two-part analysis when examining substantial similarity and it is well settled that the first part of the analysis involves an extrinsic test. *Cavalier v. Random House, Inc.*, 2002 WL 1042182, *4 (9th Cir. 2002); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2002). Again, **<u>this extrinsic test requires analytical dissection and expert testimony</u>**. *Id.* Nonetheless, TCM desires that Rottlund be compelled to relinquish the **<u>requisite expert dissection</u>** required before identification of infringing design elements and/or features.

(Schwiebert Aff., Ex. I at 6 (emphasis added)). The Court's Order dated October 10, 2002, specifically cited Rottlund's argument regarding the necessity for experts. (Order at 13 – 14).

Rottlund never complied with the Court's Order. (Schwiebert Aff., Exs. T – W) (Expert Reports of Anthony Desnick).

## LEGAL STANDARD

### I. SUMMARY JUDGMENT.

Pursuant to Rule 56(c) summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The parties moving for summary judgment bear the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movants are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Cas. & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *See Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

### II. COPYRIGHT INFRINGEMENT.

To establish copyright infringement, a plaintiff must "demonstrate that it owns a valid copyright and that the defendant engaged in unauthorized copying of the work protected by the copyright." *Rottlund v. Scott Larson Co., Inc.*, Civ. No. 02-1238, 2004 WL 742054, *3 (D. Minn. 2004) (citing *Feist Pubs v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Without evidence of direct copying, "copying can be established by demonstration of access (by the alleged infringer) and substantial

similarity (between the works at issue)." *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939,941-42 (8th Cir. 1992). The Eighth Circuit test for substantial similarity was set forth by the court in *Hartman v. Hallmark Card, Inc.*, 833 F.2d 117 (8th Cir. 1987):

> Determination of substantial similarity involves a two-step analysis. There must be substantial similarity "not only of the general ideas but of the expressions of those ideas as well." *Sid & Mary Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977). First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works. Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression.

*Id.* at 120.

The first part of the test, the "extrinsic test," "focuses on alleged similarities in the objective *details* of the works." *Hoch v. MasterCard Intern. Inc.*, 284 F. Supp.2d 1217, 1222 (D. Minn. 2003) (emphasis added). "A court applying the extrinsic test must 'filter out and disregard the non-protectible elements in making its substantial similarity determination.'" *Id.* (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)). The fundamental principle of copyright law is that "ideas, concepts, and processes are not protected from copying." *Kootenia Homes, Inc. v. Reliable Homes, Inc.*, No. 00-1117, 2002 WL 15594, at * 4 (D. Minn. 2002) (citing 17 U.S.C. § 102(b)). Thus, the Copyright Act protects the specific expression of ideas in an architectural drawing, but exempts the ideas themselves from protection. *Id.* (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985)). In fact, the Copyright Act encourages others to "build freely

upon the ideas and information conveyed by a work." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991).

The extrinsic test *depends* on expert testimony. *See Moore*, 972 F.2d at 945 ("We rely on expert testimony to conduct the extrinsic test"); *Kootenia*, 2002 WL 15594 at *5 ("First, an analysis of the objective similarities in the details of the works depends on expert testimony"). The expert report must identify "similarities in the *details*" of the deposit materials and the accused technical drawings. *Kootenia*, 2002 WL 15594 at *5 (emphasis in original). "Highlighting similarities in the general ideas of locating functional elements of the home is insufficient to create a genuine issue of fact." *Id.*

As applied to architectural works, the court in *Kootenia* relied upon the following description of the dichotomy between unprotectable ideas and protectable expressions:

> The problem of distinguishing an idea from its expression is particularly acute when the work of "authorship" is of a functional nature, as is a plan for the accomplishment of an architectural or engineering project. As a generalization, to the extent that such plans include generalized notions of where to place functional elements, how to route the flow of traffic, and what methods of construction and principles of engineering to rely on, these are "ideas" that may be taken and utilized by a successor without violating the copyright of the original "author" or designer.

2002 WL 15594 at *3 (quoting *Attia v. Society of New York Hosp.*, 201 F.3d 50 (2nd Cir. 1999)). In addition, dissimilarity may be important in determining whether there is substantial similarity. *Id.* (citing *Attia*, 201 F.3d at 58).

Only if Rottlund satisfies the extrinsic test by establishing "objective similarity in the details" must the court evaluate "the response of the ordinary,

reasonable person as to whether or not a substantial similarity of expression exists." *Kootenia*, 2002 WL 15594 at *5. The second part of the test, the intrinsic test, is used to determine whether the "total concept and feel of the works in question are substantially similar." *Hartman*, 833 F.2d at 120-21.

## III. ROTTLUND'S "GESTALT THEORY" OF COPYRIGHT INFRINGEMENT IS NOT VALID.

Rottlund alleges that defendants' townhomes infringe upon the "combination or gestalt of Plaintiff's copyrighted protected Villa II works of authorship." This Court ruled that Rottlund's "gestalt theory" does not involve the infringement of any individual elements or expressions. (Schwiebert Aff., Exs. J & K). Rottlund's Sixth Amended Complaint contains merely a list of ideas that Rottlund contends comprise the "gestalt." (Sixth Amended Complaint, ¶ 64). However, Rottlund has maintained that the objective details of each of these ideas is not part its "gestalt theory." Instead, Rottlund wants the Court to adopt a standard where the "idea" of a town home is sufficient for the analytic dissection or extrinsic test and the intrinsic test is simply the "overall impression of the two works."

### A. "Gestalt" is Not a Known Legal Theory.

"Gestalt" is not a legal theory that has been adopted by the Eighth Circuit. In fact, "gestalt" theory directly contradicts the first step of the Eighth Circuit's two part test for establishing substantial similarity. *See Hartman*, 833 F.2d at 120 ("There must be substantial similarity 'not only of the general ideas but of the expressions of those ideas as well.' First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works."). Thus, Rottlund's "gestalt theory" requires a departure from Eighth Circuit law.

No cases have applied "gestalt theory" as the basis for establishing copying or substantial similarity. Only two cases have even used the term "gestalt" in the context of copyright infringement. *See Apple Computer, Inc. v. Microsoft C*orp., 799 F. Supp. 1006 (N.D. Cal. 1992), *aff'd on point*, 35 F.3d 1435, 1445 (9th Cir. 1994), *cert. denied,* 513 U.S. 1184 (1995); *John G. Danielson v. Winchester-Conant Properties, Inc.*, 186 F. Supp.2d 1 (D. Mass. 2002), *aff'd on other grounds* 322 F.3d 26 (1st Cir. 2003).

In *Apple Computer*, the district court rejected the "gestalt theory" of infringement. 799 F. Supp. at 1016 ("Apple contended that its own list of similarities are not exact descriptions of any infringing features, but merely examples of the overall similarity of defendants' works. Sticking stubbornly to a 'look and feel' or 'gestalt' theory of this lawsuit, Apple was apparently of the belief that these passwords would automatically get its case around summary judgment motions and to a jury, regardless whether any of the visual displays that potentially comprise this 'look and feel' are themselves protectible expression.") The Ninth Circuit affirmed this rejection of "gestalt theory." *Apple*, 35 F.3d at 1445; *see also Domingo Cambeiro Prof. Corp. v. Advent*, 211 F.3d 1273, 2000 WL 262597 (9th Cir. 2000) (affirming motion for attorney fees and holding that it was objectively unreasonable for the plaintiff to "oppose the use of analytic dissection under the extrinsic test.").

In *Danielson*, the district court held in the context of a dispute over validity that a defendant's attack on the originality of the plaintiff's drawings "targets individual elements of the plans . . . but ignores the gestalt of Danielson's work."

*Danielson*, 186 F. Supp.2d at 10. The *Danielson* court was not analyzing a "gestalt" theory in the context of establishing substantial similarity. In fact, the defendant in *Danielson* admitted direct copying of the plans. *Id.* at 13 ("First, there is no doubt but that Winchester-Willows, through Medford, copied the Claim Drawings.").

Finally, Rottlund has admitted that it has no methodology for evaluating substantial similarity using its "gestalt theory":

> Q Is there a methodology by which someone can compare the floor plans of the Rush Creek development with the floor plans of Town & Country's Homestead Collection to evaluate whether the gestalt of the floor plans is substantially similar?
>
> A Probably not.
>
> Q Is there a methodology by which an individual can compare the as-built structure of Rush Creek with the as-built structure in the Homestead Collection to evaluate whether or not the gestalt of the structures is substantially similar?
>
> A I would say I go through my own process of evaluating the two plans and the two buildings and come to my own conclusion.
>
> Q Is there a methodology?
>
> A No. If I'm understanding your question I would say no.

(Schwiebert Aff., Ex. L at 82, line 14 – 83, line 5).

**B. "Gestalt Theory" For Validity/Originality Does Not Support Rottlund's "Gestalt Theory" For Substantial Similarity.**

The cases relied upon by Rottlund suggest, at most, that a combination of unprotectable elements may be sufficient for originality to sustain validity. In fact, the only case to use the word "gestalt" used the word in the originality/validity context. However, sufficiency of originality for validity <u>does not</u> support Rottlund's attempt to apply the same standard for copying or substantial similarity. The low

level required for originality is insufficient to satisfy the extrinsic test for substantial similarity which requires experts and analytic dissection.

The essence of any claim of copyright infringement is that the defendant must copy the original or "protectable" aspects of the copyrighted work. *Feist*, 499 U.S. at 348, 361. This is because "not all copying is copyright infringement." *Id.* at 361; *Attia*, 201 F.3d at 52-3 ("The problem underlying plaintiff's claim of copyright infringement, however, is that not all copying from copyrighted materials is necessarily an infringement of the copyright. There are elements of a copyrighted work that are not protected even from intentional copying."); s*ee also* M. Nimmer & D. Nimmer, NIMMER ON COPYRIGHT [hereinafter "Nimmer"], § 13.03 [B][2][a] ("An essential element of an infringement case is that plaintiff must show that defendants' works are substantially similar to elements of plaintiff's work that are copyrightable or protected by the copyright. When similar works resemble each other only in those unprotected aspects, then defendant prevails.")

Rottlund's attempt to apply the "gestalt theory" of validity to the standard for copying or substantial similarity was expressly rejected by the Ninth Circuit in *Apple Computer.* Although the *Apple Computer* court recognized that copyrights may be valid based upon an original selection and arrangement of unprotected elements, the Ninth Circuit held that the party claiming infringement "may place '*no* reliance upon any similarity in expression resulting from' unprotectable elements." 35 F.3d at 1446 (emphasis in original) (quoting *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987)). "Otherwise, there would be no point to the extrinsic test, or to distinguishing ideas from expression." *Id.* at 1446. Thus,

unprotectible elements have to be identified and filtered before the works can be considered as a whole. *Id.* Only after the Court has defined the scope of the copyright by filtering out unprotected elements and applying the doctrines of merger and *scenes a faire* can the intrinsic or subjective test be evaluated. *Id.* at 1443; *see also Eve of Milady v. Impression Bridal, Inc.*, 986 F. Supp. 158, 160 (S.D.N.Y. 1997) ("In cases involving a design with both protectable and unprotectable elements . . . the finder of fact may not rely on overall impressions to determine whether unlawful appropriation has occurred. Rather the Court must compare only the protected portions of the design to determine whether infringement has occurred.").

**C. The Defendants Are Entitled To Summary Judgment On "Gestalt Theory."**

This Court has expressly limited Rottlund's theory of copyright infringement to its "gestalt theory" and not to a traditional individual elements copyright infringement analysis. (Schwiebert Aff., Ex. J at 12) ("Consistent with this Court's previous Orders, Plaintiff will not be permitted to assert liability based upon individual elements, including sprinkler room elements."); (*Id.*, Ex. K at 13) ("Further, the wording 'infringement of Rottlund's Villa II sprinkler system construction drawings' is problematic given that Plaintiff is claiming only infringement of the Villa II's gestalt, rather than infringement of any individual element.").

The effect of the Court's determination in this motion of whether "gestalt theory" is consistent with Eighth Circuit copyright law was stated by the Court during the hearing on January 15, 2003 in response the defendants objection to

Rottlund's "gestalt theory." (*Id.*, Ex. M at 61 – 62) ("THE COURT: . . . But if it is the Gestault [sic], then we're going to litigate Gestault [sic] here. And if you're right about Gestault [sic], you will win.").

## IV. CONTRIBUTORY INFRINGEMENT AND VICARIOUS LIABILITY.

In order to establish vicarious liability, Rottlund must demonstrate that the particular defendant "(1) possessed the right and ability to supervise the infringing activity; and (2) possessed an obvious and direct financial interest in the exploited copyrighted materials." *Rottlund v. Scott Larson Co., Inc.*, Civ. No. 02-1238, 2004 WL 742054, *5 (D. Minn. 2004). "Whether the defendant[] had the right and ability to control the activities which infringe the copyrights and whether [she] had a direct financial interest in the activities are issues of law." *Id.* (quoting *Realsongs v. Gulf Broadcasting Corp.*, 824 F. Supp. 89, 91 (M.D. La. 1993)).

In order to establish contributory infringement, Rottlund must establish that the particular defendant "(1) induced, caused, or materially contributed to the infringing conduct of another, and (2) knew of the infringing activity." *Rottlund*, 2004 WL 742054, *6.

## V. JUDICIAL ESTOPPEL.

"Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000); *see also Hossaini v. Western Missouri Medical Center*, 140 F.3d 1140, 1142 (8th Cir. 1998) ("The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation.").

## ARGUMENT

### I. ROTTLUND FAILED TO IDENTIFY MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT ON THE DIRECT COPYRIGHT INFRINGEMENT COUNTS AGAINST TCM (COUNTS I & II).

#### A. Rottlund Has Offered No Evidence To Satisfy The Extrinsic Test For Copyright Infringement.

1. Comparison Of Objective Details After Analytic Dissection.

Rottlund bears the burden of satisfying the extrinsic test for copyright infringement - whether there is substantial similarity in the objective details between the copyrighted work and the alleged infringement. *See Hartman*, 833 F.2d at 120 ("First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the **details of the works**.") (emphasis added); *Hoch*, 284 F. Supp.2d at 1222.("The extrinsic test focuses on **alleged similarities** in the **objective details of the works**." ) (emphasis added); *Kootenia*, 2002 WL 15594, at *5; *Janel Russell Designs, Inc.*, 2001 WL 1631331, at *2; Schoolhouse, 2001 WL 1640081, *4 ("Under the *Hartman* test, the court must first determine whether the details of the works contain objective similarities.").

In addition, the court must engage in analytic dissection to filter out the non-protectable elements before comparing the objective details in the extrinsic test. *See Hoch,* 284 F. Supp.2d at 1222. ("A court applying the extrinsic test must 'filter out and **disregard** the non-protectible elements in making its substantial similarity determination.'") (emphasis added); *Kootenia,* 2002 WL 15594, *5 ("Plaintiff's expert illustrates *generic* similarities between the homes. . . . Highlighting similarities in the general ideas of locating functional elements of the home is insufficient to create a genuine issue of fact.") (emphasis in original); *see also*

*Hartman*, 833 F.2d at 120-121 ("The district court employing the two-step analysis found Hartman's work consisted almost entirely of noncopyrightable general themes and ideas. . . . We also agree any remaining apparent similarities are either noncopyrightable ideas, scenes a faire, or of an insubstantial nature."). Analytic dissection protects the constitutional requirement that ideas are not protected and "encourages others to build freely upon the ideas and information conveyed by a work." *Feist*, 499 U.S. at 349-350 ("This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship.")

Pursuant to the doctrine of judicial estoppel, Rottlund is precluded from now arguing that analytic dissection is not necessary in performing the extrinsic test. *See Pegram,* 530 U.S. at 227 n.8 (2000); *Hossaini*, 140 F.3d at 1142. In opposition to defendants' motion to compel objective details, Rottlund argued that expert testimony and "analytical dissection" was necessary under the extrinsic test. The Court adopted Rottlund's position in its October 10, 2002 Order and postponed the disclosure of the allegedly protectable objective details until expert disclosures. Rottlund is barred from arguing against analytic dissection or the necessity of experts in the extrinsic step.

2. <u>Rottlund Failed to Identify The Allegedly Protectable Objective Details.</u>

Despite the Court's October 10, 2002 Order, Rottlund has failed to identify the protectable elements of the drawings and structures that it claims the defendants infringed at the time it provided its expert reports. (Schwiebert Aff. Exs. T - V) (Expert Reports of A.Desnick). In fact, Rottlund has failed to provide any objective details that it contends survive the required analytic dissection. As such,

Rottlund has failed to establish a *prima facie* case of copyright infringement and TCM is entitled to summary judgment.

The only evidence in the record is Rottlund's unsupported allegations of similarity in its list of items. (Murdoch Aff., Ex. J). The same list of items without additional information required by the court also appears in Mr. Desnick's expert report. (Schwiebert Aff., Ex. T). This list is insufficient to prevent summary judgment. *Hartman* 833 F.2d at 120 ("The listing of similarities does not alone generate an issue of material fact precluding summary judgment."). In fact, Rottlund has never asserted that this list contains items that are protectable. This argument would be contrary to law. *Kootenia*, 2002 WL 15594, *3 ("To the extent that such plans include generalized notions of where to place functional elements, how to route traffic, and what methods of construction and principles of engineering to rely on, these are 'ideas' that may be taken and utilized by a successor without violating the copyright of the original 'author' or designer.") (quoting *Attia*, 201 F.3d at 55).

**B. The Objective Details Of TCM's Townhomes Are Not Substantially Similar To Rottlund's Copyrights.**

1. <u>The Homestead Collection.</u>

    a. The Interior Units Are Not Substantially Similar.

One half of the townhomes in the deposit materials for VAu 447-395, VAu 534-723, and VAu 546-285 are interior units. Even a superficial comparison of the plans reveals that the Homestead interior units are not at all similar to the interior units of 447-395, 534-723, and 546-285.

Most notably, the interior units in the Homestead plans provide for a two-story living room with a loft area on the second floor, while the 447-395, 534-723, and 546-285 plans do not depict any two story volume spaces or lofts. (*Compare* Schwiebert Aff., Ex. N at RCI 004158, *with* Ex. O at BSB 02315). In addition, the stairwells are in different locations: in the Homestead plans the staircase bisects the living room from the dining room, as opposed to the Rottlund plans, where the stairs are in the rear of the unit. (*Id.*) This difference leads to radically different floor plans on both the first and second floor. (*Id.*)

To patch over this substantial, perhaps fatal, difference between the Homestead plans and the Rottlund plans, Rottlund alleges that the Homestead *interior* units are actually copies of the *exterior* units in the 447-397, 534-723, and 546-285 plans. This argument is inconsistent with Rottlund's "gestalt theory." In the same breath, Rottlund asserts the defendants have copied the "total look and feel" of its plan, and that the defendants drastically altered the plan by eliminating one-half of the designs. Rottlund's plans depict an eight unit building with two unit types repeated four times each, while the Homestead plans allegedly depicts only one unit type, repeated eight times.

Even if the Court accepts Rottlund's contention, it would require a side-by-side comparison of the interior Homestead unit with the exterior Rottlund unit. The differences are overwhelming. The Homestead interior units only have windows in the front, whereas the exterior units have windows on two sides. (*Compare* Schwiebert Aff., Ex. N at RCI 004158 *with* Ex. O at BSB 02315). The main entrance for Rottlund's exterior units plans is on the side of the building, opening

between the living room and dining room. (*Id.*) In contrast, the entrance to the Homestead interior unit is in the front, opening onto the living room only, with the dining area in the rear of the unit. (*Id.*) The exterior units have a patio off of the dining area, accessed by sliding glass doors. Not so for the Homestead interior units. The patio is in the front, off of the living room, and it has no sliding glass doors. (*Id.*)

b. The Exterior Units Are Not Substantially Similar.

A side-by-side comparison of the Homestead Collection technical drawings with the deposit materials for VAu 447-395, 534-723, and VAu 546-285 reveals that none of the seventy-one items identified in Rottlund's interrogatory answer are expressed in the same manner. For example, Rottlund separately identifies the placement, proportions and layout of the master bedroom/owner's suite and master bath as six of the claimed similarities that comprise the "gestalt" of its designs. (Murdoch Aff., Ex J at items ss – uu, xx – zz). The master suite in the Centennial Crossing and Harvest Hills technical drawings, however, is not placed in the same location, it does not have the same layout, and its proportions are substantially different from the master suite in the deposit materials for VAu 546-285, 534-723, or VAu 447-395. The two rooms are actually in opposite corners of the second floor. (*Compare* Schwiebert Aff., Ex. N at RCI 004156 *with* Ex. O at BSB 02323). Aside from the fact that they both contain a toilet, sinks and a bathtub, master baths in the Centennial Crossing and Harvest Hills technical drawings are not even similar to the deposit materials for VAu 546-285, 534-723, or VAu 447-395. (*Id.*)

c. Expert Testimony

The only expert testimony regarding the first step of evaluating substantial similarity between the objective details in the Homestead Collection and Rottlund's copyrights is the Expert Reports of Jeffrey Scherer and Albert Bloom. (Schwiebert Aff., Ex Q and R). Mr. Scherer has reviewed the plans at issue and compared several aspects of the designs, with particular emphasis on the elements identified in Rottlund's interrogatory answer. Both Mr. Scherer's report and Mr. Bloom's report demonstrates that Rottlund cannot prevail on the issue of substantial similarity. (*Id.*) In the very aspects that Rottlund claims are similar (e.g., the layout, proportion and placement of the living room, dining room, kitchen, gabled side entry, etc.), the objective details of the Homestead designs are strikingly dissimilar.

2. <u>The Chateau Collection</u>

a. The Interior Units Are Not Substantially Similar.

Even a superficial comparison of the plans reveals that the Chateau Collection interior units are not at all similar to the interior units of 447-395, 534-723, and 546-285. The Chateau's two-story volume space at the entry is totally different from the Villa II's nine-foot ceiling. (Schwiebert Aff., Ex. H at 8). The switchback stair at the rear of the unit is totally different from the Villa II's stair and changes the circulation through the dining area. (*Id.*) The Chateau's U-shaped kitchen is substantially different from the Villa II's L-shaped kitchen. (*Id.*) The fireplace and media niches are in different locations. (*Id.*) The Chateau offers a

storage room not found in the Villa II. (*Id.*) The second floor of the interior units are also substantially different. (*Id.*)

b. The Exterior Units Are Not Substantially Similar.

The Chateau Collection has two different exterior or end units: End Unit A and End Unit C. End Unit C is a front loaded entry plan that does not exist in the Villa II plans and, thus, is totally different. (*Id.* at 5, 8). The End Unit A plan is not substantially similar to the exterior units in the Villa II. The End Unit A's nine-foot ceiling is different from the Villa II's two-story volume space. (*Id.* at 6). The line of sight of entry is directed at the dining and kitchen area as opposed to the Villa II's light of sight entry towards the central stair and two-story living space. (*Id.*) The fireplace in the bay of the End Unit A is in a completely different location. (*Id.*) The kitchen is a galley kitchen with a different shape and size than the Villa II's L-shaped kitchen. (*Id.*) The second floor of the Unit A is also dramatically different than the second floor of the Villa II. (*Id.*)

c. Expert Testimony.

The expert reports of Jeffrey Scherer and Albert Bloom demonstrate that a comparison of the objective details of the Chateau Collection and the Villa II results in the inescapable conclusion that the products and plans are not substantially similar. (Schwiebert Aff., Exs. H & S).

## II. ROTTLUND FAILED TO IDENTIFY MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT ON THE INDIRECT COPYRIGHT INFRINGEMENT COUNTS AGAINST TCM (COUNTS III & IV).

This Court should rule as a matter of law that TCM is not liable for contributory infringement. There is no evidence in the record that TCM induced,

caused, or materially contributed to the allegedly infringing conduct of Pinnacle, BSB, or Bloodgood. *See Rottlund*, 2004 WL 742054, *6. There is no evidence in the record that TCM derived profits off sales by Pinnacle of "Infringing Town Home Units, Chateau Collection town home units, and other substantially similar products." (Sixth Amended Complaint at ¶ 114). Pinnacle never built or sold the Chateau Collection. There is no evidence in the record that TCM profited from BSB or BSB Illinois' allegedly infringing designs. To the contrary, TCM paid BSB for the work performed on the Homestead Collection.

This Court should rule as a matter of law that TCM is not liable for vicarious liability. There is no evidence in the record that TCM possessed the right and ability to supervise the allegedly infringing activity of Pinnacle, Bloodgood, BSB, or BSB Illinois. *See Rottlund*, 2004 WL 742054, *5. The only evidence in the record is that TCM hired BSB as its architects to design the plans for the Homestead Collection. There is also simply no evidence of supervision by TCM over Pinnacle, Bloodgood, or BSB Illinois. There is no evidence in the record that TCM possessed "an obvious and direct financial interest" in the allegedly exploited copyrighted materials by Pinnacle, Bloodgood, BSB or BSB Illinois. *Id.* There is no evidence that TCM received <u>any money</u> from the alleged infringement by Pinnacle, Bloodgood, BSB, or BSB Illinois.

## III. ROTTLUND FAILED TO IDENTIFY MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT ON THE DIRECT COPYRIGHT INFRINGEMENT COUNTS AGAINST PINNACLE (COUNTS VII & VIII).

### A. Rottlund Has Not Identified The Protectable Elements Of Its Works.

As discussed in Section I.A. *infra*, Rottlund has failed to make the Court ordered disclosures regarding the allegedly protectable elements of its works for the necessary analytic dissection and comparison of the protectable objective details in the extrinsic test for substantial similarity. As a result, this Court should enter summary judgment in favor of Pinnacle with respect to all claims involving Washington Square designs and structures.

### B. Rottlund Cannot Make Out A *Prima Facie* Case Of Substantial Similarity.

When this Court analyzes, as it must, the protectable elements of Rottlund's works with Pinnacle's four-unit structures, six-unit structures, and corresponding technical drawings, it should conclude as a matter of law that neither the buildings nor the drawings are substantially similar. Rottlund knows this is the case, and that is why Rottlund has tried to make this a lawsuit about anything *but* the actual designs and buildings at issue.

1. Four-unit townhomes at Washington Square.

The four-unit townhomes at Washington Square do not have interior units. Nor do they consist of four "exterior" units. Instead, Pinnacle's four-unit buildings at Washington Square have two Garfield units and two Arlington units (i.e., two floor plans generally described in this litigation as exterior, and two that are "interior" floor plans). (Murdoch Aff., Ex A. at PIN00006-7) Pinnacle's Arlington townhome in a four-unit building has an entry door immediately adjacent to the

garage. (*Id.*) The entry opens into the living room with a dining area in the rear of the unit. Because the unit is not "interior," however, it has windows on two walls in the living room and in the dining room. (*Id.*) Above the dining room is a loft, with windows, overlooking the living room area. (*Id.*)

Contrary to the allegations of Rottlund's Sixth Amended Complaint, Pinnacle's Arlington townhome in a four-unit building is not substantially similar to Rottlund's interior unit townhome. Rottlund's interior unit only has windows on the front. (Murdoch Aff., Ex. G at D00008) It has no loft. (*Id.*) Its staircase is in the rear of the unit rather than the middle (*id.*), and its second floor bears no similarity at all to Pinnacle's Arlington.

The buildings as a whole are not remotely similar. Pinnacle's four-unit building has two different types of exterior units built twice; Rottlund's plan has one exterior unit built four times and one interior unit built four times. Both of Washington Square's four-unit plans provide for a two-story living room with a loft area on the second floor, while one-half of the units in Rottlund's 447-395, 534-723, and 546-285 plans lack two-story volume spaces or lofts.

In addition, the four-unit configurations at Washington Square have elevations that are strikingly different than Rottlund's 447-395 plans. For example, both side elevations of Rottlund's 447-395 plan are:



(D00001). This bears no resemblance to one of the side elevations of the Washington Square four-unit town home building:



(Murdoch Aff., Ex. A at PIN 00008)

The front elevations, as well, are dramatically different. Rottlund's 447-395 plan depicts an eight-unit structure:



(Murdoch Aff., Ex. G at D00001)

Whereas Pinnacle's front elevation for its four-unit Washington Square structure looks nothing like Rottlund's product:



(Murdoch Aff., Ex. A at PIN 00008)

2. <u>Six-Unit Townhomes At Washington Square.</u>

The six-unit townhomes at Washington Square have four Garfield units, which serve as exterior units, surrounding two Arlington units, which, in this configuration, serve as interior units. Even a cursory comparison of the technical drawings for the Washington Square six-unit town home structure and the Rottlund 447-395 technical drawings reveals striking differences between the designs. For example, the Washington Square interior units have a two-story living room with a loft on the second floor, while the interior units in Rottlund's 447-395, 534-723, and 546-285 plans do not depict any two-story volume spaces or lofts. (*Compare* Murdoch Aff., Ex. A *with* Ex. G) In addition, the stairwells are in different locations. (*Id.*)

3. Expert testimony.

Pinnacle has filed with this motion the Affidavit and Preliminary Expert Report of Jeffrey A. Scherer, Pinnacle's retained expert. Mr. Scherer is an architect licensed to practice in nineteen states. (Schwiebert Aff., Ex. Q). He is a Fellow of the American Institute of Architects and former President of the Minnesota Chapter of the American Institute of Architects. (*Id.*)

Mr. Scherer has reviewed the plans at issue and compared several aspects of the designs, with particular emphasis on the items identified in Rottlund's interrogatory answer. Mr. Scherer's report persuasively demonstrates that no substantial similarity exists in the objective details of the works.[2] Indeed, in the same ways Rottlund claims they are alike (*e.g.*, the layout, proportion and placement of the living room, dining room, kitchen, gabled side entry, etc.), the Pinnacle designs are markedly dissimilar.

**C. There Is No Proof Of Actual Copying By Pinnacle Of The Technical Drawings.**

Finally, this Court should rule as a matter of law that there is no proof of actual copying by Pinnacle of the deposit materials for the 447-395, and 526-285 registrations. The only evidence in the record that Rottlund alleges bears on the issue of actual copying relates to Rottlund's sprinkler room.[3] In order to state a claim for actual copying on the basis of these transmittals, Rottlund would need to

---

[2] While many of the diagrams in the Appendix to Mr. Scherer's report refer to TCM's 1529 and 1450 plans, Mr. Scherer's analysis of those floor plans applies with equal force to the Washington Square technical drawings, which Mr. Scherer also analyzed. (*Compare* Schwiebert Aff., Ex. Q at Appendix 1.01, 1.12, 1.24, 1.23 *with* Murdoch Aff., Ex. A at PIN00006-07).

[3] As all of the defendants have argued, the sprinkler rooms do not actually relate to copying, but rather only relate to the issue of access.

establish (1) that the Washington Square sprinkler room is substantially similar to Rottlund's, and (2) that the sprinkler room design is protectable. If it fails on either issue, it has no claim for direct copying. *See* Nimmer, § 13.01[B] at 13-8. Washington Square has no sprinkler system; Rottlund has no claim against Pinnacle for direct copying of Rottlund's technical drawings.

## IV. ROTTLUND FAILED TO IDENTIFY MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT ON THE INDIRECT COPYRIGHT INFRINGEMENT COUNTS AGAINST PINNACLE (COUNTS IX & X).

This Court should rule as a matter of law that Pinnacle is not liable for contributory infringement. There is no evidence in the record that Pinnacle induced, caused, or materially contributed to the allegedly infringing conduct of TCM, Bloodgood, BSB, or BSB Illinois. *See Rottlund*, 2004 WL 742054, *6. In fact, Rottlund has made no allegation of direct infringement against BSB Illinois. There is also no evidence in the record that Pinnacle derived profits off sales by TCM, Bloodgood, BSB, or BSB Illinois.

This Court should rule as a matter of law that Pinnacle is not liable for vicarious liability. There is no evidence in the record that Pinnacle possessed the right and ability to supervise the allegedly infringing activity of TCM, Bloodgood, BSB, or BSB Illinois. *Id.* at *5. There is no evidence in the record that Pinnacle possessed "an obvious and direct financial interest" in the allegedly exploited copyrighted materials by TCM, Bloodgood, BSB, or BSB Illinois.

## V. ROTTLUND FAILED TO IDENTIFY MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT ON THE DIRECT COPYRIGHT INFRINGEMENT COUNTS AGAINST BSB AND BLOODGOOD (COUNTS XIV, XV, XVIII, & XIX).

Rottlund's only allegation of copyright infringement against BSB and Bloodgood is that they prepared the architectural plans that TCM and Pinnacle used to construct the Homestead Collection and Washington Square back-to-back townhomes. Rottlund cannot make a *prima facie* case of copyright infringement against either BSB or Bloodgood for the reasons stated above – Rottlund failed to provide evidence in the record of objective details that can be analytically dissected by the court to evaluate substantial similarity under the extrinsic test. Thus, the court should grant summary judgment as to the claims of direct copyright infringement against BSB and Bloodgood.

## VI. ROTTLUND FAILED TO IDENTIFY MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT ON THE INDIRECT COPYRIGHT INFRINGEMENT COUNTS AGAINST BSB AND BLOODGOOD (COUNTS XVI, XVII, XX & XXI).

This Court should rule as a matter of law that BSB and Bloodgood are not liable for contributory infringement. There is no evidence in the record that BSB or Bloodgood induced, caused, or materially contributed to the allegedly infringing conduct of Bloodgood, BSB, TCM, Pinnacle, or BSB Illinois. *See Rottlund*, 2004 WL 742054, *6. In fact, there are no allegations of direct copyright infringement against BSB Illinois.

This Court should rule as a matter of law that BSB and Bloodgood are not liable for vicarious liability. There is no evidence in the record that BSB or Bloodgood possessed the right and ability to supervise the allegedly infringing

activity of BSB, Bloodgood, Pinnacle, TCM, or BSB Illinois. *Id* at *5. There is no evidence in the record that BSB or Bloodgood possessed "an obvious and direct financial interest" in the allegedly exploited copyrighted materials by BSB, Bloodgood, Pinnacle, TCM, or BSB Illinois. *Id.*

## CONCLUSION

For all of the foregoing reasons, this Court should grant defendants' Motion for Partial Summary Judgment.

Dated: June 14, 2004

s/Darren B. Schwiebert
Daniel J. Maertens (#188311)
Cynthia Jokela Moyer (#211229)
Darren B. Schwiebert (#260642)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street #4000
Minneapolis, MN 55402
Telephone: (612) 492-7312
Facsimile: (612) 492-7077

ATTORNEYS FOR DEFENDANT TOWN & COUNTRY HOMES, INC.

– AND –

Holly J. Newman (#26457X)
Ben Patrick (#312460)
MOORE, COSTELLO & HART P.L.L.P
701 4TH Avenue South, Suite 1350
Minneapolis, MN 55415
Telephone: (612) 395-8695
Facsimile: (612) 395-8600

ATTORNEYS FOR DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS & PLANNERS OF IOWA, INC. AND THE BLOODGOOD GROUP, INC.

– AND –

Edward F. Ryan
Christopher J. Murdoch
Matthew I. Farmer
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th Fl.
Chicago, IL 60603
Telephone: (312) 263-3600
Facsimile: (312) 578-6666

David Donna (#163624)
DONNA & DALY
1460 Buffet Way, Suite 150
Eagan, MN 55121
Telephone: (651) 406-4242
Facsimile: (651) 406-4243

ATTORNEYS FOR DEFENDANT PINNACLE CORPORATION

#2979642\1