UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Rottlund Company, Inc.,
d/b/a Rottlund Homes,
a Minnesota Corporation,

Plaintiff,

v.

Pinnacle Corporation,
d/b/a Town & Country Homes,
an Illinois Corporation,
et al.,

Defendants,

and,

Town & Country Homes, Inc.,
a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster
Architects & Planners of Iowa, Inc.,
an Iowa Corporation,

Third-Party Defendant.

Civil Action No. 01-CV-1980 DSD/SRN

**TOWN & COUNTRY HOMES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

**(ORAL ARGUMENT REQUESTED)**

---

Rottlund's counsel, Winthrop & Weinstine, has in its possession relevant and discoverable information relating to Rottlund's technical "expert," Anthony Desnick. For example, Winthrop & Weinstine has electronic draft versions of Mr. Desnick's expert reports. These electronic drafts received and sent by Winthrop and Weinstine to Mr. Desnick illustrate "certain things had been deleted and other things added." Affidavit of Darren Schwiebert, Ex. A at 119, line 17 – 19. (Deposition of Anthony Desnick).

Defendants have requested that all communication between Winthrop & Weinstine and Mr. Desnick, including these electronic documents be immediately produced. Schwiebert Aff., Ex. B. Rottlund has refused asserting, without support, a work-product privilege. Schwiebert Aff., Ex. C.

## STATEMENT OF FACTS

Winthrop & Weinstine exchanged relevant information with Mr. Desnick. The June 23, 2004 deposition testimony of Mr. Desnick is unambiguous:

> Q. Did you provide Mr. Krummen or Mr. Davenport with any earlier versions of any of these reports?
>
> A. Each of these reports had one or two earlier drafts, which we reviewed together, and most of the changes that I'm recalling were grammatical changes and things that were inconsistent with the fact pattern, particularly with respect to chronology. I was getting some dates wrong and they helped me with what the dates were. There was one specific time when I remember I got a file from their office that had a series of documents that I had already had in my possession but these documents were placed in chronological order to help me understand the fact pattern with respect to chronology.
>
> Q. Now you testified to most of those changes being grammatical, what were the other changes?
>
> A. Again, dates with respect to the chronology where I had gotten it wrong.
>
> Q. When you said you reviewed them with Mr. Krummen and Mr. Davenport, how did you do that?
>
> A. I had sent them copies of the report for them to review.
>
> Q. How did you send those reports?
>
> A. They were sent electronically.

Q. Fax?

A. No, attached to an e-mail, and each time we were passing back and forth and they were overwritten, the previous one was overwritten and didn't exist any longer.

Q. So you then received a report back from Mr. Krummen's office?

A. Right.

Q. And that was overwritten?

A. Right. And then I would review that and make any changes I would have and send it back and they would print it, I'd go to their office and sign it.

Q. So how did -- how did you know what it was that Mr. Krummen and Mr. Davenport had overwritten when they sent you back their markup of the report?

A. They -- The secretary that, you know, sent it back and forth for me had X'd out things and underlined things so I knew what changes had been made. I'm not sure of the nomenclature of how it works within Microsoft Word, but you could tell certain things had been deleted and other things added.

Q. You heard the term red line version of a document?

A. Yeah. And I've heard it with respect to architectural drawings more but actually I never heard it with respect to a written document but it means the same thing, I'm sure.

Q. When the documents came back to you, did they contain, for example, single lines through certain text indicating something had been deleted?

A. Exactly.

Q. How many sets of revisions went back and forth between the two offices, each of these reports?

A. I would say one or two with each of the reports.

Schwiebert Aff., Ex. A at 117, line 24 – 120, line 7.

These electronic documents must still exist at the law firm of Winthrop and Weinstine. Copies of all e-mails sent by Mr. Desnick would be located in their "In-Box" or another folder. Copies of redline changes made by Winthrop and Weinstine would be in their "Sent" folders. Even if "deleted" these e-mails would reside in a "Deleted Items" folder.[1] Rottlund's response to TCM's request does not deny the existence of these documents at Winthrop & Weinstine.

Finally, pursuant to Rottlund's request, defendants produced on June 29, 2004, all communication exchanged with Mr. Scherer, defendants' architectural expert, including e-mail communication with attachments. Schwiebert Aff., ¶ 3.

## ARGUMENT

### I. INFORMATION EXCHANGED WITH ROTTLUND'S "EXPERT" IS DISCOVERABLE.

Rule 26 mandates disclosure of all information shared with a testifying expert, including the mental impressions and opinions of the attorney. *See, e.g., Baum v. Village of Chittenango*, 218 F.R.D. 36, 40 (N.D.N.Y. 2002); *TV-3, Inc. v. Royal Ins. Co.,* 194 F.R.D. 585, 589 (S.D. Miss.2000); *Simon Prop. Group L.P. v. mySimon, Inc.,* 194 F.R.D. 644, 647 (S.D. Ind.2000) ("[A]n intentional disclosure of opinion work-product to a testifying expert effectively waives the work-product

[1] If Winthrop & Weinstine contends that this information has been intentionally permanently deleted, TCM requests an affidavit stating the circumstances surrounding the deletion of these e-mails and the deposition of an IT individual at Winthrop with sufficient knowledge to determine if the deleted e-mails can be restored. *See Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002) ("Moreover, it is a well accepted proposition that deleted computer files, whether they be e-mails or otherwise, are discoverable.").

privilege."); *Lamonds v. General Motors Corp.,* 180 F.R.D. 302, 305-06 (W.D. Va.1998); *B.C.F. Oil Refining, Inc. v. Consol. Edison Co. of New York, Inc.,* 171 F.R.D. 57, 63 (S.D.N.Y.1997); *Musselman v. Phillips,* 176 F.R.D. 194, 198 (D. Md.1997); *Karn v. Ingersoll-Rand,* 168 F.R.D. 633, 635-36 (N.D. Ind.1996); *Furniture World, Inc. v. D.A.V. Thrift Stores, Inc.,* 168 F.R.D. 61, 62 (D.N.M.1996).

More specifically, drafts of expert reports bearing counsel's comments are discoverable. *See, e.g,* Weil v. Long Island Savings Bank, 206 F.R.D. 38, 43 (E.D.N.Y. 2001).

## CONCLUSION

For all of the foregoing reasons, this Court should grant TCM's Motion to Compel and order Rottlund to produce all communication between the law firm of Winthrop and Weinstine and Mr. Desnick, including the e-mail communication containing draft and redlined versions of the expert reports.

Dated: July 1, 2004

s/Darren B. Schwiebert
Daniel J. Maertens (#188311)
Cynthia Jokela Moyer (#211229)
Darren B. Schwiebert (#260642)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street #4000
Minneapolis, MN 55402
Telephone: (612) 492-7312
Facsimile: (612) 492-7077

ATTORNEYS FOR DEFENDANT
TOWN & COUNTRY HOMES, INC.

#2987533\1