The Rottlund Company, Inc. v.
Pinnacle Corporation and Town & Country Homes, Inc.
Court File No. 01-1980 DSD/SRN

Schwiebert Affidavit

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - -

The Rottlund Company, Inc.
d/b/a Rottlund Homes,
a Minnesota corporation,
Plaintiff,

vs. Case No. 01-CV-1980 (DSD/SRN)

Pinnacle Corporation
d/b/a Town & Country Homes,
an Illinois Corporation, and
Town & Country Homes, Inc.,
a Minnesota Corporation,
Defendants,

and

Town & Country Homes, Inc.,
a Minnesota corporation,
Third-Party Plaintiff,

vs.

Bloodgood Sharp Buster
Architects & Planners of Iowa,
Inc., an Iowa corporation,
Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION OF ANTHONY S. DESNICK
VOLUME I, Pages 1 - 218

(The following is the deposition of ANTHONEY S. DESNICK, taken pursuant to Notice of Taking Deposition, at the offices of Fredrikson & Byron, 4000 Pillsbury Center, 200 South Sixth Street, in the city of Minneapolis, state of Minnesota, commencing at approximately 9:11 o'clock a.m., June 23, 2004.)

COPY

12:12:19 A. Well there were discussions, as I recall, in
12:12:22 Jeff Scherer's report, for example, of a project by,
12:12:26 was it, Centex, and just in general I'm recalling but
12:12:31 there were other back-to-back projects that were
12:12:35 discussed. But earlier when I said I was unaware of
12:12:40 it, I guess what I was referring to, I had not seen
12:12:43 any, or a better way of characterizing it is I had
12:12:46 not paid attention to them.
12:12:48 Q. And you had not sought any out?
12:12:51 A. Certainly no.
12:12:58 Q. I want to ask you to take a look at Exhibit 417.
12:13:04 A. Okay.
12:13:07 Q. Did you write this?
12:13:09 A. Yes.
12:13:11 Q. They are your own words?
12:13:11 A. They are my own words.
12:13:12 Q. The same is true for Exhibits 418, 419, 420;
12:13:12 correct?
12:13:17 A. Yes, all four reports.
12:13:20 Q. And you came up with all these words on your
12:13:23 own?
12:13:23 A. I've learned them over time, but, yes, I came up
12:13:27 with the words.
12:13:30 Q. Did you provide Mr. Krummen or Mr. Davenport
12:13:33 with any earlier versions of any of these reports?

A. Each of these reports had one or two earlier drafts, which we reviewed together, and most of the changes that I'm recalling were grammatical changes and things that were inconsistent with the fact pattern, particularly with respect to chronology. I was getting some dates wrong and they helped me with what the dates were. There was one specific time when I remember I got a file from their office that had a series of documents that I had already had in my possession but these documents were placed in chronological order to help me understand the fact pattern with respect to chronology.

Q. Now you testified to most of those changes being grammatical, what were the other changes?

A. Again, dates with respect to the chronology where I had gotten it wrong.

Q. When you said you reviewed them with Mr. Krummen and Mr. Davenport, how did you do that?

A. I had sent them copies of the report for them to review.

Q. How did you send those reports?

A. They were sent electronically.

Q. Fax?

A. No, attached to an e-mail, and each time we were passing back and forth and they were overwritten, the

12:14:58 previous one was overwritten and didn't exist any
12:15:00 longer.
12:15:04 Q. So you then received a report back from Mr.
12:15:06 Krummen's office?
12:15:07 A. Right.
12:15:07 Q. And that was overwritten?
12:15:10 A. Right. And then I would review that and make
12:15:11 any changes I would have and send it back and they
12:15:13 would print it, I'd go to their office and sign it.
12:15:20 Q. So how did -- how did you know what it was that
12:15:25 Mr. Krummen and Mr. Davenport had overwritten when
12:15:28 they sent you back their markup of the report?
12:15:30 A. They -- The secretary that, you know, sent it
12:15:36 back and forth for me had X'd out things and
12:15:40 underlined things so I knew what changes had been
12:15:43 made. I'm not sure of the nomenclature of how it
12:15:46 works within Microsoft Word, but you could tell
12:15:49 certain things had been deleted and other things
12:15:51 added.
12:15:52 Q. You heard the term red line version of a
12:15:54 document?
12:15:55 A. Yeah. And I've heard it with respect to
12:15:57 architectural drawings more but actually I never
12:15:59 heard it with respect to a written document but it
12:16:01 means the same thing, I'm sure.

12:16:03 Q. When the documents came back to you, did they
12:16:06 contain, for example, single lines through certain
12:16:08 text indicating something had been deleted?
12:16:11 A. Exactly.
12:16:14 Q. How many sets of revisions went back and forth
12:16:17 between the two offices, each of these reports?
12:16:23 A. I would say one or two with each of the reports.
12:16:27 Q. And do you have -- Let me back up. Were you
12:16:35 receiving those documents at your computer at the ESG
12:16:38 firm?
12:16:38 A. At ESG and later ToolSet.
12:16:47 Q. And you haven't deleted any of those you have
12:16:51 received, have you?
12:16:51 A. The earlier versions?
12:16:53 Q. Correct.
12:16:53 A. The only versions I have left are the current
12:16:59 four. Everything else has been deleted just so I
12:16:59 could keep track of the latest.
12:17:01 Q. Why did you delete them?
12:17:02 A. So I could keep track of which one was the
12:17:04 latest.
12:17:04 Q. You could do that just by noting the date on
12:17:07 which the e-mail came to you; correct?
12:17:09 A. Could, but it was easier, if it was only one, to
12:17:12 know which one it is. It wasn't important for me to

The Rottlund Company, Inc. v.
Pinnacle Corporation and Town & Country Homes, Inc.
Court File No. 01-1980 DSD/SRN

Schwiebert Affidavit

# EXHIBIT B

Fredrikson
& BYRON, P.A.

June 23, 2004

VIA FACSIMILE

Craig Krummen, Esq.
Winthrop & Weinstine, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629

Re: The Rottlund Company, Inc. v. Pinnacle Corporation et al.
Court File No. 01-1980 DSD/SRN

Dear Craig:

Please produce in electronic form all communication between your law firm and Anthony Desnick by the end of the this week. In particular, please produce the draft redlined versions of each of Mr. Desnick's expert reports that Mr. Desnick testified during his deposition today were sent by your office to Mr. Desnick as attachments to e-mails.

Very truly yours,

Darren B. Schwiebert
Direct Dial: 612.492.7312
Email: dschwiebert@fredlaw.com

cc: Holly Newman, Esq. (via facsimile)
Matt Farmer, Esq. (via facsimile)
Chris Mudoch, Esq.(via facsimile)

The Rottlund Company, Inc. v.
Pinnacle Corporation and Town & Country Homes, Inc.
Court File No. 01-1980 DSD/SRN

Schwiebert Affidavit

# EXHIBIT C

WINTHROP WEINSTINE

ATTORNEYS AND COUNSELORS AT LAW

June 24, 2004

David A. Davenport
(612) 604-6716
ddavenport@winthrop.com

RECT
JUN 25 2004
DARREN B. SCHWIEBERT

**BY FAX and U.S. MAIL**
Darren Schwiebert, Esq.
FREDRIKSON & BYRON
4000 Pillsbury Center
200 South Sixth Street
Minneapolis, MN 55402-3397

**Re:** ***Rottlund v. Town & Country, et al. v. Bloodgood Architects and Planners of Iowa, Inc.***
Court File No. 01-CV-1980 (DSD/SRN)
Our File No. 10150-3

Dear Darren:

K&B Copy Service made copies of many of Ms. Snelson's documents and materials considered prior to her deposition at your direction. We have yet to receive copies of any of those documents, nor have any of them been Bates labeled. Please ensure that you appropriately Bates label the documents and produce copies to us immediately. As I mentioned to you over a break during Ms. Snelson's deposition, these documents cannot simply exist in the Defendants' files without any Bates labels or production to Rottlund.

As you know, we will depose Jeffrey Scherrer on June 30, 2004. Please confirm that Mr. Scherrer's materials and documents considered, along with his notes and any other information related to his communications with Fredrikson & Byron and/or Holland & Knight will be made available for us to review and inspect on Monday. By copy of this letter to Chris Murdoch, we request that he do the same.

Concerning your June 23, 2004 letter to Craig Krummen, we will consider your inquiry. However, Mr. Desnick testified that he does not retain prior drafts of his reports. You apparently believe that attorneys' files are discoverable, so we respectfully request the following by Monday:

(1) production of all communications, in any form, between Fredrikson & Byron, Art Cobb and/or Jeff Sherrer, and all communications, in any form, between Holland & Knight, Art Cobb and/or Jeff Scherrer; and

(2) the relevant legal authority to support your position.

In addition, please ensure that all documents related to the above communications are made available on Monday as well. By copy of this letter to Chris Mordoch, we request that he do the same.

Very truly yours,

**WINTHROP & WEINSTINE, P.A.**

David A. Davenport
DAD:jep

2126445v1

c: Holly J. Newman, Esq. (by fax and U.S. Mail)
Christopher Murdoch, Esq. (by fax and U.S. Mail)