**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**The Rottlund Company, Inc.**
**d/b/a/ Rottlund Homes, a Minnesota Corporation**

**Civil No. 01-1980 (DSD/SRN)**

**Plaintiff,**

**v.**

**REPORT AND RECOMMENDATION**

**Pinnacle Corporation**
**d/b/a/ Town & Country Homes,**
**an Illinois Corporation, and**
**Town & Country Homes, Inc.,**
**a Minnesota Corporation, Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,**

**Defendants,**

**and**

**Town & Country Homes, Inc.,**
**a Minnesota Corporation,**

**Third-Party Plaintiff,**

**v.**

**Bloodgood Sharp Buster**
**Architects & Planners of Iowa, Inc.,**
**an Iowa Corporation**

**Third-Party Defendant.**

---

Craig S. Krummen, Esq., and David Davenport, Esq., on behalf of Plaintiff

Holly J. Newman, Esq., on behalf of Defendant Bloodgood Sharp Buster and The Bloodgood Group, Inc.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on Defendant Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. (BSB) and the Bloodgood Group, Inc.'s (BGI) (hereinafter collectively Bloodgood or the Bloodgood Defendants) Motion to Dismiss (Doc. No. 301). This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

This motion seeks partial dismissal of a damages theory from the case. Rottlund seeks to hold Bloodgood jointly and severally liable for its alleged co-infringers' profits. Bloodgood submits that it cannot be jointly and severally liable for a co-infringer's profits pursuant to an Order of this Court and copyright law. An explanation of the parties' positions will illuminate the issues.

**I. PARTIES' POSITIONS**

Bloodgood argues that this Court's July 11, 2003 Order precludes any argument or theory that it shared in the profits of its alleged co-infringers, Defendants Town and County Homes of Minnesota (TCM) and Pinnacle Corporation (Pinnacle). Bloodgood is correct. The July 11 Order (Doc. No. 235) addressed Rottlund's motion to amend the complaint to "assert[] a 'practical partnership' theory of liability against BSB, Pinnacle, and TCM, by which they would all be jointly and severally liable for

each other's wrongful profits." July 11 Order, at 7. The Court denied Rottlund's request to add a "practical partnership" theory because it was clear that BSB did not, and Rottlund did not aver otherwise, share in either TCM or Pinnacle's profits. The Court explained:

> In the present case, Plaintiff has alleged no facts demonstrating that BSB bore any risk or shared in profits from its work for TCM. Rather, BSB's contract with TCM, which has already been discussed at length with respect to BSB's potential derivative liability to TCM, provided for a fixed rate rather than any profit sharing. Thus, there is no basis for applying the "practical partnership" doctrine to impose joint and several liability for profits.

Id. at 11.

Importantly, however, the Court's order said nothing of the relationship between TCM and Pinnacle or between BSB and BGI. Bloodgood argues that the complaint, at the time of this motion it was the fifth amended complaint, still asserts in certain paragraphs that Bloodgood shared in TCM and Pinnacle's wrongful profits and that Bloodgood is jointly and severally liable to Rottlund for TCM and/or Pinnacle's profits. Specifically, Bloodgood points to the following paragraphs of the fifth amended complaint as impermissibly claiming that Bloodgood shared in TCM and/or Pinnacle's profits or that Bloodgood is jointly and severally liable for TCM and/or Pinnacle's profits: 118, 125, 130, 165, 172, 177, 207, 208, 213, 214, 215, 230, 236, and 237.

Rottlund responds by arguing that the Court's July 11 Order did not address Rottlund's claims that: (1) BGI is jointly and severally liable to Rottlund for BSB's wrongful profits or vice versa; (2) Pinnacle is jointly and severally liable to Rottlund for TCM's wrongful profits or vice versa; and (3) all Defendants are jointly and severally liable to Rottlund for each of their collective wrongful profits because their infringement was not innocent. Rottlund is correct, but that is not the end of the matter.

With regard to the specific paragraphs, Rottlund parses them out and explains their purpose. As for paragraphs 207, 213, 214, and 236,[1] Rottlund argues that the allegations in these paragraphs are among the predicate allegations for its contributory infringement and vicarious liability claims against BSB and BGI. As for paragraphs 208, 215, 230, and 237,[2] Rottlund argues that the paragraphs assert

---

[1] For each paragraph the Court sets forth the count of the complaint to which the paragraph corresponds and the language of the paragraph itself.

Paragraph 207–Contributory Infringement against BSB–provides: "Upon information and belief, Defendant BSB has derived profits off sales of Infringing Town Home Units, their designs, and/or other substantially similar products made or sold by Bloodgood, Pinnacle, TCM and/or BSB Illinois."

Paragraph 213–Vicarious Liability against BSB–provides: "Upon information and belief, Defendant BSB's economic interests are intertwined with the economic interests of Bloodgood, Pinnacle, TCM and/or BSB Illinois as it relates to the sale of the Infringing Town Home Units and/or their designs."

Paragraph 214–Vicarious Liability against BSB–provides: "Upon information and belief, Defendant BSB has derived profits from sales of Infringing Town Home Units, their designs, and/or other substantially similar products made by Bloodgood, Pinnacle, TCM, and/or BSB Illinois."

Paragraph 236–Vicarious Liability against BGI–provides: "Upon information and belief, Defendant Bloodgood has derived profits from sales of Infringing Town Home Units, their designs, and/or other substantially similar products or services made by Pinnacle, TCM, BSB, and/or BSB Illinois."

[2] Paragraph 208–Contributory Infringement against BSB–provides: "Defendant BSB is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units, their designs, and/or other substantially similar products made or sold by Bloodgood, Pinnacle, TCM, and/or BSB Illinois."

Paragraph 215–Vicarious Liability against BSB–provides: "Defendant BSB is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units, their designs, and/or other substantially similar products made or sold by Bloodgood, Pinnacle, TCM, and/or BSB Illinois."

Paragraph 230–Contributory Infringement against BGI–provides: "Defendant Bloodgood is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units, their designs, and/or other substantially similar products or services made or sold by Pinnacle, TCM, BSB and/or BSB Illinois."

Paragraph 237–Vicarious Liability against BGI–provides: "Defendant Bloodgood is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units, their designs, and/or other substantially similar products or services made or sold by Pinnacle,

that BSB and BGI are jointly and severally liable for each other's wrongful profits, and BSB and BGI are jointly and severally liable for TCM and Pinnacle's wrongful profits. Rottlund argues that the Court has not precluded it from asserting that BSB and BGI are liable for each other's profits because BGI owns BSB and the profits are funneled up to BGI and back down to BSB. Citing Abeshouse v. Ultragraphics, Inc., 754 F.2d 467, 472 (2d Cir. 1985) and Softel, Inc. v. Dragon Med. and Scientific Communications, Ltd., No. 87-167, 1995 WL 606307, at *1 (S.D.N.Y. Oct. 16, 1995), Rottlund argues that all Defendants can be jointly and severally liable for each other's profits because their infringement was not innocent. This argument is the only real issue of law in the motion. Finally, as for paragraphs 118, 125, 130, 165, 172, and 177,[3] Rottlund asserts that the paragraphs allege TCM and

---

TCM, BSB and/or BSB Illinois."

[3] Paragraph 118–Contributory Infringement against TCM–provides: "Defendant TCM is jointly and severally liable for the aggregate direct and indirect profits derived from Defendant Bloodgood's, Defendant BSB's, and BSB Illinois' sales of infringing architectural designs for the Infringing Town Home Units."

Paragraph 125–Vicarious Liability against TCM–provides: "Defendant TCM is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units and other substantially similar products made or sold by Pinnacle."

Paragraph 130–Vicarious Liability against TCM–provides: "Defendant TCM is jointly and severally liable for the aggregate direct and indirect profits derived from Defendant Bloodgood's, Defendant BSB's, and BSB Illinois' sales of infringing architectural designs for the Infringing Town Home Units."

Paragraph 165–Contributory Infringement against Pinnacle–provides: "Defendant Pinnacle is jointly and severally liable for the aggregate direct and indirect profits derived from Defendant Bloodgood's, Defendant BSB's, and BSB Illinois' sales of infringing architectural designs for the Infringing Town Home Units."

Paragraph 172–Vicarious Liability against Pinnacle–provides: "Defendant Pinnacle is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units and other substantially similar products made or sold by TCM."

Paragraph 177–Vicarious Liability against Pinnacle–provides: "Defendant Pinnacle is jointly and severally liable for the aggregate direct and indirect profits derived from Defendant Bloodgood's, Defendant BSB's, and BSB Illinois' sales of infringing architectural designs for the Infringing Town

Pinnacle are jointly and severally liable for each other's profits, and TCM and Pinnacle are jointly and severally liable for Bloodgood's wrongful profits. Rottlund argues that the Court's July 11 Order does not bar the former allegations, and the non-innocent exception allows for the latter allegations.

## II. DISCUSSION

### A. Joint and Several Liability for Profits for All Defendants

As a general rule, "[w]hen a copyright is infringed, all infringers are jointly and severally liable for plaintiffs' actual damages, but each defendant is severally liable for his or its own illegal profit; one defendant is not liable for the profit made by another." Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 519 (9th Cir. 1985). The reason copyright defendants are not jointly liable for the wrongful profits of another was well explained in Sammons v. Colonial Press, Inc., 126 F.2d 341 (1st Cir. 1942). Damages and an infringer's profits "are distinct items of recovery." Sammons, 126 F.2d at 344. An infringer's liability for the profits it has made "had its origin in equity." Sammons, 126 F.2d at 345. As Sammons explains, "'[p]rior to the Copyright Act of 1909 * * * there had been no statutory provision for the recovery of profits, but that recovery had been allowed in equity both in copyright and patent cases as appropriate equitable relief incident to a decree for an injunction.'" Id. (quoting Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 399, 60 S.Ct. 681, 684 (1940)). Liability for one's profits arose on the theory that "it was unconscionable for an infringer to retain a benefit which he had received by the appropriation and use of the plaintiff's property right." Id.; accord Washingtonian Pub. Co., Inc. v. Pearson, 140 F.2d 465, 467 (D.C. Cir. 1944). Hence:

---

Home Units."

> Accountability for profits is . . . peculiarly personal, as equity acts on the conscience of the infringer. The presupposition is that the infringer has gotten something which it is unconscionable for him to keep; and hence it logically follows that the infringer is accountable only for the profits he received, not for the profits which may have been received by a co-infringer. Of course, when the infringement is by a partnership, the partners are jointly accountable for the whole profit made by the partnership on ordinary principles of partnership law.

Sammons, 126 F.2d at 345.

The Copyright Act of 1909 made an infringer liable for the profits that it derived from the infringement, but as Sammons explains no change as to the basis for such relief was made.

> Accountability of an infringer for profits was enforced in equity, both in patent and copyright cases, on the same equitable principles, even before the patent and copyright laws specifically authorized this relief. When, by amendment, these laws did so authorize the recovery of profits, there was no change in the principle upon which such relief had theretofore been granted by courts of equity.

Sammons, 126 F.2d at 346.

Under the current version of 17 U.S.C. § 504(b) the same theory holds, H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 161, reprinted in 1976 U.S.C.C.A.N 5659, 5777, available at 1976 WL 14045 (explaining § 504(b) and stating "profits are awarded to prevent the infringer from unfairly benefiting from a wrongful act"), and courts have been uniform in holding that one infringer is not accountable for the profits of another. Frank Music, 772 F.2d at 519; Nelson-Salabes, Inc. v. Moringside Dev., LLC, 284 F.3d 505, 517 (4th Cir. 2002).

One "exception" to the rule is that those defendants engaged in a practical partnership will be jointly liable for wrongful profits collectively derived from infringing activities. E.g., Nelson-Salabes, 284 F.3d at 517. The practical partnership principle is really not an "exception" at all because "partners are jointly accountable for the whole profit made by the partnership on ordinary principles of

partnership law." Sammons, 126 F.2d at 345. As the Court noted in its July 11 Order, application of the practical partnership exception requires at a minimum the sharing of profits between infringers, which does not exist between Bloodgood and TCM or Bloodgood and Pinnacle.

Rottlund argues that an additional exception to the general rule applies where infringement was not innocent. This argument has no basis in the Copyright Act itself, and Rottlund does not argue otherwise. Rather, Rottlund points to Abeshouse v. Ultragraphics, Inc., 754 F.2d 467 (2d Cir. 1985) for this proposition. Abeshouse does support Rottlund's position, but this Court disagrees with its reasoning.

With the historical framework in hand, the Court analyzes the persuasive force of Abeshouse. In MCA, Inc. v. Wilson, 677 F.2d 180, 186 (2d Cir. 1981), the Second Circuit spoke of the accountability of copyright defendants for profits: "[T]his rule [all defendants concerned in the infringement are jointly and severally liable] applies only to the defendants liability for damages. Insofar as there is liability for illegal profit, the liability is several; one defendant is not liable for the profit made by another." Four years later, in Abeshouse, the Second Circuit commented on a co-infringer's liability for profits. The court first noted that 17 U.S.C. § 504(b) "requires no departure from the rule prevailing under the predecessor provision that a co-infringer ordinarily may be held jointly liable only for the actual damages suffered by a plaintiff copyright holder, not for the illegal profits of his fellow infringers." 754 F.2d at 472. The court then went to announce what appears to be a new potential exception as well as noting the practical partnership principle: "Exceptions to this general rule may be appropriate only where the infringement was not innocent or where the defendants 'engaged in a partnership, joint venture, or similar enterprise.'" Id. (quoting Nimmer, Nimmer on Copyright §

12.04[C][3], at 12-50 to 51 (1984) and citing Sammons, 126 F.2d at 345 for the partnership proposition). The only authority Abeshouse cites for the non-innocent exception is the Nimmer treatise. Abeshouse does not provide any reasoning for the exception. Nimmer does not appear to advocate a position either way but merely states that there "may" be joint liability for profits among non-innocent infringers. Nimmer, Nimmer on Copyright § 12.04[C][3], at 12-127-128 (2004). Nimmer's only citation for the non-innocent exception is Harris v. Miller, 50 U.S.P.Q. 625 (S.D.N.Y. 1941). Harris does not offer any reasoning for its finding; it simply says so. Rottlund has not provided the Court with any authority other than that from the Second Circuit for the non-innocent infringer exception or provided any reasoning explaining the basis for a non-innocent infringer exception to the general rule that one infringer is not liable for the profits of another.[4]

Although the undersigned hesitates to decline to follow the Second Circuit's suggested non-innocent infringer exception, the Court does not find it persuasive where the Copyright Act, the purpose of accountability for profits, and the absence of reasoning strongly indicate a different course. Rottlund does not argue that the Copyright Act requires joint liability for a co-infringer's profits. Most importantly, the origin of an infringer's liability for profits was "peculiarly personal." Sammons, 126 F.2d at 345. As noted, nothing in the subsequent versions of the Copyright Act suggests a reason to consider holding an infringer accountable for more than its profits derived from the infringement. See Sammons, 126 F.2d at 346; H.R. Rep. No. 94-1476. Equity acted on the infringer because it was

[4] For a case considering a similar motion and mechanically applying the non-innocent infringer exception, see Bull HN Info. Sys., Inc. v. Am. Express Bank Ltd., No. 88-2103, 1990 WL 48098, at 3 (S.D.N.Y. Apr. 6, 1990).

unconscionable for it to maintain the profits it received from its own infringing activity. Equity stops at the door of each individual infringer; it does not bring along co-infringers to return the profits of another as that would be tantamount to punishment for which the award of profits is not intended. Sheldon, 309 U.S. at 399 ("That relief [liability for profits] had been given in accordance with the principles governing equity jurisdiction, not to inflict punishment but to prevent an unjust enrichment . . . ."). Thus, a non-innocent infringer exception is contrary to the personal nature of the origin of the profits rule. Moreover, the concern that one of two infringers may escape liability for its profits even though it is practically the same entity as its co-infringer is addressed by the practical partnership principle. Where two infringers share profits and otherwise act as partners, they will be jointly and severally liable for their profits derived from infringement. In other circumstances, the personal nature of accountability for profits must be maintained.

The Fourth Circuit in Nelson-Salabes, 284 F.3d at 517-18, recently applied the general rule. The case involved a developer, Strutt Group, that contacted an architect, NSI, to design an assisted living facility. NSI made multiple drawings for Strutt. Eventually, Strutt told NSI to stop its work because Strutt could not continue with the development. G. Neville Turner of the Morningside Group took over the development, and the court noted that Turner's interest in the development was based in part on the fact that the zoning board had already approved the Development Plan. The court noted that Turner "was aware (1) that the NSI Drawings had been incorporated into the Development Plan, and (2) that NSI asserted that any future use of the NSI Drawings required its express consent." 284 F.3d 510. Turner and NSI met to discuss NSI's future involvement. After their meeting, NSI was concerned that Turner was going to use another architect to complete the project so NSI told Turner

during a phone call and in a subsequent letter that Turner did not have authority to utilize its drawings that had been incorporated into the Development Plan. Nevertheless, Turner did use the NSI drawings. The district court specifically found that "Turner, along with the other defendants, are not innocent infringers and they did engage in a partnership." 2001 WL 419002, at *10 (D. Md. Feb. 16, 2001). Citing Nimmer for the non-innocent infringer and practical partnership exception, the district court found the defendants liable for copyright infringement and held the defendants jointly and severally liable for their profits attributable to their infringement. 2001 WL 419002, at *10. The Fourth Circuit reversed the joint and several liability finding on profits because the "predicate finding that the Defendants had been engaged in a 'practical partnership'" was not made. 284 F.3d 517-18. Despite noting the general rule about liability for profits, explaining the practical partnership exception, citing the MCA case from the Second Circuit, and being faced with a holding from the district court and argument from the parties (see briefs, 2001 WL 34386516; 2001 WL 34386514) that a non-innocent infringer exception applies, the Fourth Circuit did not even mention a non-innocent infringer exception. It might be said that the district court's profits award could have been affirmed on the non-innocent infringer basis had the Fourth Circuit thought well of such an exception.

Since liability for profits is peculiarly personal, the Court holds that BSB and BGI may not be held jointly and severally liable for the profits of TCM or Pinnacle. The same is true of TCM and Pinnacle: TCM and Pinnacle may not be held jointly and severally liable for the profits of BSB or BGI. Thus, Bloodgood's motion seeking dismissal of the theory of joint and several liability for the profits of TCM and Pinnacle should be granted.

**B. Paragraph Specific Allegations**

**1. 207, 213, 214, 236**

Paragraph 207 must be revamped. It impermissibly alleges that BSB "derived profits" from Pinnacle and TCM. The Court's July 11 Order precludes such an allegation. Nothing has been advanced that would require reconsideration of the July 11 Order. The Court's July 11 Order, however, does not preclude allegations that BSB derived profits from or shared profits with BGI or BSB Illinois.

Paragraph 213 may remain. This paragraph alleges that BSB's "economic interests" are intertwined with BGI, Pinnacle, TCM and BSB Illinois in relation to sale of infringing town homes and designs. The July 11 Order precludes a finding of intertwined economic interests on the basis of sharing profits, but, depending on the factual milieu presented, sufficient intertwining of economic interests might be present absent shared profits. Bloodgood has not presented authority to the contrary.

Paragraph 214 must be revamped. It impermissibly alleges that BSB "derived profits" from Pinnacle and TCM. Thus, paragraph 214 must be revamped consistent with the comments regarding paragraph 207.

Paragraph 236 must be revamped. It impermissibly alleges that BGI "derived profits" from Pinnacle and TCM. Thus, paragraph 236 must be revamped consistent with the comments regarding paragraph 207.

As mentioned, Rottlund argues that the Court should refrain from dismissing or ordering removal of parts of the above allegations because they are a necessary part of its contributory infringement and vicarious liability claims, and it fears that those claims might fail if Bloodgood's request is granted. The Court's July 11 Order, however, precludes any allegation that the Bloodgood

Defendants shared in or derived profits from TCM or Pinnacle. Nothing has been advanced to change the order. If dismissal or alteration of certain paragraphs in accord with the July 11 Order has consequences, so be it.

**2. 208, 215, 230, 237**

Paragraph 208 must be revamped. It impermissibly alleges that BSB is jointly and severally liable for the profits of Pinnacle and TCM. The discussion supra Part II(A) and the Court's July 11 Order precludes any theory upon which BSB may be jointly liable for Pinnacle or TCM's profits. Rottlund is not precluded, however, from alleging that BSB is jointly and severally liable for the profits of BGI or BSB Illinois.

Paragraph 215 must be revamped in accord with comments regarding paragraph 208 (215 and 208 are identical).

Paragraphs 230 and 237 must be revamped in accord with the comments regarding paragraph 208. These paragraphs are materially identical to paragraph 208 in that they impermissibly allege BGI is jointly and severally liable for the profits of Pinnacle and TCM. Again, Rottlund is not precluded from alleging that BGI is jointly and severally liable for the profits of BSB and/or BSB Illinois.

**3. 118, 125, 165, 172, 177**

Paragraph 118 must be removed. It impermissibly alleges that TCM is jointly and severally liable for BGI, BSB, and BSB Illinois' profits. The discussion supra Part II(A) and the Court's July 11 Order precludes any theory upon which TCM may be jointly liable for BGI, BSB, or BSB Illinois' profits.

Paragraph 125 may remain as is. This paragraph simply states that TCM is jointly and

severally liable for Pinnacle's profits. It does not mention any of the Bloodgood Defendants.

Paragraph 130 must be removed in accord with the comments regarding paragraph 118 (130 and 118 are identical).

Paragraph 165 must be removed. It, similar to paragraph 118, impermissibly alleges that Pinnacle is jointly and severally liable for BGI, BSB, and BSB Illinois' profits. The discussion supra Part II(A) and the Court's July 11 Order precludes any theory upon which Pinnacle may be jointly liable for BGI, BSB, or BSB Illinois' profits.

Paragraph 172 may remain as is. This paragraph, like paragraph 125, simply states that Pinnacle is jointly and severally liable for TCM's profits. It does not mention any of the Bloodgood Defendants.

Paragraph 177 must be removed in accord with the comments regarding paragraph 165 (177 and 165 are identical).

Rottlund shall file an amended complaint incorporating the changes directed herein.

Based upon the foregoing and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

**1.** Defendant BSB and BGI's Motion to Dismiss (Doc. No. 301) **should be GRANTED in part** and **DENIED in part** consistent with the body of this Report and Recommendation.

**2.** Rottlund should be directed to file an amended complaint consistent with the directions herein.

Dated: July 13, 2004.

s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. L.R. 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties within 10 days, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Any party wishing to oppose such objections must file and serve all parties with its response in accordance with L.R. 72.1(c)(2). Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.