**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

The Rottlund Company, Inc., d/b/a Rottlund Homes, a Minnesota Corporation,

Plaintiff,

v.

Pinnacle Corporation, d/b/a Town & County Homes, an Illinois Corporation, Town & County Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,

Defendants,

and

Town & County Homes, Inc., a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

No.: 01-CV-1980 (DSD/SRN)

**MEMORANDUM OF LAW SUPPORTING CHRISTOPHER CARMICHAEL'S OBJECTIONS TO THE 6/30/04 SANCTIONS ORDER**

**MEMORANDUM OF LAW SUPPORTING CHRISTOPHER CARMICHAEL'S OBJECTIONS TO THE 6/30/04 SANCTIONS ORDER**

The order leveling a sanction against Christopher Carmichael is totally unwarranted, in law and in fact, and deprived him of his due process rights by failing to notify Mr. Carmichael or give him an opportunity to defend himself. The sanctions order itself is a gratuitous personal

attack against an unsuspecting and undefended young attorney. The Magistrate Judge exceeded her authority in assessing the sanction, and the order should be vacated immediately.

**JURISDICTION AND STANDARD OF REVIEW**

This court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 636, as the magistrate's report was entered on June 30, 2004 and this objection was timely filed on July 15, 2004. *See* FED. R. CIV. P. 6 & 72. As an attorney who was personally and individually sanctioned, Mr. Carmichael has a right independently to seek review of that sanction. *Cf. Hill v. St. Louis University*, 123 F.3d 1114, 1120 (8th Cir. 1997).

A district court reviews the recommendations of a magistrate to award sanctions de novo. *See Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Forsythe v. Hales*, 255 F.3d 487, 489 (8th Cir. 2001). Thus, none of the magistrate's findings are entitled to deference and this court may make findings and conclusions as if it were hearing the matter initially. *Hudson*, 46 F.3d at 786 (district court needed to "make a de novo assessment, independent of the magistrate judge's conclusions").

**ARGUMENT**

Christopher Carmichael, the most junior and least experienced attorney representing Pinnacle, was sanctioned *without notice* under 28 U.S.C. § 1927 and the inherent powers of the court. The conduct Mr. Carmichael was sanctioned for did not warrant sanctions and was not done intentionally or with bad faith.

The sanctions were based on Mr. Carmichael's August 22, 2003 cross-examination of plaintiff's witness Jason Jorgenson. During the deposition, Mr. Carmichael began asking the witness about his experience working for plaintiff The Rottlund Company, Inc. ("Rottlund") and about his knowledge of Rottlund's future in Des Moines. Mr. Carmichael was cut off by

opposing counsel (objecting and threatening sanctions) before he could ask Mr. Jorgenson whether he was aware that another Rottlund witness had stated the Des Moines office would be shut down, and Mr. Carmichael moved on without asking the question.

Mr. Carmichael's questioning of Mr. Jorgenson was raised by opposing counsel at oral argument before Magistrate Judge Nelson on a motion for sanctions against *other* counsel. Without ever giving Mr. Carmichael an opportunity to explain himself, the Magistrate made findings that Mr. Carmichael "set up" Mr. Jorgenson by engaging in "intolerable" "harassment" of a witness. According to the Magistrate, there could be "no doubt about what Mr. Carmichael was doing" when he "went for the dagger" by preparing to ask Mr. Jorgenson if he was aware of the possibility that Rottlund would close its Iowa division (the question was never actually posed because of an objection by opposing counsel). *Ibid.* Because such questioning supposedly must have been "intended for no other reason than to inflict emotional angst," the Magistrate concluded that it constituted "the epitome of bad faith harassment." (Op. at 39-40).

Based on these observations, the Magistrate imposed sanctions under the court's inherent powers and 28 U.S.C. § 1927, ordering Mr. Carmichael to write a letter to Mr. Jorgenson and Rottlund apologizing for "asking questions (or setting up an inferential situation)" that, according to the Magistrate, was only "meant to embarrass Mr. Jorgenson." (Op. at 40).

## I. The Sanction Violates Due Process

Due process requires that an attorney facing sanctions be given "'specific' notice of the sanctioning authority being considered and the conduct alleged to be sanctionable." *Ted Lapidus, S.A. v. Avrom R. Vann, Esq.*, 112 F.3d 91, 96 (2d Cir. 1997); *In re Frank Funaro, Inc.*, 263 B.R. 892, 903 (8th Cir. BAP 2001) ("[T]he court must give notice that it is considering sanctions . . . [and] [t]he notice must specify the conduct alleged to be sanctionable, the standard

by which the conduct will be assessed, and the authority under which sanctions are being considered."). The purpose of specific notice is to "put counsel 'on notice as to the particular factors that he must address if he is to avoid sanctions.'" *Ted Lapidus*, 112 F.3d at 96-97.

Both plaintiff's counsel and the Magistrate were well aware of the applicable standards governing sanctions, which require notice and an opportunity to be heard. Despite this fact, Mr. Carmichael was *never notified* that sanctions were being considered against him personally. The plaintiff's motion for sanctions and lengthy memorandum of law make absolutely no mention of Mr. Carmichael, and an order to show cause was never issued.[1]

Indeed, at the February 6th hearing, the Magistrate was expressly informed that the "allegations about Mr. Carmichael" – brought up suddenly at oral argument by the plaintiff's attorney – "were not part of their brief . . . [and] would require additional briefing" under the applicable due process standards.[2] (Hearing Tr. 2/6/04 at 123:10-25; *see also* Hearing Tr. 2/23/04 at 41:15-23, 44:12-45:4.) *See L.B. Foster Co. v. American Piles, Inc.*, 138 F.3d 81, 89 (2d Cir. 1998) (noting, in the context of Rule 11, that if sanctions are considered, "that motion is to be made separately from any other motion," or "[i]f the sanctions are imposed *sua sponte*, the court must proceed by order to show cause."). Despite this warning, plaintiff's counsel made arguments about sanctioning Mr. Carmichael at oral argument, and the Magistrate imposed a sanction. The failure to provide particularized notice and an opportunity to be heard violates due process and requires that the sanctions order against Mr. Carmichael be vacated. *See Jones v.*

---

[1] In contrast, other attorneys for Pinnacle from Holland & Knight, as well as the former attorneys from Fredrickson & Byron, were all given notice and an opportunity to submit materials in their defense. None of those attorneys was sanctioned. In fact, the Magistrate stated that the Fredrickson & Byron attorneys were not being sanctioned "given the in camera affidavits." (Op. at 35.)

[2] Bringing up Mr. Carmichael's name at oral argument was not sufficient notice. For one thing, Mr. Carmichael was never personally informed of the possibility of sanctions. *Ted Lapidus*, 112 F.3d at 97 ("the mere existence of . . . § 1927 does not constitute sufficient notice that sanctions might be imposed under that section."). Moreover, notice must be given before any hearing. *See Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 109-110 (2d Cir. 1998).

*Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990) (vacating sanctions order for failure to comport with due process).

## II. The Sanction Is Not Warranted

In her haste to sanction, the Magistrate never considered relevant facts about Mr. Carmichael's experience, and made erroneous assumptions regarding the conduct found to be sanctionable.

### A. There Was No Bad Faith or Willful Intent

As this court has stated, "[t]he imposition of sanctions is a serious matter and should be approached with circumspection." *VanDanacker v. Main Motor Sales Co.*, 109 F.Supp.2d 1045, 1047 (D. Minn. 2000) (Doty, J.) (quotation and citation omitted). Sanctions should be imposed only in "instances of a serious and studied disregard for the orderly process of justice." *LaSalle Nat'l Bank v. First Conn. Holding Group, L.L.C.*, 287 F.3d 279, 288-89 (3d Cir. 2002). Nothing approaching this level of seriousness occurred here.

Contrary to the Magistrate's unsupported assertions, Mr. Carmichael's questions were highly relevant to the issues in this litigation. Part of Rottlund's damages claim rests on the theory that the company has a relatively unrestrained ability to buy property and build more units, entitling it to a large damage award for all the units it could have built given such unbounded capacity. However, discovery had revealed – contrary to this claim of near limitless capacity and funds – that Rottlund was systematically reducing its operations, closing its divisions in New Jersey and Indiana. Thus, seeking to determine whether plaintiff was also closing its Iowa operations was part of the defense's attempt to undermine Rottlund's damages

argument by showing that the company in fact did not have a virtually unlimited ability to purchase new properties.[3]

In addition, the line of questioning pressed by Mr. Carmichael is a common method used by trial attorneys: by revealing a third party's lack of fidelity to the witness, the examiner obtains information that might otherwise be withheld out of a misplaced sense of loyalty. Such questions may have a destabilizing effect on the witness's feelings of fealty, causing him to reveal information he would otherwise have kept secret. In this case, Mr. Carmichael's questions sought to undermine the bond between employer and employee to obtain information that employees possessed regarding certain allegedly illegal tactics used to enforce copyrights. There was no willful or bad-faith intent to inflict harm upon the deponent for its own sake; rather, the sole intent of the questions was to obtain useful information – one of the core purposes of discovery under the Federal Rules of Civil Procedure.

At all events, even if the Magistrate were correct that the questions were not clearly warranted, Mr. Carmichael's conduct would amount to no more than a "misunderstanding, bad judgment or well-intentioned zeal" – not willful or bad-faith conduct. *LaSalle Nat'l Bank*, 287 F.3d at 288-89 ("the bad faith requirement is necessary" to avoid penalizing "an attorney who might be guilty of no more than a mistake in professional judgment"). This court is well aware of the type of conduct that warrants sanctions, and Mr. Carmichael's behavior plainly fails to rise

---

3 The status of Rottlund's Iowa operations – a legitimate issue disputed in discovery – remains unclear. While Rottlund CFO Kahn testified that the company was closing its Iowa operations (Op. at 12-13), Rottlund CEO Rotter backed away from that testimony only a few days after the Jorgenson deposition by claiming that Iowa was not closing. (Feb. 6, 2004 Hearing Tr. 94:6-15.) Mr. Carmichael's questions were relevant because if Rottlund in fact has insufficient funds to keep its Iowa operations running, it would be unable to build an unlimited number of units and is not entitled to the full damages it seeks.

to that level.[4] *See VanDanacker*, 109 F.Supp.2d 1045 (Doty, J.); *Barnes v. Benham Group, Inc.*, 22 F.Supp.2d 1013, 1024 (D. Minn. 1988) (Doty, J.); *see also Zink Comm. v. Elliott*, 141 F.R.D. 406 (S.D.N.Y. 1992) ("I do not see in this case, where two experienced senior litigators surrounded by the usual support troops went after each other hammer and tongs from the first day of the litigation to the last, a basis for imposing sanctions under either objective or subjective standards.").

B. <u>Mr. Carmichael is Young and Unseasoned</u>

In considering the propriety of sanctions against an individual attorney, relevant considerations include the attorney's level of experience and whether the attorney entered the case at an advanced stage. *See, e.g., Blue v. United States Dept. of the Army*, 914 F.2d 525, 546 (4th Cir. 1990).

This matter was filed in 2001. Holland & Knight became involved in September 2002. (Op. at 3.) The conduct at issue did not occur until nearly a year later, in August 2003. Mr. Carmichael's involvement in the litigation was limited to a few instances, including the depositions. (Hearing Tr. 2/6/04 at 60:13-16.)

Mr. Carmichael was the most junior member of the Holland & Knight team. At the time the deposition occurred, in August 2003, Mr. Carmichael had been practicing for less than a year, following a one-year federal clerkship. To sanction such a young and unseasoned attorney for what is, at the very worst, a failure to exercise good judgment, is unjust. *See Blue*, 914 F.2d at 546 ("However, to place blame for the attorneys' failure on a very junior associate . . . is an unrealistic and unjust result."). The sanction against this young lawyer, if allowed to stand, will follow him for the rest of his career. In light of this matter's lengthy history and Mr.

4 Despite the statement by the Magistrate that Mr. Carmichael's conduct was "unrelated . . . to anything in this case," it is clear from the opinion that the decision to sanction Mr. Carmichael was influenced by the "record as a whole." (*Compare* Op. at 12 *with* Op. at 24.)

Carmichael's level of experience, the effect of the sanction is far too harsh. *See ibid.* (setting aside sanctions against inexperienced attorney).

### III. The Magistrate Exceeded Her Authority and Misapplied the Applicable Legal Standards

Sanctions imposed under 28 U.S.C. § 1927 and the court's inherent power must be accompanied by explicit and detailed findings. *Burgos v. Murphy*, 692 F. Supp. 1571, 1578 (S.D.N.Y. 1988) ("in order to justify sanctions . . . detailed factual findings are necessary"). If a court imposes sanctions on different grounds, the court must separately identify and explain the authority. *Jones*, 899 F.2d at 1358. Section 1927 requires findings of objectively unreasonable behavior and subjective bad faith, and for sanctions to issue pursuant to the court's inherent power the conduct must be "tantamount" to bad faith. *See VanDanacker*, 109 F.Supp.2d at 1046-47; *Barnes v. Benham Group, Inc*., 22 F.Supp.2d 1013, 1024 (D. Minn. 1988) (Doty, J.); *Mortice v. Providian Fin. Corp*., 283 F.Supp.2d 1084, 1087-88 (D. Minn. 2003).

While the Magistrate's opinion imposing sanctions uses derogatory and conclusory language about Mr. Carmichael, it fails to articulate how the conduct amounts to or is tantamount to bad faith. *Burgos*, 692 F. Supp. at 1578. The opinion also fails to differentiate between § 1927 and the inherent power of the court, simply invoking both in a single sentence. (Op at 40.) *See Jones*, 899 F.2d at 1358. The inherent power of the court, of course, should be invoked rarely as a basis for sanctions – and only in the gravest of circumstances. *In re Prudential Ins. Co. America Sales Practice Lit. Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002) ("Generally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists."); *Van Danacker*, 109 F. Supp.2d at 1046 ("bad faith" required for sanctions based on court's inherent power); *see also Chambers v.*

*NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and caution.").[5]

Moreover, the sanction imposed here – writing a letter of apology – is not even a permissible sanction authorized under § 1927. *Roadway Express, Inc, v. Piper*, 447 U.S. 752, 756 n.3 (1980) ("§ 1927 provides only for excess costs caused by . . . vexatious behavior and consequent multiplication of proceedings) (citation and quotation omitted, emphasis in original). Indeed, in order to be sanctionable under § 1927, the conduct at issue must multiply and increase the costs of the proceedings. *LaSalle Nat'l Bank*, 287 F.3d at 288-89 (noting that sanctions under § 1927 are "limited to excess costs and expenses that are incurred because of such conduct."). Needless to say, the seven deposition questions at issue here – which occupied no more than a few minutes of time (the deposition continued on without a pause) -- did not delay, multiply, or increase the cost of the proceedings. *See NAACP v. Atkins*, 908 F.2d 336, 340 (8th Cir. 1990) (finding sanctions not warranted because there was no vexatious multiplication of proceedings); *Barnes*, 22 F.Supp.2d at 1024 (same).

Finally, to the extent the sanction rests on Mr. Carmichael's "intent" to violate the protective order (see Op. at 39-40), no violation of the protective order occurred. Even assuming that a party could be sanctioned for intending to violate, but not actually violating, a protective order, the ruling is inconsistent with the purpose of a protective order. A protective order is used to prevent the opposing party from disclosing the trade secrets of the producing party to third parties. *See, e.g., Carter-Wallace, Inc. v. Hartz Mountain Indus.*, 92 F.R.D. 67, 68-70 (S.D.N.Y. 1981). A protective order does not prevent disclosure of the producing party's information to

---

5 The Magistrate's use of the inherent power was also invalid because, as an Article I court, a magistrate has no authority to exercise Article III "inherent powers." *See Alpern v. Lieb*, 38 F.3d 933, 935 (7th Cir. 1994) ("The power to award sanctions, like the power to award damages, belongs in the hands of the district judge."); *cf. Chambers*, 501 U.S. at 43-44; *id*. at 53-54 (Scalia, J., dissenting).

that same producing party. *Ibid*. ("the party that originally controlled the evidence [is] the one party not bound by [the] order"). Consequently, revealing information provided by Rottlund (the producing party) to a Rottlund employee (the same producing party) does not implicate or violate the protective order. *Ibid.; Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 499-500 (D. Md. 2000).

**CONCLUSION**

It is unfortunate that Mr. Carmichael's name and reputation became the subject of this very acrimonious litigation, but it should not be the platform for damaging the reputation of a young attorney who was never given an opportunity to defend himself. This court should vacate the Magistrate's order insofar as it pertains to Mr. Carmichael, and permit no further consideration of sanctions against Mr. Carmichael on the basis of his cross-examination at Mr. Jorgenson's deposition.[6]

Respectfully submitted,

/s/ James R. Ferguson
James R. Ferguson
David W. Fuller
MAYER, BROWN, ROWE & MAW LLP
190 S. La Salle Street
Chicago, Illinois
312-701-7282 (telephone)

/s/ Rodney A. Honkanen
Rodney A. Honkanen (# 46929)
Spence, Ricke, Sweeney & Gernes, P.A.
325 Cedar Street, Suite 600
St. Paul, MN 55101
651-223-8000 (telephone)

*Attorneys for Christopher Carmichael*

[6] The Magistrate's order has now been published on Westlaw, and apparently will be published in the Federal Rules Decisions reporter. Consequently, if the Magistrate's opinion is not vacated and withdrawn, the harm to Mr. Carmichael's professional reputation and career will be irreversible. *Rottlund Co, Inc. v. Pinnacle Corp.*, No. CIV. 01-1980 (DSD/SRN), 2004 WL 1494579 (D. Minn. June 30, 2004). To prevent further harm to Mr. Carmichael's name and reputation, the court should order the opinion withdrawn, at least insofar as it pertains to Mr. Carmichael.