**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

The Rottlund Company, Inc.
d/b/a Rottlund Homes, a Minnesota
Corporation,

Plaintiff,

vs.

Pinnacle Corporation
d/b/a Town & Country Homes,
an Illinois Corporation, and
Town & Country Homes, Inc.,
a Minnesota Corporation, and
Bloodgood Sharp Buster Architects &
Planners of Iowa, Inc., an Iowa corporation,
and The Bloodgood Group, Inc., an Iowa
Corporation,

Defendants.

And

Town & Country Homes, Inc.,
a Minnesota Corporation,

Third-Party Plaintiff,

vs.

Bloodgood Sharp Buster Architects &
Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

No.. 01-CV-1980 (DSD/SRN)

**DEFENDANT PINNACLE CORPORATION'S MEMORANDUM IN SUPPORT OF ITS OBJECTIONS TO THE MAGISTRATE'S ORDER ENTERING SANCTIONS**

## INTRODUCTION

The Magistrate below entered a sanction of $64,630.17 against Pinnacle and its counsel (together referred to herein as "Pinnacle") after a single Pinnacle employee failed to advise his attorneys that he maintained a “brochure file” of publicly available advertising material. When Pinnacle’s counsel first learned of the file during the employee’s deposition, they immediately produced it in its entirety, despite the fact that only four of the brochures were responsive to any discovery request. In addition, Pinnacle volunarily made the employee available for additional questioning and offered to re-produce him after plaintiffs’ counsel had a fuller opportunity to review the file. Pinnacle's efforts to rectify this oversight mattered not a whit to Rottlund or its counsel, Winthrop & Weinstine. Before they even saw the file, they contacted the Magistrate and asked for a status conference to complain.

The ensuing discovery conference was convened on six days notice on the basis of two status letters submitted just three days and one day in advance of the conference. (Docket No. 331, at Exs. 4, 2, 5) Rottlund did not file a motion for sanctions, no evidence was received, and the Magistrate made no findings. Nevertheless, the Magistrate ruled at the conclusion of the conference that "sanctions will be entered." (Docket No. 326, at 49:11-14) The Magistrate subsequently received briefs and conducted hearings to retroactively justify the decision. As set forth herein and in Pinnacle's objections, the Magistrate's determination that this event is the "climax" of a "pattern of discovery incompetence" is clearly erroneous. Rottlund suffered no prejudice from Pinnacle's tardy production of Mr. Sandelin's brochure file, and the recommended sanctions are entirely out of proportion to what happened.

### I. Standard of Review

This Court has jurisdiction to reconsider the Magistrate's Order pursuant to 28 U.S.C. §

636. In the proceedings below, the Magistrate purports to sanction Pinnacle pursuant to Fed.R.Civ.P. 26 and 37, and her inherent powers. Accordingly, this Court must review the Order to award sanctions de novo. *See Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Forsythe v. Hales*, 255 F.3d 487, 489 (8th Cir. 2001). Thus, none of the magistrate's findings are entitled to deference and this court may make findings and conclusions as if it were hearing the matter initially. *Hudson*, 46 F.3d at 786 (district court needed to "make a de novo assessment, independent of the magistrate judge's conclusions").

**II. The Magistrate prejudged the issue presented below.**

Far more distressing than the myriad misstatements of the record is the Magistrate's mischaracterization of the proceedings below. At page 24, the Order states that in response to a request by Rottlund during a status conference, "The Court, noting what had become a pattern of discovery incompetence, indicated that a formal motion for sanctions would be necessary." (Order at 24) In fact, the Magistrate had already decided at the conclusion of the status conference, without the benefit of any record, that she would sanction Pinnacle: "The Court will entertain a formal motion for sanctions ***and will award sanctions. The question is which sanctions will be awarded***." (Docket No. 326 at 49:11 – 14) (emphasis supplied)

The imposition of sanctions "is a serious matter and should be approached with circumspection." *O'Connell v. Champion International Corp.*, 812 F.2d 393, 395 (8th Cir. 1987). The Magistrate was required to enter findings of fact in response to a formal motion, rather than decide to sanction first, and then entertain a motion to justify her decision. *See Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999) (reversing magistrate's entry of sanctions and district court's affirmance because neither entered findings of fact). Here, the Magistrate based her decision to sanction Pinnacle and its counsel on a status letter and oral argument from Rottlund's

counsel. It received no evidence and made no findings.

When the record of the subsequent hearings is compared to the Order, it is clear that the evidence has been selectively culled to support a predetermined outcome. Much of the "supporting" evidence is misconstrued to fit the preconceived notion of a "pattern," and other evidence refuting or disproving its existence is ignored. The end result is a ruling that is clearly erroneous.

One of the more glaring examples involves Pinnacle's production of its cost records in October of 2002. The Magistrate finds that Pinnacle was twice ordered "to produce all revenue and cost information for *all* townhome products in each development where allegedly infringing townhomes were located," but that Pinnacle "defied" these Orders and "unilaterally limited production" to only the infringing townhomes. (Op. at 9-10) This episode is critical to the determination that a pattern exists because it is one of the few actual accusations of discovery non-compliance.

The problem is that this link in the pattern is false. During the hearing on the instant Motion, Pinnacle proved that it had not unilaterally limited its production by bringing to Court the very documents that were produced in October pursuant to the Court's orders. (See Objections, at ¶ 5; Docket 338 at 14-19) Pinnacle explained that its CFO, Paul Anderson, was mistaken when he advised the Court in November 2002 that the production had been limited, because the Historical Job Cost records were not limited to the allegedly infringing townhomes. (Id.) The Magistrate was shocked and dismayed by this development, stating, "I can't explain this but I can tell you that that's not what Mr. Anderson said on the phone." (Id.)

The Order, however, invents an explanation to fit the preconceived notion of a pattern: that Pinnacle "simply gave the Court what amounts to the end product of the production after

Pinnacle finally complied." (Order at 37) The Order then criticizes counsel for failing to take greater care before making argument to the Court. Disturbingly, this new-found explanation, like the original accusation, is objectively false: Pinnacle provided the Court with the *initial* production, cited the documents by bates numbers, and even produced the transmittal letter that proved the documents were not part of a subsequent production. (Docket 338, at pp. 14-16) These irrefutable facts are simply ignored by the Order because they fail to conform to predetermined finding that a pattern of discovery failings has occurred.[1]

The predetermination to find a pattern also required the application of different standards to the litigants. During the hearing, Pinnacle demonstrated that Rottlund had been caught in a discovery mistake similar to, yet far worse than, Mr. Sandelin's brochure file. Specifically, Rottlund had defeated a motion to compel by submitted an affidavit swearing that certain documents did not exist, only to have the affiant subsequently testify at deposition that responsive documents did exist. (Docket 338, at 36:11 – 42:18) Yet no mention of this appears in the Order. (Objection, ¶ 6) Likewise, the Order concludes that Pinnacle's counsel failed to discharge its discovery obligations because it did no more than ask its client for responsive documents,[2] but the Magistrate has twice held that counel for the other parties in this litigation discharged their duties under the Federal Rules by "asking" their clients for responsive documents. (Objections, ¶ 6) This is not the first time Pinnacle has noted that two standards appear to apply to the proceedings below. (Id.)

---

[1] As support for her finding, the Magistrate cites an unfiled letter from Rottlund's counsel dated February 17, 2004. Rottlund's letter does not support the Magistrate's conclusion. At best, the letter is a *non sequitor*. During the hearing, Pinnacle pointed out that documents PINN 191 - 298 contain historical job costs and are not limited to the accused townhomes. (Objections, ¶ 5) In its letter, Rottlund argues that documents PINN *299 -627* are limited. Rottlund does not dispute, however, that the documents Pinnacle brought to the Court's attention, PINN 191-298, satisfied the prior orders.

[2] Pinnacle's counsel, in fact, did far more than ask its client to collect documents. *See* In Camera Affidavit of Mathew I. Farmer.

Any fair comparison of the Order with the proceedings below forces the conclusion that this matter was prejudged, and that the hearings were conducted merely to justify a foregone decision. The sad irony is that the lion's share of the sanction orders Pinnacle to reimburse Rottlund for conducting these very hearings.

**III. Mr. Sandelin's oversight of his brochure file does not justify the harsh sanction imposed.**

Obscured by the Order's rhetoric is the complete absence of any prejudice to Rottlund. It bears emphasis that Mr. Sandelin only failed to timely produce four documents, not an entire file. (Objections, ¶ 8) It is also important to note that the documents in question were publicly available advertising brochures, created by Rottlund, which Mr. Sandelin previously admitted he had received but could not find. (Docket 328 at 7-8, 10) This discovery misstep does not involve any proverbial "smoking gun" documents.

Also completely absent from the Order is any recognition that Pinnacle's counsel immediately attempted to rectify the situation. Specifically, Pinnacle's counsel retrieved the entire brochure file and produced it to Rottlund's counsel in less than twelve hours. (Objections ¶ 15) Pinnacle then brought Mr. Sandelin back for additional questioning and offered to reproduce him if Rottlund desired. (Id.)

Given the insignificant nature of the documents and the total absence of any prejudice to Rottlund, the sanctions order are grossly out of proportion. The Eighth Circuit has repeated recognized that a "sanction must be proportionate to the litigant's transgression." *In re Popkin & Stern*, 196 F.3d 933, 938 (8th Cir. 1999); *see also*, *Rodgers v. Curators of Univ. of Missouri*, 135 F.3d 1216, 1219 (8th Cir. 1998). This Court has held that "the court must fashion the least onerous sanction corresponding the the prejudice suffered." *Lexis-Nexis v. Beer*, 41 F.Supp.2d 950, 955 (D. Minn. 1999).

## IV. The finding that a "pattern of discovery incompetence" exists is clearly erroneous.

Because Pinnacle's actual transgression was slight, the Order seeks to justify its large sanction by finding a "pattern of discovery incompetence." The Order even goes so far as to include irrelevant *ad hominem* attacks on Pinnacle's counsel. This enables the Order to erroneously conclude that Mr. Sandelin's four brochures were merely the "misconduct that broke the camel's back." (Order at 24)

The largest portion of the Order has nothing to do with discovery. Instead, it is dedicated to a review of Pinnacle's motion to dismiss for lack of personal jurisdiction filed more than two years ago. Rottlund once before sought sanctions for the filing of this motion and was denied. Even though nothing new has occurrred in relation to the motion, the Magistrate reverses her prior ruling, invokes her "inherent powers," and orders Pinnacle to pay 20% of Rottlund's fees incurred resisting the motion. (Order at 35)

Ostensibly, the basis for this sanction is a finding that Pinnacle should have produced Mr. Sandelin's Minnesota file as part of Pinnacle's Rule 26(a) initial disclosures. Rule 26(a), however, limits the affirmative duty to disclose information to evidence supporting the party's position. Fed.R.Civ.P. 26(a)(1)(A) (requiring disclosures where "the disclosing party may use [the person or documents] to support its claims or defenses.")[3]

The Order erroneously concludes that this limitation on the affirmative duty in Rule 26 creates "a gap" that could allow a party to "hide" evidence and cites a decision that pre-dates the affirmative disclosure requirements. (Order at p. 35). To patch this supposed gap, the Magistrate invokes her "inherent powers." As an Article I Judge, however, the Magistrate has no

[3] The Order also finds that Mr. Sandelin's Minnesota file was responsive to Rottlund's First Request for Documents, issued after the Motion to Dismiss was fully briefed. This conclusion is reached by linking a request for "all documents that relate to your interrogatory answers" with an interrogatory asking for the identity of individuals with

authority to exercise Article III "inherent powers." *See Alpern v. Lieb,* 38 F.3d 933, 935 (7th Cir. 1994) ("The power to award sanctions, like the power to award damages, belongs in the hands of the district judge."); *cf.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44; *id.* at 3-4 (Scalia, J., dissenting). Furthermore, the court's "inherent powers" may be invoked only when the *absence* of a rule creates a gap. *Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1474 (D.D.C. 1995). It is simply nonsensical to suggest that a directly controlling rule itself creates the gap.

Moreover, any gap that exists is easily filled by the rules providing for discovery. As Pinnacle pointed out at the hearing, Rottlund could have propounded discovery instead of relying on Pinnacle's limited affirmative duty under Rule 26(a), but it failed to do so. (Docket No. 334 at p. 26 - 45) Had Rottlund used the tools available to it, the Minnesota file would have been produced. In the absence of any affirmative discovery request, Pinnacle has been sanctioned for failing to do more than the rules require.

Next, the Order dwells on two events completely unrelated to the issue at hand. First, the Magistrate claims that Mr. Scott Petersen, an attorney with thirty years of experience, was disrespectful when he said, "Oh, please," in response to the Magistrate's accusation that she "smelled a rat." (Order at 10-11) The Order selectively quotes from the transcript of the hearing to reach this conclusion. Pinnacle believes that Mr. Petersen was perfectly within his rights to ask for leave to consult his client before entering into an ambiguous oral stipulation. (See, Objections ¶ 3) Furthermore, he reacted with restraint and civility when the Magistrate accused him of smelling like "a rat" engaged in "shennanigans. (Id.) If the Magistrate believed at the time that Mr. Petersen had exhibited "brazen disrespect," she had the authority to certify the facts to this Court to hear evidence of contempt. 28 U.S.C. § 636(e)(6)(b)(1).

---

relevant knowledge. (Order, at 31) No one, not even Rottlund, has previously made this suggestion.

The Order also takes Christopher Carmichael to task for attempting to inquire into issues that were both disputed and material to this case. As the only attorney individually sanctioned, Mr. Carmichael has taken a separate appeal. As with Mr. Petersen, however, this event is completely unrelated to Pinnacle's discovery competence. Pinnacle can see no reason to lash out at a young attorney with an impeccable record.

When the Order finally turns to discovery issues, it focuses on two status conferences conducted on November 21 and 23, 2003. Niether conference related to Mr. Sandelin's brochures. Instead, the conferences addressed Pinnacle's stated objection that Rottlund's document requests contained no date limitation. (Docket 312) Counsel for Pinnacle twice assured the Court that no responsive documents had been withheld on the basis of this objection. (Id.) Despite counsel's unequivocal representation, the Magistrate stated that she "sees different lawyers every time,"[4] and asked counsel to confirm (again) "that you're not withholding documents based on the objections that you assert." (Docket 331, at Ex. 28, at 28:21-23) Mr. Murdoch's statement at the November 26 conference that he did not need to "go back and look at that," but could make the assurance immediately, was expressly limited to the question whether documents were being withheld. (Id., at 29:5-21)

In addition, the Magistrate ordered Pinnacle to search again for something called a “competition product survey.” (Docket 331, at Ex. 27, 69:6-19) No one with knowledge knows what this "survey" was, and no one has been able to find or identify a copy. Yet, Rottlund has asserted that "if this was a criminal law case, I'm not exagerating, this is where the dead body would be." (Id., at 75:5-7) Pinnacle did conduct a subsequent search, and submitted an affidavit signed by its General Counsel that it was unable to locate anything that might be a "competition

[4] This gratuitous slap was unwarranted. With the single exception of Mr. Scott Petersen's appearance on June 18, 2003, all of the numerous status conferences have been handled by either Mr. Murdoch or Mr. Farmer.

product survey." (Docket 331, at Ex. 9) Mr. Sandelin participated in this search and testified that he "looked everywhere I could conceivably think it may be." (Docket 331, at Ex. 10, 253:18-19).

The Order links the "competition product survey" to the "pattern" in two ways. First, Pinnacle is accused of "flagrant disobedience" because searching everywhere the document might conceivably be is deemed insufficient. The Order is now interpreted to require Pinnacle to search *everywhere.* The original Order never contemplate such a search, and the present contention that it did is simply revisionist. The Magistrate's instructions were that Pinnacle not limit its search to documents relating to Illinois created after 2000. This is what she meant by "no limitations." No one can honestly maintain that the Order actually required Pinnacle to search everywhere, even in files where it was "inconceivable" that the survey would be found.

The Order also finds that outside counsel itself should have undertaken the second search, and if it had, Mr. Sandelin's brochures would have been identified. To reach this conclusion, the Order concludes that Pinnacle's prior discovery performance was so poor that counsel could no longer trust its client. (Order pp. 46-47)[5] The only authority cited is a case where counsel turned over responsibility for document production to a lay person who did not understand that a document included drafts and electronic documents. *Metropolitan Opera Association, Inc. v. Local 100*, 212 F.R.D. 178, 222 (S.D.N.Y. 2003). Absent circumstances that do not exist here, Fed.R.Civ.P. 26(g) entitles counsel to "rely on assertions by the client and on communications with other counsel in the ase as long as that reliance is appropriate under the circumstances."

The Order's conclusion that a pattern of discovery incompetence exists is based on only three allegations: that Pinnacle was obligated under Rule 26(a) to affirmatively disclose Mr.

[5] As explained herein, there were no prior discovery failings. The cost information was fully provided in accordance with the Court's Orders, and the "great big Minnesota file" was timely produced in response to Rottlund's fourth

Sandelin's "Minnesota file" even though Rottlund had not propounded discovery; that Pinnacle limited its production of cost information to accused townhomes; and, that Pinnacle has failed to locate a "competition product survey." The first is incorrect as a matter of law; the second is factually incorrect; and the third is not a discovery violation. There simply is no "pattern of discovery incompetence."

**CONCLUSION**

In the final analysis, this entire matter involves the untimely production of four publicly available advertising brochures. There has never been any proof of any prejudice to Rottlund as a result of Pinnacle's tardy discovery and production of these documents, and they do not reflect any pattern of "discovery incompetence." The sanctions ordered by the Magistrate are grossly out of proportion to this event. Pinnacle requests that the Magistrate's Order be vacated in its entirety, and withdrawn from publication.

Dated: July 15, 2004

Respectfully Submitted,

By: s/ Christopher J. Murdoch

Edward F. Ryan
Christopher J. Murdoch
Matthew I. Farmer
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th Fl.
Chicago, IL 60603
Telephone: (312) 263-3600
Facsimile: (312) 578-6666

David Donna (#163624)
**DONNA & DALY**
1460 Buffet Way, Suite 150
Eagan, MN 55121
Telephone: (651) 406-4242
Facsimile: (651) 406-4243

---

request for documents.

ATTORNEYS FOR DEFENDANT
PINNACLE CORPORATION

# 2101861_v1