Exhibit R78

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - -

The Rottlund Company, Inc.
d/b/a Rottlund Homes,
a Minnesota corporation,
Plaintiff,

vs. Case No. 01-CV-1980 (DSD/SRN)

Pinnacle Corporation
d/b/a Town & Country Homes,
an Illinois Corporation, and
Town & Country Homes, Inc.,
a Minnesota Corporation,
Defendants,

and

Town & Country Homes, Inc.,
a Minnesota corporation,
Third-Party Plaintiff,

vs.

Bloodgood Sharp Buster
Architects & Planners of Iowa,
Inc., an Iowa corporation,
Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION OF TODD M. DOSCH
VOLUME 1, Pages 1 - 188

(The following is the deposition of TODD M. DOSCH, taken pursuant to Notice of Taking Deposition, at the offices of Fredrikson & Byron, 4000 Pillsbury Center, 200 South Sixth Street, in the city of Minneapolis, state of Minnesota, commencing at approximately 12:36 o'clock P.m., February 25, 2004.)

A. Yes.
Q. So you submitted them to Rottlund?
A. Yeah.
Q. Okay. And so in paragraph 9 of this affidavit where you say, "Metro's involvement in Rottlund's designs depicted in Exhibit A concern the mechanical system located within the layout of the sprinkler room plan detail," did you mean that you gave input into where certain of the mechanical systems would go?
A. Just the location of the underground service.
Q. Anything else?
A. No.
Q. Once a location of the underground service is set, are the rest of the components in the sprinkler room detail basically determined?
MR. DAVENPORT: Objection, vague.
A. Can you rephrase or --
Q. Sure.
A. -- expand?
Q. Do all sprinkler rooms that you have worked on have a shut-off valve?
A. Yes.
Q. Do they all have a radiant heater or some sort of heat source in them?

A. Yes.

Q. Do they all have a water meter?

A. No.

Q. All right. Do they, in the villages where they are required, do they all have the wall indicator valve?

A. Yes.

Q. And do they all have the feed line that you determine the location for?

A. Yes.

Q. And what -- Is there -- Do you have a specific need to dimension for the feed line? Why did you supply that to Rottlund?

A. I supplied some minimum dimensions because of the size of that wall post. It has a hand wheel and a flange on the exterior and if you got the underground supply too far in the corner, the thing would -- it would be into the wall or outside the wall or into the door. Just some minimum dimensions to make sure that flange looked like it was supposed to be there instead of hanging off the edge of the building or into the door or anything like that.

Q. If you look at your affidavit on Exhibit No. 350, paragraph number 6, it says that "Metro did not design the layout of the exterior sprinkler room

depicted in Exhibit A." Do you see that?
A. Yes.
Q. And are you talking about the dimensions of the walls and the roof in that paragraph?
A. Yes. Or window or door. I don't care what they put on the outside of the building or what it looks like.
MR. MURDOCH: Would you mark this as the next exhibit.
(Deposition Exhibit 351 was marked for identification.)
BY MR. MURDOCH:
Q. Mr. Dosch, I've given you a copy of the --
MR. DAVENPORT: Do you have a copy for me?
MR. MURDOCH: I'm sorry. Sure.
MR. DAVENPORT: That's all right. Thanks.
BY MR. MURDOCH:
Q. Deposition Exhibit No. 351, do you recognize this document?
A. Yes.
Q. Does this come from Metro files?
A. Yes.
Q. And are the first two pages of this document Metro 928 and 929 a proposal that you submitted to Town & Country?

Exhibit R81

EXHIBIT
109

Volume 17, Issue 2 1998

Your Builder for Life

# ROTTLUND HOMES™

## HAPPENINGS



Equal Housing Opportunity

Exhibit R82

# Welcome To The Wide Open Sp



## *Lots of natural light and high ceilin*
## *See for yourself at townandcountr*

42 years. Over 100 communities. One homebuil
Our national resourcefulness and strength, coup
mitment, offer you so much more design, qua
your money. So why settle for ordinary when w
day at Town & Country.

### BLAINE

THE FAIRWAYS AT DEACON'S WALK

Players Collection - Single Family Homes from the
Masters Collection - Single Family Homes from t
Phone 763-795-8909
To visit: Take I-35 W North to Lexington Road (Exit 3
Proceed 1/2 mile to a left on 109th street. Proceed 2
Players Parkway, straight to a left on Arnold Palmer
Sales Center on right.

### LAKEVILLE

CROSSWINDS

Premier Collection - Townhomes from the $130's
Phone 952-898-2787
To visit: Take I-35 W South to a left on County Roac
Turn right onto Jaguar Avenue. Proceed to a left on

### MAPLE GROVE

THE GROVE AT ELM CREEK

Players Collection - Single Family Homes from th
Phone 763-416-2225
To visit: Take I-94 West to a left on Weaver Lake Ro
Proceed to a left on Nottingham Parkway. Turn righ
Everest Lane to Sales Center on left.

CENTENNIAL CROSSING

Premier Collection - Townhomes from the $140's
Phone 763-416-3905
To visit: Take I-94 West to a left on Weaver Lake Roa
on Dunkirk Lane N. to a right on 90th Place N., to ri
Homestead Collection - Townhomes from the $1
Phone 763-416-0406
To visit: Take I-94 West to a left on Weaver Lake Ro
to a left on 90th Place N. Models on right.
Signature Collection - Single Family Homes from
Phone 763-416-0401
To visit: Take I-94 West to a left on Weaver Lake Ro
to a left on 89th Avenue N. Turn right on Garland



EXHIBIT 110

TOWN & COUN

THE EXCITEMENT

Open 11-6 daily. Brokers warmly We
Minnesota Builder #9137
© 2001 Town & Country Homes

townandcountryhomesmn.com

Exhibit R83

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,

Plaintiff,

vs.

Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation.

Defendants.

and

Town & Country Homes, Inc., a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

No.: 01-CV-1980 (DSD/SRN)

**PLAINTIFF'S AMENDED SUPPLEMENTAL OBJECTIONS AND ANSWERS TO DEFENDANT TOWN & COUNTRY HOMES, INC.'S INTERROGATORY NUMBERS 3 THROUGH 8**

TO: ABOVE-NAMED DEFENDANT TOWN & COUNTRY HOMES, INC. AND THEIR COUNSEL OF RECORD, DEAN R. KARAU, ROBIN PREBLE, CYNTHIA JOKELA MOYER, DARREN B. SCHWIEBERT, FREDRICKSON & BYRON, P.A., 4000 PILLSBURY CENTER, 200 SOUTH SIXTH STREET, MINNEAPOLIS, MINNESOTA 55402.

Plaintiff, The Rottlund Company, Inc., submits the following Amended Supplemental Objections and Answers to Defendant Town & Country Homes, Inc.'s ("TCM") Interrogatory Numbers 3 through 8. These Amended Supplemental Objections and Answers do not constitute, in any way, a waiver of Plaintiff's objections to any other discovery propounded by TCM.

Exhibit 134
Date: 5-28-03
Debby J. Campeau
Stirewalt & Associates

**INTERROGATORY NO. 3:** Identify and describe in detail each and every design element and/or feature in the Technical Drawings for which Plaintiff claims copyright protection in this litigation: identify all persons with knowledge of such alleged design elements and/or features; and identify all documents relating to or reflecting such alleged design elements and/or features.

**ANSWER:** Plaintiff incorporates its Supplemental Initial Disclosures and in answer to Interrogatory No. 1, states that, pursuant to Rule 33 of the Federal Rules of Civil Procedure, information responsive to this interrogatory may be derived or ascertained from the business records Plaintiff has produced (RCI00001 – 27; RCI000148 – 207; RCI000262 – 272; RCI000274 – 276; RCI000289 – 760; RCI001245 – 1248; RCI001354; and RCI001418 - 1575) and the burden of deriving or ascertaining the answer is substantially the same for the Defendant as it is for the Plaintiff, and that it claims copyright protection for, among other things, the following combination or gestalt of design elements and/or features:

a. placement of gabled side entries;

b. layout of gabled side entries;

c. proportions of gabled side entries;

d. placement of optional fireplace;

e. layout of optional fireplace;

f. proportions of optional fireplace;

g. architectural detail above optional fireplace, including recessed drywall arch;

h. placement of recessed shelving next to optional fireplace;

i. placement of tile and trim design adjacent to optional fireplace;

j. placement of loft;

k. layout of loft;

l. proportions of loft;

m. architectural detail of loft including railings, spindles, banisters, and molding;

n. placement of second story window in living room;

o. placement of first story windows in living room;

p. proportions of first story windows in living room;

q. placement of garage;

r. layout of garage;

s. placement of garage entry into kitchen area;

t. proportions of garage;

u. placement of living room;

v. proportions of living room;

w. layout of living room;

x. placement of dining room;

y. proportions of dining room:

z. layout of dining room;

aa. placement of stair well;

bb. proportions of stair well;

cc. layout of stair well;

dd. placement of kitchen;

ee. proportions of kitchen;

ff. placement of kitchen pantry;

gg. proportions of kitchen pantry;

hh. layout of shelving in kitchen pantry;

ii. placement of kitchen cabinet peninsula breakfast bar area in dining room;

jj. proportions of kitchen cabinet peninsula breakfast bar area in dining room;

kk. layout of kitchen cabinet peninsula breakfast bar area in dining room;

ll. placement of exterior patio;

mm. proportions of exterior patio;

nn. layout of exterior patio;

oo. entry way from exterior patio into dining room area directly adjacent to living room area;

pp. placement of powder room;

qq. proportions of powder room;

rr. layout of powder room, including single sink and toilet with no tub or shower;

ss. placement of master bedroom/owner's suite;

tt. proportions of master bedroom/owner's suite;

uu. layout of master bedroom/owner's suite;

vv. window placement in master bedroom/owner's suite;

ww. proportions of windows in master bedroom/owner's suite;

xx. placement of owner's suite bathroom;

yy. proportions of owner's suite bathroom;

zz. layout of owner's suite bathroom;

aaa. placement of double sink in owner's suite bathroom;

bbb. proportions of double sink in owner's suite bathroom;

ccc. layout of double sink in owner's suite bathroom;

ddd. placement of toilet in owner's suite bathroom;

eee. layout of toilet in owner's suite bathroom;

fff. placement of bathtub in owner's suite bathroom;

ggg. layout of bathtub in owner's suite bathroom;

hhh. placement of second bedroom;

iii. proportions of second bedroom;

jjj. layout of second bedroom;

kkk. window placement in second bedroom;

lll. proportions of windows in second bedroom; and

mmm. roof configuration.

**INTERROGATORY NO. 4:** Identify and describe in detail each and every design element and/or feature in the Architectural Work for which Plaintiff claims copyright protection in this litigation; identify all persons with knowledge of such alleged design elements and/or features; and identify all documents relating to or reflecting such alleged design elements and/or features.

**ANSWER:** Plaintiff incorporates its answer to Interrogatory No. 3 herein.

**INTERROGATORY NO. 5:** Identify and describe in detail each and every design element and/or feature of the town homes in each Minnesota development project referenced in the Amended Complaint which Plaintiff claims is substantially similar to a design element and/or feature in the Technical Drawings; identify all persons with knowledge of such alleged substantial similarity; and identify all documents relating to or reflecting such alleged substantial similarity.

**ANSWER:** Plaintiff incorporates its answer to Interrogatory No. 3 herein. Plaintiff further states that pursuant to Rule 33 of the Federal Rules of Civil Procedure, information responsive to this interrogatory may be derived or ascertained from the business records Defendants and Third-Party Defendant have produced thus far (D00015 – 38; D00116 – 261; D00265 – 309; D00340 – 630; D00696 – 809; D00949 – 1244; D01622 – 1751; D00014A; PIN00001 – 24; PIN00465 – 490; PIN00511 – 521; PIN00526 – 585; and BSB00601 – 4805) and the burden of deriving or ascertaining the answer is substantially the same for the Defendant as it is for the Plaintiff. Plaintiff reserves the right, as with each and every other discovery response it has provided in this case thus far, to further supplement its response herein upon further discovery and/or at the time of its expert report.

**INTERROGATORY NO. 6:** Identify and describe in detail each and every design element and/or feature of the town homes in the Illinois development project referenced in the Amended Complaint which Plaintiff claims is substantially similar to a design element and/or feature in the Technical Drawings; identify all persons with knowledge of such alleged substantial similarity; and identify all documents relating to or reflecting such alleged substantial similarity.

**ANSWER:** Plaintiff incorporates its answer to Interrogatory No. 5 herein.

**INTERROGATORY NO. 7:** Identify and describe in detail each and every design element and/or feature of the town homes in each Minnesota development project referenced in the Amended Complaint which Plaintiff claims is substantially similar to a design element and/or feature in the Architectural Work; identify all persons with knowledge of such alleged substantial similarity; and identify all documents relating to or reflecting such alleged substantial similarity.

**ANSWER:** Plaintiff incorporates its answer to Interrogatory No. 5 herein.

**INTERROGATORY NO. 8:** Identify and describe in detail each and every design element and/or feature of the town homes in the Illinois development project referenced in the Amended Complaint which Plaintiff claims is substantially similar to a design element and/or feature in the Architectural Work; identify all persons with knowledge of such alleged substantial similarity; and identify all documents relating to or reflecting such alleged substantial similarity.

**ANSWER:** Plaintiff incorporates its answer to Interrogatory No. 5 herein.

AS TO INTERROGATORY ANSWERS 3-8:

Dated: 12/10, 2002.

On behalf of Plaintiff

By [signature] EX.V.P.
Timothy Whitten
Executive Vice President

AS TO INTERROGATORY OBJECTIONS:

Dated: Dec. 10, 2002.

**WINTHROP & WEINSTINE, P.A.**

By: ______________________
Craig S. Krummen, #259081
David A. Davenport, #285109

3000 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 347-0700
Facsimile: (612) 347-0600

***Attorneys for Plaintiff The Rottlund Company, Inc.***

idmsmpl#533663v1

Exhibit R84

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation.<br><br>Defendants,<br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**PLAINTIFF'S SECOND AMENDED SUPPLEMENTAL OBJECTIONS AND ANSWERS TO DEFENDANT TOWN & COUNTRY HOMES, INC.'S INTERROGATORY NUMBER 3** |

TO: ABOVE-NAMED DEFENDANT TOWN & COUNTRY HOMES, INC. AND ITS COUNSEL OF RECORD, DARREN B. SCHWIEBERT, FREDRICKSON & BYRON, P.A., 4000 PILLSBURY CENTER, 200 SOUTH SIXTH STREET, MINNEAPOLIS, MINNESOTA 55402.

Plaintiff, The Rottlund Company, Inc., submits the following Second Amended Supplemental Objections and Answers to Defendant Town & Country Homes, Inc.'s ("TCM") Interrogatory Number 3. These Second Amended Supplemental Objections and Answers do not constitute, in any way, a waiver of Plaintiff's objections to any other discovery propounded by TCM.

**INTERROGATORY NO. 3:** Identify and describe in detail each and every design element and/or feature in the Technical Drawings for which Plaintiff claims copyright protection in this litigation; identify all persons with knowledge of such alleged design elements and/or features; and identify all documents relating to or reflecting such alleged design elements and/or features.

**ANSWER:** Plaintiff incorporates its Supplemental Initial Disclosures and in answer to Interrogatory No. 1, states that, pursuant to Rule 33 of the Federal Rules of Civil Procedure, information responsive to this interrogatory may be derived or ascertained from the business records Plaintiff has produced (*See e.g.*, RCI00001 – 27; RCI000148 – 207; RCI000262 – 272; RCI000274 – 276; RCI000289 – 760; RCI001245 – 1248; RCI001354; and RCI001418 - 1575) and the burden of deriving or ascertaining the answer is substantially the same for the Defendant as it is for the Plaintiff, and that it claims copyright protection for, among other things, the following combination or gestalt of design elements and/or features:

a. placement of gabled side entries;

b. layout of gabled side entries;

c. proportions of gabled side entries;

d. placement of optional fireplace;

e. layout of optional fireplace;

f. proportions of optional fireplace;

g. architectural detail above optional fireplace, including recessed drywall arch;

h. placement of recessed shelving next to optional fireplace;

i. placement of tile and trim design adjacent to optional fireplace;

j. placement of loft;

k. layout of loft;

l. proportions of loft;

m. architectural detail of loft including railings, spindles, banisters, and molding;

n. placement of second story window in living room;

o. placement of first story windows in living room;

p. proportions of first story windows in living room;

q. placement of garage;

r. layout of garage;

s. placement of garage entry into kitchen area;

t. proportions of garage;

u. placement of living room;

v. proportions of living room;

w. layout of living room;

x. placement of dining room;

y. proportions of dining room;

z. layout of dining room;

aa. placement of stair well;

bb. proportions of stair well;

cc. layout of stair well;

dd. placement of kitchen;

ee. proportions of kitchen;

ff. placement of kitchen pantry;

gg. proportions of kitchen pantry;

hh. layout of shelving in kitchen pantry;

ii. placement of kitchen cabinet peninsula breakfast bar area in dining room;

jj. proportions of kitchen cabinet peninsula breakfast bar area in dining room;

kk. layout of kitchen cabinet peninsula breakfast bar area in dining room;

jjj. proportions of second bedroom;

kkk. layout of second bedroom;

lll. window placement in second bedroom;

mmm. proportions of windows in second bedroom;

nnn. roof configuration;

ooo. placement of the exterior sprinkler room;

ppp. proportions of the exterior sprinkler room;

qqq. layout of the exterior sprinkler room;

rrr. external entry to the exterior sprinkler room; and

sss. sloped roof above the exterior sprinkler room.

AS TO INTERROGATORY ANSWER:

Dated: February 9th, 2004.

On behalf of Plaintiff

By: [signature]
Timothy Whitten
Executive Vice President

AS TO INTERROGATORY OBJECTIONS:

Dated: February 9, 2004.

WINTHROP & WEINSTINE, P.A.

By: [signature]
Craig S. Krummen, #259081
David A. Davenport, #285109

Suite 3500
225 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 604-6716
Facsimile: (612) 604-6816

***Attorneys for Plaintiff The Rottlund Company, Inc.***

2089676v1

*Re: Rottlund v. Town & Country Homes, et al.*
Court File No. 01-CV-1980 (DSD/SRN)

STATE OF MINNESOTA )
)ss:
COUNTY OF HENNEPIN )

**AFFIDAVIT OF SERVICE**

CYNTHIA L. KUNO, of the City of Eagan, County of Dakota, State of Minnesota, being duly sworn on oath, says that on the 9th day of **February, 2004**, she served the following:

PLAINTIFF'S SECOND AMENDED SUPPLEMENTAL OBJECTIONS AND ANSWERS TO DEFENDANT TOWN & COUNTRY HOMES, INC.'S INTERROGATORY NUMBER 3

on the following parties in this action, through their attorneys, **via facsimile and U.S. Mail,** a true and correct copy thereof, enclosed in an envelope, postage prepaid and directed to the following at their last known address:

Darren Schwiebert, Esq.
FREDRIKSON & BYRON
4000 Pillsbury Center
200 South Sixth Street
Minneapolis, MN 55402-3397
**Attorneys for Defendant**
**Town & Country Homes**

**COURTESY COPIES TO:**

Christopher J. Murdoch, Esq.
Matthew I. Farmer, Esq.
HOLLAND & KNIGHT
131 South Dearborn Street, 30th Floor
Chicago, IL 60603
**Attorneys for Defendant Pinnacle Corp.**

Holly J. Newman, Esq.
Ben Patrick, Esq.
MOORE, COSTELLO & HART
701 Fourth Avenue South, Suite 1350
Minneapolis, MN 55415
**Attorneys for Defendant**
**The Bloodgood Group, Inc. and**
**Third Party Defendants**
**Bloodgood Sharp Buster**

Cynthia L. Kuno
CYNTHIA L. KUNO

Subscribed and sworn to before me
this 9 day of **February, 2004.**

Elizabeth H. Mulvaney
NOTARY PUBLIC

ELIZABETH H. MULVANEY
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2005

IMANAGE:2053227_1

Exhibit R85

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Rottlund Company, Inc.,
d/b/a Rottlund Homes,

Plaintiff,

vs. No. 01-CV-1980

Pinnacle Corporation, et al.,

Defendants.

---

THE HONORABLE SUSAN R. NELSON
United States Magistrate Judge

* * * *

TAPE-RECORDED HEARING
TRANSCRIPT OF PROCEEDINGS

* * * *

Date: 8/22/03
Reporter: Lisa M. Thorsgaard

proposed change by BSB. BSB doesn't design the Chateau collection. BSB has nothing to do with the Chateau collection. No documents were transferred from BSB to Touche & Montgomery. No CAD files were transferred. That's all in the record. That's all the stuff that was taken during the depositions of BSB.

The fact that at one point in time BSB and TCM were talking about another product never developed which would have had substantial changes to the existing product means nothing. It doesn't mean that a product developed by an independent architect here in the Twin Cities, a brand new product has anything, anything to do with any other product designed by Town & Country.

THE COURT: It's a fact issue, isn't it?

MR. SCHWIEBERT: The problem we have is that product got developed late in this process. I'll be honest about it. You saw the dates on the documents I gave. Yes, in March there was a hearing up in Brooklyn Park and a schematic of the outside elevation

Exhibit R97

# PROPOSAL FOR PROFESSIONAL SERVICES

## PROTOTYPE TOWNHOME PLAN
## PINEBROOK DEVELOPMENT
## BROOKLYN PARK, MINNESOTA

**October 8, 2002**
**Revised January 23, 2003; Revised February 12, 2003**

Having met and discussed the project with Tim Johnson of Town & Country Homes, Tushie-Montgomery & Associates, Inc., proposes the following scope of work as a recommended procedure for the development of a prototype townhome plan located in Brooklyn Park, Minnesota.

**PROJECT DESCRIPTION:**

Proposed development of an approximate 8.12 acre site to accommodate 50 units of back-to-back townhomes in multiple four (4), six (6), eight (8), ten (10), and twelve (12) unit buildings, two (2) stories in height with at-grade garages and a pitched wood truss roof. Building exterior shall be vinyl siding, brick, or cultured stone. Site parking shall be at grade. Building structure shall be woodframe. The building is being designed as a market rate, for sale, building that will have some affordable units.

**SCOPE OF SERVICES:**

The professional services of TUSHIE-MONTGOMERY & ASSOCIATES, INC., shall be as follows:

I. **PROGRAMMING AND ARCHITECTURAL DESIGN PHASE:**

A. **Programming** - Review all available information completed for the project by the Owner. Discuss the overall development with the Owner and finalize the program for completion of the project.

B. **Unit Plans** - Prepare up to three (3) typical unit plans with up to *two (2)* variations *and up to three (3) options* for second floor living spaces for the buildings based upon Owner recommendations and requirements from Market Research completed by the Owner. Unit plans based upon criteria set forth by Owner in Memo dated November 11, 2002 and attached.

D. **Floor Plans** - Using the program requirements and schematic design unit plans prepare overall building floor plans for both levels of each building (4 unit, 6 unit, 8 unit, 10 unit, and 12 unit buildings).

E. **Elevations** - using the Schematic Design floor plans prepare exterior design elevations for each building (4 unit, 6 unit, 8 unit, 10 unit, and 12 unit buildings), including exterior building materials and building heights.

F. Make necessary revisions during the Design Phase to reflect Owner input.

G. Prepare exterior wall sections as required and building section.

H. Revise design documents to incorporate identified cost savings and maintenance efficiency items.

I. Attend required meetings to review and present architectural plans with the Owner and the City Staff.

**II. ARCHITECTURAL CONSTRUCTION DOCUMENTS:**

A. Make recommendations on the selection of materials and finalize all design drawings.

B. Mechanical and electrical designs and drawings shall be prepared by the subcontractors registered engineers and are not the responsibility of the Architect. The Architect shall assist the Owner in coordinating these activities with the subcontractors and their engineers to correspond with the Architectural Documents.

C. Provide any necessary structural design for the building. (Proposal included for your review). Structural engineering fees are in addition to Architectural fees.

D. Prepare a set of construction drawings for the project which shall include:

| | |
|---|---|
| **Floor Plans - (4, 6, 8, 10, 12 Unit Buildings)** | **Building Sections** |
| | **Stair & Wall Sections & Details** |
| **(3) Unit Plans** | **Building Details** |
| **Exterior Elevations** | |
| **Interior Elevations** | **Structural Plans, Details and Sections** |

E. Assist the Owner in filing the required architectural documents for the approval of governmental authorities having jurisdiction over the project, and meeting with those officials to review the project.

**III. BIDDING AND NEGOTIATION:** (Hourly as shown in "TOTAL FEES ANTICIPATED").

Following the Owner's approval of the construction documents, assist the Owner in letting and receiving Subcontractor bids for the project by distributing drawings to the Owner and answering subcontractor questions.

**IV. CONSTRUCTION PHASE:** (Hourly as shown in "TOTAL FEES ANTICIPATED").

A. Review shop drawings, samples and other submissions of the contractor.

B. Answer contractor questions.

C. Make once per month visits to the site to be familiar generally with the progress and quality of the Work.

D. Process changes in the project.

E. Review pay requests submitted by Contractors.

F. Prepare a final punch list for the project.

V. **INTERIOR DESIGN SERVICES:** (Hourly as shown in "TOTAL FEES ANTICIPATED").

A. Furniture, furnishings and equipment:

1. Interior Design Services for the selection and specifying of all colors, materials and finished surfaces anticipated in the Contract Documents.

2. Design, specify, bid and order all interior furniture and furnishings not previously anticipated in the Contract Documents.

3. Prepare alternative presentation material boards to illustrate the color, texture and quality of the materials being considered.

4. Provide assistance to the Owner in coordinating schedules for delivery and installation of all furniture and furnishings and equipment.

5. Review the final placement and inspection for damage, quality and function to determine that the installed furniture, furnishings and equipment are in accordance with the requirements of the Contract Documents.

**TO BE PROVIDED BY THE OWNER:**

**The Owner shall provide:**

1. All background information the Owner may have available related to this project and necessary instructions and input regarding the program requirements.

2. Existing site plans and building lines, as-built drawings of existing buildings, soils reports, tree surveys, environmental studies, traffic studies, other topographical and utility maps and information the Owner has and, if necessary, measured drawings of existing structures. The Architect shall be entitled to rely upon the completeness and accuracy of this information, surveys and reports furnished by the Owner. This information shall be provided to the Architect in electronic format compatible with the latest version of Intergraph Microstation.

3. A designated representative from whom the Architect will receive instructions and authorization.

4. Full responsibility for estimating construction costs and keeping the construction cost within budget. The Architect shall not have any responsibility for estimating or guaranteeing the cost of construction.

TM 00324

5. Civil, mechanical, electrical and plumbing design and engineering services.

6. Prompt written notice to the Architect if the Owner becomes aware of any fault or defect in the project or non-conformance with the Contract Documents.

7. Project specifications, criteria drawings and material selections.

**TIME:**

TUSHIE-MONTGOMERY & ASSOCIATES, INC. shall begin the Work immediately upon being authorized and shall complete all tasks in this proposal within the schedule established by the Owner *as shown below.* Any deviation from the proposed schedule by the Owner shall postpone completion of the Drawings by the same amount of time of postponement.

Timeline:

| | |
|---|---|
| Design Development | Jan 1- Feb 14 |
| Civil Engineering | Concurrently by Others |
| Site Design | Concurrently by Others |
| Landscape Design | Concurrently by Others |
| 3-D Modeling | Feb 10- Feb 14 |
| Owner Revisions | Feb 14- Feb 21* (orig. set for 2/28) |
| TMA Revisions | Feb 24- Feb 28 |
| Submit to City of Brooklyn Park | March 3 |
| Planning Commission | April 9 |
| City Council | April 28 |
| Construction Documents | March 7- April 21 |
| Owner Review | April 21- April 30 |
| Complete Const. Documents | May 1- May 12 |
| Bidding & Negotiation | May 12- May 30 |
| Building Permit Submittal/Review | May 12- May 30 |

**TOTAL FEES ANTICIPATED:**

The total cost of all services recommended in this proposal shall be as follows:

| | | |
|---|---|---|
| **I.** | Architectural Design & City Approval Phase | $12,000.00 |
| **II.** | Construction Documents<br>Re-use of Drawings on other projects shall constitute a $200/unit re-use fee | 50,000.00 ($1,000/unit) |
| **III. – IV.** | Bidding and Construction Phases | Hourly as Additional Services as Requested by Owner |
| **V.** | Interior Design Services | Hourly as Additional Services as Requested by Owner |
| **VI.** | Structural and Engineering Services - | See Attached |

Plus normal reimbursable costs of printing, CAD plots, reproduction, postage, travel, colored renderings, computer plotting and mileage.

**ADDITIONAL SERVICES:**

| | |
|---|---|
| **Principals** | **$ 180/Hour** |
| **Senior Associate** | **$ 126/Hour** |
| **Associate** | **$ 110/Hour** |
| **Architect or Landscape Architect** | **$ 100/Hour** |
| **Architect Draftsperson** | **$ 90/Hour** |
| **Interior Designer** | **$ 100/Hour** |
| **Interior Designer Intern** | **$ 90/Hour** |

**Hour rates may change at the beginning of each calendar year.**

**ENGINEERING SERVICES:**

Tushie-Montgomery & Associates, Inc. does not employ professional Engineers on their in-house staff. All Engineering services recommended in this proposal shall be provided by the Architect through a consultant relationship with one or more Engineering firms experienced in the type of work contemplated in this proposal.

**LIMITS OF LIABILITY:**

In recognition of the relative risks, rewards and benefits of the project to both the Owner and Architect, the risks have been allocated such that the Owner agrees, to the fullest extent permitted by law, to limit the Architect's liability to the Owner and to all the Owner's contractors and subcontractors on the project for any and all claims, losses, costs, damages, or claims expenses from any cause or causes, so that the total aggregate liability of the Architect to all those named shall not exceed the Architect's total fee for services rendered on this project. Such causes include, but are not limited to, negligence, professional errors or omissions, strict liability, breach of contract or warranty.
This proposal if good for thirty (30) days. If acceptable, a signed copy will be our authorization to proceed. If the Scope of Services in this proposal in not exactly as you would like it, we would be happy to adjust it and revise the fee accordingly. A standard contract will be prepared with this proposal as its basis.

Respectfully submitted,

**TUSHIE-MONTGOMERY & ASSOCIATES, INC.**

~~Gary Tushie,~~ Jeffrey Wrede,
~~President~~ Assoc. Architect

**AUTHORIZATION:**
**Town & Country Homes**

**BY:** ______________________

**ITS:** Dir. of Architecture

**TM 00326**

Exhibit R98

# PROPOSAL FOR PROFESSIONAL SERVICES

## TRADITIONS AT CLOVER RIDGE DEVELOPMENT
## CHASKA, MINNESOTA

**January 23, 2003-REVISED FEBRUARY 12, 2003**

Having met and discussed the project with Tim Johnson of Town & Country Homes, Tushie-Montgomery & Associates, Inc., proposes the following scope of work as a recommended procedure for the development of a prototype townhome plan located in Chaska, Minnesota.

**PROJECT DESCRIPTION:**

Proposed development of two sites comprising approximately 2.75 acres and 2.0 acres to accommodate 50 units of back-to-back townhomes in multiple four (4) and six (6) unit buildings, two (2) stories in height with at-grade garages and a pitched wood truss roof. Building exterior shall be vinyl siding, brick, or cultured stone. Site parking shall be at grade. Building structure shall be woodframe. The building is being designed as a market rate, for sale, building that will have some affordable units.

**SCOPE OF SERVICES:**

The professional services of TUSHIE-MONTGOMERY & ASSOCIATES, INC., shall be as follows:

I. **PROGRAMMING AND ARCHITECTURAL DESIGN PHASE:**

A. **Programming** - Review all available information completed for the project by the Owner. Discuss the overall development with the Owner and finalize the program for completion of the project.

B. **Unit Plans** – Re-use three (3) proto-typical unit plans with up to *two (2)* variations for second floor living spaces for the buildings based upon Pinebrook Development project located in Brooklyn Park, MN.

Any changes to existing plans (as directed by Owner or City officials) shall be *estimated as an Additional Services lump sum fee and agreed to by the Owner prior to work to be done.*

C. **Floor Plans** – Re-use proto-typical floor plans based upon Pinebrook Development project located in Brooklyn Park, MN.

Any changes to existing floor plans (as directed by Owner or City officials) shall be *estimated as an Additional Services lump sum fee and agreed to by the Owner prior to work to be done.*

D. **Elevations** - Re-use proto-typical elevations based upon Pinebrook Development project located in Brooklyn Park, MN.

Any changes to existing elevations (as directed by Owner or City officials) shall be *estimated as an Additional Services lump sum fee and agreed to by the Owner prior to work to be done.*

E. Re-use proto-typical exterior wall sections as required and building section based upon Pinebrook Development project located in Brooklyn Park, MN.

Any changes to existing floor plans (as directed by Owner or City officials) shall be *estimated as an Additional Services lump sum fee and agreed to by the Owner prior to work to be done.*

F. Revise design documents to incorporate identified cost savings and maintenance efficiency items as directed by Owner. Changes shall be *estimated as an Additional Services lump sum fee and agreed to by the Owner prior to work to be done.*

G. Attend required meetings to review and present architectural plans with the Owner and the City Staff. Meeting(s) shall be *estimated as an Additional Services lump sum fee and agreed to by the Owner prior to work to be done.*

## II. ARCHITECTURAL CONSTRUCTION DOCUMENTS:

A. All changes to Construction Documents as they relate to changes made by Owner or City Staff comments to re-use plans and elevations shall be *estimated as an Additional Services lump sum fee and agreed to by the Owner prior to work to be done.*

B. Make recommendations on the selection of materials and finalize all design drawings.

C. Mechanical and electrical designs and drawings shall be prepared by the subcontractors registered engineers and are not the responsibility of the Architect. The Architect shall assist the Owner in coordinating these activities with the subcontractors and their engineers to correspond with the Architectural Documents.

D. Provide any necessary structural design for the building. (Proposal included for your review). Structural engineering fees are in addition to Architectural fees.

E. Prepare a set of construction drawings for the project which shall include:

| | |
|---|---|
| **Floor Plans -** | **Building Sections** |
| **(4 and 6 Unit Buildings)** | **Stair & Wall Sections & Details** |
| **(3) Unit Plans** | **Building Details** |
| **Exterior Elevations** | |
| **Interior Elevations** | **Structural Plans, Details and Sections** |

F. Assist the Owner in filing the required architectural documents for the approval of governmental authorities having jurisdiction over the project, and meeting with those officials to review the project.

## III. BIDDING AND NEGOTIATION: (Hourly as shown in "TOTAL FEES ANTICIPATED").

Following the Owner's approval of the construction documents, assist the Owner in letting and receiving Subcontractor bids for the project by distributing drawings to the Owner and answering subcontractor questions.

**IV.** **CONSTRUCTION PHASE:** (Hourly as shown in "TOTAL FEES ANTICIPATED").

**A.** Review shop drawings, samples and other submissions of the contractor.

**B.** Answer contractor questions.

**C.** Make once per month visits to the site to be familiar generally with the progress and quality of the Work.

**D.** Process changes in the project.

**E.** Review pay requests submitted by Contractors.

**F.** Prepare a final punch list for the project.

**V.** **INTERIOR DESIGN SERVICES:** (Hourly as shown in "TOTAL FEES ANTICIPATED").

**A.** Furniture, furnishings and equipment:

1. Interior Design Services for the selection and specifying of all colors, materials and finished surfaces anticipated in the Contract Documents.
2. Design, specify, bid and order all interior furniture and furnishings not previously anticipated in the Contract Documents.
3. Prepare alternative presentation material boards to illustrate the color, texture and quality of the materials being considered.
4. Provide assistance to the Owner in coordinating schedules for delivery and installation of all furniture and furnishings and equipment.
5. Review the final placement and inspection for damage, quality and function to determine that the installed furniture, furnishings and equipment are in accordance with the requirements of the Contract Documents.

**TO BE PROVIDED BY THE OWNER:**

**The Owner shall provide:**

1. All background information the Owner may have available related to this project and necessary instructions and input regarding the program requirements.
2. Existing site plans and building lines, as-built drawings of existing buildings, soils reports, tree surveys, environmental studies, traffic studies, other topographical and utility maps and information the Owner has and, if necessary, measured drawings of existing structures. The Architect shall be entitled to rely upon the completeness and accuracy of this information, surveys and reports furnished by the Owner. This

information shall be provided to the Architect in electronic format compatible with the latest version of Intergraph Microstation.

3. A designated representative from whom the Architect will receive instructions and authorization.

4. Full responsibility for estimating construction costs and keeping the construction cost within budget. The Architect shall not have any responsibility for estimating or guaranteeing the cost of construction.

5. Civil, mechanical, electrical and plumbing design and engineering services.

6. Prompt written notice to the Architect if the Owner becomes aware of any fault or defect in the project or non-conformance with the Contract Documents.
7. Project specifications, criteria drawings and material selections.

**TIME:**

TUSHIE-MONTGOMERY & ASSOCIATES, INC. shall begin the Work immediately upon being authorized and shall complete all tasks in this proposal within the schedule established by TMA *and Owner and shown below.* Any deviation from the proposed schedule by the Owner shall postpone completion of the drawings by the same amount of time of postponement.

Timeline:

| | |
|---|---|
| Design Development | Completed with Pinebrook Development |
| Civil Engineering | Concurrently by Others |
| Site Design | Concurrently by Others |
| Landscape Design | Concurrently by Others |
| 3-D Modeling | Completed with Pinebrook Development |
| Submit to City of Chaska | Owner Has obtained approvals |
| Revise Construction Documents from Pinebrook Development | April 21- May 5 |
| Owner Review | May 5-May 9 |
| Complete Const. Doc. Revisions | May 12-May 16 |
| Bidding & Negotiation | May 19-June 2 |
| Building Permit Submittal/Review | May 19-June 2 |

**TOTAL FEES ANTICIPATED:**

The total cost of all services recommended in this proposal shall be as follows:

I. Architectural Design & City Approval Phase
Changes to plans and elevations — Hourly as Additional Services

II. Construction Documents

| | | |
|---|---|---|
| | Re-Use Fee | $200.00 per unit |
| | Changes to plans and elevations | Hourly as Additional Services |
| III. – IV. | Bidding and Construction Phases | Hourly as Additional Services as Requested by Owner |
| V. | Interior Design Services | Hourly as Additional Services as Requested by Owner |
| VI. | Structural and Engineering Services - | See Attached |

Plus normal reimbursable costs of printing, CAD plots, reproduction, postage, travel, colored renderings, computer plotting and mileage.

**ADDITIONAL SERVICES:**

| | |
|---|---|
| **Principals** | **$ 180/Hour** |
| **Senior Associate** | **$ 126/Hour** |
| **Associate** | **$ 110/Hour** |
| **Architect or Landscape Architect** | **$ 100/Hour** |
| **Architect Draftsperson** | **$ 90/Hour** |
| **Interior Designer** | **$ 100/Hour** |
| **Interior Designer Intern** | **$ 90/Hour** |

**Hour rates may change at the beginning of each calendar year.**

**ENGINEERING SERVICES:**

Tushie-Montgomery & Associates, Inc. does not employ professional Engineers on their in-house staff. All Engineering services recommended in this proposal shall be provided by the Architect through a consultant relationship with one or more Engineering firms experienced in the type of work contemplated in this proposal.

**LIMITS OF LIABILITY:**

In recognition of the relative risks, rewards and benefits of the project to both the Owner and Architect, the risks have been allocated such that the Owner agrees, to the fullest extent permitted by law, to limit the Architect's liability to the Owner and to all the Owner's contractors and subcontractors on the project for any and all claims, losses, costs, damages, or claims expenses from any cause or causes, so that the total aggregate liability of the Architect to all those named shall not exceed the Architect's total fee for services rendered on this project. Such causes include, but are not limited to, negligence, professional errors or omissions, strict liability, breach of contract or warranty. This proposal if good for thirty (30) days. If acceptable, a signed copy will be our authorization to proceed. If the Scope of Services in this proposal in not exactly as you would like it, we would be happy to adjust it and revise the fee accordingly. A standard contract will be prepared with this proposal as its basis.

Respectfully submitted,

**TUSHIE-MONTGOMERY & ASSOCIATES, INC.**

Jeffrey Wrede,
Associate

**AUTHORIZATION:**
**Town & Country Homes**

**BY:** Timothy Johnson

**ITS:** Dir. of Architecture