Civil No. 01-1980 (DSD/SRN) – Rottlund / Pinnacle
Davenport Affidavit dated July 19, 2004

Exhibit R116

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

THE ROTTLUND COMPANY, INC., )d/b/a ROTTLUND HOMES, a Minnesota)
Corporation, ) Plaintiff, )
v. )PINNACLE CORPORATION )
d/b/a TOWN & COUNTRY HOMES, )an Illinois corporation, and )C
TOWN & COUNTRY HOMES, INC., )01-CV-1980 DSD/SRNa Minnesota Corpo
Defendants. )--------------------------------)
TOWN & COUNTRY HOMES, INC. )A Minnesota Corporation, )
Third-Party Plaintiff, )v. )
BLOODGOOD, SHARP, BUSTER )ARCHITECTS & PLANNERS OF IOWA, )
an Iowa Corporation. ) Third-Party Defendant. )

The deposition of Paul Anderson, called by the Rottlund Company, Plaintiff, taken pursuant to the provisions of the Federal Rules of Evidence and Civil Procedure pertaining to the taking of depositions, before KATRINA M. BEAUDIN, CSR, RMR, CRR, at M & M Reporting, Inc., One Pierce, Suite 295-E, Itasca, Illinois, on the 17th day of December, 2002, at 9:12 a.m.

Q. Okay.
A. Town & Country Homes, Inc., which is the Minnesota home building company.
Q. What is the third one?
A. Town & Country Builders, Inc. which is the Florida home building company.
Q. Let me make sure I understand this correctly. Apparently there is some kind of a parent entity called TCH, Inc., correct?
MR. FARMER: Object to the form of the question; foundation.
THE WITNESS: That's incorrect, it is not a parent.
BY MR. KRUMMEN:
Q. What would you refer to TCH, Inc. as?
A. TCH, Inc. is a company that will accumulate costs which are then allocated to the various affiliated entities.
Q. Does TCH, Inc. accumulate any revenue?
A. TCH, Inc.'s revenue stream comes from two areas.
Q. What are those two areas?
A. Number one is the home building companies will pay an equity fee to TCH, Inc.

Q. What is the other source of revenue?
A. Reimbursement for allocated costs.
Q. Do you know why TCH, Inc. was set up?
A. TCH, Inc. was set up to, first of all, accumulate these allocable costs.
Second, it was set up to be a repository for these equity fees that the companies pay. In other words, they would pay a -- either a percentage of -- against their equity to TCH, Inc. or a fixed fee.
Q. Why not just have Town & Country Homes Inc., for example, pay its own accounting services, why pay an equity fee to TCH, Inc.?
MR. FARMER: Object to the form.
THE WITNESS: The equity fee levels the playing field for measuring each of the affiliated companies. In other words, the three companies have disparate equity numbers.
BY MR. KRUMMEN:
Q. How are the equity numbers assessed towards Pinnacle, Town & Country, Inc. and Town & Country Builders, Inc.?
A. Town & Country Homes, Inc. and Town & Country Builders, Inc. pay 3 percent of the

beginning year equity to TCH, Inc.

Q. What does Pinnacle pay?

A. $600,000.

Q. What does that amount to in terms of its beginning year equity as a percentage?

A. It's not related to a percentage, it's a flat fee.

MR. FARMER: Object to form.

BY MR. KRUMMEN:

Q. If you were to calculate that, would it be more or less than 3 percent?

MR. FARMER: Object to form and foundation, particularly the number that is a percentage that is going to vary from year to year.

THE WITNESS: It would be less than 3 percent.

BY MR. KRUMMEN:

Q. Would it be less than 1 percent?

A. No.

Q. So somewhere between 1 and 3 percent?

A. Yes.

Q. Why assess more of an equity fee towards Town & Country, Inc. and Town & Country Builders,

Inc. in the form of a percentage of equity than what is assessed against Pinnacle Corporation?

A. That's what the directors chose to do.

Q. Do you know the basis for that decision?

A. No.

Q. Let's get at the directors and I'll start with TCH, Inc. Do you know who they are?

A. Yes.

Q. Who are the directors of TCH, Inc.?

A. Michael J. Ryan.

Q. Anyone else?

A. Thomas E. Ryan.

Q. Anyone else?

A. Eileen Seyfarth.

MS. NEWMAN: Can you spell that?

THE WITNESS: E-I-L-E-E-N S-E-Y-F-A-R-T-H.

BY MR. KRUMMEN:

Q. Anyone else?

A. Donna Coffey, C-O-F-F-E-Y.

Q. Anyone else?

A. Terese Ryan-Rooney, R-O-O-N-E-Y.

Q. Anyone else?

A. And Mary Buddig, B-U-D-D-I-G. And have

which of the group are.

Q. TCH, Inc. is a sub S corporation?

A. Yes, it is.

Q. Family held, correct?

A. Yes.

Q. Who are the shareholders?

A. The shareholders are the six Ryans I mentioned before as directors. Would you like me to list them again?

Q. That's not necessary but I need to follow up with respect to William Ryan. Is he a shareholder in TCH, Inc.?

A. No, he is not.

Q. Do you know why that is?

A. It's not his company.

Q. Did he set it up as a generation pass on type of company?

MR. FARMER: Objection: Foundation. There has been no testimony that Mr. Ryan set up the company.

BY MR. KRUMMEN:

Q. Do you know why TCH, Inc. was set up?

A. It was set up to build homes in Minnesota.

BY MR. KRUMMEN:
Q. What pieces of property in the last three years has Foxford sold to Pinnacle?
A. In the last three years. I can't say for certainty which properties that Pinnacle may have purchased in the last three years that came through Foxford.
Q. Do you know of any?
A. There is a piece of property in Cary which was sold by Foxford to Pinnacle more than three years ago.
Q. Any other properties that you're aware of?
A. Without consulting some documents or records, I would be guessing.
Q. When we spoke of the TCH, Inc., shareholders I believe you indicated that they were the six Ryan siblings, correct?
A. Yes.
Q. And let's fall down to Pinnacle Corporation doing business as Town & Country Homes. Let's start with the officers and directors. Do you know who they are?
A. I believe they are the same officers and

directors as TCH, Inc.

Q. Do you know who the chairman is of Pinnacle Corporation?

A. I am not certain.

Q. Does Mr. William Ryan have any position with respect to Pinnacle Corporation that you know of?

A. Again, I'm not sure if it is a formal or informal arrangement.

Q. That takes care of the officers -- well let me clarify that. The directors are the same to your knowledge, correct, between Pinnacle and TCH, Inc.?

A. Yes.

Q. Are the officers the same between the two entities?

A. I believe they are although I -- Tom Ryan, perhaps, is president of Pinnacle.

Q. As opposed to?

A. As opposed to his brother Mike, right.

Q. Do you know why that is?

A. Tom runs Chicago.

Q. What does Mike run?

A. Mike runs TCH, Inc. and is CEO of Town &

Country Homes, Inc. and Town & Country Builders Inc.

Q. And we'll get to those, so let me back up to Pinnacle Corporation. We have gone through the officers and we have gone through the directors. Virtually the same with the exception of the two Ryans being reversed as president. Now let's move on to the shareholders. Do you know who they are for Pinnacle Corporation?

A. The shareholders are the six Ryans as I mentioned earlier. And then comprising approximately 1.7 percent of the total equity would be 16 of their children.

Q. So we're looking at grandchildren of 1.7 percent, is that fair to say?

A. Yes.

Q. And there are 16 of them?

A. 16 grandchildren that are -- children that belong to Pinnacle.

Q. Let me back up and ask about the children, the six siblings that are shareholders. Do you know what their percentages of ownership are?

A. Their percentages are equal.

Q. So if I added all of them up, it would come up to 98.3 percent?

A. Right. Divided by 6 would represent each of their shares.

Q. Now, as to TCH, Inc., this level up if we will or however you want to explain the relationship and I'll strike my words as to whether it's up or sideways or any other way. TCH, Inc., the question is: What are the percentage ownerships for the shareholders?

A. They share ownership equally.

Q. But now we have 100 percent divided by six not 98.3?

A. That's correct.

Q. Do you know why there is a 1.7 percent differential at the Pinnacle level?

A. Yes. The company was originally owned by William G. Ryan and he sold it to his children. Prior to the final sale, which I believe was in 1994, he would gift interests in the company to his grandchildren. And then once the sale was transacted between he, Mr. Ryan and his own children, that gifting ceased.

Q. Let's move over to Town & Country Homes

Inc., this is the Minnesota entity, correct?
A. Yes.
Q. The first question is: Do you know who the officers and directors are of Town & Country Homes, Inc.?
A. Yes, I believe that they are the same as TCH, Inc.
Q. So in terms of the Minnesota entity, it has the same directors as TCH, Inc., correct?
A. Correct.
Q. It also has the same officers as TCH, Inc., correct?
A. That's correct, although I -- that's right, I believe Mike Ryan would be president.
Q. Now, the shareholders, are they the same as the TCH, Inc.?
A. Yes, the six Ryan siblings.
Q. No grandchildren involved here?
A. Correct.
Q. Do they own equal shares of Town & Country Homes, Inc.?
A. Yes, they do.
Q. As near as what I can tell what we have established thus far, Mr. Anderson, is that Town &

BY MR. KRUMMEN:

Q. Topic number 24 has no one designated towards it. Is that still true?

MR. FARMER: That's still under advisement with the court.

MR. KRUMMEN: Topic number 27 of course is the same way.

MR. FARMER: Again, we don't have a ruling from the court as of last week's hearing.

MR. KRUMMEN: We'll run into a few more on the damages side, which we'll move on to in a minute.

BY MR. KRUMMEN:

Q. But I believe that are also designated to testify regarding defendant's employment and payroll practices including but not limited to new employee hiring and payroll processing, correct?

A. Yes.

Q. Okay. Where is the payroll for Town & Country Homes of Minnesota processed?

A. A payroll for Town & Country Homes Minnesota is processed in Pinnacle's office in Lombard, Illinois.

Q. Why is that?

A. That's where the human resource department resides.

Q. Why not pay Pinnacle -- Town & Country Homes Minnesota's payroll out of Minnesota?

A. We don't have a human resources staff in Minnesota.

Q. What other activities are performed on behalf of Town & Country Homes Minnesota here in Illinois?

A. Accounting services. Payroll and benefits.

Q. How does accounting services, as you define it, differ from payroll?

A. We keep the books and records.

Q. Can you be any more specific than that?

A. Financial statement preparation.

Q. If an auditor would come to Town and want to audit Town & Country Homes of Minnesota, which town would it go to?

A. The financial statements aren't audited, they are reviewed and the review takes place in our office in Lombard.

Q. So accounting services, as I understand it, involves financial statement preparation.

Anything else?
A. Supporting reports and analytical work.
Q. What do you mean by "analytical work"?
A. Well, ratio analysis, reasonableness tests, anything that a competent accountant would do to justify the validity of the financial statements.
Q. I believe you already touched on payroll on behalf of Town & Country Minnesota coming through your Lombard, Illinois Pinnacle office, correct?
A. Yes.
Q. Let's move on to any other services. Are you aware of any other services performed on behalf of Town & Country Homes Minnesota through the Pinnacle office in Lombard, Illinois?
A. Well, insurance services. In other words, we buy one insurance policy, as we discussed earlier, and umbrella all of the affiliate companies under that one common policy so that work is done in Illinois.
Q. Anything else?
A. Our director of information services will coordinate with a consultant up in Minnesota,

network tie-ins and things along those lines.

Q. Network, that's computer services?

A. Yes, computer services. So that their system can talk to our system. E-mail, that type of thing.

Q. So if there is a problem with the system the fix, so to speak, occurs in Lombard, Illinois?

MR. FARMER: Object to the form.

THE WITNESS: The IS director in Illinois will communicate with the local consultant in Minnesota to troubleshoot the problem if -- to determine which side the problem is on.

BY MR. KRUMMEN:

Q. What if you want to enhance your computer capacity, would that typically take place here in Illinois or in Minnesota?

MR. FARMER: Objection to form and the use of the pronoun "you."

THE WITNESS: That would take place in Minnesota. They have their own systems but they again talk to each other -- we talk to each other.

BY MR. KRUMMEN:

Q. But the director is located here in

Illinois, correct?

A. Yes, we don't have a director in Minnesota.

Q. Why is that?

A. It's not a full-time job, we have a consultant that we employ on an as-needed basis.

Q. In Illinois or in Minnesota?

A. Minnesota.

Q. Are there any consultants that help the IS director in Illinois from time to time?

A. Yes, on an as-needed basis.

Q. And we have gone through payroll, accounting services, insurance, financial statements and the network, is there anything else that comes through the Lombard Pinnacle office on behalf of Town & Country Homes Minnesota?

MR. FARMER: Objection: Form.

THE WITNESS: My services with regard to finance.

BY MR. KRUMMEN:

Q. Any other services?

A. Right now that's all that comes to mind.

Q. Well, for example, we have management services, correct?

A. Yes.

Q. And the Ryans, both Tom and Mike, are located in Lombard, Illinois not in Minnesota, correct?

A. Yes.

Q. So whatever management time they are spending on behalf of Town & Country Homes Minnesota is coming from Chicago or Lombard, correct?

A. Mike Ryan's services, Tom Ryan spends no time on Minnesota.

Q. So Mike Ryan is working on behalf of Town & Country Homes Minnesota while he is in Lombard, Illinois, at least in part, correct?

A. Yes.

Q. Anything beyond the management and your services that relate to Town & Country Homes Minnesota that we haven't already covered?

A. Again nothing that comes to mind that we haven't discussed.

Q. I don't know if you are the right witness for this or not but I'm going to put Exhibit No. 2 in front of you, it was discussed yesterday so Exhibit No. 2 should be in the pile

before you somewhere.

A. These house plans?

Q. That's right.

MR. FARMER: What is the topic this is going to relate to? I can tell you whether it is the right witness.

MR. KRUMMEN: It will relate to affirmative defenses, jurisdiction and everything else that you wouldn't let him answer.

MR. FARMER: Sure.

BY MR. KRUMMEN:

Q. Have you ever seen RCI 102 through RCI 147, in general, those documents before?

A. I can't recall specifically seeing these documents but I have seen documents of this type before. I'm familiar with the form.

Q. If you turn your attention to RCI 108 it states that "since 1958, Town & Country Homes has built more than 100 communities and over 25,000 homes, making us one of the nation's most successful residential home builders." Have I accurately read the first sentence?

A. Yes.

Q. If you look on the bottom right-hand

corner you see an annotation that says Minnesota Builder.

A. Yes, I see that.

Q. Why is Town & Country Homes holding itself out as a Minnesota builder?

MR. FARMER: Objection: Foundation to the extent the witness said he is not even sure if he seen this document before. Object to the form, characterization of holding out.

THE WITNESS: I believe it refers to Town & Country Homes, Inc., the Minnesota company.

BY MR. KRUMMEN:

Q. That isn't what the logo says, Mr. Anderson, is it?

MR. FARMER: Objection: Form.

BY MR. KRUMMEN:

Q. Let me ask it this way, what does the logo say on RCI 000108 bottom middle?

A. Town & Country Homes.

Q. That isn't Town & Country Homes, Inc.'s logo, is it, sir?

MR. FARMER: Objection: Form and foundation as to his knowledge of logos.

THE WITNESS: I believe it is

Town & Country Homes, Inc.'s logo.
BY MR. KRUMMEN:
Q. You believe it is?
A. Yes.
Q. Do you have a business card?
A. Yes.
Q. Do you have one on behalf of Pinnacle Corporation?
A. Yes.
Q. Does it say Town & Country Homes on it?
A. Yes, it does.
Q. So that's Town & Country Homes' logo, it's the same logo that appears on your business card, correct?
A. Yes.
Q. Also at the top I believe that you earlier testified that this appears to be something for Town & Country Minnesota, correct?
A. Yes.
MR. FARMER: Object to the form.
BY MR. KRUMMEN:
Q. But Town & Country Minnesota wasn't even in business in 1958, correct?
A. Yes.

Q. When was the first year in which Town & Country Homes Minnesota was in business?
A. I believe 1994.
Q. So this has to relate to Pinnacle, doesn't it, sir?
MR. FARMER: Objection: Form.
THE WITNESS: I don't believe that's the context in which this is offered.
BY MR. KRUMMEN:
Q. I want to parse that answer a little bit. You're the one that said that you thought RCI 108 related to Town & Country Homes Minnesota, correct?
MR. FARMER: Objection again, foundation.
THE WITNESS: Yes.
BY MR. KRUMMEN:
Q. And you are speaking on behalf of Pinnacle today, correct?
A. Yes.
Q. But at the top it says since 1958, Town & Country Homes has built more than 100 communities and over 25,000 homes, correct?
A. Yes.

Q. That can't possibly be referring to Town & Country Homes Minnesota because they were not even in business in 1958, correct?
MR. FARMER: Again lack of foundation regarding this document. Objection.
THE WITNESS: I still think that this document pertains to Minnesota home building company.
BY MR. KRUMMEN:
Q. So why would the Minnesota home building company tell people it was in business in 1958?
MR. FARMER: Objection: Form and foundation.
THE WITNESS: I don't know.
BY MR. KRUMMEN:
Q. Is that another mistake, sir?
MR. FARMER: Objection: Form, argumentative.
THE WITNESS: I'm not responsible for this document, I cannot answer to it.
BY MR. KRUMMEN:
Q. Let's flip the page to RCI 000109. Now we have Town & Country living in Maple Grove, correct?

MR. FARMER: Objection: Same foundation regarding his knowledge of this document.

THE WITNESS: Correct.

BY MR. KRUMMEN:

Q. Maple Grove is in Minnesota, you will concede that much, correct?

A. Correct.

Q. You look at the bottom, that's another Town & Country Homes Pinnacle logo, correct?

MR. FARMER: Objection: Form. Mischaracterizes his earlier testimony.

THE WITNESS: This is the logo we use in Minnesota.

BY MR. KRUMMEN:

Q. Do you have a business card on you today, sir?

A. Yes.

Q. May I see the business card?

MR. FARMER: Objection: I'm going to object to this, to the extent you want his business card, submit a document request.

BY MR. KRUMMEN:

Q. It's the same logo on your business card, correct, sir?

A. Yes.
Q. So why are you saying that it is Minnesota, you don't work for Minnesota?
MR. FARMER: Objection: Argumentative, form, mischaracterizes his earlier testimony. He testified he is the CFO of Minnesota.
BY MR. KRUMMEN:
Q. You may answer.
A. I do work for Minnesota as their CFO.
Q. It says on your business card it is a Minnesota division on the logo, correct, sir?
A. I don't see that.
Q. It is simple, you have two business cards, one is for Pinnacle and one is for Town & Country Homes Minnesota, correct?
A. No, I only have one business card.
Q. Is it a business card for Town & Country Homes or is it a business card for Town & Country Homes, the Minnesota division?
A. Business card that says Town & Country Homes.
Q. No, in which hat does it relate to, does it relate to your Pinnacle hat or you Town & Country Homes Minnesota hat?

A. It relates to all my hats.
MR. FARMER: Objection: Form.
BY MR. KRUMMEN:
Q. It is a Pinnacle business card then, correct, sir, if it says Town & Country Homes, that's Pinnacle's logo, we established that yesterday.
MR. FARMER: Objection: Form, compound, argumentative.
THE WITNESS: It is also Minnesota's logo.
BY MR. KRUMMEN:
Q. No, Minnesota says a Minnesota division at the bottom of the logo, correct?
MR. FARMER: Objection: Arguing with the witness.
THE WITNESS: I don't know.
BY MR. KRUMMEN:
Q. Well, sir, you hold an office as CFO of Town & Country Homes, the Minnesota division, correct?
MR. FARMER: Objection: Form.
THE WITNESS: Correct.

BY MR. KRUMMEN:

Q. So you could just look at your business card and figure that out, right?

MR. FARMER: Objection: Argumentative.

THE WITNESS: I told you what my business card says, it says Town & Country Homes.

BY MR. KRUMMEN:

Q. It says a Minnesota division, correct?

A. No, it does not.

Q. It just says Town & Country Homes?

MR. FARMER: Objection: Asked and answered --

THE WITNESS: Correct.

MR. FARMER: -- three times.

BY MR. KRUMMEN:

Q. Let's do it this way.

(Exhibit No. 17 marked.)

BY MR. KRUMMEN:

Q. Sir, I have given to you what appears as two business cards that were produced as part of Exhibit A to Todd Stets' affidavit. We have marked just the page with the two business cards as Exhibit No. 17. Have I accurately thus far characterized the exhibit before you?

A. Yes, you have.
Q. Now we have the Town & Country Homes business card from Maria Amundson?
A. Yes.
Q. Another is a Town & Country Homes business card for Art Plante, correct?
A. Correct.
Q. You understand that both of those individuals, at least at one time, worked for your Minnesota division, correct?
A. I'm familiar that Art works for the division, I'm not familiar with Maria.
Q. We'll focus on Art Plante's business card. It is true, is it not, sir, on Exhibit 17 Art Plante's business card says Town & Country Homes, Minnesota division, correct?
A. Yes, it does.
Q. Now back to the prior exhibit in front of you, you see the Town & Country Homes logo, correct?
A. Yes.
Q. But you do not see Minnesota division, correct?
A. Correct.

Q. So this is Pinnacle holding itself out doing business as Town & Country Homes, correct?

MR. FARMER: Objection: Form and just a whole host of leaps to it, no logical conclusion. Go ahead.

MR. KRUMMEN: If you don't stop grading my questions, Mr. Farmer, I will start grading your illogical objections. You can object to form, you can object as vague and ambiguous, and you can even object to substance but there is no illogical conclusion objection.

MR. FARMER: Let me restate that, assumes facts not in evidence.

BY MR. KRUMMEN:

Q. Now, here is where we're at, it is this simple, you're comparing Art Plante's business card on Exhibit 17 with the logo on Exhibit 2, correct?

MR. FARMER: Objection.

THE WITNESS: Correct.

MR. FARMER: Are you asking him to compare those?

BY MR. KRUMMEN:

Q. That's where we're at. The logo on

Exhibit 2 says Town & Country Homes, correct?
A. Correct.
Q. That's what Pinnacle does business as, correct?
A. Correct.
Q. The logo on Exhibit 17, Mr. Plante's business card says Town & Country Homes, Minnesota division, correct?
A. Yes.
Q. And those are two separate business cards for two separate logos for two separate entities, correct?
MR. FARMER: Objection to form. Which are two separate business cards?
MR. KRUMMEN: Strike the question.
BY MR. KRUMMEN:
Q. The logo on Exhibit 2 is a different logo than the logo on Exhibit 17, Mr. Plante's business card, correct?
A. Correct.
Q. One refers to Pinnacle, that would be Exhibit 2, correct?
MR. FARMER: Objection: Foundation regarding this witness' knowledge of logos. We

had Mr. Fitch yesterday who was designated to speak to advertising practices and you know if we're going to get into definitions of logos, I'm going to shut this off here, this is not the witness who is designated to speak to this particular marketing, advertising topic, you had that witness yesterday.

MR. KRUMMEN: That's jurisdiction, Matt, and, again, you are shutting down the inquiry so we'll move to strike your defense.

MR. FARMER: Go ahead, you can proceed. I want to see how far you want to go with this, I have given you plenty of leeway.

MR. KRUMMEN: I appreciate you stopping to muddy up the water, I know we're hurting you now but I appreciate you making professional objections as opposed to speaking and coaching ones.

BY MR. KRUMMEN:

Q. We're back to Exhibit 2 and comparing it to Exhibit 17, correct, Mr. Anderson?

A. Yes.

Q. And you understand the logo on Exhibit 2 is Town & Country Homes which is what Pinnacle

does business as, correct?

MR. FARMER: Hang on, would you read that back, please.

(Record read as requested.)

MR. FARMER: Objection to form.

THE WITNESS: Pinnacle Corporation does business as Town & Country Homes.

BY MR. KRUMMEN:

Q. Now, you understand that the logo on Exhibit 17 is Town & Country Homes, the Minnesota division, correct?

MR. FARMER: Same objection. Foundation as well.

THE WITNESS: Yes, that's what the business card says.

BY MR. KRUMMEN:

Q. And you spent the better part of an hour and a half this morning trying to explain to me the difference between those two entities, Pinnacle and Town & Country Homes, the Minnesota division, correct?

MR. FARMER: Objection: Form, argumentative.

THE WITNESS: Correct.

BY MR. KRUMMEN:

Q. But now we find an exhibit where Town & Country Homes, which is Pinnacle, is telling people that it's doing business in Maple Grove, that's what Exhibit 2 says, does it not?

MR. FARMER: Objection: Form, argumentative, assumes facts not in evidence. Lack of foundation regarding this witness' knowledge of the document.

THE WITNESS: I don't know that the document says that Pinnacle Corporation, Town & Country Homes does business in Maple Grove.

BY MR. KRUMMEN:

Q. Why in the world would it refer to Town & Country living in Maple Grove if it is not signalling that Town & Country is doing business in Maple Grove?

MR. FARMER: Objection, again, we established no foundation that this witness has ever seen this document. Form, argumentative.

THE WITNESS: I don't believe that's the intent of the document.

BY MR. KRUMMEN:

Q. Let's back up a page. Now we're on RCI

108. Are you with me?
A. Uh-huh.
Q. Now we, again, have the Pinnacle doing business as Town & Country Homes logo at the bottom of the page, correct?
A. Yes.
MR. FARMER: Same objection, objection to foundation
BY MR. KRUMMEN:
Q. That's a yes, correct?
A. Correct.
Q. And at the top of the page we say since 1958, Town & Country Homes has built more than 100 communities, et cetera?
MR. FARMER: Objection to form, "we."
THE WITNESS: Correct.
BY MR. KRUMMEN:
Q. You look at the bottom right-hand corner though and we're talking about a Minnesota builder, that's what it says, correct?
MR. FARMER: Again, objection, to the form. "We." The document says what it says.
THE WITNESS: It says Minnesota builder.

BY MR. KRUMMEN:

Q. Isn't it reasonable, sir, to conclude that someone is telling the public that Town & Country Homes, which is Pinnacle, is doing business as a Minnesota builder, isn't that what this exhibit says?

MR. FARMER: Objection: Compound, calls for lay opinion and just general form objection.

THE WITNESS: Well, my opinion that's not the intent of the document. To lay a claim as a Minnesota builder.

BY MR. KRUMMEN:

Q. Well, let's start at the beginning of the document and work our way through it. Let's bounce up to RCI 105.

MR. FARMER: Let me ask, Mr. Krummen, do you intend at any point to establish any foundation regarding this witness' knowledge of the document?

BY MR. KRUMMEN:

Q. 105, are you there?

MR. FARMER: I'll take that as a no.

THE WITNESS: Yes.

BY MR. KRUMMEN:
Q. Again, we have the Pinnacle doing business as Town & Country Homes logo at the bottom of the page, correct?
MR. FARMER: Objection: Form, foundation.
THE WITNESS: Yes, we have the logo.
BY MR. KRUMMEN:
Q. But we have the Bayview and the Starwood, correct?
A. Correct.
MR. FARMER: Same objection.
BY MR. KRUMMEN:
Q. You understand that the Bayview is a unit built in Minnesota, correct?
A. That's my understanding.
MR. FARMER: Objection.
BY MR. KRUMMEN:
Q. So why is Pinnacle holding itself out as being the seller of the Bayview in Minnesota?
MR. FARMER: Same objections, lack of foundation, calls for legal conclusion.
THE WITNESS: I don't believe that Pinnacle is holding itself out if you look at the

website address, it is TownandCountryhomesminnesota.com.

BY MR. KRUMMEN:

Q. But it doesn't say Minnesota division under the logo, does it, sir?

A. No, it doesn't.

Q. And if you look at the copyright 2000, what does that say?

MR. FARMER: Hang on, what page are we on?

BY MR. KRUMMEN:

Q. Very bottom line of 105.

MR. FARMER: Hang on one second. Go ahead.

THE WITNESS: Town & Country Homes Minnesota.

BY MR. KRUMMEN:

Q. That isn't what it says, is it, sir?

A. Town & Country Homes period.

Q. Let's go to the next page, 106, you see the Centennial Crossing Homestead Collection in Maple Grove, Minnesota?

A. Yes.

Q. Do you see the left-hand upper corner

and it says Town & Country Homes?
A. Yes.
Q. Do you see the upper right-hand logo that says Town & Country Homes?
A. Yes.
Q. Let's go to the next page, 107.
MR. FARMER: Is there a question about it or whether the witness sees it on the document?
MR. KRUMMEN: He answered my question.
MR. FARMER: Okay.
BY MR. KRUMMEN:
Q. 107, Homestead Collection, do you see that?
A. Yes.
Q. And then we have Starwood and Bayview as bullet points, correct?
A. Yes.
Q. The bottom of the page, what does that say?
A. Town & Country Homes.
Q. And the next page, 108, we have been through it, correct?
MR. FARMER: Objection to form.
Mr. Krummen, we're willing to stipulate

the documents say what they say.

THE WITNESS: I'm sorry, are you waiting for an answer on something?

BY MR. KRUMMEN:

Q. We went through that one and I guess that's a rhetorical question. Let's bounce up to RCI 126.

A. Could we take a break?

MR. KRUMMEN: Yes.

THE VIDEOGRAPHER: We're now going off the record, the time is approximately 11:14 a.m. this is the end of Tape 1 of the deposition of Mr. Paul Anderson.

We're now going back on the record, the time is approximately 11:22 and this is the beginning of Tape 2 of the deposition of Mr. Paul J. Anderson.

BY MR. KRUMMEN:

Q. Mr. Anderson, I failed to cover one related entity earlier this morning and it is one referred to as Ridgedale Management. Have you ever heard of that entity before?

A. Yes.

Q. What is Ridgedale Management, what