Exhibit R126

desperate, that's what we'll do. We'll meet for dinner. Anyways, it will be one of those dates and we'll clarify that next week. All right. Mr. Schwiebert.

MR. SCHWIEBERT: I think the next issue, Your Honor, is the question of a time limit on 30(b)(6) depositions.

THE COURT: Okay.

MR. SCHWIEBERT: I do think the parties just fundamentally disagree on this notion. Rottlund cites and relies on in their brief a relatively recent decision applying the new rule limiting it to seven days in a --

THE COURT: Seven hours.

MR. SCHWIEBERT: Seven hours, I'm sorry -- in the context of an individual third-party deposition. And what happened in that case is the judge concluded that even though there were multiple defendants in that person's individual deposition because of the way they were noticed, they were limited by the seven hour rule.

THE COURT: Help me know how long these 30(b)(6) depositions have been going all around.

MR. SCHWIEBERT: The 30(b)(6) depositions of Rottlund began -- I'm trying to think. Six total days, three different witnesses.

THE COURT: Okay. And how about the other party?

MR. DAVENPORT: I can speak to what Rottlund has done.

MR. SCHWIEBERT: The 30(b)(6) depositions of TCM have taken place over, I believe, two days, and the 30(b)(6) depositions of Pinnacle, I believe, were taken over two days, and the 30(b)(6) depositions of BSB of Iowa, I believe, were over four days.

UNKNOWN SPEAKER: Correct.

THE COURT: Everybody agree with those numbers?

MR. DAVENPORT: I would, Your Honor, just note with respect to BSB's 30(b)(6) depositions at least half of that was the expedited discovery that the Court ordered with respect to TCM's. So as it gets down to plaintiff, two days, 30(b)(6), for each of the three, and that involved multiple witnesses that were designated to testify over several

topics. There was no one witness that was held for more than seven hours.

THE COURT: Mr. Schwiebert?

MS. NEWMAN: That, Your Honor, actually isn't accurate. Mr. Moor's deposition was over two days and was for more than seven hours. But I'm not -- I'm not suggesting that the seven hour rule applies to 30(b)(6) depositions at all because it -- if I chose to designate Mr. Moor, for example, for all, I don't remember how many topics, 60 some topics, then clearly his deposition is going to take longer than seven hours because he has been designated 60 some topics and it took four days to go through 60 some topics. So I'm not at all suggesting that the seven hour rule applies to 30(b)(6) depositions because it's up to the party to choose, you know, how many topics an individual witness can get designated to testify about. So I'm not at all suggesting that it applies. I'm just trying to correct the record that there were witnesses who did testify for more than seven hours.

MR. DAVENPORT: I was speaking

with respect to Rottlund's examination. If you add TCM's examination of Mr. Moor, then perhaps it probably went over seven hours. I'm speaking with respect to Rottlund.

THE COURT: What is it that you want, Mr. Schwiebert?

MR. DAVENPORT: Mr. Whitten --

MR. SCHWIEBERT: I want to continue the depositions that haven't concluded.

THE COURT: Tell me why, of whom, and for how long.

MR. SCHWIEBERT: We need to continue the deposition -- part of the issue is these witnesses didn't come prepared on some of these topics. And I understand the Court's instruction to all of the parties on the issues and hopefully that will resolve the issues. But there are whole categories that we still haven't got a witness on.

My anticipation is that Mr. Kahn who is their CFO that was designated on approximately a dozen topics, and keep in mind that a large portion of the examination we were able to take was just trying to figure out what the

CDs were, that his examination could probably be completed on his topics in two days, three days.

THE COURT: Two or three more days?

MR. SCHWIEBERT: Yes, Your Honor. The vast majority of the deposition took place was trying to figure out the content of what it was we had.

THE COURT: So much longer than Rottlund took.

MR. SCHWIEBERT: Part of it, Your Honor, is various defendants are not asking duplicative questions but we are each individually examining these witnesses. And I don't want to characterize Mr. Krummen's deposition style. I think he characterized it to the Court himself. But we are attempting to be thorough in getting the answers and the fact that he can more quickly -- let me back up.

THE COURT: How long has Mr. Kahn been deposed so far?

MR. SCHWIEBERT: One day.

THE COURT: Okay.

MR. SCHWIEBERT: And that entire examination was by me.

THE COURT: All right.

MR. SCHWIEBERT: I just want to correct an issue that keeps coming up. The plaintiff keeps making references to the fact there were objections to foundation during 30(b)(6) deposition of BSB. The overwhelming majority of those foundation objections have to do with the form of the question; meaning, none of the questions that form the basis of the questions that were being asked were being made. So in a quick manner you can ask a lot of questions that have no foundation and conclude your deposition quickly. There's been a reference to the number of foundation objections that are in there. It's probably an accurate account of the number of times that in our opinion he didn't lay any foundations for the questions he was asking during the depositions. So I don't think it's an apples to apples comparison between the amount of time they elected to choose with these witnesses, the amount of time the defendants are trying to get out these

answers.

Another big part of this problem has been -- for example, Mr. Whitten came to his deposition with exhibits we had never seen before. He literally produced them on the day of his deposition. There's -- in their letter there's reference to the fact that we have -- we provided him with things like a scale and other things. It's because he testified he needed those in order to tell us the answer. So we went through the process of physically locating the tools that he claimed he needed in order to provide us the answer.

We're not wasting time, Your Honor. We have no interest in wasting time. We just want to get the answers to the questions and get on with the rest of discovery. The problem we face is that a tactic of delaying us and then making it look like we're being onerous is what we're facing.

THE COURT: How long did Mr. Whitten's deposition go?

MR. SCHWIEBERT: I believe Mr. Whitten has testified --

MR. DAVENPORT: Three days.

THE COURT: And how much more do you want?

MR. SCHWIEBERT: My best guess is that Mr. Whitten could be completed in one to one and a half days.

THE COURT: And are you seeking anything else?

MR. SCHWIEBERT: Mr. Stutz. They designated three witnesses for all of the topics, Your Honor.

THE COURT: And how long was he deposed for?

MR. SCHWIEBERT: Two days, Your Honor.

THE COURT: And how much more do you expect?

UNKNOWN SPEAKER: (Inaudible).

MS. NEWMAN: Yes, I did. I had one day with Mr. Stutz.

MR. SCHWIEBERT: I did not get any time with Mr. Stutz.

Part of the difficulty is none of these days have been concurrent. We keep getting a witness and then A new witness the next day. So they haven't been -- it's not like we're

holding these witnesses in the room for three days at a time. Just so --

THE COURT: And I would think to some extent you could coordinate some of your questioning, particularly Pinnacle and TCM.

MR. SCHWIEBERT: We've been trying, Your Honor. I would say one to one and a half days we should be able to complete Mr. Stutz's examination.

MR. DAVENPORT: Can I ask a question, Your Honor? Would that include individual depositions of these people as well?

THE COURT: You intend to individually depose all these people after this?

MS. NEWMAN: Your Honor, the BSB witnesses --

THE COURT: It's just too much. I mean that's just excessive.

MS. NEWMAN: The BSB witnesses have been asked to appear for their personal depositions, and the folks that have been asked to appear for their personal or

individual depositions are all the same witnesses that we designated pursuant to Rule 30(b)(6). We provided those dates and expect those depositions to be taken. So I am not objecting to that. I think that they're entitled to take those personal depositions if they so desire, and we have provided dates for all of the people that they want.

THE COURT: And I absolutely agree that they can take personal depositions. It's just a question of the quantity of time we have somebody under deposition.

MS. NEWMAN: On the personal depositions I think that, you know, to the extent that we are not getting duplicative --

THE COURT: Well, the personal depositions are seven hours.

MS. NEWMAN: -- until the examination is complete.

THE COURT: I mean, there's no question about that.

MR. SCHWIEBERT: I think what Ms. Newman is suggesting is we're not going to need the full seven hours. The difficulty

we've encountered is the corporate witnesses that are coming are not being prepared to testify on behalf of the corporation, and I know Mr. Davenport is going to disagree --

MR. DAVENPORT: Can I speak to that for just a minute.

THE COURT: Yes.

MR. DAVENPORT: Because I think it's important to understand what these witnesses are prepared to testify about. And the Court has given us some very good instruction with respect to what should happen in the deposition room. And I understand there's not been any judgment with respect to what is going on, but Mr. Whitten who was designated for topic 18 which was any bases for Rottlund's claims -- and if I could approach, I'm just going to show you an exhibit. I don't have enough copies for (inaudible).

So Mr. Whitten brought in some information he had (inaudible). And this is Rottlund's (inaudible). This, Your Honor, (inaudible) and as part of his examination (inaudible). He said look, flip it over

(inaudible) 180 degrees and it's (inaudible). I think that's the right copy (inaudible).

What happened at some point during his deposition is there was an exchange between counsel and Mr. Whitten where there was, I'll call it a discussion, about you're supposed to be providing testimony about any and all bases. There's no deposition topic that (inaudible) all bases, any bases. So we end of spending time in a deposition fighting about characterization that you have to give us all bases right now today.

And as part of what we're suggesting in the briefs that we gave to Your Honor, what ends up happening is when Rottlund's witnesses do the exact same thing that BSB's witnesses did, which was, I can't tell you all the similarities or the differences exhaustively today, I would need 45 minutes, two hours. I'd need more time. When Rottlund's witness says the same thing in the same manner, then all of a sudden the cow's jumping over the moon and nothing is working properly (inaudible) Rottlund's witnesses aren't prepared.

Mr. Whitten is there, he's prepared, three solid days. There's no end in sight. And now we're talking about individual depositions. I'm heartened to hear that they don't expect to haul Mr. Whitten in for more than seven hours in his individual capacity. We had no idea that that was going to be their position with where we'd gone so far. But the witnesses are prepared, Your Honor, but the witnesses are not prepared is to provide testimony over things the Court has already ordered is not relevant. What's the disposition of the lawsuit. Tell me about all of your other products. Tell me about these itemized, atomized individual element type issues that we've exhausted and briefed.

I just wanted to highlight that (inaudible) make it clear for the record. We take great exception to the fact that Rottlund's witnesses (inaudible). Be more than happy in the context of a motion if we had to to put the deposition transcripts side by side of Pinnacle, BSB, TCM's witnesses and Rottlund's witnesses and let's see who's prepared. I don't think we need to go down

that path.

MR. SCHWIEBERT: Your Honor, Mr. Whitten testified that he had started his analysis on the differences but not completed it during the first day of his deposition. I asked him how much time it would take him to complete it. He said two days. Two weeks later we got back together. He hadn't taken the two -- he didn't take the two weeks in preparing -- the two days in preparing for the first time. He told me that's what he needed to do to know the answer was to spend two days figuring it out so he could tell me. I reasonably expected two weeks later they'd have prepared him to finish testifying on that topic.

I didn't prepare for today's status conference the list, and there is a list, of witnesses who simply said I'm not prepared to testify on that topic and I would ask them you were designated to testify on this topic? Yes. But you don't have any knowledge regarding that? No.

Now, we've had instruction from the Court. I think we've resolved the difficulty

between the personal knowledge and corporate knowledge. We're going to have to double back all of those topics because I hope those witnesses are going to be prepared when we get to them the second time, the next time.

I don't think the time lines that I've prepared, the number of days that I anticipate to complete, I reasonably expect them to complete in those time. I'm not providing you short numbers. That's what, given breaks and everything else, I think it's going to take.

MR. DAVENPORT: Your Honor, could we have some guidance from the Court with respect to how the questioning should occur. For example, if Pinnacle's counsel asks questions on the topic and then it goes over to TCM's counsel to ask all of their questions on the same topic in a different way, Pinnacle's counsel --

THE COURT: Well, there shouldn't be any redundancy.

MR. DAVENPORT: Pinnacle's counsel --

THE COURT: I presume there's no redundancy.

MR. DAVENPORT: Pinnacle's counsel takes a sticky note, ask this question. There's not, you know -- and then BSB gets handed notes from TCM and Pinnacle's counsel, here's a question. It's a never ending circle.

THE COURT: Well, as long as it's not redundant. You do need to coordinate to the extent it's not redundant.

MR. SCHWIEBERT: I think you've highlighted the reason why (inaudible) information exchange going on is to prevent somebody else from later having to say, okay, now I'd like to go back to follow -- do you remember when they asked you this question, do you remember this is your answer, here's my follow-up. The defendants are trying to coordinate to the extent that we're covering lines of topics and not having to go back and do that. I don't know how else to characterize other than we're trying to coordinate and get through it as fast as possible.

MS. NEWMAN: Your Honor, just so I can be clear, as stated in the

submissions that you've received from Rottlund on this issue, there has been a suggestion, well, we want some sort of -- I think the term was level playing ground or even field with respect to, well, wait a minute, we may have witnesses that are wholly unprepared to answer questions. It's because they need more time to study. Well, BSB had witnesses who said, yeah, if given additional time, they may be able to supplement or provide additional answers. I will tell you that at no time did plaintiff or any other party ask BSB to undertake that and ask them the questions, okay, if you had said before some of the differences, some of the similarities, can you give me complete list? The question was never asked, never asked. They were never given the opportunity to provide full and complete information. The only question that was asked is, have you already provided full and complete information? The answer was no. But they were never asked to do that.

So to suggest that the basis upon which Rottlund claims that they don't have witnesses prepared and ready to answer questions is

because BSB did not, that is untrue because the BSB witnesses were prepared, were ready, and if asked, would have provided the information. They were never asked. Did not happen at their deposition.

MR. DAVENPORT: And respect to that, Judge, Rottlund believes that it -- one of the biggest inefficiencies so far that's happened in the deposition room is related exactly to that. We don't believe we should say, okay, take 45 minutes and answer my question and sit and wait for 45 minutes while that clock is ticking and that witness is under the deposition. Our biggest waste of time occurred when the better part of an hour was spent having Mr. Whitten measure the height, the width, and the depth of a particular garage and then have him measure on the plans, tell me what the measurements are on these plans, use these tools, tell me what they are. That took an hour.

THE COURT: All right. Well, we could go back and forth all day long. Again, I expect these witnesses to be prepared when they walk in the deposition room. There

shouldn't be a reason for them to take additional time. Topics are there, then the preparation needs to be there.

TCM's request is for six additional days, over six days that they've currently taken. I suppose that's a joint request of the defendants. I can't give you that much. And then to do three days over and above that of personal depositions, so nine additional days, it's too much. I'll give you three additional days for the Rottlund 30(b)(6) to use as you see fit. If that doesn't work, you come back and tell me why but there has to be a real, real, real good reason why I give you any more time. Between an additional day for every witness plus that's two more days of every witness basically, one is in their corporate capacity and one in their personal capacity, that's plenty of time. All right.

Anything else because I'm actually going to need to leave momentarily.

MR. DAVENPORT: Do you want to see the materials I brought with respect to the timing issue on the motion to amend, Your Honor? I'll be very brief.

MS. NEWMAN: Yeah. Your Honor, before we go to that, I asked again to be separately heard on this issue before we got to that, and with respect to this is that we have seen time and time and time again the plaintiff submitting things that have been in their possession for a long period of time to supplement records that have already -- or motions that have already been heard, issues that have already been heard and closed without ever asking for permission from the Court to make these supplemental briefs, arguments, submissions, so on and so forth. They did it most recently with the motion for sanctions. They tie it into the motion with respect to the Dean Karau affidavit and issue, and they did it most recently to BSB on their motion to amend now the fourth amended complaint, unsolicited, unrequested, additional argument based on documents and information they had months before they brought the motion. Months and months before they brought the motion. And we are now having to try to figure out do we respond. If we do respond, is our response only they never

asked permission to do that; therefore, they have to ask permission to do that before they come to the Court with additional information and then a briefing schedule gets set up so that we have an appropriate time period to respond to that. And then meanwhile what happen to these motions that have been pending? You know, when are we going to get decisions?

I mean, I got to tell you that it's going to be very, very, very difficult. And I'm not criticizing you. I saw that facial expression. I am not criticizing you for timing in terms of getting decisions. All I'm saying is that with respect to these motions that are pending for a long time and then all of a sudden two months later we get additional submissions now you're delaying even further. And that has become a real issue. And we just have to say to you that both with respect to motion submissions and with respect to status conference issues, we need to, A, follow the procedures that have already put in place for notice so there's opportunity; and B, not have these late submissions constantly being coming

and us having to try to respond to them. We object to this. We object to the late submissions that they've already made time and time again.

THE COURT: Okay. This is what we should do. Yes, we should clearly follow the rules. Any additional submissions I think ought -- there ought to be leave asked to do it. I'm not going to prevent them because both sides may need to do it and it may be appropriate to do it, particularly if there's a delay on the Court's part in ruling. Not that that's an unjustified delay, trust me.

MS. NEWMAN: I never said that. I did not mean to --

THE COURT: I know. So I think what we ought to do is just seek leave. I think that's the way to do it. That way if you seek leave or if you seek leave, either side responds to that and then I'll make a decision about whether to consider it. Okay. Is that fair?

MR. DAVENPORT: Your Honor, may I quickly, then, just simply ask if I can present to you what I've brought today?