Civil No. 01-1980 (DSD/SRN) – Rottlund/Pinnacle
Patrick Affidavit dated July 20, 2004

# Exhibit B

Page 57

The other one that Mr. Krummen said I know we are going to talk about this again is he said that the competition products survey, whatever that is, has not been produced. We don't, in fact, know that and I know we are going to talk about that later, I just couldn't resist. Thank you, Your Honor.

THE COURT: Thank you. Mr. Farmer.

MR. FARMER: Just one point, Your Honor. This goes to this idea of shared profits between TCM, Pinnacle and Bloodgood Group. We are dealing with an almost schizophrenic set of arguments, depending on what month you are in this courtroom. It was a couple of months ago that Rottlund was doing its best to get Bloodgood Sharp out of this case continues to tell the court that its liability, Bloodgood's liability was going to be limited by the amount it received under this contract. When it suited Rottlund's needs to limit or to try to get Bloodgood Sharp out of this case it was told that Bloodgood Sharp got, and the numbers were thrown around whether it was 20,000, 30,000, 50,000, 60,000. But now we have got a vast BCCI like financial scheme and I am sure in the weeks to come when you hear argument about why Rottlund should be able to force BSB to file a motion for summary judgement we are going to once again hear about the minimal financial interest that BSB had in this

Page 58

litigation. Thank you.

THE COURT: Mr. Krummen, anything else?

MR. KRUMMEN: No, Your Honor.

THE COURT: You may be excused.

MR. KRUMMEN: Thank you, Your Honor.

Your Honor, if I may beg your indulgence. Would it be possible to argue the competition products survey now or table until the next status hearing? And also the only other one that was there was the Larry Moore design file, can we table that until the next status hearing, those were the only two that I was going to address dealing with what I just argued?

THE COURT: The design file and the competition survey.

MR. KRUMMEN: Yes, if we can put those on for the next status hearing?

THE COURT: Is that acceptable to the defendants?

MR. FARMER: Yes, Your Honor.

MS. NEWMAN: Yes, Your Honor.

MR. SCHWIEBERT: Yes.

THE COURT: Mr. Krummen, let me quickly ask you whether June 11 or June 16 might work for the next status hearing?

MR. KRUMMEN [illegible] d

Page 59

myself we will cover whatever is available, Your Honor.

THE COURT: All right. I think we will take a ten-minute recess, be back in ten minutes.

(Break taken from 3:00 to 3:10 p.m.)

THE COURT: All right then, why don't we proceed with whichever motion to compel you wish to proceed with first.

MR. DAVENPORT: Thank you, Your Honor. I will start with the motion to compel to BSB.

THE COURT: Okay.

MR. DAVENPORT: Three points I would like to make. The damages related to discovery, Your Honor, BSB should be required to adhere to the strict prior rules regarding evidence, they should not be permitted to limit their responses in the same manner in which Pinnacle and BSB previously attempted to do so prior to this Court's orders.

With respect to interrogatory number 18, BSB claims there is no meet and effort to confer and side step it here today, I would state that's incorrect, I would ask the court to either require BSB to agree right now to produce the information as it relates to it or explain here today why they should not be required to do so.

Interrogatory number 18, Your Honor, relates to Exhibit Number N which was filed as part of my

Page 60

affidavit in support of this motion. Mr. Krummen was deposing Mr. Plant back on the 19th of December. Mr. Plant was from Town & Country Minnesota, the designated representative. He testified they were developing a new back-to-back slab-on-grade town house with another architectural firm. He was asked for the purpose of developing back-to-back town homes with this other architectural firm who has been identified as Tushie Montgomery.

He testified that there were several purposes, one of the purposes was because they had not been able to enter into an agreement satisfactory with Town & Country and BSB with a back-to-back design. As you will see, there was additional testimony with regard to this matter. We believe the request is relevant, it goes directly to what is the issue in the case. It relates to the intentional infringement that we believe is going on.

With respect to the third point, Your Honor, Mr. Larry Moore testified that BSB -- let me back up, Mr. Moore was designated as the BSB 30B6 representative on certain topics. You heard in material from Mr. Krummen earlier related to Mr. Moore. Mr. Moore testified on behalf of BSB that he believes Rottlund copied BSB "long before Rottlund got into the business." In their brief and in opposition to the motion, Your Honor, BSB in

EXHIBIT
tabbies
B

support of this contention states "back to the early 1970s." So they are relying on materials that they presumably have or have access to, as we see from the way they initially started to discover third party discovery, going all the way back to the 1970s. And I will avoid terms such as cherry picking and things along those lines for purposes of argument, Your Honor, but what we need from BSB is one, produce that material, and two, produce what undercuts it. They should not be permitted to go into their files or whomever else's files they are attempting to go into and only retrieve materials that they believe support the testimony their experts hope to offer at trial.

I laid that out in the brief, I don't feel I need to explain it any further, but essentially, Your Honor, we believe it would be extremely unfair to permit this type of defense without permitting Rottlund the opportunity to challenge it. And what better way to impeach that testimony from their very own documents that BSB will be ignoring from its own files that it has access to.

Thank you.

THE COURT: Counsel.

MR. PATRICK: Good afternoon, Your Honor.

THE COURT: Good afternoon, Mr. Patrick,



right?

MR. PATRICK: Mr. Patrick. Beginning with Rottlund's request for BSB'S financial documents. I think it's important that the court beware, we have provided to Rottlund, first of all, all documents that indicate what profits BSB -- what revenue BSB has received regarding the Homestead collection.

Second of all, we have or we will shortly be providing Rottlund with all documents that indicate what costs we intend to deduct from these gross revenues in order to come to a net. Now we did this because of this court's order previously with regard to TCM. It's our position and it's our understanding of that order that we are required to provide to Rottlund first of all our gross receivables. Second of all, underlying documentation for all deductions we intend to make in order to arrive at a net profit figure, and these are things that we intend to do.

What Rottlund seeks now, and I would reference in my memorandum, I think it's important to note that Rottlund actually does not quote any of their document production requests in their motion simply because if you read those document production requests they seek all financial documents from BSB going back to time in memorial for all projects that BSB has ever done.



Quite frankly, BSB'S financial position is not at issue in this lawsuit, all that is at issue is what profits BSB has received from the allegedly infringing product. We have and will continue to provide all of those documents.

Until Rottlund indicates why it is entitled to receive information regarding profits, revenues, income totally unrelated to projects we have done for TCM, Pinnacle, projects that we have done for the town home product, these other requests are irrelevant.

Now regarding the second point, other designs nonback-to-back designs BSB has done. We have, BSB has, already provided to Rottlund every back-to-back design it has done. Why did we do this? Because we feel that these back-to-back designs are relevant. Why did we do this? Because we feel that these back-to-back designs demonstrate that there were a very limited number of iterations of a back-to-back town home and that Rottlund's town home lacks significant originality compared to designs that BSB has done in the past.

What does Rottlund now ask for? Rottlund now asks that we turn over all projects that BSB has ever done related to slab on grade construction, single-family homes, traditional row town homes, et cetera. A rough approximation given by BSB is that this would be 555 separate projects easily encompassing 100 or more



documents apiece. So we are talking about at a minimum 55,000 documents, not pages of documents, but individual documents. Our question is and our position is: Why is this relevant? Why is, for example, BSB'S design for single-family homes relevant to whether or not the Homestead collection even goes back to that, infringes on the Rush Creek eight unit. That is the question before this court. Do these products infringe? Are these products substantially similar? We have provided all of the plans that we think bear on this question. Now, Rottlund alleges, Rottlund mentions Jerry Pecking, they say that they need these plans in order to prevent BSB from picking between all of its projects, all of its products, to pick those that look the same. The fact of the matter is BSB can't produce any single-family home design that looks substantially the same for the eight unit back to back, a different product.

Second of all, they talk a lot about what we anticipate from our expert witness in terms of testimony. I think that Rottlund assumes that our expert will be limiting his testimony and reviews to plans produced by BSB, that is simply not true. BSB did know, as far as I am aware, of back-to-back town home designs in the '70s. That is not something that they did, I'm sorry, Your Honor, I haven't investigated that fact, but that is my