UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br>Plaintiff,<br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br>vs.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT'S MOTION TO COMPEL DISCOVERY** |

## INTRODUCTION

Defendant Town & Country Homes, Inc. ("TCM") believes that it is entitled to an Order compelling Winthrop & Weinstine to search for and, perhaps, produce documents that may exist in Winthrop & Weinstine's electronic files or correspondence files. TCM admits that it seeks production of attorney-work product from opposing counsels' files without a subpoena, but it fails to overcome its procedural inadequacies and the Eighth Circuit's substantive "nearly

absolute immunity" protecting the production of attorney-work product. Thus, the Court should deny TCM's motion to compel.

**BACKGROUND FACTS**

Winthrop & Weinstine retained, on behalf of Rottlund, Anthony Desnick as an expert to opine on liability issues in this case. (Affidavit of David A. Davenport ("Davenport Aff."), ¶ 2.) Mr. Desnick issued four written opinions that comply with Fed. R. Civ. P. 26(a)(2)(B). (*Id.*, Exs. A-D.) The Defendants deposed Mr. Desnick on June 23, 2004. (*Id.*, Ex. E.) During the deposition, the Defendants questioned Mr. Desnick at length about the mechanics of how he prepared his full written disclosures. (*Id.*, 117:11-121:3.) Mr. Desnick testified that each of his reports were preceded by "one or two earlier drafts," which were reviewed with Rottlund's counsel, "and most of the changes that [he recalled] were grammatical changes and things that were inconsistent with the fact pattern, particularly with respect to the chronology." (*Id.*, 118:1-5.) Mr. Desnick explained that:

> "I was getting some dates wrong and they helped with what the dates were. There was one specific time when I got a file from their office that had a series of documents that I had already had in my possession but these documents were placed in chronological order to help me understand the fact pattern with respect to chronology."

(*Id.*, 118:5-12.)[1] Mr. Desnick further testified that these grammatical and chronological fact pattern changes were exchanged via e-mail with Rottlund's counsel, but that he did not retain a copy of the limited exchanges of draft reports because the drafts were not important to him since the executed disclosure represented his expert opinion in this matter. (*Id.*, 118:17-121:3.)

After the Defendants completed Mr. Desnick's deposition, TCM sent a letter to Rottlund's counsel and asked them to "produce in electronic format all communications between (Winthrop & Weinstine) and Anthony Desnick . . .." (Schwiebert Aff., Ex. B.) Rottlund

[1] These documents were made available for the Defendants' review and for copying.

responded and asked, *inter alia*, TCM to provide relevant legal authority to support its position that attorneys' files are discoverable.[2] (*Id.*, Ex. F.) Unfortunately, TCM did not respond.

Moreover, despite the meet-and-confer mandates of Rule 37 of the Federal Rules of Civil Procedure, a predicate to motions to compel like TCM's, TCM never attempted to meet-and-confer with Rottlund's counsel. (*Id.*, ¶ 9.) Moreover, TCM did not serve a subpoena *duces tecum* upon Winthrop & Weinstine prior to the close of either fact or expert discovery. (Davenport Aff., ¶ 10.) Thus, TCM does not provide the Court with a document request or an outstanding subpoena *duces tecum* upon which to base an Order to compel.

**LEGAL ARGUMENT**

Correspondence from Winthrop & Weinstine to Mr. Desnick, including any suggested grammatical or chronological fact pattern changes contained in limited draft reports of Mr. Desnick that may exist in Winthrop & Weinstine's files, are opinion work product and not discoverable for the following reasons. First, the documents are tangible items prepared by counsel in anticipation of litigation and are thus protected attorney work product. *See* Fed R. Civ. P. 26(b)(3) (2004). Second, the documents may tend to indicate the attorney's mental processes. *See e.g.*, *Upjohn v. United States*, 449 U.S. 383, 399-400 (1981) (required disclosure of materials tending to reveal attorney's mental processes is disfavored). Third, pursuant to the Supreme Court, correspondence and memoranda prepared by an attorney constitute work product that is not discoverable absent very compelling circumstances. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Lastly, TCM conceded that the documents improperly requested are opinion work product when it supported the instant motion with cases purportedly supporting its argument regarding the discoverability of opinion work product. *See e.g.*, *All West Pet Supply v. Hill's Pet*

[2] Contrary to TCM's argument, Rottlund's counsel has not admitted that the documents requested by counsel's letter exist.

*Products*, 152 F.R.D. 634, 637 (D. Kan. 1993) (defendants did not contend that requested documents were not work product).

**A. TCM's Motion Should Be Denied Because Work Product Is Not Discoverable.**

Contrary to TCM's blanket assertion that "Rule 26 mandates disclosure of all information shared with a testifying expert, including the mental impressions and opinions of the attorney," there is clear disagreement among the courts concerning whether or not opinion work product is discoverable if disclosed to an expert witness.[3] *Compare Estate of Chopper v. R.J. Reynolds Tobacco Co.*, 195 F.R.D. 648, 651-52 (N.D. Iowa 2000) (opinion work product has nearly absolute immunity and is not discoverable when shared with an expert); *Krisa v. Equitable Life Assur. Soc.*, 196 F.R.D. 254, 260 (M.D. Pa 2000) ("disclosure of core work product to a testifying expert does not abrogate the protection accorded such information"); *Moore v. R.J. Reynolds Tobacco Co.*, 194 F.R.D. 659, 663-64 (S.D. Iowa 2000) (opinion work product has nearly absolute immunity and is not discoverable when shared with an expert); *TV-3, Inc. v. Royal Ins. Co.*, 194 F.R.D. 585, 589 (S.D. Miss. 2000) (correspondence between counsel and expert was discoverable); *Nexxus Products Co. v. CVS New York, Inc.*, 188 F.R.D. 7, 10 (D. Mass. 1999) (required disclosure does not include core attorney work product); *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 642 (E.D.N.Y. 1997) ("the data or information considered by an expert witness in forming his opinions applies only to *factual materials*"); *Karn v. Ingersoll-Rand*, 168 F.R.D. 633, 635-36 (N.D. Ind. 1996) ("work product protection does not apply to documents provided by counsel to testifying experts related to the subject matter of the litigation"); *Furniture World, Inc. v. D.A.V. Thrift Stores, Inc.*, 168 F.R.D. 61, 62 (D.N.M. 1996) (documents furnished to expert are discoverable); *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 295 (W.D. Mich. 1995) (citing Hickman, 329 U.S. at 513 (1947)) (discovery only

[3] Apparently in support of its argument that "Rottlund has refused asserting [sic], without support, a work-product privilege," TCM cited the few courts that have permitted discovery of opinion work product if disclosed to expert witnesses, but TCM simply ignored the many other courts that refuse to permit such discovery. (TCM's Mem., p. 2.)

allowed for factual information because only in "a rare situation" would discovery of attorney opinion work product be justified); *All West Pet Supply*, 152 F.R.D. at 639 n.9 (D. Kan. 1993) (requires disclosure of facts only, does not compel production of documents that may contain protected work product).

The disagreement among the courts focuses on the issue of whether or not the limitations prescribed in Rule 26(b)(3) apply to section (b)(4) following the 1993 amendment to Rule 26. *Haworth*, 162 F.R.D. at 292; *see* Fed. R. Civ. P. 26. The primary point of concern with these two subdivisions of Rule 26 is the portion of Rule 26(b)(3) which states, "subject to the provisions of subdivision (b)(4) of this rule." *See Haworth,* 162 F.R.D. at 292. Rule 26(b)(3) provides protection for work product of the attorney; Rule 26(b)(4) provides for the deposition of experts while referencing the disclosure requirements of Rule 26(a)(2)(B). In relevant part, Rule 26(a)(2)(B) requires the disclosure of "the data or other information considered by the witness in forming the opinion." Fed. R. Civ. P. 26(a)(2)(B). Some courts have interpreted the "subject to the provisions of subdivision (b)(4)" clause to eliminate work product protection with regards to expert discovery and have required opinion work product to be disclosed as "data or other information considered by the witness in forming the opinion." *See e.g., Karn*, 168 F.R.D. at 638-39. However, the more reasoned approach, which most courts have adopted, concludes that the "data or other information" disclosure requirement creates a different discovery standard for factual work product, but has done nothing to abrogate the immunity afforded to opinion work product. *See e.g., Haworth,* 162 F.R.D. at 293.

The legal reasoning underpinning the decisions from those courts which continue to honor the immunity afforded to opinion work product, which Rottlund cites, is sound and should be followed by this Court. For instance, as noted in *Krisa*, 196 F.R.D. at 260, adoption of a "bright line" rule that permits discovery of anything disclosed to an expert is an unauthorized

expansion of the discovery power. Moreover, such a broad expansion may only be authorized by clear and unambiguous language in the Federal Rules of Civil Procedure. *Magee*, 172 F.R.D. at 642-43 (citing *Hickman*, 329 U.S. at 514). Such language is not present. In addition, "an interpretation of Rule 26 that holds that a party must produce documents containing work product that are disclosed to its expert *ignores* the language of Fed. R. Civ. P. 26(b)(3);" thereby violating the canon of statutory construction requiring statutes be read to give effect to all provisions. *Krisa*, 196 F.R.D. at 260 (*citing Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 724 (1995)).

The only Circuit Court case to address this issue is *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 593-95 (3d Cir. 1984). *Karn*, 168 F.R.D. at 636. In *Bogosian*, the Third Circuit noted the importance of being able to supply the adversary with the facts relied upon by the expert while at the same time protecting the sanctity of the legal theories and opinions of counsel, which necessarily is communicated to the expert to some extent during the attorney-expert dialogue. 738 F.2d at 595. Although *Bogosian* was decided prior to the 1993 amendments to Fed R. Civ. P. 26, the Third Circuit's legal reasoning has been adopted by subsequent courts to prevent discovery of opinion work product that has been provided to expert witnesses. *See Krisa*, 196 F.R.D. at 259-60; *Nexxus*, 188 F.R.D. at 9; *Magee*, 172 F.R.D. at 642; *Haworth*, 162 F.R.D. at 292-295.

The primary concern of the limited authority TCM cites relates to the level of influence counsel may have on an expert witnesses' opinion. *See, e.g.*, *TV-3*, 194 F.R.D. at 588; *Simon Prop. Group, L.P., v. MySimon*, 194 F.R.D. 644, 647 (S.D. Ind. 2000); *Lamonds v. General Motors Corp.*, 180 F.R.D. 302, 306 (W.D.Va. 1998); *B.C.F. Oil Refining v. Consol. Edison Co. of N.Y.*, 171 F.R.D. 57, 64 (S.D.N.Y. 1997); *Musselman v. Phillips*, 176 F.R.D. 194, 200 (D. Md. 1997). However, the *Haworth* court explicitly addressed and rejected this concern. Relying

upon the Supreme Court's decision in *Hickman*, the *Haworth* court held that the potential slight benefits in cross-examination and impeachment of experts by opposing counsel are not compelling enough interests to overcome the strong policy against disclosure of opinion work product. 162 F.R.D. at 295-96.

Similarly, in *Nexxus*, the court noted that "the central inquiry on cross-examination of an expert witness [ ] is not the question of if and to what extent the expert was influenced by counsel; rather it is this: what is the basis for the expert's opinion." 188 F.R.D. at 10. Deficiencies in an expert's opinion may be exposed by cross-examination and other expert testimony; accordingly, there is no need to inquire about counsel's input. *Id.* Furthermore, allowing discovery of everything provided to an expert would prevent counsel from supplying the expert with all relevant information; consequently hindering the expert's ability to provide a complete assessment. *Id.*

The Eighth Circuit has not directly addressed this issue. *Chopper*, 195 F.R.D. at 650. However, like *Bogosian*, the Eighth Circuit has held that "opinion work product is entitled to nearly absolute immunity." *Chopper*, 195 F.R.D. at 651 (citing *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053-54 (8th Cir. 2000)). Applying this principle, at least two district courts in this circuit have denied discovery of opinion work product disclosed to an expert. *See Chopper*, 195 F.R.D. at 652; *Moore*, 194 F.R.D. at 664. Both of these courts explicitly held that the need to cross-examine an expert witness is not such a "very rare and extraordinary circumstance" to justify abrogation of the immunity afforded to the opinion work product privilege. *Chopper*, 195 F.R.D. at 652; *Moore*, 194 F.R.D. at 664.

Here, the Court should find that correspondence in Winthrop & Weinstine's files, including any draft expert witness reports, are privileged work product that may not be discovered because the case law upon which Rottlund relies is more persuasive than the few

cases cited by TCM. This is so because the cases Rottlund cites (1) address the primary concern of the cases TCM cites and follow the Supreme Court's policy considerations articulated in *Hickman* and *Upjohn*; and (2) further the Eighth Circuit's *Baker* decision regarding the immunity afforded to opinion work product. (*See Id.)*

**B. TCM Cannot Compel Production Of Documents From Winthrop & Weinstine.**

The provision of Rule 34 of the Federal Rules of Civil Procedure which permits a party to seek an order compelling document production applies only to parties. Fed. R. Civ. P 34(a) (2004). Thus, "any…requests for production of documents served on non-parties are a nullity."[4] *Lehman v. Kornblau*, 206 F.R.D. 345, 346 (E.D.N.Y. 2001). Winthrop & Weinstine is not a party to this action.

Rule 34(c) expressly provides that non-parties may only be compelled to produce documents through the subpoena process set forth in Rule 45. Thus, the only way to compel production of documents for discovery purposes from a non-party, including opposing counsel, is through a subpoena *duces tecum* served during discovery in accordance with Rule 45. *Hickman* 329 U.S. at 504; *Haaf v. Grams* 355 F.Supp. 542, 546 (D. Minn. 1973); *In re Greenwood Air Crash,* 161 F.R.D. 387, 394 (S.D. Ind. 1995); *Henderson v. Zurn Indus. Inc.,* 131 F.R.D. 560, 565-67 (S.D. Ind. 1990) (cannot obtain discovery without subpoena even if discovery is sought from entity closely connected to the party); *In re Air Crash at Dallas/Fort Worth Airport on August 2, 1985*, 117 F.R.D. 392, 393 (N.D. Tex. 1985); *United States v. Allen,* 578 F.Supp. 468, 472 (W.D. Wisc. 1983); *Smith v. Parmley,* 558 F.Supp. 161, 162 (E.D. Tenn. 1982) (no authority to issue order to compel against non-parties, must use subpoena); *Hilgenberg v. Neth,* 93 F.R.D. 325, 326 (E.D. Tenn. 1981); *Seven-Up Co. v. Get Up Corp.,* 30 F.R.D. 550, 551 (N.D. Ohio 1962). Winthrop & Weinstine has not been served with a subpoena requesting

[4] TCM's only request seeking the information at issue here is found at Ex. B to the Schwiebert Affidavit (a letter to Winthrop & Weinstine).

production of the documents TCM seeks through the instant motion. (Davenport Aff., ¶ 10.) Discovery has closed, so a subpoena can no longer be served on Winthrop & Weinstine. Had TCM served Winthrop & Weinstine with a duly executed subpoena while discovery remained open, Winthrop & Weinstine would have had an opportunity to utilize the protections Rule 45 provides to non-parties.

Because TCM is precluded from seeking an order to compel, the Court should deny its motion.

**C. Alternatively, The Court Should Order All Parties To Meet And Confer To Determine Whether They Will Stipulate To A Mutual And Reciprocal Document Production.**

If the Court concludes that TCM may compel Winthrop & Weinstine to produce all communications it has had with Mr. Desnick, including any draft versions of Mr. Desnick's four expert reports, without a timely served subpoena *duces tecum* requesting such information, then the Court should Order all the parties to meet and confer to determine whether TCM, Pinnacle, BGI and BSB will stipulate to a mutual and reciprocal production for each of their experts – liability and damages. This is important because all the Defendants have entered into a joint defense agreement and unless they each agree, Rottlund will suffer prejudice. In fact, Rottlund has already suffered prejudice as a result of the joint defendants' inconsistent positions on expert discovery.

For instance, at the Town & Country Defendants' insistence, Rottlund produced the notes taken by its expert witnesses. Subsequently, BGI and BSB stated they were "unwilling to disclose any notes taken by any of our experts". (Davenport Aff., Ex. G.) Defendants BGI and BSB then returned to Rottlund the expert witness notes Rottlund produced during discovery; however, the Town & Country Defendants failed to return these expert witness notes. (*Id*., Ex. H.)

In addition, very recently, on July 16, 2004, when Rottlund deposed BSB's and BGI's damages expert, Rottlund discovered that neither he nor his counsel had produced the following materials to Rottlund: (1) various memoranda related to his expert report; (2) written correspondence received from counsel; (3) drafts of prior expert reports; (4) financial information he obtained through TCM's and Pinnacle's expert witness; and (5) pictures of Rottlund's, Town & Country's, and Centex's back-to-back town homes which he took when he toured these product unannounced along with BSB's counsel. (Davenport Aff, Ex. I, 111:14-112:11, 222:2-224:16, 228:2-229:8, 45:6-46:47:15.)

Likewise, neither the Town & Country Defendants' experts nor their attorneys have produced drafts of their expert reports or correspondence related to draft expert reports. The Town & Country Defendants' liability expert "could not recall" if the copy of his expert report which was submitted to the Court as an attachment to his March 7, 2004 affidavit was printed from his word processor or one of his counsels' word processors. (*Id*., Ex. J, 56:20-59:10.) Unexplainably, the report attached to his affidavit was different than the report he previously served on Rottlund, although he represented to the Court in his sworn affidavit that the two were the same. (*Id.*) He also "did not know" if he ever sent his attorneys a copy of his expert report. (*Id.,* 59:12-22.) Finally, he "could not recall" if he ever communicated electronically with his attorneys concerning a draft of his report. (*Id.*, 59:24-60:6.)

In sum, during expert discovery, the Defendants took inconsistent positions regarding the information they must produce to Rottlund. Then, one Defendant demanded that Rottlund produce far more information during expert discovery than any defendant produced to Rottlund – *i.e.,* work product information. If the Court does not intervene, that Defendant will share the information it receives from Rottlund with the other Defendants pursuant to the Defendants' joint defense agreement. The fact that only Defendant TCM brought the instant motion is a

perfect illustration of this discovery misconduct. TCM and Pinnacle both retained the same damages and liability experts. TCM undoubtedly knows that Pinnacle maintains all the work product regarding the Town & Country Defendants' experts' reports. If the Court grants TCM's present motion on a mutual and reciprocal basis, TCM will have nothing to produce to Rottlund (because Pinnacle maintains the work product materials). Meanwhile, all four Defendants will see what Rottlund produces to TCM pursuant to the Defendants' joint defense agreement. The Court should not tolerate this type of discovery misconduct.

Finally, expert discovery is over. The parties have a November 1, 2004 trial date. The Court should encourage the parties to prepare for trial, and put an end to this never ending, unproductive, discovery overkill. The Court can do so by denying this motion. If the instant motion is granted, the Defendants will certainly file a motion to re-open the depositions of Rottlund's expert witnesses. Rottlund will then have little choice but to ask the Court to re-open the depositions of each of the Defendants' expert witnesses since none of these witnesses, or counsel for the parties whom these experts serve, produced the same information that TCM now improperly demands from Winthrop & Weinstine.

**CONCLUSION**

For the foregoing reasons, this court should deny Defendant TCM's motion to compel.

Dated: July 22, 2004

s/ David A. Davenport

Craig S. Krummen, #0259081
David A. Davenport, #0285109
Winthrop & Weinstine, P.A.
**Attorneys for Plaintiff**
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
ddavenport@winthrop.com

2129468v2