UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Rottlund Company, Inc.,
d/b/a Rottlund Homes,
a Minnesota Corporation,

Plaintiff,

v.

Pinnacle Corporation,
d/b/a Town & Country Homes,
an Illinois Corporation,
et al.,

Defendants,

and,

Town & Country Homes, Inc.,
a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster
Architects & Planners of Iowa, Inc.,
an Iowa Corporation,

Third-Party Defendant.

Civil Action No. 01-CV-1980 DSD/SRN

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

**(ORAL ARGUMENT REQUESTED)**

---

Rottlund's prolix response memorandum fills fifty pages, but Rottlund's unlimited ink supply cannot provide cover for its failure to address the issues that matter in this lawsuit. Instead, Rottlund continues to rely on sham legal standards (*e.g.*, the "obviously similar" doctrine, a misstatement of the extrinsic test, etc.), products that are not at issue in this lawsuit (Jerry's Homes, Midland Homes, etc.), and comparisons of brochures rather than of technical drawings and as-built structures. Rottlund does this with the hope of continuing to push its novel theory

of infringement (the "gestalt theory"[1]) through the court system, after having benefited from its earlier reliance on analytic dissection to thwart Defendants' discovery efforts. When this Court performs the Eighth Circuit's extrinsic test, rather than the test proposed by Rottlund, this Court should enter partial summary judgment in favor of defendants.

## I. ROTTLUND HAS FAILED TO IDENTIFY (MUCH LESS ANALYZE AND COMPARE) THE PROTECTABLE OBJECTIVE DETAILS OF THE DESIGN IDEAS AT ISSUE IN THIS LAWSUIT.

### A. Rottlund Has Misstated What The Court Is Required To Do When Conducting The Extrinsic Test For Substantial Similarity.

In *Moore v. Columbia Pictures Industries, Inc.*, 972 F.2d 939 (8th Cir. 1992), the Eighth Circuit explained how this Court must conduct the extrinsic test for substantial similarity. This Court must "first determine whether *the details of the works contain objective similarities* . . . ." *Id.* at 945; *see also Hoch v. MasterCard International, Inc.*, 284 F. Supp. 2d 1217, 1222 (D. Minn. 2003) ("The extrinsic test focuses on alleged similarities in the objective details of the works."). In its response memorandum, Rottlund not only fails to compare the objective details of the design ideas at issue in this lawsuit, Rottlund also creates a new standard for the extrinsic test. Rottlund argues that this Court should "*compare the general ideas* embodied in the works in question and then, *if the general ideas are similar*, [move on to the intrinsic test]." (Rottlund Response Mem. at 35 (emphasis added).) One page later, Rottlund again misstates the test, arguing that defendants' summary judgment

---

[1] Having realized that the "gestalt theory" of infringement is not supported by case law – Rottlund's oft-cited Danielson case discussed "gestalt" in the context of validity, not substantial similarity -- Rottlund now attempts uses the term "gestalt" interchangeably (and typically in the same sentence) with "total concept and feel" to mask the fact that it has abandoned its "gestalt theory."

motion should be denied "because *the ideas* embodied in the designs at issue are substantially similar."[2] (*Id.* at 36 (emphasis added).) That is not the extrinsic test that this Court must apply in the first step of its substantial similarity analysis.

Rottlund also warns the Court against filtering out the non-protectable elements of its designs, stating that "the Defendants' filtration argument stands in sharp contrast to . . . well established law." (*Id.* at 39). The Court decides the first step, or the extrinsic test, as a matter of law. *Hoch v. MasterCard International, Inc.*, 284 F. Supp. 2d 1217, 1222 (D. Minn. 2003). However, "[a] Court applying the extrinsic test must 'filter out and disregard the non-protectible elements in making its substantial similarity determination.'" *Id.* at 1222 *(citing Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)); *see also Apple Computer*, 35 F.3d at 1442; *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) (the party claiming infringement may place "*no* reliance upon any similarity in expression resulting from" unprotected elements); *Eve of Milady v. Impression Bridal, Inc.*, 986 F. Supp. 158, 160 (S.D.N.Y. 1997) ("In cases involving a design with both protectable and unprotectable elements . . . the finder of fact may not rely on overall impressions to determine whether unlawful appropriation has occurred. Rather the Court must compare only the protected portions of the design to determine whether infringement has occurred.").

Rottlund never explains why that standard applies when a court analyzes a hip-hop song or a short film, but not when it compares architectural designs. The

[2] Rottlund acknowledges that its architectural "expert," Anthony Desnick, has also signed on to Rottlund's formulation of the extrinsic test, noting that Mr. Desnick "has opined that the ideas embodied in the Chateau Collection are similar to the ideas embodied in Rottlund's copyrighted Villa II designs." (Rottlund Response Mem. at 36 n.39.)

*Kootenia* case makes it clear that the same standard applies. *Kootenia Homes, Inc. v. Reliable Homes, Inc.*, No. 00-1117, 2002 WL 15594, at * 5-6 (D. Minn. 2002) ("Plaintiff's expert illustrates *generic* similarities between the homes. . . . Highlighting similarities in the general ideas of locating functional elements of the home is insufficient to create a genuine issue of fact.") (emphasis in original)); *see also John Alden Homes, Inc. v. Kangas, et al*, 142 F. Supp. 2d 1338, 1344-45 (M.D. Fla. 2001) ("[P]laintiff also must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work with regard to its protected elements . . . . Further, the Court must consider the similarities between the designs as well as the dissimilarities. . . . The court can find that floor plans are visually similar with the same type of general layout yet find their dissimilarities significant."); M. Nimmer, NIMMER ON COPYRIGHT, § 13.03 [B][2][a] at 13-59 (2003) ("An essential element of an infringement case is that plaintiff must show that defendants' works are substantially similar to elements of plaintiff's work that are copyrightable or protected by the copyright. When similar works resemble each other only in those unprotected aspects, then defendant prevails.").

When this Court performs the extrinsic test, as it must, and evaluates the protectable elements of Rottlund's works with the 4-unit structures, 6-unit structures, and corresponding technical drawings at issue in this case, it should conclude as a matter of law that neither the buildings nor the drawings are substantially similar.

**B. Judicial Estoppel Bars Rottlund From Arguing That The Extrinsic Step Does Not Include Analytic Dissection.**

To stave off summary judgment, Rottlund's current position is that analytic dissection is not required under the extrinsic test. This directly contradicts the previous position that Rottlund took to thwart defendants' motion to compel identification of the individual elements at issue. Judicial estoppel prevents this misconduct. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is 'to protect the integrity of the judicial process' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'") (citations omitted).

Rottlund does not and cannot dispute that it has taken contrary positions regarding analytic dissection.[3] Although Rottlund's opposition to defendants' motion for summary judgment only requires a finding that analytic dissection is **not appropriate**, Rottlund's previous position regarding analytic dissections was that the extrinsic test "**requires** analytical [sic] dissection." (Schwiebert Aff., Ex. I at 6 (emphasis added)). In opposing TCM's motion to compel discovery relating to identification of the allegedly protectable elements, Rottlund argued that analytic dissection by experts was necessary to providing such information:

> TCM also argues that Rottlund should describe each and every design element and/or feature of TCM's infringing town homes in detail prior to expert disclosures. However, as discussed above, courts employ a two-part analysis when examining substantial similarity and it is well settled that the

---

[3] In fact, to escape the obvious contradiction, Rottlund attempts to misdirect the court by claiming the only issue is expert testimony. As set forth in Defendants' memorandum, the issue for judicial estoppel is analytic dissection. (Defendants' Initial Mem. at 16).

first part of the analysis involves an extrinsic test. *Cavalier v. Random House, Inc.*, 2002 WL 1042182, *4 (9th Cir. 2002); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2002). Again, this extrinsic test requires analytical dissection and expert testimony. *Id.* Nonetheless, TCM desires that Rottlund be compelled to relinquish the requisite expert dissection required before identification of infringing design elements and/or features.

(*Id.*)[4]

This Court accepted Rottlund's argument regarding analytic dissection and expert testimony and ordered that Rottlund did not have to provide the requested level of detail until expert disclosures. (Order dated October 10, 2002 at 14). ("The Court grants in part and denies in part Defendant's motion with respect to Interrogatory Nos. 3 – 8. The level of detail sought by this discovery is premature, and should be provided along with expert disclosures.") (emphasis added). In fact, the October 10 Order specifically cited Rottlund's argument regarding the necessity for experts. (*Id.* at 13 – 14). The Court agreed with Rottlund that the information sought should be part of expert disclosures. (*Id.* at 14).[5]

Rottlund's contention that the Court did not adopt its position regarding analytic dissection and expert testimony is nonsensical. If the Court has rejected Rottlund's argument it would have ordered the information to be immediately

[4] Rottlund's previous reliance upon Ninth Circuit copyright law as applicable to oppose TCM's motion to compel is similarly contrary to its current attempt to disavow contrary Ninth Circuit copyright cases such as *Apple Computer, Inc. v. Microsoft C*orp., 35 F.3d 1435, 1445 (9th Cir. 1994) and *Domingo Cambeiro Prof. Corp. v. Advent*, 211 F.3d 1273, 2000 WL 262597 (9th Cir. 2000).

[5] Rottlund provides absolutely no support for its statement that it has complied with the Court's October 10 Order to provide the level of requested detail "along with expert disclosures." Defendants have provided the Court with copies of Mr. Desnick's report, which does not contain this information. Similarly, Rottlund has never been forced to provide answers to the requests to admit that sought detailed information about Rottlund's claims. Rottlund's responses to those requests failed to comply with Fed. R. Civ. P. 36 and were the subject of a motion to compel argued on December 4, 2003. During a May 7, 2004 hearing, the Court acknowledged "the need for a [ruling on that motion] quickly given the June 15th hearing." (Second Affidavit of Darren Schwiebert in Support of Defendants' Motion for Partial Summary Judgment ("Second Schwiebert Aff."), Ex. Z at 37-38.) Defendants have now been forced to brief and argue their summary judgment motions without the benefit of basic information provided in a manner that complies with Rule 36.

provided to the defendants. The fact that the Court delayed the production until the timing of expert disclosures further emphasizes the fact that the Court adopted Rottlund's view that the "extrinsic test requires analytical dissection and expert testimony." Finally, it is unsettled under Eighth Circuit law whether such adoption is necessary. *Hossaini v. Western Missouri Medical Center*, 140 F.3d 1140, 1143 (8th Cir. 1998).[6]

If not estopped, Rottlund would derive an unfair advantage and the defendants would suffer an unfair detriment from Rottlund playing "fast and loose" with this Court – it would serve as a basis to deny defendants' motion for summary judgment that cannot otherwise be avoided on the issue of analytic dissection. Almost two years ago, when it worked to Rottlund's advantage to block discovery, Rottlund argued that analytic dissection was necessary. Defendants waited and waited for the Court-ordered disclosures. They did not arrive with the expert reports. Now, as its only hope to avoid summary judgment, Rottlund argues that such disclosures are never necessary because analytic dissection is not necessary. Judicial estoppel bars such games.

### C. Even If Rottlund Had Pled This Case As A "Signature Design" Lawsuit – Which It Did Not Do -- Rottlund's Own Architectural "Expert" Acknowledged That There Is No Identifiable "Whitten Signature."

At the April 29, 2004 hearing on Rottlund's motion for partial summary judgment, the Court, during an exchange with Pinnacle's counsel about the extrinsic test, stated that Rottlund may be pleading this case as "a signature case":

[6] The discussion of this issue in *New Hampshire* was in the context of contrary positions in subsequent law suits creating "inconsistent court determinations." *New Hampshire,* 532 U.S. at 751. This does not address the concern about contrary positions in the same case demonstrating "an intent to play 'fast and loose' with the courts." *Hossaini*, 140 F.3d at 1143 (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3rd Cir. 1996)).

> Maybe this is a different case. Maybe this is a signature case. That's what gestalt means is that that's a Rottlund town home. That's a Frank Lloyd Wright home. And it seems to me that there ought to be some viable cause of action to Frank Lloyd Wright if he were living today if somebody created a home that if you looked at his signature that you thought that's a Frank Lloyd Wright home.
>
> And that's, I think, the question we have. If that's the question we have, then, excluding galley kitchens and L-shaped kitchens is an irrelevant consideration.

(Second Schwiebert Aff., Ex. X at 51.)

Rottlund has filed eight complaints in this case, and it has never pled this case as a "signature case," whatever that may be. Moreover, Rottlund's architectural "expert," Anthony Desnick testified candidly that he could not recognize a Whitten design. (Second Schwiebert Aff., Ex. Y at 157.) Then, after Mr. Desnick explained that "if you were to drive me out to an urban or suburban location and show me a town house, I could not tell you whether it was architect A's or architect B's," his attorney immediately requested a break. (*Id.* at 158.) After the break, the following remarkable exchange occurred:

> BY MR. FARMER:
>
> Q. Mr. Desnick, I just want to double back to your design work between 1984 and 1994.
>
> A. Before we do that, I'd like to clear up, if I can, my comments about Tim Whitten's work, and it stemmed from the fact that I'm unfamiliar with a lot of his projects but I'm very familiar with two of them, and I know those wherever I see them.
>
> Q. Now you just -- we just took a break; correct?
>
> A. Uh-huh.
>
> Q. And you left with Mr. Krummen; correct?
>
> A. I did.
>
> * * * * *
>
> Q. What is it about the two Tim Whitten designs that you just brought up again after the break that allow you to identify them as Whitten's?
>
> A. I can only tell you that when I've seen them, you know, either purposely when I've gone to visit them or when I've driven by, I've known they were Tim Whitten's designs, and it's been borne out by the signs at the corner that says it's a Rottlund development.

Q. Now you didn't meet Tim Whitten until around the time you got involved in this case; correct?
A. I met Tim Whitten probably several years before at an architects' convention but we are not friends and don't have a relationship.
Q. And you didn't know of his designs until you got involved in this litigation; right?
A. I knew he was the designer for Rottlund Homes.
Q. But you have not seen any of his work; right?
A. I had not seen his work, no.
Q. So you first became familiar with Mr. Whitten's work when you got involved in this lawsuit, paid expert; right?
A. That's correct.
Q. And it's your testimony that the only designs of his that you have seen are the designs at issue in this lawsuit?
A. It's my testimony that the two designs I'm most familiar with are the ones that when I see them I can identify them immediately as Tim Whitten's designs.
Q. And these are the designs that you have been living with during the last two years on this case; correct?
A. One of them, yes. The other one was the design that was involved in the Scott Larson case.
Q. Correct. And designs you have been getting paid to review and analyze; correct?
A. Exactly.
Q. And it's through that work and that familiarity that you have come to know those as Whitten designs; right?
A. Yes.

(*Id.* at 159, 163-64.)

This is not a "signature case," and it never was. Were there such a cause of action, it would be a non-starter in this case, as Rottlund's own architectural "expert" stated he could not recognize Mr. Whitten's designs. Only after a break in questioning did Mr. Desnick volunteer (in response to no question) that he could recognize two of Mr. Whitten's projects wherever he saw them. Cross-examination quickly established that the *only* reason he is familiar with those two designs is because Rottlund has paid him to familiarize himself with them.

Rottlund must live with the theory of the case it adopted (and used offensively) to defeat a discovery motion in late 2002. Applying that theory, this Court must enter summary judgment in favor of Defendants because Rottlund's failure to identify the protectable elements of its design (as ordered by this Court) cannot pass muster under the extrinsic test.

## II. ROTTLUND HAS NOT IDENTIFIED MATERIAL FACTS TO AVOID SUMMARY JUDGMENT ON THE INDIRECT COPYRIGHT INFRINGEMENT COUNTS AGAINST TCM.

This Court should rule as a matter of law that TCM is not liable for contributory infringement. Nowhere in Rottlund's fifty-page opus has it offered evidence that TCM induced, caused, or materially contributed to the allegedly infringing conduct of Pinnacle, BSB, or Bloodgood. *See Rottlund*, 2004 WL 742054, *6. Similarly, Rottlund has adduced no evidence that TCM derived profits off sales by Pinnacle of "Infringing Town Home Units, Chateau Collection town home units, and other substantially similar products." (Sixth Amended Complaint at ¶ 114). Instead, Rottlund relies on the fact that members of the Ryan family are officers and directors of both TCM and Pinnacle.

This Court should also rule as a matter of law that TCM is not liable for vicarious liability. Rottlund has come forward with no evidence that TCM possessed the right and ability to supervise the allegedly infringing activity of Pinnacle or the other defendants. *See Rottlund*, 2004 WL 742054, *5. Similarly, there is no evidence in the record that TCM possessed "an obvious and direct financial interest" in the allegedly exploited copyrighted materials by Pinnacle or

the other defendants. *Id.* There is no evidence that TCM received <u>any money</u> from the alleged infringement by Pinnacle or the other defendants.

## III. ROTTLUND HAS NOT IDENTIFIED MATERIAL FACTS TO AVOID SUMMARY JUDGMENT ON THE INDIRECT COPYRIGHT INFRINGEMENT COUNTS AGAINST PINNACLE.

Rottlund has also failed to adduce evidence that Pinnacle should be held liable for contributory infringement. Nothing in the record indicates that Pinnacle induced, caused, or materially contributed to the allegedly infringing conduct of TCM or the other defendants. *See Rottlund*, 2004 WL 742054, *6. There is also no evidence in the record that Pinnacle derived profits off sales by TCM, Bloodgood, BSB, or BSB Illinois. Rottlund points to line items for legal fees and payments to TCH, but these allegations are non-starters and legally insufficient to prop up this baseless cause of action.

This Court should also rule that Pinnacle is not liable for vicarious liability. Nothing in the record demonstrates that Pinnacle possessed the right and ability to supervise the allegedly infringing activity of TCM or the other defendants. *Id.* at *5. Indeed, there still is no evidence in the record that Pinnacle possessed "an obvious and direct financial interest" in the allegedly exploited copyrighted materials by TCM and the other defendants.

## IV. ROTTLUND HAS NOT IDENTIFIED MATERIAL FACTS TO AVOID SUMMARY JUDGMENT ON THE INDIRECT COPYRIGHT INFRINGEMENT COUNTS AGAINST BSB AND BLOODGOOD.

This Court should rule as a matter of law that BSB and Bloodgood are not liable for contributory infringement. There is no evidence in the record that BSB or

Bloodgood induced, caused, or materially contributed to the allegedly infringing conduct of the other defendants. *See Rottlund*, 2004 WL 742054, *6.

This Court should rule as a matter of law that BSB and Bloodgood are not liable for vicarious liability. There is no evidence in the record that BSB or Bloodgood possessed the right and ability to supervise the allegedly infringing activity of the other defendants. *Id* at *5. Nor is there any evidence BSB or Bloodgood possessed "an obvious and direct financial interest" in the allegedly exploited copyrighted materials by the other defendants. *Id.*

## CONCLUSION

For all of the foregoing reasons, this Court should grant defendants' Motion for Partial Summary Judgment.

Dated: July 27, 2004

s/Darren B. Schwiebert
Daniel J. Maertens (#188311)
Cynthia Jokela Moyer (#211229)
Darren B. Schwiebert (#260642)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street #4000
Minneapolis, MN 55402
Telephone: (612) 492-7312
Facsimile: (612) 492-7077

ATTORNEYS FOR DEFENDANT
TOWN & COUNTRY HOMES, INC.

– AND –

Holly J. Newman (#26457X)
Ben Patrick (#312460)
MOORE, COSTELLO & HART P.L.L.P
701 4TH Avenue South, Suite 1350
Minneapolis, MN 55415
Telephone: (612) 395-8695
Facsimile: (612) 395-8600

ATTORNEYS FOR DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS & PLANNERS OF IOWA, INC. AND THE BLOODGOOD GROUP, INC.

– AND –

Edward F. Ryan
Christopher J. Murdoch
Matthew I. Farmer
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th Fl.
Chicago, IL 60603
Telephone: (312) 263-3600
Facsimile: (312) 578-6666

David Donna (#163624)
DONNA & DALY
1460 Buffet Way, Suite 150
Eagan, MN 55121
Telephone: (651) 406-4242
Facsimile: (651) 406-4243

ATTORNEYS FOR DEFENDANT
PINNACLE CORPORATION