UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br>Plaintiff,<br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br>Defendants,<br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br>vs.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN) |

**PLAINTIFF'S OBJECTIONS PURSUANT TO 28 U.S.C. § 636(b) AND L.R. 71.1(c)(2) TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE NELSON DATED JULY 13, 2004**

## I. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1(c)(2), Plaintiff The Rottlund Company ("Rottlund") respectfully identifies and objects to the following portions of Magistrate Judge Nelson's Report and Recommendation dated July 13, 2004 (the "R&R"):

1. The R&R erroneously concludes that Defendant Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. (BSB) and the Bloodgood Group, Inc. (BGI) (collectively, the "Bloodgood Defendants") may not be held jointly and severally liable for the profits of Defendants Town and Country Homes of Minnesota (TCM) or Pinnacle Corporation (Pinnacle). *See* R&R at 11.[1]

2. The R&R erroneously concludes that that TCM and Pinnacle may not be held jointly and severally liable for the profits of BSB and BGI. *Id.*[2]

The District Judge shall consider objections made to a Magistrate Judge's ruling and "shall make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." D. Minn. LR 72.1(c)(2). The District Judge "may consider the record developed before the Magistrate Judge . . . [or] receive further evidence, recall witnesses, or recommit the matter to the Magistrate Judge with instructions." *Id*.

## II. BACKGROUND

Although the Court must accept as true Rottlund's allegations sought to be stricken by the Bloodgood Defendants for purposes of the instant motion, *see, e.g.*, *Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 952 F. Supp. 1362, 1395 (D. Minn. 1997) (denying motion to strike), *aff'd*, 124 F.3d 904 (8th Cir. 1997), *judgment aff'd*, 526 U.S. 172 (1999), the following undisputed facts[3] are pertinent to Rottlund's objections. In ruling that non-innocent

---

[1] The R&R recommended that Paragraphs 207, 208, 214, 215, 230, 236 and 237 of Rottlund's Fifth Amended Complaint be revamped based on this erroneous legal conclusion.

[2] The R&R recommended that Paragraphs 118, 130, 165 and 177 be removed based on this erroneous legal conclusion.

[3] For a more detailed discussion of the facts supporting Rottlund's copyright infringement claims, including the Defendants' deliberate and ongoing pattern of copying Rottlund's architectural plans and

co-infringers may not be held jointly and severally liable for the wrongful profits of other co-infringers, the R&R improperly restricts Rottlund's ability to recover all of the Defendants' illegal profits from each of the Defendants jointly and severally, and improperly shields each of the Defendants from being held accountable for all of the illegal profits earned as a direct result of that intentional, ongoing participation in a concerted effort to infringe Rottlund's copyrights. *See* Rottlund's Memorandum of Law in Opposition to Defendants BSB and BGI's Motion to Dismiss [Doc. 297] at 5-6. Perhaps most significantly, the R&R would permit the Bloodgood Defendants to avoid accountability to Rottlund for the illegal profits their willful and ongoing acts of infringement have generated. Among other things, the undisputed evidence of the Bloodgood Defendants pattern of intentional infringement includes evidence of the Defendants access to and copying of Rottlund's copyright protected Villa product designs and structures.

**BSB Copies Rottlund's Villa Product Plans**. Larry Moore, Defendant BSB's architect who was responsible for the initial design concept for the Defendants' infringing Homestead Collection town homes design, testified that he consulted and reviewed the following BSB project files before beginning work on what is now known as the Defendants' Homestead Collection town home design: 1) Midland Homes; 2) Jerry's Homes; and 3) Good Value Homes. (Affidavit of Philip R. Mahowald ("Mahowald Affidavit"), Ex. A, 12:14-18, 15:18-16:5; Ex. B, 12:1-13:3, 19:21-20:25.) Mr. Moore testified that the placement and arrangement of room locations and elements for the Homestead Collection came from his review of these prior project files. (*Id.*, Ex. A, 15:18-16:5.) In connection with Midland Homes, Mr. Moore intentionally copied Rottlund's Villa product, going so far as to "cut and paste" the floor plans from Rottlund's Villa marketing brochure to create an initial floor plan. (*Id.*, Ex. A, 229:8-16; Ex. C.)

---

structures for the New Villa and Villa II products, see Rottlund's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment [Doc. 447], at 3-18, and Rottlund's legal memoranda in support of its Motion for Partial Summary Judgment [Doc. 334 and 361].

One version of the Midland Homes designs specifically noted the "copyright issue" raised by the unauthorized use of Rottlund's Villa design. (*Id.* Ex. D, BSB03482.) Further evidence that Mr. Moore and BSB were fully cognizant of the Rottlund's copyrights in the Villa design when they continued their intentional infringement is an internal BSB memorandum in which Mr. Moore asks: "is our design enough 'departure' from Rottlund" to avoid copyright liability. (*Id.*, Ex. E) (internal quote in original).)

**Defendants' Joint Tours of Rottlund's Copyrighted Villa Structures.** When designing the infringing Homestead Collection at issue in this matter, BSB was not content to merely start with its previously assembled infringing Midland Homes design. Mr. Moore also participated in tours of Rottlund's copyrighted structures along with Pinnacle and TCM to find "mistakes" in Rottlund's design and "find opportunities to one-up" the competition. (*Id.*, Ex. B, 37:10-12, 39:22-41:1.) During these tours, members of the Defendants' tour group took photographs of Rottlund's Villa II town homes, and took at least one marketing brochure that contained pictures and floor plans of Rottlund's copyrighted Villa II design. (*Id.* Ex. F at 9:10-11:10; Ex. G at 28:17-29:22; Ex. H at 150:21-24, 152:9-13, 158:8-159:25; Exs. I-L.) Defendant BSB used these photographs during subsequent revisions of the infringing Homestead Collection design. For example, Defendant BSB willingly followed the illegal directive of TCM's president, who attached a color photograph of Rottlund's Villa II copyrighted structure to client red-lines for the infringing Homestead Collection design with instructions to "see Rottlund product" in making the directed revisions to the design. (*Id.* Ex. M, BSB02035A.)

**Defendants' Admission of Copyright Infringement.** Defendants' unlawful copying produced a back-to-back town home substantially similar to Rottlund's Villa II design. Defendant BSB's brazen copying of Rottlund's design is readily apparent to Steve Sandelin,

Pinnacle's in-house architect and Vice President of Product Development, albeit in a self-serving, after-the-fact effort to pin liability for the Defendants' copyright infringement solely on BSB. When confronted with Rottlund's July 5, 2001 cease and desist letter, Mr. Sandelin admitted that the Defendants' infringing designs are "obviously similar" to Rottlund's Villa II designs, and asked BSB if they have a co-license agreement with Rottlund. (*Id.* Ex. N, BSB01931-35). No co-license agreement exists.

On July 25, 2001, less than three weeks after the Defendants received a copy of Rottlund's cease and desist letter, TCM employee, and former Rottlund employee, Dan Geegan, sent a portion of Rottlund's copyrighted technical drawings, Registration No. 546-285, depicting the design and layout for Rottlund's sprinkler room to BSB architect Beth Miller. (*Id.*, *compare* Ex. O, BSB01262-1263 *with* Ex. P. The Rottlund logo and copyright notice on Rottlund's technical drawings were cut off from the margin when it was photocopied.[4] (*Id.*)

**The Bloodgood Defendants' Ongoing Infringement.** The Bloodgood Defendants' continued involvement with and participation in the copyright infringement continued with every one of Pinnacle and TCM's subsequent infringing developments. (*Id. Exs*. Q-T.)

While certainly not an exhaustive recitation of the overwhelming evidence of ongoing, intentional and concerted copyright infringement by these Defendants, these facts demonstrate the Bloodgood Defendants' active and enduring participation in the copyright infringement.

## III. ANALYSIS OF OBJECTIONS

Rottlund agrees with Magistrate Judge Nelson that the only issue of law in the R&R is whether all Defendants can be jointly and severally liable for each other's profits because their infringement was not innocent. *See* R&R at 5. Rottlund further agrees with Magistrate Judge

[4] *See* Rottlund's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment [Doc. 447], at 13-15, for a more detailed discussion of Defendants' pilfer and redline of Rottlund's sprinkler room and sprinkler shed.

Nelson that innocent co-infringers may not be held jointly and severally liable for the wrongful profits of co-infringers. *See* R&R at 6-7 (citing *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 417 (4th Cir. 2002); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985); and *Sammons v. Colonial Press, Inc.*, 126 F.2d 341 (1st Cir. 1942)). The R&R errs, however, by holding that even where copyright infringement is not innocent – *i.e.*, where co-infringers purposefully participate in concerted acts of copyright infringement – co-infringers may not be held jointly and severally liable for the wrongful profits of other co-infringers. *See* R&R at 8-11. In shielding each of the Defendants from joint and several liability for the illegal profits eared as a result of their concerted efforts, the R&R erroneously fails to follow the lead of numerous courts that have recognized an exception to the general rule holding co-infringers jointly and severally liable for the other co-infringers' illegal profits where the infringement is not innocent. *See* R&R at 7-8 (citing but declining to follow *Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467 (2d Cir. 1985); *Softel, Inc. v. Dragon Med. and Scientific Communications, Ltd.*, No. 87-167, 1995 WL 606307 (S.D.N.Y. Oct. 16, 1995); *Harris v. Miller*, 50 U.S.P.Q. 625 (S.D.N.Y. 1941); *Bull HN Info. Sys., Inc. v. Am. Express Bank, Ltd.*, No. 88-2103, 1990 WL 48098 (S.D.N.Y. Apr. 6, 1990)).

The R&R erroneously relies on the First Circuit's decision in *Sammons* and the Fourth Circuit's decision in *Nelson-Salabes*. *See* R&R at 9-11. In both cases, the courts applied the general rule and found that the defendants could not be held jointly and severally liable for the other defendants' illegal profits. *See Sammons*, 126 F.2d at 345-46; *Nelson-Salabes*, 284 F.3d at 517-18. Both courts rejected the argument that the defendants could be held jointly and severally liable since the infringement was not innocent. *Id.* Both of these decisions are flawed, however,

because they are premised on an overly-narrow construction of prior law, including an erroneous analysis of controlling United States Supreme Court precedent.

The *Sammons* decision is distinguishable because, among other things, it is based on a faulty interpretation of controlling United States Supreme Court precedent. *See Sammons*, 126 F.2d at 347 (refusing to accept *Belford, Clarke & Co. v. Scribner*, 144 U.S. 488, 12 S. Ct. 734 (1892), as controlling authority). As in the R&R, the *Sammons* court recognized that the Copyright Act did not change the accountability of an infringer to a plaintiff for illegal profits as copyright infringement was "enforced in equity":

> Accountability of an infringer for profits was enforced in equity, both in patent and copyright cases, on the same equitable principles, even before the patent and copyright laws specifically authorized this relief. When, by amendment, these laws did so authorize the recovery of profits, there was no change in the principle upon which such relief had theretofore been granted by courts of equity.

*Sammons*, 126 F.2d at 346. Rottlund does not disagree with this statement. The First Circuit and Fourth Circuit erred, however, when they held that even if the copyright infringement is not innocent, co-infringers can only be held jointly and severally liable where co-infringers are "practical partners." *See Sammons*, 126 F.2d at 346; *Nelson-Salabes*, 284 F.3d at 517.

*Belford* involved a publisher's suit in equity against a printer and a publisher for intentional copyright infringement. *See Belford*, 144 U.S. at 492, 12 S. Ct. at 735 (discussing plaintiff's claim against defendants for copyright infringement, "well knowing the plaintiff's rights, and intending to infringe said copyrights"). The lower court determined that the printer and publisher were jointly liable for the profits made by the publisher. *Id.*, 144 U.S. at 507-08, 12 S. Ct. at 740. The defendant printer appealed, arguing that it could not be held jointly and severally liable for the defendant publisher's profits, "since the defendants who did not participate in the profits realized ought not be charge with any part of those profits." *Id.*, 144

U.S. at 506-07, 12 S. Ct. at 740. The Supreme Court rejected the defendant printer's argument, affirmed the judgment, and held that the printer was jointly liable for the publisher's profits from an infringing book because the printer and publisher were "*participes criminis*" in the copyright infringement. *Id.* Although no proof was offered at trial as to the profit, if any, made by the printer in performance of the printing contract with the publisher, the Supreme Court adopted the plaintiff's legal analysis:

> as the [printer] printed the books by contract with the [publisher], and as, under the copyright law, both the printer and the publisher are equally liable to the owner of the copyright for an infringement, and as it is to be inferred that [the printer] made a profit from printing the piratical books, they were therefore sharers in the profits realized from the sale of the books, and were *participes criminis* with the [publisher] in the infringement; that the two sets of defendants together printed and published the books, and were practically partners in doing it, – the corporation doing one part, and the other defendants the other part, of the printing and publishing; and that ***all the parties concerned ought to be held to an account to the owner of the copyright in respect to the profits derived from the printing, publishing, and selling, without all of which combined there could have been no infringement***.

144 U.S. at 507-08, 12 S. Ct. at 740 (emphasis added) (statutory citation omitted).

Importantly, the Supreme Court makes no finding – much less establishes as a requirement to joint and several liability – that the co-infringers share each other's profits, even though that was the defendant printer's argument on appeal. 144 U.S. at 506-07, 12 S. Ct. at 740. The *Sammons* decision, relied upon by Magistrate Judge Nelson, nevertheless distinguishes *Belford* on the grounds that the Supreme Court inferred that the printer received a share of the publisher's profits. *See* 126 F.2d at 347. The Supreme Court makes no such inference. Rather, the Supreme Court plainly holds that because the printer profited (the court inferred that the printer received a profitable compensation based upon the existence of a contract with the publisher) and the publisher profited (from subsequent sales), both the printer and the publisher illegally profited from the copyright infringement. In other words, while each may have profited

in different ways – the printer profiting from its contract with the publisher and the publisher from its subsequent book sales – both profited from their joint infringement of the plaintiff's copyrights. Accordingly, the Supreme Court held that the co-infringers "ought to be held to an account to the owner of the copyright in respect to the profits derived from the printing, publishing, and selling, *without all of which combined there could have been no infringement*." 144 U.S. at 508, 12 S. Ct. at 740 (emphasis added).

The *Sammons* and *Nelson-Salabes* courts also erroneously require proof of a "practical partnership" as a prerequisite to joint and several liability for illegal profits. *See Sammons*, 126 F.2d at 346; *Nelson-Salabes*, 284 F.3d at 517; *see also Dowagiac Mfg. Co. v. Deere & Webber Co.*, 284 F. 331, 340 (8th Cir. 1922) (distinguishing *Belford* on grounds that the co-infringers were "practically partners" who shared the proceeds of their infringement). Once again, such a narrow interpretation of the Supreme Court's holding is inconsistent with the language use by the Supreme Court. The "practical partnership" discussed by the Supreme Court was not a legal partnership, but rather a collaboration of infringers, each of whom played a distinct role in the infringement: "the two sets of defendants together printed and published the books, and were practically partners in doing it, – the corporation doing one part, and the other defendants the other part, of the printing and publishing." *Belford,* 144 U.S. at 507-08, 12 S. Ct. at 740. The "practical partnership" requirement, to the extent the Supreme Court created one, is merely a finding that the co-infringers each participated in the infringement such that each co-infringer's role "combined" to create the infringement. In describing the printer and publisher as "practically partners," the Supreme Court did not analyze the relationship of the printer and publisher in terms of a partnership as a legal entity, but rather merely as separate actors whose conduct contributed and combined to cause the infringement – the "printing, publishing, and

selling" of the piratical books. *Id.* Here, the Defendants' separate actions in both the design and the construction of the infringing town homes combined to cause the infringement of Rottlund's copyrighted designs and structures.

Holding co-infringers jointly and severally liable for the illegal profits earned from non-innocent infringement is consistent with prior case law, including *Belford* and *Abeshouse*, and the general principles underlying the Copyright Act.[5] "[A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of copyright policy." *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233, 73 S. Ct. 222, 225 (1952) (discussing statutory damage under the Copyright Act).[6] Indeed, one of the "basic aims" of the Copyright Act is "to provide the courts with reasonable latitude to adjust recovery to the circumstances of the case, thus avoiding some of the artificial and overly technical awards resulting from the language of the existing statute." H.R. Rep. No. 94-1476 at **5777. The intentional infringement exception articulated in *Belford, Abeshouse, Softel, Harris*, and *Bull* is just one example of the "reasonable latitude" provided to the courts under federal copyright law "to adjust recovery to the circumstances of the case."[7]

The record in this case conclusively establishes that Defendants' are not innocent infringers, and that BSB and BGI, along with Pinnacle and TCM, are jointly liable to Rottlund for copyright infringement. In other words, even though BSB and BGI did not actually build the infringing town homes, they are still jointly liable to Rottlund for the Defendants' copyright

---

[5] If the Defendants can be held jointly and severally liable for Rottlund's damages, then it would not be inequitable to hold the Defendants jointly and severally liable for all of the illegal profits generated by the copyright infringement.

[6] *See also Robert R. Jones Associates, Inc. v. Nino Homes*, 686 F. Supp. 160, 164 (E.D. Mich. 1987) (same), *aff'd in part, rev'd in part on other grounds*, 858 F.2d 274 (6th Cir. 1988).

[7] *Accord Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) (Overhead may not be deducted from gross revenues to arrive at profits when the infringement was deliberate or willful.") (citing *Frank Musiz Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985)).

infringement because BSB and BGI (along with Pinnacle and TCM) copied Rottlund's copyrighted designs when they prepared the Midland and Homestead Collection town home products. Defendants Pinnacle and TCM then use them to construct the infringing town homes. If a printer can be held jointly and severally liable for a publisher's lost profits where their separate actions combine to accomplish copyright infringement, then surely the Defendants in this case can be held jointly and severally liable for all of the illegal profits generated as a result of the infringement.

## CONCLUSION

Rottlund respectfully disagrees with the R&R's determination that intentional copyright infringers cannot be held jointly and severally liable for the lost profits of co-infringers, and believes that the decisions in *Belford, Abeshouse, Softel, Harris*, and *Bull* state the correct legal standard. For these and all the other reasons discussed above and in Rottlund's Memorandum in Opposition to Defendants BSB and BGI's Motion to Dismiss, Rottlund respectfully request that this Court reject Magistrate Judge Nelson's July 13, 2004 Report and Recommendation and the Report's finding that that intentional copyright infringers cannot be held jointly and severally liable for the lost profits of a co-infringers.

Dated: July 27, 2004.

**WINTHROP & WEINSTINE, P.A.**

By s/Philip R. Mahowald
Craig S. Krummen, #259081
David A. Davenport, #285109
Philip R. Mahowald, #274902
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800

2132342v1

***Attorneys for Plaintiff***
***The Rottlund Company, Inc.***
***d/b/a Rottlund Homes***