UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br><br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE DEFENDANT PINNACLE CORPORATION AND HOLLAND & KNIGHT'S NOTICE OF OBJECTION TO MAGISTRATE JUDGE NELSON'S JUNE 30, 2004 ORDER, AND MEMORANDUM OF LAW SUBMITTED IN SUPPORT THEREOF** |

## INTRODUCTION

The Eighth Circuit Court of Appeals long ago recognized its high regard and respect for members of the judiciary and federal bar, and held that courts cannot permit "unwarranted criticism, vituperation, calumny, and derogatory, impertinent and scandalous expression directed at both the [Court] and opposing counsel . . . to pass unrebuked." *Dranow v. United States of America*, 307 F.2d 545, 549 (8th Cir. 1962). Thus, this Court should strike Pinnacle and Holland & Knight's lengthy and unwelcome pleadings submitted in support of their objection to Magistrate Judge Nelson's June 30, 2004 Order, and their unsupported aspersions upon the character of a well respected member of the Minnesota District Court. Rottlund is disappointed by the vituperate arguments advanced throughout Pinnacle and Holland & Knight's unwarranted assault on Magistrate Judge Nelson, and respectfully suggests that these unprofessional attacks resoundingly provide additional support for Magistrate Judge Nelson's conclusions that Pinnacle and Holland & Knight have exhibited "brazen disrespect" for the judicial process and the Court throughout this case.

Moreover, it is clear that the underlying arguments were all made by Pinnacle and Holland & Knight when they opposed Rottlund's motion for sanctions, and Magistrate Judge Nelson correctly rejected each argument outright since they are misplaced and unsupported by the record here. It is also clear, contrary to the appealing parties' arguments, that Magistrate Judge Nelson did not treat Rottlund's sanctions motion cavalierly. In fact, Magistrate Judge Nelson was thoughtful and explained to Pinnacle's counsel that she "never grant[s] sanctions . . . [because] as a trial lawyer, [Magistrate Judge Nelson] felt that judges only ought to do it in extreme situations and [she has] been very cautious about it." (Affidavit of David A. Davenport ("Davenport Aff."), Ex. 1, 115:12-24.) Plainly stated, the conduct at issue here has been extreme and Magistrate Judge Nelson's well reasoned Order should not be set aside in any respect.

**BACKGROUND FACTS**

Less than two business days after Pinnacle and its Minnesota Division (Defendant Town & Country Homes, Inc. or "TCM") received Rottlund's cease and desist letter warning of infringement of Rottlund's copyrighted architectural designs and works, Pinnacle's in-house architect wrote to Pinnacle's outside architect – Defendant Bloodgood Sharp Buster Architects & Planners of Iowa, Inc. ("BSB") – about "copyright infringement," admitted that Pinnacle's designs are "obviously similar" to Rottlund's designs, and asked if BSB has a "co-ownership agreement" with Rottlund. *The Rottlund Co., Inc. v. Pinnacle Corp.*, 2004 WL 1494579, * 2, -- F.R.D. -- (D. Minn. 2004) (citing Davenport Aff. Ex. 23).[1] Thus, this is a simple, straight-forward case of copyright infringement. Nevertheless, because of the Defendants inexorable discovery abuses, Magistrate Judge Nelson has had to conduct at least one status conference per month since October of 2002. *Id.* at *2.

Rottlund is seeking, among other things, actual damages and "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b) (2004). If Pinnacle's damages expert is to be believed, Pinnacle and its Minnesota Division – TCM – (collectively the "Town & Country Homes Defendants") will earn an estimated $21 million in wrongful profits on projected sales of the directly infringing designs and works at issue.[2] (Davenport Aff., Ex. 3, p.3.) In addition, the Town & Country Homes Defendants' wrongful profits on estimated sales of other homes within the communities in which the infringing homes have been and continue to be developed, sales which are attributable to the infringement at issue here, is approximately $29.3 million. (*Id.*) Rather

[1] The Court's Order is attached as Exhibit 2 to the Davenport Aff. submitted in support of Rottlund's instant motion to strike. The Davenport Affidavit cited by the Court in its Order is Docket No. 324.

[2] Rottlund disputes Pinnacle's expert's opinions and analysis because they are, among other things, flawed and unreliable. Rottlund intends to file a *Daubert* motion consistent with the Court's pre-trial Order. However, Pinnacle's expert's opinions and analysis are helpful here because they demonstrate the minimum amount of wrongful profits that the Town & Country Homes Defendants expect to earn.

than fighting this case fairly and professionally, Pinnacle and its counsel have turned Rule 1 of the Federal Rules of Civil Procedure upside down by first displaying a sanctionable lack of candor with the Court in connection with a motion to dismiss for lack of personal jurisdiction, and then repeatedly failing to obey Court Orders, abusing the judicial process, exhibiting brazen disrespect for Magistrate Judge Nelson, and conducting themselves unprofessionally and incompetently. *The Rottlund Company*, 2004 WL 1494579, *1-13.

On June 30, 2004, after Magistrate Judge Nelson thoughtfully and deliberately considered the entire record in this case, the Court issued a carefully crafted fifty-five page written Opinion and Order sanctioning Pinnacle and its counsel for the unprecedented level of misconduct that they have perpetuated throughout this simple, straightforward copyright infringement case. *Id.* On July 15, 2004, Pinnacle's counsel filed objections to Magistrate Judge Nelson's Order ("First Objection"). (Doc. Nos. 439 and 440.) Pinnacle and its counsel subsequently filed a second objection ("Second Objection"). (Doc Nos. 442 through 444.) The Second Objection includes a twenty-two page notice (Doc. No. 442), an eleven page memorandum (Doc. No. 443), and an affidavit of Matthew Farmer (Doc. No. 444).

Rottlund's instant motion seeks to strike the Second Objection in its entirety because it is consumed by "unwarranted criticism, vituperation, calumny, and derogatory, impertinent and scandalous expression directed at . . ." Magistrate Judge Nelson and should not go unrebuked. *Dranow*, 307 F.2d at 549; *Anderson v. Chase Manhattan Mortgage Corp.*, 107 F.3d 875, 1997 WL 94697 (8th Cir. 1997) (unpublished) (striking improvident, insolent and scandalous language in appellant's brief, which included unsupported accusations of collusion and impropriety directed toward the judge, and ordering appellant to pay respondent double costs).

**LEGAL ARGUMENT**

**I. THE SECOND OBJECTION SHOULD BE STRICKEN FROM THE RECORD BECAUSE IT CONTAINS LANGUAGE DISRESPECTFUL TO THE COURT.**

"A brief should not contain language disrespectful to the court nor to opposing counsel and ordinarily a brief containing such scurrilous and scandalous matter should be stricken from the files." *Anderson v. Federal Cartridge Corp.*, 156 F.2d 681, 686 (8th Cir. 1946) (citing *Supreme Council of Royal Arcanum v. Green*, 237 U.S. 531, 35 S.Ct. 724, 59 L.Ed. 1089 (1915); *Kneeland v. American Loan & Trust Co.*, 138 U.S. 509, 11 S.Ct. 426, 34 L.Ed. 1052 (1891); *Cox v. Wood*, 247 U.S. 3, 38 S.Ct. 421, 62 L.Ed. 947 (1918)). "'It is not pleasant to be compelled to remind counsel that language used in briefs, as well as that employed in oral argument, must be respectful and that scandalous matter must be avoided at all times in this Court'." *Dranow*, 307 F.2d at 549 (quoting *Kneeland*, 138 U.S. at 513, 11 S.Ct. at 428, 34 L.Ed. at 1054). However, "'it is [the Court's] duty to keep [its] records clean and free from scandal'" and it must remind counsel when they cross the line. *Id.* (quoting *Green v. Elbert*, 137 U.S. 615, 624, 11 S.Ct. 188, 191, 34 L.Ed. 792, 796 (1891)). In fact, "'[t]he authority and the duty of a federal court to keep its records free from stain and scandal are by no means dependent on the ability or disposition of counsel . . . its power is plenary, and its duty is imperative . . ..'" *Id.* (quoting *Kelley v. Boettcher*, 85 F. 55, 57 (8th Cir. 1898)).

Rule 12(f) of the Federal Rules of Civil Procedure also provides that the Court may strike any scandalous or impertinent matter set forth in a party's pleadings either by motion of a party or upon the court's own initiative. Fed. R. Civ. P. 12(f)(2004).

Thus, this Court should strike Pinnacle and Holland & Knight's Second Objection and impose an appropriate sanction sufficient to rebuke them for including disrespectful and scandalous language in their pleadings. *See e.g.*, *Mullen v. Galati*, 843 F.2d 293, 294 (8th Cir. 1988) (ordering appellant to show cause why the court should not award respondent double costs

and attorneys' fees because the appellant filed a brief that asserted, among other things, that the trial judge was biased, prejudiced and became an advocate, and implied the judge had been paid off and was not capable of rendering justice); *see infra Chase Manhattan*, 1997 WL 94697.

A review of the Second Objection reveals unprecedented scurrility, scandal, and disrespect for Magistrate Judge Nelson. For instance, the pleadings include:

1. "In an *ad hominem* attack on Mr. Carmichael . . . the Order ignores the factual and legal context in which these issues arose" (Notice, p. 5);

2. "Pinnacle and Holland & Knight object to the different standards that govern the obligations of Rottlund's counsel to search for documents" (Notice, p. 7);

3. "The double standard applied in this case is obvious and wholly improper, particularly when the Magistrate [Judge] dispenses meat-clever justice to Pinnacle and its counsel while treating Rottlund and its counsel with kid gloves" (Notice, p. 8);

4. "Though the Magistrate [Judge] selectively disclosed contents of Mr. Farmer's *in camera* affidavit in her opinion . . . she paid little heed to the portions of the affidavit that outlined the actual steps Mr. Farmer took to gather documents at Pinnacle" (Notice, p. 10);

5. "Pinnacle and Holland & Knight object to the Order's wholesale adoption of advocate's language throughout the invective-filled 'opinion'" (Notice, p. 11);

6. "The Magistrate [Judge's] mischaracterization of Mr. Sandelin's brochure file is further proof that she crossed the line into advocacy" (Notice, p. 11);

7. "Her abandonment of impartiality is underscored by . . ." (Notice, p. 11-12);

8. ". . . just a review of some of the Magistrate [Judge's] most recent comments in open court demonstrates her lapse into advocacy" (Notice, p. 12);

9. "The Magistrate [Judge] has abandoned any pretense of impartiality in this matter" (Notice, p. 12);

10. "Although Magistrate Judge Nelson was concerned about the use of the word 'hell' in a deposition, she did not seem concerned about offending anyone's sensibilities when she injected the phrase 'Good Lord' into her comments in open court on July 15, 2003" (Notice, p. 15);

11. ". . . Rottlund's counsel did not move promptly for a protective order . . . [because counsel was ] . . . fully aware that it would pay no price in the Magistrate [Judge's] courtroom for its tactics" (Notice, p. 16);

12. ". . . rather than issue a written (appealable) decision in which she might be forced to address such conduct, the Magistrate [Judge] issued a minute order, with no notice to the parties, which was entirely cryptic" (Notice, p. 19);

13. "The transcript of the hearing on the motion for sanctions illustrates [Magistrate Judge Nelson's] predisposition to criticize Pinnacle's counsel, even when faced with a record that does not bear out the Magistrate's statements" (Notice, p. 19);

14. "The Magistrate [Judge] never acknowledged that her potshots . . ." (Notice, p. 21);

15. ". . . the evidence has been selectively culled to support a predetermined outcome (Mem., p. 3);

16. "These irrefutable facts are simply ignored by the Order because they fail to conform to (sic) predetermined finding that a pattern of discovery failings has occurred" (Mem., p. 4);[3]

17. "The predetermination to find a pattern also required the application of different standards to the litigants" (Mem., p. 4);

18. "Obscured by the Order's rhetoric is . . . " (Mem., p. 5); and

19. "The Order even goes so far as to include irrelevant *ad hominem* attacks on Pinnacle's counsel" (Mem., p. 6).

Each of these unsupported derogatory arguments violates the well established legal precedent that pleadings should be free from disrespectful language to the court, and should not include scurrilous and scandalous matter staining court records. *Federal Cartridge*, 156 F.2d at 686; *Dranow*, 307 F.2d at 549. Each spurious argument should be stricken. *Chase Manhattan*, 1997 WL 94697; *Mullen*, 843 F.2d at 294.

## II. THE SECOND OBJECTION SHOULD BE STRICKEN FROM THE RECORD BECAUSE IT DOES NOT COMPLY WITH THE LOCAL RULES.

Local Rule 72.1(b)(2) provides that a party may appeal from a Magistrate Judge's non-dispositive order within ten days after service of the order. L.R. 72.1(b)(2), adopted effective February 1, 1991; amended May 17, 2004. The Rule also provides that a written notice of appeal "shall specifically designate the order or part thereof appealed from and the basis for objection

[3] As will be explained below, Pinnacle's claim that the facts are irrefutable is misplaced and was correctly rejected by Magistrate Judge Nelson.

thereto." *Id.* Appealing parties are permitted to file no more than a ten page brief in support of their appeal. *Id.* The District Court will only set aside portions of a Magistrate Judge's order that are "clearly erroneous or contrary to law." *Id.*

Here, despite the fact that Local Rule 72.1(b)(2) does not provide a page limitation in connection with the required notice, Pinnacle and Holland & Knight circumvented the briefing limitations and violated the spirit of the rule by filing invective laden arguments that consume twenty-two pages, but are styled as a notice of appeal. (Doc. No. 442.) For example, the first fourteen instances of unwarranted, calumnious argument set forth in the list above are found in the notice of appeal. Likewise, the notice of appeal includes citations to, and obdurate arguments based upon, exhibits attached to counsel's affidavit; exhibits which are improperly offered on appeal since this Court should review the underlying record before Magistrate Judge Nelson to determine whether the Order appealed from is clearly erroneous or contrary to law. (*See*, *e.g.*, Notice, pp. 4-5 (citing to Exs. A-D to the Farmer Affidavit).) Similarly, throughout their brief, Pinnacle and Holland & Knight cite to arguments made in their notice of appeal to support misplaced claims in their brief. (*See*, *e.g.*, Mem., p. 7 (citing to Notice ¶ 3 to support the claim that Scott Peterson, Pinnacle's lead counsel, acted with civility and restraint when addressing Magistrate Judge Nelson).)

Local Rule 1.3 provides that pleadings or papers may be stricken if a party fails to comply with a local rule. L.R. 1.3, adopted effective February 1, 1991. Likewise, Local Rule 7.1(f) provides that unsolicited memoranda of law shall not be allowed. L.R. 7.1(f), adopted effective February 1, 1991; amended November 1, 1996; amended January 3, 2000; amended January 1, 2004; amended May 17, 2004. Because Pinnacle and Holland & Knight's notice of appeal far exceeds any reasonable interpretation of Local Rule 72.1(b)(2), they have essentially

filed a thirty-three page brief to support their appeal. Pursuant to Local Rules 1.3 and 7.1(f), the Court should strike the Second Objection.

## III. MAGISTRATE JUDGE NELSON'S ORDER IS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW.

The record below is enormous. It fully supports Magistrate Judge Nelson's findings of fact; they are not erroneous, let alone clearly erroneous. In addition, Magistrate Judge Nelson's legal reasoning is based on solid precedent and is sound. It is not contrary to law. If this Court declines to strike the appeal in its entirety, it should deny the appeal outright because Pinnacle and Holland & Knight cannot carry their heavy burden to establish Magistrate Judge Nelson's Order is clearly erroneous or contrary to law.

Rottlund will not attempt to reargue its position in support of its motion for sanctions because the underlying record of the appealing parties' "troubling pattern of conduct involving abuse of the judicial process, discovery incompetence, and defiance of Court orders, not to mention periodic episodes of brazen disrespect to the Court and an instance of cowardly harassment during a deposition" cannot be improved upon here. *The Rottlund Company*, 2004 WL 1494579, *1. However, Rottlund will address three points raised by the appealing parties to demonstrate that the central theme of their appeal, which is: "[i]n the final analysis, this entire matter involves the untimely production of four publicly available advertising brochures," is flawed and unsupported by the record. (Mem., p. 10.) The three points are: (1) the appealing parties' non-compliant production of cost and revenue information; (2) the appealing parties' claim that Magistrate Judge Nelson has applied a different standard to them; and (3) the appealing parties' claim that their untimely production of critical documents depicting Rottlund's copyrighted floor plan and elevations is not important.

### A. The Appealing Parties Repeatedly Failed To Produce Cost And Revenue Information.

The appealing parties argue that Magistrate Judge Nelson's findings related to their failure to comply with repeated Court Orders compelling them to produce "cost records" is clearly erroneous. (*Id.*, p. 3.) According to Pinnacle and its counsel, the issue of whether they produced "cost records" is "critical to the determination that a pattern (of misconduct) exists because it is one of the few actual accusations of discovery non-compliance."[4] (*Id.*)

Importantly, the appealing parties disingenuously frame the issue because they ignore half of the Court's Order when they limit their arguments to "cost records." As Magistrate Judge Nelson's Order correctly states: "[t]wice in October of 2002 (Doc. No. 105 and 106), the Court ordered Pinnacle to produce all <u>revenue and cost information</u> for *all* townhome products in each development where allegedly infringing townhomes were located."[5] *The Rottlund Company*, 2004 WL 1494579, *5 (<u>emphasis added</u>) (*emphasis in original*). Thus, the appealing parties' effort to persuade this Court that Magistrate Judge Nelson's findings are clearly erroneous is misplaced because they focus their attention on trying to convince this Court that their non-compliant production of "cost records" was actually compliant, but they do not try to persuade this Court that their non-compliant production of revenue information was somehow compliant.

---

[4] Of course, the appealing parties' argument is overstated because Magistrate Judge Nelson's fifty-five page Order discusses many more instances of discovery misconduct, which explains why Magistrate Judge Nelson has conducted status conferences in this matter "at a rate of at least one per month since approximately October of 2002 . . .." *The Rottlund Company*, 2004 WL 1494579, * 2.

[5] This discovery issue was hotly contested because, as explained above, the Town & Country Homes Defendants' expect, at a minimum, to earn approximately $21 million in profits on sales of infringing town homes. In addition, the Town & Country Homes Defendants expect, at a minimum, to earn approximately $29.3 million in profits on sales of non-infringing products, sales which are attributable to their infringement of Rottlund's copyrights because, in part, the products are part of an overall community development proposal for which community-wide approval is necessary from a municipality or city before development or construction (necessary predicates to sales) may commence. Thus, Pinnacle and its counsel fought tooth and nail to preclude any discovery on cost and revenue information pertaining to non-infringing products. Of course, the appealing parties were unsuccessful, and were ordered to produce cost and revenue information in October 2002, but they nevertheless continued to fight because they simply refused to produce cost and revenue information consistent with the Court's Orders. Thereafter, the Court implemented and conducted numerous Status Conferences to enforce compliance. *Id.*

Nevertheless, as the record demonstrates, the appealing parties did not produce cost or revenue records in compliance with the Court's Orders; instead, they intentionally curtailed their production and the Court conducted thirteen subsequent Status Conferences to enforce its Orders. (Doc. No. 325, ¶ 4(d)-(p).) Contrary to the appealing parties' argument, the record supports Magistrate Judge Nelson's finding that Pinnacle's Chief Financial Officer – Paul Anderson – admitted that the Town & Country Homes Defendants' limited their production of financial information to the directly infringing designs and works at issue.[6] (Doc. No. 324, ¶ 78.) Similarly, the record contains an Affidavit of Paul Anderson, which the Court ultimately ordered because a sworn representation was needed to ensure that the Town & Country Homes Defendants went back and generated additional cost and revenue reports to comply with the Court's Orders. (Davenport Aff., Ex. 4.)[7] Similarly, as Rottlund explained through supplemental briefing submitted to Magistrate Judge Nelson after Pinnacle's oral argument opposing sanctions, the appealing parties' document production trail reveals non-compliance with the Orders.[8]

In sum, the record on this issue is clear: the appealing parties did not comply with the Court's Orders. In addition, the record is also clear that this issue was the genesis of the remarkable number of Status Conferences the Court conducted throughout discovery in this case. Magistrate Judge Nelson's Order is not clearly erroneous.

---

[6] Because Defendant TCM is Pinnacle's Minnesota Division, Paul Anderson is also TCM's Chief Financial Officer. Unfortunately, Pinnacle and Holland & Knight now attempt to capitalize on the fact that Mr. Anderson's candid admission was not captured on a transcript. However, as the appealing parties know, Mr. Anderson's admission was the final blow that led to the Court granting Rottlund's request to have status conferences in this matter recorded by a court reporter.

[7] Attached as Exhibit 4 to the Davenport Aff. submitted in support of Rottlund's instant motion is Mr. Anderson's affidavit that was previously given to Magistrate Judge Nelson by Pinnacle, but not filed with the Court.

[8] Because Pinnacle's counsel claimed for the first time at oral argument opposing sanctions (over a year after Mr. Anderson's admission) that the appealing parties had not unilaterally limited the initial cost and revenue document production, the Court permitted Rottlund leave to file a letter brief to respond to the claim. Attached as Exhibit 5 to the Davenport Aff. is a courtesy copy of Rottlund's supplemental letter brief submitted to Magistrate Judge Nelson on February 17, 2004. Exhibit 5, and the attachments thereto, further demonstrate that Magistrate Judge Nelson's findings are not clearly erroneous.

**B. The Court Has Not Applied Different Standards To Pinnacle Or Its Counsel.**

Pinnacle and Holland & Knight argue that Magistrate Judge Nelson is applying a double standard to them because the Court declined to sanction Pinnacle's former counsel, now TCM's current counsel, for breaching their duty of candor to the Court. (Notice, p. 9.) Similarly, the appealing parties inject irrelevant and misplaced allegations concerning Rottlund and its counsel to support their double standard argument. (*Id.*, pp. 7-10; Mem., p. 4.) Specifically, Pinnacle and Holland & Knight argue that because the Court has not sanctioned Rottlund and its counsel, the Court must be applying a double standard to them. (*Id.*) The appealing parties' arguments represent a complete abdication of responsibility for their actions, and speak volumes as to why they were sanctioned in the first place.

For instance, the appealing parties attempt to justify their "discovery incompetence" by arguing that Rottlund's counsel never asked a witness – Steve Theis – whether he had responsive documents. (Notice, p. 7.) However, when this issue was first raised during a Status Conference on May 7, 2004, the Court told the Town & Country Homes Defendants' counsel, based on Rottlund's *in camera* submission which included written correspondence from Mr. Theis to counsel, "you know that there was a submission made in camera on this issue. I don't want to reveal the content of that submission except to say that if you were to see it you would be satisfied that he indeed was asked . . . he was asked to do that." (Davenport Aff., Ex. 6, 8:14-23.) Thereafter, just like in their appeal, Pinnacle's counsel accused Magistrate Judge Nelson of applying a double standard, and the Court responded:

> I am compelled to respond to Mr. Farmer's suggestion that the Court is applying a different standard here. The Court is certainly neither intends to do that nor does the Court believe that it's doing such a thing. The Court has asked on a couple of occasions for [Rottlund's] counsel to go back, much like I asked Pinnacle counsel and TCM counsel and BSB counsel on other occasions and represent to the Court that all documents indeed have been searched for and produced and that representation has been made to the Court.

(*Id.*, 36:14-37:3.) Unhappy with Rottlund's counsel's compliance, the appealing parties now argue "[t]he double standard applied in this case is obvious and wholly improper, particularly when the Magistrate dispenses meat-cleaver justice to Pinnacle and its counsel while treating Rottlund and its counsel with kid gloves." (Notice, p. 8.)[9] There is no support for the appealing parties' double standard argument, and this Court should spend little time in rejecting it.

**C. The Fact That Rottlund's Brochures Depicting Its Copyrighted Floor Plans And Elevations Are Publicly Available Does Not Excuse The Appealing Parties' Misconduct.**

Rottlund attached a portion of its brochure depicting its copyrighted floor plans and elevations to the cease and desist letter sent to the Town & Country Homes Defendants on July 5, 2001. (Doc. No. 324, Ex. 23.) Two and a half years later, on December 9, 2003, the appealing parties finally produced, not one, but two copies of Rottlund's brochure, which Pinnacle's in-house architect admitted he obtained when the Defendants toured and photographed Rottlund's copyrighted town homes in early 1998 prior to beginning to assemble their infringing designs and works. (Compare *id.* with Doc. No. 331, Ex. 24 and Ex. 25 at PINN11594-11595; Doc. No. 324, Ex. 42, Ex. 43, Ex. 50 at 7:21-23, Ex. 51 at 192:10-15, and Ex. 53 at 25:1-12.)

As this Court knows, copyright infringement may be shown "either by direct or circumstantial evidence." *CSM Investors, Inc. v. Everest Development, Ltd.*, 840 F.Supp. 1304, 1311 (D. Minn. 1994). To prove copyright infringement by circumstantial evidence, a party need only show: 1) access; and 2) substantial similarity. *Id.* A defendant has access to the plaintiff's copyrighted works if they obtain a brochure depicting a simplified copy of plaintiff's

[9] Likewise, the appealing parties assert factually unsupported allegations against Rottlund's President – Todd Stutz – and counsel concerning an interrogatory response and document production which they claim was not sufficient. (*Id.*, pp. 8-9.) However, the appealing parties raised this issue during oral argument opposing Rottlund's sanctions motion (rather than in their pleadings), but they failed to demonstrate why the Court should revisit a discovery issue that had been previously resolved in Rottlund's favor.

copyrighted floor plan. *Arthur Rutenberg Corp. v. Parrino*, 664 F.Supp. 479, 481 (M.D. Fla. 1987) (citing *Donald Frederick Evans & Assoc., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 904-905 (11th Cir. 1986) (depictions of copyrighted floor plans in unregistered brochures are protected by copyright laws) and *Imperial Homes Corp. v. Lamont*, 458 F.2d 895, 899 (5th Cir 1972)); *see also Richmond Homes Management, Inc. v. Raintree, Inc.*, 862 F.Supp. 1517, 1527 (W.D. Va. 1994) (access to copyrighted design exists when there is "evidence that the defendants had access to plaintiff's fliers and house designs" and defendant "admitted to having a copy of plaintiff's brochures in his office"). Fully aware of the case law regarding access and Rottlund's need to demonstrate access if it cannot prove direct copying, the appealing parties did not produce Rottlund's brochures from Pinnacle's files. Instead, Pinnacle chose to file a motion to dismiss for lack of personal jurisdiction (arguing that it had no contacts whatsoever with the State of Minnesota), assert the affirmative defense that it did not have access to Rottlund's copyrighted technical drawings, and steadfastly represent to the Court thereafter on many occasions that the appealing parties had no additional documents to produce. *See*, *e.g.*, *The Rottlund Company*, 2004 WL 1494579, *8-9.

Rottlund discovered Pinnacle's in-house architect not only had contacts with Minnesota, he also had Rottlund's copyrighted floor plans in his files, which he gathered while touring and photographing Rottlund's town homes in Minnesota. Instead of apologizing for their egregious misconduct, the appealing parties try to trivialize it. This Court should reject the appeal, and, if anything, heighten the sanctions by ordering the appealing parties to pay monetary sanctions to the Court. *See*, *e.g.*, *Chase Manhattan*, 107 F.3d 875; *Mullen*, 843 F.2d at 294.

The appealing parties attempt to justify their misdeeds by arguing that Rottlund's brochures are publicly available, were found in Pinnacle's file of over 3800 pages of competitor product information, and were produced in such a way that Rottlund did not suffer any prejudice.

(Notice, p 11; Mem., p. 5.) These arguments are unavailing. First, the fact that Rottlund's brochures are publicly available is not relevant to the issue here; the issue here is the appealing parties' possession of Rottlund's brochures, which proves access, and their refusal to produce the brochures despite Magistrate Judge Nelson's Orders and Rottlund's discovery requests. Second, the size of the competitor product brochure file heightens the egregiousness of the appealing parties' misconduct because they cannot credibly explain how such a large file of competitor product information could go undiscovered in an architectural copyright infringement dispute that is now three years old, especially after so many Status Conferences on the issue.[10] Third, the Order details many of Rottlund's discovery efforts aimed at proving access and explains the vast amount of judicial resources expended to enforce orders compelling the production of documents related to access. *See, e.g.*, *The Rottlund Co.*, 2004 WL 1494579, *7-12. Thus, the appealing parties' claim that Rottlund did not suffer any prejudice is unsupported by the record.

In sum, Magistrate Judge Nelson's fifty-five page Order cannot be dismissed on the theory that "[i]n the final analysis, this entire matter involves the untimely production of four publicly available advertising brochures." (Mem., p. 10.) The elevations and floor plans contained in these brochures go the very heart of this copyright infringement case, as they were attached to Rottlund's cease-and-desist letter over three years ago. Pinnacle should have identified these materials in their initial disclosures, instead of moving to dismiss itself for lack of personal jurisdiction and breaching its duty of candor to this very Court by representing there were "no contacts" with Minnesota.

---

[10] In fact, the appealing parties admit that they did not conduct a serious investigation for the file and further claim that it was not discovered as a result of any remarkable deposition questioning by Rottlund's counsel. (Doc. No. 331, Ex. 5 at p. 2 ". . . Mr. Sandelin's file was not discovered after some intense investigation or strenuous cross examination. Rather, Mr. Sandelin casually mentioned . . ..")

## CONCLUSION

Based on the foregoing, Rottlund respectfully requests that this Court issue an order rebuking the appealing parties for filing a brief containing language disrespectful to the Court. Rottlund respectfully requests that the Court's order include direction to the Clerk of Court to strike the Second Objection in its entirety. In addition, Rottlund respectfully requests that the Court's order include heightened sanctions in the form of a monetary payment to the Court, which would include an amount at least equal to Rottlund's attorney's fees and costs incurred in connection with the instant motion. *See*, *e.g.*, *Chase Manhattan*, 107 F.3d 875; *Mullen*, 843 F.2d at 294. Alternatively, Rottlund respectfully requests that this Court deny the Second Objection and issue an Order affirming Magistrate Judge Nelson's Order.

Dated: July 29, 2004.

**WINTHROP & WEINSTINE, P.A.**

s/David A. Davenport
Craig S. Krummen, #259081
David A. Davenport, #285109

Suite 3500
225 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 604-6716
Facsimile: (612) 604-6816
***Attorneys for Plaintiff The Rottlund Company, Inc.***

2132335v1