UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| The Rottlund Company, Inc.,<br>d/b/a Rottlund Homes,<br>a Minnesota Corporation<br><br>Plaintiff,<br><br>vs.<br><br>Pinnacle Corporation,<br>d/b/a Town & County Homes,<br>an Illinois Corporation, and<br>Town & County Homes, Inc., a<br>Minnesota Corporation, Bloodgood Sharp<br>Buster Architects and Planners of Iowa,<br>Inc., an Iowa Corporation, and The<br>Bloodgood Group, Inc.<br><br>Defendants.<br><br>and<br><br>Town & County Homes, Inc., a<br>Minnesota Corporation,<br><br>Third-Party Plaintiff<br>vs.<br><br>Bloodgood Sharp Buster Architects and<br>Planners of Iowa, Inc., an Iowa<br>Corporation,<br><br>Third-Party Defendant. | No. 01-CV-1980 (DSD/SRN)<br><br>**DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS AND PLANNERS OF IOWA, INC. AND THE BLOODGOOD GROUP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF ON NON-COPYRIGHT CLAIMS AND AFFIRMATIVE DEFENSES**<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

---

Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. ("BSB"), and The Bloodgood Group, Inc. ("BGI"), submit this Memorandum of Law in Support of their Motion for Partial Summary Judgment dismissing Plaintiff The Rottlund Company, Inc.'s ("Rottlund") non-copyright claims and granting BSB and BGI summary

judgment on several of their affirmative defenses. BSB and BGI bring this motion because (1) Rottlund's non-copyright claims are preempted by Rottlund's copyright claim; (2) Rottlund has produced no evidence to support its non-copyright claims; (3) the undisputed evidence developed during discovery entitles BSB and BGI to summary judgment on the issue of independent creation; and (4) the Villa II is afforded either no copyright protection, or only "thin" copyright protection.

## ARGUMENT

To avoid summary judgment, Rottlund bears the burden of establishing that genuine issues of materials fact exist. Nelson v. PRN Productions, Inc., 873 F.3d 1141, 1142 (8th Cir.), cert. denied, 493 U.S. 994 (1989); Williams v. Crichton, 84 F.3d 581 (2nd Cir. 1996); Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 433 (1984). After the Supreme Court's opinion in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Rottlund cannot simply argue that facts supporting its claims will be developed later or at trial. Rather, Rottlund must set forth specific facts sufficient to raise a genuine issue of material fact for trial. If Rottlund fails to support an essential element of its claim, or present affirmative evidence to rebut BSB and BGI's affirmative defenses, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. Kennedy v. GN Danavox, 928 F.Supp. 866, 870 (D.Minn. 1996); Celotex, 477 U.S. at 322-23. As another federal court observed in a copyright infringement dispute:

> If the opponent has the burden of proof at trial, the moving party has no burden to negate the opponent's claim. . . . The moving party does not have the burden to produce any evidence showing the absence of a genuine issue of material fact . . . . Instead . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving

> party's case . . . . Once the moving party satisfies this initial burden . . . . [T]he adverse party's response must set forth specific facts showing that there is a genuine issue for trial.

Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1141 (C.D.Cal. 2001). BSB and BGI bring this motion because Rottlund cannot make the showings required to support the essential elements of its non-copyright claims and has no evidence to rebut BSB and BGI's affirmative defenses.

## I. SUMMARY JUDGMENT IS APPROPRIATE ON ROTTLUND'S CLAIM FOR VIOLATION OF MINNESOTA'S DECEPTIVE TRADE PRACTICES ACT.

Counts Six and Twelve of Rottlund's Seventh Amended Complaint charge TCM and Pinnacle, respectively, with violating Minnesota's deceptive trade practices act, Minn. Stat. § 325D.43 et seq. At the heart of Rottlund's deceptive trade practices claim are four allegations:

> Upon information and belief Defendant…has knowingly and intentionally made false and misleading statements, descriptions, or representations of fact in commerce in connection with the sale of the Infringing Town Home Units and/or Chateau Collection town home units through its advertising and promotional materials concerning the origin, source, characteristics, and/or design of the Infringing Town Home Units and/or Chateau Collection town home units.
>
> Upon information and belief Defendant['s]…false and misleading statements have actually deceived and/or confused a substantial segment of the advertising audience, or have the capacity to deceive and/or confuse such segment.
>
> Upon information and belief the false and misleading statements are material in that they cause deception and/or confusion that is likely to influence purchasing decisions.
>
> * * *
>
> Defendant['s]. . .failure to attribute to Plaintiff the authorship and copyright ownership of these copyright protected original works of authorship, in connection with the sale of each Infringing Town Home Unit and/or Chateau Collection town home unit, creates a false impression of the origin, source, characteristics, and/or design of the Infringing Town Home Unit and/or Chateau Collection town home unit.

Rottlund's Seventh Amended Complaint at ¶¶ 142-144, 146 and 189-191, 193. When this matter was commenced, Rottlund pled each allegation "upon information and belief," because Rottlund, understandably, lacked any evidence to support these allegations. Almost four years later, Rottlund still lacks any evidence to support these allegations, or to make a *prima facie* case for violation of Minnesota's deceptive trade practices act, and for that reason, summary judgment is warranted. Summary judgment is also warranted because this claim is pre-empted by Rottlund's copyright claims.

At its heart, this claim is no more than a repackaging of the same claims that form the basis of Rottlund's copyright claim. Rottlund alleges that the defendants have made "false and misleading statements, descriptions, or representations of fact[,]" because the Homestead Collection infringes on the Villa II. Rottlund alleges that these "false and misleading statements have actually deceived and/or confused a substantial segment of the advertising audience, or have the capacity to deceive and/or confuse such segment[,]" because the two townhomes are substantially similar.

17 U.S.C. § 301(a) states that,

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

Courts have thus held that Section 301 preempts a claim when "(i) the state law claim seeks to vindicate 'legal or equitable rights that are equivalent' to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106--styled the

'general scope requirement'; and (ii) the particular work to which the state law claim is being applied falls within the type of works protected by the Copyright Act under Sections 102 and 103--styled the 'subject matter requirement.'" NBA v. Motorola, Inc., 105 F.3d 841, 848 (2nd Cir. 1997)(citations omitted). Rottlund's Deceptive Trade Practices Act claim seeks to protect rights that are equivalent to Rottlund's Copyright Act rights. Accordingly, the remedies available under the Copyright Act are Rottlund's exclusive remedies, and Rottlund's Deceptive Trade Practices Act claim should be dismissed.

## II. SUMMARY JUDGMENT IS APPROPRIATE ON ROTTLUND'S LANHAM ACT CLAIM.

This Court has previously held that, to prevail on a Lanham Act claim, a plaintiff must prove:

> 1. the defendant made false statements of fact about its own products, or the plaintiff's products, in an advertisement; 2. the advertising actually deceived or tended to deceive a substantial segment of its audience; 3. the deception is material because it is likely to influence buying decisions; 4. the defendant caused falsely advertised goods to enter interstate commerce; and 5. the plaintiff was injured or is likely to be injured as a result.

Lenscrafters, Inc. v. Vision World, Inc., 943 F.Supp. 1481, 1488 (D.Minn. 1996) (citing Alternative Pioneering v. Direct Innovative Products, 822 F.Supp. 1437, 1441-42 (D.Minn. 1993)). An analysis of these elements shows that (1) this claim is preempted by Rottlund's copyright claim; and (2) Rottlund cannot make a *prima facie* case.

### A. Rottlund's Lanham Act claim is preempted by its Copyright Act claim.

As with its Deceptive Trade Practices Act claim, Rottlund's Lanham Act claim seeks to protect the same legal rights which are equivalent to the bundle of rights

protected by the Copyright Act. Rottlund's theory of recovery on its Lanham Act claim proves this to be true. What false statement did the Defendants make? TCM and Pinnacle asserted that they created the Homestead Collection and Washington Square townhouses. Why is that statement false? Because they copied Rottlund's Villa II townhome. As with the Deceptive Trade Practices Act, this claim merely restates Rottlund's Copyright Act claim, and is therefore preempted by that claim.

**B. Rottlund cannot prove a *prima facie* claim for violation of the Lanham Act.**

While BSB and BGI deny that Rottlund has produced evidence sufficient to establish any of the five elements of a Lanham Act claim, this brief will focus on two of those elements.

1. There is no evidence of confusion in the marketplace.

The second element requires Rottlund to prove that the advertising actually deceived or tended to deceive a substantial segment of the audience. This could be shown by market research, or through expert testimony on the likely results of the advertising. Rottlund has conducted no such research, and offered no such expert testimony. In short, Rottlund has failed to demonstrate that the allegedly false statements regarding the origin of the Homestead Collection deceived or tended to deceive the audience.

2. There is no evidence of interstate sales.

The fourth element requires Rottlund to prove that the falsely advertised goods entered the stream of interstate commerce. Not only has Rottlund failed to prove this, but the facts conclusively establish that the goods *did not* enter interstate commerce. The Homestead Collection and Chateau Collection were sold exclusively in Minnesota, and

the Washington Square townhouse was sold exclusively in Illinois. Because none of the products entered interstate commerce, the Lanham Act is inapplicable. Rottlund's failure of proof on this required element entitles BSB and BGI to summary judgment.

## III. THE UNDISPUTED EVIDENCE IN THE RECORD ESTABLISHES THAT BSB INDEPENDENTLY CREATED THE PRODUCTS AT ISSUE.

Even if a plaintiff shows access and substantial similarity, there is no unlawful copying if the defendant establishes that its work was the result of independent creation. See Kootenia Homes, Inc. v. Reliable Homes, Inc., 2002 WL 15594 (D.Minn. 2002) (Plaintiff could not avoid summary judgment by merely relying on the similarities between the two homes to rebut Defendants' proof of independent creation) (a copy of this opinion is attached as Exhibit A to the Affidavit of Ben Patrick submitted herewith); CMM Cable Rep., Inc.. v. Ocean Coast Properties, 97 F.3d 1504, 1513, 1525 (1st Cir. 1990); Repp v. Webber, 132 F.3d 882, 889 (2nd Cir. 1997) (Independent creation is an affirmative defense, evidence of which can be introduced to rebut a *prima facie* case of infringement). In the present case, the expert report of Al Bloom, attached as Exhibit B to the Affidavit of Ben Patrick submitted herewith, and the documents referenced therein, details the process by which BSB independently created its townhome design works. Mr. Bloom concludes that the process which BSB used to create these works is exactly what one would expect in a case of independent creation, and is totally inconsistent with copying. The affidavit and deposition testimony of Larry Moore and Doug Buster, describing the process they went through to design the Homestead Collection and Washington Square product, respectively, also demonstrates the independent creation of

these works. The extensive documentary record showing the numerous revisions to BSB's plans by TCM bolsters this conclusion.

Rottlund offers no substantive evidence whatsoever (nor, indeed, is there any substantive evidence to be offered) that tends to show that BSB did anything but independently create these products. Larry Moore's testimony demonstrates how he began with previous BSB designs and, using those designs as a starting point, created a new and different design tailored to TCM's specifications. Larry Moore's testimony, and the documents submitted in conjunction with this motion, also demonstrate how, after the initial design for the Homestead Collection was completed, Mr. Moore worked with TCM to revise the design. All of this is what one would expect to see in a case of independent creation, and is contrary to what one would expect to see in a case of copying. The record reveals the same as to the Washington Square product. Doug Buster's testimony demonstrates that, by extensively changing BSB's designs for the Homestead Collection, he independently created the Washington Square product. Because the evidence offered by BSB and BGI to support its affirmative defense of independent creation is uncontradicted by evidence in the record, BSB and BGI are entitled to summary judgment on this issue.

## IV. ROTTLUND HAS FAILED TO IDENTIFY ANY CHARACTERISTIC OF THE VILLA II WHICH IS SUBJECT TO COPYRIGHT PROTECTION.

At Paragraph 243 of their Answers, BSB and BGI assert the following affirmative defense: "[t]he ideas expressed in the technical drawings and/or architectural works at issue in this matter are not copyrightable. . .and are available for use by any party, including BGI, BSB, TCM, and Pinnacle." Any copyright protection analysis must begin with the principle that such protection extends only to the *expression* of ideas, not to the

ideas themselves. Control Data Systems, Inc. v. Infoware, Inc., 903 F.Supp. 1316, 1322 (D.Minn. 1995). As this Court observed in Control Data Systems, Inc.: "[a]lthough it is sometimes difficult to distinguish between an idea and the expression of that idea, such distinction is essential to determining whether a plaintiff's material is protected." Control Data Systems, 903 F.Supp. at 1322. Indeed, the Copyright Act itself specifically exclude protections for ideas. 17 U.S.C. § 102(b) states:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated or embodied in such work.

This principle is expressly reiterated in the Act's definition of "Architectural Work":

> An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

As this Court observed in CSM Investors, Inc. v. Everest Development, Ltd., 840 F.Supp. 1304, 1310 (D.Minn. 1994):

> It is undisputed that copyright protection does not extend to individual standard features. It is also axiomatic that copyright protection covers only the expression of ideas fixed in a tangible form and not the ideas themselves . . . . Thus, the use of standard structural elements and the concept of a one-story office showroom are not copyrightable.

CSM Investors, 840 F.Supp. at 1310. In Kootenia Homes, *supra*, this Court reiterated this principle:

> Nevertheless, the outset of a copyright infringement analysis implicates the fundamental principle copyright doctrine: ideas, concepts, and processes are not protected from copying . . . . This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship. Thus the Copyright Act protects the specific expression of ideas in the Hoeffel Home Plan but exempts the ideas themselves from protection.

Kootenia Homes, Inc., 2002 WL 15594 at *3.

The doctrines of "merger" and "*scenes a faire*" are closely related to this basic principle and may properly be analyzed under the "infringement" claim element. See Thimbleberries, Inc. v. C & F Enterprises, Inc., 142 F.Supp.2d 1132, 1137-38 (D.Minn. 2001). The merger doctrine denies copyright protection to any expression that is inseparable from---merged with---the idea, processes, or discoveries underlying the expression. The purpose of the doctrine is to ensure that courts do not unwittingly grant protection to an idea by granting exclusive rights to the only, or one of only a few, means of expressing that idea. Control Data Systems, 903 F.Supp. at 1323. The *scenes a faire* doctrine denies protection to expressions that are dictated by external factors. Id.

A number of federal decisions have applied these rules to dismiss claims for alleged copyright infringement of unprotectable ideas set forth in architectural design works. For example, in Kootenia Homes, this Court granted defendants' motion for summary judgment on an alleged home design infringement claim based in part on the court's conclusion that many elements of the allegedly infringed plan represent unprotectable ideas:

> Although there are similarities between the Purtell Home and the Hoeffel Home, the similarities do not go beyond the concepts and ideas contained in the Hoeffel Home plan. When beginning the design process for their new residence, some aspiring homeowners choose architects, designers, and builders based on a "signature" design that can be immediately recognized as uniquely associated with an individual architect, such as Frank Lloyd Wright . . . . It is more common to choose a design of a future residence by selecting one among derivations of historical precedents, such as Tudor, Cape Cod, Colonial, French Provincial, Shaker Style, or even Farm House. . . . Moreover, the market forces drive a tendency towards similarity and conformity in single-family residences. . . . People generally choose a neighborhood based upon the knowledge that their home will coexist nicely with their neighbors' houses, within a certain

> style and price range. . . . These market forces create incentives for many subdivisions to impose restrictive covenants on the designs of homes built within them. . . . The Wedgewood development is an example of a subdivision where many homes share similarities.
>
> * * *
>
> An approved builder in an exclusive subdivision arranges the basic rooms and spaces in a single-family residence to accommodate how the family wishes to live. . . . Many features of a designed residence are common in many other homes. Efficiency concerns and the need for functional living in the home inevitably constrain the number of variations in the configuration of the rooms and spaces. . . . Common elements and generic features are shared by all homes. The Copyright Act does not protect the ideas for juxtaposing these living spaces.

Kootenia Homes, 2002 WL 15594 at *4.

In Attia v. Society of N.Y. Hospital, 201 F.3d 50 (2nd Cir. 1999), cert. denied 531 U.S. 843 (2001), the court affirmed summary judgment dismissing alleged infringement claims relating to the plaintiff's schematic design drawings for proposed improvements to the New York Hospital. The court concluded that the allegedly infringed design documents communicated *ideas* concerning the placement of various structures, the use of certain structural features, the location of space on particular floors and similar generalized design data. The court affirmed that the plaintiff's drawings were unprotected:

> The problem of distinguishing an idea from its expression is particularly acute when the work of "authorship" is of a functional nature, as is a plan for the accomplishment of an architectural or engineering project. As a generalization, to the extent that such plans include generalized motions of where to place functional elements, how to route the flow of traffic and what methods of construction and principles of engineering to rely on, these are "ideas" that may be taken and utilized by a successor without violating the copyright of the original "author" or designer.

Attia, 201 F.3d at 55.

Other recent cases have dismissed architectural work infringement claims because of similar idea, merger, or *scenes a faire* concerns. See Ale House Mgt., Inc. v. Raleigh Ale House, Inc., 205 F.2d 137, 142-144 (4th Cir. 2000) (Plaintiff's bar island floor plan layout design was an unprotectable idea, not an original form of expression); Howard v. Sterchi, 974 F.2d 1272, 1276 (11th Cir. 1992) (Affirming summary judgment dismissing infringement claim based on alleged copying of log home plans, concluding that in country-style frame houses, and in houses built with logs which dictate that only square angles be used, similarities in the general layout of rooms can occur innocently. The variety of ways a two story rectangle can be divided into three bedrooms, two baths, a kitchen, a great room or living room, closets, porches, etc., is finite. In architectural plans of this type, modest dissimilarities are more significant than they may be in other types of artworks); Wickham v. Knoxville Int'l. Energy Expo., 739 F.2d 1094, 1096-97 (6th Cir. 1984) (Affirming summary judgment dismissing plaintiff's infringement claim for alleged copying of his design for the "Sunsphere" 1982 World's Fair exhibition structure. Plaintiff has no exclusive right to design and erect a tower with a spherical building on top of it. The use of towers in architectural buildings is certainly not unique; likewise the incorporation of a spherical structure into a design is no more than an idea.); La Joie v. Pavcon, Inc., 146 F.Supp.2d 1240, 1247 (M.D. Fla. 2000) (Granting declaratory judgment that design for home did not infringe copyrighted design. The court concluded that, when creating a split plan home, there were a finite number of ways that rooms can be arranged); Domingo Cambeiro PA v. Advent, 2000 WL 262597 (9th Cir. 2000) (Court granted summary judgment dismissing plaintiff's infringement claim for alleged copying of his design for a "New York theme" shopping center with an integrated structure and

facade based on the New York City skyline. By insisting on copyright protection for works that were not virtually identical, plaintiff essentially sought a monopoly on the idea of a building whose structure incorporated New York City icons. This far exceeds the purpose and scope of the copyright laws.) (A copy of this opinion is attached as Exhibit C to the Affidavit of Ben Patrick.)

In resisting a motion for summary judgment, it is the plaintiff's burden to identify alleged elements of "substantial similarity". Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1177 (C.D. Cal. 2001). Paragraph 64 of the Seventh Amended Complaint lists 70[2] specific elements which Plaintiff alleges comprises the "gestalt" of the Villa II. A review of the list demonstrates that the vast majority of the allegedly copied elements relate to matters of "placement" and "layout" similar to the placement and layout ideas found unprotectable in Attia, Howard, and the other cases discussed above. Moreover, as discussed in the expert report of Albert Bloom, many of Rottlund's allegedly protected elements are the result of meeting the requirements of external physical, market and regulatory factors rather than being the product of any original authorship of expression. Mr. Bloom also notes that he has seen all of the elements identified by Rottlund utilized in other products built by other builders across the country. As discussed in Mr. Bloom's report, after the standard features are removed from Rottlund's claim, there is nothing substantively copyrighted in the Villa II works except for ideas, elements integrally related to ideas, and elements dictated by external factors. Such elements are not protected by copyright.

---

[2] Rottlund has, in the past, indicated that Paragraph 64 contains 71 different elements. This is inaccurate because, as BSB and BGI have pointed out in their answers to the Fourth, Fifth, Sixth, and Seventh Amended Complaints, subparagraphs (xx) and (aaa) are the same.

**A. Under an extrinsic analysis, the Villa II is merely a standard, functional conglomeration of standard, functional elements, to which no copyright protection extends.**

The court in Apple Computer v. Microsoft, 35 F.3d 1435 (9th Cir. 1994), described the three showings a plaintiff must make to satisfy the extrinsic test:

> (1) The plaintiff must identify the *source(s)* of the alleged similarity between his work and the defendant's work. (2) Using analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright. * * * …the court must then apply the relevant limiting doctrines in the context of the particular medium involved, through the eyes of the ordinary consumer of that product. (3) Having dissected the alleged similarities and considered the range of possible expression, the court must define the scope of the plaintiff's copyright---that is, decide whether the work is entitled to "broad" or "thin" protection. Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, as a whole, they are sufficiently similar to support a finding of illicit copying.

Apple Computer, 35 F.3d at 1443 (emphasis in original). As to the first showing, BSB and BGI can only assume that Paragraph 64 of the Seventh Amended Complaint, which lists 70 alleged similarities between the Homestead Collection and the Villa II, is intended to satisfy this element. Alternatively, Rottlund may hope to avoid this element altogether by attempting to plead "gestalt". So far as the rest of the analysis is affected, it makes little difference; whether Rottlund pleads infringement on specific elements or infringement on gestalt, the second step of the analysis requires the Court to filter out non-copyrightable features.

The expert reports of Al Bloom and Jeffrey Scherer (Mr. Scherer's report is attached as Exhibit D to the Affidavit of Ben Patrick) provide ample guidance to the Court on the issue of standard, non-copyrightable features. Notably, the report of Rottlund's expert, Anthony Desnick, makes absolutely no mention as to whether any of

the features of the Homestead Collection or the Villa II are or are not standard features. In fact, Mr. Desnick testified that "I'm not even sure how you would define standard features, because I've never in my own practice used it as a term…." See Transcript of the Deposition of Anthony Desnick, attached as Exhibit E to the Affidavit of Ben Patrick, at pages 63-64. On further examination, Mr. Desnick continued:

Q: You have not done any analysis about whether any of the items in the Villa II product are standard features?
A: I've not done that analysis, no.
Q: You are not going to offer any opinions about whether or not there are items in the Villa II product that are standard features at trial; is that correct?
A: At this point, without further discovery, I would have to say that's correct.
* * *
Q: Have you done anything to do any analysis whether or not there is a standard arrangement [of] standard features in the Villa II product?
A: No, I haven't.
Q: That's not something you are prepared to offer any opinions about?
A: No.

Id. at pages 64-65. The conclusion reached by both Mr. Bloom and Mr. Scherer is that the Villa II presents a standard arrangement of standard features, similar to dozens of other back-to-back townhomes constructed across the nation by a variety of builders, and designed by a number of different architects. Rottlund's own expert has frankly admitted that he cannot contradict that testimony.

It is also relevant to consider the analysis conducted, and the conclusion reached, by Judge Ronald Longstaff of the District Court for the Southern District of Iowa in the matter of Rottlund Homes v. The Oaks Development Co., No. 4-98-CV-10574. At issue in that matter (referred to hereinafter as "the Oaks case") was whether a town home constructed by Oaks Development Company infringed on the design of the Original

Villa[3]. A copy of the Judge Longstaff's opinion is attached as Exhibit F to the Affidavit of Ben Patrick submitted herewith. Judge Longstaff, after hearing lengthy testimony from all sides, including the expert testimony of Rottlund's Tim Whitten, concluded that "[a] back-to-back, side-by-side, slab on grade, two story townhome is simply *not* an original idea; yet, these elements are the essence of Rottlund's claim to originality." July 13, 1999 Order, at page 16-17. Judge Longstaff went on to note that the nature of a back-to-back townhome restricted many other design choices, including garage placement and room placement, an opinion echoed in this case by the expert opinions of Al Bloom and Jeff Scherer.

Under the second step of the extrinsic analysis, the Court must strip away from both the Homestead Collection and the Villa II all standard, functional, non-copyrightable features, for it is only after these elements are stripped away that the two products can be compared. As noted above, this is true whether Rottlund claims infringement as to individual elements, or infringement as to "gestalt." The expert reports of Al Bloom and Jeff Scherer indicate that the items identified in Paragraph 64 of Rottlund's Seventh Amended Complaint are standard or functional features that are not entitled to copyright protection, and must therefore be stripped away at this step in the extrinsic analysis.

### B. If the Villa II is entitled to any copyright protection at all, that protection is "thin".

Assuming that, after the required filtering out of unprotected elements, anything of substance remains in the Villa II copyrighted matters (BSB and BGI believe nothing

[3] Although the Rottlund product at issue here is the Villa II, Rottlund has consistently taken the position that the Villa II is merely the third generation of the Original Villa, and is substantially similar to the Original Villa.

remains), the copyright protection for such elements would be, in the words of other courts, "thin". When a copyright-protected work consists of a unique arrangement of otherwise common or generic features, the work is entitled only to "thin" copyright protection, which protects only the unique arrangement of these features, and not the features themselves. See, e.g., Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 136 (2nd Cir. 2003); Domingo Cambeiro Professional Corp., 2000 WL 262597 at *2.

A number of reported federal decisions have found that in infringement disputes involving "thin" architectural works which include a substantial amount of unprotectable ideas and concept matter, even modest dissimilarities in the compared works are more significant than they would be in other works. Howard v. Sterchi, 974 F.2d at 1276; Ale House Mgt., Inc., 205 F.3d at 143; Kootenia Homes (Dissimilarity may be important in determining whether there is substantial similarity); Attia v. Society of NY Hospital, 201 F.3d at 58 (While the key is similarity rather than differences, nevertheless dissimilarity can be important in determining whether there is substantial similarity. Furthermore, dissimilarity in realization or expression can make it clear that the similarity extends only to unprotectable concepts or ideas).

Thus, in disputes involving "thinly protected" architectural works, the courts have held that it is not sufficient to merely show that the floor plan and layout are generally similar where the treatment of other architectural elements reveals dissimilarities. See Howard, *supra* (In affirming summary judgment for defendant in log home design infringement claim, the court concluded that although the floor plans were visually similar and the layout was generally the same, the dissimilarities were significant,

particularly in the roof lines, the dimensions of the rooms, the total area, and the use of bay windows); Kootenia, *supra* (While there are general similarities between the homes, the similarities do not exceed the ideas contained in the plaintiff's home plan. The court noted differences in living and overall space, roof lines, stair locations, number and configuration of windows, juxtaposition of master bath and walk-in closets, layout of mud room and laundry room, arrangement of second floor rooms, and treatment of home office); John Alden Homes, Inc. v. Kangas, 142 F.Supp.2d 1338, 1344-45 (M.D. Fla. 2001), aff'd 37 Fed Appx 979 (11th Cir. 2001) (Despite finding of actual copying of a portion of the floor plan, court found no substantial similarity of protected elements where there were numerous differences in detail including different room sizes, added "jut outs" in bath, family and bedroom, different wall anglings, different master closet locations, etc.); LaJoie v. Pavcon, Inc., 146 F.Supp.2d at 1247-48 (Despite similarity of basic floor plans, there was no substantial similarity where allegedly infringing work was larger by over 1000 square feet, had a "European appearance" with different roof lines, a different pool area and veranda, and an additional portico extending from the house to the cabana).

If the Court determines that the Villa II is entitled only to "thin" copyright protection, Rottlund's pleadings and proof to date are *per se* insufficient to support its copyright claim under the law discussed herein. The differences between the Villa II and the Homestead Collection, outlined in Al Bloom's report, are more significant than the differences found in Howard, John Alden Homes and Kootenia, and the courts in those cases all granted summary judgment to the defendants. Furthermore, Rottlund's list of the 70 elements which make up the Villa II's gestalt relate only to floor layout, room

arrangement, and common element placement, all of which were rejected as a basis for a finding of substantial similarity by the courts cited above. BSB and BGI ask that this Court similarly reject Rottlund's arguments, and grant BSB and BGI summary judgment.

## CONCLUSION

For the reasons stated above, BSB and BGI respectfully request that the Court rule that: (1) Rottlund's non-copyright claims are preempted by Rottlund's copyright claim; (2) Rottlund has produced no evidence to support its non-copyright claims; (3) the undisputed evidence developed during discovery entitles BSB and BGI to summary judgment on the issue of independent creation; and (4) that the Villa II is afforded either no copyright protection, or only "thin" copyright protection.

Dated: July 29, 2004

s/ Ben Patrick
Holly J. Newman, MN Bar # 26457X
Ben Patrick, MN Bar # 312460
Of MOORE, COSTELLO & HART, PLLP
701 Fourth Avenue South
Suite 1350
Minneapolis, MN 55415-1823
Telephone: (612) 673-1048

***Attorneys for Defendants Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., and The Bloodgood Group, Inc.***

MPLS:50603.1/16850-166