UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br><br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO CHRISTOPHER CARMICHAEL'S OBJECTIONS TO MAGISTRATE JUDGE NELSON'S ORDER OF SANCTIONS DATED JUNE 30, 2004** |

## I. INTRODUCTION

Plaintiff The Rottlund Company, Inc. ("Rottlund") respectfully submits this Response to Pinnacle's Objections To Magistrate Judge Nelson's Order Of Sanctions Dated June 30, 2004 ("First Objection") [Doc. 439 and 440].[1] Contrary to the arguments in the First Objection, the record in this case does not support the appealing parties' argument that Magistrate Judge Nelson's sanction of Holland & Knight attorney Christopher Carmichael "is a gratuitous personal attack against an unsuspecting and undefended young attorney." *See* Memorandum of Law supporting Christopher Carmichael's Objections to the 6/30/04 Sanctions Order [Doc. 440] ("First Objection Memo.") at 1-2. As Magistrate Judge Nelson emphasized, "the imposition of sanctions is informed by and based upon the history of incidents of abuse, incompetence, defiance, and misconduct (many of which are sanctionable individually), not merely the latest incident." *The Rottlund Co., Inc. v. Pinnacle Corp.*, 2004 WL 1494579, --- F.R.D. --- (D. Minn. June 30, 2004) at *15, [Doc. 418] at 29. The record conclusively establishes that Magistrate Judge Nelson gave the appealing parties ample notice and a full and complete opportunity to be heard on all sanctions issues, and that all of the sanctions imposed, including those against Mr. Carmichael, are warranted.

---

[1] Pinnacle and Holland & Knight have improperly sought to parse out the sanctions imposed in Magistrate Judge Nelson's June 30, 2004 Order. The First Objection is stylized as a separate "Objection By Christopher Carmichael to Magistrate's June 30, 2004 Order of Sanctions." Because Mr. Carmichael is on the Holland & Knight "team" of lawyers representing Pinnacle in this matter, Rottlund will refer to the first-filed objection to Magistrate Judge Nelson's Order [Doc. 439 and 440] as the First Objection and the second-filed objection to Magistrate Judge Nelson's Order [Doc. 442, 443 and 444] as the Second Objection. *See* Rottlund's Motion to Strike Defendant Pinnacle Corporation and Holland & Knight's Notice of Objections dated July 29, 2004 [Doc. 469 and 470]. Rottlund refers to all of these parties as "appealing parties," but restricts this response to the objections raised in the First Objection.

## II. BACKGROUND

Instead of restating the exhaustive factual background and considered legal analysis in Magistrate Judge Nelson's fifty-five page Order upon which the sanctions – including the sanction of Mr. Carmichael – are based, Rottlund will focus on the specific objections raised in Pinnacle's First Objection regarding the mild sanction for Mr. Carmichael's misconduct during the August 22, 2003 Deposition of Jason Jorgenson. *See Rottlund*, 2004 WL 1494579, at **6-7, 21. Mr. Carmichael is one of the lawyers on the Holland & Knight team defending Pinnacle in this action. First Objection Memo. [Doc. 440] at 7. Although Mr. Carmichael has appeared on Pinnacle's behalf during several proceedings in this case, including depositions and oral argument before Magistrate Judge Nelson during status conference proceedings, he has neither moved for admission nor been admitted to practice in this District. *See* Transcript of February 6, 2004 Hearing ("Hearing Tr. 02/06/04") [Doc. 338] at 60:6-16.[2]

### A. Procedural Background

The appealing parties were first apprised that Mr. Carmichael's harassing deposition tactics might be the subject of sanctions when Rottlund attorney Craig Krummen first objected to Mr. Carmichael's bad faith inquiry. *See Rottlund*, 2004 WL 1494579 at *7 (quoting objection of Mr. Krummen from Jorgenson Dep., at 40:20-41:14). Mr. Carmichael's misconduct was also specifically raised in all three days of the sanctions hearing conducted by Magistrate Judge Nelson on January 28, 2004, February 6, 2004, and February 23, 2004. *See, e.g.*, Transcript of January 28, 2004 Hearing ("Hearing Tr. 01/28/04") [Doc. 332] at 75:20-79:20; Hearing Tr.

[2] *See* L.R. 83.5(a) ("No person, unless duly admitted to practice in this Court, shall be permitted to appear and participate in the trial of any action or the hearing of any motion except in his or her own behalf or by special permission of the Court or as provided in subdivisions (c), (d), or (e) of this rule.").

02/06/04 [Doc. 338] at 60:11-16, 65:19-68:14; Transcript of February 23, 2004 Hearing ("Hearing Tr. 02/23/04") [Doc. 365] at 44:20-21.

Magistrate Judge Nelson gave the appealing parties ample time and opportunity to address the specific allegations of misconduct. *See, e.g.*, Hearing Tr. 01/28/04 at 162:14-166:11 (discussing additional hearing time to give all parties a full opportunity to be heard); Hearing Tr. 02/06/04 at 6:17-23 (Pinnacle allowed to add to the record and complete its remarks),[3] 75:16-19 (discussing affording all parties the opportunity to complete their arguments); *see also* Hearing Tr. 02/23/04.[4] As the appealing parties note in their First Objection, their joint-defense counsel opined during the second day of the hearing that the "allegations about Mr. Carmichael" would need "additional briefing." First Objection Memo. at 4 (quoting Hearing Tr. 02/06/04 at 123:10-25). Despite the professed need to brief the issue, the appealing parties chose not to request or submit additional briefing on this issue prior to the third day of hearing seventeen (17) days later, or before Magistrate Judge Nelson issued the Order over four (4) months later on June 30, 2004.[5]

**B. Magistrate Judge Nelson's Findings of Fact and Conclusions of Law**

The entire exchange for which Mr. Carmichael was sanctioned was quoted in the Order. *See Rottlund*, 2004 WL 1494579, at *7. As Magistrate Judge Nelson observed, Mr. Carmichael's "obvious, bad-faith harassment [of Rottlund witness Jason Jorgenson] . . .

---

[3] Pinnacle's attorney specifically stated his intention to "supplement the record and put in Pinnacle's . . . side of the story so that the record is complete for the Court so that it can fashion appropriate sanctions if it so chooses. In particular, I want to focus on Holland & Knight's participation in this litigation . . . beginning with the date that we first became involved in the litigation." Hearing Tr. 02/06/04 at 7:16-24.

[4] The transcript of the hearing on the motion for sanctions, which was conducted over the course of three separate days in January and February 2004, is 489 pages long.

[5] All parties were given ample opportunity to be heard on all issues raised in connection with the motion for sanctions, and all parties had the option of supplementing the record with written briefs. *See, e.g.*, Hearing Tr: 02/06/04 at 122:7-10 and 130:3-5 (supplemental briefing on an issue raised during the hearing is requested and granted); Affidavit of David A. Davenport dated July 29, 2004 [Doc. 473], Ex. 5 (supplemental brief permitted by Magistrate Judge Nelson).

speaks for itself." *Id.* Magistrate Judge Nelson concluded that Mr. Carmichael's conduct "is the epitome of bad faith harassment":

> Mr. Carmichael, as an opposing attorney taking Mr. Jorgenson's deposition, wanted to be the first to tell Mr. Jorgenson, who is about 25 years old, drives 50 some miles one way to work, and has three daughters, that he was going to lose his job. . . . This line of questioning had nothing to do with the lawsuit and was intended for no other reason than to inflict emotional angst.

*Id.* The line of questioning was not only bad faith harassment, but also in violation of the Protective Order, as the prior deposition testimony Mr. Carmichael discusses had been designated by Rottlund as attorneys' eyes only.[6] *Id.* Magistrate Judge Nelson imposed no monetary sanction, but instead simply ordered Mr. Carmichael to mail a letter of apology to Mr. Jorgenson and Rottlund. *Id.*

The appealing parties admit that Mr. Carmichael sought to inflict emotional angst, but argue that Mr. Carmichael's harassment of Mr. Jorgenson was legitimate and related to specific issues in the litigation. *See* First Objection Memo. at 5-6. Holland & Knight attorney Christopher Murdoch made essentially the same argument during the second sanctions hearing on February 6, 2004. *See* Hearing Tr. 02/06/04 at 65:19-68:14. According to the appealing parties, the tactics employed by Mr. Carmichael were intended to "have a destabilizing effect on the witness's feelings of fealty," and to "undermine the bond between employer and employee to obtain information that employees possessed regarding certain allegedly illegal tactics used to

[6] The appealing parties contend it is relevant because of the prior deposition testimony of Steven Kahn, Rottlund's Chief Financial Officer. *See Rottlund*, 2004 WL 1494579 at **6-7. Importantly, Mr. Kahn was asked questions well outside the bounds of the Rule 30(b)(6) deposition topics for which he was designated to testify. *See* Hearing Tr: 02/06/04 at 92:25-94:17. When David Rotter, Rottlund's President, was asked about Rottlund's intentions in Iowa, Mr. Rotter confirmed that Rottlund was in fact not closing its Iowa division. *Id.*

enforce copyrights." First Objection at 6.[7] Thus, Magistrate Judge Nelson's finding that Mr. Carmichael acted in bad faith to harass Mr. Jorgenson is not clearly erroneous.

## III. ARGUMENT

### A. Standard of Review

The record before Magistrate Judge Nelson regarding Mr. Carmichael's harassing misconduct, and the substantial record of the numerous other instances of sanctionable misconduct by the appealing parties, provide ample support for the modest sanction imposed on Mr. Carmichael. L.R. 72.1(b)(2) provides that when considering an objection to a Magistrate Judge's order, the District Judge shall set aside any portion of the Magistrate Judge's order "found to be clearly erroneous or contrary to law." L.R. 72.1(b)(2); *see also Northwest Airlines, Inc. v. American Airlines Inc.*, 870 F. Supp. 1499, 1501 (D. Minn. 1994). "A district court's decision to impose sanctions is entitled to substantial deference." *Blue v. U.S. Dept. of Army*, 914 F.2d 525, 538 (4th Cir. 1990) (citing *Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207, 210 (4th Cir. 1988)). "A district court 'is in the best position to review the factual circumstances and render an informed judgment as [it] is intimately involved with the case, the litigants, and the attorneys on a daily basis.'" *Blue*, 914 F.2d at 538 (quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988) (*en banc*)); *accord Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2461 (1990) ("[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination."). The Court in *Cooter* reasoned:

[7] Pinnacle and Holland & Knight, when confronted by the Court with numerous instances of egregious misconduct, again lash out with unsupported *ad hominem* attacks against Rottlund and its attorneys. Magistrate Judge Nelson previously denied Defendants' motion to add counterclaims premised upon Rottlund's "certain allegedly illegal tactics used to enforce copyrights," even finding one of the claims "frivolous." *Compare* Order Denying Motion to Amend [Doc. 106 at 9-10] *with* First Objection Memo. [Doc. 440] at 6.

> The district court is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to serve Rule 11's goal of specific and general deterrence. Deference to the determination of courts on the front lines of litigation will enhance these courts' ability to control the litigants before them.

*Cooter*, 110 S. Ct. at 2460. As the Fourth Circuit found in *Blue*, these considerations apply to sanctions imposed under all sanctions theories. 914 F.2d at 539. Magistrate Judge Nelson has certainly been on the "front line" of this litigation, conducting status conferences in this matter "at a rate of at least one per month since approximately October of 2002." *Rottlund*, 2004 WL 1494579, *2. As the exhaustive factual background and well-reasoned legal analysis in Magistrate Judge Nelson's fifty-five page Order demonstrate, Magistrate Judge Nelson is certainly "in the best position to review the factual circumstances and render an informed judgment." Contrary to the appealing parties' First Objection, Magistrate Judge Nelson afforded all of the parties ample notice, and a full and complete opportunity to be heard.

**B. The Appealing Parties Received Notice and an Opportunity to Be Heard**

The appealing parties' contention that the sanction against Mr. Carmichael violates due process is without merit. The possibility of a sanction for Mr. Carmichael's harassing behavior was first discussed during the deposition of Jason Jorgenson. *See Rottlund*, 2004 WL 1494579 at *7 (quoting objection of Mr. Krummen from Jorgenson Dep., at 40:20-41:14). Mr. Carmichael's behavior was also specifically discussed during the first day of the sanctions hearing on January 28, 2004, as well as during the second and third days of the hearing on February 2 and 23, 2004. *See* Hearing Tr. 01/28/04 at 75:20-79:20, 150; Hearing Tr. 02/06/04 at 65:19-68:14, 92:25-94:17; Hearing Tr. 02/23/04 at 44:20-21. The same counsel represented the appealing parties during each day of oral argument. Because Mr. Carmichael was a member of the Holland & Knight defense team representing Pinnacle in this matter, the appealing parties' contention that Mr.

Carmichael received no specific notice of the pending sanctions is entirely misplaced. The appealing parties were fully apprised of the allegations of Mr. Carmichael's misconduct and were specifically questioned about Mr. Carmichael's misconduct during the sanctions hearings.[8] *See id.* The appealing parties raised the same argument about the purported relevancy of Mr. Carmichael's questions during the hearing that they raise in their First Objection, *see* Hearing Tr. 02/06/04 at 65:19-68:14, but now also concede that the motivation for Mr. Carmichael's harassing questioning was to cause emotional angst. *See* First Objection Memo. at 5-6. In short, the appealing parties were given a full and fair hearing on the issue, and Magistrate Judge Nelson properly rejected their after-the-fact rationalization.[9] The appealing parties' objections should be denied because they had sufficient notice and an opportunity to respond. *See In re Clark*, 223 F.3d 859, 865 (8th Cir. 2000) (holding that attorney had sufficient notice and opportunity to respond where potential sanction was discussed in pleadings and hearings); *In re Mahendra*, 131 F.3d 750, 754, 758 (8th Cir. 1997) (discussing notice of potential sanction during hearing, motion, and by attorney's own admission of sanctionable conduct during his deposition); *see also In re Big Rapids Mall Assocs.*, 98 F.3d 926, 929 (6th Cir. 1996) ("A hearing is not necessarily required where the court has full knowledge of the facts and is familiar with the conduct of the attorneys.").

---

[8] The issue the Court asked the parties to brief was whether Holland & Knight should continue to enjoy *pro hac vice* privileges from this Court, and the allegations pertaining to Mr. Carmichael's misconduct related directly to this issue. *See* Hearing Tr. 01/28/04 at 5:13-10:14, 74:17-81:12.

[9] Pinnacle and Holland & Knight's contention that the inquiry was relevant to Rottlund's damage claim is without merit. As discussed above in footnote 6, Rottlund was not going to close its Iowa division. Moreover, nearly all of the infringing developments in this case are located in the State of Minnesota. Rottlund's Iowa division, and the capacity of the Iowa division to construct town homes, are simply not relevant to this case. *See Rottlund*, 2004 WL 1494579 at **6-7, 21 (noting that Mr. Carmichael's line of questions was not relevant).

The cases cited in the First Objection do not support the appealing parties' contention, or require a different result. For example, the First Objection cites to *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990), in support of their argument that the Order must be vacated for failure to comport with due process. *See* First Objection Memo. at 4-5. First, unlike the situation in *Jones*, there are numerous references in the parties' pleadings, and in the record, that the Court was considering imposing sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent sanction power. *See, e.g.*, Hearing Tr. 01/28/04 at 45:25-46:4, 55:13-57:14. Second, unlike the situation in *Jones*, the appealing parties here had advance notice that the court was contemplating the imposition of sanctions for Mr. Carmichael's misconduct. *See, e.g.*, Hearing Tr. 01/28/04 at 75:20-79:20; Hearing Tr. 02/06/04 at 65:19-68:14; Hearing Tr. 02/23/04 at 44:20-21. The *Jones* decision was specifically distinguished for these same reasons in *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1225-26 (3d Cir. 1995). In *Fellheimer*, the attorney had over eleven weeks' notice of the sanction. Here, the appealing parties were apprised at least as early as January 28, 2004, and were given two additional, unfettered opportunities during a five-week span to address all of the allegations in two subsequent days or oral argument on February 6 and February 23, 2004. Moreover, another four (4) months passed between the close of oral argument and the issuance of the Order on June 30, 2004. Had the appealing parties believed additional legal arguments or written briefs were required, they should have sought leave to do so, or simply filed them.[10] They never did. Just as the court found in *Fellheimer*, using the words of *Jones*, "we can say 'with reasonable assurances on this record' that [the appealing parties were] 'on notice as to the particular factors that [they

---

[10] All parties had the option of supplementing the record with written briefs. *See, e.g.*, Hearing Tr: 02/06/04 at 122:7-130:5 (supplemental briefing on an issue raised during the hearing is requested and granted); Affidavit of David A. Davenport dated July 29, 2004 [Doc. 473], Ex. 5 (supplemental brief granted by Magistrate Judge Nelson).

had to] address if [they] were to avoid sanctions.'" 57 F.3d at 1226 (quoting *Jones*, 899 F.2d at 1357). The appealing parties received ample notice and were given a full opportunity to be heard.[11]

**B. The Sanction Is Warranted**

The appealing parties raise essentially the same arguments that Pinnacle's counsel raised during the sanctions hearings – that Mr. Carmichael's harassment of Mr. Jorgenson was for legitimate reasons and related to specific issues in the litigation. *Compare* First Objection Memo. at 5-6 *with* Hearing Tr. 02/06/04 at 65:19-68:14. The appealing parties also admit that the purpose of the harassment was, as Magistrate Judge Nelson specifically found, to "inflict emotional angst." Order at *21. According to the appealing parties, the tactics employed by Mr. Carmichael were intended to "have a destabilizing effect on the witness's feelings of fealty," and to "undermine the bond between employer and employee to obtain information that employees possessed regarding certain allegedly illegal tactics used to enforce copyrights." First Objection at 6. Under these circumstances, sanctions are warranted. *See* Order, 2004 WL at *21 (discussion Court's finding that Mr. Carmichael's conduct was sanctionable under the Court's inherent powers and 28 U.S.C. § 1927). The appealing parties admit that the point and purpose of Mr. Carmichael's questioning was to "destabliz[e] . . . the witness's feelings." First Opposition Memo. at 6. Mr. Carmichael's bad faith is, therefore, admitted, and no further factual findings are required on this issue. *See In re Mahendra*, 131 F.3d at 754, 758 (discussing attorney's admission of sanctionable conduct during his deposition); *In re Big Rapids Mall*

[11] Moreover, aside from the fact that Mr. Carmichael himself certainly received notice of the potential sanctions from Mr. Murdoch, the specific Holland & Knight team member representing Pinnacle and Holland & Knight during all three days of the sanctions hearing, Mr. Carmichael's claimed lack of notice rings hollow given his failure to comply with the Local Rules requirements for being admitted to practice in this District. All parties received notice of filings and docket entries made in connection with this litigation.

*Assocs.*, 98 F.3d at 929 ("A hearing is not necessarily required where the court has full knowledge of the facts and is familiar with the conduct of the attorneys.").

The First Objection's suggestion that the carefully-considered sanction imposed against Mr. Carmichael is "unrealistic and unjust" is also unavailing. While Mr. Carmichael's age and experience are certainly relevant considerations for a sanctions order, *see Blue*, 914 F.2d at 546, Magistrate Judge Nelson's measured sanction for Mr. Carmichael's purposeful (and still unapologetic) harassment is appropriate under the circumstances. First, unlike in the *Blue* decision relied upon by the appealing parties, where the court of appeals reversed the district court's imposition of a large monetary sanction against a relatively young and inexperienced attorney, no excessive monetary sanction is imposed against Mr. Carmichael. Magistrate Judge Nelson simply ordered him to write a letter of apology. Given Mr. Carmichael's admitted and unapologetic purpose of inflicting emotional angst on Mr. Jorgensen, the letter of apology is an appropriate sanction.

## IV. CONCLUSION

For all of these reasons, Rottlund respectfully requests that the Court deny the First Objection and affirm in all respects Magistrate Judge Nelson's June 30, 2004 Sanction Order.

Dated: July 29, 2004

**WINTHROP & WEINSTINE, P.A.**

By s/Philip R. Mahowald
Craig S. Krummen, #259081
David A. Davenport, #285109
Philip R. Mahowald, #274902
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800

***Attorneys for Plaintiff***
***The Rottlund Company, Inc.***
***d/b/a Rottlund Homes***

2134116v1