Civil No. 01-1980 (DSD/SRN) – Rottlund/Pinnacle
Ben Patrick Affidavit dated August 3, 2004

# Exhibit E

C
Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

ANTENNA TELEVISION, A.E., Plaintiff,
v.
AEGEAN VIDEO INC., Flair Video Leasing Inc., Ditmars Video & Electronics, Athen Corner Video Center, and CJC Video, Defendant.

**No. 95-CV-2328 ERK.**

April 23, 1996.

Thomas M. Russo and George J. Tsimis, Chalos & Brown, New York City, for Antenna Television, A.E.,

No appearances for defendants (see footnote # 7, page 3)

*Order*
Korman, District Judge.
***1** The recommendation of the U.S. magistrate judge is adopted.

REPORT AND RECOMMENDATION

CHREIN, United States Magistrate Judge.

By order dated August 15, 1995, the Honorable Edward R. Korman referred the above captioned matter to the undersigned Magistrate Judge for the purpose of conducting an inquest on damages pursuant to the entry of a default judgment in favor of the plaintiff Antenna Television, A.E. ("Antenna").

*BACKGROUND AND PROCEDURAL POSTURE*

Plaintiff Antenna is a Greek television network that produces, broadcasts and distributes Greek-language television programming. Its principal place of business is in Athens, Greece. The Defendants are a number of video cassette rental agencies located in the borough of Queens in the city of New York. According to the Plaintiff, defendants Aegean Video, Inc. ("Aegean") and Flair Video Leasing, Inc. ("Flair") share the same business address and may be related entities. However, the precise nature of their relationship is unclear.

On June 9, 1995, plaintiff Antenna brought suit against the Defendants alleging that, in violation of 17 U.S.C. § 101 *et seq.,* the Defendants infringed the Plaintiff's copyrights on television programming. Specifically, Antenna alleges that each of the Defendants rented or sold video cassettes containing episodes of television series and other programming that had been illegally copied in Greece from Antenna's broadcasts.

The record reveals that none of the named defendants filed answers in response to Antenna's Complaint, and that, on August 14, 1995, Antenna moved for the entry of default judgment as to defendants Aegean, Flair and Ditmars Video & Electronics ("Ditmars"). On August 15, 1995, Judge Korman granted Antenna's motion, and referred the outstanding issues of damages and other relief to the undersigned Magistrate Judge.

On September 6, 1995, I ordered the parties to submit briefs and supporting materials addressing the issues of damages and other relief. This briefing order was sent via First Class mail to all parties. In addition, to ensure adequate notice to the defaulting parties, I specified in the briefing order that Plaintiff was to serve copies of the order on each of the defendants.

Plaintiff's submissions were filed in a timely manner on November 8, 1995, however, the submissions did not address the issue of damages attributable to defendant Ditmars. Antenna contends that it was unable to brief this issue with respect to Ditmars because of Ditmars' failure to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT
E

comply with a subpoena dated October 10, 1995 which sought financial and other damages-related information. On December 20, 1995, Antenna filed a motion seeking an order to compel defendant Ditmars to comply with the October 10, 1995 subpoena, and Judge Korman referred the motion to me. By order dated February 28, 1996, I granted Antenna's Motion to Compel, and I gave defendant Ditmars until 30 days after its receipt of the order to comply with the subpoena's requests. I also granted Antenna's request to submit supplemental briefs on the issue of damages attributable to Ditmars within 45 days of Ditmars' compliance with the subpoena.

***2** As of the date of this Report and Recommendation, none of the defendants have filed briefs in opposition to Antenna's submissions. [FN1] Consequently, I am without the benefit of opposing arguments and must base my recommendations solely on the submissions of plaintiff Aegean and existing statutory and case law. Furthermore, in light of Ditmars' failure to comply with the October 10, 1995 subpoena, this report and recommendation pertains only to defendants Aegean and Flair. A second report and recommendation pertaining to Ditmars will be issued subsequent to the filing of supplemental briefs.

> FN1. The record contains a letter dated December 19, 1995 sent via facsimile machine from Scott Goldberg, Esq. of the firm Goldberg & Johnston, P.C., in which Mr. Goldberg indicates that he represents defendants Aegean and Flair. Nothing in the record other than this letter and one other dated December 6, 1995 would suggest that Mr. Goldberg has made an appearance in this case. In his December 19 letter, Mr. Goldberg requests an extension until January 4, 1996 for the filing of papers responsive to Antenna's proof of damages. By endorsement dated December 21, 1995, I granted Mr. Goldberg's request. As of the date of this report, no responsive briefs have been filed on behalf of Aegean or Flair by Mr. Goldberg or any other attorney.

*DISCUSSION*

No hearing having been held, this report and recommendation is issued on the basis of documentary evidence and affidavits. Given Defendants' failure to appear in this case, a hearing on damages would likely be a futile, one-sided exercise. While "the court must ensure that there is a basis for the damages specified in the default judgment, it may, but need not, make the determination through a hearing." *Fustok v. Conticommodity Services, Inc.,* 122 F.R.D. 151 (S.D.N.Y.1988), *aff'd,* 873 F.2d 38 (2d Cir.1989), *citing Transportes Aereos De Angola v. Jet Traders Inv. Corp.,* 624 F.Supp. 264, 266 (D.Del.1985) (damages for default could be established without hearing because party presented definite figures in documentary evidence or detailed affidavits).

A. *Basis for Damages*

As a preliminary matter, I note that Greece is a signatory to several international copyright conventions including the Universal Copyright Convention of September 6, 1952 and the Berne Convention of September 9, 1986. Consequently, the court extends to all materials properly copyrighted in Greece the protections of our Copyright Act. According to Antenna, all of television programming that is the subject of this action is properly copyrighted in Greece. (Xydias Affidavit, p. 2-4.)

In both its Complaint, and its submissions in support of default damages, Antenna alleges that each of the defendants knowingly infringed Antenna's copyrights in violation of 17 U.S.C. § 101 *et seq.* (Complaint, p. 3-9; Plaintiff's Memorandum of Law in Support of its Proof of Damages ("Memorandum"), p. 3-11.) Specifically, Plaintiff alleges that the Defendants were in possession of video cassettes containing a large number of episodes of at least 17 different television series, as well as other programming, all of which had been copied directly from Antenna's Greek broadcasts. (Memorandum at 6; Affidavit of Mary Politis, p. 3.) Antenna further alleges that Defendants were engaged in reproducing and distributing the copied cassettes for profit from as early as April 1991 to the present day. (Memorandum at 5-11; Memorandum, Exhibit H; Affidavit of Chris

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Carlos, p. 2; Affidavit of Marina Carlos, p. 2.)

The liability of defendants Aegean, Flair and Ditmars was established by the entry of the default judgment in favor of Plaintiff on August 15, 1995. The purpose of the present inquiry is to establish damages and the appropriateness of other relief. To support its claim of damages and other relief, Antenna marshals documentary evidence including copies of receipts, video cassette labels, and still color images of Antenna's programming produced from the infringing video cassettes. (Memorandum, Exhibits A-D, E, G, and I.) Antenna also submits an affidavit of its attorney, George J. Tsimis, ("Tsimis Affidavit") which details Mr. Tsimis' investigation of the activities of Aegean, Flair and Ditmars. On the basis of this evidence, and being presented with no evidence to contradict Antenna's allegations, I am satisfied that plaintiff Antenna suffered at least some damages as a result of the Defendants' infringing activities.

B. *Damages and Other Relief*

***3** In its Memorandum, Antenna argues that it is entitled to three forms of damages and two forms of equitable relief, as well as costs and pre-judgment interest on its damages awards. I will address each of these seven separate claims in turn. In addition, I will address the issue of statutory damages which was not raised by Antenna.

1. *Damages*

a.) *Plaintiff's Actual Damages*

Under 17 U.S.C. § 504(b), the owner of a copyright is "entitled to recover the actual damages suffered by him or her as a result of ... infringement...." Courts have adopted a wide range of methods by which to measure actual damages in copyright infringement actions, including the award of lost licensing fees as proposed here by the Plaintiff. *See Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* 754 F.2d 826, 827 (9th Cir.1985); 17 U.S.C.A. § 504 (Notes of Decisions 31-58). The measure of damages to be employed is "the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." *Business Trends Analysts, Inc. v. Freedonia Group, Inc.,* 700 F.Supp. 1213, 1232 (S.D.N.Y.1988), *aff'd in part, rev'd in part,* 887 F.2d 399 (2d Cir.1989), *citing Fitzgerald Publishing Co. v. Baylor Publishing Co.,* 807 F.2d 1110, 1118 (2d Cir.1986).

In the allocation of burdens under the actual damages provisions of § 504(b), traditional tort damages principles apply. "The plaintiff bears the burden of proving that the infringement was the cause of its loss of revenue." *Data General Corp. v. Grumman Systems Support Corp.,* 36 F.3d 1147, 1170 (1st Cir.1994), *citing Harper & Row, Publishers v. Nation Enters,* 471 U.S. 539, 567 (1985). Plaintiff must show that "the infringement was the cause-in-fact of its loss by showing with reasonable probability that, but for the defendant's infringement, the plaintiff would not have suffered the loss." *Data General, supra,* at 1171. Furthermore, the plaintiff must "prove that the infringement was a proximate cause of its loss by demonstrating that the existence and amount of loss was a natural and probable consequence of the infringement." *Id., citing Big Seven Music Corp. v. Lennon,* 554 F.2d 504, 509 (2d Cir.1977).

As proof of its actual damages, Antenna submits evidence of licensing agreements for satellite and cable transmission of Antenna's programming that it has negotiated with a non party, Antenna Satellite. (Supplemental Declaration of Costas Xydias, Esq., Exhibit B.) This evidence suggests a market value of $2500 to $5,000 for a license permitting a single satellite broadcast to North America of one episode of Antenna's television series. Antenna argues that, in infringing Antenna's copyrights, the Defendants avoided paying such licensing fees, and that, consequently, the lost fees should be the basis of Antenna's actual damages. (Memorandum at 16-17.) By applying the per-episode satellite licensing fees to the episodes that Antenna claims were copied and distributed by the Defendants, Antenna arrives at a proposed actual damages figure of $408,500.

***4** Plaintiff's argument is faulty in several, albeit partially related, respects. First, it is based on assumptions that a review of the record reveals to be either unsound or unsupported. Second, it draws inaccurate analogies. Finally, it misapplies the law of actual damages under § 504(b). I will address these faults in turn.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

First, Plaintiff's theory of recovery is based on the assumption that Antenna was involved in, or intended to enter, the business of granting licenses for video cassette distribution of its programming. The record reflects no such involvement or intention on the part of Antenna. While unauthorized distribution of cassettes may have reduced the market value of satellite and cable licenses for the same programming, the record reflects that non-party Antenna Satellite, and not Antenna, owned these rights. (Politis Affidavit at 2.) Consequently, such a reduction in value, if any in fact occurred, is irrelevant to Antenna's claim in this action.

Second, Antenna draws an unfounded analogy between a license to broadcast by satellite and a license to distribute video cassettes for home use. These different licenses do not grant identical rights. Since these licenses do not grant identical rights, it is possible, if not likely, that they have different market values. As noted above, the measure of actual damages for lost licensing fees can only be determined through an inquiry into the market value of those fees. *Business Trends Analysts, supra.* Documentary evidence pertaining to the value of satellite and cable transmission licenses that Antenna negotiated with Antenna Satellite is not probative of the market value of video distribution rights.

Finally, Antenna misstates the law of actual damages under § 504(b). The Plaintiff correctly states that it can recover both actual damages and the Defendant's profits from the infringing activity, 17 U.S.C. § 504(b), and that lost licensing fees can be the measure of actual damages. *Cream Records, supra; Kleier Advertising Co. v. James Miller Chevrolet, Inc.,* 722 F.Supp. 1544, 1545 (N.D.Ill.1989). However, this alone is not a complete statement of the law. As noted above, in awarding lost licensing fees, the court must gauge "the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." *Business Trends Analysts, supra. See also United States v. King Features Entertainment, Inc.,* 843 F.2d 394, 400 (9th Cir.1988).

Plaintiff does not address the issue of injured or destroyed value. Instead, it asserts that, simply because its copyrights were infringed upon, it is entitled to the full value of the licensing fee. It offers two cases in support of its position, *Cream Records, supra,* and *Kleier Advertising Co., supra.* While the court in *Cream Records* awarded lost licensing fees as actual damages, in that case there was testimony that the use of a well-know popular song in a nationally-broadcast television commercial destroys its value to other advertisers for that purpose. *Cream Records, supra,* at 827. Furthermore, in *Cream Records* there was a finding as to the market value of the licensing fees. *Id.* Finally, the court did not award the plaintiff the full value of its licensing fees, but rather pro-rated the actual damages to account for the short period in which the infringing activities took place. *Id.* The other case cited by the Plaintiff, *Kleier Advertising, supra,* states the general proposition that licensing fees can be awarded as actual damages, but it does not set out the precise manner in which the court calculated the lost fees, therefore it is of little use to me in determining Antenna's actual damages.

***5** As noted above, in this case, Plaintiff has offered no useful evidence of the market value of the video cassette distribution rights. Nor is there evidence that the value of a video distribution license for its television programming has been "destroyed", or that the Defendants' infringing activities have had the effect of eliminating any potential third party interest in video cassette distribution rights to Antenna's programming. Finally, there is no evidence that can be relied upon to establish the degree of diminution in the market value of the rights. In short, the Plaintiff has failed to provide me with the proof that I require to establish Plaintiff's damages with specificity.

In light of the above analysis, any award of actual damages based on Antenna's purported lost licensing fees would be speculative. The Second Circuit has stated that "[i]n reviewing an award made under § 504(b), we must ... ensure that it was not based on undue speculation...." *Abeshouse v. Ultragraphics, Inc.,* 754 F.2d 467, 470 (2d Cir.1985). In that case, the plaintiff-appellee, the owner of a copyright on a poster, had an exclusive distribution agreement with the defendant-appellant. The court found that an award based on what the plaintiffs could have made had they produced and sold the poster directly to the American and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

overseas public to be unduly speculative.

> Appellees failed to present any evidence that ... they would have been allowed [under the distribution agreement] to make direct sales themselves, or that, ... they would have been equipped to do so. Similarly, appellees failed to offer any evidence suggesting that they may have done business in foreign markets.

*Abeshouse,* at 471. *See also Stevens Linen Associates v. Mastercraft Corp.,* 656 F.2d 11, 14-15 (2d Cir.1981). Similarly, in *Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.,* 978 F.2d 430, 432 (8th Cir.1992), where the plaintiff claimed that it would have sold architectural plans for $20,000, and there was no evidence in the record as to, *inter alia,* the plaintiff's profit margin or the potential buyer's willingness to pay $20,000 for the plans, the court denied the award on the grounds that it was speculative. As in these cases, Plaintiff's theory of actual damages is overly speculative, and thus its claim should be denied.

b.) *Defendants' Profits from the Infringing Activity*

In addition to actual damages, under 17 U.S.C. § 504(b), the owner of a copyright is "entitled to recover ... any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." It is firmly established that an award consisting of both actual damages and defendant's profits does not constitute double recovery, provided that, in calculating the award of defendant's lost profits, the court subtract any amount directly related to and already accounted for in the actual damages award. *Abeshouse, supra,* at 470.

***6** In addition to providing for two types of damages, § 504(b) also defines and allocates the burdens of the respective parties on the issue of proving defendant's profits. The second sentence of § 504(b) provides that

> [i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses, and the element of profit attributable to factors other than the copyrighted work.

The courts have interpreted this provision to mean that the plaintiff in a copyright infringement case has the burden of establishing the *gross receipts from the defendant's infringing use of the copyright,* and that the defendant has burden of establishing any deductions from this figure to which it is entitled. *Abeshouse, supra,* at 470; *Cream Records, supra,* at 828; *Russell v. Price,* 612 F.2d 1123, 1130-31 (9th Cir.), *cert. denied sub nom. Drebin v. Russell,* 446 U.S. 952 (1980).

In the instant case, the Plaintiff, by introducing evidence of the Defendants' bank deposits during the relevant period, has established Defendants' *gross receipts from all of Defendants' business activities* instead of the more discrete figure of *gross receipts from Defendants' infringing use of the copyright.* The presumably larger *gross receipts from all of Defendants' business activities* figure is of no use to the court in determining the Defendants' profits from the infringing activities.

Plaintiff argues that, because of the Defendants' failure to provide sufficient records in response to Plaintiff's subpoena of October 10, 1995, the larger *gross receipts from all of Defendants' business activities* figure should be adopted by the court as the basis for the Defendants' profits award. (Memorandum at 18-20.) However, such an approach would go counter to established precedent. For example, in *Cream Records,* the court, in interpreting the second sentence of § 504(b), makes clear that *gross receipts from the defendant's infringing use of the copyright* is the point of departure for the defendant's profits calculation.

> [W]here it is clear ... that not all of the profits are attributable to the infringing material, *the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements.* "In cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division may rationally be used as a springboard it is the duty of the court to make some apportionment."

*Cream Records, supra,* at 828-29 (emphasis added), *quoting Orgel v. Clark Boardman Co.,* 301 F.2d 119, 121 (2d Cir.), *cert. denied,* 371 U.S. 817 (1962). The *Cream Records* court goes on to quote

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Learned Hand who addressed the same issue under a similar provision in the now-repealed Copyright Act of 1909:

> *7 [W]e are resolved to avoid the one certainly unjust course of giving the plaintiffs everything, because the defendants cannot with certainty compute their own share. In cases where plaintiffs fail to prove their damages exactly, we often make the best estimate we can, even though it is really no more than a guess [citation omitted], and under the guise of resolving all doubts against the defendants we will not deny the one fact that stands undoubted.

*Cream Records, supra,* at 829, *quoting Sheldon v. Metro-Goldwyn Pictures, Corp.,* 106 F.2d 45, 51 (2d Cir.1939), *aff'd,* 309 U.S. 390 (1940).

Nor do the cases that the Plaintiff cites to support its claim explicitly state the proposition that a defendant's *gross receipts from all of Defendants' business activities* should be the starting point for determining an award based on defendant's profits.
In *Business Trends Analysts, supra,* at 1237-41, the plaintiff seeks to recover the profits realized by defendant when defendant sold a report containing plaintiff's copyrighted material. Antenna is correct in saying that the *Business Trends Analysts* court states the general proposition that "[a] defendant who is responsible for the blending of the lawful with the unlawful, where it is impossible to separate the profits of the one from the profits of the other, shall not be heard to complain when all the profits are handed over to the plaintiff." *Id.* at 1241, *citing Sheldon, supra,* 309 U.S. at 401-402. However, Antenna fails to mention that it is clear from language in the opinion that immediately precedes the above proposition that the court was not considering the question of whether to award plaintiff the defendant's gross receipts for all of its business activities, but rather the more narrow issue of what portion of defendant's profits from the sale of the report were attributable to the infringing aspects of the report. "The Court has found a broad infringing character throughout defendant's report.
It cannot sensibly and responsibly extricate the gold from the dross, and in so doing assign a reasonable value to the dross." *Business Trends Analysts, supra,* 700 F.Supp. at 1241.

Antenna's reliance on *Dolori Fabrics, Inc. v. The Limited, Inc.,* 662 F.Supp. 1347 (S.D.N.Y.1987), is similarly misplaced. Plaintiff argues that *Dolori Fabrics* stands for the proposition that "[w]here the computation of profits is uncertain due to the failure of the defendant to keep adequate records of costs, any doubt in the evidence will be resolved in favor of the plaintiff." *Dolori Fabrics* at 1356, *citing* 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.01[A] at 14-4. Yet, as in *Business Trends Analysts,* it is clear from the context in *Dolori Fabrics* that the court was considering not the question of whether to base an award on the sum total of the defendant's business activities, but rather the more discrete question of how many copyright infringing dresses were produced and sold by the defendant.

***8** There may be some merit to Antenna's argument that the Defendants' failure to provide a complete response to Plaintiff's subpoena prevents the court from making a "rational division" between Defendants' gross profits and those attributable to the Defendants' infringing activities. Nevertheless, Antenna fails to convince me that, on this basis alone, I should recommend as an award of Defendants' profits a sum equal to all of the deposits made in the respective defendants' bank accounts during the infringing period.

c.) *Punitive Damages*

In addition to actual damages and Defendants' profits, Antenna asks that the court assess punitive damages against the Defendants. In support of its request for punitive damages, the Plaintiff cites *Smith v. Little, Brown & Co.,* 273 F.Supp. 870 (S.D.N.Y.1967), *aff'd,* 396 F.2d 150 (2d Cir.1968), a case in which the court declined to grant punitive damages. (Memorandum at 23- 25.)

In basing its argument on *Little, Brown & Co.,* the Plaintiff relies on old law. In that case, the court restates the common law proposition that punitive damages in copyright infringement actions are only to be awarded in "extreme cases." *Id.* at 874. In presenting its analysis, the *Little, Brown & Co.* court cites one, very early copyright case where punitive damages were awarded, *Press Pub. Co. v. Monroe,* 73 Fed. 196 (2d Cir.), *appeal dismissed,* 164 U.S. 105 (1896), and two somewhat more contemporary cases where such damages were

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

denied. *Szekely v. Eagle Lion Films,* 140 F.Supp. 843 (S.D.N.Y.1956), *aff'd,* 242 F.2d 266 (2d Cir.), *cert. denied,* 354 U.S. 922 (1957) and *Nash v. Alaskan Airlines,* 94 F.Supp. 428 (S.D.N.Y.1950).

A review of more recent case law on this issue reveals that punitive damages are not available in statutory copyright infringement actions. *Oboler v. Goldin,* 714 F.2d 211, 213 (2d Cir.1983), *citing* 3 M. Nimmer, *supra,* § 14.02, at 14-12; *Sygma Photo News, Inc. v. Globe Int., Inc.,* 616 F.Supp. 1153, 1158 (S.D.N.Y.1985); *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 38 (S.D.N.Y.1992), *affd,* 23 F.3d 398 (2d Cir.), *cert. denied,* 115 S.Ct. 365 (1994). [FN2] To the extent that Congress intended the Copyright Act to contain provisions for punitive damages, such provisions are found in the statutory damages sections of the Act, and not in its general damages provisions. *See* 17 U.S.C. § 504(a)-(c), *infra.* Consequently, Antenna's request for separate punitive damages should be denied.

FN2. The *L.L. Cool J.* court provides insight into the evolution of the law on the issue of punitive damages in New York copyright cases.
Punitive damages were formerly available for common law copyright infringement. *Smith v. Little, Brown & Co.,* 396 F.2d 150, 151 (2d Cir.1968). Federal statutory copyright law, however, has preempted state law causes of action for copyright infringement. 17 U.S.C. § 301. Punitive damages, therefore, are unavailable on this copyright claim. Some New York business torts have escaped preemption by federal copyright law. *Warner Bros. v. ABC, Inc.,* 720 F.2d 231, 247 (2d Cir.1983) (although the misappropriation branch of unfair competition is preempted, the tort of "passing off" is not). Punitive damages are available in some instances under these torts. *See Murphy Door Bed Co. v. Interior Sleep Sys.,* 874 F.2d 95, 103-04 (2d Cir.1989).
*Kelly v. L.L. Cool J.,* 145 F.R.D. at 38 (footnote).

d.) *Statutory Damages*

i.) Basis for Statutory Damages

Section 504(c)(1)-(2) of the Copyright Act provides for statutory damages in lieu of an award based on plaintiff's actual damages or defendant's profits. Statutory damages under the Copyright Act have been construed as having two separate purposes: "[s]tatutory damages are available in order to effectuate two purposes underlying the remedial provisions of the Copyright Act: to provide adequate compensation to the copyright holder and to deter infringement." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 886 F.2d 1545, 1554 (9th Cir.1989), *cert. denied,* 494 U.S. 1017 (1990), *citing Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 772 F.2d 505 (9th Cir.1985) and *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228 (1952).

***9** The language of § 504(c)(1) suggests that, if statutory damages are to be awarded, it is only at the request of the copyright owner: "[t]he *copyright owner may elect,* at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages...." (emphasis added). The election provisions of § 504(c)(1) notwithstanding, where the copyright owner has demonstrated liability but failed to prove actual damages or defendant's profits, a court, acting on its own initiative, can grant an "in lieu" award of statutory damages. In the Ninth Circuit an "in lieu" award is mandatory. "If neither profits nor actual damages are ascertained, then ... the award of statutory 'in lieu' damages is mandatory, although the amount of such recovery remains discretionary." *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1179 (9th Cir.1977), *citing, Shapiro, Bernstein & Co. v. 4636 S. Vermont Ave., Inc.,* 367 F.2d 236 (9th Cir.1966) (dictum). *See also Russell v. Price, supra,* 612 F.2d at 1129-30; *Pye v. Mitchell,* 574 F.2d 476, 481 (9th Cir.1978). Courts in other circuits hold that, where actual damages and defendant's profits are not ascertained, the court may, but is not required to, award statutory damages. *Blackman v. Hustler Magazine, Inc.,* 800 F.2d 1160, 1163 (D.C.Cir.1986). *See also Superhype Publishing, Inc. v. Vasiliou,* 838 F.Supp. 1220, 1226 (S.D.Ohio 1993).

In this case, Antenna has not specifically requested

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

statutory damages. However, it has failed to prove with sufficient specificity either actual damages or Defendants' profits. Therefore, under the above interpretations of § 504(c), this court is either empowered or required to grant an "in lieu" statutory damages award.

While Antenna failed to present sufficient evidence to support awards for actual damages or profits, it has nonetheless established that Defendants Aegean and Flair did, to at least some extent, infringe upon Antenna's copyrights. Antenna should not bear the burden of such infringement without compensation, nor should defendants Aegean and Flair escape the consequences of their unlawful actions. *Frank Music Corp., supra.* Therefore, I recommend that the court assess statutory damages in Antenna's favor against defendants Aegean and Flair.

ii.) Computation of Statutory Damages

Under § 504(c)(1) of the Copyright Act, the court, as it considers just, may impose statutory damages ranging from $500 to $20,000 for each infringement involved in the action. Where the copyright owner demonstrates that the infringement was willful, the court in its discretion may increase the statutory damages award to a sum not greater than $100,000 per infringement. 17 U.S.C. § 504(c)(2). Similarly, where the infringer demonstrates that he or she was not aware and had no reason to believe that his or her acts constituted an infringement, the court in its discretion may reduce the award to a sum not less than $200 per infringement. *Id.*

***10** In fashioning an award of statutory damages, the district court is entitled to exercise its discretion. "The [district] court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *International Korwin Corp. v. Kowalczyk,* 855 F.2d 375, 383 (7th Cir.1988), *citing Harris v. Emus Records Corp.,* 734 F.2d 1329 (9th Cir.1984), *citing L.A. Westermann Co. v. Dispatch Printing Co.,* 249 U.S. 100 (1919). A district court's award of statutory damages is reviewed on an abuse of discretion standard. *Douglas v. Cunningham,* 294 U.S. 207 (1935). *See also International Korwin Corp., supra.*

Since the question of wilfulness *vel non* of the Defendants can be relevant to the determination of a statutory damages award, I will address that issue here. In the Second Circuit, " 'willfulness' in the context of § 504 [has been defined as] a defendant's actual or constructive knowledge 'that its actions constitute an infringement.' " *Branch v. Ogilvy & Mather,* 772 F.Supp. 1359, 1364 (S.D.N.Y.1991), *citing Fitzgerald Pub. Co. v. Baylor Pub. Co.,* 807 F.2d 1110, 1115 (2d Cir.1986). "[I]n order to prove willfulness, a plaintiff must show that the defendant knew or should have known that its conduct constituted copyright infringement." *Ogilvy & Mather,* 772 F.Supp. at 1364.

Plaintiff has not established to my satisfaction that Defendants had actual or constructive knowledge that their activities constituted infringement. Admittedly, several of Plaintiff's factual contentions might be construed in such a way as to support an inference of willfulness. For example, Plaintiff presents documentary evidence to support its contention that the subject television programs were recorded directly from its Greek broadcasts, and that the origin of the recorded programs was unambiguous to anyone viewing the material. In color reproductions purportedly made from video cassettes being sold and rented by Aegean, the "Antenna 1" logo figures prominently in the upper left hand corner of the image. (Memorandum, Exhibit E). Similarly, Antenna provides the court with images taken directly from video cassettes being sold or rented by Aegean which depict the prominent display of copyright notices against an "Antenna 1" background. *Id.* On the other hand, there is no indication that, prior to the commencement of Antenna's investigation in March 1995, the Defendants were on notice that their activity constituted infringement.

I cannot conclude on the basis of this evidence alone that Aegean or Flair had actual or constructive knowledge of the infringing quality of their actions. Therefore, a maximum per violation statutory damages award of $20,000 should apply. 17 U.S.C. § 504(c)(1)-(2). Nor does any evidence before me permit an inference that Defendants were unaware or had no reason to believe that they were infringing upon Antenna's copyrights. Therefore, the minimum per violation statutory award should not be less than $500. *Id.*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

iii.) Number of Infringements

***11** Since the prevailing plaintiff is entitled to a separate statutory damages award for each infringement committed by the Defendants, the court must determine the total number of infringements and their distribution between the parties. Under earlier versions of the Copyright Act, damages were awarded for "each infringement which was separate." *Twin Peaks Productions v. Publications Int., Ltd.,* 996 F.2d 1366, 1381 (2d Cir.1993), *citing Robert Stigwood Group, Ltd. v. O'Reilly,* 530 F.2d 1096 (2d Cir.), *cert. denied* 429 U.S. 848 (1976). Under the current version of the statute, however, "the unit of damages inquiry" shifts "from the number of infringements to the number of works [infringed upon]." *Id.* To determine the number of violations, therefore, the court need only sum the number of separate, individual works which were the subject of a defendant's infringing activities.

In this case, the works in question are either television programs or individual episodes of ongoing television series. In *Twin Peaks Productions,* the court defined the meaning of the term "work" in the context of television series. In that case, the court considered the question of whether the publication and distribution of a book based on eight separate but related television episodes constituted one or eight instances of copyright infringement. 996 F.2d at 1381. The court concluded that, even though the separate episodes were based on a single, continuous plot line, there was also evidence that the episodes were individually written, so the acts of the defendant constituted eight infringements. *Id.* In *Gamma Audio & Video, Inc. v. Ean-Chea,* 11 F.3d 1106, 1116-17 (1st Cir.1993), the First Circuit overruled a district court determination that four episodes of a television series that were distributed as a package and registered on the same copyright registration form constituted one work. Basing its analysis on *Twin Peaks Productions, supra,* and an economic-based inquiry of whether the individual episodes could "live on their own copyright life", *Walt Disney Co. v. Powell,* 897 F.2d 565, 569 (D.C.Cir.1990), the *Gamma Audio* court concluded that each episode was an individually protected work.

The vast majority of the work infringed upon in this case closely resembles the subject works in *Twin Peaks Productions* and *Gamma Audio,* namely television series presented in an episode format. [FN3] Accordingly, I find that, for the purpose of calculating statutory damages, each episode of Antenna's series represents one protected work.

FN3. Antenna also presents evidence that suggests that the Defendants infringed upon programming that might not be characterized as being in a series format, such as "Music from Diogenes Palace" (presumably a broadcast of a special event) and "The Harry Klynn Show (presumably a variety or other type of hosted show). Since Antenna's submissions do not provide details on the nature or format of these programs, I am inclined to treat each of these programs as single works for the purposes of § 504(c).

Antenna contends that defendant Aegean infringed upon Antenna's copyrights with respect to 79 of Antenna's works, (Memorandum at 10 and 13, Tsimis Affidavit at 7), and that defendant Flair infringed upon Antenna's copyrights with respect to 34 of Antenna's works. (Memorandum at 13, Tsimis Affidavit at 7.) According to Plaintiff's submissions, Flair's infringements are co-extensive with those of Aegean. In other words, all 34 episodes rented and sold by Flair were also rented and sold by Aegean.

***12** As noted at the outset, the precise relationship between Aegean and Flair is unclear. Plaintiff's submissions characterize Flair as either a predecessor company to Aegean, or as a related company. However, in the absence of evidence showing that Aegean and Flair are, in fact, one legal entity, I will treat them as separate entities, and recommend the granting of separate awards for each of Flair's and Aegean's infringements, whether redundant or not. This aspect of the recommended award will be subject to revision upon a clear demonstration supported by documentary evidence that Aegean and Flair are, in fact, the same legal entity. Such evidence is to be provided to the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

undersigned by the Defendants before the expiration of the objection period indicated in the conclusion of this report.

In accordance with the above findings, I recommend that the court impose the minimum award of $500 per violation. Applied to Aegean's 79 infringements, this figure results in an award of $39,500. Applied to Flair's 34 infringements, this figure results in an award of $17,000. These awards, while substantially less than the sum sought by Plaintiff, are, under the circumstances, sufficient to accomplish the purpose of the Copyright Act, namely "to provide adequate compensation to the copyright holder and to deter infringement." *Frank Music Corp., supra,* 886 F.2d at 1554.

iv.) Joint and Several Liability

The Second Circuit has explicitly held that, where the infringement activity is attributable to the joint action of two or more parties, liability under § 504(c) is both joint and several. *Fitzgerald Pub. Co., supra,* at 1116, *citing Abeshouse, supra,* 754 F.2d at 472 and *MCA, Inc. v. Wilson,* 677 F.2d 180 (2d Cir.1981). As noted above, the precise relationship between Aegean and Flair is unclear. Since the relationship between Aegean and Flair is unclear, and since no proof of joint action has been presented to the court, I would recommend that Aegean's and Flair's liability be several but not joint.

2. *Other Relief*

a.) *Permanent Injunction*

Antenna requests that the court invoke its authority granted under § 502 of the Copyright Act to prevent the Defendants from continuing to infringing Antenna's copyrights. (Memorandum at 21-22.) Under § 502, the court is empowered to issue temporary and permanent injunctive relief to prevent or restrain such infringement.

The test for a permanent injunction under § 502 is straightforward: "[g]enerally, a plaintiff is entitled to a permanent injunction in a copyright action when liability has been established and there is a threat of continuing violations." *Encyclopaedia Britannica Educational v. C.N. Crooks,* 542 F.Supp. 1156, 1187 (W.D.N.Y.1982), *citing Universal City Studios, Inc. v. Sony Corporation of America,* 659 F.2d 963, 976 (9th Cir.1982), *rev'd on other grounds,* 464 U.S. 417 (1984); 3 M. Nimmer, *supra,* § 14.06(B) at 14-53-14- 54; *See also Walt Disney Co. v. Powell,* 897 F.2d 565, 567-68 (D.C.Cir.1990); *Central Point Software v. Global Software & Accessories, Inc.,* 880 F.Supp. 957, 966 (E.D.N.Y.1995). As with any request for injunctive relief, the party seeking an injunction in a copyright case must show both irreparable injury and the inadequacy of legal remedies. *Kwitny v. City of New York,* 772 F.Supp. 1367, 1375 (S.D.N.Y.1991), *aff'd,* 963 F.2d 1521 (2d Cir.), *cert. denied,* 506 U.S. 862 (1992).

***13** In the present case, liability has been established through the entry of a default judgment in favor of the Plaintiff. As to the issue of continuing violations, Plaintiff documents a lively trade in illegally copied video cassettes from as early as 1991 until at least the spring of 1995. Furthermore, Defendants' failure to appear in this case might suggest that they are unaware of the legal significance of their infringing acts. Or it might instead suggest that the Defendants, while aware of the legal significance of their infringing acts, choose not to subject themselves to the court's jurisdiction in this matter. Under either analysis, the threat of future infringements is substantial.

Antenna presents evidence that purchasers of Aegean's infringing cassettes were offended by the poor technical quality of the video image. (Carlos Affidavits.) Further distribution of poor quality video cassettes containing Antenna's programming could damage Antenna's reputation as a producer and distributor of television programming. Such damage to reputation constitutes irreparable injury that justifies the granting of equitable relief. *See Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 206- 207 (2d Cir.1979) , *Gilliam v. American Broadcasting Company, Inc.,* 538 F.2d 14, 18 (2d Cir.1976), *Upjohn Co. v. American Home Prod. Corp.,* 598 F.Supp. 550, 555 (S.D.N.Y.1984), *Coca-Cola Co. v. Gemini Rising, Inc.,* 346 F.Supp. 1183, 1189 (E.D.N.Y.1972).

Since liability has been established and the threat of future infringements is substantial, and since such infringement, were it to occur, would effect an irreparable injury to Plaintiff that would not be fully remedied by damages at law, Antenna has

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

demonstrated that it is entitled to an injunction. Accordingly, Antenna's request for a permanent injunction enjoining defendants Aegean, Flair and Ditmars from directly or indirectly infringing Plaintiff's copyrights in the future should be granted.

b.) *Destruction or Other Disposition of the Infringing Articles*

Antenna also requests that the court invoke § 503 of the Copyright Act to require the Defendants to destroy any material in their possession which infringes on Antenna's copyrights. Under § 503, the court is empowered to "order the destruction or other reasonable disposition of all copies ... found to have been made or used in violation of the copyright owner's exclusive rights,...."

Whether to order destruction of infringing material is a matter that lies within the discretion of the court. *RSO Records v. Peri,* 596 F.Supp. 849, 863 (S.D.N.Y.1984), *citing Martin Luther King, Jr. Center for Social Change, Inc. v. American Heritage Products, Inc.,* 508 F.Supp. 854, 861 (N.D.Ga.1981), *rev'd on other grounds,* 694 F.2d 674 (11th Cir.1983); *New Era Publications Int'l. v. Henry Holt & Co.,* 873 F.2d 576 (2d Cir.), *reh'g en banc denied,* 884 F.2d 659 (2d Cir.1989), *cert. denied,* 493 U.S. 1094 (1990). As noted in the previous section, the traditional rules of injunctive relief apply to a request for destruction of infringing materials. *Kwitny, supra,* at 1375. Where a court seeks to prevent future infringements, an order requiring destruction of an unlawful inventory is particularly appropriate. *C.f. Worlds of Wonder, Inc. v. Vector Intercontinental, Inc.,* 1 U.S.P.Q.2d 1982 (N.D.Ohio 1986).

***14** I find that the video cassettes containing unauthorized copies of Antenna's programming that are in the possession of the Defendants are likely to be used in the future for further infringing activities, and that such use may cause irreparable injury that cannot be adequately addressed by means of legal remedies. *See* Section B.)2.)a.), *supra.* Furthermore, I find that these copied cassettes would have no use other than for unlawful, infringing purposes. *C.f. RSO Records, supra,* 596 F.Supp. at 864. Consequently, I would respectfully recommend that the court order the destruction of these cassettes. Additionally, I would recommend that such destruction take place without delay, that each of the respective defendants bear the costs associated with the destruction and disposal of the infringing materials in its possession, and that Plaintiff be permitted to observe and verify the destruction by each of the defendants.

c.) *Costs*

Plaintiff seeks to recover from the Defendants the costs incurred in prosecuting this copyright infringement action. (Memorandum at 26.) Plaintiff has supported this application with both an affidavit and a schedule of expenses. (Tsimis Affidavit at 12-13; Memorandum, Exhibit S.) Plaintiff has not, by its instant motion, sought an award of attorneys' fees.

Under § 505 of the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party.... [T]he court may also award a reasonable attorney's fee to the prevailing party...." Although not required to do so, *Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc.,* 30 F.3d 503, 507 (4th Cir.1994), courts routinely award costs to the prevailing party in copyright cases. *Blendingwell Music, Inc. v. Moor-Law, Inc.,* 612 F.Supp. 474, 486 (D.Del.1985), *citing Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288, 1297-98 (D.R.I.1982).

I see no reason to depart from this practice. However, given that Antenna intends to submit a supplemental proof of damages as to defendant Ditmars, Antenna is likely to incur additional costs in this action. To promote efficiency, reduce confusion, and permit the allocation of costs between the Defendants, I recommend that the court defer ruling on the current application, and that the Plaintiff be ordered to submit one single proof of costs when it submits its supplemental proof of damages as to defendant Ditmars.

d.) *Pre-Judgment Interest*

Plaintiff argues that it is entitled to pre-judgment interest on its damages claims. (Memorandum at 26-27.) As noted above, I recommend denial of Antenna's damages claims, but recommend awards of statutory damages in the amount of $39,500 and $17,000.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

The law on pre-judgment interest in Copyright Act cases is unsettled in this circuit. In its most recent decision involving this issue, the Second Circuit upheld a district court's denial of pre-judgment interest, but in so doing explicitly declined to rule on the appropriateness of such awards: "[w]e need not address the question of whether prejudgment interest is appropriate in copyright infringement cases generally, because here the district court did not abuse its discretion in declining to make an award." *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 569 (2d Cir.1994). Factors considered by the Second Circuit in its review of the district court's exercise of discretion included the size of the award and the plaintiff's willingness *vel non* to prosecute the action expeditiously.

***15** In a subsequent district court case, the district judge, while acknowledging that the law on pre-judgment interest remained unsettled in the Second Circuit, interpreted *In Design* as allowing her the discretion to make such awards:

> The issue of the permissibility of pre-judgment interest under the current Copyright Act, which neither expressly allows nor prohibits such an award, is unresolved in the Second Circuit. [Citing *In Design, supra.*] If such an award is permitted, the award of prejudgment interest is discretionary. [Citing *id.*]

*Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.*, 891 F.Supp. 935, 943-44 (S.D.N.Y.1995). While the *Softel* judge awarded pre-judgment interest to the plaintiff, she limited the award to the *actual damages* portion of plaintiff's claim. The rationale for the award cited in this case was plaintiff's loss of the use of the funds it would have received had the infringement not taken place. *Id.* at 944.

While the Second Circuit standards pertaining to awards of pre-judgment interest in copyright cases remain unclear, one point seems firmly established: awards of pre-judgment interest are discretionary. In considering the propriety of an award of pre-judgment interest in this case, I recommend that the court use its discretion and refrain from making such an award. [FN4]

FN4. In reaching the conclusion that the district court did not abuse its discretion, the *In Design* court considered, *inter alia,* the size of the award. 13 F.3d at 569. While the recommended award in this case is much smaller than that decreed in *In Design,* I feel safe in concluding that the defendants in this matter do not enjoy an economic position comparable to that of *In Design* defendant K-Mart. Consequently, the recommended award in this action is likely to be much more significant to Defendants than the larger award imposed by the *In Design* court was to K-Mart.

*CONCLUSION*

For the reasons set forth above it is the respectful recommendation of the undersigned that Plaintiff's requests for awards of actual damages, Defendants' profits, and punitive damages be denied. Additionally, I respectfully recommend that both Plaintiff's request for a permanent injunction and its request that the court order the destruction of the infringing materials in the possession of the Defendants be granted. Furthermore, I respectfully recommend that statutory damages in the amount of $39,500 be assessed against defendant Aegean, that statutory damages in the amount of $17,000 be assessed against defendant Flair, that Plaintiff's request for pre-judgment interest be denied, and that liability on these statutory awards be several but not joint. Finally, I respectfully recommend that Plaintiff's request for costs be granted, but that such an award be deferred until such time as Plaintiff supplements its proof of damages as to defendant Ditmars Video & Electronics.

Any objections to the recommendations contained herein must be filed with the Honorable Edward R. Korman on or before April 3, 1996. 28 U.S.C. § 636; Fed.R.Civ.P. 6, 72. Failure to object will preclude appellate review.

Brooklyn, New York

March 20, 1996

1996 WL 298252 (E.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works