UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Rottlund Company, Inc.,
d/b/a Rottlund Homes,
a Minnesota Corporation,

Plaintiff,

v.

Pinnacle Corporation,
d/b/a Town & Country Homes,
an Illinois Corporation,
et al.,

Defendants,

and,

Town & Country Homes, Inc.,
a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster
Architects & Planners of Iowa, Inc.,
an Iowa Corporation,

Third-Party Defendant.

Civil Action No. 01-CV-1980 DSD/SRN

**PINNACLE CORPORATION AND TOWN & COUNTRY HOMES, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING DAMAGES**

**(ORAL ARGUMENT REQUESTED)**

---

## INTRODUCTION

In an obvious attempt to inflate the apparent stakes of this litigation, Rottlund's claim for damages includes unsupported claims of "lost economic opportunity," claims for defendants' profits on unbuilt townhomes, claims for profits on non-accused products (whether built or unbuilt), and outrageous claims for lost licensing revenue totaling in excess of $350 million. Copyright

law, however, eliminates the vast majority of these unsupported claims and narrows the issues for trial.

## FACTUAL BACKGROUND

On June 11, 2002, TCM served Rottlund with Interrogatory No. 15, requesting that Rottlund "[d]escribe and itemize all alleged damages you are claiming in this matter; identify all persons with knowledge of such alleged damages; and identifying all documents relating or reflecting such alleged damages." (Affidavit of Darren Schwiebert in Support of Pinnacle Corporation and Town & Country Homes, Inc.'s Motion for Summary Judgment Regarding Damages ("Schwiebert Aff. Damages"), Ex. A). Rottlund has submitted three versions of its answer to this Interrogatory (Answer, Supplemental Answer, and Amended Supplemental Answer). (Schwiebert Aff. Damages, Ex. B).[1]

Rottlund's Amended Supplemental Answer does not "describe and itemize all alleged damages that [Rottlund] claims in this matter," nor does it "identify all documents relating to or reflecting such alleged damages." At most, Rottlund's Amended Supplemental Answer contains an incorporation of the "expert" reports of Melissa Snelson.[2] Thus, for the purposes of this

---

[1] Rottlund has still not provided the defendants with a signed version of the Amended Supplemental Answer as required by Rule 33(b)(2).

[2] Rottlund's citation to Rule 33 "business records" does not satisfy its obligation, as Rottlund failed to "specify, by category and location, the records from which answers to the interrogatories can be derived." (Advisory Committee Notes to 1980 Amended to Rule 33(c), subsequently renumbered to Rule 33(d) in the 1993 amendments.)

motion and any potential trial, the entirety of Rottlund's disclosure of its theory, itemization, and documentation is limited to Ms. Snelson's reports.

According to those reports, Rottlund alleges "actual damages" in the form of lost profits on Villa II town homes in the amount of $21,400,000 for Homestead Collection and Chateau Collection townhomes (including both built units and 309 unsold units), $1,800,000 in lost "licensing fees" for Pinnacle's Washington Square development, and $18,300,000 in "lost sales" of non-accused products in the developments containing the Homestead Collection and Chateau Collection. (Schwiebert Aff. Damages, Ex C at 2-6; Ex. D at 10). In addition, the reports allege $193,500,000 in alleged revenue for built and 309 unsold accused products and infringer's profits of $353,900,000 in total infringer's revenue, including 620 unsold products, and all of the non-alleged products in the developments containing the Homestead, Chateau, and Washington Square back-to-back products. (Schwiebert Aff. Damages, Ex C at 7-9).[3]

The reports do not contain any description or identification of allegations relating to statutory damages or attorney's fees.

## LEGAL STANDARD

Copyright damages may be recovered only if there is a "necessary, immediate and direct causal connection between the wrongdoing and the damages." *Big Seven Music Corp. v. Lennon*, 554 F.2d 504, 509 (2nd Cir.

[3] The entirety of Rottlund's description of its alleged damages against BSB is a single line indicating that BSB's expert admitted that BSB received approximately $180,000 net service charges from Town & Country. (Schwiebert Aff. Damages, Ex C at 10).

1977) (reversing lost profits copyright infringement award). Rottlund has the burden of meeting this standard for each type of damages that it alleges.

## A. THE COPYRIGHT STATUTE.

> Sec. 504. - Remedies for infringement: Damages and profits
> (a) In General. - Except as otherwise provided by this title, an infringer of copyright is liable for either -
> (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or
> (2) statutory damages, as provided by subsection (c).

17 U.S.C. § 504(a). Thus, Rottlund can recover actual damages and any additional profits by the defendants under 504(b) **or** statutory damages under 504(c), but not both. *See also* 17 U.S.C. § 504(c) ("the copyright owner may elect . . . to recover, **instead of actual damages and profits**, an award of statutory damages for all infringements involved in the action.") (emphasis added). Therefore, Rottlund must make the election as to whether it is seeking damages against TCM and Pinnacle under 504(b) or 504(c).

## B. STATUTORY DAMAGES.

> Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

17 U.S.C. § 504(c)(1).[4] Statutory damages (and attorney fees) are unavailable where the infringement commenced before registration of the copyright. 17 U.S.C. § 412(c); *see also Johnson v. Jones*, 149 F.3d 494, 505 (6th Cir. 1998). "Every court to consider this question has come to the same conclusion; namely, that infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting infringement occurs." *Johnson*, 149 F.3d at 506. Allegations of "willful" infringement require evidence that "the infringer is provided oral or written notice of its infringing conduct by the copyright owner. . . ." *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1021 (7th Cir. 1991).

### C. ACTUAL DAMAGES AND DEFENDANT'S PROFITS

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b). *Rainey*, 26 F. Supp. 2d at 972 ("[C]ourts have required that plaintiff introduce detailed evidence linking gross revenues to the infringement. In this case, plaintiff has failed to submit any credible evidence from which the fact finder could apportion profits attributable to the infringement.").

---

[4] "In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

"Actual damages are generally proven by showing loss in the fair market value of the copyright, which is typically measured by the profits of the copyright owner lost as a result of the infringement." *Rainey*, 26 F. Supp. 2d at 970 (citing *Data General v. Grumman Sys. Support*, 36 F.3d 1147 (1st Cir. 1994)). The burden is on the plaintiff to demonstrate that "but for the defendant's infringement, the plaintiff would not have suffered the loss." *Data General*, 36 F.3d at 1171; *see also Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 356 (S.D.N.Y. 2003); *Odegard Inc. v. Costikyan Classic Carpets, Inc.*, 963 F. Supp. 1328, 1340 (S.D.N.Y. 1997). "The plaintiff must also prove that the infringement was a proximate cause of its loss by demonstrating that the existence and amount of the loss was a natural and probable consequence of the infringement." *Data General*, 36 F.3d at 1171.

To recover defendant's profits, a copyright holder must establish "the existence of a casual link before indirect profits damages can be recovered." *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002). "The nexus requirement exists in both direct and indirect profits cases." *Andreas v. Volkswagen of America, Inc.*, 366 F.3d 789 (8th Cir. 2003). To survive summary judgment, "a copyright infringement plaintiff seeking to recover indirect profits damages under 17 U.S.C. § 504(b) must proffer some evidence to create a triable issue regarding whether the infringement at least partially caused the profits that the infringer generated as a result of the infringement." *Mackie*, 296 F.3d at 911; *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983); *Rainey v. Wayne*

*State University*, 26 F. Supp. 2d 963, 971 (E.D. Mich. 1998) ("Profits of the infringer may not be awarded where there is no rational basis for determining them. Damages must be based on credible evidence, not speculation.").

Double counting under both actual damages and defendant's profits is not permitted. 17 U.S.C. § 504(b); *see also Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*, 978 F.2d 430, 432 n.4 (8th Cir. 1992) ("In light of the separate award against McCamis and Smith for their profits, PAI's alleged actual damages obviously contain an element of the double counting prohibited by the plain language of § 504(b).") "Before profits of defendants attributable to the infringement may be awarded, however, plaintiff must show that those profits are not already included in any actual damages which are awarded." *Rainey*, 26 F. Supp. 2d at 970.

## ARGUMENT

### I. ROTTLUND'S STATUTORY DAMAGES AND ATTORNEY'S FEES CLAIMS ARE LIMITED AS A MATTER OF LAW.

Rottlund's alleges violation of three copyrights – the Villa II Rush Creek technical drawings (VAu 447-395), the Villa II Rush Creek architectural works (VAu 534-723), and the Reserve technical drawings (VAu 546-285). The copyright for Villa II Rush Creek technical drawings was registered on - June 22, 1999. The copyright for the Villa II architectural works was registered on January 7, 2002. The copyright for the Villa II Reserve technical drawings was registered on February 19, 2002.

Statutory damages and attorney fees are unavailable where the infringement commenced before registration of the copyright. 17 U.S.C. § 412(c); *see also M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1493 (11th Cir 1990); *Johnson v. Jones*, 149 F.3d 494, 505 (6th Cir. 1998).

**A. The Homestead Collection and Washington Square Back-to-Back Townhomes were "Commenced" Before Rottlund's Registration of its Copyrights.**

"Every court to consider this question has come to the same conclusion; namely, that infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting infringement occurs." *Johnson*, 149 F.3d at 506; *see also Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143 (5th Cir. 1992). For architectural copyright infringement, the first act in a series of acts to establish "commencement" is schematic design, not final construction drawings. *Cornerstone Home Builders, Inc. v. McAllister*, 311 F. Supp. 2d 1351, 1352 (M.D. Fla. 2004) ("Plaintiff's reasoning, however, is flawed because courts have found that the first steps of architectural infringement, including tracing architectural floor plans and re-labeling architectural drawings, commence the infringing conduct and not the completion of construction plans as Plaintiff indicates.").

BSB began its schematic design of the Homestead Collection for TCM on April 6, 1998. (Schwiebert Aff. Damages, Ex E). By the end of July, 1998, BSB had completed its schematic design and the Homestead Collection proceeded to the design development and construction document phases.

(Schwiebert Aff. Damages, Ex F). Thus, it is undeniable that "commencement" of the Homestead Collection occurred prior to August of 1998 – almost one year before the earliest registration of the three copyrights at issue.

Each subsequent Homestead Collection project was a result of a "jurisdictional transfer" of this work, and not starting a new architectural design from scratch. (Schwiebert Aff. Damages, Ex. G & Ex. H at 11 – 13). Similarly, Pinnacle's Washington Square back-to-back townhomes are a result of a jurisdictional transfer of the Homestead Collection to BSB of Illinois.[5] (Schwiebert Aff. Damages, Ex I at 49-50 & Ex. J). In fact, significantly <u>after</u> the commencement, the first set of actual drawings for the Homestead Collection are dated August 26, 1999. Rottlund cannot, as a matter of law, recover statutory damages or attorney fees for the alleged infringement of the Homestead Collection or the Washington Square back-to-back townhomes. *Johnson*, 149 F.3d at 505 ("Section 412(1), however, leaves no room for discretion, mandating that no attorney's fees or statutory damages be awarded so long as the infringement commenced before registration of the copyright.")

[5] Defendants are not asserting that the Washington Square back-to-back townhomes are the same as the Homestead Collection or that all of the Homestead Collection townhomes are identical. To the contrary, the undisputed testimony is that the Washington Square back-to-back contain a entirely different elevation. Rather, defendants contend that their architects "commenced" these architectural works at the time of the initial work on the Homestead Collection.

Rottlund alleges that the Chateau Collection infringes the three copyrights at issue because the Chateau Collection is the Homestead Collection. (Rottlund Mem. Opp. Def. Mot. Summary Judgment at 16) ("[T]he Chateau Collection design is nothing more than a slightly modified Homestead Collection design."). TCM disputes this allegation and, if correct, Rottlund has no basis for infringement by the Chateau and, thus, no basis for damages on these products. However, even if Rottlund proves its theory of liability for the Chateau Collection, Rottlund's liability theory would exclude statutory damages as the Homestead Collections was commenced prior to the registration of the three copyrights at issue.

**B. Rottlund Failed to Provide the Necessary Written Notice to Recover Damages for "Willful" Damages Under 504(c)(2).**

TCM never received written or oral notification of its allegedly infringing conduct from Rottlund. Thus, Rottlund cannot recover against TCM under 504(c)(2). *Video Views*, 925 F.2d at 1021 ("Willful" infringement requires evidence that "the infringer is provided oral or written notice of its infringing conduct <u>by the copyright owner</u>. . . .") (emphasis added).

Pinnacle did receive written notification from Rottlund. (Schwiebert Aff. Damages, Ex K). However, the notification does not contain allegations about Washington Square, the only Pinnacle product Rottlund now accuses of directly infringing it patents. *Video Views*, 925 F.2d at 1021(notification to defendant of alleged copyright infringement for other works insufficient to satisfy notice requirement).

**C. Rottlund's Statutory Damages are Limited to $90,000.**

For statutory damages, Rottlund may recover "with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c). Rottlund has alleged infringement of three works. Thus, the amount of statutory damages that the Court could award ranges from $2,250 to $90,000.

As recently explained by the First Circuit, "under § 504(c) the total number of 'awards' of statutory damages that a plaintiff may recover in any given action against a single defendant depends on the number of *works* that are infringed and the number of individually liable *infringers* and is unaffected by the number of *infringements* of those works." *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183 (1st Cir. 2004) (emphasis in original); *see also Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) ("Both the text of the Copyright Act and its legislative history make clear that statutory damages are to be calculated according to the number of works infringed, not the number of infringements.")

Thus, even if Rottlund can somehow overcome the "commenced before the registration" problem, the scope of statutory damages is limited as a matter of law.

## II. ROTTLUND HAS FAILED TO PROVIDE EVIDENCE TO SUPPORT ITS ACTUAL DAMAGES CLAIM.

### A. Rottlund Has Failed To Satisfy The "But For" Test For Actual Damages.

Rottlund has not identified a single lost sale as a result of TCM's construction of the Homestead Collection or Chateau Collection.[6] Rottlund has not alleged and has not identified any evidence to support a theory that TCM's Homestead Collection in Shakopee, for example, has resulted in lost sales of Villa II units in Chanhassen or elsewhere. Rottlund has failed to demonstrate that the "existence and amount" of Rottlund's unidentified lost sales was "a natural and probable consequence of [TCM's] infringement." *Data General*, 36 F.3d at 1171.

The undisputed evidence is that, with the exception of the Hollander Estate, Rottlund knew of but failed to bid on the land that was acquired by TCM where the Homestead Collection and Chateau Collection have been built. (Schwiebert Aff. Damages, Ex. L at 186-198). The undisputed evidence is that Rottlund elected not to revise its bid on the Hollander Property and was not even in the final round of bidding. (Schwiebert Aff. Damages, Ex. L at 199-201 & Ex. M). Thus, **but for** TCM's alleged infringement, Rottlund's sales would be the same. *See Pfanenstiel*, 978 F.2d at 432 ("Here, there is no evidence that M & S's infringing use of PAI's drawings in Kansas City deprived PAI of any business other than the infringing use itself."); *Odegard*, 963 F. Supp. at 1340 ("The plaintiff has failed to present any evidence,

[6] Rottlund does not allege actual damages in the form of lost sales against Pinnacle.

beyond mere assertion, that they would have made the sales for which the defendants took orders.").

Recognizing this obvious problem with Rottlund's damages model, Ms. Snelson abandoned the "actual lost sales" theory expressed in her reports and adopted a "lost economic opportunity" theory during her deposition. (Schwiebert Aff. Damages, Ex. N at 43-45). This theory does not satisfy the proximate cause burden of actual damages. *See Data General*, 36 F.3d at 1171. Moreover, this theory is not contained in Ms. Snelson's reports and, thus, not contained in Rottlund's description and itemization of alleged damages in response to Interrogatory No. 15. (Schwiebert Aff. Damages, Ex. B). At most, Ms. Snelson contends, based upon unsupported allegations by Rottlund personnel, that Rottlund <u>could</u> have seized this economic opportunity on other property near the areas where TCM built its accused products. (Schwiebert Aff. Damages, Ex. N at 52-56, 80-81, 90-91). This unsupported claim is insufficient to avoid summary judgment.

**B. Rottlund Has Failed To Establish Its Indirect Actual Damages Claim.**

In addition to claiming "lost economic opportunity" to build the Villa II in place of each Homestead Collection or Chateau Collection built by TCM, Rottlund alleges actual damages in the form of "lost economic opportunity" to build the other, non-alleged products contained in the same developments as the Homestead Collection and Chateau Collection. Rottlund has failed to satisfy its burden of establishing that <u>but for</u> TCM's accused Homestead

Collection and Chateau Collection, that Rottlund would have built all of the additional non-accused products. *Data General*, 36 F.3d at 1171 ("The plaintiff must also prove that the infringement was a proximate cause of its loss by demonstrating that the existence and amount of the loss was a natural and probable consequence of the infringement.").

In addition, Rottlund's actual damages claim requires that not only would Rottlund have recognized the "economic opportunity" and acted upon the "economic opportunity" at the same time as the existing Rottlund communities, but that Rottlund would have also somehow already built all of the accused and non-accused products within these developments. Rottlund has provided no evidence to support this outrageous claim.

**C. "Value-Of-Use" Or Reasonable Royalty Claim against Pinnacle.**

Rottlund alleges that it is entitled to actual damages from Pinnacle in the amount of $1,800,000 for "lost licensing fees." (Schwiebert Aff. Damages, Ex. D at 10). The sole basis for these alleged actual damages is Rottlund's contention that it would not have accepted less than Rottlund's own profit margin as a licensing fee for Pinnacle to build the back-to-back units in Washington Square. (Schwiebert Aff. Damages, Ex. N at 122-123, 135).

Rottlund's "what the owner would have charged" theory is insufficient, as a matter of law. Assuming that the "value-of-use" theory is adopted in the

Eighth Circuit,[7] establishing the actual damage in the form of lost "value-of-use" requires more than Rottlund alleges in this case. As explained by the Second Circuit in *On Davis*:

> We recognize that awarding the copyright owner the lost license fee can risk abuse. Once the defendant has infringed, the owner may claim unreasonable amounts as the license fee – to wit Davis's demand for an award of $2.5 million. The law therefore exacts that the amount of damages may not be based upon "undue speculation." **The question is not what the owner would have charged, but rather what is the fair market value**. In order to make out his claim that he suffered actual damage because of the infringer's failure to pay the fee, the owner must show that the thing taken had a fair market value.

*On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2nd Cir. 2001)(citations omitted) (emphasis added).

The only evidence regarding the fair market value of the copyrights at issue in a market where Rottlund was not, or no longer, building townhomes is the license agreement in Indiana. (Schwiebert Aff. Damages, Ex. O). Rottlund granted a royalty-free license agreement for the copyrights on the Villa II. (*Id.*) This makes economic sense because Rottlund was exiting this market. Similarly, because Rottlund does not compete in the Illinois market, it was reasonable for Rottlund to agree to a royalty amount substantially lower than its "entire profit margin." *See Baker*, 254 F. Supp. 2d at 358 ("However, reasonable licensee fee damages are not intended to be a windfall for a plaintiff. An indispensable component of a reasonable licensee fee is, quite obviously, that it be reasonable.")

---

[7] The Copyright Act does not explicitly provide for a "value-of-use" claim for damages. However, the "value-of-use" theory has been adopted by some Courts. *See* NIMMER ON COPYRIGHT, § 14.02[A][2].

Finally, to the extent that Rottlund recovers any of Pinnacle's actual profits for the Washington Square back-to-back townhomes, the amount of Pinnacle profits recovered must be reduced by any reasonable license fee awarded. *Id.* at 358 ("In the context of a damage award predicated on a reasonable license fee, the amount a plaintiff receives as a license fee for allowing a defendant to make the infringing sales necessarily overlaps with the profits the defendant receives from the same infringing sales. Thus, to the extent a plaintiff receives a license fee covering the infringing sales, the plaintiff cannot also recover the full amount of the defendant's profits from those same infringing sales." (citations omitted)).

## III. ROTTLUND FAILED TO PROVIDE EVIDENCE TO SUPPORT ITS DEFENDANT'S PROFITS CLAIM.

### A. Rottlund's Claim For Profits On Unsold Townhomes Is Unsupported.

Rottlund's damages theory includes TCM and Pinnacle "profits" on alleged townhomes that have not yet been built. As a threshold issue, these claimed "profits" do not yet exist. Rottlund cannot recover "profits" that were never actually earned by TCM or Pinnacle. Rottlund's theory is impermissible speculation that these sales will eventually occur. *See Rainey*, 26 F. Supp. 2d at 971 ("Profits of the infringer may not be awarded where there is no rational basis for determining them. Damages must be based on credible evidence, not speculation."). Several obvious events may prevent these townhomes from ever being built (such as an injunction in this case or the

decision by the defendants not to build the townhomes if liable for their profits).

Similarly, as discussed below, Rottlund claims "profits" damages for unbuilt non-townhome products in the developments where the accused products are built. For the same reason, the Court should exclude these allegations of "profits" from Rottlund's damages claim.

**B. Apportionment of the Profits on the Accused Townhomes.**

TCM and Pinnacle are entitled to a reduction in the damages at issue for "elements of the profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Excluding lot costs, common elements, generic features and exterior cost, the total pool for potential TCM profits on Homestead Collections is $2,251,000 and the total pool for potential TCM profits on end units is $1,139,000. (Schwiebert Aff. Damages, Ex. P at 54-58). Identification of specific individual elements would permit further apportionment of the profits to those specific individual elements. (*Id.* at 58-59).

In addition, Rottlund has admitted that it does not allege that the interior units of the accused products are substantially similar to the interior units of the Villa II. (Schwiebert Aff. Damages, Ex. Q at 903-906). Thus, the profits from the sale of the interior units is attributable to factors other than the copyrighted works and, as a matter of law, should be eliminated from the defendant's profits damages calculation. *Rainey*, 26 F. Supp. 2d at 972

("[C]ourts have required that plaintiff introduce detailed evidence linking gross revenues to the infringement. In this case, plaintiff has failed to submit any credible evidence from which the fact finder could apportion profits attributable to the infringement.").

**C. Rottlund Has Failed To Satisfy Its Burden For Defendant's Indirect Profits On Non-Infringing Products.**

In addition to profits on the accused back-to-back products, Rottlund seeks defendant's profits on all of the non-accused products in the same developments as the accused products. Rottlund has failed to demonstrate the required "nexus" between the infringement and these indirect profits. *See Andreas*, 336 F.3d at 796. As recently explained by the Ninth Circuit in *Mackie*:

> [A] district court must conduct a threshold inquiry into whether there is a legally sufficient casual link between the infringement and the subsequent indirect profits. Such an approach dovetails with common sense – there must first be a demonstration that the infringing acts had an effect on profits before the parties can wrangle about apportionment. To do otherwise would be inconsistent with both rudimentary principles of tort law, to which copyright is often analogized and our earlier holding in *Frank I*.

*Mackie*, 296 F.3d at 915

"Profits of the infringer may not be awarded where there is no rational basis for determining them. Damages must be based on credible evidence, not speculation." *Rainey*, 26 F. Supp. 2d at 971. The burden is upon the plaintiff to "establish some connection or relationship between the infringement and the profits [they] seek." *Andreas*, 336 F.3d at 799. ("It is

not enough to show an infringement and then seek all of the defendant's profits, from whatever source.") (citing *Taylor*, 712 F.2d at 1122); *see also Rainey*, 26 F. Supp. 2d at 972 ("[C]ourts have required that plaintiff introduce detailed evidence linking gross revenues to the infringement. In this case, plaintiff has failed to submit any credible evidence from which the fact finder could apportion profits attributable to the infringement.").

## CONCLUSION

Rottlund's claim for damages should be limited those portions of the end units with remaining fact questions about the profits attributable to the substantially similar objective details in the copyrights at issue or an amount not to exceed $90,000 for statutory damages.

Dated: August 3, 2004

s/Darren B. Schwiebert
Daniel J. Maertens (#188311)
Cynthia Jokela Moyer (#211229)
Darren B. Schwiebert (#0260642)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street #4000
Minneapolis, MN 55402
Tel. (612) 492-7312
Fax (612) 492-7077

ATTORNEYS FOR DEFENDANT TOWN & COUNTRY HOMES, INC.

- AND –

Edward F. Ryan
Christopher J. Murdoch
Matthew I. Farmer
**HOLLAND & KNIGHT LLP**
131 South Dearborn Street, 30th Fl.
Chicago, IL 60603
Telephone: (312) 263-3600
Facsimile: (312) 578-6666

David Donna (#163624)
**DONNA & DALY**
1460 Buffet Way, Suite 150
Eagan, MN 55121
Telephone: (651) 406-4242
Facsimile: (651) 406-4243

ATTORNEYS FOR DEFENDANT PINNACLE CORPORATION