UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Rottlund Company, Inc.,
d/b/a Rottlund Homes,
a Minnesota Corporation

Plaintiff,

vs.

Pinnacle Corporation,
d/b/a Town & County Homes,
an Illinois Corporation, and
Town & County Homes, Inc., a
Minnesota Corporation, Bloodgood Sharp
Buster Architects and Planners of Iowa,
Inc., an Iowa Corporation, and The
Bloodgood Group, Inc., an Iowa
Corporation

Defendants.

and

Town & County Homes, Inc., a
Minnesota Corporation,

Third-Party Plaintiff

vs.

Bloodgood Sharp Buster Architects and
Planners of Iowa, Inc., an Iowa
Corporation,

Third-Party Defendant.

No. 01-CV-1980 (DSD/SRN)

**DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS & PLANNERS OF IOWA, INC. AND THE BLOODGOOD GROUP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MAGISTRATE JUDGE NELSON'S JULY 13, 2004, REPORT AND RECOMMENDATION**

---

Defendants Bloodgood Sharp Buster Architects & Planners of Iowa, Inc. ("BSB"), and The Bloodgood Group, Inc. ("BGI"), submit this Memorandum of Law in support of Magistrate Judge Nelson's July 13, 2004, Report and Recommendation. Rottlund spends almost half its

brief outlining bitterly-contested "facts" which have no bearing on this Court's resolution of the single question of law posed: can BSB and BGI be found to be jointly and severally liable to Rottlund for profits earned by Defendants The Pinnacle Corporation ("Pinnacle") and Town & Country Homes ("TCM") when BSB and BGI are not practical partners with TCM and Pinnacle? Because the "facts" outlined by Rottlund are all in dispute, and because none of the facts has any bearing on this Court's resolution of that question, BSB and BGI will ignore these "facts" and focus, instead, on the law.

**I. NO COURT HAS EVER HELD CODEFENDANTS JOINTLY AND SEVERALLY LIABLE TO THE PLAINTIFF FOR EACH OTHER'S PROFITS FROM INFRINGEMENT IN THE ABSENCE OF A PRACTICAL PARTNERSHIP.**

Rottlund cites to, and relies on, five cases (although only one is actually discussed) to support its contention that Magistrate Judge Nelson erred in concluding that BSB and BGI cannot be held jointly and severally liable for profits earned by TCM and Pinnacle. When these cases are analyzed, however, it becomes clear that no court has ever held codefendants jointly and severally liable to the plaintiff for each other's profits in the absence of a practical partnership[1].

A. **The opinion of the court in Softel does not support Rottlund's position.**

In Softel, Inc. v. Dragon Medical and Scientific Communications Ltd., 1995 WL 606307 (S.D.N.Y. 1995)[2], Softel sued Dragon Medical and several of its employees for copyright infringement and theft of trade secrets. Id. at *1. The trial court held the defendants "jointly liable for the profits earned by defendant Dragon from the use of plaintiff's computer code." Id. The individual defendants appealed, and the court noted that "the general rule under copyright

[1] Magistrate Judge Nelson found, by Order dated July 11, 2003, that BSB and BGI were not practical partners with TCM and Pinnacle. Rottlund does not contest this finding.
[2] Rottlund neglects to include a copy of the opinion, as required. For the Court's convenience, a copy of the opinion is attached to this Memorandum.

law is that liability for illegal profit is several and not joint – that is, 'one defendant is not liable for the profit of another.'" Id. (quoting MCA, Inc. v. Wilson, 677 F.2d 180, 186 (2nd Cir. 1981)). The court went on to note that "there **may be** an exception to this general rule 'where the infringement was not innocent.'" Id. (emphasis added). However, the court stopped short of applying this possible exception, noting instead that "under the law of New York…an employee may be held jointly liable for the profits earned by the employer as a result of the employee's misappropriation of a trade secret. * * * Because the trade secret damages are coextensive with defendants' profits from copyright infringement, it is appropriate to apply New York law regarding trade secret misappropriation, and to hold Darsee and Dragon jointly liable for Dragon's profits from the trade secret misappropriation." Id. (citations omitted).

Thus, the Softel court did not base its finding of joint and several liability on the claimed non-innocent infringer exception (the court did not even confirm that such an exception existed); rather, the court determined that since the award of infringer's profits was coextensive with the award of profits due to trade secret misappropriation, and because all defendants were clearly jointly and severally liable for the trade secret profits, the court did not need to reach the question of joint and several liability for infringer's profits. Here, the only claims Rottlund makes against BSB and BGI are for copyright infringement; there are no claims of trade secret misappropriation. Furthermore, the finding of joint and several liability in Softel turned on an important fact not present here: the existence of an employer/employee relationship between the defendants. Once again, this ruling is inapposite to Rottlund's claim.

**B. The opinion of the court in Bull does not support Rottlund's position.**

In Bull HN Information Systems, Inc. v. American Express Bank Ltd., 1990 WL 48098 (S.D.N.Y. 1990)[3], Bull sued American Express for copyright violation and fraud in connection with American Express' alleged infringement on copyrights Bull held in certain computer software. Id. at 1. The matter came before the court on American Express' Rule 12(b)(6) motion to dismiss. American Express moved to dismiss Bull's allegations regarding joint and several liability for profits. The court approached this issue in the same manner as the courts cited above:

> As a general rule, a "co-infringer ordinarily may be held jointly liable only for the actual damages suffered by a plaintiff copyright holder, [but] not for the profits of his fellow infringers." * * * Exceptions to this rule apply (1) where the infringement was not innocent or (2) where the defendants engaged in a partnership, joint venture, or similar enterprise. Plaintiffs allegations…state a claim falling within either of these exceptions. * * * Consequently, [American Express'] motion to dismiss the damage claim…is denied.

Id. at *3. Rottlund may claim victory, for this is the only court to actually say that the non-innocent infringer exception might actually exist, but it is a hollow victory at best, for the court found that both exceptions were potentially applicable, and denied American Express' motion on that basis. As with all of the above courts, the Bull court did not *apply* the exception, therefore the case does not stand for the proposition for which Rottlund cites it. To the extent that the Bull court breaks new ground by stating that the non-innocent infringer exception exists (rather than speculating on its existence), it bears noting that the statement is unaccompanied by any analysis, or citations to any legal authority supporting that conclusion. As set forth on pages 8-10 of the Report and Recommendation, if one were to actually analyze the purpose and language set forth

[3] Rottlund also neglected to enclose a copy of this opinion. For the Court's convenience, a copy of the opinion is attached hereto.

in the Copyright Act, there is no basis to find that any such exception for non-innocent infringement exists.

**C. The opinion of the court in Abeshouse does not support Rottlund's position.**

In Abeshouse v. Ultragraphics, Inc., 754 F.2d 467 (2nd Cir. 1985), copyright holders Tevin and Matthew Abeshouse had created a poster which showed, in step-by-step detail, how to solve the Rubik's Cube. Id. at 469. The Abeshouses entered into a contract with Ultragraphics whereby Ultragraphics would distribute this poster in North America. Id. However, the relationship between the Abeshouses and Ultragraphics broke down, and Ultragraphics' president placed an order with a printer, codefendant Davisdon and McKirdy Co. ("D & M"), whereby D & M supplied Ultragraphics with "slightly modified" versions of the poster. Id. At trial, the jury found for the Abeshouses, and determined that Ultragraphics had made a profit of $37,268 from the infringement, D & M had made a profit of $2,441.53, and the Abeshouses had suffered actual damages of $18,100, for a total of $57,809.53. Id. at 470-471. The jury found Ultragraphics and D & M jointly and severally liable for this entire amount. Id. at 469.

D & M appealed the finding of joint and several liability, arguing that it should not be held jointly and severally liable with Ultragraphics for Ultragraphics' profits. The Second Circuit began its discussion of the issue by noting, of D & M's argument, "this argument is correct." Id. at 472. The court went on to note that the Copyright Act requires "no departure from the rule prevailing under the predecessor provision that a co-infringer ordinarily may be held jointly liable *only* for the actual damages suffered by a plaintiff copyright holder, *not* for the illegal profits of his fellow infringers." Id. (emphasis added) (citing MCA, Inc. v. Wilson, 677 F.2d 180, 186 (2nd Cir. 1981); Sammons v. Colonial Press, Inc., 126 F.2d 341, 344-47 (1st Cir. 1942)). The court went on to note that there "may be" an exception to this rule where the

infringement is not innocent. Id. However, the court reversed the jury's finding of joint and several liability. On the facts of the case, there was ample evidence to support a finding, by the jury, that the infringement was not innocent---after all, Ultragraphics possessed a copy of the protected work and contracted with D & M to produce a "slightly modified" version of the protected work. If the Second Circuit believed non-innocent infringement to be an exception to the general rule prohibiting joint and several liability for profits, as Rottlund argues the court did, why did it not take this opportunity to apply the exception and uphold the jury's verdict? The answer can be found in the plain language of the court's ruling: the court noted that there "may be" such an exception; not that there "was" such an exception, and not that the court agreed with such an exception. In short, the Abeshouse opinion does not support Rottlund's contention that such an exception exists, and the court's refusal to apply the exception, in a case where it would clearly be applicable and would allow the court to sustain a jury verdict, speaks volumes about what the Second Circuit thinks about the exception.

**D. The opinion of the court in Harris does not support Rottlund's position.**

In Harris v. Miller, 50 U.S.P.Q. 625 (S.D.N.Y. 1941), defendants Gilbert Miller, Norman Marshall, Heron Productions, Inc., Sewell Stokes and Leslie Stokes were all involved in staging a play that was found to infringe on one of plaintiff's copyrights. In awarding damages, the court found that:

> The act of infringement of the defendants was the production of the play, which I have found has a joint venture of Miller, Marshall and Heron Productions Inc. and therefore each of said defendants is not only severally liable for his own share of the profits of the joint venture, but is also jointly liable for what each of the others received as a share of the profits. I believe that this is the rule even where the joint venturers were innocent infringers. In the production of the play the defendants, Miller, Marshall and Heron Productions Inc., were in effect partners. The Stokes brothers aided and abetted in the production of the play by furnishing the use of the infringing manuscript for which they received a royalty. They are jointly liable with the other defendants for plaintiff's damages. The Stokes

> brothers are also jointly and severally liable for what they themselves received from the production of the play.

Harris, 50 U.S.P.Q. at page 2. Thus, Miller, Marshall and Heron were jointly and severally liable for their profits because they were partners. Sewell and Leslie Stokes were, as between themselves, jointly and severally liable for their own profits. But the court *did not* hold the Stokes' jointly and severally liable for the profits of the Miller, Marshall, Heron group, nor did the court hold the Miller, Marshall, Heron group jointly and severally liable for the Stokes' profits. The court did this despite the fact that it found that the Stokes brothers "were not innocent infringers." Harris, 50 U.S.P.Q. at page 2. Thus, to the extent that Harris has any application in this case, it weighs *against* holding BSB and BGI jointly and severally liable for TCM and Pinnacle's profits.

**E. The opinion of the court in Belford does not support Rottlund's position.**

In Belford, Clarke & Co. v. Scribner, 144 U.S. 488 (1892), publisher Charles Scribner & Co. sued defendants Belford, Clarke & Co. ("Belford") and Donohue & Henneberry ("D & H") for infringing on Scribner's copyright in the book Common Sense in the Household; A Manual of Practical Housewifery. Id. at 489-90. Belford was alleged (and found) to have sold the infringing book, and D & H was alleged (and found) to have printed the infringing book. The trial court found that Belford realized profits of $1,092 from the sale of the book, and held Belford and D & H jointly and severally liable for that amount. Id. at 498-99. D & H appealed, arguing that it should not be held jointly and severally liable for Belford's profits. In reply, Scribner argued that D & H should be jointly and severally liable, as D & H:

> printed the books by contract with [Belford], and as, under the copyright law, (Rev. St. § 4964,) *both the printer and publisher are equally liable* to the owner of the copyright for an infringement, and as it is to be inferred that [D & H] made a profit from printing the piratical books, they were therefore *sharers in the profits realized from the sale of the books*, and were *participles criminis* with

> [Belford] in the infringement; that the two sets of defendants together printed and published the books, and were *practically partners* in doing it….

Id. at 507 (emphasis added). The court concluded that "[w]e think these views are sound." Id. at 508.

The Court's rather non-specific ruling leaves open the question: upon which basis was the finding of joint and several liability upheld? One thing is certain: the Court's entire discussion is bereft of *any* mention of a non-innocent infringer exception. The Court appears to base its ruling on two separate conclusions: that the version of the Copyright Act in existence at the time provided for joint and several liability as between a printer and publisher of a book; and that Belford and D & H shared profits from the infringement and were "practically partners." As to the former basis for joint and several liability, the modern Copyright Act contains no such provision, nor would it be applicable here if it did exist. As to the latter basis, BSB and BGI recognize that codefendants can be held jointly and severally liability for each other's profits if they are practical partners, but (as mentioned above) a prior Order of this Court ruled that no practical partnership exists in this case.[4] The court in Sammons v. Colonial Press, Inc., 126 F.2d 341 (1st Cir. 1942), had the same interpretation of the Belford case: "[i]t is to be noted that the court based its opinion upon the ground that the printer and publisher were 'practically partners' in putting the infringing book on the market…." Id. at 347. The court continued: "[i]f Belford…cannot fairly be distinguished on this ground we think it is irreconcilable with the long line of cases, of which the latest is Sheldon v. Metro-Goldwyn Pictures Corp. [309 U.S. 390, (1940)]…explaining the true equitable principles upon which an infringer is accountable for

[4] "In the present case, Plaintiff has alleged no facts demonstrating that BSB bore any risk or shared in profits from its work for TCM. Rather, BSB's contract with TCM, which has already been discussed at length with respect to BSB's potential derivative liability to TCM, provided for a fixed rate rather than any profit sharing. Thus, there is no basis for applying the "practical partnership" doctrine to impose joint and several liability for profits." July 11, 2003 Order at page 11.

profits…." Id. To the extent Rottlund cites Belford as standing for the proposition that the non-innocent infringer exception exists, that reliance is misplaced; the exception is not even hinted at in the Court's opinion.

## II. THE MAGISTRATE JUDGE'S ANALYSIS IS CORRECT.

The Magistrate Judge's analysis of the opinion of the Sammons court is informative, and directly on point. The Sammons court confronted precisely the issue which now confronts this court, and after a thorough analysis of the law (an element not present in either Rottlund's Memorandum on Appeal or the cases cited therein), concluded that "[i]n patent cases it is well settled that co-infringers, unless they are partners, are severally accountable only for the profits each has received. * * * We see no reason why the same rule should not apply in the case of copyright infringement." Sammons, 126 F.2d at 346. In surveying case law, the Sammons court noted that "[s]o far as we can find, no case since Belford v. Scribner, involving either patent or copyright infringement, has held that coinfringers who are not partners are accountable for anything more than the profits which each infringer has individually received as a result of the infringement." Id. at 347. The Magistrate Judge understandably agreed with the concrete, thorough discussion of the law present in Sammons, and rejected the speculative assertions contained in the cases cited by Rottlund.

The court in Nelson-Salabes, Inc. v. Morningside Development, LLC, 284 F.3d 505 (4th Cir. 2002), confronting the same issues now presented to this Court, reached the same conclusion as the Sammons court, and held that "each defendant is only liable to the copyright plaintiff to the extent of its own profits derived from the infringing activity." Nelson-Salabes, 284 F.3d at 517. It is important to note that, while the Nelson-Salabes court recognized an exception where the parties were partners or practical partners, there was no discussion about a "non-innocent

infringers" exception, even though the facts in Nelson-Salabes clearly indicate that the defendants were *not* innocent infringers[5]. Thus, the court's opinion in Nelson-Salabes must be read as at least a tacit rejection of the non-innocent infringer exception.

The Magistrate Judge also accurately traced the history of this alleged exception from its birth in Abeshouse[6]. The Magistrate Judge also made an observation which bears repeating: "Rottlund has not provided the Court with…any reasoning explaining the basis for a non-innocent infringer exception to the general rule that one infringer is not liable for the profits of another." Report and Recommendation at page 9. This shortcoming continues through Rottlund's appeal. The rationale behind the general rule is thoroughly discussed in the caselaw cited above, and is very simple: profits are "peculiarly personal" to each defendant, and disgorgement of profits is intended only to divest the defendant of what he or she should not have, *not* to compensate the plaintiff.

**CONCLUSION**

Rottlund has produced no case in which defendants were held jointly and severally liable based on the application of the non-innocent infringer exception. The Magistrate Judge analyzed several cases in which that exception was flatly rejected. For the reasons set forth above, BSB and BGI ask that the Court adopt the Magistrate Judge's July 13, 2004, Report and Recommendation and hold as a matter of law there is no non-innocent infringer exception to the rule that liability for infringer's profits is several.

---

[5] Defendants purchased property from one Strutt. The plaintiff architect had prepared drawings and plans for Strutt, and approached Defendants to see if they wanted to retain the architect to continue to work on the property. Defendants declined, and plaintiff notified them that plaintiff retained the copyright interests in its drawings, and prohibited any further use of the plans. Defendants made several minor changes to the plans, then used them to build on the property. Nelson-Salabes, 284 F.3d at 509-511.

[6] The court in Abeshouse relied entirely upon a cite to Nimmer on Copyrights, § 12.04[C][3], to support the existence of the non-innocent infringer exception. Nimmer says no more than that the exception "may" exist, and in turn cites solely to Harris, which, as discussed above, in inapposite on the issue.

Dated: ______________________________ ________________________________________

Holly J. Newman, MN Bar #26457X
Ben Patrick, MN Bar #312460
Of Mackall Crounse & Moore PLC
1400 AT& T Tower
901 Marquette Avenue
Minneapolis, MN 55402-2859
Telephone: (612) 305-1400
Facsimile: (612) 305-1414

Attorneys for Defendants Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., and The Bloodgood Group, Inc.

HJN/hjn#712143v1