**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, and Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants.<br><br>And<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.. 01-CV-1980 (DSD/SRN)<br><br>**DEFENDANT PINNACLE CORPORATION'S MEMORANDUM IN RESPONSE TO ROTTLUND'S MOTION TO STRIKE PINNACLE'S OBJECTIONS TO THE MAGISTRATE'S ORDER ENTERING SANCTIONS** |

## INTRODUCTION

Pinnacle Corporation and Holland & Knight LLP (together referred to as "Pinnacle") timely filed their objections, in conformance with Fed. R. Civ. P. 72, 28 U.S.C. § 636, and Local Rule 72.1, to Magistrate Judge Nelson's June 30, 2004 Order (the "Order") imposing discovery

sanctions. The fifty-five page Order is remarkable not only for its length, but also for its tone. Because the specific discovery violation that triggered three days of hearings and a fifty-five page ruling was slight, the Order goes out of its way to find a "pattern" to rationalize the imposition of overly harsh and unjustified sanctions. The Order accuses Pinnacle and its counsel of engaging in "a troubling pattern of conduct involving abuse of the judicial process, discovery incompetence, and defiance of Court orders, not to mention periodic episodes of brazen disrespect to the Court and an instance of cowardly harassment during a deposition." *The Rottlund Company, Inc. v. Pinnacle Corporation*, 2004 WL 1494579, *1 (D. Minn.) ("the Order") At one point, the Order goes out of its way to "emphasize that the imposition of sanctions is informed by and based upon the history of incidents of abuse, incompetence, defiance, and misconduct (many of which are sanctionable individually)." Order, *16.

None of this invective is justified, and Pinnacle objected because the finding of a pattern was unsupported and the sanctions were out of proportion. Rottlund has now moved to strike Pinnacle's objections on three grounds. First, it argues that the Magistrate's conclusions are not clearly erroneous, an argument that is both incorrect and based upon the wrong standard of review.[1] Second, Rottlund contends that Pinnacle's Notice of Objections violates a non-existent page limitation in the local rules. Third, Rottlund contends that the tone of Pinnacle's objections showed disrespect for the Court. It did not.

Rottlund's analysis is flawed at every level. The Motion to Strike should be denied. Pinnacle's objections to the Magistrate's Order should be sustained. The Order should be vacated and withdrawn from publication.

## ARGUMENT

[1] In its Motion to Strike, Rottlund takes issue with only three of Pinnacle's Objections and fails to provide assistance for this Court's *de novo* review of a record below that Rottlund has characterized as "enormous."

## I. Pinnacle and Holland & Knight have not engaged in a "pattern of discovery incompetence."

The Magistrate's "perception" that Pinnacle has engaged in a pattern of "discovery incompetence" is essential to any justification of the Order because, absent this supposed pattern, the sanctions are wholly disproportionate to the specific discovery misstep at issue. As Pinnacle pointed out in its Objections to the Order, the overlooked brochure file contained only four responsive documents. The documents were immediately produced and Mr. Sandelin was made (and will continue to be made) available for additional questions. Given that all of this occurred more than eleven months prior to trial, a sanction exceeding $60,000 for this event alone would be plainly excessive.

Thus, the Order strives to justify the sanction by finding a pattern of discovery abuse, as well as other allegedly offensive conduct. The allegation of a pattern, however, was thoroughly disproven during the hearings below, yet the Order ignores the undisputed evidence. In its motion to strike, Rottlund actually confirms that the Order's finding of a pattern is incorrect when Rottlund relies on new evidence and arguments rather than defend the Order itself. Rottlund's request that Pinnacle's objections be stricken because the Order was not clearly erroneous should be denied.

### A. Pinnacle has complied with Rottlund's overbroad and unreasonable discovery demands.

In its motion to strike, Rottlund seeks to portray Pinnacle as a guilty party which has resorted to discovery violations as its only defense. As it has done for the past two years, Rottlund continues to rely upon a letter written by Steve Sandelin, a former Pinnacle employee, to co-defendant Bloodgood Sharp Buster, Inc. ("BSB") in which Mr. Sandelin states that the Homestead Collection of Town & Country Homes, Inc. ("TCM")[2] is "obviously similar" to

[2] TCM is the company that develops and sells homes in Minnesota. Pinnacle and TCM are separate corporations,

Rottlund's Villa townhomes. (Rottlund Mem. at 3) As Pinnacle has repeatedly explained, this phrase lacks any legal significance in copyright law. *See, e.g., Mayotte & Assoc. v. MGC Building Co.*, No. 94-72157, 1995 U.S. Dist. LEXIS 19628, at *8, (E.D. Mich., Sept. 6, 1995) ("Moreover, despite the obvious similarities between Plaintiffs' and Defendants' plans, the Defendants have submitted affidavits citing many (more than 150) differences . . . . Many courts have held substantial similarity to be a question for the jury."); *Hoch v. MasterCard*, 284 F. Supp. 2d 1217, 1223 (D. Minn. 2003) ("Plaintiffs argue that these 'obvious similarities' preclude summary judgment. The Magistrate disagrees and concludes the similarities are nothing more than scenes a faire.").

Nor is it surprising that two different back-to-back townhome buildings would be "obviously similar." Both Rottlund and TCM construct "back-to-back" buildings that arrange two-bedroom, two-bath, 1100 square foot townhomes along a common center wall where two basic layouts are mirrored four times to create an eight-unit building. (*See, e.g.,* Dkt. 407, Schwiebert Aff., Exhibit Q.) Despite these superficial (and unprotectible) similarities, Rottlund has conceded that Defendants' interior units are not similar to Rottlund's interior units. (Dkt. 447, at 4-5.) Nor has Rottlund ever alleged that the exterior elevations of the buildings are substantially similar. In other words, Rottlund admits that the overwhelming majority of the designs are dissimilar.

Rottlund's theory of infringement is based on avoiding any direct comparison of the objective details in the works. Instead, Rottlund alleges that the general "look and feel" or "gestalt" of the architectural plans is substantially similar.[3] Throughout the pretrial proceedings,

---

though there is some overlap among the officers and directors of the two companies.

[3] Claims based solely on the "look and feel" of architectural plans find no support in the Eighth Circuit and claims rooted in "total concept and feel" have been rejected by the courts and harshly criticized by scholars. *See, e.g., Apple Computer, Inc. v. Microsoft Corp.*, 799 F. Supp. 1006, 1016 (N.D. Cal. 1992), *aff'd on point*, 35 F.3d

Rottlund has used its novel "gestalt" theory to expand the scope of its claims and discovery of the defendants. Now on its Seventh Amended Complaint, Rottlund has demanded (and received) production of the designs for every building – not simply every back-to-back townhome -- Pinnacle and TCM have every built, sold or considered since 1990. (Dkt. 105.) Rottlund has also demanded and received extensive cost and profit records for all housing units, whether they are accused of infringement or not, in any development where TCM or Pinnnacle has offered a back-to-back. (Rottlund justified this request by falsely claiming the back-to-back townhomes were essential to receiving zoning approval for the developments. Two years later, Rottlund has yet to offer a scrap of evidence to support this wild assertion.)

Rottlund has also expanded its discovery claims to include TCM's other back-to-back homes, which look nothing like the Homestead Collection. Shortly after this lawsuit was filed, TCM abandoned its Homestead design, hired a new architectural firm, and created from scratch an entirely new back-to-back design called the "Chateau." In an amended pleading, Rottlund alleged these new back-to-backs were "illegal deriviatives," arguing that once TCM saw Rottlund's Villa it became impossible for TCM to design its own back-to-back without illegally deriving it from Rottlund's design. (Dkt. 417, at para. 82.) On the basis of this facially absurd

---

1435, 1445 (9th Cir. 1994) ("The Court declines Apple's invitation to use the advent of the microcomputer and its interface to abandon traditional standards which govern copyrights and invent some new law based on highly indefinite constructs such as "look and feel."); 4 M. Nimmer, *Nimmer on Copyright* § 13.03[A][1][c] at 13-39 (2003) (emphasis supplied).

This Court should follow the warnings of Professor Nimmer and decline Rottlund's invitation to base its infringement claims on the "total look and feel" of its back-to-back townhome:

> More broadly, the touchstone of "total concept and feel" threatens to subvert the very essence of copyright, namely the protection of original *expression*. "Concepts" are statutorily ineligible for copyright protection; for courts to advert to a work's "total concept" as the essence of its protectible character **seems ill-advised in the extreme**. Further, the addition of "feel" to the judicial inquiry, being a wholly amorphous referent, merely **invites abdication of analysis**. In addition, "total concept and feel" should not be viewed as the *sine qua non* for infringement – similarity that is otherwise actionable cannot be rendered defensible simply because of a different concept and feel. In sum, therefore, the frequent invocations of this standard do little to bring order to the inquiry into what constitutes substantial similarity, and **would be better abandoned**.

4 M. Nimmer, *Nimmer on Copyright* § 13.03[A][1][c] at 13-39 (2003) (emphasis supplied).

argument, Rottlund has demanded discovery into every aspect of the developments where these townhomes are being offered as well. In total, Pinnacle and TCM have produced for inspection tens of thousands of documents.

**B. The Magistrate's finding of a pattern of discovery violations was erroneous.**

Despite Pinnacle's compliance with Rottlund's far-reaching discovery demands, the Magistrate's Order finds that Pinnacle engaged in a pattern of discovery violations and uses that "pattern" to justify its excessive sanction for the inadvertent failure to discover and produce four responsive brochures. This alleged "pattern" consisted of three events: (1) an erroneous statement by Pinnacle's CFO, Paul Anderson, that part of Pinnacle's document production had been limited to back-to-back townhomes; (2) Pinnacle's pursuit of a motion to dismiss for lack of personal jurisdiction in the face of several visits to Minnesota by Pinnacle's Steve Sandelin; and (3) Steve Sandelin's brochure file. Spread over the course of this multi-year litigation, these three isolated instances do not constitute a pattern. Based upon a *de novo* review of the record, these instances do not support an award of sanctions.

**(i) Pinnacle's production of financial records**

The episode with Mr. Anderson came about after extensive wrangling between the parties over Rottlund's demands for financial information from the defendants. Over the course of two status conferences, the Magistrate limited the scope of Rottlund's document requests in response to objections by Pinnacle and TCM. (Rottlund now rewrites the record by characterizing this outcome as two orders against Pinnacle compelling production.) During a subsequent non-transcribed telephonic status conference, Pinnacle voluntarily made Mr. Anderson available for questioning by the Court about these financial records. During this conference, Mr. Anderson (who had not been prepared and was not under oath) erroneously stated that one group of

financial documents was limited to information concerning back-to-back townhomes, as opposed to all of the homes in the development.

During the hearing on the appropriate sanction, however, Pinnacle proved that Mr. Anderson's alleged mistake never actually happened. Pinnacle produced for the Magistrate's inspection the *actual* Bates-stamped documents and proof of service, which demonstrated that the document production had not, in fact, been "unilaterally limited." (Dkt. 338, Transcript from Feb. 6, 2004 Hearing at 10-17.) At most, Mr. Anderson is guilty of admitting to a mistake that he never actually made.

In her Order, the Magistrate ignores this irrefutable evidence, and erroneously finds that these documents must have been part of a subsequent production. They were not part any subsequent production. The Order concludes, "[u]ltimate production of material does not excuse initial disobedience," even thought there had been no initial disobedience. *The Rottlund Company,* supra, at *20. Ironically, the Order goes out of its way to gratuitously chastise Pinnacle's counsel by suggesting that Pinnacle's argument (which was correct) "demonstrates again the lack of care Pinnacle takes before it makes representations to the Court." *Id.*

A *de novo* review of the record will reveal no factual dispute about this point. This Court need look no further than Rottlund's motion to strike for proof that the Order, and its aspersions on Pinnacle's counsel, are unsupportable. Rottlund does not even attempt to defend the Order's conclusion that the documents produced during the sanctions hearing were from a subsequent production. Instead, Rottlund argues for the first time that the issue involved a distinction between "cost records" and "revenue records." (Dkt. 470, Rottlund Mem. at 10.) It is indisputable that Pinnacle's document production was not "unilaterally limited" in "defiance" of a Court Order, yet this finding is the cornerstone of the Magistrate's "pattern."

**(ii) Pinnacle's Motion to Dismiss**

The vast majority of the Order is dedicated to a motion to dismiss for lack of personal jurisdiction that Pinnacle (through different counsel) filed over two years ago. That motion was denied and Rottlund moved for sanctions, arguing that the motion was frivolous in light of Steve Sandelin's visits to Minnesota and his involvement in the design of TCM's Homestead back-to-back townhomes. The motion for sanctions was denied. (Dkt. 257.)

*Since that time, nothing has changed with regard to these issues.* In fact, revisiting the prior motion for sanctions was not even one of the potential sanctions the Magistrate instructed the parties to brief. (Dkt. 326 at 52-53.) Pinnacle previously disclosed that Mr. Sandelin had picked up brochures when he toured townhomes in Minnesota, and that he had no reason to believe that he did not also obtain Rottlund brochures. He just did not know where they were. They turned up in his brochure file[4] – a file both Rottlund and the Magistrate improperly refer to as a "competitor brochure file." Thus, Pinnacle believes the Magistrate's decision to reverse her prior denial of Rottlund's request and to sanction Pinnacle at this time was unjustified.

**(iii) Pinnacle's objections should not be stricken on the basis that the Magistrate's Order was "not clearly erroneous."**

Rottlund asks for the extraordinary relief that Pinnacle's objections not only be denied, but that they be stricken, on the grounds that the Magistrate's Order was not clearly erroneous. As Pinnacle has established in this memorandum, and in its objections, the Magistrate's Order is fraught with mistaken findings, erroneous conclusions of law, improper references to materials not in the record, poison-pen characterizations of evidence and efforts, and unjustified conclusions. Rottlund, however, incorrectly urges this Court to sustain the Order unless it is

[4] Pinnacle acknowledges the obvious proposition that brochures might be found in a "brochure file." For this reason, Pinnacle's counsel was stunned by the revelation – during a December 2003 deposition -- that such a file existed. Contrary to the Magistrate's finding, the failure to unearth this file was not for a lack of trying. *See In Camera* Affidavit of Mathew I. Farmer, a courtesy copy of which was previously submitted to the Court.

clearly erroneous. Of course, Rottlund cites no authority for this proposition. Moreover, Rottlund's "clearly erroneous" argument has absolutely no bearing on the merits of Rottlund's Motion to Strike, and Rottlund has filed no responsive brief, pursuant to L.R. 72.1(b)(2), to Pinnacle's Objections to the Magistrate's Order. (Any such brief would have been limited by L.R. 72.1(b)(2) to ten pages.)

Contrary to Rottlund's mistaken position, this Court must review the Magistrate's Order *de novo*. *See Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Forsythe v. Hales*, 255 F.3d 487, 489 (8th Cir. 2001). Thus, none of the Magistrate’s findings are entitled to deference and this Court may make findings and conclusions as if it were hearing the matter initially. *Hudson*, 46 F.3d at 786 (district court needed to “make a de novo assessment, independent of the magistrate judge’s conclusions”). When fairly considered, the record below does not justify the sanctions imposed.

**II. Pinnacle's Notice of Objections did not violate any rule regarding page limits.**

Local Rule 72.1 provides that a party's memorandum in support of its objections to a Magistrate's decision must be no more than ten pages. Pinnacle complied with this rule by filing a ten-page memorandum. In response to the Magistrate's fifty-five page Order, which cited thousands of pages of record support, Pinnacle and Holland & Knight gave notice of their specific objections in a combined twenty-two page "Notice of Objections."

Rottlund contends this violated the spirit of the page limitation. In support of this charge, Rottlund (in a sixteen page brief violative of L.R. 72.1(b)(2)) paraphrases back to this Court its own decision sanctioning Rottlund's counsel for exceeding a page limitation. *Compare* Rottlund Mem. at 8, "Here despite the fact that the Local Rule 72.1(b)(2) does not provide a page limitation in connection with the required notice, Pinnacle and Holland & Knight circumvented

the briefing limitation and violated the spirit of the rule," *with*, "The court found that [Winthrop & Weinstine and its opposing counsel] exceeded the page limit set forth in the magistrate judge's order by over 600 pages. The court further found that the briefs, which totaled over 2400 pages, were interposed for an improper purpose pursuant to Rule 11, that is to unnecessarily delay the litigation process." *Glass v. IDS Financial Services*, Inc. 137 F.R.D. 262, 263 (D. Minn. 1991).

As this Court will undoubtedly recognize, Pinnacle's twenty-two page notice detailing its many objections to the Magistrate's Order bears no resemblance to the tactics of Winthrop & Weinstine in the *Glass* litigation. Here, Pinnacle was faced with a fifty-five page Order, which purports to be based upon the entire history of discovery in this case. Pinnacle submits that in this situation, the length of its Notice of Objections was neither unwarranted nor violative of the spirit of any local rules.

**III. Pinnacle's Objections do not contain unwarranted criticism of the Magistrate.**

The fifty-five page Order at issue repeatedly (and improperly) strays from impartiality into advocacy. Much of its criticism of Pinnacle and Holland & Knight is unjustifiably harsh. In its opening section, for example, the Order states:

> The Court has lost some confidence in Pinnacle and its counsel's efforts in conducting discovery due to a troubling pattern of conduct involving abuse of the judicial process, discovery incompetence, and defiance of Court orders, not to mention periodic episodes of brazen disrespect to the Court and an instance of cowardly harassment during a deposition.

*Rottlund Company, supra*, at *1.

As Pinnacle explained in its Objections, the only alleged "episode of brazen disrespect" involved an attorney's protestation, "Oh, Your Honor, please," after the Court had accused counsel of smelling like "a rat" for failing to agree to a stipulation the Court had made up on the spot. (Dkt. 442 at Obj. 3.) Although the Court now claims its request was perfectly clear and

reasonable, during the hearing the Court apologized that the request had not been clear, and that the Court had been mistaken. (*Id.*)

Pinnacle also objected to the Magistrate's prejudgment that there would be sanctions in this matter based upon a status conference letter submitted by Rottlund's counsel. She then instructed the parties to brief what those sanctions would be. (*Id.* at Obj. 1.) On December 18, 2003, nearly a month before the briefing on the "appropriate sanction" was even served, the Magistrate stated that she was going to "entertain a formal motion for sanctions *and will award sanctions*." (Dkt. 326, Transcript from Dec. 18, 2003 hearing at 48.) (Emphasis supplied.)

Pinnacle also objected to the Magistrate's decision to recast a September 2001 tour through the Liberty on the Lake development as a tour of a particular Rottlund townhome because *one particular townhome* had a "*unique style of architecture*." (*Id.* at Obj. 7.) This assertion, which is offered to support the alleged "pattern" of conduct, is unsupported by the record. (*Id.*) Similarly, the Magistrate adopted Rottlund's unsupported language of advocacy by insisting (both during oral argument and in her Order) that Mr. Sandelin's "brochure file" was a "competitor brochure file." (*Id.* at Obj. 8-9.) It is not. (*Id.*)

As noted in Objection 9, the Magistrate's characterization of Mr. Sandelin's state of mind and Mr. Sandelin's written words is equally troubling, given that Mr. Sandelin never appeared before the Magistrate and the Magistrate is fully aware that there is no doctrine of "obvious similarity" in copyright law. (*Id.*) Moreover, as explained in Objection 13, the Magistrate's Order also took unwarranted and unsupportable shots at counsel's level of preparation for hearings. (*Id.* at Obj. 13.) The record does not bear out those criticisms. (*Id.*)

Faced with such allegations and mischaracterizations, counsel has chosen its words carefully and means no disrespect toward the judiciary or any member of that institution.

Nevertheless, Pinnacle believes that the record (as highlighted in its Objections) supports its contention that the Magistrate's Order contains the impermissible and unsupportable language of advocacy.[5]

[5] Should this Court conclude that any portion of the Objections contains scandalous material, the Court should strike only that section of the pleading and not grant the draconian relief Rottlund requests. Fed. R. Civ. P 12(f). Moreover, nothing in Pinnacle's Objections warrants Rottlund's request for additional sanctions.

For the reasons stated above, the Motion to Strike should be denied.

Dated: August 27, 2004

Respectfully Submitted,

By: **s/ Matthew I. Farmer_**
Edward F. Ryan
Christopher J. Murdoch
Matthew I. Farmer
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th Fl.
Chicago, IL 60603
Telephone: (312) 263-3600
Facsimile: (312) 578-6666

By:________________________________
David Donna (#163624)
**DONNA & DALY**
1460 Buffet Way, Suite 150
Eagan, MN 55121
Telephone: (651) 406-4242
Facsimile: (651) 406-4243

ATTORNEYS FOR DEFENDANT
PINNACLE CORPORATION

# 2214637_v1