**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **The Rottlund Company, Inc., d/b/a Rottlund Homes, a Minnesota Corporation,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Pinnacle Corporation, d/b/a Town & County Homes, an Illinois Corporation, Town & County Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,**<br><br>**Defendants,**<br><br>**and**<br><br>**Town & County Homes, Inc., a Minnesota Corporation,**<br><br>**Third-Party Plaintiff,**<br><br>**v.**<br><br>**Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,**<br><br>**Third-Party Defendant.** | **No.: 01-CV-1980 (DSD/SRN)**<br><br>**MEMORANDUM IN RESPONSE TO ORDER TO SHOW CAUSE WHY CHRISTOPHER CARMICHAEL SHOULD NOT BE SANCTIONED** |

**MEMORANDUM IN RESPONSE TO ORDER TO SHOW CAUSE**
**WHY CHRISTOPHER CARMICHAEL SHOULD NOT BE SANCTIONED**

On August 5, 2004, this Court issued an order directing Christopher Carmichael to appear before the Court and to show cause why he should not be sanctioned. The Court issued the order after Mr. Carmichael appealed from a Magistrate's decision sanctioning Mr. Carmichael for his alleged conduct during a deposition. As shown below, Mr. Carmichael should not be sanctioned

for at least three reasons. First, the Magistrate's opinion makes clear that the Magistrate imposed sanctions on Mr. Carmichael for a question he *never asked* during the deposition. Instead, as the Magistrate acknowledged in her opinion, Mr. Carmichael chose not to ask the question after opposing counsel objected that it would violate a protective order in the case. As a result, the Magistrate based her sanctions decision solely on Mr. Carmichael's *intention* to ask a question, even though he never actually posed it. The mere intention to ask a question that was never posed cannot be sanctionable under any legal standard.

Second, even if the mere intent to ask a question could itself be the basis for sanctions, the unasked question in this case provides no justification for such a penalty. As shown in Mr. Carmichael's earlier memoranda, the general line of inquiry that Mr. Carmichael attempted to pursue – but then chose not to complete – was relevant to the witness's loyalty to Plaintiff (and thus the witness's bias) as well as to damages issues in the case. For these reasons, Mr. Carmichael's initial efforts to pursue this line of inquiry cannot justify the imposition of sanctions.

Third, the decision to impose sanctions did not comport with due process because Mr. Carmichael had no notice that the Magistrate was considering the imposition of sanctions against him individually – and therefore no opportunity to refute the allegations against him. The law is clear that a due process violation cannot be cured by providing notice and an opportunity to respond *after* sanctions have already been imposed. *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 151 (7th Cir. 1995). Rather, the only remedy is to vacate the sanctions order that violated due process in the first place.

## I. BACKGROUND

On June 30, 2004, the Magistrate entered an order imposing sanctions on Mr. Carmichael, defendant Pinnacle, and the law firm of Holland & Knight. In the order, the

Magistrate directed Mr. Carmichael, the only attorney individually sanctioned, to send a letter "apologizing for asking questions (or setting up an inferential situation) meant to embarrass [a deposition witness] and that were clearly outside the bounds of this lawsuit." (Op., 40). The Magistrate imposed this sanction pursuant to 28 U.S.C. § 1927 and an Article III court's inherent power.

On July 11, 2004, Mr. Carmichael personally objected to the entry of the sanction by filing a timely notice in this Court. On August 14, 2004, Mr. Carmichael submitted a motion for leave to file a reply to Plaintiff's responsive memorandum, along with a proposed reply brief. On August 5, this Court issued an order directing Mr. Carmichael to appear before the Court on September 3, 2004 and to show cause why he should not be sanctioned.

In response to that Order, Mr. Carmichael submits the following memorandum. *See Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1030 n.1 (8th Cir. 2003) (noting that an attorney must be given "an opportunity to respond" to an order to show cause).

## II. MR. CARMICHAEL'S CONDUCT IS NOT SANCTIONABLE

### A. The Magistrate Imposed Sanctions For A Question That Was Never Asked.

A review of the Magistrate's decision makes clear that she imposed sanctions on Mr. Carmichael *for a question he never asked*. The complete line of questioning found by the Magistrate to constitute "obvious, bad-faith harassment" is as follows:

Mr. Carmichael: Do you enjoy working for Rottlund?

Mr. Jorgenson: Yes.

Mr. Carmichael: Do you see working for Rottlund in the future?

Mr. Jorgenson: Yes.

Mr. Carmichael: Here in Des Moines?

Mr. Jorgenson: Yes.

| | |
|---|---|
| Mr. Carmichael: | Do you know Rottlund's current plans with regard to the market in Des Moines to expand here, or are they going to stop building in this area? |
| Mr. Jorgenson: | The plans are to expand. |
| Mr. Carmichael: | Do you know a man named Steve Kahn? |
| Mr. Jorgenson: | Yes. |
| Mr. Carmichael: | Do you know what his position is? |
| Mr. Jorgenson: | CFO. |
| Mr. Carmichael: | Of which company? |
| Mr. Jorgenson: | Rottlund Homes. |
| Mr. Carmichael: | *Would it surprise you to learn Mr.—* |
| Mr. Krummen: | *Instruct you not to ask that question or I'll move for sanctions.* What you are going to ask him is sealed per agreement of the parties. |
| Mr. Carmichael: | Can we go off the record for a second? |
| Mr. Krummen: | Absolutely on the record. |
| Mr. Carmichael: | How do you know what I am going to ask? |
| Mr. Krummen: | I don't see how Mr. Kahn's comments would have any relevance for purposes of this deposition, so you have been warned. Go ahead and ask him whatever you want to. |
| Mr. Carmichael: | There is two different points you are making. Sealing is different from relevancy. |
| Mr. Krummen: | This litigation has attorney's eyes only provision, and if you ask something that is covered by the attorney's eyes only provision, there will be repercussions. Ask whatever you want." |

(Ex. 1, Jorgenson Dep., 8/22/03, at 40:20-41:11) (quoted at Op., 13-14) (emphasis added).

After the above colloquy, Mr. Carmichael elected not to ask the question at all and quickly ended his questioning of the witness. (*Id*.). Yet, even though he did not pose the allegedly offending question – and even though the questions he did ask were not abusive or harassing – the Magistrate found that the line of inquiry revealed a plan to "set up" the witness:

> There can be no doubt about what Mr. Carmichael was doing. Mr. Carmichael had read Steven Kahn's previous deposition, Rottlund's CFO, and discovered that Rottlund, according to Mr. Kahn, intended to eliminate the Iowa division. Then, during Mr. Jorgenson's deposition, who was a witness identified as having knowledge about access, Mr. Carmichael began to set up Mr. Jorgenson by asking him if he likes working for Rottlund and plans on staying there in the future.

(Op., at 39).

The Magistrate further found that, after allegedly "setting up" the witness, Mr. Carmichael then tried to "go for the dagger" by asking "Would it surprise you to learn Mr.—'," only to be cut off by opposing counsel before he could complete the question. (Op., at 39). Indeed, according to the Magistrate, the opposing counsel "strong-armed" Mr. Carmichael into not asking the question by threatening to seek sanctions. (*Id*.). Nevertheless, the Magistrate found that the purpose of the "unstated" question was obvious:

> The unstated conclusion to Mr. Carmichael's question is obvious. Mr. Carmichael, an opposing attorney taking Mr. Jorgenson's deposition, *wanted* to be the first to tell Mr. Jorgenson, who is about 25 years old, drives 50 some miles one way to work, and has three daughters, that he was going to lose his job. This conduct is the epitome of bad faith harassment.

(*Id.*) (emphasis added).[1] Thus, the Magistrate sanctioned Mr. Carmichael for "*setting up an*

---

[1] In reaching this result, the Magistrate also improperly relied on statements made by Plaintiff's counsel about the witness, which were wholly outside the record. *See Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001). The Magistrate's reliance on materials outside the record alone requires that the sanction be vacated. *See, e.g.*, *Vollmer v. Selden II*, 350 F.3d 656, 663 (7th Cir. 2003).

*inferential situation*" meant to embarrass the witness, even though Mr. Carmichael never asked the allegedly embarrassing question.

Even if the actual question that Mr. Carmichael intended to pose was improper – and as shown below it was not – the mere intention to ask the question does not approach the level of bad-faith conduct that would warrant sanctions. On the contrary, the very fact that an attorney decides *not* to ask a potentially improper question affirmatively demonstrates the attorney's good faith.

This is why an unasked question cannot be the basis for sanctions, particularly since sanctions should be approached with circumspection so as not to "dampen the legitimate zeal of an attorney in representing his client." *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416-17 (5th Cir. 1994); *VanDanacker v. Main Motor Sales Co.*, 109 F.Supp.2d 1045, 1047 (D. Minn. 2000) (Doty, J.). Instead, sanctions should be imposed only in "instances of a serious and studied disregard for the orderly process of justice." *LaSalle Nat'l Bank v. First Conn. Holding Group, L.L.C.*, 287 F.3d 279, 288-89 (3d Cir. 2002). On the facts of this case, a question that was never posed does not represent a "serious and studied disregard for the orderly process of justice."

**B. Mr. Carmichael Did Not Act in Bad Faith.**

Even if a lawyer could be sanctioned for a question that was never asked, there was nothing improper about the line of inquiry that Mr. Carmichael was attempting to pursue, but never actually completed. In fact, the deposition transcript shows in at least three ways that Mr. Carmichael did not act in bad faith: First, none of the questions that Mr. Carmichael actually posed was abusive or harassing. Second, Mr. Carmichael never posed the one question that was allegedly "harassing." Third, the general line of questioning was relevant to the nature and

extent of the witness's loyalty to Plaintiff (and hence the witness's bias), as well as to damages issues in the litigation. (*See* Carmichael Br., 5-6).

Not surprisingly, therefore, during the deposition, opposing counsel did not object to *any* of the questions Mr. Carmichael actually asked the witness. (Ex. 1, 8/22/03 Jorgenson Dep., at 40:20-41:11). Having failed to assert that the questions were improper *for any reason* at the time they were asked, plaintiff should not now be permitted to invent new reasons why those questions "must have been" inappropriate months earlier. This is particularly true since the one question that opposing counsel *did* find objectionable was the one question that was never even asked. These circumstances provide no basis for a finding of bad faith.

**C. Mr. Carmichael is Relatively Inexperienced.**

In a strange turn of events, the least experienced attorney representing Pinnacle, who was only tangentially involved in this matter, was the only attorney individually sanctioned. At the time of the deposition in August 2003, Mr. Carmichael had been engaged in private practice for less than a year – a factor the Court should take into account. *See Blue v. United States Dept. of the Army*, 914 F.2d 525, 546 (4th Cir. 1990).

Furthermore, it is unjust to Mr. Carmichael to allow the acrimony generated by this hotly disputed litigation to spill over and adversely affect the reputation of this relatively uninvolved attorney. As plaintiff has recognized, the Magistrate's decision to sanction Mr. Carmichael supposedly was supported by allegations of "numerous other instances of sanctionable misconduct by the appealing parties." (Pl. Br., at 5). Had the magistrate properly considered Mr. Carmichael's conduct separately, in accordance with her own initial observation that it was "unrelated . . . to anything in this case" (Op., at 5-7), Mr. Carmichael would never have been sanctioned.

## III. THE DUE PROCESS VIOLATION IS NOT CURED BY NOTICE AFTER SANCTIONS HAVE ALREADY BEEN IMPOSED

As we previously showed, the Magistrate failed to accord Mr. Carmichael due process prior to sanctioning him: Mr. Carmichael was never given specific notice that the Magistrate was considering sanctions against him individually, nor was he given notice of the specific conduct alleged to be sanctionable. (Carmichael Br., 3-5). This Court's order to show cause cannot correct these prior procedural errors after the sanctions have already been imposed and remain in effect. In *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147 (7th Cir. 1995), the Seventh Circuit considered whether the "show cause" requirements of Rule 11 were satisfied by review on reconsideration after sanctions had already been issued without proper notice. The court held that this "makeshift procedure" was inadequate because it occurred *after* the sanctions had been imposed:

> The problem with such a makeshift procedure employed under Rule 59(e) is that, although the district court provided a kind of notice and an opportunity to respond, this occurred after sanctions had been imposed and while they remained in effect. Johnson's opportunity to brief the sanctions issue was an after-the-fact effort to convince the district court to set aside the sanctions it had already determined were appropriate.

*Id.* at 151. The court therefore concluded that the "notice" and "opportunity to be heard" requirements could be satisfied only if the district court first vacated the sanctions and then provided the procedural safeguards. *Id.* *See also Hutchinson v. Pfeil*, 208 F.3d 1180, 1186-87 (10th Cir. 2000) (due process requires notice and an opportunity to respond *before* sanctions are imposed); *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 230-31 (5th Cir. 1998) (same).

The same logic applies here. Although the *Johnson* case involved Rule 11, sanctions issued pursuant to 28 U.S.C. 1927 and the court's inherent powers also require notice and an opportunity to be heard. *Larsen v. City of Beloit*, 130 F.3d 1278, 1286 (7th Cir. 1997); *see also In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000) ("notice must be given that the court is considering

imposing sanctions"); *In re Frank Funaro, Inc.*, 263 B.R. 892, 903 (8th Cir. BAP 2001) ("Rather, the court must give notice that it is considering sanctions . . . [and] [t]he notice must specify the conduct alleged to be sanctionable, the standard by which the conduct will be assessed, and the authority under which sanctions are being considered."). Furthermore, in this case, as in *Johnson*, the sanction against Mr. Carmichael has already been imposed and is still in effect. The Magistrate's order is not simply a recommendation, but specifically imposes a sanction (Op., at 40, 55), and this Court has not vacated the order. On these facts, the only way to cure the due process violation is to vacate the sanctions order.

## IV. CONCLUSION

Under no standard should Mr. Carmichael be sanctioned for asking seven deposition questions that were not abusive or even objected to when asked. Nor should Mr. Carmichael be sanctioned for *almost* asking an eighth question that was never posed, even though it was relevant to the litigation. Because of the absence of notice to Mr. Carmichael, the Magistrate never heard the strongest arguments against sanctioning Mr. Carmichael. For all of these reasons, Mr. Carmichael should not be sanctioned and the Magistrate's ruling should be set aside.

Dated: August 27, 2004

Respectfully submitted,

CHRISTOPHER CARMICHAEL

By: s/ James R. Ferguson
One of his attorneys

James R. Ferguson
David W. Fuller
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street
Chicago, Illinois 60603
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

Rodney A. Honkanen, #46929
SPENCE, RICKE, SWEENEY
AND GERNES, PA.
325 Cedar Street, Suite 600
St. Paul, MN 55l0l
(651) 223-8000 (phone)
(651) 223-8003 (fax)