UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,

Plaintiff,

v.

Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,

Defendants,

and

Town & Country Homes, Inc., a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

Civil No. 01-1980 (DSD/SRN)

**DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS AND PLANNERS OF IOWA, INC., AND THE BLOODGOOD GROUP, INC.'S OBJECTIONS TO THE AUGUST 20, 2004 REPORT AND RECOMMENDATION**

**ORAL ARGUMENT REQUESTED**

Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. ("BSB") and The Bloodgood Group, Inc. ("BGI") submit the following objections to the Report and Recommendation issued by Magistrate Judge Nelson on August 20, 2004.

## I. THE RECOMMENDATION THAT ROTTLUND BE GRANTED SUMMARY JUDGMENT DETERMINING THAT ITS COPYRIGHTS ARE VALID IS ERRORNEOUS.

Regarding BSB and BGI's argument that Rottlund has engaged in fraud on the Copyright Office, thereby invalidating the copyrights which form the basis of Rottlund's copyright infringement action, Magistrate Judge Nelson's August 20, 2004 Report and Recommendation (the "Report") states, "Defendants have failed to rebut the presumption of ownership of valid copyrights. No reasonable juror could find for them on their 'fraud on the Copyright Office' theory given the undisputed facts in the record. * * * Rottlund's motion for summary judgment of validity of its technical drawings copyrights should be granted." Report at page 28. This conclusion is incorrect. BSB and BGI presented evidence that, in its applications to the Copyright Office, Rottlund has:

1. incorrectly identified the Original Villa and New Villa as "works for hire";
2. incorrectly identified itself as the author of the Original Villa and New Villa, when it is *not* the author but merely claims ownership by assignment;
3. incorrectly identified separate, wholly-owned entities of Rottlund as the author of the New Villa;
4. failed to identify the New Villa and Villa II as derivative works, even though Rottlund's employees and officers have testified that the New Villa is derivative of the Original Villa, and the Villa II is derivative of both the New Villa and the Original Villa;
5. filed numerous Correction Forms with the Copyright Office in an attempt to remedy these errors, but only after the Defendants indicated that they would move for summary judgment based on these errors; and
6. submitted correction forms, during the course of this litigation, which misrepresented the date of creation of the Original Villa.

*See* Exhibits E, F, H, and K-S to the March 8, 2004 Affidavit of Ben Patrick in Support of BSB and BGI's Motion for Summary Judgment, Docket No. 352; Exhibits B-S to the April 30, 2004 Supplemental Affidavit of Ben Patrick in Support of BSB and BGI's Motion for Summary Judgment, Docket No. 387; *and compare* Exhibits X, Y, AA, BB, and CC to the March 15 Affidavit of Craig Krummen in Opposition to BSB and BGI's Motion for Summary Judgment,

Docket No. 363. A reasonable juror, presented with these facts, could reasonably conclude that these are not isolated, separate mistakes (as the Magistrate Judge concluded), but rather that these facts form a pattern of intentional deception practiced by Rottlund on the Copyright Office in order to ensure that the Copyright Office would allow Rottlund to continue to copyright the same building over and over again, rather than challenging Rottlund's submissions. For this reason, the Report's recommendation that Rottlund be granted summary judgment determining its technical works copyrights to be valid is erroneous. BSB and BGI respectfully request that the Court deny Rottlund's motion in that regard and allow the jury to determine whether it believes Rottlund's conduct was intentionally fraudulent. BSB and BGI believe that the overwhelming weight of the evidence suggests that Rottlund has perpetrated a fraud on the Copyright Office, and that they should be entitled to summary judgment on this issue; however, *at a minimum*, this substantial evidence presents a fact issue which can only be resolved by the jury.

## II. FACT QUESTIONS PRECLUDE SUMMARY JUDGMENT OF VALIDITY.

A certificate of registration constitutes *prima facie*, but rebuttable, evidence of the validity of a copyright and of the facts, including ownership and existence, stated in the certificate. *Taylor Corp. v. Four Seasons Greetings LLC*, 171 F.Supp.2d 970, 972-73 (D.Minn. 2001), *aff'd.* 318 F.3d 1039 (8th Cir. 2003). If a registrant fails to disclose that the work is derivative of other copyrighted material, the copyright is invalid. *Garner v. Sawgrass Mills Ltd. Partnership*, 1994 WL 829978, 35 U.S.P.Q.2d 1396, 1403 (D. Minn. 1994).

Rottlund admits that both VAu 447-395 and VAu 546-285 contain material misrepresentations regarding the derivative nature of the works. The registrations at issue are derivatives of the "Original Villa," and this fact was withheld from the Copyright Office.

Rottlund also admitted, during its 30(b)(6) deposition, that AFI designed the "Original Villa." *See* Affidavit of Darren Schwiebert, Docket No. 348, at Exhibit 4 pages 22-29. Thus, the copyrights at issue are invalid because Rottlund failed to disclose that those copyrights are derivative of works owned by AFI. *See Garner*, 35 U.S.P.Q.2d at 1403. The Report resolves these unambiguous challenges to the validity of the copyrights at issue by stating that nothing in the record suggests that Rottlund's failures were intentional or fraudulent. To the contrary, all of the evidence in the record indicates that Rottlund knew that the works were derivatives and failed to disclose their derivative nature.

Next, the Report argues that "no prejudice has been shown" since Rottlund applied for supplementary registrations. The fact that the Copyright Office accepted the supplemental registrations does not cure the previous fraud. *See* R. *Ready Productions, Inc. v. Cantrell,* 85 F.Supp.2d 672, 692 (S.D. Texas 2000) ("The information in a supplemental registration augments but does not supersede that contained in the earlier registration. 17 U.S.C. § 408(d). Thus, plaintiffs cannot retroactively change the authorship stated in their original registration through a supplementary registration."); *NBC Subsidiary (KCNC-TV), Inc. v. Broadcast Information Services, Inc.*, 717 F.Supp. 1448, 1451 (D. Col. 1988). Moreover, Rottlund has not included the supplementary registrations in any of the Seven Amended Complaints.

Finally, the Report argues that Rottlund is the owner of the previous works because facts exists that could establish a written confirmation of a prior oral agreement with AFI. To the contrary, the May 12, 1987 contract directly contradicts the alleged oral agreement by stating that AFI retained "ownership of all ideas, concepts, and working drawings and the right to publish. *See* Affidavit of Darren Schwiebert, Docket No. 348, at Exhibit 5; *see also John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 186 F. Supp.2d 1, 12 (D. Mass. 2002)

(reference to publication sufficient to establish ownership of copyrights along with architectural plans themselves). At a minimum, a question of material fact exists for the jury. [1]

The 1989 Agreement did provide a limited transfer of rights to four specific architectural plans dated November 3, 1987 "to be used by ROTTLUND for a development known as Summerwood, Brooklyn Park." *See* Affidavit of Ben Patrick, Docket No. 352, at Exhibit D. However, the 1989 Agreement did not mention or include other "Original Villa" architectural plans for works done by AFI for Rottlund prior to the Agreement, such as the 1998 drawings deposited with VAu 268-380. *See id.* at Exhibit F. The Report failed to recognize the "Summerwood, Brooklyn Park" limitation in the 1989 Agreement in improperly concluding that <u>all copyright interests</u> for all AFI work done for Rottlund was transferred by this agreement.[2]

The cases relied upon by the Report to preclude the Defendants from challenging the validity of the copyrights-at-issue are inapplicable because none of the cases involve a copyright holder's failure to disclose to the Copyright Office the derivative nature of the works at issue.[3] The applicable case for the Defendants' argument regarding validity – failure to identify derivative works – is this Court's decision in *Garner,* in which the court granted summary judgment in the defendant's favor, ruling that the plaintiff "should not be allowed to proceed

[1] The Report improperly relies *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003), which involved a motion for judgment as a matter of law <u>after</u> a jury verdict of ownership, <u>not</u> a motion for summary judgment before trial. Like *Billy-Bob*, the jury in this case should be allowed to weigh the evidence and judge the credibility of the witnesses on this issue.

[2] Rather than resolving "any doubt," the 2002 Agreement (signed by Whitten on behalf of AFI, an entity that no longer existed in 2002) is evidence that the jury could properly conclude establishes that the 1989 Agreement <u>did not</u> include all copyrights. Why else would Rottlund manufacture this document during litigation with its architect signing on behalf of the wrong party? The Agreement itself, however, is void since the entity allegedly transferring copyrights no longer exists.

[3] Each case is simply a challenge to the designation of author on the copyright at issue under 17 U.S.C. § 204, *see Billy-Bob*, 329 F.3d at 589 (allegedly listing Billy Bob Teeth, Inc. instead of Jonah White); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F. 3d 96, 99 (allegedly listing Imperial Palms instead of Regal); *Danielson*, 186 F. Supp.2d at 10 (allegedly listing Danielson instead of Tellalian); *Films by Jove, Inc. v. Berov*, 154 F. Supp.2d 432, 477 (E.D.N.Y. 2001) (allegedly listing FBJ instead of Soyuzmultfilm), or the challenge to the exclusive license agreements necessary to initiate litigation, *see Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2nd Cir. 1982); *Great Southern Homes, Inc. v. Johnson & Thompson Realtors*, 797 F. Supp. 609, 610-11 (M.D. Tenn. 1992).

with [its] infringement action" because it failed to disclosure known derivative nature of work. *Garner*, 35 U.S.P.Q.2d at 1402-03. In this case, questions of material fact preclude a finding of summary judgment.

## III. THE CONCLUSION THAT THE SELECTION, ARRANGEMENT AND COMBINATION OF ELEMENTS IN THE VILLA II IS SUFFICIENTLY ORIGINAL TO BE AFFORDED COPYRIGHT PROTECTION IS UNSUPPORTED BY, AND CONTRARY TO, THE RECORD.

The Report states that "[a]s urged by Rottlund, however, the Court finds that the selection, arrangement, and combination of the elements expressed in the technical drawings are sufficiently original and detailed to be afforded copyright protection." Report at page 30. BSB and BGI's expert, Albert Bloom, stated in his report that the Villa II included the same standard elements found in dozens of other back-to-back townhomes (the "selection" prong), arranged these elements in a standard configuration found in dozens of other back-to-back townhomes (the "arrangement" prong), and combined the elements in standard combinations found in dozens of other back-to-back townhomes (the "combination" prong). *See* Expert Disclosure of Albert Bloom at pages 16-23, Exhibit F to the March 8, 2004 Affidavit of Holly Newman, Docket No. 357. BSB and BGI recognize that the Court need not adopt the position advocated by its expert, but in this instance *this testimony is unrebutted.* Rottlund offered no evidence whatsoever to contradict Mr. Bloom's assertions. The Court cannot reject the testimony of Albert Bloom in favor of a position completely unsupported in the record, and it was erroneous for the Report to do so. BSB and BGI respectfully submit that the record before the Court supports *only* the conclusion urged by BSB and BGI: that the Villa II is a standard arrangement of standard features in a standard configuration, and thus not subject to copyright protection.

In reaching the conclusion that the Villa II's selection and arrangement of features was susceptible of copyright protection, the Report applied the validity standard to the standard for

substantial similarity, an approach which was expressly rejected by the Ninth Circuit in *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994). Although the *Apple Computer* court recognized that copyrights may be valid based upon an original selection and arrangement of unprotected elements, the Ninth Circuit held that the party claiming infringement "may place '*no* reliance upon any similarity in expression resulting from' unprotectible elements." *Id.* (quoting *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987)). "Otherwise, there would be no point to the extrinsic test, or to distinguishing ideas from expression." *Id.* at 1446. Thus, unprotectible elements have to be identified and filtered out before the works can be considered as a whole. *Id.* Only <u>after</u> the court has defined the scope of the copyright by filtering out unprotected elements and applying the doctrines of merger and *scenes a faire* can the intrinsic or subjective test be evaluated. *Id.* at 1443; *see also Eve of Milady v. Impression Bridal, Inc.*, 986 F. Supp. 158, 160 (S.D.N.Y. 1997) ("In cases involving a design with both protectible and unprotectible elements … the finder of fact may not rely on overall impressions to determine whether unlawful appropriation has occurred. Rather the Court must compare only the protected portions of the design to determine whether infringement has occurred.").

In *Apple*, the plaintiff argued on appeal that the appropriate standard for substantial similarity was "an *overall comparison* of its works to the accused works for *substantial similarity* rather than virtual identity." *Id.* at 1442. (emphasis in original). Rejecting this theory, the *Apple Computer* court explained:

> As it has evolved, however, the extrinsic test now objectively considers whether there are substantial similarities in *both* ideas and expression, whereas the intrinsic test continues to measure expression subjectively. Because only those elements of a work that are protectable and used without the author's permission can be compared when it comes to the ultimate question of illicit copying, we use analytic dissection to determine the scope of copyright protection before works are considers "as a whole."

*Id.* at 1442-43 (citations omitted).

The Ninth Circuit recently reaffirmed its rejection of the "total concept and feel" test for copyright infringement by awarding attorneys fees against a plaintiff who attempted to apply this standard. *See Domingo Cambeiro Prof. Corp. v. Advent*, 211 F.3d 1273, 2000 WL 262597 (9th Cir. 2000). In *Domingo*, the district court granted the motion for attorney fees on the ground that the plaintiff's position on the copyright claim was objectively unreasonable. *Id.* at *1. The district court concluded that, by steadfastly objecting to the court's use of analytic dissection under the extrinsic test, "Cambeiro failed to identify any specific similarities between the Cambeiro Works and the New York Hotel." *Id.* Instead, Cambeiro relied on the theory that its selection, arrangement and coordination of famous New York City icons into an integrated facade was entitled to copyright protection. *Id.* The district court found that this theory, "is abhorrent to the principle of copyright law." *Id.* The Ninth Circuit affirmed the district court's decision and held that it was objectively unreasonable for the plaintiff to "oppose the use of analytic dissection under the extrinsic test." *Id*. at *3.

The D.C. Circuit Court's decision in *Sturdza* does not support the Report's standard for the first step of substantial similarity. *Sturdza v. United Arab Emirates*, 281, F.3d 1287 (D.C. Cir. 2002). *Sturdza* affirmed the district court's use of analytic dissection *before* comparing the "overall look and feel" of the two designs in the second step of establishing substantial similarity:

> The district court next "filter[ed] out" those elements of Sturdza' designs it viewed as unprotectible ideas: "domes, wind-towers, parapets, arches, and Islamic patterns." According to the district court, Sturdza's expression of these elements, but not here use of them, is protectable. We agree with this aspect of the district court's decision. In and of themselves, domes, wind-towers, parapets, and arches represent ideas, not expression. Indeed, to hold otherwise would render basic architectural elements unavailable to architects generally, thus running afoul of the very purpose of the idea/expression distinction: promoting incentives for

> authors to produce original work while protecting society's interest in the free flow of ideas.

*Id.* at 1297 (citations omitted).

A concise critique of the Report's proposed change in copyright law is provided by M. Nimmer & D. Nimmer, NIMMER ON COPYRIGHT in the context of the similar "total concept and feel" standard rejected by the Ninth Circuit:

> More broadly, the touchstone of "total concept and feel" threatens to subvert the very essence of copyright, namely the protection of original *expression*. "Concepts" are statutorily ineligible for copyright protection; for courts to advert to a work's "total concept" as the essence of its protectible character seems ill-advised in the extreme. Further, the addition of "feel" to the judicial inquiry, being a wholly amorphous referent, merely invites an abdication of analysis. In addition, "total concept and feel" should not be viewed as a *sine qua non* for infringement -- similarity that is otherwise actionable cannot be rendered defensible simply because of a different "concept and feel." In sum, therefore, the frequent invocations of this standard do little to bring order to the inquiry into what constitutes substantial similarity, and would be better abandoned. The Ninth Circuit, which originally authored this formulation, appears to be moving towards such abandonment.

§ 13.03[A][1][c].

## IV. BSB AND BGI JOIN IN THE OBJECTIONS POSED BY PINNACLE AND TOWN & COUNTRY HOMES.

In addition to the objections contained herein, BSB and BGI join in and adopt the objections of Defendants Pinnacle Corp. and Town & Country Homes as though those objections were fully stated herein.

**MACKALL, CROUNSE & MOORE, PLC**

Dated: September 7, 2004. By: ___s/ Ben Patrick___________________

Holly Newman (MN Bar #26457X)
Ben Patrick (MN Bar #312460)
1400 AT & T Tower
901 Marquette Avenue
Minneapolis, MN 55402-2859
Telephone: (612) 305-1400
Facsimile: (612) 305-1414

Attorneys for Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. and The Bloodgood Group, Inc.

JBP/jbp#714700v1