UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Rottlund Company, Inc., d/b/a Rottlund Homes, a Minnesota Corporation,

Plaintiff,

v.

Pinnacle Corporation, d/b/a Town & County Homes, an Illinois Corporation, Town & County Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,

Defendants,

and

Town & County Homes, Inc., a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

No.: 01-CV-1980 (DSD/SRN)

**TOWN & COUNTRY HOMES, INC.'S MEMORANDUM IN SUPPORT OF ITS OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING SUMMARY JUDGMENT ON VALIDITY, ACCESS, AND COPYRIGHT INFRINGEMENT**

**(ORAL ARGUMENT REQUESTED)**

The issues on appeal to this Court for *de novo* review are: (1) the applicable legal and evidentiary requirements for the first step of the substantial similarity analysis; and (2) whether, viewing all evidence in the light most favorable to the defendants, a genuine issue of material fact exists as to the issues of copyright validity and access to the deposit materials. The Report and Recommendation ("Report") failed to apply applicable Eighth Circuit law in denying Town & Country Homes, Inc.'s ("TCM") motion for summary judgment, misapplied the legal standard of originality to the standard for substantial similarity in granting plaintiff's motion for summary judgment, and failed to recognize issues of material fact precluding summary judgment regarding access and validity.

## I. TCM'S MOTION FOR SUMMARY JUDGMENT.

The Report improperly denied TCM's motion for summary judgment regarding copyright infringement. The only "evidence" provided by the plaintiff to satisfy the first step of substantial similarity is Rottlund's list of unprotectible general similarities.[1] (Docket No. 408, Ex. P). Despite the October 10, 2002 Order compelling Rottlund to provide the alleged similarities in the details of the works at the time of their expert disclosures (Docket No. 106 at 14), Plaintiff failed to make any such disclosure.

Plaintiff's list of alleged similarities is insufficient, as a matter of law, to survive TCM's motion for summary judgment. *Hartman v. Hallmark Card, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987) ("The listing of similarities does not alone generate an issue of material fact precluding summary judgment."); *Kootenia Homes, Inc. v. Reliable Homes, Inc.*, No. 00-1117, 2002 WL 15594, at * 6 (D. Minn. 2002) ("Plaintiff's expert illustrates *generic* similarities between the

[1] Plaintiff's list does not contain objective details of the design ideas. *See Attia v. Society of New York Hosp.*, 201 F.3d 50, 55 (2nd Cir. 1999) ("[T]o the extent that [architectural] plans include generalized notions of where to place functional elements, how to route the flow of traffic, and what methods of construction and principles of engineering to rely on, these are 'ideas' that may be taken and utilized by a successor without violating the copyright of the original 'author' or designer.")

homes. Highlighting similarities in the general ideas of locating functional elements of the home is insufficient to create a genuine issue of fact."); M. Nimmer & D. Nimmer, NIMMER ON COPYRIGHT, § 13.03 [B][2][a] at 13-59 (2003) ("An essential element of an infringement case is that plaintiff must show that defendants' works are substantially similar to elements of plaintiff's work that are copyrightable or protected by the copyright. When similar works resemble each other only in those unprotected aspects, then defendant prevails.").

Rottlund's failure to provide more than a list of general similarities requires rejecting the Report and granting TCM's motion for summary judgment. Although Rottlund's motion for partial summary judgment was limited to it copyrighted technical drawings (and thus, the Report does not apply to Rottlund's claims based on its copyrighted architectural works), TCM moved for summary judgment on substantial similarity with regard to all of Rottlund's copyrights. If this Court grants defendants' summary judgment on this issue, as it should, the case will be substantially resolved.

## II. PLAINTIFF'S "GESTALT THEORY."

Defendants have endured almost three years of litigation premised on plaintiff's contention that a "gestalt theory" of copyright infringement should be adopted by this Court. Rejecting defendants' contentions that discovery should be permitted into the traditional copyright infringement theories, the Magistrate Judge held that the plaintiff was entitled to control the theory of its case and that the viability of the "gestalt theory" would be case determinative. (Docket No. 408, Ex. M at 61 – 62) ("THE COURT: . . . But if it is the Gestault [sic], then we're going to litigate Gestault [sic] here. And if you're right about Gestault [sic], you will win.").

Plaintiff's "gestalt theory" appears in a single case. *John G. Danielson v. Winchester-Conant Properties, Inc.*, 186 F. Supp.2d 1 (D. Mass. 2002), *aff'd on other grounds* 322 F.3d 26 (1st Cir. 2003). However, the *Danielson* court invoked "gestalt theory", without any citation to legal authority" in the context of a dispute over validity, not substantial similarity. *Danielson,* 186 F. Supp.2d at 10.[2] In fact, the defendant in *Danielson* admitted direct copying of the plans. *Id.* at 13.

"Gestalt theory" was rejected in the only other case to discuss the legal theory by name. *Apple Computer, Inc. v. Microsoft C*orp., 799 F. Supp. 1006, 1016 (N.D. Cal. 1992), aff'd *on point*, 35 F.3d 1435, 1445 (9th Cir. 1994). The Ninth Circuit's opinion affirming the rejection of the "gestalt theory" recognized that copyrights may be valid based upon an original selection and arrangement of unprotected elements, but held that the party claiming infringement "may place '*no* reliance upon any similarity in expression resulting from' unprotectable elements." *Id.* (quoting *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987)). "Otherwise, there would be no point to the extrinsic test, or to distinguishing ideas from expression." *Id.* at 1446. Thus, unprotectible elements have to be identified, or filtered, before the works can be considered as a whole. *Id; see also* NIMMER ON COPYRIGHT, § 13.03 [B][2][a].

Finally, Plaintiff's "gestalt theory" is inconsistent with Eighth Circuit law regarding the scope of the first step of substantial similarity. *See Hartman*, 833 F.2d at 120 ("There must be substantial similarity 'not only of the general ideas but of the expressions of those ideas as well.'

[2] Plaintiff has also admitted that it has no methodology for evaluating substantial similarity using its "gestalt theory." (Docket No. 408, Ex. L at 82, line 14 – 83, line 5). It is unclear what methodology the Magistrate Judge employed in applying this legal theory to recommend summary judgment.

First, similarity of ideas is analyzed extrinsically, focusing on *objective similarities in the details of the works*.").[3] (emphasis added).

## III. ANALYTIC DISSECTION AND THE FIRST STEP OF THE SUBSTANTIAL SIMILARITY TEST.

The first part of the substantial similarity test (or "extrinsic test") "focuses on alleged similarities in the objective *details* of the works." *Hoch v. MasterCard Intern. Inc.*, 284 F. Supp.2d 1217, 1222 (D. Minn. 2003) (emphasis added). "A court applying the extrinsic test must 'filter out and disregard the non-protectible elements in making its substantial similarity determination.'" *Id.* (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)).[4] The essence of any claim of copyright infringement is that the defendant must copy the original or "protectable" aspects of the copyrighted work. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). This is because "not all copying is copyright infringement." *Id.* at 361; *see also Attia*, 201 F.3d at 52-3. In fact, the Copyright Act encourages others to "build freely upon the ideas and information conveyed by a work." *Feist*, 499 U.S. at 349-50.

The Report correctly recognizes that analytic dissection is necessary and concluded that "gable entries, lofts, or fireplaces" are mere ideas that cannot form the basis for copyright infringement. (Report at 29). These are the elements that Rottlund identified in its list of general similarities. (*Id* at 29, n. 24). As Rottlund has pled its case, nothing survives analytic filtration.[5]

---

[3] The Report's attempt to equate plaintiff's "gestalt theory" with the "total concept and feel" standard is unavailing because the "total concept and feel" step is the *second* step of a substantial similarity analysis, which only occurs if the plaintiff satisfies the first step. *See Hartman*, 833 F.2d at 120-21.

[4] Analytic dissection must also be applied in this case based upon judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). In opposition to defendants' motion to compel identification of objective details, Rottlund argued that expert testimony and "analytical dissection" was necessary under the extrinsic test. (Docket No. 408, Ex. I at 6) The Court adopted Rottlund's position in its October 10, 2002 Order and postponed the disclosure of the allegedly protectible objective details until expert disclosures. (Docket No. 106 at 14). Thus, Rottlund is barred from now arguing against analytic dissection in the first step for substantial similarity.

[5] The Report incorrectly states that defendants contend that no protectable elements exist in the plaintiff's copyrights. Report at 30. To the contrary, defendants have vigorously attempted to obtain plaintiff's disclosure of the protectable objective details of the design ideas. It is plaintiff's burden to establish its case. Plaintiff's failure to

Rottlund choose, at its own peril, not to identify objective details of the design ideas (despite the October 10, 2002 Order) and identify instead only a list of general similarities – a list that is inconsistent with the Eighth Circuit decision in *Hartman*. *Hartman*, 833 F.2d at 120 ("The listing of similarities does not alone generate an issue of material fact precluding summary judgment.").

The Report incorrectly attempts to manufacture something that survives analytic dissection based upon plaintiff's list of general similarities. The legal error in the Report's analysis is applying the standard for "originality" necessary for "copyright protection" to the standard for establishing substantial similarity for copyright infringement. Report at 30. This standard for substantial similarity is inconsistent with the Eighth Circuit decision in *Hartman* and was specifically rejected by the Ninth Circuit in *Apple Computer*. *Apple Computer*, 35 F.3d at 1446.

Moreover, the Report never explains (as Rottlund has failed to explain) the particular combination of general ideas that is allegedly protectible and substantially similar in the Homestead designs. Simply invoking the phrase "combination of ideas" does not escape the requirements of analytic dissection. The Report recognized that "Rottlund's theory of protectible expression does not involve use of individual elements" (Report at 48), but never explains how this new theory of copyright infringement provides any protection to the constitutionally protected division between ideas and expression. *Feist*, 499 U.S. at 350.

The Report's reliance upon *Sparaco v. Lawler, Matusky, Skelly, Engineers, LLP*, 303 F.3d 460 (2nd Cir. 2002) is misplaced because what the Second Circuit found protectable was "specific expression and realization," or objective details, of the architectural ideas. In this case, however, Rottlund has failed to identify the objective details that it alleges are substantially

provide these details does not mean, as the Report suggest, that unprotected elements should be afforded protection. Rather, it means that plaintiff has failed to establish its case and summary judgment should be granted for defendants.

similar for the necessary first step of substantial similarity. Similarly, in *Sturdza*, the D.C. Circuit Court reversed summary judgment for the defendant and allowed the issue of substantial similarity to proceed to the jury based upon its conclusion that some of the identified objective details could be sufficient for copyright infringement. *Sturdza v. United Arab Emirates*, 281, F.3d 1287, 1297 (D.C. Cir. 2002) ("In and of themselves, domes, wind-towers, parapets, and arches represent ideas, not expression. Indeed, to hold otherwise would render basic architectural elements unavailable to architects generally, thus running afoul of the very purpose of the idea/expression distinction: promoting incentives for authors to produce original work while protecting society's interest in the free flow of ideas.").

This Court's decision in *CSM* similarly held that similarity in the "objective details" can be sufficient to establish substantial similarity. *CSM Investors, Inc. v. Everest Dev., Ltd.*, 840 F. Supp. 1304, 1311 (D. Minn. 1994) ("A comparison of the objective details of the Everest plans and the two sets of CSM plans show there is a similarity of ideas between them."). In this case, however, Rottlund has not identified any objective details, but rather relies upon its list of general similarities.

The effect of the Report's improper conclusion that combinations of ideas can be asserted is evident when the Report applies the asserted "combination of elements" against the alleged products. The Report concludes that its comparison of the deposit materials and alleged products "reveals that there is a similarity of ideas." (Report at 45). This contradicts the Report's previous admission that "[f]acts and ideas are not entitled to copyright protection; anyone may copy either freely." Report at 28, quoting *Feist*, 499 U.S. at 350. The Report then goes on to list that the works are "architectural drawings" that "both depict residential, back-to-back townhomes" that contain similar ideas (a living room, a kitchen, etc.). (Report at 45). However, the Report does

not and cannot analyze the objective details of any of the ideas (such as the objective details of the living room or the objective details of the kitchen) because Rottlund has refused to provide the Court with any objective details to compare.

In contrast, the Expert Report of Jeffrey Scherer analyzes the objective details of the ideas from Rottlund's list of general similarities and concludes that the objective details of the design ideas are not substantially similar. (Docket No. 349, Ex. A).[6] The defendants submitted the only expert reports relating to the first step of substantial similarity. Mr. Scherer's unopposed comparison of the objective details of the design ideas is sufficient to grant summary judgment to TCM. *See Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 945 – 46 (8th Cir. 1992).

Finally, Rottlund has admitted that the majority of the works-at-issue are not substantially similar. Rottlund does not even allege that the interior units of the Homestead Collection are similar to the interior units of the deposit material. Rottlund also admits that the second floors of the exterior units are different from the second floor of the deposit materials. Finally, the elevations (or exterior) of the units were not identified by Rottlund in either its complaint or its discovery answers as an alleged similarities. (Docket No. 408, Ex. P).

## IV. ACCESS TO THE TECHNICAL DRAWINGS.

Rottlund must establish access to the specific deposit material at issue (the particular Rush Creek Villa II architectural drawings), not simply access to "Rottlund's technical drawings" in general. The Report incorrectly concludes that TCM had access to the deposit materials through its employees Tim Johnson, Dan Geegan, Joey Zorn, and Marc Harris.

[6] Mr. Scherer's statement that the accused building and deposit materials have similarity in ideas (end units, interior units, two-car garages) **does not** support the Report's statement that Mr. Scherer agrees "that the designs share similarity in the details of the objective ideas." (Report at 46). To the contrary, this statement is directly contrary to the conclusion of Mr. Scherer's Report.

Tim Johnson did not join TCM until May of 2002. Affidavit of Darren Schwiebert in Support of Objections to Report and Recommendation, Ex. A at 35. Thus, if Tim Johnson imparts "access" to TCM, such access (necessary to establish infringement) cannot begin until May of 2002 and, likewise, access (and infringement) cannot exist before that time. Moreover, the Homestead Collection designs were completed by BSB in 2000, if not earlier. Access and substantial similarity are the circumstantial evidence test used to evaluate copying. Thus, TCM's access via Tim Johnson in 2002 cannot not establish circumstantial evidence of copying in 2000.

Rottlund has provided no evidence that Dan Geegan, Joey Zorn, or Marc Harris had access to the particular Rush Creek Villa II architectural drawings at issue. Rottlund never took the deposition of Geegan, Zorn, or Harris. Rottlund's only "evidence" is the hearsay testimony of a subsequent employee (Karen Albertson) that she believed that Dan Geegan would have had access to technical drawings, a fact that Karen Albertson has no direct knowledge. This testimony is also not specific to the deposit material. Finally, similar to Tim Johnson, these individuals joined TCM after the Homestead Collection designs were completed.

Finally, the Report relies upon the alleged access to the sprinkler room designs. However, the Report concludes that the sprinkler room is irrelevant because "infringement of individual elements in this case cannot be the basis for liability." Report at 37-38. The alleged copies of the sprinkler room designs did not include the remainder of the townhomes. Moreover, this would establish, at most, access to only registration VAu 546-285 and not VAu 447-395.

## V. FACT QUESTIONS PRECLUDE SUMMARY JUDGMENT OF VALIDITY

If a registrant fails to disclose that the work is derivative of other copyrighted material, the copyright is invalid. *Garner v. Sawgrass Mills Ltd. Partnership*, 1994 WL 829978, 35 U.S.P.Q.2d 1396, 1403 (D. Minn. 1994).

Rottlund admits that both VAu 447-395 and VAu 546-285 contain material misrepresentations regarding the derivative nature of the works. The registrations at issue are derivatives of the so-called "original villa," and this was withheld from the Copyright Office. Rottlund also admitted, during its 30(b)(6) deposition, that AFI designed the so-called "original Villa." Thus, the copyrights at issue are invalid because Rottlund failed to disclose that the copyrights are the derivative of works owned by AFI. *See Garner*, 35 U.S.P.Q.2d at 1403.

The Report attempts to overcome these unambiguous challenges to the validity of the copyrights at issue by stating nothing in the record suggests that the failure was intentional or fraudulent. To the contrary, all of the evidence in the record indicates that Rottlund knew that the works were derivatives and failed to disclose their derivative nature.

## CONCLUSION

TCM asks this Court to reject the Report and grant TCM's motion for summary judgment of non-infringement.

Dated: September 7, 2004

s/Darren B. Schwiebert
Daniel J. Maertens (#188311)
Cynthia Jokela Moyer (#211229)
Darren B. Schwiebert (#260642)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Telephone: (612) 492-7312
Facsimile: (612) 492-7077

ATTORNEYS FOR DEFENDANT
TOWN & COUNTRY HOMES, INC.