UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,

Plaintiff,

v.

Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,

Defendants,

and

Town & Country Homes, Inc., a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

Civil No. 01-1980 (DSD/SRN)

**DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS AND PLANNERS OF IOWA, INC., AND THE BLOODGOOD GROUP, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON NON-COPYRIGHT CLAIMS AND AFFIRMATIVE DEFENSES**

Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. ("BSB") and The Bloodgood Group, Inc. ("BGI") submit the following Reply Memorandum of Law in Support of Their Motion for Summary Judgment as to Rottlund's non-copyright claims and certain of BSB and BGI's affirmative defenses.

## I. ROTTLUND HAS FAILED TO PRODUCE ANY EVIDENCE TO COUNTER BSB AND BGI'S EVIDENCE OF INDEPENDENT CREATION.

Rottlund relies on six allegations in an attempt to overcome BSB and BGI's evidence of independent creation:

1. the presence of Rottlund brochures in files for other BSB projects;
2. that BSB toured products, including Rottlund's;
3. that Art Plante placed a photograph of the Villa II end entry awning on a redlined plan;
4. that BSB's Homestead Collection files contained sprinkler room drawings taken, by Metro Fire Protection, from Rottlund's drawings;
5. that former Rottlund employees work at TCM; and
6. that one of Pinnacle's employees stated that the Homestead Collection and the Villa II are "obviously similar."

Each allegation is discussed below. Whether considered separately or collectively, however, the fact remains that none of these allegations contradict the plain testimony of BSB's employees that they independently created the Homestead Collection.

### A. The presence of Rottlund brochures in files for other BSB projects is of no consequence on the issue of independent creation.

Rottlund points to two prior BSB products, one for Midland Homes and one for Jerry's Homes, and argues that, since Larry Moore reviewed marketing files that contained drawings of Midland Homes and Jerry's Homes before designing the Homestead Collection, the presence of Rottlund materials in the project files for those projects (which Larry Moore did not access or review) obviates any claim of independent creation. Rottlund relies on snippets of testimony and isolated exhibit references in the attempt to argue that the Midland Homes and Jerry's Homes townhomes somehow infringe on Rottlund's Villa townhome. Rottlund neglects to mention that:

1. Larry Moore has testified that he did not copy Rottlund's New Villa when designing Midland Homes, see Transcript of the Deposition of Larry

Moore at pages 219-220, 232, and 279, attached as Exhibit A to the Supplemental Affidavit of Ben Patrick submitted herewith;

2. Linda Alfson of Design Development has also testified that she was not instructed to copy Rottlund's product in connection with the Midland Homes project, see Transcript of the Deposition of Linda Alfson at pages 21-23, attached as Exhibit B to the Supplemental Affidavit of Ben Patrick submitted herewith;
3. Al Bloom has opined that the Midland Homes product is not substantially similar to Rottlund's New Villa, see Supplemental Expert Disclosure of Albert Bloom, attached as Exhibit C to the Supplemental Affidavit of Ben Patrick submitted herewith;
4. Rottlund's expert, Anthony Desnick, did not compare the Midland Homes product to Rottlund's New Villa, see Transcript of the Deposition of Anthony Desnick at page 183, attached as Exhibit D to the Supplemental Affidavit of Ben Patrick submitted herewith;
5. BSB had completed its design for Jerry's Homes before the developer faxed BSB a brochure for Rottlund's New Villa, see Affidavit of Chris Jorgensen in Support of BSB and BGI's Motions for Partial Summary Judgment, attached as Exhibit E to the Supplemental Affidavit of Ben Patrick submitted herewith;
6. Chris Jorgensen has testified that the Rottlund brochure was faxed to BSB in connection with a discussion about promotional artwork, not design modifications, see id.;
7. After receiving the New Villa fax, BSB made three minor design changes for the Jerry's Homes product, none of which made the Jerry's Homes product look more like the New Villa, and none of which were made because of BSB's receipt of the New Villa fax, see id.; and
8. Rottlund's expert, Anthony Desnick, did not compare the Jerry's Homes product to Rottlund's New Villa, see Transcript of Anthony Desnick's Deposition at pages 62-63, attached as Exhibit E to the Affidavit of Ben Patrick previously submitted.

Thus Rottlund's argument, though novel, lacks the elementary evidentiary support necessary to be viable. *If* Rottlund had evidence that the Midland Homes product and/or the Jerry's Homes product infringed on the New Villa, this argument *might* be viable. However, no such evidence exists---indeed, the record tends to demonstrate that Rottlund affirmatively avoided developing such evidence, perhaps because its own expert was unwilling to opine that either the Midland Homes product or the Jerry's Homes product was substantially similar to the New Villa. Although the Homestead Collection includes

standard arrangements of standard features that are also found in Midland, Jerry's Homes, and many other back-to-back townhomes, the only evidence in the record (Al Bloom's testimony) establishes that the Homestead Collection is not substantially similar to either product, and instead represents Larry Moore's original, independent creation.

**B. The product tour does not rebut independent creation.**

Rottlund argues that, because BSB took a tour of housing products in Minneapolis which included Rottlund's Villa II, BSB could not have independently created the Homestead Collection. Rottlund incorrectly conflates the tour, which is evidence of access to Rottlund's architectural works, with the idea of independent creation. Access to the copyrighted work is part of Rottlund's claim in chief which it must prove. Independent creation is an affirmative defense which affords BSB a complete defense, *even if* Rottlund makes a prima facie case. Thus, evidence of access has no bearing on the issue of independent creation---an author may have access to the copyrighted works of another, and yet independently create his or her own work. Albert Bloom, in his report, states that touring product is a normal practice for architects, and not evidence of copying. <u>See</u> Expert Disclosure of Albert Bloom, attached as Exhibit B to the Affidavit of Ben Patrick previously submitted, at pages 9-11. Furthermore, both Chris Jorgensen and Larry Moore have testified that they saw nothing on the tour which they had not seen many times before, in products sold by many different builders. <u>See</u> Transcript of the Deposition of Chris Jorgensen at page 197-98, attached as Exhibit F to the Supplemental Affidavit of Ben Patrick submitted herewith; Transcript of the Deposition of Larry Moore at page 293, attached as Exhibit G to the Supplemental Affidavit of Ben Patrick submitted herewith.

**C. The photograph of Rottlund's end entry gabled awning does not rebut independent creation.**

Once again, Rottlund misconstrues a bit of evidence that supports their claim of access with evidence that could rebut independent creation. When the end entry doorway and gabled awning for the Homestead Collection is compared to the end entry doorway and gabled awning for the Villa II, it is quite clear that the two are not identical, and indeed, are not even that similar. Thus, Art Plante's handwritten instruction was not a command for BSB to copy Rottlund. The facts conclusively demonstrate that BSB did not copy Rottlund; rather, it created its own gabled awning. Furthermore, as the Court noted in its August 20 Report and Recommendation, "infringement of individual elements in this case cannot be the basis for liability." Report, at page 38. Finally, a gabled roof over an entry is a standard feature that has been used by BSB on myriad products designed before the Homestead Collection. See Expert Disclosure of Albert Bloom at page 22, Exhibit B to the Affidavit of Ben Patrick previously submitted. Evidence which could not be used to prove that the Homestead Collection is substantially similar to the Villa II can not be used to rebut independent creation.

**D. The presence of Rottlund's Villa II sprinkler room drawing in BSB's files does not rebut independent creation.**

As noted above, the Court has previously rejected Rottlund's attempt to use the sprinkler room drawings as a basis for liability. Just as importantly, the record demonstrates that BSB *did not* copy Rottlund's sprinkler room design. Chris Jorgensen, in his affidavit, identified 15 differences between the sprinkler room BSB designed and the Villa II sprinkler room. See Affidavit of Chris Jorgensen in Support of BSB and BGI's Motions for Partial Summary Judgment at ¶ 15, attached as Exhibit E to the

Supplemental Affidavit of Ben Patrick submitted herewith. Like the side entry, this evidence *supports*, not rebuts, a finding of independent creation---even though BSB had the Villa II sprinkler room drawing in its possession, BSB still did not copy Rottlund, but rather produced a sprinkler room design of its own.

**E. The presence of former Rottlund employees at TCM does not rebut independent creation.**

Rottlund advances no real argument as to *why* TCM's employment of former Rottlund employees would rebut BSB's claim of independent creation, other than to note that one of these former Rottlund employees faxed BSB a portion of the Villa II sprinkler room. Because the sprinkler room issue is dealt with above, and because Rottlund advances no further argument on this issue, there is no need for further analysis. Once again, evidence of access can not be used to rebut the affirmative defense of independent creation. If evidence of access *could* be so used, no defendant could ever assert an independent creation defense, for the defense is not asserted until after the plaintiff has proven a *prima facie* case, which of necessity means that the plaintiff has proven access.

**F. Steve Sandelin's fax has no bearing on the issue of independent creation.**

It is doubtful that the Court has had a motion hearing in this case (on any subject) in the last two years in which Steve Sandelin's fax has not been championed by Rottlund as an answer to whatever argument the defendants might make. In this instance, no amount of effort on Rottlund's part can stretch Mr. Sandelin's statements so that they bear on the issue confronting the Court. Steve Sandelin had no knowledge---one way or another---regarding whether or not BSB independently created the Homestead Collection. Read in the light most favorable to Rottlund, Sandelin's fax can be construed as asking

BSB whether they independently created the Homestead Collection. Thus, while the fax might pose the very question posed by this motion, it does not supply an answer.

**G. Anthony Desnick's opinions have no bearing on this issue.**

Finally, Rottlund argues that, because the evidence discussed above was enough to convince Anthony Desnick that BSB copied Rottlund, the Court should reject BSB's argument. Rottlund urges that Desnick reached this opinion "based upon his education, training and experience as an architect…." Rottlund's Memorandum at page 34. This contention begs the question: what part of Desnick's training or experience imparted to him the ability to divine whether an architect independently created a product or copied it? Desnick's deposition testimony offers the answer: he has no such training. Rottlund's argument is little more than an attempt to gloss over the holes in its case by adding the patina of expert opinion to them. In sharp contrast, Albert Bloom has over 34 years of experience designing residential products for production builders, and has opined that the documents in BSB's files demonstrates that BSB independently created the Homestead Collection. Curiously, Rottlund has failed to produce similar evidence (schematic drawings, design development drawings, redlines, etc.) demonstrating that it created the Villa II.

**H. BGI can properly claim that it independently created the Washington Square product.**

In footnote 15 on page 11 of Rottlund's Memorandum of Law Opposing this motion, Rottlund suggests that BGI has, in claiming it independently created the Washington Square product, taken a position somehow at odds with positions taken previously in the litigation. While Rottlund does not give this contention much thought (hence its relegation to a footnote), BGI takes seriously any suggestion that its

representations to the Court have been anything other than honest. The undisputed facts developed during this litigation prove that:

1. BSB of Illinois contracted with Pinnacle to produce the Washington Square product, see Contract between BSB of Illinois and Pinnacle, attached as Exhibit H to the Supplemental Affidavit of Ben Patrick submitted herewith; and

2. BSB of Illinois used Doug Buster, an employee of BGI acting as an independent contractor, to do the design work associated with producing the Washington Square product, see Transcript of the Deposition of Douglas Buster at pages 67-79, attached as Exhibit I to the Supplemental Affidavit of Ben Patrick submitted herewith.

Thus, Rottlund's representations are without merit. BGI's arguments made in connection with this motion are entirely in conformity with the position it has taken throughout the litigation.

## II. THE VILLA II IS ENTITLED ONLY TO "THIN" COPYRIGHT PROTECTION.

In Section IV(B) of its original Memorandum of Law in support of this Motion, BSB and BGI argued that, if the Villa II is entitled to any copyright protection at all, that copyright protection is "thin". Rottlund now contends that the Court's August 20, 2004 Report and Recommendation (the "Report") make this issue moot. BSB and BGI agree that the Report's analysis indeed answers this question. However, BSB and BGI contend that the Report's analysis makes it clear that Villa II is entitled only to "thin" protection, and ask that the Court now make such a ruling.

When a copyright-protected work consists of a unique arrangement of otherwise common or generic features, the work is entitled only to "thin" copyright protection, which protects only the unique arrangement of these features, and not the features themselves. See, e.g., Feist Publications, Inc. v. Rural Telephone Service Company, 499 U.S. 340, 349-351 (1991); Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 136 (2nd Cir. 2003); Domingo Cambeiro PA v. Advent, 2000 WL 262597, *3 (9th Cir. 2000). The Court, in finding in Rottlund's favor regarding the first step of the substantial similarity analysis, noted that "[i]mportantly, Rottlund does not claim protection in any one individual element but asserts that its selection, arrangement, and coordination of the elements is protectible." Report at page 29. The Court concluded that "[a]s urged by Rottlund…the selection, arrangement, and combination of the elements expressed in the technical drawings are sufficiently original and detailed to be afforded copyright protection." Report at page 30. These findings are the very *essence* of a finding of "thin" copyright protection. Pursuant to the doctrine of judicial estoppel, Rottlund cannot escape summary judgment on the argument that the Villa II's selection, arrangement and combination of elements is entitled to copyright protection but now claim otherwise. Hence, the Report's analysis mandates a finding of only "thin" copyright protection. BSB and BGI respectfully request that the Court limit the Villa II to "thin" copyright protection in accordance with the plain text of the Report[1].

---

[1] BSB and BGI have filed objections to the August 20, 2004 Report and Recommendation, but have not objected to the Court's conclusion that the Villa II is protectible only as to its selection and arrangement of standard features.

## III. ROTTLUND'S NON-COPYRIGHT CLAIMS SEEK TO PROTECT THE SAME RIGHTS PROTECTED BY THE COPYRIGHT ACT, AND ARE THEREFORE PREEMPTED BY THE COPYRIGHT ACT.

The Copyright Act preempts all "causes of action based on a right found in the Act or an equivalent to such a right." Foley v. Luster, 249 F.3d 1281, 1285 (8th Cir. 2001). Thus, the Court must determine whether Rottlund's Lanham Act and Uniform Deceptive Trade Practices Act claims seek to protect rights which are equivalent to the rights protected by the Copyright Act.

### A. Rottlund does not have a valid "reverse passing off" claim under the Lanham Act.

In its brief, Rottlund frames its Lanham Act claim as a "reverse passing off" claim, and supports this contention with several citations (devoid of analysis) to the Second Circuit. Yet, the Second Circuit has held that the elements of a reverse passing off claim are "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." Lipton v. The Nature Co., 71 F.3d 464, 472 (2nd Cir. 1995). In this instance, there is no dispute that the work at issue, the Homestead Collection, did not *originate* with Rottlund. Rottlund may allege that the originators of the Homestead Collection, BSB and BGI, created a product which is impermissibly close to a product originated by Rottlund, but there is no dispute that Rottlund did not itself design the Homestead Collection. Under this factual and procedural framework, Rottlund can have no valid reversing passing off claim. Rottlund's miscites Waldman Publishing Corp. v. Landoll, Inc., 43 F.3d 775 (2nd Cir. 1994), for the proposition that "using a slightly modified product of another and

identifying it as your own constitutes a false designation of origin in violation of the Lanham Act." Rottlund's Memorandum at page 18. Rottlund neglects to mention that Waldman involved the "reproduction of a work…" Waldman, 43 F.3d at 781. It cannot be sincerely argued that the Homestead Collection is a reproduction of the Villa II, nor has any party or witness so contended. Rottlund's use of Waldman in this connection is misleading, for that case has no application under the facts of this case. For this reason, Rottlund's Lanham Act claim should be dismissed whether or not it is preempted.

**B. Rottlund's "Background Facts" section reveals that its non-copyright claims seek to protect precisely the rights protected by the Copyright Act.**

In the "Background Facts" section of its Memorandum[2], Rottlund makes several allegations which tellingly reveal the intention of its non-copyright claims (all citations are to Rottlund's Memorandum of Law):

- "Rottlund was never given credit as the original creator of the design from which the Homestead Collection was copied." Memorandum at page 16.
- "the Town & Country Homes Defendants never gave credit to Rottlund. . . None of their submissions seeking community development approval from various municipalities gave any credit to Rottlund. . ." Id.
- "Rather than crediting Rottlund as the originator of the designs from which the Homestead Collection designs were copied. . ." Id.

These passages make it clear that the rights Rottlund seeks to protect through its non-copyright claims (the right to be credited as the author of a work) are equivalent to the rights protected by the Copyright Act. Indeed, in this case, the right Rottlund seeks to protect through its non-copyright claims is a right *explicitly* protected by the Copyright

---

[2] Rottlund presumably titled this section "Background Facts" rather than the more conventional "Statement of Undisputed Facts" because it intended to fill the section with facts that are hotly contested. Of course, such facts have no place in a summary judgment motion, but Rottlund's attempt to create a factual issue is unavailing, as these facts have no bearing on the purely legal question posed to the Court.

Act: the right to attribution for works one has authored. Thus, Rottlund's non-copyright claims are preempted by the Copyright Act, and should be dismissed.

**C. Rottlund's "reverse passing-off" claim is preempted.**

Should the Court conclude that Rottlund's reverse passing off claim has a possibility of being legally supportable, the next question is whether the claim is preempted. Once again, Rottlund looks to the Second Circuit for support, but once again, the cases from that Circuit do not support Rottlund's position. In Weber v. Geffen Records, Inc., 63 F.Supp.2d 458 (S.D.N.Y. 1999), the court stated that "[f]or the Lanham Act to apply to a copyright-based claim, an aggrieved author must show more than a violation of the author's copyright-protected right to credit and profit from a creation." Weber, 63 F.Supp.2d at 463. The court noted that, "[a]ware that nearly every copyright-based claim involves a charge of improper failure to credit a purported author, the Second Circuit has limited the extent to which a copyright-based claim may support a Lanham Act claim, repeatedly cautioning that 'we reject . . . attempt[s] to convert all copyright claims into Lanham Act violations.'" Id. (quoting Lipton, 71 F.3d at 473). In dismissing the plaintiff's reverse passing off claim, the court held that "plaintiff's Lanham Act claim is impermissible because it would essentially duplicate a Copyright Act claim. Plaintiff's allegations are those of a standard copyright violation. As support for a Lanham Act claim, they do not show the requisite affirmative action of falsely claiming originality beyond that implicit in any allegedly false copyright." Id. at 464. The words of the Weber court could just as easily be used, verbatim, to describe Rottlund's claim.

The court in Armstrong v. Virgin Records, Ltd., 91 F.Supp.2d 628 (S.D.N.Y. 2000), reached the same conclusion:

> While [the plaintiff] has contended that the attribution of [the challenged work] to [defendants] constituted a false description of authorship and copyright ownership cognizable under the Lanham Act, a review of both the record and the Complaint reveals that, even when viewed in the light most favorable to [the plaintiff], his claims under the Lanham Act essentially track those asserted under copyright law. Any claim of false originality on the part of the defendants in this action does not venture beyond that implicit in any allegedly false copyright.

Armstrong, 91 F.Supp.2d at 633 (citing Agee v. Paramount Communications, 59 F.3d 317, 327 (2nd Cir. 1995); Weber, *supra*; Richard Feiner & Co. v. H. R. Industries, Inc., 10 F.Supp.2d 310, 316 (S.D.N.Y. 1998)). Once again, the words of the Armstrong court could just as easily describe the claim Rottlund advances in this litigation.

Rottlund relies upon the law of the Second Circuit to save its Lanham Act claim, yet an analysis of the law of that Circuit reveals deep hostility to Lanham Act claims which repackage copyright claims. The courts have repeatedly held that when a plaintiff bases its Lanham Act claim on allegations of failure to correctly attribute authorship, the claims are *per se* preempted. Rottlund's arguments in connection with this motion reveal that it relies on precisely those facts---failure to identify Rottlund as the author, and a false claim of authorship by TCM and Pinnacle---to support its Lanham Act claim. For this reason, BSB and BGI respectfully request that the Court hold that Rottlund's Lanham Act claims seek to protect a right equivalent to the rights protected by the Copyright Act, and accordingly dismiss these claims as preempted.

**D. Rottlund's Deceptive Trade Practices Act claim is preempted.**

Rottlund relies on citations to hornbooks and the opinions from other courts to support its contention that its Deceptive Trade Practices Act claim is not preempted by its Copyright Act claim. Yet, Rottlund's argument misses a fundamental point: BSB and BGI are not arguing that *all* Deceptive Trade Practices Act claims which could be

brought by all potential plaintiffs are uniformly preempted by the Copyright Act; rather, BSB and BGI argue that the particular claim pressed by Rottlund, supported by the allegations Rottlund has made, is preempted by the Copyright Act. In this respect, all claims must be weighed on an individual basis, to determine whether a particular plaintiff has chosen a claim which is preempted. BSB and BGI submit that the allegations with which Rottlund supports its Deceptive Trade Practices Act claim---allegations of false statements of authorship and failure to credit Rottlund as the author---require that *this* claim be held to be preempted, even if other plaintiffs in other cases have styled their claims so as to avoid preemption. The allegations in this case indicate that Rottlund's Deceptive Trade Practices Act seeks to protect a right equivalent to the rights protected by the Copyright Act, and should therefore be dismissed as preempted.

**MACKALL, CROUNSE & MOORE, PLC**

Dated: September 7, 2004.

By: s/Holly Newman
Holly Newman (MN Bar #26457X)
Ben Patrick (MN Bar #312460)
1400 AT & T Tower
901 Marquette Avenue
Minneapolis, MN 55402-2859
Telephone: (612) 305-1400
Facsimile: (612) 305-1414

Attorneys for Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. and The Bloodgood Group, Inc.

JBP/jbp#714879v1