Court File No. 01-1980 / ROTTLUND / Pinnacle
Krummen Affidavit dated September 8, 2004

# FILED UNDER SEAL

EXHIBITS R49 – R50

Exhibit R51

Volume 17, Issue 2 1998

Your Builder for Life

# ROTTLUND HOMES™

# HAPPENINGS



Exhibit R52

# Welcome To The Wide Open Sp



EXHIBIT NO. 110A
6-9-04
P. MAHON

townandcountryhomesmn.com

*Lots of natural light and high ceilin*
*See for yourself at townandcountry*

42 years. Over 100 communities. One homebui
Our national resourcefulness and strength, cou
mitment, offer you so much more design, qua
your money. So why settle for ordinary when w
day at Town & Country.

## BLAINE

### THE FAIRWAYS AT DEACON'S WALK

Players Collection - Single Family Homes from the
Masters Collection - Single Family Homes from t
Phone 763-795-8909
To visit: Take I-35 W North to Lexington Road (Exit 3
Proceed 1/2 mile to a left on 109th street. Proceed
Players Parkway, straight to a left on Arnold Palmer
Sales Center on right.

## LAKEVILLE

### CROSSWINDS

Premier Collection - Townhomes from the $130's
Phone 952-898-2787
To visit: Take I-35 W South to a left on County Roac
Turn right onto Jaguar Avenue. Proceed to a left on

## MAPLE GROVE

### THE GROVE AT ELM CREEK

Players Collection - Single Family Homes from th
Phone 763-416-2225
To visit: Take I-94 West to a left on Weaver Lake Ro
Proceed to a left on Nottingham Parkway. Turn righ
Everest Lane to Sales Center on left.

### CENTENNIAL CROSSING

Premier Collection - Townhomes from the $140's
Phone 763-416-3905
To visit: Take I-94 West to a left on Weaver Lake Roa
on Dunkirk Lane N. to a right on 90th Place N., to ri

Homestead Collection - Townhomes from the $1
Phone 763-416-0406
To visit: Take I-94 West to a left on Weaver Lake R
to a left on 90th Place N. Models on right.

Signature Collection - Single Family Homes fron
Phone 763-416-0401
To visit: Take I-94 West to a left on Weaver Lake R
to a left on 89th Avenue N. Turn right on Garland



TOWN & COUN

THE EXCITEMENT

Open 11-6 daily. Brokers warmly we
Minnesota Builder #9137
© 2001 Town & Country Homes. Prices subjec

Court File No. 01-1980 / ROTTLUND / Pinnacle
Krummen Affidavit dated September 8, 2004

# FILED UNDER SEAL

EXHIBITS R53 – R58

Exhibit R59

Only the Westlaw citation is currently available.

NOTICE: THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.

**Estate of Hildur P. HOLLANDER, Decedent.**

**No. C8-99-1085.**

Jan. 25, 2000.

James P. Mulvahill, Luther, Heckt, Cameron, & Mulvahill, P.L.L.P., Minnetonka, MN, for appellant John Hollander.

Luther M. Amundson, Gregory J. Duncan, Maser & Amundson, Edina, MN, for respondent Roger Hollander.

Considered and decided by HARTEN, Presiding Judge, KALITOWSKI, Judge, and SHORT, Judge.

UNPUBLISHED OPINION

HARTEN.

*1 A decedent's will specifically devised a parcel of land in equal shares to the decedent's four adult children. The district court authorized and directed the sale of that parcel. One of the children challenges the order for sale, alleging that the order was insufficient to transfer title to the property because of lack of consent of all four specific devisees.

FACTS

By last will and testament dated December 18, 1984, Hildur P. Hollander devised her interest in her Maple Grove farm to her four children as follows:

I hereby give, devise and bequeath the following property in the following manner:
* * *

C. *Maple Grove Farm.* I give and devise my interest in the farm property located in Maple Grove, Hennepin County, Minnesota, in equal shares to my four (4) children.

Decedent's will was duly filed for probate. Thereafter, by order dated April 23, 1986, respondent Roger Hollander and appellant John Hollander (two of the decedent's four children) were formally appointed co-personal representatives of the estate. On November 20, 1998, respondent filed a petition requesting removal of appellant as a co-personal representative. Meanwhile, on January 8, 1999, the district court authorized the estate to solicit and receive written offers to purchase the farm property.

On February 1, 1999, the district court approved the offer of Town and Country Homes to purchase the farm property and authorized the estate to accept that offer. But Town and Country Homes then terminated the transaction. Additional purchase offers were solicited. Appellant submitted a bid through an entity called Hollander Partnership. Three other offers were also submitted, including a new offer from Town and Country.

On May 19, 1999, respondent again sought a district court order permitting him to sell the farm property. By order of May 20, 1999, the district court granted his request and approved the sale of the farm to Town and Country Homes. Respondent sold the farm property. This appeal followed.

DECISION

Appellant contends that the estate cannot convey real property devised to a specific devisee without the specific devisee's consent or a court order directing the specific devisee to transfer title. Appellant cites *In re Estate of Van Den Boom,* 590 N.W.2d 350 (Minn.App.1999), *review denied* (Minn. May 26, 1999), for the proposition that a personal representative's power to sell real property is restricted where property has been specifically devised. But reliance on *Van Den Boom* is

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

misplaced. *Van Den Boom* does not address what mechanism is sufficient to transfer title to a specifically devised parcel of property. Rather, *Van Den Boom* stands for the proposition that the life tenant of a homestead cannot defeat the expectant estate of the remaindermen. *Id.* at 353. In *Van Den Boom,* the personal representative sold the homestead with only the consent of the life tenant--decedent's widow. *Id.* Because the personal representative failed to obtain the consent of the remaindermen, we reversed the sale. *Id.* at 352-353

***2** Appellant argues that as a specific devisee he did not consent to the sale of the farm property. We disagree. An order of the district court and appellant's own testimony demonstrate that he did consent to the sale of the property.

When respondent filed the first petition for approval and acceptance of an offer to purchase the property, appellant contested the petition and a hearing was held. The parties arrived at a stipulated agreement that was contained in the district court's order of January 8, 1999. The order finds:

The parties have stipulated that neither this order nor the subsequent order of the court approving [the] sale of the real property may be appealed by any party in their personal or representative capacities, and that all parties have waived their rights to appeal this Order or the subsequent Order of the Court approving sale of the real property.

On February 1, 1999, the district court issued an order authorizing and approving the sale of the farm property to Town and Country Homes, but Town and Country Homes later withdrew its offer. Additional offers were then solicited and received. Again, in an order dated May 20, 1999, the district court approved the sale and authorized the estate to accept a new purchase offer from Town and Country Homes (the conveyance language of the May 20, 1999, order is identical to that of the February 1, 1999, order).

Appellant contends that the stipulation clause pertained only to the February 1, 1999, order. But the parties' stipulation memorialized in the January 8, 1999, order by its own terms applies to the "subsequent order of the court approving [the] sale of the real property." The May 20, 1999, order is functionally a renewal or extension of the February 1, 1999, order and, as such, we conclude that the stipulation clause carried over to the May 20, 1999, order as evidence of appellant's consent to the sale of the property.

Moreover, we note the following testimony of appellant at the May 19, 1999, hearing:

Q: Okay. Is it your desire to have the Court approve one of the four Purchase Agreements -

A: Yes

Q: that have been submitted?

A: Yes.

Q: And you are requesting that the Court approve one of the four Purchase Agreements because you and the other co-personal representative, your brother Roger Hollander, have not reached an agreement as to which of the Purchase Agreements is in the best interests of the estate, is that right?

A: Yes it is.

Accordingly, the record demonstrates that appellant consented to the sale of the property to one of the four buyers and because the district court approved the sale to one of those buyers, we conclude the district court's order lawfully transferred the farm property to Town and Country Homes.

Finally, appellant challenges the district court's determination that the sale of the farm property to Town and Country Homes served the best interests of the estate and its beneficiaries. Specifically, appellant argues that Pulte Homes Corporation submitted the best offer because it offered $358,000 more than Town and Country's $4,250,000 offer. But the district court found that Town and Country's offer was better because its closing would occur just 10 days after court approval, thereby providing immediate cash to the estate. In addition, the district court found that the Pulte Home's offer was less beneficial to the estate because it was "contingent, with a 180-day due diligence period, and closing

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

[was] not scheduled until April 1, 2000." The district court's findings were not clearly erroneous.

***3** Affirmed.

2000 WL 54398 (Minn.App.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Exhibit R60

STATE OF MINNESOTA )
)ss.
COUNTY OF HENNEPIN )

AFFIDAVIT CONFIRMING LEGAL DESCRIPTION

Roger W. Hollander, being first duly sworn on oath, says as follows:

1. That he is a successor personal representative of the estate of Hildur P. Hollander, decedent, single at the time of death ("**Estate**").

2. That the Last Will and Testament of Hildur P. Hollander duly executed on December 18, 1984 and informally probated on March 4, 1986 by the State of Minnesota District Court – Probate Division, Fourth Judicial District (the "**Will**"), gave and devised all of decedent's interest in "farm property located in Maple Grove, Hennepin County, Minnesota," in equal shares to four children. However, the Will does not describe the farm property with a specific legal description.

3. That the Order Authorizing, Approving, Directing and Confirming Acceptance by the Personal Representatives of Offer to Purchase the Maple Grove Property issued on May 20, 1999 by State of Minnesota District Court – Probate Division, Fourth Judicial District (the "**Order**") authorizes, approves, directs and confirms one personal representative of the estate of Hildur P. Hollander to accept and perform the obligations of the estate under an offer by Town & Country Homes, Inc. to purchase the "Maple Grove Property." However, the Order does not describe the Maple Grove Property with a specific legal description. A certified copy of the Order is attached hereto and made a part hereof as **Exhibit "A."**

4. The "farm property located in Maple Grove, Hennepin County, Minnesota" identified in the Will and the "Maple Grove Property" identified in the Order describe one and the same parcel of real property, which real property is legally described on **Exhibit "B"** attached hereto and made a part hereof.

Affiants know the matters herein stated are true and make this affidavit for purpose of inducing the passing of title to the premises described on Exhibit "B".

Roger W. Hollander

Subscribed and Sworn to this 1st day of June, 1999.

Notary Public

B. MCDANIEL
NOTARY PUBLIC—MINNESOTA
MY COMMISSION EXPIRES 1-31-00

239827v1

D 01856

**EXHIBIT "A"**
**ORDER**

FILED

MAY 20 1999

DIST. COURT ADMINISTRATOR
DEPUTY

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT
PROBATE DIVISION
FOURTH JUDICIAL DISTRICT

Estate of Hildur P. Hollander,

Decedent.

Court File No. P4-86-443

ORDER AUTHORIZING, APPROVING, DIRECTING AND CONFIRMING ACCEPTANCE BY THE PERSONAL REPRESENTATIVES OF OFFER TO PURCHASE THE MAPLE GROVE PROPERTY

---

This matter came on for hearing before the undersigned Referee of Probate Court on the 19th day of May, 1999 pursuant to this Court's order of May 17, 1999 setting for hearing the Petition of Roger Hollander, Co-Personal Representative herein, seeking an Order authorizing, approving, directing and confirming acceptance by the Personal Representatives of the Estate of an offer to Purchase the Maple Grove Property.

Brian R. Martens, Esq., appeared on behalf of the Personal Representatives, Roger Hollander and John Hollander. The Personal Representatives were individually represented by Luther Amundson, Esq., for Roger Hollander and James Mulvahill, Esq., for John Hollander. R. Thomas Greene, Esq., appeared on behalf of Anna M. Lockrem, guardian ad litem of Lynn Christine Hollander. Roger Hollander, John Hollander, ~~Anna Lockrem~~ and Ann Wyse were present in person.

Roger Hollander presented testimony by Louis Frillman, a real estate expert engaged by the estate to expedite and maximize the price upon sale of the Real Estate; other testimony and evidence was as recorded during the proceedings.

Based on all the documents and pleadings on file, the testimony adduced at hearing, and the court's being fully advised in the premises, the court makes the following:

## FINDINGS OF FACT

The purchase agreement between the estate and Town & Country Homes, Inc. (hereinafter "Town & Country"), which was approved by this court by order dated February 1, 1999, was terminated by Town & Country. The personal representatives subsequently solicited additional offers. Offers were received from Hollander Partnership, Pulte (Swenson), Town & Country, Ryland, Bancor (Newman), Sand and Centex.

The offer by Town & Country is in the best interests of the estate because its net price to the estate is the third highest, however it is preferable to the two ostensibly higher offers because it is not subject to any contingencies; Town & Country has a demonstrated ability to perform; the representations and warranties contained in its offer are equivalent to or superior to those found in the other offers; and the closing date is ~~June 1, 1999,~~ 10 days after court approval which will provide immediate cash to the estate. The Hollander Partnership offer has numerous contingencies and requirements which could cause substantial expense to the estate, and the earnest money is $10.00. The Pulte (Swenson) offer is contingent, with a 180 day due diligence period, and closing is not scheduled until April 1, 2000. The other offers are either contingent or silent on that issue, and are lower than the Town & Country, Hollander and Pulte (Swenson) offers.

## CONCLUSIONS OF LAW

The terms of the offer by Town & Country Homes, Inc. to purchase the Maple Grove Property are fair and reasonable.

Acceptance of the offer by Town and Country is hereby determined to be in the best interest of the estate and its beneficiaries.

**ORDER**

NOW, THEREFORE, IT IS ORDERED as follows:

1. The Personal Representatives are hereby authorized and directed to accept the offer of Town and Country Homes, Inc. to purchase the Maple Grove Property.

2. It is hereby authorized, approved, directed and confirmed that the signature of one personal representative accepting the offer by Town and Country to purchase the Maple Grove Property shall be sufficient to bind the estate.

3. It is hereby authorized, approved, directed and confirmed that one personal representative may perform the obligations of the estate under the terms of the offer to purchase by Town and Country, and that the signature of one personal representative on the deed for transfer of the Maple Grove Property, pursuant to the terms of the Town and Country offer to purchase, shall be sufficient to convey the interest of the estate in the Maple Grove Property.

BY THE COURT:

Dated: 5/20/99

Patricia L Belois 5-20-99
Judge of District Court
Probate Court Division

(Court Seal)

Recommended By:

Richard Wolfson 5/20/99
Richard Wolfson
Referee of District Court
Probate Court Division

STATE OF MINNESOTA, COUNTY OF HENNEPIN
Certified to be a true and correct copy of the original document, consisting of 3 pages on file and of record in my office.

JUN 1 1999

Dist. Ct. Administrator

[signature]

239191



D 01860

# EXHIBIT "B"
# LEGAL DESCRIPTION

PARCEL 1:

That part of Section 17, Township 119, Range 22, West of the 5th Principal Meridian, described as follows, to-wit: Commencing at a point 10 rods North of center of Section; thence West 3 rods; thence South 10 rods; thence West 97 rods; thence North 128 rods; thence East 100 rods; thence South to the point of beginning, Hennepin County, Minnesota, and

PARCEL 2:

That part of Section 17, Township 119, Range 22, West of the 5th Principal Meridian, described as follows, to-wit: Commencing at a point 10 rods North of center of Section; thence East 13 rods; thence South 10 rods; thence East 27 rods; thence North 80 rods; thence West 40 rods; thence South 70 rods to beginning, Hennepin County, Minnesota, and

PARCEL 3:

That part of Section 17, Township 119, Range 22, West of the 5th Principal Meridian, described as follows, to-wit: Commencing 3 rods West of the center of Section 17, thence North 10 rods; thence East 8 rods; thence South 10 rods; thence to beginning, Hennepin County, Minnesota,

EXCEPTING from the above Parcels 1, 2 and 3 that part of the Northeast 1/4 of the Northwest 1/4 of Section 17, Township 119, Range 22, lying easterly of a line 135.00 feet westerly of the East line of said Northeast 1/4 as measured at right angle therefrom; together with that part of the Southeast 1/4 of the Northwest 1/4 of Section 17, Township 119, Range 22, lying between a line 5.00 feet westerly of the East line of said Southeast 1/4 as measured at right angle therefrom and a line 135.00 feet westerly of said East line as measured at right angle therefrom.

Court File No. 01-1980 / ROTTLUND / Pinnacle
Krummen Affidavit dated September 8, 2004

# FILED UNDER SEAL

EXHIBITS R61 – R75

Exhibit R76

**HARVEST HILLS**
**CITY OF PLYMOUTH PLANNING & ZONING**
**JUNE 6, 2001**

Intro

- Good evening everyone…Mr. Chairman, members of the Planning Commission and city staff. My name is Art Plante. I am the president of the Minnesota division of Town And Country Homes, and I have been with the Minnesota operation for the past four years. Also with me tonight is Nick Polta with Pioneer Engineering and Dave Sellergren from Fredrikson & Byron. Thank you for the opportunity to present this plan to you.

We have read the thorough staff report prepared by Marie Darling and agree with the findings and recommendations pertaining to this project. Over the past six months there have been a number of meetings and discussions with the planning staff pertaining to this plan. In December 2000, we brought forward a plan for 200 units. Based on the staff's recommendation we withdrew our application and re-designed the site with 34 less homes. The plan presented here tonight is a result of that "re-design," and has a total of 166 homes, consistent with the City Comprehensive Plan, and the Planning Department's recommendations.

We will provide, as requested by the staff's report:

1. Privacy screening at private drives that adjoin lower density property to the west.

2. Stubbed water main for future connection by property developing on the east wide of the site.

3. Decorative lighting standards.

4. Access to neighboring homes and the gun club during construction.

5. 3 additional 3.5 caliper trees to the landscaping plan

- By way of background, Town And Country Homes was founded in 1958 and is a privately held and family-owned company by the Ryan family of Chicago. Our company has produced an excess of 10,000 homes over that period in three states – Minnesota, Illinois and Florida, where we currently have active divisions.

- Our company has been building homes in the Minneapolis area since 1993. We are both homebuilders and land developers. We are proposing to develop and construct homes in the proposed development, which we have before you tonight…Harvest Hills.

- Our mission is to build innovative, value-oriented designs that capture the needs of a multitude of homebuyer profiles.

- This year we expect to deliver over 330 homes in the Minnesota area. In the year 2000 we were ranked #11 in Minneapolis/St. Paul in building permits.

- As many of you know, we have recently completed Holly Creek Village in the City of Plymouth, a 108-unit townhome development. That community consists of our Premier Collection Townhome product, which is one of the two products proposed for Harvest Hills.

SITE OVERVIEW (Use only if not covered by planner)

- 40.4 Gross Acres

- 166 Townhomes
  96 Homestead Homes
  70 Premier Homes

- Gross Density=4.10 units/acre

- Net Density=4.55 units/acre

- Primary access – Schmidt Lake Road…to be constructed.

AMENITIES (Use only if not covered by Planner)

- Northwest Greenway Trail easement, through Outlet A.
- Dedication of Outlet A, for the Northwest Greenway, totaling approximately 7.4 acres.
- Public sidewalks along Holly Lane, 5 foot wide.
- 74+% of trees saved (50% threshold)
- Future entry monument (in design stage) at Schmidt Lake Road and proposed Holly Lane
- Three Wetlands undisturbed. Three storm water ponds to be constructed.
- Dedication of area south of Schmidt Lake Road (1.45 acres)
- Construction of Schmidt Lake road with the site development
- Four parking spaces per unit provided. (2.5 spaces required…664 spaces vs. 415 required.)
- 24 spaces of guest parking
- 14.4 acres of common area space for the Homeowner's Association.

# HARVEST HILLS

## HOMESTEAD COLLECTION
## TOWNHOMES
## 6/06/01

- 96 Total Homesites
- 12 Buildings, 8 homes per building
- Slab on grade construction
- 1381 to 1482 square feet, plans additional footage available in 2nd floor room options
- 2 bedrooms, 1 ½ baths, loft and 2 car garage standard in each home
- Variety of room options available
  - Lofts
  - 3rd bedrooms
  - Additional Baths
- Life cycle housing serving a variety of buyer profiles:
  - Single professionals
  - Dual income professionals, young couples
  - Single parent households
  - Move down active adult buyers
- Proposed base prices from 149 to 158K (pre-bid estimates only)

# HARVEST HILLS

## PREMIER COLLECTION
## TOWNHOMES
## 6/06/01

- 70 Total Homesites
- 14 Buildings in 4 and 6 home configurations
  - 7, 4 home buildings
  - 7, 6 home buildings
- All homes on lookout or walkout basements
- 1442 to 1766 square feet
- 2 and 3 bedroom plans, 1 ½ baths standard with 2 car garage
- Variety of room options available, including finished basements to add square footage
- Life cycle housing seeing a variety of buyer profiles:
  - Move down, active adult
  - Young professionals, with and without children
  - Single parent households
- Proposed base prices from 157 to 184K (pre-bid estimate only)

# HARVEST HILLS
# TOWNHOME AFFORDABILITY
# 6/06/01

**I. OUR GOAL:**

TO PROVIDE THE BEST POSSIBLE HOUSING VALUE POSSIBLE WHILE STILL MAINTAINING OUR QUALITY STANDARDS. OFFER A VARIETY OF FLOOR PLANS AND PRICE POINTS TO APPEAL TO A WIDE RANGE OF BUYER PROFILES.

**II. WE HAVE FOUND THAT THERE ARE A NUMBER OF BARRIERS TO AFFORDABLE HOUSING IN TODAY'S MARKETPLACE:**

1. LIMITED LAND FOR IMMEDIATE DEVELOPMENT. (MUSA)

2. LAND COSTS HAVE RISEN DRAMATICALLY IN RECENT YEARS.

3. COMPETITION FOR THAT AVAILABLE LAND TENDS TO DRIVE UP COSTS.

4. ALLOWABLE DENSITIES.

5. DEVELOPMENT FEES, SUBDIVISION REGULATIONS, AND INFRASTRUCTURE COSTS.

6. LABOR AND CONSTRUCTION MATERIAL COSTS (HAVE INCREASED AN AVERAGE OF 8% IN THE PAST 18 MONTHS.)

7. PHYSICAL RESTRICTIONS OF THE PROPOSED SITE.

## III. TOWNHOME AFFORDABILITY - EXAMPLES

1.

| TOWNHOME BASE PRICE | *80% MEDIUM INCOME | ANNUAL INCOME REQUIRED |
|---|---|---|
| $150,000 | $54,880 | $49,272 |
| $160,000 | $54,880 | $50,836 |
| $170,000 | $54,880 | $54,980 |
| $180,000 | $54,800 | $58,036 |

**ASSUMPTIONS:**

1. 5% DOWN CONVENTIONAL LOAN
2. INCLUDES PRINCIPLE, INTEREST, TAXES, AND ASSOCIATION DUES.
3. $300.00/MONTH LONG TERM DEBT.
4. 7.25% FIXED INTEREST RATE

*80% OF THE MEDIUM INCOME IS BASED ON 7 COUNTY AVERAGE FAMILY OF 4 MEDIUM INCOME (2000) INCOME OF $68,500.

WE ARE OPEN TO POSSIBILITIES TO PROVIDING MORE AFFORDABILITY:

A. SUBSIDIZED INTEREST RATE PROGRAMS SUCH AS PROVIDED BY THE CITY'S COMMUNITY DEVELOPMENT BLOCK GRANT, OR THRU FUNDS THE CITY MAY OBTAIN THRU THE MINNESOTA HOUSING FINANCE AGENCY FOR 1ST TIME BUYERS, ETC.

B. WE WOULD BE HAPPY TO DISCUSS THESE AND ANY OTHER REASONABLE ALTERNATIVES WITH STAFF.

# HARVEST HILLS
# (CONTINUED)

**AFFORDABILITY SUMMARY** (SAVE FOR QUESTIONS ONLY):

WE BELIEVE OUR PLAN MEETS THE 3 PRIMARY GOALS OF THE CITY HOUSING NEEDS:

1. LIFE CYCLE HOUSING AND HOUSING DIVERSITY.

2. AFFORDABLE HOUSING AS RELATED TO OTHER HOUSING ALTERNATIVES IN PLYMOUTH.

3. HOUSING MAINTENANCE & PRESERVATION - WILL BE ESTABLISHED BY THE DECLARATION OF COVENANTS & RESTRICTIONS TO BE ESTABLISHED BY THE HARVEST HILLS COMMUNITY ASSOCIATION DOCUMENTS.

# HARVEST HILLS

## Tree Preservation

1. Ordinance allows up to 50% to be cleared, we are providing 75% save area. (977 trees out of 1325 total, 11,727 caliper niches saved of 15,752 total) 25% removed, if Schmidt Lake Road ROW is excluded, only 20% are being removed.

2. Our site plan maximizes the amount of tree save are by placing buildings on lookout or walkout condition and working with the natural grade as much as possible.

3. Our Landscaping Plan adds 308 high quality over story trees for the overall site to ultimately replace the cleared existing tree cover.

**(Use only as response to objections):**

1. There are only several trees to be removed that are over 20" in caliper, several of those are either dead already or have significant trunk damage.

2. The majority of trees to be removed are from 10-15" in caliper size.

3. In our prior experiences, once the area under the drip line of tree has been significantly distributed, the tree will die. Attempts to save trees that are in close proximity to building construction, roads, underground utilities, or where surface grade elevations have been re-contoured do not survive more than a year or two. These trees can then by hazardous to health, safety and welfare of the residents and become a burden on the homeowners associations when they must be removed.

CONCLUSION:

I would like to thank the staff for their efforts on this project over the many months they have provided input, towards this development. Thank you very much for your attention and consideration of our application. I look forward to your approval of this community, and I will be available to answer any specific questions pertaining to the site plan, or the specifics of the development, as needed.

# FILED
# UNDER SEAL

Bate No. D16583
Exhibit R76

# THIS EXHIBIT HAS BEEN OMITTED

Exhibit R77