Exhibit 78.1

Scott McMahonyh
952 253-0462

Agenda Number

**CITY OF PLYMOUTH COMMUNITY DEVELOPMENT DEPARTMENT**

**CITY COUNCIL AGENDA REPORT**

**TO:** Dwight Johnson, City Manager

**FROM:** Marie Darling, Senior Planner (509-5457) through Anne Hurlburt, Community Development Director

**SUBJECT:** **Town and Country Homes.** Rezoning, Preliminary Plat, Site Plan and Variances for Fire Lane and Turnarounds for Construction of "Harvest Hills" a 166-unit Townhouse Development to be Located East of Peony Lane and north of the Canadian Pacific Railroad. **(2001023/20182)**

**DATE:** June 21, 2001 for the June 26, 2001 City Council meeting.

**REVIEW DEADLINE:** August 4, 2001

## 1. PROPOSED MOTION:

Move to adopt the following four items, as recommended by the Planning Commission:

a) An ordinance approving the rezoning from FRD (Future Restricted Development) to RMF-2 (Residential Multiple Family 2)
b) A resolution approving the Findings of Fact for rezoning
c) A resolution approving the preliminary plat, and
d) A resolution approving the site plan and variances to the required fire lanes and turnarounds.

Approval of the rezoning, the preliminary plat, the site plan and variance requires a 4/7 vote of the City Council.

## 2. DESCRIPTION OF REQUEST:

Town and Country Homes is requesting approvals to construct "Harvest Hills," a 166-unit townhouse development in four, six and eight-unit buildings. The rezoning involves the southern two-thirds of the property and proposes the northern third of the development as an open space amenity on the property. The open space area includes steep slopes and is heavily treed. Required for the application are a rezoning, a preliminary plat, a site plan and variances to the fire lane and turn-around requirements.

Notice of the public hearing at the Planning Commission was published in the Official Newspaper and mailed to all property owners within 750 feet. A development sign remains on the property where Schmidt Lake Road would extend through the property.

**2. PLANNING COMMISSION PUBLIC MEETING:**

On June 6, 2001, six Planning Commissioners voted in favor of recommending approval of the rezoning, findings of fact for rezoning, preliminary plat and the site plan. One member abstained from all votes. The Planning Commission does not hear requests for fire code variances. The Commissioners made one amendment to the resolution approving the site plan. They added that more complete disclosure be given to the prospective buyers of the property and that signs be placed at the entrance of the gun club property notifying prospective neighbors of the noise produced on the property.

In addition to the applicant, there were several residents present to speak on this item. Public comments and questions submitted at the public hearing are shown below in italics. Staff's response to how the comment relates to the Subdivision Regulations, Zoning Ordinance standards and the policies of the Comprehensive Plan is provided below each comment.

*A Commissioner asked if the private sidewalks are included as a condition of approval on Holly Lane and Street A.*

After the project plans were submitted and the staff report was written, the applicant offered to provide sidewalks on Street A. As the sidewalks for Holly Lane North are included on the site plan, the applicant would be required to construct the sidewalks on Holly Lane. However, the sidewalks on Street A are not shown on the plan. Therefore, a condition has been added to the site plan resolution requiring their construction. The sidewalks proposed are to be privately maintained and another condition of approval is that the Homeowners' Association documents required for final plat would need to include the sidewalks as features maintained by the association, similar to the private driveways.

*A Commissioner asked if all of the area outside the MUSA is in Outlot A.*

The area outside the MUSA is on the north one-third of the property and is included both in lot 41, block 4 (open space lot) and Outlot A. It is not likely that the sewer and water would ever be provided to this portion of the property because of the topography of the area.

*A Commissioner asked if an issue concerning the easement to provide access across this site to the Plymouth Gun Club property had been resolved.*

The property owner and the representatives from the Gun Club stated at the public hearing that they had resolved this issue. Access to the gun club property during construction would be in the same general area as the existing private road, but would ultimately be from Holly Lane North once the road is completed to the gun club property line.

*A Commissioner asked if the gun club is prohibited from discharging a firearm within 500 feet of a residential area according to Minnesota Statute.*

After having researched this issue, staff found no statute to this effect. However, the Minnesota Legislature has considered legislation protecting gun clubs. While this legislation was not adopted in the last legislative session, it is very likely the issue would be raised again during the next session. Briefly, the legislation would 1) protect gun clubs from being treated as non-conforming uses by local governments, 2) prevent a local government from closing any gun club except when proof of clear and immediate safety hazards exist, and 3) would require fair market compensation for any such closure.

*A representative of the Plymouth Gun Club stated opposition to the rezoning and the project because the individuals who would purchase the units may eventually oppose the operation of the Gun Club. Another representative of the club expressed a desire to have more information about the club provided to potential buyers and said a sign similar to the Len Busch Roses sign, which warns neighbor of the glow from greenhouse lights, would be appropriate.*

The applicant has expressed a willingness to provide disclaimers for all prospective property owners about the presence of the Gun Club, hours of operation and the noise produced. The applicant has also expressed a willingness to sound-proof adjacent buildings, similar to the sound-proofing techniques used near freeways, and provide additional plantings between the proposed units and the gun club property. In addition, the applicant has agreed to post signs near the entrance to the gun club property. Their letter addressing these issues, and their proposed language, is attached. The proposed language addresses existence of the gun club, the types of shooting activities at the club and the hours of operation.

Staff has reviewed the proposed disclaimer and sign language and recommends an addition to both to specifically address the noise issue. The attached resolution for the site plan requires that the disclaimer and sign address the existence of the gun club, its hours of operation **and the fact that repetitive, loud noise is produced during those hours.**

Staff also researched the applicant's ability to place such a sign on the property according to the sign ordinance. The sign ordinance specifically allows temporary public announcement signs. These signs are permitted to be 32 square feet in area, placed 10 feet from property lines and may be left standing until the intended purpose has been fulfilled. In this case, the sign would be required as long as the gun club is in existence.

*A resident stated a concern that he had not previously seen the guest parking shown adjacent to the lower-density residential area.*

The guest parking was added to the plans during the final revisions and submitted to the City on May 11, 2001. According to the Zoning Ordinance, parking areas adjacent to lower density residential developments must be screened to a height of six feet. Although there are a few significant trees in this area shown to be preserved, most would be removed as grading

occurs in the area. The applicant has agreed to provide the required screening in the form of landscaping. A condition to this effect is included in the attached resolution.

*A resident expressed the opinion that some of the trees shown on the plans appear to be "scrub trees."*

The tree ordinance does not discriminate between species of trees. All deciduous trees that are eight caliper inches qualify. Conifers must be four caliper inches to qualify as significant. The five significant trees closest to this residents property are identified as elms between eight and twelve inches in diameter. None of these trees are proposed to be saved. Guest parking is proposed in this area and those spaces require six feet of screening. While the screening could be either fences or a green belt planting strip, the applicant prefers to use conifers. Conditions requiring the screening are included in the attached resolution.

*A resident expressed concern about the number of trees removed from the property and another resident requested that the trees between Connor Meadows and the subject property be saved.*

The proposal would save approximately 74 percent of the existing significant trees on the property, most of which are on the north side of the property. The tree preservation ordinance allows 50 percent of the significant trees to be removed from residential property without penalty. The majority of the large trees referenced are primarily located off the Harvest Hills property on lands already dedicated to the City for the construction of Schmidt Lake Road and would be removed.

*A resident expressed concern that the traffic on Schmidt Lake Road would increase.*

As Schmidt Lake Road is completed and the bridge over the CP Railroad constructed, the City expects an increase in traffic on Schmidt Lake Road. The Comprehensive Plan classifies Schmidt Lake Road as a minor arterial. Minor arterials typically carry from 5,00 to 30,000 vehicles per day. The Comprehensive Plan estimates between 5,600 trips and 6,200 per day on this portion of Schmidt Lake Road in 2020.

*A resident expressed concern about the lack of a traffic signal at the intersection of Schmidt Lake Road and Peony Lane. He further asked if the signal could be installed earlier than programmed in the Capital Improvements Program.*

The traffic signal at that intersection is anticipated to receive strong consideration during the update of the CIP. The bridge across the railroad tracks is scheduled for 2003 which would coincide with the anticipated dates of area development. The development is necessary to gain the right-of-way to complete Schmidt Lake Road. As directed by the City Council at the June 12, 2001 Council meeting, staff has initiated the studies needed to determine the appropriate timing for installation of the traffic signal.

*A resident requested that construction traffic be routed along Holly Lane to the property during school hours to reduce the threat of accidents at the intersection of Peony Lane and Schmidt Lake Road.*

Construction traffic would be limited to Schmidt Lake Road because neither the extension of Holly Lane to the property (a gravel roadway) or the CP Railroad crossing were constructed to withstand the weight of construction vehicles. The connection between Holly Lane and Schmidt Lake Road will be closed after Schmidt Lake Road is completed.

*A resident expressed concern that the project still has too many townhouses.*

The density proposed is six units per acre. The southern two-third of the property is guided Living Area-2 in the Comprehensive Plan which permits 3-6 units per acre.

**4. CONTEXT:**

A. Level of City Discretion in Decision-Making:

The City has a relatively high level of discretion in approving or denying a rezoning application. The proposed zoning for a property must be consistent with the City's comprehensive plan. If the proposed zoning is not consistent with the comprehensive plan, the City must deny the rezoning application. The Zoning Ordinance and Map are the enforcement tools used to implement the goals and standards set by the comprehensive plan.

The City's discretion in approving or denying a preliminary plat is limited to whether or not the proposed plat meets the standards outlined in the Subdivision Regulations and Zoning Ordinance. If it meets these standards, the City must approve the preliminary plat.

The City's discretion in approving or denying a site plan is limited to whether or not the proposed project complies with the Comprehensive Plan and Zoning Ordinance requirements. If it meets these standards, the City must then approve the site plan.

B. Surrounding Land Use and Zoning

The property to the north is outside the Metropolitan Urban Service Area (MUSA) and guided Living Area Rural (LAR). It is zoned Future Restricted Development District (FRD) and is currently undeveloped. The property to the northeast is partially outside the MUSA and guided both Living Area Rural (LAR) and Living Area 2 (LA-2). The property is currently used as a gun club. The property to the southeast is guided Living Area 2 (LA-2) and is currently undeveloped. Both properties to the east are zoned Future Restricted Development District (FRD). The property to the south is guided Living Area 2 (LA-2), zoned Residential Multiple Family 2 (RMF-2), and is developed with townhouses. The property to the west is outside the MUSA, guided Living Area Rural (LAR), zoned Future Restricted Development District (FRD) and is developed with large-lot single-family homes.

C. Natural Characteristics of Site

This property is located in the Bassett Creek Watershed District. The site contains no land in the Shoreland Overlay District. A portion of the property is in the 100-year floodplain, however that land is outside the MUSA boundary and no structures are proposed in the floodplain. There are three delineated wetlands on the property. The wetland on the north property line is classified high quality and the other two wetlands are classified medium-quality wetlands. The property is subject to the wetland regulations in the Zoning Ordinance.

In 1994, the City commissioned a study of natural areas. The study includes a good quality oak forest and willow swamp on the subject site, primarily on the northern portion of the property. It was not chosen for City acquisition at that time.

D. Previous Actions Affecting Site

On August 8th 2000, the City Council approved a Comprehensive Plan update which included an expansion of the Metropolitan Urban Service Area (MUSA) to include a portion of the subject property. That portion can now be served with City sewer and water and be subdivided. The Land Use Guide Plan map was also revised to change the designation of that portion of the site in the MUSA from LAR (Living Area Rural) to LA-2 (Living Area 2, three to six units per acre.)

In December of 2000, the applicant submitted an application for a development on the same property that contained 200 townhouse units in structures of eight and ten-unit buildings. The applicant assumed that all forty acres in the site were included in the MUSA (Metropolitan Urban Services Area) and designated as LA-2 (Living Area 2) on the Comprehensive Plan Land Use Map. Consequently, the applicant further assumed that the site density would be the product of 40 acres times the maximum LA-2 density of six units per acres. However, the City's Plan actually shows approximately one-third of the property outside the MUSA and designated LAR at a maximum density of one unit per 20 acres. Therefore, staff recommended the applicant withdraw and redesign the plan to reduce the number of units, consistent with the Comprehensive Plan. The redesigned plan addressed in this report has 34 less units and is consistent with the Comprehensive Plan.

**5. ANALYSIS:**

A. Rezoning

The applicant is requesting approval to rezone the southern two-thirds of this 40.4-acre property from Future Restricted Development (FRD) District to Residential Multiple-Family 2 (RMF-2) District. The district allows townhouses and manor homes as permitted uses.

*Consistency with the Comprehensive Plan*

The Land Use Guide Plan Element of the City's Comprehensive Plan classifies roughly the southern two-thirds of the subject property as LA-2 and the northern third of the property LAR. The LA-2 classification allows for densities of three to six units per acre and the LAR classification allows a density of one unit per twenty acres. Based on the Comprehensive Plan, the maximum number of dwelling units that may be proposed is 166 units.

The Comprehensive Plan includes a goal concerning the creation of affordable housing. Specifically, the plan states the City will "promote the development and preservation of a supply of quality housing that is affordable at all income levels and at all stages of the life cycle." The City has discussed the above goal with the applicant, however, the applicant has stated that due to the cost of land and the maximum density permitted on the property, they are not able to include units that meet the current guidelines for affordability ($134,257). This guideline is based on a price that is affordable for a family with an income of 80 percent of the median.

However, the applicant has estimated the price for a standard unit at $149,000 – $158,000 for the units in the eight-unit structures and $157,000 - $184,000 for the row townhouses. This price is closer to the affordable guidelines than in many other new developments in Plymouth and would be in the general price range for some first-time or other median-income home buyers. The development would therefore be consistent with the Comprehensive Plan's goal of life-cycle housing because it provides price ranges that are affordable to median-income buyers.

*Area Requirements*

The RMF-2 district specifies a minimum base lot area of 9,000 square feet, a minimum lot area per unit of 4,500 square feet and a minimum lot width of 100 feet. The base lot as proposed for this development does comply with these requirements.

*Findings and Conclusion*

Staff recommends approval of the requested rezoning application with the following findings:

1. The proposed rezoning is consistent with the Comprehensive Plan and other City policies and plans.

2. The proposed development meets lot area and dimension requirements of the RMF-2 zoning district.

3. The proposed RMF-2 zoning allows a development that meets the City's density goal specified in the City's land use plan.

4. With the additional proposed infrastructure, there would be adequate infrastructure available to support the RMF-2 zoning and townhouse development proposed for this site.

B. Preliminary Plat

The applicant is requesting approval of a preliminary plat to subdivide the existing two properties (a total of 40.4 acres) into 84 lots for townhouse structures and 1 outlot. Each of the lots north of Street A would be unit lots, with one unit on each lot. Each of the lots south of Street A would have an eight-unit structure constructed on it.

Section 500.15 of the Subdivision Regulations states that the City Council, in its review of a preliminary plat, must take into consideration the requirements of the City and the best use of the land being subdivided.

*Use of the Land*

The land is proposed to be used for a 166-unit townhouse development. The density of the use as shown on the plans is consistent with the LA-2 land use classification shown in the Comprehensive Plan. The LA-2 classification allows developments with a minimum of three units per acre and a maximum of six units per acre for those portions of the property within the MUSA. The proposed density would be 6 units to the acre.

*Roadways*

The primary access into the property is via an extension of Schmidt Lake Road. The applicant proposes the construction of two other public roads inside the project. The first, shown as "Holly Lane" on the plat drawings, would be a public road that extends from Schmidt Lake Road northward through the property with a temporary cul-de-sac at the Plymouth Gun Club property on the northeast property line.

The second proposed public roadway, shown as "Street A" on the plat drawings, is an east-west street through the subject property. It would have a temporary turn-around on the east side of the property which could be connected to future development. On the west side of the property, the street would extend to the property line and have a temporary turn-around. It would also provide access to three of the existing single-family homes to the west of the subject property. (The applicant has agreed to build a private drive connection from the property line to the existing driveway for the more southerly two single-family homes.)

Both roads are consistent with zoning and subdivision ordinance requirements.

The applicant has proposed to dedicate the area south of Schmidt Lake Road to the City as right-of-way for future City needs. They propose that nothing would be constructed on the property as it is isolated from the remainder of the property.

*Utilities*

The applicant proposes to connect to sewer and water from existing service lines in Schmidt Lake Road. However, the City requires a looped water main system both for domestic and fire protection purposes. The plans do not show this requirement. The proposal does show potential connection with the properties to the east. A recommended condition of approval is that when development on those properties occurs, those water lines must be connected to the water lines on the subject property. This is consistent with City requirements and policy.

*Drainage/Water Quality*

Three NURP ponds are proposed for the property, a two-cell treatment pond in the southeastern portion of the property and one adjacent to the wetland on the east side of the property. The ponds would be designed to accommodate the storm water runoff for the developing portion of the property.

In addition, Section 500.29, Subd. 7 of the Subdivision Regulations requires treatment of storm water runoff. The three proposed ponds and the two existing wetlands would treat the storm water runoff prior to its discharge into the City's storm water system.

The City is currently conducting a Hydrologic and Hydraulic Study for the MUSA expansion area. This proposal was reviewed using the preliminary results of that study. The review showed that the design of the drainage plan as shown with some minor adjustments (such as deepening a pond) would meet the 65 percent phosphorous removal standard. The study also recommends the use of Best Management Practices on the subject property. Best Management Practices include elements such as grassy swales, rain gardens and similar means of treatment. The resolution includes a statement requiring compliance with the study once it is complete. When the study is complete, it is anticipated that only minor enhancements would be required, at most, for this development.

*Lot Arrangement*

As previously discussed in the rezoning portion of the analysis, the lot arrangement, including the minimum lot size, the minimum lot width, and the amount of frontage per unit, is consistent with the proposed zoning district.

*Trails/Sidewalks*

The Comprehensive Plan shows trails on both sides of Schmidt Lake Road. The applicant's proposal meets this requirement. The applicant is also required to provide an easement for a trail that leads to the future "Northwest Greenway". Both the outlot proposed to be deeded to the City for the future Northwest Greenway and the trail easement are shown on the site plan and are consistent with the Comprehensive Plan.

The staff has also encouraged the applicant to consider showing sidewalks along both the public roadways within the development. Staff encourage the sidewalk construction to provide connections not only within the development, but also to the trails on Schmidt Lake Road and to the trail which would provide access to the future Northwest Greenway. The applicant has elected to construct a sidewalk along the east and south side of Holly Lane and on the north side of Street A. This exceeds ordinance requirements. This sidewalk would be privately maintained.

*Park Dedication/Parks Impact*

The site is subject to a park dedication fee. However, the applicant would receive credit for the five acres of land shown in Outlot A to be dedicated to the City for the Northwest Greenway.

The Park System Plan (Chapter 8 of the Comprehensive Plan) indicates that this development would be served by a new neighborhood park to be built just south of the Canadian Pacific Railroad, west of Holly Lane. In the future it may also be served by a new mini-park—to be accessible via the Northwest Greenway—to be acquired if and when the area to the north develops.

*Tree Preservation*

This application is subject to the tree preservation requirements in the Subdivision Regulations. Section 500.24, Subd. 3 requires preservation of 50 percent of the caliper inches of the significant trees for residential development sites, or reforestation and/or monetary restitution for any removal in excess of this threshold. A significant tree is defined as one being eight inches or larger in diameter for deciduous trees, and four inches or larger in diameter for coniferous trees.

**The tree survey indicates 15,752 caliper inches of significant trees on the site. The applicant submitted a tree plan indicating that 11,712 inches of significant trees (just over 74 percent) would be saved. Therefore, the proposal would exceed the threshold for tree preservation.**

C. Site Plan

The applicant proposes to construct 166 units in 26 structures of four, six and eight units each. The Zoning Ordinance contains specific standards for approval of a site plan in the RMF-2 zoning district. Staff used these standards to review this application. The specific standards that apply to the subject parcel are as follows.

*Architecture*

Section 21115.03 of the Zoning Ordinance provides standards for exterior building finishes. All sides of the proposed townhouse development would have equal appearance in design and

materials. The exterior building material is proposed to be vinyl siding, which does conform to the ordinance requirements.

Section 21390.13 of the Zoning Ordinance allows a maximum building height of 35 feet. All the structures proposed are two-story buildings, all of which would be under the maximum height requirement. The eight-unit buildings would be constructed as slab-on-grade units. The four and six-unit buildings would contain lookout or walkout basements depending on the surrounding grades.

*Structural Coverage and Building Setbacks*

Section 21380.13 of the Zoning Ordinance identifies the maximum structural coverage and minimum setback requirements for the RMF-2 zoning district. The ordinance permits a maximum structural coverage of 40 percent for residential uses. The applicant is proposing approximately 17 percent structural coverage on the property within the MUSA. Consequently, the plan would comply with this ordinance requirement.

Section 21380.13 of the Zoning Ordinance also requires 25-foot front, side and rear-yard setbacks for all structures. The site plan meets these requirements.

*Access*

Access to the units would be from the proposed public Holly Lane or Street A, or from shared private driveways leading from the units to the public streets. These private driveways are consistent with City ordinance requirements and policies, although the applicant is requesting variances to the fire lane and turnaround requirements in the fire code.

*Signage*

Other than fire lane and directional signage, no other signs are proposed for the development at this time. All future sign permit applications must be in conformance with Section 21155 of the Zoning Ordinance. A recommended condition of approval is that covenants for the maintenance of any signage be included in the homeowner association documents and covenants.

*Lighting Plan*

Section 21105.06 of the Zoning Ordinance permits a maximum of 0.5-foot candles of light at the property line, and requires lights to be directed away from adjacent properties. The applicant has not submitted a plan which shows compliance with these requirements. A recommended condition of approval is to require a lighting plan to be submitted prior to building permit issuance.

Many of the developments in the area are using decorative street lighting rather than the standard cobra or shoebox design. To have this development appear similar and cohesive with

those areas, a recommended condition of approval is to include decorative street lighting for this development.

*Parking*

Section 21135.11 of the Zoning Ordinance requires 2.5 parking stalls for each townhouse, one of which must be enclosed. The applicant would provide 332 garages spaces and 332 outside spaces in the driveways, plus 26 additional off-street parking spaces for a total of 690 spaces (just over 4 parking stalls per unit.) This would exceed ordinance requirements.

Section 21130.03 of the Zoning Ordinance requires screening for any off-street parking for a townhouse development which abuts properties zoned for less dense residential uses. A recommended condition of approval is that all the guest parking areas shown on the plans include the required six-foot screening.

*Landscaping*

Section 21130.03 of the Zoning Ordinance requires a total of 166 overstory trees for the proposed residential development and 25 of those required trees must be long-lived deciduous trees 3.5-inches in diameter. The proposed landscaping plan includes a total of 187 overstory trees, 22 of which are proposed to be 3.5 inches in diameter, 242 understory trees and a variety of shrubs and perennials. The application is short three trees, 3.5 inches in diameter, but in all other aspects exceeds the City's landscaping requirements. A recommended condition of approval is to include three additional 3.5 caliper inch trees to the plan.

*Wetlands*

There are three wetlands on the property, one of which is located on the north side of the property and two on the eastern property boundary. The wetland regulations in the Zoning Ordinance require a 30-foot average wetland buffer and a 15-foot structure setback for the two medium-quality wetlands on the eastern property boundary. The high-quality wetland on the north property boundary requires a 50-foot average wetland buffer and a 15-foot structure setback. No alteration of the delineated wetland boundaries are proposed with this application although the applicant has proposed to extract some material for additional treatment of storm water run-off. The plan is consistent with City ordinances and policies.

D. Variances

The applicant has requested two variances from the City fire code requirements that state 1) all sides of multiple family buildings must be within 150 feet from a fire hydrant as a hose would lay; and, 2) Fire Department turnarounds shall be installed on all private drives that exceed 150 feet in length. The applicants have stated that the property is deep and narrow which restricts and compacts the development. In lieu of the turnarounds and fire lanes, the applicant offered to sprinkler all the buildings. Staff has reviewed the application and recommends approval subject to the following conditions:

only the Homesteads

a) All buildings must be sprinkled.
b) The fire hydrant water main system must eventually be looped with water mains in adjacent developments.
c) Fire flow calculations in compliance with City requirements must be provided prior to issuance of any permits.
d) Fire hydrants must be installed in approved locations.
e) Turnarounds on public streets (Holly Lane and Street A) must conform to City requirements
f) Secondary access roads must eventually be provided as adjacent properties develop.

The Fire Inspector's memo is attached for your reference.

## 6. CONCLUSIONS

Staff has concluded that the rezoning, the preliminary plat and the site plan are in conformance with the Comprehensive Plan, and the measurable standards of the Zoning Ordinance and the Subdivision Ordinance with the following conditions:

1. The water main system shall be connected to future developments to the east as they are approved.
2. The plans shall be revised as necessary to conform with the conclusions of the City's Hydrologic and Hydraulic Study.
3. The plans shall be revised to include 3 additional 3.5 caliper inch trees to the landscape plan and show the required six-foot screening between the guest parking spaces and the lower density residential uses to the west.
4. All future signage, including, but not limited to area identification, fire lane and directional signage, shall conform to ordinance requirements.
5. A lighting plan including photometrics and fixture details shall be submitted which show compliance with all the requirements in the lighting section.
6. All streetlights shall be of a decorative design rather than standard cobra or shoebox fixtures.
7. The applicant shall provide sidewalks along both Street A and Holly Lane North.
8. The applicant shall provide a revised disclaimer to all potential buyers that addresses the existence of the gun club, its hours of operation, and that repetitive, loud noise is produced during those hours (before building permits are issued.)
9. Signs shall be posted on or near the Gun Club property advising potential property owners of the existence of the gun club, its hours of operation, and that repetitive, loud noise is produced during those hours (before building permits are issued.)

## 7. RECOMMENDATION

Community Development Department staff recommends approval of the rezoning, preliminary plat, the site plan and the variances for the construction of a 166-unit townhouse development, based on the findings and conditions listed in the attached resolution.

**ATTACHMENTS:**

1. Ordinance Approving the Rezoning
2. Resolution Approving Findings of Fact for the Rezoning
3. Resolution Approving the Preliminary Plat
4. Resolution Approving the Site Plan
5. Engineer's Memo for the Preliminary Plat
6. Engineer's Memo for the Site Plan
7. Fire Inspector's Memo for the Variances
8. Minutes from the June 6, 2001 Planning Commission Meeting
9. Project Narrative
10. Letter from Tom Kotarski, Plymouth Gun Club
11. Sample Gun Club Disclosure
12. Letter from the Applicant dated June 14, 2001 including a revised gun club disclosure and revised language for a public notice sign and statistics on the affordability of the units.
13. Location Map
14. Site Graphics

**CITY OF PLYMOUTH**
**HENNEPIN COUNTY, MINNESOTA**

**ORDINANCE NO. 2001-___**

AN ORDINANCE AMENDING CHAPTER 21 (ZONING ORDINANCE) OF THE CITY CODE TO CLASSIFY CERTAIN LAND LOCATED LOCATED EAST OF PEONY LANE AND NORTH OF THE CANADIAN PACIFIC RAILROAD. **(20182)**

THE CITY OF PLYMOUTH ORDAINS:

**Section 1.** Amendment of City Code. Chapter 21 of the City Code of the City of Plymouth, Minnesota, is hereby amended by changing the classification on the City of Plymouth Zoning Map from FRD (Future Restricted Development District) to RMF-2 (Multiple Family 2), legally described as follows:

> All that part of the south 1,954.63 feet of the west half of the northwest quarter lying east of the west 672 feet thereof, Section 8, Township 118, Range 22, Hennepin County, Minnesota.

**Section 2.** Effective Date. This amendment shall take effect upon its passage and publication.

ADOPTED by the City Council on June 26, 2001.

____________________________
Joycelyn H. Tierney, Mayor

**ATTEST:**

____________________________
Sandra R. Paulson, City Clerk

**CITY OF PLYMOUTH**

**RESOLUTION 2001 -**

APPROVING FINDINGS OF FACT FOR REZONING OF PROPERTY LOCATED EAST OF PEONY LANE AND NORTH OF THE CANADIAN PACIFIC RAILROAD. **(20182)**

WHEREAS, Town and Country Homes has requested reclassification of the zoning from FRD (Future Restricted Development District) to RMF-2 (Multiple Family 2) for 27.67 acres of land located east of Peony Lane and north of the Canadian Pacific Railroad, legally described as follows:

> All that part of the south 1,954.63 feet of the west half of the northwest quarter lying east of the west 672 feet thereof, Section 8, Township 118, Range 22, Hennepin County, Minnesota.

WHEREAS, the Planning Commission has reviewed said request at a duly called Public Hearing and recommends approval; and

WHEREAS, the City Council has adopted an ordinance rezoning the affected parcel from FRD (Future Restricted Development District) to RMF-2 (Multiple Family 2).

NOW, THEREFORE, BE IT HEREBY RESOLVED BY THE CITY COUNCIL OF THE CITY OF PLYMOUTH, MINNESOTA, that it should and hereby does approve the request for reclassification of the zoning from FRD (Future Restricted Development District) to RMF-2 (Multiple Family 2) for 27.67 acres of land located east of Peony Lane and north of the Canadian Pacific Railroad, based on the following findings:

1. The proposed rezoning is consistent with the Comprehensive Plan and other City policies and plans.

2. The proposed development meets lot area and dimension requirements of the RMF-2 zoning district.

3. The proposed RMF-2 zoning allows a development that meets the City's density goal specified in the City's land use plan.

4. With the additional proposed infrastructure, there would be adequate infrastructure available to support the RMF-2 zoning and townhouse development proposed for this site.

ADOPTED by the City Council on June 26, 2001.

STATE OF MINNESOTA)
COUNTY OF HENNEPIN) SS.

The undersigned, being the duly qualified and appointed City Clerk of the City of Plymouth, Minnesota, certifies that I compared the foregoing resolution adopted at a meeting of the Plymouth City Council on June 26, 2001 with the original thereof on file in my office, and the same is a correct transcription thereof.

WITNESS my hand officially as such City Clerk and the Corporate seal of the City this ____________ day of ____________________.

_______________________________
City Clerk

**CITY OF PLYMOUTH**

**RESOLUTION 2001-**

APPROVING A PRELIMINARY PLAT FOR TOWN AND COUNTRY HOMES, INC. FOR HARVEST HILLS LOCATED EAST OF PEONY LANE AND NORTH OF THE CANADIAN PACIFIC RAILROAD (2001023)

WHEREAS, Town and Country Homes has requested approval of a preliminary plat for Harvest Hills, a plat of 84 lots and one outlot on roughly 40.44 acres located east of Peony Lane; and

WHEREAS, the property is legally described as follows:

The north 1,351.12 feet, as measured at right angles to the north line, of that part of the west ½ of the northwest ¼ lying east of the west 672 feet thereof, Section 8, Township 118, Range 22, according to the U.S. Government Survey thereof; subject to an easement over the east 30 feet of the southwest ¼ of the northwest ¼ and over the south 30 feet of the east 30 feet of the northwest ¼ of the northwest ¼, as shown in Doc. No. 630001, files of Registrar of Titles.

And,

That part of the west ½ of the northwest ¼ lying east of the west 672 feet thereof and lying south of the north 1,351.12 feet, as measured at right angles to the north line, all in Section 8, Township 118, Range 22, Hennepin County, Minnesota. Subject to a Roadway Easement over the east 30 feet, as shown in Doc. No. 630001, Files of Registrar of Titles.

WHEREAS, the Planning Commission has reviewed said request at a duly called Public Hearing and recommends approval.

NOW THEREFORE, BE IT HEREBY RESOLVED BY THE CITY COUNCIL OF THE CITY OF PLYMOUTH, MINNESOTA, that it should and hereby does approve the request by Town and Country Homes for a preliminary plat for Harvest Hills, subject to the following conditions:

1. Approval of the preliminary plat is contingent upon City approval of the rezoning of the site to RMF-2 (Residential Multiple Family).

2. This preliminary plat approves 82 townhouse lots, two association lots and one outlot, in accordance with the plans received by the City on May 11, 2001, except as amended by this Resolution.

3. Prior to issuance of any permits, the applicant shall submit revised plans as necessary for compliance with the results of the Hydrologic and Hydraulic Study.

4. Prior to recording the final plat, the developer shall pay the park dedication fees with credit for land dedicated as Outlot A, pursuant to the Dedication Policy in effect at the time of recording the final plat, for the total number of units shown on the plans.

5. Prior to filing the final plat, the applicant shall submit the required easements as specified in the Engineer's Memo and as approved by the City Engineer.

6. When development occurs on the properties to the east, the water lines shall be connected to the water lines of those developments to provide a looped system.

7. When development occurs on the properties to the east, the streets shall connect to the streets in this development to provide secondary access through the development.

8. Any signage proposed in the future shall comply with the Sign Ordinance.

9. Development standards shall be as required by the RMF-2 district. No variances are granted or implied.

10. With the application materials for final plat, the applicant shall provide the City with copies of the homeowner's association (HOA) documents. The HOA documents shall include language to address maintenance of the private drives, the sidewalks along Holly Lane and Street A, landscaping, all signs, and the association open space lots.

11. Standard Conditions:

    a. Compliance with the City Engineer's Memorandum.
    b. Prior to the issuance of any building permits, a pond maintenance agreement is required between the developer and the City for the water quality pond. The agreement shall be recorded with the plat.
    c. No building permits shall be issued until a contract has been awarded for sewer and water and issued until the final plat is filed and recorded with Hennepin County.
    d. Prior to the issuance of any grading, utility or building permits, fire flow calculations in conformance with City ordinances and policies, shall be submitted.
    e. Street names shall comply with the City Street Naming System.

f. Removal of all hazardous trees from the property at the owner's expense.
g. Compliance with Policy Resolution 79-80 regarding minimum floor elevations for new structures on sites adjacent to, or containing any open storm water drainage facility.
h. The Developer shall hold the City and its officers, employees, and agents harmless from claims made by itself and third parties for damages sustained or costs incurred resulting from plat approval and development. The Developer shall indemnify the City and its officers, employees, and agents for all costs, damages, or expenses which the City may pay or incur in consequence of such claims, including attorneys' fees.

Approved by the City Council on June 26, 2001.

STATE OF MINNESOTA)
COUNTY OF HENNEPIN) SS.

The undersigned, being the duly qualified and appointed City Clerk of the City of Plymouth, Minnesota, certifies that I compared the foregoing resolution adopted at a meeting of the Plymouth City Council on June 26, 2001, with the original thereof on file in my office, and the same is a correct transcription thereof.

WITNESS my hand officially as such City Clerk and the Corporate seal of the City this ___________ day of ___________________.

_________________________________
City Clerk

**CITY OF PLYMOUTH**

**RESOLUTION 2001 -**

APPROVING SITE PLAN AND VARIANCES TO FIRE LANE AND TURNAROUND FOR TOWN AND COUNTRY HOMES FOR A 166-UNIT TOWNHOUSE DEVELOPMENT LOCATED EAST OF PEONY LANE AND NORTH OF THE CANADIAN PACIFIC RAILROAD (2001023)

WHEREAS, Town and Country Homes has requested approval of a site plan to allow construction of a 166-unit townhouse development on property legally described as follows:

The north 1,351.12 feet, as measured at right angles to the north line, of that part of the west ½ of the northwest ¼ lying east of the west 672 feet thereof, Section 8, Township 118, Range 22, according to the U.S. Government Survey thereof; subject to an easement over the east 30 feet of the southwest ¼ of the northwest ¼ and over the south 30 feet of the east 30 feet of the northwest ¼ of the northwest ¼, as shown in Doc. No. 630001, files of Registrar of Titles.

And,

That part of the west ½ of the northwest ¼ lying east of the west 672 feet thereof and lying south of the north 1,351.12 feet, as measured at right angles to the north line, all in Section 8, Township 118, Range 22, Hennepin County, Minnesota. Subject to a Roadway Easement over the east 30 feet, as shown in Doc. No. 630001, Files of Registrar of Titles.

WHEREAS, the Planning Commission has reviewed said request at a duly called Public Hearing and recommends approval of the site plan;

NOW, THEREFORE, BE IT HEREBY RESOLVED BY THE CITY COUNCIL OF THE CITY OF PLYMOUTH, MINNESOTA, that it should and hereby does approve the request by Town and Country Homes for a site plan for a 166-unit townhouse development located east of Peony Lane and north of the Canadian Pacific Railroad, subject to the following findings and conditions:

1. A site plan is approved to allow construction of an 166-unit townhouse development, in accordance with the plans and application received by the City on May 11, 2001, except as amended by this resolution.

2. Approval of the site plan is contingent upon City approval of the rezoning of the site to RMF-2 and the preliminary plat.

3. Variances to fire lane and turnarounds are approved in accordance with plans and application received by the City on May 11, 2001, except as amended by this resolution, based on the following conditions:

   a) All buildings in the development shall be protected by a City approved NFPA automatic fire sprinkler system.
   b) The fire hydrant water main system shall be in an approved looped fire hydrant system when a City watermain is available from an adjacent property.
   c) Fire flow calculations in compliance with City requirements shall be provided proving that the required fire flow requirements meet the minimum Plymouth Protective Inspection Division requirements.
   d) Fire hydrants shall be in approved locations throughout the development.
   e) Turnarounds on public streets (Holly Lane and Street A) shall conform to City requirements
   f) Approved secondary access roads shall be provided to the development when adjacent properties develop.

4. Prior to the issuance of building permits, the applicant shall submit a lighting plan showing compliance with Zoning Ordinance requirements and shall include decorative light standards for fixtures on all public streets.

5. Prior to the issuance of building permits, the applicant shall submit a revised landscaping plan showing compliance with the Zoning Ordinance requirements, specifically including screening of the guest parking from the properties to the west and three additional 3.5 caliper inch trees.

6. Prior to the issuance of any permits, the plans shall be revised as necessary in conformance with the results of the Hydrologic and Hydraulic Study.

7. Prior to the issuance of any permits, the applicant shall provide a revised disclaimer to all potential buyers that addresses the existence of the gun club, its hours of operation, and that repetitive, loud noise is produced during those hours.

8. Prior to the issuance of any building permits, signs shall be posted on or near the Gun Club property advising potential property owners of the existence of the gun club, its hours of operation, and that repetitive, loud noise is produced during those hours. This sign shall remain in place as long as the Gun Club is in operation.

9. All signage shall comply with the sign and fire code regulations of the Zoning Ordinance.

10. Privately-maintained sidewalks shall be provided along the east and south side of Holly Lane and the north side of Street A.

11. Standard Conditions:

    a. Compliance with the City Engineer's Memorandum.
    b. Prior to the issuance of building permits, the applicant shall submit the required Financial Guarantee and Site Performance agreement for completion of site improvements within twelve months of the date of this Resolution.
    c. No building permits shall be issued until the final plat is filed and recorded with Hennepn County.
    d. Prior to issuance of building permits, wetland buffer monuments shall be placed in accordance with Section 21670.07 of the Zoning Ordinance.
    e. Removal of all hazardous trees from the property at the owner's expense.
    f. Any subsequent phases or expansions are subject to required reviews and approvals per Ordinance provisions.
    g. The proposal is subject to all applicable codes, regulations and ordinances, and violation thereof shall be grounds for revocation.
    h. Prior to grading permit issuance, the applicant shall receive the necessary permits from Hennepin County, the DNR, MnDOT, Bassett Creek Watershed Management District, Army Corps of Engineers and MnPCA.
    i. This approval shall expire one year after the date of approval, unless the property owner or applicant has substantially started construction of the project or unless the landowner or applicant has received prior approval from the City to extend the expiration date for up to one additional year, as regulated under Sections 21045.09 of the Zoning Ordinance.
    j. Prior to issuance of building permits, the applicant shall submit proof of recording for the easement documents as specified in the Engineer's Memo.
    k. Compliance with the Ordinance regarding the location of lock boxes, post-indicator valves, fire department connections, fire lanes, and fire lane signage.
    l. An 8 1/2 x 11 inch "As Built" Fire Protection Plan shall be submitted prior to the release or reduction of any site improvement bonds per City Policy.

ADOPTED by the City Council on June 26, 2001.

STATE OF MINNESOTA)
COUNTY OF HENNEPIN) SS

The undersigned, being the duly qualified and appointed City Clerk of the City of Plymouth, Minnesota, certifies that I compared the foregoing resolution adopted at a meeting of the Plymouth City Council on June 26, 2001, with the original thereof on file in my office, and the same is a correct transcription thereof.

WITNESS my hand officially as such City Clerk and the Corporate seal of the City this
__________day of ____________________.

______________________________________
City Clerk