Court File No. 01-1980 / ROTTLUND / Pinnacle
Krummen Affidavit dated September 8, 2004

# EXHIBIT R138.2

defendants employ the same combination of component parts, *without regard to how those component parts are expressed.* There is no support for this interpretation of copyright law in the Eighth Circuit or anywhere else.

**I. Rottlund's "gestalt" theory of infringement is legally untenable.**

The irreducible essence of any claim for copyright infringement is that the defendant must copy the original or "protectible" aspects of the copyrighted work. *Feist Publications, Inc. v. Rural Telephone Service Company*, 499 U.S. 340, 348, 361 (1991). This is because "not all copying is copyright infringement." *Id.* at 361; *Attia v. Society of New York Hospital*, 201 F.3d 50, 52-3 (2d Cir. 1999) ("The problem underlying plaintiff's claim of copyright infringement, however, is that not all copying from copyrighted materials is necessarily an infringement of the copyright. There are elements of a copyrighted work that are not protected even from intentional copying.")

To prevail, the plaintiff must show not only that the defendant actually copied the plaintiff's work (either with direct or circumstantial evidence), but also that the defendant's work is substantially similar to the protectible elements of the plaintiff's work. *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C. Cir. 2002). *See also* 4 M. Nimmer, *Nimmer on Copyright*, § 13.03 [B][2][a] at 13-59 (2003) ("An essential element of an infringement case is that plaintiff must show that defendants' works are substantially similar to elements of plaintiff's work that are copyrightable or protected by the copyright. When similar works resemble each other only in those unprotected aspects, then defendant prevails.")

In this case, Rottlund does not identify, indeed it has *refused* to identify, any particular elements of the 447-396 and 546-295 copyrights that are original or protectible. Instead, Rottlund contends that the "'total look and feel, 'combination of component parts' or 'gestalt' of the architectural technical drawings" is protectible. (Rottlund Mem. at 17-18) More specifically,

Rottlund contends that its "selection and arrangement of common architectural features" is the protectible aspect of its design, regardless of whether any of those features are themselves protectible. (*Id.* at 19)

Rottlund's position has been clearly and firmly established during the course of this litigation. More than a year ago, this Court began to force Rottlund to identify the theory of its case:

> THE COURT: But does that mean, Mr. Davenport, in this case that if, and clearly the law would, for instance, permit you to argue about a fireplace, that you intend to do that here. That's what I'm trying to get at. In other words, is it the overall form, meaning the way in which everything is put together in the townhomes that you're arguing is protected or are you possibly going to argue about particular elements in and of themselves apart from where they're located or their connection to the townhome. Do you see what I'm saying?
>
> MR. DAVENPORT: I do, Your Honor. We'll address that in our letter.

(Murdoch Aff., Ex. S at 72-73) In a subsequent Order dated March 14, 2003, the Court wrote, "Plaintiff has clarified that it is not bringing claims for infringement of any individual elements. It is exclusively pursuing claims that Defendants infringed the "gestalt" of the Villa II." Murdoch Aff., Ex. T at 24)

Several months later, when Rottlund first tried to raise the sprinkler room as a discrete claim, the Court struck the allegations, holding, "Further, the wording 'infringement of Rottlund's Villa II sprinkler system construction drawings' is problematic given that Plaintiff is claiming only infringement of the Villa II's "gestalt", rather than infringement of any individual element." (Murdoch Aff., Ex. U) In response to this Order, Rottlund changed its theory regarding the sprinkler room, and argued that its existence changes the "gestalt" of the design. (Murdoch Aff., Ex. A) On the basis of this argument, the Court allowed Rottlund to amend its complaint, but specifically held, "Consistent with this Court's previous Orders, Plaintiff will not be permitted to assert liability based upon individual elements, including sprinkler room elements." (Murdoch

Aff., Ex. V) In short, Rottlund is bound by the law of this case to limit its claim for infringement to the alleged copying of an arrangement of unprotectible architectural elements.[3]

Rottlund's claim has no legal validity because it contends this "gestalt," or "selection and arrangement of common architectural features" can be infringed by any substantially similar "selection and arrangement," without regard to how a builder chooses to express those common architectural features. Thus, in Rottlund's Second Amended Supplemental interrogatory response, Rottlund "claims copyright protection for, among other things, the . . . combination or "gestalt" of [seventy-one] design elements and/or features." (Davenport Aff., Ex. SSS) At its Rule 30(b)(6) deposition, however, Rottlund testified that its official position is that the "gestalts" of competing designs can still be substantially similar even if <u>none</u> of the seventy-one elements are themselves substantially similar:

> Q. Right. And I don't want to take one element, I want to take them all. And let's say that at the end of the day none of them are substantially -- none of the specific elements that you list are actually substantially similar. Is it still possible, in your opinion, for the total Homestead Villa [sic] collection to be substantially similar to the Rottlund Villa collection?
>
> A. I would say it's still possible.

(Murdoch Aff., Ex. I at 801:21-802:4) In other words, it does not matter to Rottlund what the elements look like, <u>or how they are expressed;</u> if the competing design arranges those elements in a similar way, it infringes.

This lays bare the fact that Rottlund's "elements that comprise the 'gestalt'" are nothing more than unprotectible ideas. To give examples, Rottlund's list contains such elements as "layout of living room," "proportions of exterior patio," and "placement of owner's suite

---

[3] Rottlund's commitment to this position has been so clear that at one hearing the Court made the following assurance to the defendants: "But if its Gestault [sic], then we're going to litigate Gestault [sic] here. And if you're right about Gestault [sic], you will win." (Murdoch Aff., Ex. S at __) Pinnacle is therefore greatly alarmed that Rottlund appears to be trying to change its tune in the instant motion. At pages 29-31 Rottlund focuses its infringement allegations on two individual elements: the elevation and the exterior unit floor plan. Rottlund is judicially estopped from advancing these arguments by its prior commitment to its "gestalt" theory.

bathroom." (Davenport Aff., Ex. SSS at items u, mm, xx) But the list does not limit these elements to any particular "layout" or "proportion." Nor does Rottlund make any attempt in its motion to show that the "layout" of its living room, for example, is original or otherwise protecible.

Thus, Rottlund's sought-for scope of protection differs radically from Judge Doty's decision in *CSM Investors, Inc. v. Everest Development, Ltd.*, 840 F. Supp. 1304 (D. Minn. 1994). In *CSM*, Judge Doty held:

> It is undisputed that copyright protection does not extend to individual standard features. It is also axiomatic that copyright law protection covers only the *expression of ideas fixed in a tangible form* and not the ideas themselves. Thus, the use of structural elements and the concept of a one-story office showroom are not copyrightable. But, as the Eighth Circuit recognized, "[w]hile the concept of a T-shaped building is not entitled to copyright protection, detailed plans and drawings of a specific building are.
>
> *Id.* at 1310 (citations omitted; emphasis supplied)[4].

In contrast with Judge Doty's holding in *CSM*, Rottlund does not seek to limit the scope of its copyright to the details of its plans or the specific buildings depicted in the 447-395 or 546-295 registrations. Instead, Rottlund claims the selection and arrangement of these general, non-specific, components create a "look and feel" that can be protected. No court has gone this far. In fact, that very proposition was explicitly rejected by this District Court in *Kootenia Homes, Inc. v. Reliable Homes, Inc.*, 2002 WL 15594 (D. Minn.) at *4, when it held, "Many features of a designed residence are common in many other homes. Efficiency concerns and the need for functional living in the home inevitably constrain the number of variations in the configuration of the rooms and spaces. Common elements and generic features are shared by all homes. ***The***

[4] Notably, when Judge Doty turned to the question of substantial similarity in *CSM*, he focused on the manner in which the plaintiff expressed the design concepts. Specifically, he found similarity because both designs included "sawtooth loading doors and parapet walls," used brick on the frontage and back of the building, placed cars and trees in identical locations, and used identical lettering and numbering. CSM, 840 F. Supp. at 1311. He did not rely upon the "total look and feel" that arises from the selection and arrangement of unprotectible elements.

***Copyright Act does not protect the ideas for juxtaposing these living spaces.***" (emphasis supplied).

Many other Courts have reached the same conclusion. In *J.R. Lazaro Builders, Inc. v. R.E. Ripberger Builders, Inc.*, 883 F. Supp. 336, 343 (S.D. Ind. 1995), for example, the court explained the difference between the protectible and the non-protectible:

> The idea/expression dichotomy is very important for architectural works and home designs; obviously, placing a bathroom adjacent to a bedroom or a walk-in closet in a master bedroom in a house are ideas not capable of copyright protection. Substantial similarity must be evaluated, instead, on the 'basis of the original design elements that are expressive of the [designer's] creativity.'

*Id.* at 343 (citation omitted). To that end, the Lazaro court required plaintiff to "formally identify those aspects of the designs at issue which it contends are protectible." *Id.* at 343-44 n. 13.

To the same effect is *Ronald Mayotte & Assoc. v. MGC Building Co.*, 36 U.S.P.Q. 2d 1793, 1995 WL 681269 (E.D. Mich. 1995). Mayotte claimed that its architectural plans were wholly original and therefore it had no burden to "separate out the original elements of the architectural plans." *Id.* at *3. The *Mayotte* court held that this was true insofar as it concerned an issue of copyright validity, but it was not an accurate statement of the law when the issue was infringement. *Id.*; *see also Eve of Milady v. Impression Bridal, Inc.*, 986 F. Supp. 158, 160 (S.D.N.Y. 1997) ("In cases involving a design with both protectible and unprotectible elements . . . the finder of fact may not rely on overall impressions to determine whether unlawful appropriation has occurred. Rather the Court must compare only the protected portions of the design to determine whether infringement has occurred.")

The recent Second Circuit decision in *Attia v. Society of New York Hospital*, 201 F. 3d 50 (2d Cir. 1999) is instructive on this point. Attia was an architect who claimed defendants had infringed his designs by misappropriating the "'unique combination of design elements' inherent in his overall 'design solution' to the [project at issue], including 'at least twenty [individual]

design elements.'" *Id.* at 53. The district court granted summary judgment in favor of the defendants, finding no substantial similarity, and the Second Circuit affirmed.

The *Attia* court first noted that "[t]here are elements of a copyrighted work that are not protected even against intentional copying. It is a fundamental principle of our copyrighted doctrine that ideas, concepts, and processes are not protected from copying. (Citations omitted.)" *Id.* at 54. The court then stated:

> [T]o the extent that such plans include generalized notions of where to place functional elements, how to route the flow of traffic, and what methods of construction and principles of engineering to rely on, these are 'ideas' that may be taken and utilized by a successor without violating the copyright of the original 'author' or designer. On the other hand, to the extent that the copier appropriates not only those ideas but the author's personal expression of them, infringement may be found.

*Id.* at 55.

Rottlund's fundamental error is a confusion between the low threshold for originality as it relates to validity and the Court's obligation to compare only those aspect that are protectible when determining whether substantial similarity exists. Rottlund wants this Court to find that its copyrights can be valid on the basis that they depict nothing more than the "selection and arrangement" of unprotectible architectural forms, but at the same time it seeks more than the "thin" protection afforded compilations. The United States Supreme Court recognized that compilations of unprotectible ideas can be the subject of a valid copyright in *Feist Publications, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 348-49, (1991), but it found the protection afforded such copyrights is "thin." Moreover, a claim of infringement of a compilation of unprotectible ideas requires virtual exact duplication, or "extensive verbatim copying." *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 729 (8th Cir. 2002) (*citing Feist*, 499 U.S. at 349); *Transwestern Publishing Co. v. Multimedia Marketing Associates, Inc.*, 133 F.3d 773, 776-77 (10th Cir. 1998).

In contrast to this well-settled law, Rottlund argues that infringement can be found if the "total look and feel," or "gestalt" of the competing designs is "substantially similar." This exact proposition was rejected by the Ninth Circuit in *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442-45 (9th Cir. 1994):

> Apple argues that the "total concept and feel" of its works – that is, the selection and arrangement of related images and their animation – must be compared with that of the Windows and NewWave GUIs for substantial similarity....Apple wants *an overall comparison* of its works to the accused works for *substantial similarity* rather than virtual identity....As the Supreme Court recently made clear, protection extends only to those component parts of a work that are original to the author, although original selection and arrangement of otherwise uncopyrightable components may be protectible. **Apple's argument that components should not be tested for originality because the interface as a whole meets the test, is therefore misplaced....We are not persuaded to the contrary by Apple's arguments that the district court shouldn't have dissected at all, or dissected too much; that it "filtered out" unprotectible and licensed elements instead of viewing the Macintosh interface as a whole; and that it should have recognized protectability of arrangements and "total concept and feel" of works under a substantial similarity standard.**
>
> *Id.* 1442-45 (citations omitted; boldface supplied).

In other words, Rottlund cannot have it both ways. If the only protectible aspect of its copyright is the selection and arrangement of unprotectible ideas, the protection is thin, and infringement requires virtual identity. Rottlund cannot stake its claim to originality on the compilation of unprotectible architectural forms, and then demand that protection extend to all other compilations that are substantially similar, regardless of expression.[5]

[5] None of the cases Rottlund cites in its memorandum support this dramatic departure from established copyright law. In every case Rottlund cites for the proposition that combinations of unprotectible forms can be copyrighted, the finding of infringement is based on virtual identity of the details, not substantial similarity of the "total look and feel." *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.* 186 F. Supp. 2d 1, 14, (D. Mass. 2002), *aff'd on other grounds*, 322 F.3d 26 (1st Cir. 2003) (holding that choices of unoriginal design elements can be copyrighted, but finding infringement on the basis that the accused plan was "virtually, if not entirely, identical"); *Richmond Homes Management, Inv. v. Raintree, Inc.*, 862 F. Supp. 1517, 1527 (W.D.Va. 1994), (acknowledging that selection and arrangement of unoriginal component parts can be protected, but finding infringement on the grounds that the interior layout of defendants' home was "nearly identical."); *Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 438, 447 (4th Cir. 1986) (acknowledging that combinations of unoriginal component parts can be copyrighted, but finding infringement on grounds that accused computer program was exact copy); *Nelson-Salabes, Inc. v. Morningside Holdings*, 2001 WL 419002 (D. Md.) (finding infringement because designs were "strikingly similar," and because defendant ordered substitute architect to work within copyrighted footprint).

There is no support in the Eighth Circuit case law, or anywhere else for that matter, for Rottlund's "gestalt" theory of infringement. In fact, the Courts in the Ninth and Eleventh Circuit have been harshly critical of the "total look and feel," theory. *Apple Computer, Inc. v. Microsoft Corp.*, 799 F. Supp. 1006, 1016 (N.D. Cal. 1992), *aff'd on point*, 35 F.3d 1435, 1445 (9th Cir. 1994) ("The Court declines Apple's invitation to use the advent of the microcomputer and its interface to abandon traditional standards which govern copyrights and invent some new law based on highly indefinite constructs such as "look and feel."). *Leigh v. Warner Brothers, Inc.*, 212 F.3d 1210, 1215 (11th Cir. 2000) ("Analyzing relatively amorphous characteristics of the picture as a whole (such as the 'mood' or 'combination of elements') creates a danger of unwittingly extending copyright protection to unoriginal aspects of the work. **This danger is especially acute in a case such as this, in which the unprotected elements of the plaintiff's work . . . are so significant.**") (emphasis supplied)

In the absence of any Eighth Circuit law, this Court should heed the warnings of Professor Nimmer and decline the invitation to base infringement claims on "total look and feel:"

> More broadly, the touchstone of "total concept and feel" threatens to subvert the very essence of copyright, namely the protection of original *expression*. "Concepts" are statutorily ineligible for copyright protection; for courts to advert to a work's "total concept" as the essence of its protectible character **seems ill-advised in the extreme**. Further, the addition of "feel" to the judicial inquiry, being a wholly amorphous referent, merely **invites abdication of analysis**. In addition, "total concept and feel" should not be viewed as the *sine qua non* for infringement – similarity that is otherwise actionable cannot be rendered defensible simply because of a different concept and feel. In sum, therefore, the frequent invocations of this standard do little to bring order to the inquiry into what constitutes substantial similarity, and **would be better abandoned.**

4 M. Nimmer, *Nimmer on Copyright* § 13.03[A][1][c] at 13-39 (2003) (emphasis supplied).

**II. Rottlund has failed establish a *prima facie* case of substantial similarity.**

**A. Rottlund fails the extrinsic test for substantial similarity.**

The Eighth Circuit employs a two-step analysis to determine whether there is substantial similarity between competing works. *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987). As the Court explained in *Moore v. Columbia Pictures Industries, Inc.*, 972 F.2d 939, 945 (8th Cir. 1992), "There must be substantial similarity 'not only of the general ideas but of the expressions of those ideas as well. First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works. Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression."

The Court decides the first step, or the extrinsic test, as a matter of law. *Hoch v. MasterCard International, Inc.*, 284 F. Supp. 2d 1217, 1222 (D. Minn. 2003). "A Court applying the extrinsic test must 'filter out and disregard the non-protectible elements in making its substantial similarity determination.'" *Id. (citing Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)); *see also Apple Computer*, 35 F.3d at 1442; *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) (the party claiming infringement may place "*no* reliance upon any similarity in expression resulting from" unprotected elements). The plaintiff bears the burden of "identifying concrete elements based on objective criteria" without reference to unprotectible aspects of the work. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000).

With the assistance of expert testimony, the Court then determines whether similarity exists between the "concrete elements" identified by the plaintiff. *Moore*, 972 F.2d at 945 ("We rely on expert testimony to conduct the extrinsic test."); *Hartman*, 833 F.2d at 120 ("Expert opinion evidence is admissible in connection with the first step of the substantial similarity

analysis to show similarity of ideas."); *Schoolhouse, Inc. v. Anderson*, 2001 WL 160081 at *4 (D. Minn.) (J. Doty) ("Under the first step, expert testimony may be relevant."); *see also Three Boys Music*, 212 F.3d at 485 ("The extrinsic test often requires analytical dissection of a work and expert testimony."). The need for expert testimony is essential in cases involving technical materials, such as architectural plans. *Kohus v. Mariol*, 328 F.3d 848, 857-58 (6th Cir. 2003) ("The first prong of the inquiry will almost certainly require expert testimony, because the drawings are technical in nature and a lay person is unlikely to understand what constitutes creativity in this area, which elements are standard in the industry, and which elements are dictated by efficiency or external standards.")

Rottlund argues in this motion that the Court can perform the analytic dissection of the technical elements called for under the extrinsic test without the aid of expert analysis. In so doing, Rottlund contradicts the position it took to defeat defendant's motion to compel discovery regarding the extrinsic analysis. In its Order dated October 10, 2002, this Court explained:

> Plaintiff argues that it should not be required to identify and describe in detail each and every design element and feature without the benefit of expert analysis. It explains that when dealing with claims of substantial similarity, courts employ a two-part test consisting of an extrinsic test and an intrinsic test. Citing *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000), Plaintiff argues that the extrinsic test, which requires identifying concrete elements of copyright protection, often requires 'analytic dissection of a work and expert testimony.' Plaintiff concludes that the additional information Defendant seeks should not be produced before the deadlines for expert disclosures.

(Murdoch Aff., Ex. W) The Court went on to hold that "level of detail sought [by defendants in discovery] is premature, and should be provided [by Rottlund] along with expert disclosures." (*Id.*) Rottlund now asserts that the "level of detail" called for by the extrinsic test and necessitating expert testimony is not needed to resolve the motion for summary judgment.

Lacking support from any expert or witness, Rottlund's ***entire*** argument regarding the extrinsic test is as follows:

> In this case, the designs at issue both depict town homes for residential sites, thus satisfying the extrinsic test. Rottlund has identified seventy-one elements of similarity expressed in the details of the works in question. Thus, when viewed objectively, the works as a whole are substantially similar pursuant to an extrinsic analysis.

Rottlund Mem. at 28

This "analysis" fails on a number of levels. First, the extrinsic test requires a comparison of the ***details*** of the works, and cannot be satisfied merely by pointing out that "both [designs] depict town homes for residential sites." A "town home for a residential site" is obviously an unprotectible concept that must be filtered out during the extrinsic test.

Second, Rottlund's claim that it has "identified seventy-one elements of similarity" is simply false. The interrogatory answer and deposition testimony relied upon to support this assertion do not make any comparison of these elements. Instead, both the interrogatory answer and Mr. Whitten's testimony only claim that these seventy-one elements "comprise" or make up the "gestalt" of Rottlund's plans. (*See* Davenport Aff., Ex. SSS, Ex. JJ at 47-50, 79-90) Rottlund has steadfastly refused to engage in ***any*** comparison of the individual elements of the works throughout this litigation. (*See, e.g.,* Murdoch Aff. Ex I, 115:22 – 117:1)

Finally, Rottlund's claim that "the works as a whole are substantially similar pursuant to an extrinsic analysis" is simply gibberish. The extrinsic test does not consider "the works as a whole;" it analyzes specific details of the works. The Ninth Circuit recently affirmed sanctions against a plaintiff architect who advanced this very argument. In *Domingo Cambeiro Professional Corporation v. Advent*, 2000 WL 262587, 211 F.3d 1273 (9th Cir. 2000), the plaintiff was not selected to design a New York-themed casino and sued when the ensuing design façade seemed similar to his design. The District Court granted defendants' motion for summary judgment and awarded the defendants their attorney's fees. The Court found the

plaintiff's refusal to engage in the analytic dissection called for under the extrinsic test was "objectively unreasonable," and the Ninth Circuit affirmed:

> The [district] court reasoned that, by steadfastly objecting to the court's use of analytic dissection under the extrinsic test, "Cambeiro failed to identify any specific similarities between the Cambeiro Works and the New York Hotel." Instead, Cambeiro relied on the theory that its selection, arrangement and coordination of famous New York icons into an integrated façade was entitled to copyright protection. *Id.* at * 2.

The Ninth Circuit specifically held that the works are not considered "as a whole" until after the extrinsic test has been satisfied:

> The extrinsic test now objectively considers whether there are substantial similarities in both ideas and expression, whereas the intrinsic test continues to measure expression subjectively. Because only those elements of a work that are protectible and used without the author's permission can be compared when it comes to the ultimate question of illicit copying, we use analytic dissection to determine the scope of copyright protection **before** works are considered "as a whole." *Id.* (emphasis supplied)

By urging the Court to compare the 447-395 and 546-285 copyrights to the defendants' plans "as a whole" (thereby including both protected and unprotected elements), Rottlund essentially asks this Court to skip the extrinsic test and move directly to a subjective comparison of the plans' "total look and feel." *See Hartman*, 833 F.2d at 120-121 ("total concept and feel" only considered during the intrinsic stage). To do so would be clear error. The district court in *Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 2003), made this mistake and was promptly reversed. ("The district court in the present case applied the ordinary observer test, only, and on the basis of that test it rejected expert testimony proffered by both Kohus and the Defendants . . . .[T]he district court must conduct its proceedings anew.") The law is clear that "[a] plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." *Rice v. Fox Broadcasting Company*, 330 F.3d 1170, 1174 (9th Cir. 2003).

Finally, even if Rottlund had properly engaged in an extrinsic analysis by comparing specific protectible elements of its design to the defendant plans, summary judgment must still be denied because of the fact questions raised by defendants' expert. In his report, Mr. Scherer identifies numerous differences between the defendants' designs and the 447-395 and 526-285 registrations in the very same elements Rottlund asserts are similar. (Scherer Aff. at Ex. A) Differences between the works of this type undermine a summary judgment on substantial similarity. As the Second Circuit explained in *Attia,*

> "Where, as here, a defendant's work is dissimilar in the very respects in which it is claimed to be similar, that can obviously influence the conclusion as to whether the claimed similarity in fact exists, or is substantial. Furthermore, dissimilarity in realization or expression can make clear, as it does in this case, that the similarity extends only to unprotectible concepts or ideas"

Attia, 201 F.3d at 58

Mr. Scherer's additional opinions that none of the elements in Rottlund's designs show even the faintest spark of creativity, and that the plans are not substantially similar cannot simply be ignored. At a minimum, they create genuine issues of material fact precluding summary judgment.

**B. BSB's evidence of independent creation creates a fact question.**

BSB has proffered uncontradicted evidence in the form of affidavits from Mr. Moore and Mr. Jorgensen that they independently created the designs for TCM's Homestead plans and the designs that became Pinnacle's Washington Square plans. (Murdoch Aff., Ex. L, M) This evidence creates a fact question regarding substantial similarity and cannot be resolved at the summary judgment stage. M. Nimmer, 3 *Nimmer of Copyright* § 12.10[B][2][b] at 12-183 (2003) ("To the extent that defendant denies copying and maintains independent creation, a factual issue arises, which is for trial to resolve.") The Court is simply not free to dismiss the Moore and Jorgensen affidavits. *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 4 (1st Cir. 1996)

(absent specific facts discrediting testimony evidence on summary judgment motion may not be "positively disbelieved")

The only way for Rottlund to obtain summary judgment in the face of the Moore and Jorgensen affidavits is to prove the similarities between the works are so persuasive and overwhelming they preclude the possibility of independent creation. 3 *Nimmer on Copyright*, supra at 12-184. "In order to justify such a ruling in the face of credible evidence from the defendant, it would seem that the degree of similarity must exceed even the striking similarity that would allow the trier of fact to infer copying without proof of access." *Id.* Given that Rottlund has offered no comparisons whatsoever between its copyrights and the defendants' designs, it cannot overcome this barrier.

**III. Fact questions preclude a finding of access.**

With regard to the issue of access, it cannot be stressed too heavily that Rottlund's motion is limited to the 447-395 and 526-285 copyrights on technical architectural drawings. Rottlund has explicitly excluded from consideration all its copyrights on as-built structures. Accordingly, the issue of access is also limited to the question whether the defendants had "a reasonable opportunity to view" the deposit materials for the 447-395 and 526-285 registrations. *Kootenia Homes*, 2002 WL at *5.

Rottlund has no evidence that anyone at Pinnacle either viewed or had an opportunity to view the deposit materials for the 447-395 or 526-285. Instead, the only basis for its argument that Pinnacle had access to the deposit materials is the fact that Steve Sandelin picked up two copies of the "Rottlund Happenings" brochures. Rottlund insists that under "well established precedent" access to these brochures constitutes access to the deposit materials.

Rottlund is wrong on both the law and the facts. First, there is no "well established precedent" for the proposition that access to a brochure containing a floor plan of a different

product constitutes access to technical drawings (even assuming the postage-stamp sized diagrams in the Rottlund brochures are "floor plans"). In the vast majority of the cases Rottlund cites, the floor plans depicted in the brochures were themselves copyrighted, and it was the copyright on that floor plan, not the technical drawings, that the defendants infringed. In other words, these cases do find access through a proxy; there was direct access to the copyrighted plan.[6]

The holding in *Imperial Homes Corp. v. Lamont*, 458 F.2d 895 (5th Cir. 1972), is entirely different. In that case, the plaintiff reproduced a portion of its copyrighted drawings in a brochure. The court did not hold that access to the brochure was legally tantamount to access to the technical drawings. Rather, it held that it was no defense for the defendant to argue that she only copied that portion of the copyrighted material shown in the brochure. *Id.*

As for the facts, the two "Rottlund Happenings" brochures do not contain floor plans for the 447-395 or 526-285 copyrights. Instead, on their face they describe the "New Villa." Nor do the brochures in BSB's files relate to the copyrights at issue. Therefore, even if Rottlund's legal analysis is correct, it cannot establish access to the 447-395 or 526-285 technical drawings through access to these brochures.

Finally, none of Rottlund's other evidence applies to Pinnacle. Rottlund has no proof that Pinnacle hired Rottlund employees or received copies of sections of the technical drawings. Nor can Rottlund argue that BSB's receipt of sprinkler room drawings from Metro Fire imputes

---

[6] *See Arthur Rutenberg Corp. v. Parrino*, 664 F. Supp. 479, 481 (M.D. Fla. 1987) (defendant accused of infringing copyrighted floor plan that was reproduced in brochure); *Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274 (6th Cir. 1988) (abridged floor plan was itself copyrighted); *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560 (M.D. Fla. 1995) (access found because defendant had complete set of copyrighted blueprints and specifications as well as brochures); *Richmond Homes Management, Inc. v. Raintree, Inc.*, 862 F. Supp. 1517 (W.D. Va. 1994) (copyrighted floor plan was downloaded into defendant's computer); *Ronald Mayotte & Assoc v. MGC Bldg. Co.*, 885 F. Supp. 148 (E.D. Mich. 1994) (infringed copyright was on as-built structure; brochures at issue also contained copyrighted designs); *Value Group, Inc. v. Mendham Lake Estates, L.P.*, 800 F. Supp. 1228 (D.N.J. 1992) (design in brochure at issue was itself copyrighted); *Arthur Rutenberg Corp. v. Dawney*, 647 F. Supp. 1214 (M.D. Fla. 1986) (design in floor plan at issue was itself copyrighted); *Kent v. Revere*, 1985 WL 6453 (M.D. Fla. 1985) (defendants did not contest access); *Donald Frederick Evans v. Continental Homes, Inc.*, 785 F.2d 897, 902 (11th Cir. 1986) (the floor plan reproduced in the Parade of Homes flyer was part of the copyrighted plans).

access to Pinnacle. Those faxes were not sent until after the Washington Square designs were complete. In any event Washington Square has no sprinkler room, so the issue is irrelevant to Pinnacle.

## IV. There is no proof of actual copying by Pinnacle.

Rottlund's analysis regarding actual copying is fundamentally wrong. It claims the Court "need not determine access and substantial similarity since evidence of direct copying exists." (Rottlund Mem. at 22) Not true. Rottlund would still need to establish substantial similarity even if it had evidence of direct copying. *Bridgmon v. Arrary Systems Corp.* 325 F.3d 572, 577 (5th Cir. 2003) ("George contends that he need not produce evidence of substantial similarity between the copyrighted software and the software used by Array because there is evidence of direct copying. This argument simply misperceives that 'not all factual copying constitutes legally actionable copyright infringement.'")

The only evidence Rottlund presents that even arguably relates to actual copying are the facsimile transmissions Metro Fire sent to TCM and BSB showing Rottlund's sprinkler room. In order to state a claim for actual copying on the basis of these transmittals, Rottlund would need to establish (1) that TCM's ultimate sprinkler room (at harvest-Hills above) is substantially similar to Rottlund's, and (2) that the sprinkler room design is protectible. If it fails on either issue, it has no claim for direct copying. *See* 4 M. Nimmer, *Nimmer on Copyright*, § 13.01[B] at 13-8 (2003).

Rottlund has not even attempted to prove either item. Rottlund has premised its entire claim on the overall "gestalt" of its design, and has refused to compare *any* individual element of its plans with those of the defendants. The only aspect of the 546-285 registration that Rottlund claims is original is the selection and arrangement of "unoriginal" component parts. (Rottlund Mem. at 17-18) It cannot now argue that the sprinkler room is original and protectible.

The sprinkler shed in this case consists of three walls, a door, and a roof. Todd Dosch, the owner of Metro Fire testified that he typically submits his shop drawings to municipalities for approval. (Murdoch Aff., Ex. K at 63:12-64:7, X) Those shop drawings typically contain a drawing of a "generic" sprinkler shed which Metro Fire keeps in its computer for just this purpose. (Id. 83:8-84:18) Metro Fire's "generic" sprinkler shed is identical to Rottlund's. (Compare, Davenport Aff., Ex. G at RCI004161 with Murdoch Aff. Ex. X) As Pinnacle's expert, Mr. Jeffery Scherer, states in his affidavit, Rottlund's sprinkler shed reflects no originality whatsoever.

The balance of the evidence Rottlund cites in support of its claim for direct copying relates to the brochures, product tours, and photographs defendants took during the product tours. None of these constitutes "direct copying" of the technical drawings. In fact, it does not even establish direct copying of the as-built structures. It is simply evidence relating to access from which Rottlund draws an inference (which it may not as the non-movant) of copying. The question of direct copying at the summary judgment stage is not even close. Rottlund's motion in this regard must be denied.

## V. QUESTIONS OF FACT PRECLUDE SUMMARY JUDGMENT ON THE VALIDITY OF THE COPYRIGHTS AT ISSUE

A certificate of registration constitutes *prima facie*, but rebuttable, evidence of the validity of a copyright and of the facts, including ownership and existence, stated in the certificate. *Taylor Corp. v. Four Seasons Greetings, LLC*, 171 F. Supp. 2d 970, 972-73 (D. Minn. 2001), *aff'd*, 318 F.3d 1039 (8th Cir. 2003). If a registrant fails to disclose that the work is derivative of other copyrighted material, the copyright is invalid. *Garner v. Sawgrass Mills Ltd. Partnership*, 1994 WL 829978, 35 U.S.P.Q.2d 1396, 1403 (D. Minn. 1994) (court invalidated a registration in which plaintiff, without excuse, failed to reveal that its work was derivative); *R. Ready Productions, Inc. v. Cantrell*, 85 F. Supp. 2d 672, 691-92 (S.D. Tex. 2000) (by

intentionally failing to disclose on registrations that their works were substantially derivative of pre-existing works authored by their former employers, plaintiffs failed to inform the Copyright Office of material facts would have prompted rejection of their applications); *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F. Supp. 980, 988-89 (S.D.N.Y. 1980) (granting summary judgment on copyright infringement claim based on infringement of registered toy, due to plaintiff's knowing failure to disclose pre-existing public domain work that formed basis of design).

Contrary to the representations made by Rottlund to the Copyright Office in its applications for the 447-395 and 526-285 registrations, these works are derivative of the "New Villa" and the "Original Villa." Rottlund had admitted this in its Fifth Amended Complaint. (Fifth Amended Complaint, ¶¶ 21-25) In this motion, Rottlund has offered no explanation or justification for the omissions on the 447-395 and 526-285 applications. Instead, it relies exclusively on the presumption of validity. It should not be permitted to introduce new evidence in its reply brief to fill these glaring deficiencies.

Rottlund might argue that it holds the copyrights for the works from which the 447-395 and 526-285 works were derived, so "no harm – no foul." Unfortunately, there are significant questions about the scope of AFI's assignment to Rottlund of the Villa designs. Prior to this litigation, the only designs assigned by AFI to Rottlund were the 1987 plans specifically enumerated in the January 1989 agreement. The 1993 copyright application for the Villa, however, identifies a creation date of 1988, obviously referring to a different set of plans which AFI never assigned to Rottlund. (Murdoch Aff. Ex. P)

After this litigation began, and defendants raised this issue, Rottlund tried to patch over the problem with a retroactive agreement with the now-defunct AFI. (Murdoch Aff., Ex. R) Among many other suspicious problems with this agreement, Timothy Whitten, an officer of

Rottlund, executed the contract on behalf of AFI. (*Id.*) The validity of this agreement is highly suspect. *See Fred Riley Home Building Corp. v. Cosgrove*, 864 F. Supp. 1034, 1042-44 (D. Kan. 1994) (copyright assignments by a former officer purporting to act on behalf of himself and his former corporate architect employer were invalid to pass title to a developer assignee).

In short, serious questions exist as to Rottlund's ownership of the Villa design. By failing to identify the Villa II as a derivative, Rottlund appears to have rendered its copyright invalid. At this stage, the Court would need to resolve genuine fact questions and draw inferences against Pinnacle to enter summary judgment in favor of Rottlund.

**CONCLUSION**

For all of the foregoing reasons, Rottlund's Motion for Partial Summary Judgment should be denied in all respects.

Dated: March 8, 2004

Respectfully Submitted,

By: ______________________

Edward F. Ryan
Christopher J. Murdoch
Matthew I. Farmer
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th Fl.
Chicago, IL 60603
Telephone: (312) 263-3600
Facsimile: (312) 578-6666

By: ______________________

David Donna (#163624)
**DONNA & DALY**
1460 Buffet Way, Suite 150
Eagan, MN 55121
Telephone: (651) 406-4242
Facsimile: (651) 406-4243

ATTORNEYS FOR DEFENDANT
PINNACLE CORPORATION

# 1738150_v1