UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,

Plaintiff,

v.

Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,

Defendants,

and

Town & Country Homes, Inc., a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

Civil No. 01-1980 (DSD/SRN)

**DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS AND PLANNERS OF IOWA, INC., AND THE BLOODGOOD GROUP, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AS TO DAMAGES**

---

Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. ("BSB") and The Bloodgood Group, Inc. ("BGI") submit the following Reply Memorandum of Law in Support of Their Motion for Summary Judgment as to damages.

## I. ROTTLUND IS NOT ENTITLED TO ANY ACTUAL DAMAGES UNDER EIGHTH CIRCUIT LAW.

Under the clear law of the Eighth Circuit, Rottlund is not entitled to recover any actual damages. The Eighth Circuit has repeatedly stated that actual damages exist to compensate plaintiffs when an infringement diminishes the value of the copyrighted work[1], or forecloses a larger market for the copyrighted work[2]. Rottlund has never argued that either of these measures of actual damages are applicable here, and has never offered any evidence to support a calculation of damages under either of these theories. In the absence of this type of damage, actual damages are only available if "the copyright owner's provable profit margin is greater than the infringer's[.]" Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co., 978 F.2d 430, 432 (8th Cir. 1992). In such an instance, the claim must be supported by solid, nonspeculative evidence---indeed, the Pfanenstiel court rejected the plaintiff's actual damages claim precisely because it was predicated on a series of assumptions not supported by evidence.

In this case, Rottlund seeks actual damages by arguing that, but for the alleged infringement, Rottlund would have sold a Villa II unit for each Homestead Collection unit sold by TCM. As the record makes clear, however, this argument is based on the following wholly unsupported assumptions:

1. land that would be viewed by consumers as interchangeable with the land on which the Homestead Collection was built was available on which to built these potential Villa II's;
2. Rottlund could have purchased that land;
3. Rottlund could have built and completed the potential Villa II's during the same timeframe TCM was building and completing the Homestead Collection units;

[1] Mary Ellen Enterprises, Inc. v. Camex, Inc., 68 F.3d 1065, 1069-70 (8th Cir. 1995).
[2] Cream Records, Inc. v. Jos. Schlitz Brewing Co., 754 F.2d 826, 827-28 (9th Cir. 1985) (cited with approval by Pfanenstiel, 978 F.2d at 432.

4. Rottlund's cost to build the potential Villa II's would be the same as its cost to build the Villa II's it actually built during the same timeframe; and
5. Rottlund could have sold each of the potential Villa II units at Rottlund's typical price in the same timeframe TCM was selling the Homestead Collection units.

Rottlund has not, and can not, produce any evidence to support any of these assumptions. There is nothing to distinguish Rottlund's claim from the claim that failed in Pfanenstiel. There is no evidence upon which a reasonable jury could conclude that Rottlund could have and would have built and sold one Villa II unit for every Homestead Collection unit built and sold by TCM. For this reason, summary judgment dismissing Rottlund's claims for actual damages is appropriate.

## II. BSB AND BGI'S CALCULATION OF ROTTLUND'S ACTUAL DAMAGES RELATED TO THE HOMESTEAD COLLECTION IS ACCURATE.

Rottlund argues that BSB and BGI have somehow tried to elect, on Rottlund's behalf, the damages model Rottlund will use at trial. This is simply incorrect. BSB and BGI recognize that Rottlund may choose between the three different damages models (actual damages, defendants' profits, and statutory damages), and that there are certain time limits as to when that election must be made. Rottlund has, however, argued throughout this case that it *may* seek to recover actual damages. As argued above, BSB and BGI believe that Rottlund has failed to prove up its actual damages claim under the governing law in the Eighth Circuit. However, if the Court disagrees, it is entirely appropriate for the Court to rule on what actual damages would be available to Rottlund should Rottlund chose to attempt to recover actual damages in addition to recovering profits from BSB, BGI, TCM and Pinnacle.

Using the profit figures championed by Rottlund's expert, Melissa Snelson[3], BSB and BGI have argued that the actual damages available to Rottlund, once TCM's profits are taken into account, are no more than $410.75 per Homestead Collection unit sold. Because Rottlund has made no attempt to challenge these numbers, the Court can properly accept them, and order that, should Rottlund prove up its actual damages claim, that claim with respect to the Homestead Collection is limited to $410.75 per Homestead Collection unit sold.

## III. BSB AND BGI HAVE ACCURATELY CALCULATED THEIR GROSS RECEIPTS AND PROFITS.

Rather than substantively address Joseph Kenyon's calculations regarding BSB and BGI's gross receipts and profits related to the Homestead Collection, Rottlund attempts to muddy the water by claiming that (1) Pinnacle paid BGI to develop the Washington Square project, and (2) that BSB's gross receipts regarding the Homestead Collection total $192,396.19. The clear facts in the record demonstrate that neither argument has merit.

### A. Pinnacle did not contract with BGI to produce the Washington Square product.

Rottlund argues that Joseph Kenyon's calculation of BSB and BGI's gross receivables erroneously fails to include "BGI's billings of $24,700 to Pinnacle regarding the Washington Square town homes at the Aurora, Illinois, development." Rottlund's Memorandum at page 60. BSB and BGI have frequently had to correct Rottlund's misrepresentations that BGI contracted with Pinnacle to develop the Washington Square

[3] Ironically, Rottlund called these numbers, generated by its own expert, "hypothetical" in its Memorandum. BSB and BGI are willing to accept any challenge Rottlund would like to make to the accuracy of its own expert's report, so long as Rottlund is willing to make those challenges in writing, and state them plainly, so that they can later be used in a Motion in Limine. In the absence of such a critique, Rottlund is bound by the determinations of the expert it hired.

product. A simple review of the contract relating to the Washington Square product reveals that Pinnacle paid Bloodgood Sharp Buster Architects and Planners of Illinois, Inc. ("BSB-IL") to develop that product[4]. See February 28, 2000 Contract between BSB-IL and Pinnacle, Exhibit A to the Supplemental Affidavit of Ben Patrick filed herewith[5]. Therefore, Rottlund's contention that the $24,700 Pinnacle paid to BSB-IL should be added to the amount received by BSB and BGI is without merit, as it is based on an incorrect understanding of the plain facts in this case.

As a corollary argument, Rottlund suggests that Joseph Kenyon "only computed BSB's profits; his reports failed to address BGI's profits." Rottlund's Memorandum at page 60. This is also incorrect. Kenyon's report calculates the total fees paid to BSB by TCM, and the fees paid by BSB-IL to BGI, and subtracts BSB's costs, to arrive at a total profit figure. Because BGI was never paid directly by TCM or Pinnacle, any profits earned by BGI are captured in this calculation. Joseph Kenyon testified: "[w]e didn't look at whether one group of the other group received any profits. We looks at the profits that the—that—that were made on the alleged infringing design." See Transcript of the Deposition of Joseph Kenyon, at page 41, attached as Exhibit C to the Supplemental Affidavit of Ben Patrick submitted herewith.

Finally, Rottlund argues that the calculation of BSB and BGI's profits "fail to account for the reduced expenses they achieved by merely copying Rottlund's designs."

[4] BSB and BGI's initial Memorandum of Law incorrectly stated that BSB-IL's receipts were included in the $187,941 figure. Joseph Kenyon's Expert Report makes it clear that this is not the case, nor would it be appropriate to include, as recoverable damages in this case, receipts received by an entity that was not a party to the case.

[5] It is difficult to discern how Rottlund could have correctly noted the contract amount ($24,700) and yet not noted the correct parties to the contract.

Id. at 61. While the underlying factual contention is itself false[6], Rottlund also draws a false conclusion. Because the only expenses deducted from BSB and BGI's gross receivables were the pro rata wages and benefits paid to BSB and BGI's employees for the time spent developing the Homestead Collection, any economies of time realized by BSB and BGI, for *any* reason, are perfectly captured in the calculation.

**B. The BSB profit figure included in Chris Jorgensen's affidavit is not the proper measure of BSB's profits from the Homestead Collection design.**

In September of 2003, BSB and BGI brought a summary judgment motion against TCM, seeking, among other things, enforcement of the limitation of liability agreement contained in the contracts between BSB and TCM. As part of this effort, Chris Jorgensen submitted an affidavit which recounted the total dollars received by BSB from TCM, which BSB contended would set the ceiling for BSB's liability under the limitation of liability agreement. This figure, however, does not accurately represent BSB's gross receipts from TCM relating to the Homestead Collection, for it includes work done by BSB to design a sales office and clubhouse for TCM's Providence Pointe development in Shakopee. See Exhibit B to the Supplemental Affidavit of Ben Patrick, submitted herewith. This sales office and clubhouse has not been alleged to infringe any of Rottlund's numerous copyrights, therefore recovery of BSB's fees for this design would be inappropriate.

In conclusion, Joseph Kenyon's calculation of BSB and BGI's gross receipt and profits could not be clearer: "[w]e got all the billings and all the revenues and went to the time records and got all the time and calculated the – the benefits that would be

[6] Indeed, no witness has offered credible testimony that the Homestead Collection is merely a *copy* of the Villa II.

associated with the labor, subtracted that. There were even more incremental expenses I think we could have subtracted, but we didn't. And we calculated the profits. That's the way you do it." See Transcript of the Deposition of Joseph Kenyon at page 42. Rottlund offers no evidence of any kind to refute or rebut Joseph Kenyon's clear and straightforward calculation. Indeed, Rottlund's argument is most notable for what is not included: any alternative calculation of BSB and BGI's profits. Other than its factually-flawed argument that the $24,700 Pinnacle paid to BSB-IL should be included in the profits earned by BSB and BGI, Rottlund sponsors no alternative figure. Put simply, Rottlund has failed to provide this Court with any evidence upon which a reasonable jury could reject BSB and BGI's calculation of their profits in favor of some other number---Rottlund's mere allegation that BSB and BGI's calculation is "not accurate" is wholly insufficient. For this reason, the Court can properly accept the profit figure advanced by BSB and BGI and rule that, as a matter of law, any award of infringer's profits against BSB and/or BGI be limited to $141,165.

## IV. ROTTLUND IS NOT ENTITLED TO MONETARY DAMAGES UNDER THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT.

In its zeal to prosecute this case, Rottlund's representations to the Court regarding the holdings of cases have frequently been less than accurate, a tendency which has been necessary for BSB and BGI to address in the past. Unfortunately, this tendency continues in this, the last dispositive motion that will be heard by the Court. For example, Rottlund cites Amerinet, Inc. v. Xerox Corp., 972 F.2d 1483, 1502-03 (8th Cir. 1992), as holding that the tort of disparagement and actions under Minn. Stat. § 325D.44 are "essentially the same." Rottlund's Memorandum at page 79. The Amerinet court actually said that "[i]n its complaint and amended complaint, Amerinet alleges two counts of business

disparagement, one under Minnesota common law and one under Minn. Stat. §325D.44 (1988), which are essentially the same." Amerinet, 972 F.2d at 1502. The court's clear comment was that Amerinet's *two counts* were essentially the same, *not* that the two causes of action were essentially the same. Furthermore, in the Amerinet court's three pages of analysis, the question of whether monetary damages could be recovered under Minn. Stat. § 325D was never addressed. Thus, Rottlund's representation that Amerinet approved awards of monetary damages is completely incorrect.

Rottlund's discussion of Thompson v. American Tobacco Co., Inc., 189 F.R.D. 544 (D.Minn. 1999), is similarly disingenuous. Rottlund cites Thompson for the proposition that "monetary damages are available under Minn. Stat. § 325D.44, but are subject to different burden of proof [sic] than injunction remedy[.]" Rottlund's Memorandum at page 79. Once again, quite simply, the Thompson court said nothing of the kind. The Thompson court began the relevant discussion by noting that "[a] more interesting question is whether individual proof of causation or reliance is required under the Minnesota consumer fraud statutes. See Minn. Stat. §§ 325D.44, 325F.67, & 325F.69." Thompson, 189 F.R.D. at 552. The court then issued the quote seized upon by Rottlund, "[u]nder Minnesota law, proof of reliance is necessary only where a plaintiff seeks to recover damages rather than purely injunctive relief." Id. But what immediately follows the court's pronouncement is a string cite, with parenthetical remarks, which indicates without ambiguity that the court is considering the standard under the Minnesota Consumer Protection Act, Minn. Stat. § 325F, *not* the Deceptive Trade Practices Act.

Rottlund stretches the language of the Amerinet and Thompson courts to the breaking point (and beyond), but still cannot overcome one simple fact: Minnesota courts have unambiguously stated that monetary damages are not available under Minn. Stat. § 325D. See Dennis Simmons D.D.S., P.A. v. Modern Aero, Inc., 603 N.W.2d 336 (Minn.App. 1996); Alsides v. Brown Institute, Ltd., 592 N.W.2d 468 (Minn.App. 1999); Johnny's Inc. v. Njaka, 450 N.W.2d 166, 168 (Minn.App. 1990). The Eighth Circuit has said "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum of ascertaining state law *which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the high court of the state would decide otherwise.*" Johnson v. State Farm Mutual Ins. Co., 252 F.2d 158, 164 (8th Cir. 1958) (quoting West v. American Tel. & Tel., 311 U.S. 223, 237 (1940))[7] (emphasis added). Furthermore, an analysis of the cases cited by Rottlund reveals that those cases confronted problems not presented in this case. See Bureau of Engraving, Inc. v. Federal Ins. Co., 5 F.3d 1175 (8th Cir. 1993)(in which the court was confronted with two inconsistent Minnesota Court of Appeals decisions, and was forced to reconcile them); Haugen, *supra* (in which the Minnesota Court of Appeals decision at issue was contrary to prior Minnesota Supreme Court decisions). In In re Kasden v. Kasden, 186 B.R. 667 (D.Minn. 1995), the Bankruptcy Court refused to apply the law announced in Joy v. Cooperative Oil Assn., 360 N.W.2d 363 (Minn.App. 1984). On appeal. the District Court found that the Bankruptcy Court abused its discretion by failing

[7] Rottlund neglects to mention that Haugen v. Total Petroleum, Inc., 791 F.Supp. 788 (D.Minn. 1992), which it cites for the proposition that this Court may disregard the clear pronouncements of the Minnesota Court of Appeals, quotes this portion of Johnson verbatim at precisely the page cited by Rottlund. Thus, it can only be said that Haugen supports the position advocated by BSB and BGI, not that advocated by Rottlund. It might also be said that, having determined to cite Haugen to the Court, Rottlund had a duty not to omit this language, so that its discussion of Haugen would not be misleading.

to follow Joy. The District Court's reversal, under the extremely deferential abuse of discretion standard, speaks volumes about the court's views on following state appellate court decisions[8].

**CONCLUSION**

Rottlund's criticisms of BSB and BGI's profit calculations rest on flawed factual presumptions that are contrary to the undisputed evidence in this case. Rottlund's arguments regarding the availability of monetary damages under Minn. Stat. § 325D rest on a flawed legal analysis. Because Rottlund has failed to demonstrate any material issue of fact, BSB and BGI respectfully request that the Court grant them summary judgment as to the issues presented by this Motion.

**MACKALL, CROUNSE & MOORE, PLC**

Dated: September 16, 2004.

By: __/s Ben Patrick________________
Holly Newman (MN Bar #26457X)
Ben Patrick (MN Bar #312460)
1400 AT & T Tower
901 Marquette Avenue
Minneapolis, MN 55402-2859
Telephone: (612) 305-1400
Facsimile: (612) 305-1414

Attorneys for Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. and The Bloodgood Group, Inc.

JBP/jbp#718494v1

[8] Rottlund's argument that the state may collect civil penalties for violations of § 325D has no bearing on this case. Unlike State v. Alpine Air Products, Inc., 490 N.W.2d 888 (Minn.App. 1992), the State has not appeared in this trial, and Rottlund cannot collect the civil penalties on the state's behalf (nor is that what Rottlund is attempting to do).