# Exhibit R1

AUG. 30. 2002 12:33PM ROTTLUND HOMES

No. 902

# CERTIFICATE OF REGISTRATION

UNITED STATES COPYRIGHT OFFICE THE LIBRARY OF CONGRESS

OFFICIAL SEAL

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

REGISTER OF COPYRIGHTS
*United States of America*

## FORM VA

For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

VAu 268 404

VA VAU

EFFECTIVE DATE OF REGISTRATION

OCT 0 5 1993

Month Day Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼
New Villas Units A / B

NATURE OF THIS WORK ▼ See instructions
Architectural Plans/
Technical Drawings

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼ Number ▼ Issue Date ▼ On Pages ▼

**2 a**

NAME OF AUTHOR ▼
The Rottlund Company, Inc.

DATES OF BIRTH AND DEATH
Year Born ▼ NA
Year Died ▼ NA

Was this contribution to the work a "work made for hire"? ☒ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ ______ / Domiciled in ▶ United States

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

NOTE
Under the law, the "author" of a "work made for hire" is ...

NATURE OF AUTHORSHIP Check appropriate box(es). See instructions
☐ 3-Dimensional sculpture ☐ Map ☒ Technical drawing
☐ 2-Dimensional artwork ☐ Photograph ☐ Text
☐ Reproduction of work of art ☐ Jewelry design ☐ Architectural work
☐ Design on sheetlike material

**b**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ / Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Check appropriate box(es). See instructions
☐ 3-Dimensional sculpture ☐ Map ☐ Technical drawing
☐ 2-Dimensional artwork ☐ Photograph ☐ Text
☐ Reproduction of work of art ☐ Jewelry design ☐ Architectural work
☐ Design on sheetlike material

05881171 0

**3 a**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
1991 ◀ Year

**b**

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶ Day ▶ Year ▶ ◀ Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
The Rottlund Company, Inc.
5201 East River Road Suite 301
Fridley, MN 55421

See instructions before completing this space.

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE OFFICE USE ONLY

APPLICATION RECEIVED
OCT 05 1993

ONE DEPOSIT RECEIVED
OCT 05 1993

TWO DEPOSITS RECEIVED

REMITTANCE NUMBER AND DATE

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-8) on the reverse side of this page. • See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE

Page 1 of ___ pages

RCI001245

AUG. 30. 2002 12:33PM ROTTLUND HOMES NO. 502

VAu 268 404

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE Yes

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**5**

PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼ Year of Registration ▼

**6**

DERIVATIVE WORK OR COMPILATION Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

NA

See instructions before completing this space.

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

NA

**7**

DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼ Account Number ▼

NA

CORRESPONDENCE Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Jana Mullenbach
The Rottlund Company, Inc.
5201 East River Road Suite 301
Fridley, MN 55421

Area Code and Telephone Number ▶ 612-571-0304

Be sure to give your daytime phone ◀ number

**8**

CERTIFICATION* I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of The Rottlund Company, Inc.
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
John J. Dierbeck Vice President of Sales and Marketing date ▶ 10/01/93

Handwritten signature (X) ▼ [signature]

**9**

MAIL CERTIFICATE TO

Name ▼ Jana Mullenbach
The Rottlund Company, Inc.

Number/Street/Apartment Number ▼
5201 East River Road Suite 301

City/State/ZIP ▼
Fridley, MN 55421

Certificate will be mailed in window envelope

YOU MUST:
• Complete all necessary spaces
• Sign your application in space 8
SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable $20 filing fee in check or money order payable to *Register of Copyrights*
3. Deposit material
MAIL TO:
Register of Copyrights
Library of Congress
Washington, D.C. 20559

The Copyright Office has the authority to adjust fees at 5-year intervals, based on changes in the Consumer Price Index. The next adjustment is due in 1996. Please contact the Copyright Office after July 1995 to determine the actual fee schedule.

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

February 1993—100,000

*U.S. GOVERNMENT PRINTING OFFICE: 1993-342-581/60,501

# FILED UNDER SEAL

Exhibits R2 – R4

Exhibit R5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - -

The Rottlund Company, Inc.
d/b/a Rottlund Homes,
a Minnesota corporation,
Plaintiff,
vs. Case No. 01-CV-1980
Pinnacle Corporation (DSD/SRN)
d/b/a Town & Country Homes,
an Illinois Corporation, and
Town & Country Homes, Inc.,
a Minnesota Corporation,
Defendants,
and
Town & Country Homes, Inc.,
a Minnesota corporation,
Third-Party Plaintiff,
vs.
Bloodgood Sharp Buster
Architects & Planners of Iowa,
Inc., an Iowa corporation,
Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION OF LARRY W. MOORE
VOLUME II, Pages 215 - 378

(The following is the deposition of LARRY W. MOORE, taken pursuant to Notice of Taking Deposition, by videotape, at the offices of Winthrop & Weinstine, 225 South Sixth Street, Suite 3500, in the city of Minneapolis, state of Minnesota, commencing at approximately 9:09 o'clock a.m., February 17, 2004.)

fairly certain that Mr. Grob gave you Exhibit 330?
A. I can't be a hundred percent sure.
Q. Why do you believe Exhibit 330 is a Rottlund floor plan?
A. Well it's not --
When we looked at it it's not our floor plan, and we had some of the Rottlund drawings available to us through our attorney, and we looked at it and it appears to be either the Original Villa or Villa II, I can't remember those designations. So down to just there's some minor, very minor details that are different, I couldn't cite those, but lead me to believe that this is probably that drawing that's referenced.
Q. So your testimony that Exhibit 330 is Rottlund's floor plans is based upon a recent analysis, or it's based upon your memory back from when you were working on the Midland project?
A. No, it's more based on trying to piece it all together fro -- from -- from memory, which is a long time ago, but more recent analysis leads me to believe that.
Q. Are there any other Rottlund materials in your file?
A. I don't -- I don't believe so. I mean, if they

were they would have been produced, so...
Q. And you can't testify with a hundred percent certainty or you can testify with a hundred percent certainty that Exhibit 330 is something that Rottlund created?
MS. NEWMAN: Objection, asked and answered. You can answer again.
A. I can't testify for a hundred percent certainty, no.
Q. So Rottlund may have generated Exhibit 330 or someone else may have generated Exhibit 330; correct?
A. Correct. I would say that it -- in my opinion in what I see here it appears that this is a, what I'll call a cut-and-paste job, because if you look at the units you'll see some units the lettering on them right reading, some are reversed. So again I would be speculating as to how this drawing came into being, but one possible scenario would be that if there was a brochure of Rottlund units, that Xeroxes were made and then a -- this was pasted or taped together to form what an 8-plex building would be like so that the configuration of this product type would be understood.
Q. And is it your testimony that Rottlund pasted that together, or is it your testimony that someone

else pasted these floor plans together?

MS. NEWMAN: Objection, calls for speculation. You may answer if you know.

A. That I don't know, but I -- if -- if this is -- looks like to me -- to me to be a brochure-type of thing, I doubt if they show any full building in their -- in their -- I wouldn't know that for sure, I'm speculating -- in their brochure, so I'm guessing it was individual pieces put together probably for either Ted's use or my use.

Q. Did Rottlund put those individual pieces together or did someone else put the individual pieces together that you've testified to which appear on Exhibit 330?

MS. NEWMAN: Objection, calls for speculation. You may answer if you know.

A. I don't know for sure.

Q. So as we sit here today, BSB may have generated Exhibit 330, or can you definitely rule out BSB?

A. I cannot definitely rule out BSB.

Q. So BSB may have generated Exhibit 330; correct?

A. Possibly, yes.

Q. And Mr. Grob or someone else at Midland may have generated Exhibit 330; correct?

A. Possibly.

Q. Have you ever heard of a company called Design Development, Inc.?
A. Yes.
Q. Who is or what is Design Development, Inc.?
A. It's a -- a small, at that time a one-person firm in Des Moines that we used as a drafting service. Their business was probably some design work, but they also provided documents and working drawings for other architects, builders.
Q. Was Design Development, Inc. involved in the Midland project?
A. They did the design development and the working drawings for that project.
Q. Did Design Development, Inc. generate Exhibit 330?
A. I can't -- I can't say. I wouldn't think so, no. I don't believe so.
Q. Why is it that you don't believe Design Development, Inc. generated Exhibit 330?
A. It just wouldn't be part of their service, it wouldn't -- They -- They had nothing to do with the design aspect, it would -- it would -- This -- This -- I believe this was done to clarify for them the scope of the building they were going to have to draw for us, the documents they were going to have to

produce. Because at the time they were giving us the price the design wasn't done. So I think this was put together to say, here's the scope of what you have to do; it's a building of this size, it's a building of this many units and the units repeat, and that way Design Development was able to give us a price on what their services would cost.

Q. So you gave Exhibit 330 to Design Development, Inc.?

A. That's --

I believe that to be correct.

Q. So you gave Design Development, Inc. what you've admitted are Rottlund floor plans at the inception of this Midland townhome design process; is that fair?

A. As a guide or as a program guide for them to establish scope, yes.

Q. Did you give Design Development, Inc. any floor plans other than what appears in front of you as Exhibit 330 which you understand belonged to Rottlund at the time?

A. No, I don't believe I did, but I don't remember. I don't remember there was anything else.

Q. We've ruled Design Development, Inc. out as the candidate for pasting together these individual floor plans of Rottlunds which appear on Exhibit 330;

correct?

A. I would rule them out, yeah.

Q. Can you rule yourself out, Mr. Moore?

A. No, can't.

Q. So as we sit here today you may have pasted together Rottlund's floor plans and created Exhibit 330; correct?

MS. NEWMAN: Objection, asked and answered. You may answer again.

A. There's a possibility I -- yeah, that was my work.

Q. Have you endeavored to find out whether indeed you did create Exhibit 330 or not?

A. No, there's no way I could -- nine or ten years ago there's no way I could know that for sure.

Q. But you could check your files to see if there were any other, I guess, documents which would refresh your recollection; correct?

A. The files have been checked.

Q. You have checked those files personally?

A. No, I handed those files over to the people in our office who had that responsibility --

Q. So --

A. -- for this process.

Q. Have you looked through, prior to today's

I can guess at what this process was, I'm -- and I'm pretty -- I think I'm pretty -- These redline drawings came back and Ted had probably sketched in a half-round window because he liked them, and we didn't, and my guess is I probably talked him out of it.
Q. So on BSB 3484 of Exhibit 335 there are half-round windows above the outer two gables; correct?
A. Correct.
Q. And that's what you think may be Ted Grob's design?
A. Yes.
Q. And then you talked him out of ultimately using those?
A. Yes, so I'm guessing the note was my note from the conversation. So instead of the half rounds we would use a -- what's called a Fypon head trim.
(Exhibit 338 marked for identification.)
BY MR. KRUMMEN:
Q. Sir, in front of you is Exhibit Number 338. It carries the Bates label BSB 10208, and the initials "L.M." appear at the bottom.
A. Yes.
Q. Have I accurately identified this document?

A. Yes.
Q. Whose handwriting appears on the lower two thirds of Exhibit 338?
A. Looks like mine.
Q. Whose handwriting appears on the upper third of Exhibit 338?
A. Mine.
Q. The date is July 8th; correct?
A. Yes.
Q. And I believe that you've testified thus far that there were at least some concerns about the client's redlines of your Midland Homes design detail information as of June 15th of 1994, correct, per Exhibit 335?
A. I'm sorry, say that again.
Q. Well let's go back to Exhibit 335. Could you go to the front page, which is BSB 3482? It's the big set to your left.
A. Okay.
Q. Now you'll agree that Exhibit 335 is dated June 15th, 1994, correct?
A. The original drawings are dated --
The original schematic designs are 15 June.
Q. And then you've identified a lot of what the client redlines were on that front page, and one of

the things that you didn't know was who wrote the words "COPYRIGHT ISSUE," circled it and checked the box next to it, correct, on Exhibit 335?
A. Correct.
Q. Now my question is: Isn't it fair to say that your memo which appears as Exhibit 338 is July 8th of 1994?
A. I think that's fair.
Q. You have three attachments to your Exhibit 338 memo; correct?
A. Yes.
Q. To whom is it addressed?
A. The memo?
Q. Yes.
A. Jimmy. Jim Grundmeier.
Q. Why would you be writing Jim Grundmeier as of July 8th of 1994?
A. Getting Jim's opinion on -- on some of the changes that were made and just as far as trying to make sure the products were -- were different enough.
Q. Why did you need Jim's opinion as to whether or not the products were different enough?
A. I felt like Jim was a good resource.
Q. And when you say "the products," you're talking about the Midland Homes redlined product that appears

Q. And we've gone through this before, but this is an unredacted version of the same two sheets we've been looking at before; correct?
A. Correct.
Q. Produced to us only after the Magistrate Judge issued a sanction; correct?
A. As I understand it, yeah.
Q. Now look at the week ending May 1, 1998.
A. May 1.
Q. Do you see the Wednesday entry?
A. Yes.
Q. You have three and a half hours devoted to Town & Country Homes Villa product line item; correct?
A. Yes.
Q. Then you have seven hours of travel; correct?
A. Umm-hmm, umm-hmm.
Q. So this would be a second time that you came up to the Twin Cities to work on the Town & Country Homes Villa product as of April 29th of 1998; correct?
A. That wouldn't tell me that for sure.
Q. Where would you go to find out for sure?
A. My records aren't that complete, so I don't -- I don't know that that necessarily means that's a trip to Minneapolis. I'd have to check maybe Chris's

records and see if he kept better records, if we made a trip up here for some oth -- 5/1, that was when, just a few weeks after -- No, I -- I don't know. It may have been, but it may have been a trip to Kansas City or someplace.
Q. Why would you go to Kansas City for a Town & Country Homes Villa product assignment?
A. It doesn't mean I was working on Town & Country.
Q. So if Steve Sandelin has a calendar for April 29th of 1998 and it says he's meeting you for a product tour, would you have any basis --
A. Oh, that would be --
Q. -- to dispute the calendar?
A. -- that would help me. So that would help say that that was to Minneapolis then.
Q. Where else would you look to try to figure out whether or not you were in Minneapolis as of April 29th of 1998?
A. This would be the only source I'd have.
Q. When I deposed you the prior two times did you tell me that you were in Minnesota on April 29th, 1998 for a second tour of Rottlund's products?
A. Not for Rottlund's products I doubt, but I may have been on a tour in Minneapolis of product. I'd have to go back and refresh my memory on that. I

# FILED UNDER SEAL

Exhibits R6 – R7

Exhibit R8

BLOODGOOD SHARP BUSTER
ARCHITECTS & PLANNERS, INC.

JOB

DATE 8 July

Jim -

TED GROB'S 8-PLEX

Exhibit 338
Date: 2-17-04
Debby J. Campeau
Stirewalt & Associates

- OUR DESIGN
- HIS REDLINES & REDESIGN
- ROTTLUND PRODUCT

1. YOUR OPINION - IS OUR DESIGN ENOUGH "DEPARTURE" FROM ROTTLUND (DESIGN OF THIS 8-PLEX NOT 8-PLEX CONCEPT, ROTTLUND CAN'T Ⓒ CONCEPT

BSB 10208

2. ANY THOUGHTS ON TED'S REVISIONS ?

LM.

3001 Grand Avenue
Des Moines, IA 50312
515/283-0404

15436 N. Florida Ave. Suite 101
Tampa, FL 33613
813/265-4808

400 Capitol Mall 9th Floor
Sacramento, CA 95814
916/449-3979

3436 N. Kennicott Suite 260
Arlington Heights, IL 60004
708/253-0404

Exhibit R9

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

No.: 01-CV-1980 (DSD/SRN)

- - - - - - - - - - - - - - - - - - - - - - - - - - -

The Rottlund Company, Inc.
d/b/a Rottlund Homes, a Minnesota Corporation,

Plaintiff,

vs.

Pinnacle Corporation
d/b/a Town & Country Homes,
an Illinois Corporation, and
Town & Country Homes, Inc.,
a Minnesota Corporation,

Defendants,

and

Town & Country Homes, Inc.,
a Minnesota Corporation,

Third-Party Plaintiff,

vs.

Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

Discovery Conference
Wednesday, November 26, 2003
10:46 a.m.

without the benefit of these documents.

So that is Rottlund's position as to the scope of the deposition. Give us a time limitation if BSB demands one, but don't limit us to this document and this document only when there are attachments we'd like to ask about and context that we need to put in.

MAGISTRATE JUDGE NELSON: Ms. Newman?

MS. NEWMAN: All right. In concept I don't really have a problem with establishing some form of time limitation. I think that's fine.

Let me address the attachment issue. No attachment exists in BSB's files. Again, I say to you there has been no withholding of any documents. You have got a memo that references some items, but those items are not available to produce. If they were, we would produce them but they're not. They're not there. We don't have them. There's no documents that are being withheld.

So to suggest that, well, you can't limit it these documents that you produced because we also want to talk to you about attachments that we don't have is going to end

Exhibit R10

UNITED STATES DISTRICT COURT DISTRICT O

FOURTH DIVISION No.:

- - - - - - - - - - - - - - - - - - - - - - - - - - - -The Rottlund C

d/b/a Rottlund Homes, a MinnesotaCorporation,

Plaintiff,vs.

Pinnacle Corporationd/b/a Town & Country Homes,

an Illinois Corporation, and

Town & Country Homes, Inc.,

a Minnesota Corporation,

Defendants,

and

Town & Country Homes, Inc.,

a Minnesota Corporation,

Third-Party Plaintiff,

vs.

Bloodgood Sharp Buster Architects &

Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

Videotaped

30(b)(6) Deposition of

BLOODGOOD SHARP BUSTER ARCHITECTS &

PLANNERS OF IOWA, INC.

(Testimony of Chris A. Jorgensen)

Wednesday March 5, 2003 9:07 a.m.

they take place in Minnesota or were they
predominantly over the telephone prior to the time
that Exhibit 26 was authored?
MR. SCHWIEBERT: Objection. Form.
A Generally they were probably over the phone. There
was a time prior -- prior to this proposal where
myself and Larry Moore went up to Minneapolis and
met with the client.
BY MR. KRUMMEN:
Q Now, you went up to Minneapolis and met with the
client prior to April 6th of 1998, correct?
A Yes. I believe it was the end of March, first
of -- first of April.
Q Was the purpose of that trip to discuss
back-to-back townhomes or did you go up there for
other reasons?
MR. FARMER: Objection to form.
MS. NEWMAN: Same objection.
A That certainly was one of the topics or perhaps the
main topic. We would have -- we would have talked
about our general projects on the single-family as
well and -- and this townhouse program also.
BY MR. KRUMMEN:
Q Did you review any documents concerning
back-to-back townhomes that Town & Country of

Minnesota may have had in mind, during that meeting?

A Reviewed documents?

Q That's right. Did they, for example, give you any brochures of competitors and say, "Here are some back-to-back townhomes that are doing well in the Minneapolis market"?

A Well, no. At that time we -- we toured some product in the -- in the marketplace and certainly had the opportunity to discuss this program and then the -- the competition in the marketplace as well.

Q So to make sure I understand the date, prior to the time this contract was drafted you went on a tour up in the Minneapolis area with the Town & Country of Minnesota people?

A Yes.

MR. FARMER: Objection. Foundation.

BY MR. KRUMMEN:

Q And did you tour back-to-back townhomes built by Town & Country of Minnesota's competitors?

A Yes.

Q Which competitors' townhomes did you tour during the March tour?

A The ones I generally recall are the ones I

mentioned earlier. It would -- would have been Centex, I believe Ryland and Rottlund, and I -- there was others. And there may have been product that was not back-to-back as well.

Q What was the purpose of that tour, as you understood it?

A To -- to become -- for -- for BSB to come -- become familiar with Town & Country's competition in the marketplace. Given that -- that we're -- we're here in Des Moines at times, we will do product tours with -- with -- with the client.

Q And why is that necessary from BSB Iowa's perspective?

MR. SCHWIEBERT: Objection. Foundation.

MS. NEWMAN: Same objection.

A Just to get a sense of what is being built in the marketplace from a cost construction standpoint. You know, that's an important factor in -- in designing a project for a client, that -- understanding that, what -- also what -- what the buyers are seeing and what -- what they are looking for in the marketplace.

BY MR. KRUMMEN:

Q I believe you testified earlier that you, Mr. Jorgensen, and Mr. Larry Moore participated in

this tour that occurred in late March or early April of 1998. Correct?
A Yes.
Q Did anyone else from BSB Iowa attend that tour?
A No.
Q Who on behalf of Town & Country of Minnesota attended?
A Art Plante and Bill Anner.
Q Do you know what Bill Anner's position was at Town & Country Minnesota at the time?
A Land development acquisition type of role. I'm not sure what his title was.
Q Was anyone else present on the March 1998 tour?
A Not that I recall.
Q Did anyone take a camera along on this tour?
A Not that I recall.
Q Did anyone pick up any brochures of the competitors or marketing materials from the competitors?
A I'm certain people looked at brochures. When you go into a model home, you'll -- one of the first things you'll do is look at the floor plans. A lot of times they'll have them up on the wall for -- for potential buyers and the public to -- to view, so sometimes that's not necessary.
But certainly from, you know, our viewpoint, I

mean, we -- we look at the -- the floor plans that they're offering. And then typically we would not take those with us. At least I wouldn't. And then we would walk the product.

Q What do you mean by "walk the product"?

A Walk through the models that the -- the -- the builder is offering to the public.

Q Now I want to get a little more specific here, and I'm going to confine the tour of the Rottlund product in March of 1998. For the next series of questions, they're confined to Rottlund.

Did you look at any Rottlund marketing materials during the March 1998 tour? And when I say, "you," I'm referring to Mr. Jorgensen.

A I may have looked at a brochure, yes.

Q Did Mr. Larry Moore look at any Rottlund marketing materials or brochures during the March 1998 tour?

A I couldn't say.

Q How about Mr. Art Plante?

A I couldn't say.

Q And the same question for Mr. Bill Anner.

A I couldn't say for certain.

Q Do you recall anyone taking any pictures, in that March of 1998 tour, of Rottlund's product?

A I don't recall, no.

give him pause.
A No. I mean, the product brochures are -- are public information. Certainly they're available and open to me as -- as they are to anyone.
BY MR. KRUMMEN:
Q And the Rottlund brochures were copyrighted, were they not? They had a copyright notice on them?
MS. NEWMAN: Objection.
MR. FARMER: Objection.
MS. NEWMAN: Foundation.
MR. FARMER: Foundation.
MS. NEWMAN: Calls for speculation. Form.
A Yeah. I don't know whether they did or not.
BY MR. KRUMMEN:
Q Regardless, you kept those in your Jerry's Homes file, correct?
MR. SCHWIEBERT: Objection. Foundation.
A Yes. They are there.
BY MR. KRUMMEN:
Q And Jerry's Homes' was a back-to-back townhome that you worked on in the year 1997, correct?
A Correct.
Q And here we are in the year 1998 and you're working on a back-to-back townhome for Town & Country

foundation.

BY MR. KRUMMEN:

Q Is this the first time when BSB became aware that the villas project was going to be changed to the Homestead Collection project?

MR. FARMER: Objection. Form and foundation.

MS. NEWMAN: Same objections.

A I don't know.

BY MR. KRUMMEN:

Q Do you recall hearing that they were going to change the names of the villas project to Homestead Collection, prior to September 1 of 1999?

A I don't recall.

Q Do you recall anything about when the name change occurred?

A No, I don't.

Q But you do understand that the villas back-to-back project is now known as the Homestead back-to-back collection, correct?

A That's correct.

THE VIDEOGRAPHER: Off the record. Ending tape 1 at 11:16.

(Deposition Exhibit Number 82 was marked for identification by the reporter.)

Exhibit R11

From: MICHAEL N RICE To: CHRIS JORGESON Date: 3/11/97 Time: 10:37:15 Page [illegible]



# MICHAEL N RICE
# MASTER BUILDER
# JERRYS HOMES INC
# FAX COVER PAGE

| | | |
|---|---|---|
| To: CHRIS JORGESON | | From : MICHAEL N RICE |
| Fax Num[illegible]-283-0484 | | Company : JERRYS HOMES INC |
| Date: 3/11/97 | Time : 10:35:36 | For Information Call: 515-278-5992 |
| Sub[illegible] Scan Color | | Fax Number : 515-278-0661 |

EXHIBIT
55 A

# BRECKENRIDGE 2 STORY 1800 Square Feet






**Standard Features**

- Atrium door to treated wood Deck
- 2 Car Garage
- Stove, Dishwasher, Disposal
- Oak Face Cabinets
- 8" Poured Concrete Foundation
- Full Sod
- Oak Trim
- Fiberglass Tub/Shower Units
- 40 Gallon Gas Water Heater
- Prewired for Phone and Cable Television
- Quality Floor Coverings
- Woodburning Fireplace

**Energy Features**

- Casement Windows
- Steel Insulated Entry Doors
- R 19 Sidewalls Approximate
- 40 Ceiling
- Gas Furnace with Electronic Ignition and Flue Damper
- Energy Efficiency-approximately 80%
- High Efficiency Central Air




All prices and plans are subject to change without notice.

*Square footages are approximate. Some plans may be shown with extra cost options.

JERRY & RON GRUBB

From: MICHAEL N RICE To: CHRIS JORGESON Date:




# THE VILLAS OF MEREDITH POINTE

## URBANDALE

## THE BRECKENRIDGE

Your Builder for Life

ROTTLUND HOMES™

COPYRIGHT 1998 CURRENT AS OF 01/2005

ROTTLUND HOMES OF IOWA, INC.
ALL FLOOR PLANS AND ELEVATIONS ARE THE EXCLUSIVE PROPERTY OF THE ROTTLUND COMPANY, INC. COPYRIGHT INFRINGEMENT COULD RESULT IN LEGAL PROSECUTION UNDER FEDERAL COPYRIGHT LAW

ARTISTS CONCEPT ONLY
SEE BUILDER FOR ACTUAL DETAILS ON LANDSCAPING AND PLANS

EQUAL HOUSING

# THE VILLAS OF MEREDITH POINTE
## URBANDALE

## THE ASPEN

### UPPER LEVEL




### MAIN LEVEL




COPYRIGHT 1993 CURRENT AS OF 01/20/95

ROTTLUND HOMES OF IOWA, INC.
ALL FLOOR PLANS AND ELEVATIONS ARE EXCLUSIVE PROPERTY OF THE ROTTLUND COMPANY, INC. COPYRIGHT INFRINGEMENT COULD RESULT IN LEGAL PROSECUTION UNDER FEDERAL COPYRIGHT LAW

ARTIST'S CONCEPT ONLY
SEE BUILDER FOR ACTUAL DETAILS ON LANDSCAPING AND PLANS

EQUAL HOUSING

Your Builder for Life

ROTTLUND HOMES™

# THE VILLAS OF MEREDITH POINTE





## URBANDALE

ROTTLUND HOMES OF IOWA, INC
ARTISTS CONCEPT ONLY. SEE BUILDER FOR
ACTUAL DETAILS ON LANDSCAPING AND PLANS

EQUAL HOUSING OPPORTUNITY

Your Builder for Life

ROTTLUND HOMES™