UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br>vs.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**ROTTLUND'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ATTENDANCE OF WITNESSES AT TRIAL; OR, IN THE ALTERNATIVE, MOTION TO COMPEL TRIAL DEPOSITIONS IN LIEU OF IN-COURT APPEARANCES AND PRECLUDE DEFENDANTS FROM CALLING THESE WITNESSES AT TRIAL** |

## INTRODUCTION

The instant motion concerns trial testimony from party witnesses that reside out-of-state. Previously, Rottlund offered to make its out-of-state officers and employees available to testify at trial during any Defendant's case-in-chief if the Defendants would reciprocate and make some of their out-of-state owners, officers and employees available to testify at trial during Rottlund's case-in-chief. This reasonable, mutual and reciprocal proposal was rejected by Defendant Town & Country Homes, Inc. ("Town & Country Minnesota") and Defendant Pinnacle Corp. d/b/a Town & Country Homes ("Town & Country Illinois") (collectively the "Town & Country Defendants"), and was never responded to by the Bloodgood Defendants.[1]

Defendant Town & Country Minnesota's refusal is particularly troublesome because the Defendant Company is organized in this state and it conducts business in this state; however, it is hiding behind the technicality that its Chief Executive Officer and its Chief Financial Officer – both crucial witnesses in this case – reside in Illinois. The refusal to make these witnesses available to testify at trial runs counter to Fed. R. Civ. P. 1, and will likely require trial depositions on the eve of trial, which will then be read or played to the jury, and will in turn make it more difficult for a jury to assess the veracity of the Defendants' witnesses.

Through the instant motion, Rottlund requests judicial intervention regarding trial testimony from just seven (7) witnesses: two officers, one of whom is an owner, of Town & Country Minnesota (who also happen to be officers of Town & Country Illinois); one officer and owner of Town & Country Illinois (who also happens to be a former officer but current owner of Town & Country Minnesota); one former Vice President of Product Development and in-house

---

[1] Defendants The Bloodgood Group, Inc. ("BGI") and Bloodgood Sharp Buster Architects & Planners of Iowa, Inc. ("BSB") are collectively referred to herein as the "Bloodgood Defendants."

architect from Town & Country Illinois; one officer and owner of the Bloodgood Defendants; and just two employees from BSB.[2]

Rottlund's request in the instant motion is simple. Rottlund requests that this Court either: (1) order that the Defendants produce the requested individuals at trial; or (2) order that trial depositions of six of the requested seven individuals take place in lieu of their in-court appearances and preclude Defendants from bringing these seven witnesses live in their own cases-in-chief.[3] Rottlund employees and potential trial witnesses from its Iowa division are similarly not located within one hundred (100) miles of the courtroom.[4] Consequently, if this motion is granted, it will benefit *all* parties – not just Rottlund – as well as the Court and the Jury. Such an order would better assist the Jury in accessing the credibility of the witnesses, and help the Jury better understand the parties' respective claims.

The days of horse-and-buggy travel have been replaced by automobiles and airplanes that provide fast interstate travel. Defendants should not be able to evade the truth seeking process merely because their witnesses do not live near the courthouse.

**<u>FACTUAL BACKGROUND</u>**

During the course of discovery, Rottlund has taken twenty-five (25) discovery depositions of Defendants' employees and third parties. (*See* Affidavit of Craig S. Krummen in Support of Rottlund's Motion to Compel Witnesses at Trial or In the Alternative, To Compel Trial Depositions

---

2 All of these officers, owners, and employees, as well as Town & Country Illinois' recently terminated Vice President of Product Development and in-house architect, are located more than one hundred (100) miles from the courthouse. Moreover, half of Town & Country Minnesota's witnesses are located outside of the one hundred (100) mile radius of the courthouse.

3 As will be discussed below, the Court has already ordered that Rottlund may depose Paul Anderson for seven hours in Chicago, and this deposition is not limited to documents tardily produced by Town & Country Illinois.

4 If Defendants reconsider their decision and agree to produce the requested witnesses at trial, Rottlund remains willing to make witnesses from its Iowa division available upon receipt of two trial days' notice of their requested attendance at trial.

("Krummen Aff."), ¶ 2.) Most of the witnesses controlled by Defendants in this matter, and the Rottlund witnesses from its Iowa division, whose discovery depositions have already been taken, reside beyond one hundred (100) miles from the Minneapolis federal courthouse. Rottlund's counsel previously sought cooperation from Defendants' counsel to make these witnesses available at trial or for trial depositions in lieu of in-court appearances. (Krummen Aff., Ex. A.) In doing so, Rottlund offered to make its own witnesses available, including those witnesses residing in Iowa, if given two trial days' notice. (*Id.*) Defendants' counsel flatly refused to agree to voluntarily produce any of their witnesses for trial or for trial depositions in lieu of in-court appearances. (*Id.,* Ex. B.) Yet, the Town & Country Defendants stated that they "may call one or more of these individuals" to testify for them in their case-in-chief. (*Id.*)

Recognizing the parties' need to proceed with all due haste in trial preparation, Rottlund is willing to limit its present motion regarding out-of-state witnesses to only seek the production of seven (7) persons at trial; or in the alternative, for six trial depositions to be taken in lieu of in-court appearances. These witnesses include:

(1) the Town & Country Defendants' Chief Executive Officer ("CEO"), owner, and shareholder Mike Ryan;

(2) the Town & Country Defendants' owner and shareholder, and Town & Country Illinois' President Tom Ryan;

(3) the Town & Country Defendants' CFO Paul Anderson;

(4) Town & Country Illinois' recently terminated Vice President ("VP") of Product Development and in-house architect Steve Sandelin;

(5) the Bloodgood Defendants' majority owner and Senior VP Doug Buster;

(6) BSB's architect Larry Moore; and

(7) BSB's architect Chris Jorgenson.

All of these individuals reside more than 100 miles away from the courthouse and the Defendants have refused to voluntarily produce them at trial or for their trial depositions in lieu of in-court appearances. Significantly, Mr. Mike Ryan, Town & Country Minnesota's CEO, swore in an affidavit submitted to this Court that Town & Country Minnesota has its principle offices in Eden Prairie, Minnesota. (*Id.*, Ex. C at ¶ 1.) Similarly, Mr. Paul Anderson testified that he spends approximately ten percent of his time in Minnesota in his capacity as Town & Country Minnesota's CFO. (*Id.,* Exs. C, D at 54:19-57:15.)

As discussed in Section III below, the Court has already ordered that Rottlund may redepose Mr. Anderson and Town & Country Illinois' former in-house architect and VP of Product Development Steve Sandelin. (*Id.*, Ex. E at 14:22-16:3.) The Town & Country Defendants elected not to make these two witnesses available. (*Id.*, Ex. F at 2.) Rottlund requested additional dates. (*See Id.*) Moreover, Rottlund requested that the Town & Country Defendants supplement important financial documents that will then be shown to Mr. Anderson in his upcoming deposition. (*Id.*, Ex. G.) When the Town & Country Defendants failed to provide the availability of the witnesses and respond to Rottlund's request for supplementation, Rottlund was forced to bring a motion requesting relief from the Court. (*Id.*, Ex. H at 4.) On September 28, 2004, the Court ordered this supplemental production to occur no later than October 11, 2004, and further ordered these witnesses to be redeposed no later than October 22, 2004. (Order, 9/28/04, p. 2.)

## ARGUMENT

### I. THE SEARCH FOR THE TRUTH REQUIRES THAT ROTTLUND BE PERMITTED TO INTRODUCE EVIDENCE FROM WITNESSES WHO RESIDE MORE THAN ONE HUNDRED (100) MILES FROM THE COURTHOUSE.

In American jurisprudence, trials represent a "search for the truth." *Nix v. Whiteside,* 475 U.S. 157, 166 (1986); *United States v. Gray*, 897 F.2d 1428, 1429 (8th Cir. 1990). This search for truth requires that all parties be permitted to present the full and complete evidence supporting

their claims so that their cases can be decided on the merits rather than on mere technicalities. *See Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 316 (1988); *Hawkins v. City of Farmington*, 189 F.3d 695, 704 (8th Cir. 1999); *see generally*, Fed. R. Civ. P. 1 (aspiring to the just determination of every action).

**A. The District Court Of Minnesota Has Previously Ordered Live Testimony From Out-Of-Town Witnesses Under Defendants' Control.**

"The importance of presenting live testimony in court cannot be forgotten." Advisory Committee Notes to Rule 43, 1996 Am. at 204. "The very ceremony of trial and the presence of the factfinder may exert a powerful truth telling." *Id.* "The federal rules strongly favor the testimony of live witnesses wherever possible, so that the jury may observe the demeanor of the witness to determine the witness's veracity." *Murphy v. Tivoli Enters*., 953 F.2d 354, 359 (8th Cir. 1992); Adv. Comm. Note Rule 43 at 204 ("The opportunity to judge the demeanor of the witness face-to-face is accorded great value in our tradition").

Federal Rule of Evidence 611 provides that "[t]he court shall exercise reasonable control over the *mode* and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth . . ." *See* Fed. R. Evid. 611 (emphasis added).[5]

The District Court of Minnesota has faced the issue of a majority of defendants' witnesses being located more than one hundred (100) miles from the federal courthouse and defendants'

---

[5] Federal Rule of Civil Procedure 45(c)(3)(B)(iii) also appears to permit this Court to compel the attendance of Defendants' officers at trial. It states: "[i]f a subpoena . . . requires a person who is *not a party or an officer of a party* to incur substantial expense to travel *more than 100 miles to attend trial,* the court *may,* to protect a person subject to or affected by the subpoena, quash or modify the subpoena. . ." Fed. R. Civ. P. 45(c)(3)(B)(iii)(emphasis added). Accordingly, this Court may order Town & Country Minnesota's officers Mike Ryan (CEO and owner) and Paul Anderson (CFO), along with the Bloodgood Defendants' officer Doug Buster (senior VP and majority owner), to testify at trial. Such an order is especially appropriate here since both Mr. Ryan and Mr. Anderson have offices in *Minnesota* that are within 100 miles of the courthouse.

refusal to voluntarily produce these witnesses at trial. *Marvin Lumber and Cedar Co. v. PPG Indus.*, Civ. No. 4-95-739, Order at 3 (D. Minn. Aug. 17, 2001) (DWF/RLE) (attached hereto as Ex. I to Krummen Aff.) In bringing its motion for depositions in lieu of in-court appearances, Marvin Lumber and Cedar Company argued that a level playing field was necessary. *Id.* The court explained that "the use of voluminous videotaped depositions, in lieu of in-court testimony, does not benefit the parties, the [j]ury or the [c]ourt." *Id.* "Videotaped depositions are, on occasion, an unavoidable, but tedious, venture." *Id.* Indeed, "[r]ecurrent resort to videotapes tend to annoy, if not distance, the [j]ury, and lead to [j]uror inattention." *Id.* The District Court of Minnesota exercising its authority to manage the conduct of the trial so as to minimize juror confusion ordered that the parties "produce live witnesses, when they are within the parties' care, custody, or control at the time of trial." *Id.; see* Fed. R. Evid. 611.

In this case, the search for the truth requires trial testimony from Defendants' witnesses that reside in nearby Iowa and Illinois. Indeed, there is no judicial district in the United States where Rottlund could have brought this lawsuit that would avoid the issues raised in this motion. If Rottlund had brought the lawsuit in Illinois or Iowa, this would not have avoided the issues raised in this motion as half of the Town & Country Minnesota's witnesses reside in Minnesota. Rottlund elected to bring this lawsuit in Minnesota, for among other reasons, the fact that crucial witnesses reside in Minnesota, such as Town & Country Minnesota's President Art Plante. This is precisely the type of case where a party must be required to bring the witnesses it controls to trial or to permit their trial depositions in lieu of in-court appearances.

If Rottlund had sought to thwart the pursuit of justice, it could have brought suit in a jurisdiction where its own witnesses would be farther than one hundred (100) miles from the courthouse and refuse to bring its witnesses to trial. However, Rottlund chose not to needlessly

obstruct and complicate the legal process—and Defendants are the beneficiaries. In contrast to the witnesses controlled by Defendants, the Rottlund-controlled witnesses are virtually all within one hundred (100) miles of the courthouse in Minnesota, with the exception of the Iowa division officers and employees which Rottlund voluntarily agrees to produce given two trial days' notice, so long as the Defendants reciprocate.

As in *Marvin*, the "[r]ecurrent resort to videotapes" would "tend to annoy, if not distance, the Jury," and would "lead to Juror inattention" here. Accordingly, this Court should also exercise its authority to manage the conduct of the trial so as to minimize juror confusion and order that Defendants produce these witnesses live at trial. Such an order will facilitate the "search for truth."

## II. IN THE ALTERNATIVE, INJUSTICE CAN BE AVOIDED BY COMPELLING TRIAL DEPOSITIONS IN LIEU OF IN-COURT APPEARANCES FOR THE DESIGNATED WITNESSES.

If this Court does not order Defendants to present the seven witnesses designated on page four (4), *supra*, in Rottlund's case-in-chief, then Rottlund should be be permitted to take trial depositions of six of these witnesses in lieu of in-court appearances. This way, Rottlund will be able to present the necessary testimony in support of its claims during its own case-in-chief.

Because of Defendants' unwillingness to cooperate in making witnesses available for trial, Rottlund is seeking this Court's intervention in order to memorialize the trial testimony necessary for its case-in-chief. Of course, if Defendants reconsider and agree to make those witnesses available for in-court appearances at trial, then Rottlund need not pursue this motion further.

### A. The One Hundred (100) Mile Rule Should Not Be Used To Prevent A Case From Being Decided On Its Merits.

The one hundred (100) mile limitation contained in Rule 45 should not be used in an inappropriate manner. Fed. R. Civ. P. 45(c)(3)(B)(iii). Despite its restriction from requiring a non-party or non-officer of Defendant to appear in court at trial if such person resides more than one

hundred (100) miles from the trial site, courts routinely allow parties to present testimony by alternative methods that both preserve the integrity of the procedural rules and permit lawsuits to be decided on their merits.[6] For example, in the case *In re San Juan Dupont Plaza Hotel Fire Litig.*, 129 F.R.D. 424 (D.P.R. 1989), the court held that the one hundred (100) mile rule "restricts the reach of subpoenas [in order] to prevent undue inconvenience to witnesses [,] *not* to confer advantages on parties." *Id.* at 426. (emphasis in original). In that case, the defendants decided not to voluntarily produce certain witnesses who were their employees or were otherwise under their control. *Id*. at 425 n.1. The court granted plaintiffs' request and ordered certain witnesses who were defendants' employees or otherwise under the defendants' control, and who were beyond the one hundred (100) mile limit for subpoenas, to testify via satellite telecast. *Id.* at 425; *see, e.g., Beltran–Tirado v. I.N.S.,* 213 F.3d 1179, 1185 (9th Cir. 2000) (allowing telephone testimony under Fed. R. Civ. P. 43(a)); *Alderman v. S.E.C.*, 104 F.3d 285, 288 n.4 (9th Cir. 1997) (same); *Official Airline Guides, Inc. v. Churchfield Publ'ns, Inc.,* 756 F. Supp. 1393, 1398-1399 n.2 (D. Or. 1990), *aff'd,* 5 F.3d 1385 (9th Cir. 1993).

By bringing this motion, Rottlund is asking this court not to allow the one hundred (100) mile limit of this Court's subpoena power for non-parties and non-officers to be the factor that determines what testimony Rottlund can or cannot present. By granting Rottlund's motion, this Court will be deciding that the case will be heard and decided on its merits.

On the other hand, if Rottlund's instant motion is not granted and Defendants are not required to produce at trial those witnesses who are beyond the subpoena power of this Court, then Rule 45 will become Defendants' most powerful weapon. This is not the purpose of Rule 45. *See* Cathaleen A. Roach, *Its Time to Change the Rule Compelling Witness Appearance at Trial:*

---

[6] As discussed above, the Rule only appears to apply to employees that are not "officers" of Defendants. Accordingly, this preclusion should not apply to Messieurs Mike Ryan, Anderson and Buster. Nor should it apply to owners such as Town & Country Minnesota's Tom and Mike Ryan.

*Proposed Revisions to Federal Rule of Civil Procedure 45(e)*, 79 Georgetown L.J. 81 (1990); Carolyn Hertzberg, Note, *Clever Tool or Dirty Pool?*: *WPPSS, Closed Circuit Testimony and the Rule 45(e) Subpoena Power,* 21 Ariz. St. L.J. 275 (1989) ("Considerations of convenience may have made it unreasonable to require a witness to travel greater than one hundred miles or out of the state to attend a trial in the days of trains and horses. In today's mobile world it might not unduly burden a witness to travel from Seattle to Tuscon."); *see also* Rhonda Wasserman, *The Subpoena Power*: *Pennoyer's Last Vestige*, 74 Minn. L. Rev. 37, 145 (1989) ("In 1789, when witnesses traveled by horse-and-buggy, federal district courts could subpoena witnesses from 100 miles away. Certainly, the inconvenience suffered by a witness required to travel 100 miles in colonial time would not exceed the inconvenience suffered by a witness subpoenaed to testify in any part of the country today.") A literal interpretation of this rule "actually stands as a roadblock, impeding modern legal and technological developments." *See id.* 79 Georgetown L.J. at 84.

This Court should not allow Defendants to obtain an advantage by using Rule 45 as a roadblock. Rottlund should be allowed to take trial depositions in lieu of in-court testimony to the extent that the Court declines to order the appearance at trial of any of the seven (7) witnesses identified in this motion.

**B. This Court Should Compel Trial Depositions In Lieu Of In-Court Appearances Pursuant To Federal Rule Of Civil Procedure 32(a).**

The Federal Rules of Civil Procedure recognize the injustice that could result from the application of Rule 45 in isolation. Rule 32(a)(3)(B) provides that the deposition of a witness may be used "in lieu of live testimony" when witnesses are beyond one hundred (100) miles from the place of trial. Fed. R. Civ. P. 32(a)(3)(B). In *Nationwide Mutual Fire Ins. Co. v. Dunkin*, 850 F.2d 441 (8th Cir. 1988), the Eighth Circuit Court of Appeals upheld the District Court's reliance on Rule 32(a)(3)(B) to admit deposition testimony in lieu of live testimony by a witness who was

located more than one hundred (100) miles from the trial site. *Id*. at 443; *see also Starr v. J. Hacker Co*., 688 F.2d 81 (8th Cir. 1982); *Daigle v. Maine Med. Ctr., Inc.,* 14 F.3d 684, 691 (1st Cir. 1994).

Defendants have flatly refused to agree to produce the designated witnesses at trial or for trial depositions in lieu of in-court appearances. This Court should therefore allow Rottlund to take the trial depositions in lieu of in-court appearances.

**C. This Court's Scheduling Order Does Not Preclude Rottlund From Taking Trial Depositions In Lieu Of In-Court Appearances.**

Trial depositions in lieu of in-court appearances are exempt from deadlines established in discovery schedules. *See Charles v. Wade*, 665 F.2d 661, 664 (5th Cir. 1982) (holding that the district court abused its discretion by denying plaintiff's motion for trial deposition, even though it fell outside of the discovery period); *Workman v. Chinchinian,* 807 F. Supp. 634, 648 (E.D. Wash. 1992) (approving the use of a videotaped deposition in lieu of calling an unavailable witness to testify at trial); *Spangler v. Sears, Roebuck and Co*., 138 F.R.D. 122, 124 (S.D. Ind. 1991) (stating that closure of discovery under the court's scheduling order did not prevent a party from memorializing testimony in order to offer it at trial). Defendants cannot avoid their responsibility to permit trial depositions in lieu of in-court appearances based on any scheduling order in this case.

**D. An Uneven Playing Field Should Be Avoided.**

It is clear that Defendants hope to reserve the designated witnesses for use in their own case, while denying Rottlund access to the witnesses' testimony for use in Rottlund's case-in-chief. Indeed, the Town & Country Defendants admit this motive in a recent letter: "Pinnacle and/or TCM may call one or more of these individuals to testify. . ." (Krummen Aff., Ex. B.) This would allow Defendants to move for a directed verdict without their witnesses' testimony seeing the light of day.

It is well settled that testimony from a witness in a defendant's case-in-chief is precluded if upon request by a plaintiff that witness refuses to appear at trial in plaintiff's case-in-chief. *See Traylor v. Husqvarna Motor*, 988 F.2d 729, 734 (7th Cir. 1993); *Marvin Lumber & Cedar Co.*, at 3 n.3 (rejecting argument that defendant can refuse to produce witness in plaintiff's case-in-chief because witness can be cross-examined after defendant brings witness in its own case-in-chief); *In re San Juan DuPont*, 129 F.R.D. at 425 (finding that defendant's decision not to voluntarily produce witnesses under its control "automatically" precluded them from presenting those witnesses in person during their case-in-chief); Annotated Manual For Complex Litigation, Fourth § 12.23 at 156 (2004) (observing that courts can preclude party who refused to produce witness in opponent's case-in-chief from later calling such a witness) & § 12.333 at 145 ("To avoid an unfair difference in emphasis . . . testimony should not be presented by different means on direct and cross-examination).

In *Traylor*, Judge Posner explained that: "[p]sychologists and decision theorists point out, what is anyway common sense, that a living person generally conveys a stronger impression then does his resume, or a transcript of his remarks." *Traylor*, 988 F.2d at 734 (citing Richard E. Nesbett, *et al*., "Popular Induction: Information Is Not Necessarily Informative, in "*Judgment Under Uncertainly: Heuristics and Biases* 101, 111-15 (Daniel Kahneman, Paul Slovic & Amos Tversky ed. 1982)). A defendant's presentation of a live witness in its own case-in-chief while precluding another party from calling the witness live during its own case-in-chief for cross-examination "give[s] artificially greater salience on the part of [witnesses] examination that favored [defendant] than to the part that favored its opponent." *Traylor,* 988 F.2d at 734. "There was a thumb on the scale" and "[i]t should be removed in the retrial." *Id.*

Likewise, the District Court of Minnesota explained that "we do not believe that the disjointed presentation of certain witnesses, by videotape, and subsequently, in person, would lead to much other than Jury confusion." *Marvin Lumber and Cedar Co*., Civ. No. 4-95-739 Order at 3, n.3. By ordering defendants to produce live witnesses within their custody or control, the court exercised its "authority to manage the conduct of Trial so as to minimize such confusion without prejudicing any party." *Id.*

The results should be the same here. Defendants should not be allowed the advantage of the stronger evidence of live witnesses while depriving Rottlund of the same benefit and relegating Rottlund to the use of these persons' depositions. *Traylor,* 988 F.2d at 734. Moreover, if Defendants refuse to produce the designated witnesses during Rottlund's case-in-chief, but call these witnesses during their own case-in-chief, then Defendants could control the scope of Rottlund's examination by limiting the scope of their direct examination. Defendants cannot be permitted to do so. This Court should not endorse such an unjust and tilted playing field. If Defendants fail to produce witnesses under their control at trial for Rottlund's case-in-chief, then they should be precluded from presenting such witnesses in person during their case-in-chief.

In sum, if this Court does not order Defendants to produce their witnesses (which include the Defendants' officers and/or owners) at trial, then it should order that trial depositions in lieu of in-court appearances take place so that Rottlund is not precluded from presenting necessary testimony at trial. Rottlund should be allowed to fully and completely present its case. The only way to allow this is for this Court to order trial depositions in lieu of in-court appearances of the witnesses designated on page four (4) *supra*.

**III. THE COURT SHOULD ALSO CONFIRM THAT STEVE SANDELIN'S UPCOMING REDEPOSITION, WHICH IS TO BE CONDUCTED PURSUANT TO THE COURT'S JUNE 30, 2004 SANCTION ORDER, IS SUBJECT TO THE SEVEN HOUR RULE AND NOT LIMITED TO A FEW DOCUMENTS.**

On June 30, 2004, the Court issued an Order sanctioning Town & Country Illinois and its counsel. *The Rottlund Company, Inc. v. Pinnacle Corp.*, 222 F.R.D. 362 (D. Minn. 2004). As part of the Court's sanctions, Town & County Illinois was ordered to make witnesses available for Rottlund to "redepose." *Id.* at 387 (emphasis added). These witnesses include the Town & County Defendants' CFO Paul Anderson, and Town & Country Illinois' former in-house architect and VP of Product Development Steven Sandelin. There is no question that Rottlund will "redepose" Paul Anderson for seven-hours in Chicago later this month (Krummen Aff., Ex. E at 15:16-16:3; Order, 9/28/04, p. 2), but the Town & Country Defendants want to thwart the Court's Sanction Order permitting Rottlund to "redepose" Steve Sandelin by arguing that Rottlund may only ask Mr. Sandelin limited questions about Rottlund's brochures tardily produced from Mr. Sandelin's 4000-plus page competitor brochure file in December 2003. (*Id.*, Ex. J at p. 2 ("the continued deposition of Mr. Sandelin should be limited to questions relating to his brochure file.")) This tactic, which misrepresents the Court's sanction by claiming it simply requires Mr. Sandelin to "continue" his deposition, is misplaced and thwarts the Court's clear directive that Rottlund may "redepose" Mr. Sandelin. Consequently, Rottlund respectfully requests that the Court confirm that Rottlund is entitled to redepose Mr. Sandelin for seven hours in Chicago and the redeposition is not limited to just a few questions about the Rottlund brochures tardily produced by the Town & Country Defendants.

## CONCLUSION

For the reasons stated above, Rottlund respectfully requests that this Court grant its motion to compel attendance of seven (7) witnesses at trial; or in the alternative, to compel trial

depositions in lieu of in-court appearances to be taken of six (6) witnesses designated by Rottlund and preclude Defendants from bringing seven (7) witnesses in their own case-in-chief.

Dated: October 1, 2004

s/ Craig S. Krummen
Craig S. Krummen, #0259081
David A. Davenport, #0285109
WINTHROP & WEINSTINE, P.A.
**Attorneys for Plaintiff**
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
ckrummen@winthrop.com

2145180v1