Court File No. 01-1980 / ROTTLUND / Pinnacle
Krummen Affidavit dated October 1, 2004

# Exhibit A

WINTHROP WEINSTINE

ATTORNEYS AND COUNSELORS AT LAW

September 24, 2004

Craig S. Krummen
(612) 604-6717 (direct phone)
(612)604-6806 (direct fax)
ckrummen@winthrop.com

**VIA FACSIMILE & U.S. MAIL**

Holly J. Newman, Esq.
Benjamin Patrick, Esq.
MACKALL, CROUNSE & MOORE, PLC
1400 AT&T Tower, 901 Marquette Avenue
Minneapolis, MN 55402-2859

Darren Schwiebert, Esq.
FREDRIKSON & BYRON
4000 Pillsbury Center
200 South Sixth Street
Minneapolis, MN 55402-3397

Christopher J. Murdoch, Esq.
Matthew I. Farmer, Esq.
HOLLAND & KNIGHT, LLC
131 South Dearborn Street, 30th Floor
Chicago, IL 60603

**Re:** Court File No. 01-CV-1980 (DSD/SRN) / Our File No. 10150-3
***Rottlund Homes v. Pinnacle Corporation, et al***

Dear Counsel:

This letter follows Judge Doty's suggestion that we discuss, among other things, upcoming pre-trial submissions, and other trial matters knowing that trial is scheduled begin on November 15, 2004.

I believe there are two matters that should be addressed and resolved as soon as possible. The first concerns a fair and efficient way to apprise all parties of when witnesses will be called to testify at trial. The second concerns out-of-state witnesses.

While all of us are certainly capable of preparing to examine a witness the night before that witness testifies, I do not believe it is fair to our respective staffs, nor is it necessary, to keep them working all night to prepare the supporting materials for examination of a witness who will be called to testify the next day. Likewise, because trials are fluid and no one can anticipate every turn, it is doubtful that any party can predict with certainty the precise witnesses that will be called and the order in which they will be called 3-4 weeks in advance.

Accordingly, I suggest that all parties stipulate to follow the "48-hour rule" – a rule that in my experience has been helpful to all parties in prior trials. Under the 48-hour rule, the party

presenting its case-in-chief provides the other parties with witness names and the witness order at least 48 hours before the witnesses are called. In other words, before the parties leave the courtroom for the day, they announce on the record the witnesses they will call the next trial day and the trial day after that. This advance notice allows everyone to make travel arrangements, prepare witnesses for direct examination, prepare for cross-examination, *etc.*, yet it provides the flexibility a trial necessarily demands for the party presenting its case-in-chief.

While this stipulation would not alter Local Rule 39.1(C) or its requirement to provide a Witness List at least 10 days in advance of trial, it would facilitate witness travel schedules, logistics, *etc.* It would also provide all parties with the mutual benefit of knowing at least two trial days in advance of when a witness will be called to testify. Please let me know your thoughts on this proposal at your earliest possible convenience.

The second issue concerns out-of-state trial witnesses. Although the following list may change after all of the pending motions are resolved, Rottlund currently intends to call the following out-of-state Town & Country shareholders and/or officers to testify during Rottlund's case-in-chief:

> William Ryan, Tom Ryan, Mike Ryan, Paul Anderson, as well as former Vice President Steve Sandelin.

Although all of these individuals reside in Illinois, they all are owners of, and/or officers in, the Town & Country Minnesota Division, except former Vice President Steve Sandelin, yet even he did business in Minnesota. Accordingly, Rottlund expects that these witnesses will be made available to testify during Rottlund's case-in-chief. Please let me know, at your earliest possible convenience, whether the Town & Country Defendants will make these out-of-state witnesses available to testify at trial during Rottlund's case-in-chief.

Rottlund further intends to call at trial the following out-of-state witnesses that have positions with The Bloodgood Defendants:

> Doug Buster, Larry Moore, Chris Jorgenson, James Grundmeier, Beth Miller, and Lori Meier.

We understand that Mr. Buster resides in Illinois, and the remaining witnesses reside in Iowa. Nevertheless, they were all involved with the Minnesota designs which are at issue in this lawsuit. Accordingly, Rottlund expects that these witnesses will be made available for examination at trial during Rottlund's case-in-chief. Please let me know, at your earliest possible convenience, whether the Bloodgood Defendants will make these out-of-state witnesses available to testify at trial during Rottlund's case-in-chief.

Finally, as you know, Rottlund also has out-of-state employees, and the Defendants previously deposed at least two of these individuals. If the Defendants intend to call any out-of-state Rottlund employees to testify at trial, please let me know. Rottlund will make its out-of-state employees available to testify at trial on two trial days' notice so long as all of the Defendants reciprocate.

Thank you for your time and attention to these matters. I look forward to hearing from each of you soon.

Very truly yours,

WINTHROP & WEINSTINE, P.A.

By – *Craig S. Krummen*

Craig S. Krummen

CSK:clk
2146943v12

Exhibit B

Holland+Knight

Tel 312 263 3600
Fax 312 578 6666

Holland & Knight LLP
131 South Dearborn Street, 30th Floor
Chicago, IL 60603
www.hklaw.com

September 29, 2004

Christopher J. Murdoch
312 578 6641
chris.murdoch@hklaw.com

VIA FAX AND FIRST CLASS MAIL

Mr. Craig S. Krummen
Winthrop & Weinstine
225 S. Sixth Street
Minneapolis MN 55402

***Re:*** ***Rottlund Homes v. Pinnacle Corp.***

Dear Mr. Krummen:

This letter is in response to yours of September 24, 2004 regarding the November 15, 2005 trial. I have conferred with Mr. Schwiebert and he concurs with the contents of this letter on behalf of Town & Country Homes, Inc.

Your letter did not give any indication of how long you expect the trial to last. Pinnacle and TCM believe the entire trial should take no more than ten (10) days, including jury selection and closing arguments. Please provide a realistic estimate of the time you believe it will take to try this matter.

With regard to the scheduling of witnesses, your proposed "48-hour rule" seems a little presumptuous because it assumes the Court will allow us to adjourn for the day if the disclosed witnesses do not take as long as expected. As an alternative, Pinnacle and TCM propose that Rottlund disclose the order in which it will call its witnesses no later than November 10, 2004. Assuming that Rottlund's case-in-chief will take five days, and because the witnesses defendants will call depend in large part on the evidence Rottlund presents, Pinnacle and TCM will disclose the order of their witnesses on November 20, 2004. During trial, the parties may elect not to call a witness from their list and proceed to the next, but no party shall be permitted to change the order of its witnesses.

With regard to the appearance of witnesses at trial, Pinnacle and TCM will not agree to bring William Ryan, Tom Ryan or Michael Ryan to testify during Rottlund's case in chief. Mr. Sandelin is not interested in appearing to testify for Rottlund either. Pinnacle and/or TCM may call one or more of these individuals to testify, but that will depend in large part on the evidence Rottlund presents.

Sincerely yours,

HOLLAND & KNIGHT LLP

Christopher J. Murdoch

CJM/bh

# 2284241_v1

Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Rottlund Company, Inc.,
d/b/a Rottlund Homes,
a Minnesota Corporation,

Civil Action No. 01-CV-1980 DSD/SRN

Plaintiff,

v.

Pinnacle Corporation,
d/b/a Town & Country Homes,
an Illinois Corporation.

Defendants.

---

**AFFIDAVIT OF MICHAEL J. RYAN SUBMITTED WITH PINNACLE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

---

Michael J. Ryan, being first duly sworn on oath, states and deposes as follows:

1. I am Chief Executive Officer of Town & Country Homes, Inc., a Minnesota corporation ("TCM"). TCM's principle offices are located in Eden Prairie, Minnesota. TCM, however, also has officers and/or employees in Illinois who perform various administrative functions.

2. I am also Chief Executive Officer of Pinnacle Corporation, an Illinois corporation ("Pinnacle").

3. Pinnacle and TCM share common ownership, and are sometimes described as affiliated corporations or sister corporations. However, Pinnacle is not the parent of TCM, and TCM is not a subsidiary of Pinnacle or of any other company. Each entity takes great care to maintain their respective businesses as independent corporations.

4. Pinnacle and TCM are sometimes referred to as "divisions." Such references are for marketing purposes to indicate that they are sister corporations sharing common ownership and a common CEO. Having common ownership and a common CEO means that TCM can legitimately use and market the experience of its sister corporation.

5. Pinnacle retains the services of Triton-Tek of Chicago, Illinois, to manage its website, located at URL http://www.townandcountryhomes.com. The Pinnacle website has a hyperlink to TCM's website, but TCM, not Pinnacle, originated TCM's website, owns it and controls its content.

6. As CEO of TCM, I necessarily am involved in various aspects of TCM's business. For instance, at the request of Art Plante, TCM's president, I will occasionally interview high level job candidates in my capacity as TCM CEO. Also in my capacity of TCM CEO, I occasionally travel to Minnesota, participate in decisions regarding housing development projects and the like. However, I keep distinct my work as CEO for TCM from my work as CEO for Pinnacle.

7. Paul J. Anderson is Chief Financial Officer for TCM. Mr. Anderson's office is located in Illinois. TCM's payroll is processed in Illinois, but the payer is TCM, as TCM is the employer of TCM's employees.

8. Peter J. Brennan is General Counsel for TCM. Mr. Brennan's office is also located in Illinois.

Dated: February ___, 2002

[signature]
Michael J. Ryan

Subscribed and sworn to before me this 8th day of February 2002.

Karen Blake

Notary Public

"OFFICIAL SEAL"
Karen Blake
Notary Public, State of Illinois
My Commission Expires Oct. 6, 2003

::ODMA\PCDOCS\FBDOCS1\2618402\1

# Exhibit D

# COPY OF TRANSCRIPT

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

THE ROTTLUND COMPANY, INC., )
d/b/a ROTTLUND HOMES, a Minnesota)
Corporation, )
Plaintiff, )
v. )
PINNACLE CORPORATION )
d/b/a TOWN & COUNTRY HOMES, )
an Illinois corporation, and )Case No.:
TOWN & COUNTRY HOMES, INC., )01-CV-1980 DSD/SRN
a Minnesota Corporation, )
Defendants. )
-----------------------------------)
TOWN & COUNTRY HOMES, INC. )
A Minnesota Corporation, )
Third-Party Plaintiff, )
v. )
BLOODGOOD, SHARP, BUSTER )
ARCHITECTS & PLANNERS OF IOWA, )
an Iowa Corporation. )
Third-Party Defendant. )

The deposition of Paul Anderson, called by the Rottlund Company, Plaintiff, taken pursuant to the provisions of the Federal Rules of Evidence and Civil Procedure pertaining to the taking of depositions, before KATRINA M. BEAUDIN, CSR, RMR, CRR, at M & M Reporting, Inc., One Pierce, Suite 295-E, Itasca, Illinois, on the 17th day of December, 2002, at 9:12 a.m.

Q. Okay. So you are generally familiar with, for example, Town & Country Homes, Inc.'s document retention policy?

A. Yes.

Q. Is that correct even though that entity operates in Minnesota?

A. Yes.

Q. And how is it that you are familiar with their document retention policy, you office in Illinois, correct?

A. But I'm CFO for that company.

Q. Okay.

A. And we'll visit that company on a regular basis.

Q. And your CFO work for Town & Country Homes, Inc., that's typically conducted out of your Chicago office, correct?

A. That's correct.

Q. You don't fly back and forth and say, gee, I have to work for TCH, Inc. today so I better go to Minnesota, correct?

A. No, that's not entirely correct, when the work that I'm doing in Minnesota requires me to be there, I fly up there to conduct business.

When I can handle my affairs in Illinois, I'll
handle them down there.
Q. Let's talk about your capacity as CFO of Town & Country Homes, Inc., how much time per year do you spend in that regard?
A. Maybe 20 percent.
Q. Now, you are also the CFO of Pinnacle, correct?
A. Yes.
Q. How much time do you spend in your capacity as CFO of Pinnacle?
A. Probably about the same. Maybe a little bit more.
Q. And so maybe 20 to 25 percent or is that too aggressive?
A. I'm guessing with these percentages.
Q. That's fine.
A. That's probably the window.
Q. All right. If you're spending 20 percent of your time working as CFO of Town & Country Homes, Inc., the question is: How much in terms of the percentage of your time do you spend in Minnesota?
A. I probably spend three days in Minnesota

every six weeks. If you want to do the math on that.

Q. I can do that after the deposition, it is too early in the morning.

MR. FARMER: 1/10th.

BY MR. KRUMMEN:

Q. It sounds like you spend six days every three months times four would be about 24 days a year?

A. That's probably about right.

MR. FARMER: Three days every six weeks.

BY MR. KRUMMEN:

Q. Six days every three months.

MR. FARMER: Three days every six weeks. Five business days a week, three days out of every 30 days. 1/10th of the business calendar.

BY MR. KRUMMEN:

Q. Is that fair to say?

A. That's fair to say.

Q. So --

A. Sometimes I'll spend more than three days, sometimes I might spend less so that's a good ballpark.

Q. You're saying you are spending ten

percent of your time in Minnesota?

A. If that's what it works out to, yes.

Q. So 10 percent of your time working as CFO of Town & Country Homes, Inc. is spent here in -- strike the question. Of a total year, I believe you said you spend 20 percent of your time working as CFO for Town & Country Homes, Inc. correct?

A. Correct.

Q. If we did the math correctly, half of that time is spent in Minnesota and half of that time is spent here in Illinois?

A. That's probably -- probably spend more time in Illinois than I do in Minnesota working on it.

Q. Let's work on that blend then. Would you say that you spend 50 percent of your time as the CFO of Town & Country Homes, Inc., here in Chicago or more than 50 percent?

A. Probably more than 50 percent.

Q. More than 75 percent?

A. Somewhere around there. Without maintaining time sheets, this is just all speculative. I think as a rule I spend about 20

percent of my time working on the affairs of Town & Country Homes, Inc. and I will take trips up there as my presence is required. And I don't believe that that represents half the time that I spend on Minnesota. And this pertains, 25 percent -- I'm just guessing.

Q. Do you have a day calendar?

A. I have a computerized calendar, yes.

Q. We can print out your computerized calendar for the last year and find out how many days you spend in Minnesota?

A. Yes, we could.

MR. FARMER: Objection: Foundation.

BY MR. KRUMMEN:

Q. I'll ask it one more time and I'll move on, it sounded to me like you were estimating that 75 percent of the time that you spend working at CFO for Town & Country Homes, Inc. is time spent here in Illinois, is that a fair statement?

A. Yes.

Q. Okay. Back to the document retention policy and I have some understanding of your basis for knowing what Town & Country Homes, Inc.'s document retention policy is based on, but tell me

Exhibit E

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

FOURTH DIVISION

No.: 01-CV-1980 (DSD/SRN)

- - - - - - - - - - - - - - - - - - - - - - - - - -

The Rottlund Company, Inc.
d/b/a Rottlund Homes, a Minnesota
Corporation,

Plaintiff,

vs.

Pinnacle Corporation
d/b/a Town & Country Homes,
an Illinois Corporation, and
Town & Country Homes, Inc.,
a Minnesota Corporation,

Defendants,

and

Town & Country Homes, Inc.,
a Minnesota Corporation,

Third-Party Plaintiff,

vs.

Bloodgood Sharp Buster Architects &
Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - -

STATUS CONFERENCE

Wednesday, August 18, 2004

3:25 p.m.

or all Defendants' damage motions.

Are there any other issues that ought to be on the agenda today?

MR. SCHWIEBERT: Your Honor, this is Darren Schwiebert. I don't have an item to add. I simply want to let the Court and the parties know that I have another conflict at 4:30. I didn't anticipate this conference being longer than an hour and I'm hopeful we can get through all those issues.

But just so that everybody is aware, I have another conflict which I cannot move starting at 4:30. That gives us about an hour. I think that should be plenty of time given the issues. I just wanted the Court and the parties to know that up front.

MAGISTRATE JUDGE NELSON: Okay. Any other issues to add to the agenda?

MR. DAVENPORT: No, Your Honor.

MAGISTRATE JUDGE NELSON: All right. Let's begin with the Sandelin, Anderson, and Plante depositions.

Why don't I have very brief comments, and let's see if we can resolve these issues. I think it was raised by Pinnacle. So

Mr. Murdoch, do you want to go first?

MR. MURDOCH: Sure. Thank you very much, Your Honor. I think it would actually be easier if we divide them up by witness. Most -- as I understood Rottlund's response letter, most of it was focused on Paul Anderson, which I think, to the extent that there is any dispute, that's where the dispute would exist.

As I understand it, Rottlund would like to have or believes it is entitled to two full days of deposition of Mr. Anderson because he has two separate job titles. And we disagree with that, initially, because we think the rule provides only for one seven-hour deposition for a witness, regardless of how many different responsibilities he has.

I think it's different, you know, for the 30(b)(6) context in which he was designated by both Town & Country of Minnesota and by Rottlund. So there were two separate depositions both -- in regard to this, there should only be one deposition.

And I can tell the Court that the -- when Mr. Krummen was in Chicago, his deposition of Mr. Anderson was not limited to Pinnacle

issues. He questioned him about both Pinnacle and Town & Country Minnesota issues. So our perception was that they were taking a single deposition of Mr. Anderson.

Now, the deposition was cut short because the BSB attorney had a conflict. And so if you add up the time, I think there's still about two and a half hours on the clock for this seven-hour deposition.

The question then becomes "Where will the deposition take place?" And here it merges with the sanctions order. If the deposition is to take place pursuant to the sanctions order, that's the genesis of my letter, which believes that -- you know, if you recall during the hearings, I said that we'd be willing to make Mr. Sandelin, and if they want, Mr. Anderson-- although we can't imagine why, those are the two people that they have spoken about--available for questioning about the brochure file. And that would be obviously in Minnesota. But I believe that if it's pursuant to that sanctions order, it should be limited to the brochure file. And as I said during the hearing, we couldn't understand really what they could

question Mr. Anderson about with relation to the brochure files, but that's that issue.

If this is merely a continuation of his individual deposition, then we believe it should take place in Chicago because that's where he lives and works. And we don't see why Town & Country of Minnesota should have to pay to bring Mr. Anderson up to Minnesota for an individual deposition because of a scheduling conflict from the BSB attorneys.

With regard to Mr. Plante, that's just a working out of a date for his deposition. I think he's available on the 2nd, and I think that's one of the dates that they proposed.

Finally, with regard to Mr. Sandelin who is not going to be until I think sometime in mid-September, there is a wrinkle there which isn't in the letters. And that is that Mr. Sandelin doesn't work for Town & Country anymore or for Pinnacle. He quit about three or four weeks ago, I think. He now works for a new unrelated company.

We've had contact with him. He is willing to appear for deposition, but it's very difficult for him to come to Minnesota for --

because he just started this new job.

That's something that we can work around. Obviously that deposition is subject to the sanctions order and so that involves the Winthrop attorney coming to Chicago. Perhaps that's what has to be done. But he's expressed a strong desire, given his new job, not to have to come to Minnesota for the continuation of that deposition.

So just, in short, the three issues: Anderson, if it's an individual deposition, we think they have a couple hours left, but it should take place in Chicago; if it's pursuant to the sanctions order, it should be limited to the brochures. Art Plante is just working out a date; that's a single deposition; it's never been done; he hasn't been taken yet, so that's fine. And Steve Sandelin is just a question of location at this point.

MR. SCHWIEBERT: Your Honor, this is Darren Schwiebert, if I could interject. Art Plante is available for his deposition on September 2nd.

MAGISTRATE JUDGE NELSON: Okay. So that issue is resolved. Art Plante's deposition

will proceed on September 2nd. Okay. Anything else before I turn it over to Mr. Davenport? Anybody else want to comment?

MS. NEWMAN: No, Your Honor.

MAGISTRATE JUDGE NELSON: Okay. Mr. Davenport.

MR. DAVENPORT: Thank you, Your Honor. And I'll just try to be brief in responding to Mr. Murdoch's comments.

Our letter brief sets forth our position. We believe we're entitled to depose Mr. Anderson consistent with what we set forth in our letter.

Why should TCM have to pay for him to be deposed here in Minnesota: Because he's TCM's CFO. That's the answer to that question. With respect to Mr. Sandelin, that's news to us, Your Honor. We didn't realize that he quit three or four weeks ago. I'm not entirely sure how the Court would like to deal with that, but our view of the world is that re-deposition should not come at any expense to Rottlund. We believe that that deposition should occur here. I understand there might be a problem ordering Mr. Sandelin now that he's not a party, or

working for a party, to come to Minnesota. So we'd have to think about how to deal with that issue.

But with respect to Mr. Anderson, Your Honor, he was not fully deposed in Chicago. We think we made that very clear in our letter. We think we're entitled to have him for seven more hours is all we're asking for, Your Honor. And we'd like to do that and complete that here in Minneapolis consistent with your sanctions order.

Unless you have any questions for me, I'll just rely on everything else that's in our papers.

MAGISTRATE JUDGE NELSON: Brief response to any of Mr. Davenport's comments?

MR. SCHWIEBERT: Your Honor, this is Darren Schwiebert. Mr. Anderson is in Illinois. That's the reality of the matter.

Their examination was not limited to questions relating to Pinnacle at that time. If they believe they need to complete what's left of the seven hours, or something around that period, we don't have an objection.

But he -- it's not a 30(b)(6)

deposition. It's an individual deposition. The individual is in Illinois. And if they'd like to go there and ask him some more questions, we don't object.

MAGISTRATE JUDGE NELSON: Okay.

MR. MURDOCH: Your Honor, Chris Murdoch. I'm sorry to interrupt. Just one more point. With regard to the seven hours and then consistent with the sanctions order, I would hope that we could get a clear ruling that if this is a continuation of his individual deposition, that Pinnacle is not going to be paying for Winthrop & Weinstine's preparation time and examination time for that deposition.

But that if it is a deposition pursuant to the sanctions order, we would be paying for that examination. But then again, as I said earlier, I hope that that is limited to the brochure file.

MAGISTRATE JUDGE NELSON: All right. This is what I think: Plante's deposition will proceed on September 2nd. Mr. Sandelin -- I think the way to handle the location problem there is this: Either Mr. Murdoch, you persuade him to come to Minnesota, which would be the

ideal result, or Pinnacle's going to have to pick up the reasonable expenses that Rottlund's counsel incurs in going to Illinois.

I don't see another way to do that. And I don't want to end up with some dispute about what reasonable expenses are, which is why I prefer to have Mr. Sandelin come here. But I doubt that I can order him here, so it might be that if he's unwilling to cooperate with Pinnacle's counsel, that we'll have to have Pinnacle pay Rottlund's reasonable expenses. One way to handle that might be to have Rottlund anticipate what those might be and have some kind of discussion in advance so there's no dispute about it.

Okay. With respect to Mr. Anderson, I think the fair way to handle Mr. Anderson is as follows: I think that Rottlund should be given seven additional hours with Mr. Anderson for a variety of reasons, including the various roles he plays in this case.

But I think the deposition ought to take place in Chicago. To the extent that the deposition involves questions raised in the sanctions order, I think that Rottlund's counsel

can reasonably request reimbursement for the costs of preparing for that portion of the deposition.

Any questions about that ruling?

MR. DAVENPORT: The only question --

MR. MURDOCH: Your Honor, it's Chris Murdoch again. Just two, I guess questions/comments. With regard to Mr. Anderson, I guess then the seven hours would be questions that arise from the sanction and the brochure file will be intermixed and it would be subject, I suppose, to some sort of submission to the Court for approval of their request for prep time and the actual questioning.

Otherwise, I don't want to have to kind of parse those issues out with Rottlund -- with Winthrop & Weinstine directly. But you can -- maybe you could respond to that.

With regard to Mr. Sandelin, I throw this out not as a -- as a -- just as a suggestion. If we can't get him to come to Minnesota -- and I'm going to try; but if we can't, we also have videoteleconferencing capabilities and telephones.

So that is, you know, something that we can offer up too if the Winthrop & Weinstine lawyers don't want to come down to Chicago for a face to face. Perhaps that might be a good compromise. I don't know.

MAGISTRATE JUDGE NELSON: Mr. Davenport.

MR. DAVENPORT: Your Honor, with respect to Mr. Anderson, we have no intention of trying to come back to the Court and fence over a small issue as it might relate to reimbursement for a portion of prep and exam as it relates to the documents Mr. Sandelin produced. So we would make every effort to try to work that out.

I think that'll be a very small issue. The Court's been very kind with the time it's given us in status conferences. We're trying to prepare for trial and we don't want to waste your time on that.

With respect to Mr. Sandelin, we would like to take him in a face-to-face deposition.

MAGISTRATE JUDGE NELSON: Okay. Well, hopefully you can resolve whatever issue there is with respect to Mr. Sandelin and with respect

to Winthrop & Weinstine's prep time. Hopefully that can be resolved without coming to the Court again.

MR. DAVENPORT: Your Honor, this is Mr. Davenport. I had one final point. I apologize for the long pause there. It was a question as it related to your order concerning Mr. Sandelin.

I'd like to make sure that we're not necessarily limited to asking questions just about what was in that box. There may be some questions that we need to follow up on as they relate to that box.

And also, very much like with the BSB issue that came about here, we are videotaping depositions, we have prior testimony, things may have to be reworked and reordered with respect to those types of questions.

MAGISTRATE JUDGE NELSON: Well, I'm just going to hope that you folks can work that out.

MR. DAVENPORT: We'll do our best, Your Honor. Thank you.

MAGISTRATE JUDGE NELSON: In light of Mr. Schwiebert's schedule in particular, let's

Exhibit F

**Krummen Craig**

**From:** Krummen Craig
**Sent:** Wednesday, September 01, 2004 9:39 AM
**To:** Kuno Cindy
**Cc:** Davenport David; Handler Vicki
**Subject:** FW: Anderson & Plante Depositions

-----Original Message-----
From: chris.murdoch@hklaw.com [mailto:chris.murdoch@hklaw.com]
Sent: Wednesday, September 01, 2004 8:59 AM
To: Krummen Craig; dschwiebert@fredlaw.com; hjn@mcmlaw.com
Subject: Re: Anderson & Plante Depositions

Craig,

I apologize for the inadvertent reference to Mr. Plante in the subject line of my email. Mr. Plante is prepared to proceed with his deposition as scheduled.

No one from my firm with sufficient familiarity to this matter is available on the dates you selected for Mr. Anderson and Mr. Sandelin's depositions.

We do represent Mr. Sandelin in connection with this matter and his deposition. I will determine his availability on the 22nd, 23rd, or 24th of September and get back to you.

-----Original Message-----
From: Krummen Craig <CKrummen@winthrop.com>
To: chris.murdoch@hklaw.com <chris.murdoch@hklaw.com>; dschwiebert@fredlaw.com <dschwiebert@fredlaw.com>; hjn@mcmlaw.com <hjn@mcmlaw.com>
Sent: Tue Aug 31 17:01:35 2004
Subject: RE: Anderson & Plante Depositions

Chris,

Thank you for your e-mail.

First, your subject references Art Plante's deposition but he was not mentioned in the text. Please inform us as soon as possible if there is a problem with Art Plante's deposition which is scheduled for Thursday, September 2.

Second, please confirm that your firm represents Steve Sandelin now that he is a third party to this lawsuit.

As for the Steve Sandelin and Paul Anderson deposition notices, the Defendants previously decided that neither Mr. Schwiebert nor any member of his firm was needed to defend the prior depositions of Mr. Sandelin and Mr.

Anderson, so we are only interested in whether the Holland & Knight lawyers have conflicts with the noticed dates. If you have a conflict, and none of the other lawyers in your 120 attorney firm can cover the depositions, then let us know and we will reschedule the third-party deposition: a professional courtesy your firm did not afford us when it conducted a third-party deposition without us in New York over our objection and despite our notice of a motion seeking a protective order.

Finally, please let us know if Mr. Sandelin is available September 22, 23, or 24 either in Minneapolis or in Chicago. We will schedule Mr. Anderson's deposition after we know where Mr. Sandelin will be deposed. If they can be scheduled on consecutive days at M&M Reporting in Illinois, we will accommodate that schedule.

Thank you.

Craig

-----Original Message-----
From: chris.murdoch@hklaw.com [mailto:chris.murdoch@hklaw.com]
Sent: Monday, August 30, 2004 4:19 PM
To: Krummen Craig; dschwiebert@fredlaw.com; hjn@mcmlaw.com
Subject: Anderson & Plante Depositions

Dear Craig,

On August 11, 2004, Mr. Schwiebert advised you by fax that defendants were not available for the depositions of Mr. Anderson or Mr. Sandelin the week of September 13, 2004 because the defendants' reply brief in support of their motion for partial summary judgment and two hearings on summary judgment motions are currently scheduled for that week. Inexplicably, you unilaterally served notice of Mr. Anderson's and Mr. Sandelin's deposition for that very week. We cannot accommodate your request and the depositions will not proceed on the dates you selected.

As Mr. Schwiebert requested in his August 11 letter, please advise as to your availability the week of September 20. We are still attempting to secure Mr. Sandelin's appearance in Minnesota. If you are willing to take his deposition in Chicago while you are here for Mr. Anderson's deposition, as your current notices indicate, please let me know.

Christopher J. Murdoch
Member
Holland & Knight LLP
131 S. Dearborn Street
30th Floor
Chicago IL 60603
(312) 578-6641 (Tel)
(312) 407-8426 (Fax)

Exhibit G

September 1, 2004

WINTHROP & WEINSTINE

ATTORNEYS AND COUNSELORS AT LAW

David A. Davenport
Direct Dial: (612) 604-6716
Direct Fax: (612) 604-6816
ddavenport@winthrop.com

**BY FAX and U.S. MAIL**
Darren Schwiebert, Esq.
FREDRIKSON & BYRON
4000 Pillsbury Center
200 South Sixth Street
Minneapolis, MN 55402-3397

**BY FAX and U.S. MAIL**
Christopher J. Murdoch, Esq.
Matthew I. Farmer, Esq.
HOLLAND & KNIGHT, LLC
131 South Dearborn Street, 30th Floor
Chicago, IL 60603

Re: Court File No. 01-CV-1980 (DSD/SRN) / Our File No. 10150-3
***Rottlund Homes v. Pinnacle Corporation, et al.***

Dear Counsel:

On August 18, 2004, the Court held that "the damages presented at trial ought to be the damages incurred as of the date of trial." Thus, the Court ordered the Town & Country Homes Defendants to identify every Homestead Collection, Washington Square, and Chateau Collection townhome that has been and will be built, pre-sold, sold, contemplated for construction and sale, etc. as of October 15, 2004. Please confirm by September 3, 2004 that you will provide a sworn interrogatory response, no later than September 10, 2004, that complies with the Court's August 18, 2004 Order because the supplemental interrogatory responses we received yesterday do not.

In addition, a few months ago the Town & Country Homes Defendants produced Estimate Detail Reports dated 3/24/04, Historical Job Cost Reports dated 3/23/04, Gross Profit Reports dated 3/22/04 and 3/26/04, List Jobs Reports dated 3/23/04, and Project Proformas dated 3/30/04. Please confirm by September 3, 2004 that you will supplement, no later than September 10, 2004, the production of these documents through August 31, 2004.

Similarly, we have not received the Town & Country Homes Defendants' quarterly financial statements for the first half of 2004. Please confirm by September 3, 2004 that you will produce, no later than September 10, 2004, these documents.

To state the obvious, Rottlund needs these documents to prepare for and conduct Mr. Anderson's up-coming deposition and the production of these documents is necessary for the parties to comply with the Court's directive that "the damages presented at trial ought to be the damages incurred as of the date of trial." Thank you, in advance, for your expected compliance with Rottlund's request.

Very truly yours,

WINTHROP & WEINSTINE, P.A.

David A. Davenport
DAD:djl
c: Holly J. Newman (by fax and U.S. Mail)
2141691v1

Exhibit H

WINTHROP WEINSTINE

ATTORNEYS AND COUNSELORS AT LAW

September 13, 2004

David A. Davenport
(612) 604-6716
ddavenport@winthrop.com

**HAND DELIVERED**

The Honorable Susan Richard Nelson
Warren E. Burger Federal Building
Courtroom 242
316 North Robert Street
St. Paul, MN 55101

Re: *The Rottlund Company, Inc. v. Pinnacle Corporation, et al.*
Court File No.: 01-CV-1980 (DSD/SRN)

Dear Magistrate Judge Nelson:

We respectfully submit this letter in anticipation of a Status Conference to be held on September 17, 2004. Rottlund respectfully requests that Your Honor address the following issues: (1) the Bloodgood Defendants' failure to identify the Good Value Homes source materials (8 ½ x 11 documents) allegedly produced to Rottlund and refusal to produce the "Bankers Box List" identified by Jim Grundmeier during his deposition; (2) the Town & Country Homes Defendants' failure to comply with Your Honor's Order that they identify all Homestead Collection, Washington Square and Chateau Collection townhomes that have been built and will be built, pre-sold, sold, contemplated for construction and sale, etc. as of October 15, 2004; and (3) the Town & Country Homes Defendants' refusal to make Paul Anderson and Steve Sandelin available for Court ordered continued depositions and failure to supplement important financial documents necessary for Rottlund to resume Mr. Anderson's deposition.

**A. The Bloodgood Defendants' Failure To Identify The Good Value Homes Source Materials (8 ½ x 11 documents) Allegedly Produced To Rottlund And Refusal To Produce The "Bankers Box List" Identified By Jim Grundmeier During His Deposition.**

BSB's architect Larry Moore testified that he referenced three back-to-back town home projects before the Defendants designed the infringing Homestead Collection: (1) Good Value Homes; (2) Midland Homes; and (3) Jerry's Homes. (Exhibit A at 15:18-16:5.) The source materials for Midland Homes and Jerry's Homes establish that BSB copied Rottlund's back-to-back Villa town home designs. However, despite several Orders from this Court, BSB still refuses to produce to Rottlund its Good Value Homes source materials.

During the Court ordered re-depositions of BSB's witnesses, Jim Grundmeier testified that he reviewed BSB's index of archived 8½ x 11 files (Banker Box Index/List) concerning the Good

Value Homes project. (*See* Exhibit B at 197:9-19.) Mr. Grundmeier admitted that BSB has not produced the Bankers Box Index/List to Rottlund. (*Id.* at 196:18-197:19.)

Mr. Grundmeier also testified that he did not know whether BSB produced to Rottlund the archived source material files related to Good Value Homes. However, Mr. Grundmeir testified that BSB sent "all of the documents that had to do with Good Value" to BSB's counsel. (*Id.* at 207:10-209:13; 213:16-221:15.) Rottlund has not received any of BSB's source material documents (8½ x 11 materials) related to Good Value Homes, despite its many requests and the Court's previous Orders compelling the production of these documents and files.

During the May 7, 2004 Status Conference, the Court ordered BSB to produce the Bankers Box Index or provide an affidavit stating that one does not exist. During the June 3, 2004 Status Conference, the Bloodgood Defendants stated that they provided the index to the Court and the parties. (*See* Exhibit C at 41:17-20.) However, because neither the Court nor Rottlund had received this index, the Bloodgood Defendants "resent" it. (*See* Exhibit D.)

After reviewing the "File Storage" index BSB provided, it was clear that this was not the Bankers Box Index/List Mr. Grundmeier identified during his testimony, and which the Court ordered BSB to produce. Thus, the Court ordered BSB's counsel to speak with Mr. Grundmeier about his testimony regarding the Bankers Box List and state whether this document has been produced or withheld from production. (*See* Exhibit E at 148:6-11.) In addition, because BSB's counsel emphatically stated that all Good Value Homes source materials had been previously produced to Rottlund, the Court ordered the Bloodgood Defendants to identify the Bates range of 8 ½ x 11 source material documents. (*Id.* at 149:15-150:5.)

On September 3, 2004, BSB submitted a letter to Your Honor and identified a mere twenty-one pages of previously produced documents. (*See* Exhibit F.) Importantly, these documents are not the 8 ½ x 11 source material documents for the Good Value Homes project. (*See* Exhibit G.) Instead, these twenty-one pages represent the final Good Value Homes' townhome designs. In addition, BSB produced a "tube storage" index, not the Bankers Box Index identified by Mr. Grundmeier. Thus, BSB has again failed to comply with the Court's orders regarding the production of the Bankers Box Index/List and Good Value Homes 8 ½ x 11 source material documents.

Rottlund respectfully requests that BSB be ordered to comply with the Court's Orders immediately.

**B. The Town & Country Homes Defendants' Failure To Comply With Your Honor's Order That They Identify All Homestead Collection, Washington Square and Chateau Collection Townhomes That Have Been Built And Will Be Built, Pre-sold, Sold, Contemplated For Construction And Sale, etc. As Of October 15, 2004.**

As a result of Rottlund's on-going investigation into the Town & Country Homes Defendants' persistent development of infringing products, Rottlund recently unearthed another previously

undisclosed development where the Town & Country Homes Defendants have been approved to build, and are building and offering to sell, infringing Chateau Collection townhomes. Rottlund brought this to Your Honor's attention on August 13, 2004. (*See* Rottlund's August 13, 2004 letter to Your Honor, pp. 6-7.) On August 18, 2004, the Court conducted a Status Conference and held that "the damages presented at trial ought to be the damages incurred as of the date of trial." (*See* Exhibit H at 48:11-13.) The Court ordered the Town & Country Homes Defendants to identify every Homestead Collection, Washington Square, and Chateau Collection townhome that has been built and will be built, pre-sold, sold, contemplated for construction and sale, etc. as of October 15, 2004. (*Id.* at 49:24-51:10.) The Court ordered these Defendants to provide this information to Rottlund through a sworn interrogatory response no later than August 31, 2004. (*Id.*)

Unfortunately, the Town & Country Homes Defendants did not comply. Instead, the Town & Country Homes Defendants chose to supplement their response to Rottlund's Interrogatory which asks them to identify, by name of home style, each and every home they have constructed, advertised and/or sold, or are currently planning to construct, advertise and/or sell. (*See* Exhibits I and J.) For its part, Town & Country Homes' Minnesota Division provided an unsworn response, which identified several additional developments where the infringing Chateau Collection townhome is planned for construction and sale. (*See* Exhibit I.) However, in choosing to supplement only this interrogatory request, the Town & Country Homes Defendants did not provide any information concerning the number of Homestead Collection, Chateau Collection, and Washington Square townhomes that have been built and will be built, pre-sold, sold, contemplated for construction and sale, etc. as of October 15, 2004. (*See* Exhibits I and J.) In sum, these Defendants have again failed to comply with the Court's discovery order because Rottlund is still in the position of being unable to present the jury with all the damages that will have been incurred as of the date of trial. Thus, Rottlund respectfully requests that Your Honor Order the Town & Country Homes Defendants to supplement their responses to Rottlund's Interrogatory No. 14 so that Rottlund will receive the very straight-forward information that the Court ordered them to provide to Rottlund no later than August 31, 2004. Rottlund's Interrogatory No. 14 (Set I) states:

> Please identify each development project in which you have constructed homes during the relevant time period. For each development identified, state the name of the home styles constructed and sold in each development, each individual home you, or someone acting on your behalf, have sold within the development, the date of the sale, and the sale price for each home sold. Include in your response homes for which you have entered into purchase agreements but have yet to execute closing documents to finalize the sale of the home. Also include in your response homes for which you entered into purchase agreements prior to the

relevant time period but executed closing documents which finalized the sale of the home during the relevant time period.[1]

Because the Town & Country Homes Defendants ignored Rottlund's September 1, 2004 letter requesting that they comply with Your Honor's August 18, 2004 Order (Exhibit K), Rottlund respectfully requests that the Court order sworn interrogatory responses to be served no later than September 22, 2004.

**C. The Town & Country Homes Defendants' Refusal To Make Paul Anderson And Steve Sandelin Available For Court Ordered Continued Depositions And Failure To Supplement Important Financial Documents Necessary For Rottlund To Resume Mr. Anderson's Deposition.**

After the Court confirmed on August 18, 2004 that the Court ordered depositions of Steve Sandelin and Paul Anderson were not limited solely to the 4000-plus pages of documents produced in December 2003 from Mr. Sandelin's competitor brochure file, and confirmed that Rottlund is entitled to depose Mr. Anderson for an additional seven hours in Chicago, Rottlund noticed these important depositions for the week of September 13, 2004. The Town & Country Homes Defendants elected not to make these two witnesses available, and requested to know Rottlund's availability for the week of September 20, 2004. (*See* Exhibit L at p. 2.) Rottlund then requested to depose these two important witnesses on two consecutive days sometime during September 22-24, 2004. (*Id.*) On September 1, 2004, Town & Country's counsel stated that he would "get back to" Rottlund on the matter. (*Id.* at p. 1.) Also on September 1, 2004, Rottlund requested that the Town & Country Homes Defendants supplement important financial documents necessary for Rottlund to present its full damages claim to the jury, and to fully and fairly depose Mr. Anderson since the financial documents at issue are not outdated by six months. (*See* Exhibit K.)

Two weeks later, Town & Country's counsel has not provided the availability of either Mr. Anderson nor Mr. Sandelin, nor has Town & Country's counsel responded to Rottlund's September 1, 2004 request for supplementation. As a result, neither Mr. Anderson nor Mr. Sandelin will be able to be deposed in September, despite the fact that the Court order compelling these depositions to reconvene was issued on June 30, 2004. Rottlund respectfully requests that the Court order these important financial documents to be supplemented no later than September 22, 2004, and that these two witnesses be made available for depositions to be conducted prior to trial.

[1] To the extent the Town & Country Homes Defendants may argue that this Interrogatory is overbroad, etc., the Court "defined the scope of relevance for discovery in the present case . . . [to include] those developments contain[ing] the allegedly infringing town homes." (Order, 10/10/02, pp. 33-34.)

Thank you, Your Honor, for your time and attention to these matters.

Very truly yours,

WINTHROP & WEINSTINE, P.A.

David A. Davenport

2143871v1

Enclosures

| | | |
|---|---|---|
| c: | Christopher J. Murdoch, Esq. | (facsimile ltr only / Federal Express w/enc.) |
| | Darren Schwiebert, Esq. | (hand delivered / w/enc.) |
| | Holly J. Newman, Esq. | (hand delivered / w/enc.) |