# Exhibit I

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Marvin Lumber and Cedar Company, and Marvin Windows of Tennessee, Inc.,

Plaintiffs,

vs.

ORDER

PPG Industries, Inc.,

Defendant.

Civ. No. 4-95-739 (DWF/RLE)

* * * * * * * * * * * * * * * * * * * 

At Duluth, in the District of Minnesota, this 17th day of August, 2001.

I. Introduction

On August 9, 2001, the Court heard argument on the Plaintiffs' Motion to Compel Production of Information and Complaints Relating to Other of the Defendant's Customers; the Plaintiffs' Motion to Compel Depositions in Lieu of In-Court Appearances; the Plaintiffs' Motion to Compel Production of Weather Shield Documents; the Plaintiff's Motion to Compel Responses to Plaintiff's Interrogatories and Requests for Production of Documents as to the Defendant's Foreign Subsidiaries; the Defendant's Motion to Amend the Protective Order; and the Defendant's Motion to Compel.[1] At the time of

---

[1]There was also a Motion by the Plaintiffs to Compel Production of Documents Contained in Certain Boxes at the Oak Creek Door (continued...)

615

FILED AUG 17 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

the Hearing, the Plaintiffs Marvin Lumber and Cedar Co., and Marvin Windows of Tennessee, appeared by Robert R. Weinstine, Kenneth A. Prine, Tiffany A. Blofield, and Charles J. Schoenwetter, Esqs., and the Defendant PPG Industries appeared by Michael T. Nilan, Teresa J. Kimker, and David H. Wright, Esqs. Our rulings on the above Motions were expressed at the time of the Hearing, and we simply memorialize them below.

## II. Discussion

We will address the remaining disputes between the parties as they were heard at the Hearing.

### A. The Plaintiffs' Motion to Compel Depositions In Lieu of In-Court Appearances.

The Plaintiffs seek to compel the depositions of twelve current and former employees, whom they have already deposed -- some quite extensively -- in lieu of their in-Court testimony, as the individuals are beyond the subpoena power of the Court.[2] The

(...continued)
House and Other Similar Categories of Documents, as well as a Motion by the Plaintiffs to Compel Answers to their Interrogatory Nos. 1 and 15 of the Plaintiffs' Set X, but both Motions were resolved prior to the Hearing. Therefore, we deny both Motions, as moot.

[2]The twelve individuals include Roger Harlan, David Kanuck, Calvin Henning, Phil Wyche, John Grunewalder, Rowland Hilovsky, Ernest Hahn, Steve Wirtz, Mark Howe, Jim Craig, Paul Murray, and Tom Becer. All but one of the previous depositions of these individuals were videotaped.

Plaintiffs' reason for this Motion is to "level the playing field," as the Defendant has not agreed to voluntarily produce these individuals for live, in-Court testimony.[3]

Due to the number of the individuals involved in this Motion, we do not believe that the use of voluminous videotaped depositions, in lieu of in-court testimony, would benefit either party, the Jury, or the Court. Videotaped depositions are, on occasion, an unavoidable, but tedious, venture. Recurrent resort to videotapes tend to annoy, if not distance, the Jury, and lead to Juror inattention. We rule, subject to the parties right to seek a different ruling from the Trial Court, that the parties shall "meet and confer" so as to produce live witnesses, when they are within the parties' care, custody, or control, at the time of Trial.[4] For those witnesses, who outside of a parties' care, custody, or control, resort may be had to the service of Rule 45 Subpoenas. In

---

[3]The Defendant has stated that it plans on calling six of the individuals as part of its case-in-chief. Thus, the Defendant contends that the Plaintiffs will have a chance to cross-examine these individuals. However, we do not believe that the disjointed presentation of certain witnesses, by videotape, and subsequently, in person, would lead to much other than Jury confusion. Our resolution expresses the Court's authority to manage the conduct of Trial so as to minimize such confusion, without prejudicing any party.

[4]The Defendant informed the Court that there were one or two of the noted witnesses who were outside of its care, custody, or control.

our view, the issues at stake are sufficiently important to warrant a requirement that, except upon a showing of cause, or unavailability, witnesses shall appear at the Trial of this matter in person.[5] Thus, we deny the Plaintiffs' Motion to Compel depositions in lieu of in-Court appearance, and direct that the witnesses testify in person, to the extent they are available, at Trial.

B. The Plaintiffs' Motion to Compel Production of Information and Complaints Relating to the Defendant's Other Customers, and Defendant's Motion to Amend the Protective Order.

The Plaintiffs seek an Order compelling the production of information, and complaints, relating to the Defendant's other customers while, obversely, the Defendant seeks to amend the Protective Order in this case, so as to add an "Attorneys' Eyes Only" designation.

The Plaintiffs seek customer complaints, which were received by the Defendant from their customers, and which the Plaintiffs regard as relevant to rebut the Defendant's contention that other window manufactures have not complained about PILT. While the Defendant admits that the documents are relevant, and has provided

---

[5]Lest there be any misunderstanding, we add two further directives. First, any depositions in lieu of an in-Court appearance will be solely taken to preserve the witnesses testimony, except to the limited extent that plainly new information, obtained since the last time that witness was deposed, must be explored. Second, the party, who requests the presence of a witness, shall pay the costs incident to the witnesses travel to this District.

the Plaintiffs with the complaints which involve a number of its customers, it has withheld some of the complaints because it believes that the information should be protected by an "Attorneys' Eyes Only" designation -- a provision which is not currently in the Protective Order that has been entered in this action. With the incorporation of such a provision, the Defendant has no objection to producing any outstanding customer complaints.

The crux of these Motions is the Defendant's attempt to amend the Protective Order, in accordance with Rule 26(c), Federal Rules of Civil Procedure, which provides, in pertinent part, as follows:

> Upon motion by a party or by the person from whom discovery is sought, * * * and for good cause shown, the court in which the action is pending * * * may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense * * *.

Currently, the Protective Order in this case provides:

> No Confidential item disclosed pursuant to the Stipulation and Order shall be used for any purpose other than the preparation for, and the trial of, this matter. No individual receiving a Confidential item pursuant to this Stipulation and Order shall disclose such item to any person, nor use it for any purpose other than those specified above or permitted by any order which governs the conduct of the recipient.

The Defendant regards this provision as sufficiently restrictive to protect the proprietary information of those of its customers who

compete with the Plaintiffs in the marketplace for windows and doors.

The Plaintiffs resist the need to amend the current Protective Order since it has served the parties need since 1996 and, in the Plaintiffs' view, the Defendant has not advance any "good cause" for the requested amendment. We agree with the Defendant that a modest reformation of the Protective Order is warranted. The customers of the Defendant has no interest in this action, and are concerned about their trade secrets, particularly as they may be disclosed to a competitor of their goods and services. While the Plaintiffs genuinely assert that these customers should have no concern, that is small comfort in the competitive world of marketing windows and doors. Further, as the pertinent customer complaints relate to recent times, and since the issues in this case date back five years or more, we anticipate that the requested information will have limited relevance, at best. Accordingly, we grant the Defendant's request for an "Attorneys' Eyes Only" provision in the Protective Order, and we grant the Plaintiffs' Motion to disclose the customer complaints, if any, that the Defendant has received, which are relevant to this litigation.[6]

---

[6]The Plaintiffs had requested that they be allowed to show any "Attorneys' Eyes Only" documents to a corporate employee for assistance in interpreting the significance, of any of the documents, (continued...)

C. The Plaintiffs' Motion to Compel Production of Weather Shield Documents.

By this Motion, the Plaintiffs seek the production of documents pertaining to the Defendant's former litigation with Weather Shield Manufacturing, Inc. In particular, the Plaintiffs seek the following documents, which they term the "Weather Shield documents":

> Information provided by PPG and Weather Shield to Judge Shabaz [the United States District Court for the Western District of Wisconsin] prior to the issuance of his Order finding that there were factual issues concerning the defectiveness of PILT;
>
> PPG's Settlement Agreement with Weather Shield and any documents implementing the terms of that Settlement Agreement including, but not limited to, correspondence, cancelled checks, etc.;
>
> All drafts of the Statement of Facts dated July 9, 1998 that was issued in connection with the Settlement;
>
> The underlying data that the Statement of Facts was based upon;

(...continued)
but we find such a procedure, upon the current showings, to be unnecessary. The mechanism proposed by the Defendant would allow the Plaintiffs to disclose the protected documents to expert consultants who agreed to the terms of the Protective Order, and that should adequately inform the Plaintiffs' counsel of the import of any documents disclosed. If, after viewing the documents at issue, the Plaintiffs still believe that they need assistance from in-house employees of the Plaintiff, they may return to this Court.

> The Expert Reports and all related materials of both parties relating to such relevant issues as the differences between the PILT formulation sold to Weather Shield and to others, PILT formulations and their performance, and Weather Shield rot rates;
>
> The Summary Judgment submissions of both parties;
>
> The raw data generated and/or used by the parties with respect to their respective calculations of rot rates with the various preservatives used by Weather Shield;
>
> The materials you indicated to the Court you would produce to us. I believe these included Weather Shield's supplemental production of customer service records; and
>
> The depositions of all individuals and/or 30(b)(6) testimony which discuss or relate to Weather Shield's rot rates. Please include expert depositions to the extent they were taken.

Plaintiffs' Memorandum of Law in Support of their Motion to Compel Production of Weather Shield Documents, at 3.

The underlying facts for this Motion occurred in 1998, when the United States District Court for the Western District of Wisconsin denied the Defendant's Motion for Summary Judgment in the Weather Shield case, because it found that there was a material factual issue as to whether PILT caused increased rot in Weather Shield's windows. See, Weather Shield Mfg., Inc. v. PPG Industries, Inc., 1998 WL 469913 at *7 (W.D. Wis. 1998). A few weeks later, the Defendant, and Weather Shield, entered into a settlement of the case, at which time the Defendant wrote to this Court, stating

that, "[i]n connection with that settlement [of the Weather Shield Litigation], Weather Shield stipulated that after a review and analysis of the record, Weather Shield concluded that PILT was not defective and that there were actually fewer complaints on PILT-treated units than on non-PILT units."

Previously, in 1998, soon after the above events took place, the Defendant sought this Court's approval to reopen the 30(b)(6) deposition of a Weather Shield representative. The deposition was not for discovery purposes, but was intended to be in lieu of in-Court testimony. See, Marvins Lumber v. PPG Industries, Inc., Civ. No. 4-95-739, Minute Order, at 3 (D. Minn. July 22, 1998). The Plaintiffs opposed that Motion, and provided the same background which undergirds their current Motion. The Plaintiffs also asked that, if we allowed the deposition to be reopened, that the Defendant be ordered to provide it with the following information: all pleadings, Motions, briefs, affidavits, exhibits, and other materials filed by either of the parties; all documents produced and exchanged by the parties; all written discovery that was exchanged and any responses provided thereto; transcripts of all depositions; transcripts of all Hearings, and related proceedings; all expert reports and disclosures; all pretrial and/or trial submissions; and all other discovery materials that the Defendant and/or Weather Shield have generated with respect to the Weather Shield liti-

gation. See, Marvins' Memorandum of Law in Opposition to PPG's Motion to Reopen Weather Shield's Rule 30(b)(6) Deposition, at 6, Exhibit 4 attached to Affidavit of Teresa J. Kimker in Support of PPG's Memorandum in Opposition to Plaintiffs' Motion to Compel Production fo Weather Shield Documents.

Although we granted the Defendant's Motion to Reopen the Deposition, we also stated, in pertinent part:

> [W]hile we will allow the deposition to be taken, well in advance of the deposition, the Defendant shall disclose to the Plaintiffs the subject matter to which the Weather Shield deponent will testify, shall produce, for the Plaintiffs' inspection and copying, all of the factual bases for the deponent's testimony, and shall furnish the Plaintiffs with any Exhibits that the Defendant intends to offer through the testimony of the Weather Shield deponent.

See, Marvins Lumber v. PPG Industries, Inc., Civ. No. 4-95-739, Minute Order, at 3 (D. Minn. July 22, 1998).

The reopened 30(b)(6) deposition has yet to take place. Nonetheless, the Defendant has already advised that it intends to examine the Weather Shield witness about the subjects set forth in the Statement of Facts, that Weather Shield signed in connection with the settlement between the Defendant and Weather Shield in 1998, and it provided, in 1998, Marvins with a copy of that statement. The Defendant hopes the deposition will be conducted sometime in mid-September of 2001, and it agrees to provide the other documents, as previously ordered by this Court, at that time.

As the Defendant asserts, this is essentially the same request that the Plaintiffs made in 1998, and which we rejected. At that time, we did not grant the Plaintiffs such an expansive disclosure of evidence, and the Plaintiffs draw nothing to our attention which would warrant a retrenchment from our earlier ruling. Thus, we direct the Defendant to provide the documents, which relate to the testimony that Rule 30(b)(6) deponent is going to provide, at least two weeks prior to the scheduled deposition. Except to that extent, we deny the Plaintiffs' Motion to compel production of the Weather Shield documents.

D. The Defendant's Motion to Compel.

The Defendant's Motion to Compel is, in large part, a Motion to have the Plaintiffs supplement their previous discovery responses. Moreover, the Motion is largely moot as the Plaintiffs have agreed to produce most of the requested information. To the extent that the Plaintiffs have so agreed, they are directed to do so immediately, as the Trial of this case is quickly approaching. As a result, we will only address those portions of the Defendant's Motion which remain in dispute.

1. The Plaintiffs' Financial Documents, Including "Profit Analysis by Item" Reports or Equivalent Documents Showing Product Cost Information; "Profit Analysis by Customer" Re-

<u>ports; and "Unit Sales Analysis by Department" Reports or Similar Documents Showing the Plaintiffs' Sale of its Products by Unit</u>.

These particular documents are, apparently, no longer generated by the Plaintiffs' new computer system. While we agree with the Plaintiffs, that they cannot produce reports that they no longer generate, we find it difficult to comprehend, that the information, which is represented to be in these reports, are not now available in other forms, or reports, that are currently generated by the Plaintiffs' computers. Therefore, the Plaintiffs should be able to provide the Defendant with direction as to how to translate the reports and information, that are presently being generated, so as to isolate same types of information that the computers previously generated. Consequently, we direct the parties to "meet and confer" on this issue, in order to develop such a procedure, and we grant the Defendant's Motion to Compel, as to these documents, without prejudice to the Plaintiffs showing that no such conversion is possible.

2. <u>Documents Regarding the Plaintiffs' Customer Service and Warranty Expenses from Fiscal Year 1996 to the Present</u>.

This Motion requests the referenced documents, including all supporting detail related to year-end adjustments affecting the accrued warranty expense account, all supporting detail related to charges to all warranty expense accounts and all warranty legal

accounts, and all supporting detail related to charges to millwork research department expense accounts. While the Defendant agrees that the Plaintiffs have produced some of these documents, the documents have only listed block figures, whereas the Defendant claims that it needs the underlying detail. We agree that the Defendant is entitled to this information, and we again direct the parties to "meet and confer" in an attempt to expeditiously provide the requested detail. As we stated at the Hearing, however, if the requested detail is not located in one document, the Plaintiffs do not have to create such a document but, rather, must simply provide the Defendant with the information on how to glean the detail from other documents. Thus, the Defendant's Motion to Compel, in regard to these documents, is granted.

3. Copies of All Rot-Related Check Requests and Credit Memos from 1997 to the Present.

The Plaintiffs state that they have provided this information through the report of Marvins' expert, Don Gorowsky, and in the individual customer service complaint files. They also state that they will continue to provide these documents through the rolling production of the closed complaint files. However, the Defendant claims that there are many gaps in these records. Once again, we direct the parties to "meet and confer" on this issue, and we instruct the Defendant to identify where it has found gaps

in the records that have been produced to date. The Plaintiffs are directed to locate the records which the Defendant identifies as missing, or provide an explanation why the documents are no longer in their care, custody, or control. Thus, the Defendant's Motion to Compel, in this respect, is granted.

4. Rot-Related Documents and Complaint Records from Any Company the Plaintiffs' Stockholders Own in Whole or in Part, Including Integrity, Inc.

The Defendant requests all rot-related documents, and complaint records, from companies owned by Marvins' stockholders. In particular, this Motion is directed at a company named Integrity, Inc., which manufactures windows and doors in a plant located in Fargo, North Dakota. The windows and doors were never treated with PILT, and are of a fiberglass pultrusion construction, rather than being solely constructed of wood. Moreover, the windows and doors were not manufactured until almost five years after the time during which the PILT-treated Marvins' windows and doors were manufactured. Under these circumstances, we agree with the Plaintiffs that the requested documents are not relevant to this present case, as the product is not sufficiently similar, in construction, or in the manufacturing process, to relate to the products at issue here. Thus, the Defendant's Motion to Compel, with respect to these documents, is denied.

5. Documents Related to Lawsuits Against the Plaintiffs by the Plaintiffs' Customers.

The Defendant is seeking all documents relating to customer lawsuits against the Plaintiffs, by the Plaintiffs' customers, which relate to wood rot. The Defendant claims that these documents are related to: 1) the Defendant's alternative causation defense -- namely, that the rot in the Plaintiffs' windows is caused by faulty construction, installation, or maintenance techniques, and not to the failure of the Defendant's PILT preservative; 2) the Plaintiffs' damages claims; and 3) the extent to which the documents contain relevant judicial admissions. The Plaintiffs contend that they have produced, and will continue to produce, relevant information and documents, which are not protected by the attorney-client privilege, or the work product doctrine, for cases which are substantially similar to this case, and which relate to the relevant time period. Consequently, the Plaintiffs have limited their production to Complaints, Answers, Interrogatory Answers, and other documents, from lawsuits involving PILT-treated windows or doors. However, the Defendant requests all rot-related cases, and not just PILT related cases.

As we related at the Hearing, the burden which would be imposed upon the Plaintiffs, by the Defendant's request, would be staggering. The Plaintiffs related that, at any time, there are at

least fifty cases involving the Plaintiffs and PILT treated windows. The number would grow substantially for the other cases which the Defendant has requested -- namely, all cases involving rot complaints.

As we advised the parties at the Hearing, there is only so much you can prepare for prior to Trial, especially when the Trial of this case will commence in two months. With this in mind, we find that Defendant's last minute request for these documents attests to the relative insignificance of the information to be disclosed. If, as the Defendant contends, this information is fundamental to its defenses, we are satisfied the issue would have been exhausted years ago in the pretrial preparation of this case. However, we accept that some of the requested non-PILT, rot related cases may have relevance here. We will not, however, impose the burden on the Plaintiffs to produce all such cases, as they made abundantly clear that there is no central depository for the requested documents. Rather, we direct the Plaintiffs to compile a listing of cases involving non-PILT, rot related complaints, together with the file number of the case, and the venue in which the case pends. We anticipate that such a list will allow the Defendant to spot check the cases for the type of information that it is seeking. Thus, the Defendant's Motion to Compel, as to these documents, is granted to the extent we here allow.

E. The Plaintiffs' Motion to Compel Responses to Its Interrogatories and Request for Production of Documents from the Defendant's Foreign Subsidiaries.

The Plaintiffs seek documents from the Defendant's foreign subsidiaries which they believe are relevant to the instant case. In particular, the Plaintiffs believe that there are still documents which demonstrate that the Defendant provided warranties of future performance on its coating products, including PILT. Specifically, the Plaintiffs seeks documents regarding the following issues, from the Defendant's foreign and domestic subsidiaries:

> Warranties and other representations made by PPG concerning wood preservatives, including PILT;
>
> Testing and development of wood preservatives, including PILT;
>
> Complaints made by PPG customers concerning PPG's wood coatings and preservatives, including PILT; and
>
> Any other documents that concern and/or relate to wood preservatives, including PILT.

Plaintiffs' Memorandum of Law in Support of Motion to Compel Responses to Plaintiffs' Interrogatories and Requests for Production of Documents from PPG's Foreign Subsidiaries, at 4-5.

The Plaintiffs contend that these documents are relevant, as they will allow the Plaintiffs to attack the Defendant's witnesses who are expected to testify that no warranties of future performance

were ever extended by the Defendant on its wood preservatives generally, or on its PILT products, in particular.

The Defendant contends that it has provided all of the documents that it has discovered in its foreign and domestic subsidiaries regarding warranties to customers from TBTO PILT; the testing of TBTO PILT; and customer complaints of rot in products treated with TBTO PILT. The Defendant did note, however, that much of the testing done in Europe was not by the Defendant but, rather, by governmental agencies and, therefore, the Defendant does not have access to those documents, superior to the Plaintiffs' access. There was also one instance discovered during the Hearing in which the Defendant was not sure if it had produced certain documents, and it, therefore, agreed to follow-up on those specific documents. As a consequence, we instructed the Defendant to follow-up on those documents, and to report to the Plaintiffs, by August 16, 2001, with any information found. If the information it should find consists of a large volume of documents, we also instruct the parties to return to the Court for such further relief as may be appropriate.

Otherwise, we are obligated to accept the Defendant's representation, that it has searched for relevant documents, in its control or possession, and has produced those documents, as true. Both parties know that the potential sanction for anything less

than full disclosure is an instruction to the Jury on the "spoliation of evidence," unless a more draconian remedy is appropriate.[7] Therefore, we deny the Plaintiffs' Motion to compel responses to Plaintiffs' Interrogatories and Request for Production of Documents

---

[7]As we have previously expressed:

> [A]s a matter of practical reality, the Court must accept, at face value, a party's representation that it has fully produced all materials that are discoverable. See, [Marvin] Lumber v. PPG Industries, Inc., 168 F.R.D. 641, 643 n. 1 (D. Minn. 1996). As we have stated elsewhere, "we have no means to test the veracity of such avowals, other than to appropriately sanction a recalcitrant party for failing to responsibly honor its discovery obligations." Id. It continues to be our view that the failure to produce evidence, without just cause, which is relevant within the context of Rule 26, Federal Rules of Civil Procedure, bears a close relationship to the "spoliation of evidence," and should be sanctioned accordingly. See, Id., citing, Sylla Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 280 (8th Cir. 1995), cert. denied, --- U.S. ---, 116 S.Ct. 84 (1995); Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263, 267 (8th Cir. 1993); SDI Operating Partnership, L.P. v. Neuwirth, 973 F.2d 652, 655 (8th Cir. 1992); Scout v. City of Gordon, 849 F. Supp. 687, 690-91 (D. Neb. 1994); Capallupo v. FMC Corp., 126 F.R.D. 545, 551 (D. Minn. 1989); cf., Baker v. General Motors Corp., 86 F.3d 811, 817 (8th Cir. 1996), cert. granted, --- U.S. ---, 117 S.Ct. 1310 (65 USLW 3647 (U.S., March 24, 1997).

Onwuka v. Federal Express Corp., 178 F.R.D. 508, 514 (D. Minn. 1997).

The same cautionary applies here.

from the Defendant's Foreign Subsidiaries, except as provided herein.

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiffs' Motion to Compel Production of Information and Complaints Relating to Other PPG Customers [Docket No. 584] is GRANTED.

2. That the Defendant's Motion to Amend the Protective Order [Docket No. 578] is GRANTED.

3. That the Plaintiffs' Motion to Compel Depositions in Lieu of In-Court Appearances [Docket No. 609] is DENIED, and the parties are directed to present the witnesses, who designated by the opposing party, for in-Court testimony at Trial.

4. That the Defendant's Motion to Compel [Docket No. 580] is GRANTED, in part, and DENIED, in part.

5. That the Plaintiffs' Motion to Compel Production of Weather Shield Documents [Docket No. 584] is DENIED.

6. That the Plaintiffs' Motion to Compel Responses to Plaintiffs' Interrogatories and Request for Production of Documents from Defendant's Foreign Subsidiaries [Docket No. 584] is DENIED.

7. That the Plaintiffs' Motion to Compel Production of Documents Contained in Certain Boxes at the Oak Creek Door House, and

Other Similar Categories of Documents [Docket No. 584] is DENIED, as moot.

8. That the Plaintiffs' Motion to Compel Answers to their Interrogatory Nos. 1 and 15 of their Set X [Docket No. 584] is DENIED, as moot.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

Exhibit J

Holland & Knight

Tel 312 263 3600
Fax 312 578 6666

Holland & Knight LLP
131 South Dearborn Street, 30th Floor
Chicago, IL 60603
www.hklaw.com

September 15, 2004

CHRISTOPHER J. MURDOCH
312-578-6641

Internet Address:
chris.murdoch@hklaw.com

VIA FAX
The Honorable Susan Richard Nelson
Warren E. Burger Federal Building
Courtroom 764
316 North Robert Street
St. Paul, MN 55101

Re: The Rottlund Company, Inc. v. Pinnacle Corporation, et. al.
Case No. 01-CV-1980 (DSD/SRN)

Dear Magistrate Judge Nelson:

We submit this letter on behalf of Pinnacle Corporation in anticipation of the status conference currently scheduled for September 17, 2004. We have conferred with counsel for co-defendant Town & Country Homes, Inc., and they join in this letter.

In its September 13, 2004 letter, Rottlund identifies two issues it wishes to raise regarding Pinnacle and TCM at the status conference. First, it seeks reconsideration of this Court's ruling on August 18, 2004 regarding additional developments where Pinnacle or TCM are considering the construction and sale of Homestead, Chateau or Washington Square townhomes. Second, it seeks the production of additional financial documentation from Pinnacle and TCM supposedly for the purpose of reconvening Mr. Anderson and Mr. Sandelin's deposition.

## I. Identification of additional developments.

During the August 18, 2004 status conference, Rottlund claimed to have discovered that TCM was planning to offer Chateau townhomes at its Heritage Square development. Rottlund complained that defendants were obligated to identify the developments where it was planning to construct and sell back-to-back town homes, and also to produce all financial information relating to those developments. Specifically, Rottlund's counsel argued:

> But what we are suspect of is continually finding developments out there. These defendants need to continue to disclose where they are planning to build these particular townhomes. (Transcript of Proceedings, 45:5-9.)

The Court did not order the defendants to produce financial information relating to Heritage Square. Understandably concerned about the potential for expanding the scope of discovery, especially expert discovery, on the eve of trial, the Court instead ordered Pinnacle and TCM to identify *by development* where the Chateau has been built, has been contemplated, presold, "or where there has been any decision made by your clients to use the Chateau collection affirmatively

*in a location*, that would have to be disclosed." (Id., at 50:9-14) (emphasis supplied) Pinnacle and TCM complied by serving supplemental interrogatory answers identifying all locations or developments where it has made an affirmative decision to use the Chateau Collection, the Homestead Collection, or the Washington Square townhomes.

In its current letter, Rottlund misconstrues this Court's directive by claiming the Court ordered Pinnacle and TCM to provide updated information on the number of units constructed, sold and/or contracted, and all financial information regarding those units, for every development at issue. The Court never ordered Pinnacle or TCM to provide this information. Instead, it specifically ordered the defendants only to identify the developments where back-to-backs are being contemplated.

This Court already addressed Rottlund's concern that its damage claims at trial will necessarily not include the last few months immediately preceding the trial. At the August 18 status conference, this Court recognized that "Rottlund would be protected," by a post-trial (or appeal) hearing where the damages are adjusted. (Id., 57:1-17) If any additional discovery proves necessary in advance of that hearing, the Magistrate recognized that it could be provided for at that time.

The real issue facing this Court is not Rottlund's supposed need for up-to-the-minute financial information from the defendants. Any lag can easily be cured through a post-trial hearing. Instead, the real issue is the need to move this case to trial. In all cases discovery is stopped at a point in time that is dictated the Court's calendar. In this case, that time was several months ago. Pinnacle and TCM respectfully suggest that this Court deny Rottlund's attempt to have it reconsider the issue it thoroughly addressed at the last hearing.

## II. Anderson and Sandelin Depositions

On September 14, 2004 counsel for Pinnacle advised Rottlund that Mr. Sandelin is available for his deposition on Tuesday, September 21, or Wednesday, September 22, in Chicago. Rottlund was also advised that Mr. Anderson was available on September 21, 22 or 23. Rottlund responded that Pinnacle and TCM must update its financial documentation production before Rottlund could schedule either deposition. TCM and Pinnacle most recently updated its production of financial documentation on August 10, 2004.

There are two issues here. First, as Pinnacle argued at the August 18, 2004 status conference, the continued deposition of Mr. Sandelin should be limited to questions relating to his brochure file. This Court never resolved that issue, stating only, "I'm just going to hope that you folks can work that out." (Transcript, 18:19-21) In its letter, Rottlund now claims "the Court confirmed on August 18, 2004 that the Court ordered depositions of Steve Sandelin and Paul Anderson were not limited solely to the [brochure file]." This simply is not true.

Nor would it make any sense in the case of Mr. Sandelin. The only reason Mr. Sandelin's deposition is being reconvened a *fourth* time is because the brochure file was produced late. Rottlund does not explain why additional financial documentation must be produced before it

questions Mr. Sandelin again. Given that Mr. Sandelin is now a third party, and that Pinnacle is being ordered to reimburse Rottlund for all reasonable expenses relating to Mr. Sandelin's continued deposition, the examination should be ordered to proceed on September 21 or 22, and it should be limited to questions relating to the brochure file.

With regard to Mr. Anderson, Rottlund's demand for updated financial information is improper. As the Court indicated at the last status conference, at some point financial discovery must stop and the case must be advanced for trial. If the final damage figures need to be adjusted, it can be accomplished at a post-trial hearing. (Transcript, 44:7 -14) Rottlund's demand for yet another round of financial documentation production should be denied, and the deposition of Mr. Anderson should proceed.

**III. Defendants' Motion to Compel Responses to their Requests to Admit**

Pinnacle and TCM respectfully remind the Court that they are still waiting for a ruling on their request that Rottlund be ordered to provide legally sufficient responses to the defendants' requests to admit. The defendants first raised this issue in a letter brief dated November 17, 2003. The Court heard argument and took the matter under advisement, but never ruled. On May 4, 2004, the Court revisited the issue, stating "With respect to the request for a ruling on the requests for admissions, the Court believes that that ruling ought to be in writing and so I am going to provide a brief written ruling. I understand the need for it quickly given the June 15th hearing [on Rottlund's motion for partial summary judgment] and we'll try to prioritize that issue. (Transcript of Proceedings, 5/7/04, 37:21 – 38:3) The June 15th hearing was moved to July and held without the benefit of this Court's ruling.

The matter is still very much germane for at least two reasons. First, Rottlund's prior motion for partial summary judgment was limited to its technical drawings. At a minimum, a ruling on the requests to admit is vital to defendants' ability to obtain a fair trial on the copyrighted architectural structures. Second, as the Court is aware, Rottlund is seeking to recast its legal theory yet again by arguing that the copyrights for its first Villa are actually at issue.

Very truly yours,

HOLLAND & KNIGHT LLP

Christopher J. Murdoch

cc: David Davenport
Holly Newman
Darren Schwiebert
David Donna