UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| The Rottlund Company, Inc., d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Pinnacle Corporation, d/b/a Town & County Homes, an Illinois Corporation, Town & County Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br><br>and<br><br>Town & County Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**PINNACLE CORPORATION AND TOWN & COUNTRY HOMES, INC.'S RESPONSE TO ROTTLUND'S MOTION TO COMPEL ATTENDANCE OF WITNESSES AT TRIAL**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Defendants Pinnacle Corporation (Pinnacle) and Town & Country Homes, Inc. (TCM) jointly submit this memorandum in opposition to the motion of Rottlund Company Inc. (Rottlund) to compel the attendance of witnesses at trial.

## INTRODUCTION

For all its platitudes about the search for truth and the need for a level playing field, Rottlund never explains why it needs the testimony of defendants' employees (all of whom have been deposed and videotaped) to establish Rottlund's *prima facie* case. The fact is that Rottlund does not need this testimony to prove any element of its case-in-chief. Rather, it is asking this Court to provide Rottlund with a tactical advantage by ordering that defendants' witnesses be cross-examined *before* they are allowed to present direct testimony. Nothing in the Federal Rules of Civil Procedure or the case law cited by Rottlund supports a reversal of the order in which witnesses provide their testimony simply to give the plaintiff the upper hand.

Nor is there any precedent for Rottlund's alternative requests: that it be granted leave to re-depose these witnesses specifically for trial, or that the Court bar the defendants from calling these witnesses during their defense. Rottlund has known from the beginning that these witnesses were beyond the reach of a Rule 45 subpoena. If any of these witnesses are the sole source of evidence essential to the plaintiff's case, Rottlund could have, and presumably did, obtain the necessary testimony during their depositions. Rottlund can show those brief admissions via videotape during trial. The witnesses should not, however, be subjected to general cross-examination before they have a chance to provide direct testimony during the defendants' case-in-chief.

## ARGUMENT

### I. Rottlund's offer to produce its own out-of-state employees is a disingenuous ruse.

As an initial matter, Pinnacle and TCM must dispel the myth that "if this motion is granted, it will benefit *all* parties – not just Rottlund," because Rottlund also has employees who are beyond the range of a lawful subpoena. (Rottlund Mem., p. 3) The Rottlund employees

referred to are Mr. Jason Jorgenson and Mr. Stephen Theis. Based upon their deposition testimony, neither of these witnesses have anything relevant to say. Rottlund's offer to bring them to trial is not only a meaningless gesture, it shines a sorry light on one chapter in the long history of Rottlund's discovery abuses.

Messrs. Jorgenson and Theis were identified by Rottlund in interrogatory responses as having knowledge, *inter alia*, of "the substantial similarity between Defendants' infringing works and Plaintiffs' copyrighted works." (Affidavit of Christopher Murdoch, Ex. A, p. 20) In reliance on these interrogatory answers, counsel for Pinnacle and TCM traveled to Iowa to depose the two, only to discover that the interrogatory answers were substantially false. Neither Mr. Jorgenson nor Mr. Theis had any relevant knowledge. Mr. Jorgenson, for example, admitted that he has never seen the defendants' plans, townhomes, or even pictures of their townhomes. (Murdoch Aff., Ex. B, 24:5-15) Mr. Theis, on the other hand, testified:

> Q. Have you ever seen Town & Country Homes collection of product that is at issue in this case?
>
> A. No, I have not.
>
> Q. Have you seen any photos of it?
>
> A. No.
>
> Q. Any plans?
>
> A. No.
>
> Q. None. And you haven't seen the building?
>
> A. No.
>
> Q. So it would be true you would have no information about the substantial similarities between Defendants' villa product -- excuse me – the Defendants' homestead product and Plaintiff's villa product?
>
> [Objection]

A. There was a third-party comment. That would be the only other thing that I knew.

Q. What third-party comment were you referring to?

A. The paralegal at our local attorney's office's brother worked for Midwestern Interiors and said that Town & Country had very similar product.

(Murdoch Aff. Ex. C, 60:11-61:10)

In short, the employees Rottlund offers up as a *quid pro quo* for Pinnacle and TCM's employees have no useful information and Rottlund knows it. Not only did Rottlund mislead the defendants into taking the depositions of these witnesses, it now tries to mislead the Court into believing the instant motion will help all parties. This simply is not true; the only parties disadvantaged by Rottlund's request will be the defendants.

## II. The witnesses at issue are beyond the jurisdictional reach of a Rule 45 subpoena.

Rottlund seeks an order compelling the appearance of three of defendants' employees (Tom Ryan, Mike Ryan and Paul Anderson), and one former employee (Steve Sandelin). Tom Ryan resides in Illinois and is the President of Pinnacle. (Murdoch Aff., Ex. D, 216:8-11) Pinnacle's offices are in Lombard, Illinois. (Id., 150:18-25) Tom Ryan is a shareholder of TCM, but does not sit on any board. (Id., 220:5-24) The shareholders meet at regular intervals in Illinois. (Id.)

Mike Ryan resides and works in Illinois. (Murdoch Aff. Ex. E) He is the CEO of TCM, but his office is not in Minnesota. (Id., Ex. F 68:16-69:8) As CEO, he delegates the vast majority of the day-to-day responsibilities for TCM to the President who lives and works in Minnesota. (Id.) Today, that is Mr. Art Plante, the company President. (Id. 73:22-74:2) Mr. Plante's office is in Minnesota and he is expected to appear at trial.

Paul Anderson lives and works in Illinois. He is employed as the chief financial officer of both Pinnacle and TCM. (Murdoch Aff. Ex. G, 54:15-18) Only twenty percent of his time is devoted to TCM, and of that ninety percent of the work is performed in Illinois. (Id., 55:3-56:19) At deposition Mr. Anderson estimated that he travels to Minnesota as needed, but no more than three days every six weeks. (Id., 55:24-56:2)

Mr. Sandelin is a different issue altogether. Formerly employed by Pinnacle, Mr. Sandelin now works for a third party. (Murdoch Aff., Ex. H, 10:15-22) Thus, Mr. Sandelin is neither an officer nor an employee of a party, and is no longer under the control of Pinnacle or TCM. He resides in Illinois.

None of these individuals can be properly served with a trial subpoena pursuant to Fed. R. Civ. P. 45. The Rule provides that "A subpoena commanding attendance at a trial or hearing shall issue from the court for the district in which the hearing or trial is to be held," and that "a subpoena may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the . . . trial." Fed. R. Civ. P. 45(a)(2), (b)(2). In other words, lawful trial subpoenas can only be issued by this Court and must be served within Minnesota. Rottlund's citation to 45(c)(3)(A) is irrelevant; that provision deals with quashing a lawfully served subpoena.

Rottlund apparently understands the jurisdictional limits on the service of trial subpoenas, because it has not attempted to serve any. As the Seventh Circuit opined when it affirmed the District Court's refusal to order witnesses to appear at trial, this failure to follow the rules is telling:

> Fed. R. Civ. P. 45(a) provides a simple procedure: a litigant asks the clerk of the district court (*not* the district judge) to command someone to attend trial and give testimony. The judge has the power to enforce the subpoena if the witness opposes the demand to appear. Maybe McGill knew (or feared) that the three

defendants were outside the court's subpoena power, which under Rule 45(e)(1) is limited to its district and a 100-mile radius around the courthouse.

*McGill v. Duckworth*, 944 F.2d 344, 353-4 (7th Cir. 1991) (emphasis in original).

For its part, the only authority Rottlund can muster in support of its request that the Court depart from the Federal Rules is an unpublished opinion by Magistrate Erickson in another Winthrop & Weinstine case, *Marvin Lumber and Cedar Company v. PPG Industries, Inc.*, Civ. No. 4-95-739 (DWF/RLE). In that case, however, it was apparent that the testimony of the defendant's witnesses would constitute the bulk of the plaintiff's case-in-chief. That is not the case here, where Rottlund has failed to identify any aspect of its case that can only be supported by testimony from the defendants (and that it was not able to obtain during its thorough videotaped depositions of these witnesses).

Rottlund also cites *In re San Juan Dupont Plaza Hotel Fire Litigation*, 129 F.R.D. 424 (D. Puerto Rico 1989), for the proposition that Rule 45 is not meant to confer advantages on parties. (Rottlund Mem., p. 9) In *San Juan*, however, the Court did not order the defendants witnesses to appear at trial. Instead it ordered the plaintiffs to pay for satellite transmission of any testimony it sought. Moreover, as in *Marvin Windows*, the testimony of defendants' employees was vital to the plaintiffs' case-in-chief. Moreover, the Court in *San Juan* specifically found "the lack of any true prejudice to the defendants." 129 F.R.D. at 426.[1]

In the final analysis both *Marvin Window* and *San Juan* stand for the simple proposition that "over parties, the Court has all kinds of leverage." Fed. R. Civ. P. 45, Practice Commentaries, at C45-13. Pinnacle and TCM acknowledge this reality. The issue, however, is

---

[1] Rottlund also cites *Beltran-Tirado v. I.N.S.*, 213 F.3d 1179 (9th Cir. 2000), *Alderman v. S.E.C.*, 104 F.3d 285 (9th Cir. 1997), and *Official Airlines Guide, Inc. v. Chirchfield Publications, Inc.*, 756 F. Supp. 1393 (D. Or. 1990), because telephonic testimony was allowed in each case. What Rottlund fails to disclose is that in each case the issue was whether a party who offered its own witnesses via telephone violated the opposing party's right to cross examination. In no case did the Court order an opposing party to produce its own employees via telephone simply because the movant asked for it.

why the Court should use this leverage to Rottlund's advantage when Rottlund has not even attempted to justify its request. Rottlund's motion is a transparent attempt seize a tactical edge by conducting the first examination of defendants' witnesses. Pinnacle and TCM plainly will be prejudiced if the Rules are turned on their head so that Rottlund can cross examine the defendants' witnesses before they are allowed to provide direct testimony.

## III. Rottlund's request for "trial depositions" is unsupported by any legal authority.

In the alternative, Rottlund suggests that it be allowed to reconvene the depositions the defendants' employees so it can conduct "trial depositions." In support of this novel request, Rottlund relies on Fed. R. Civ. P. 32(a)(3)(B), which merely provides that depositions can be used when the witnesses are beyond the reach of a lawful subpoena. It does not provide any authority for a party to reconvene a deposition simply to memorialize a trial examination.

Rottlund's case citations are even more misleading. In *Nationwide Mutual Fire Ins. Co. v. Dunkin*, 850 F.2d 441 (8th Cir. 1988), the court allowed a party to conduct a "trial deposition" of *its own expert witness* because the witness (a doctor) was unable to remain available throughout the trial. At issue was the opposing party's objection that the witness was within 100 miles of the courthouse, so Rule 32 prohibited the use of his deposition. In *Starr v. J. Hacker Co.*, 688 F.2d 81 (8th Cir. 1982), and *Daigle v. Maine Medical Center, Inc.*, 14 F.3d 684 (1st Cir. 1994), the issue was the same. These decisions do not stand for the proposition that a party may convene a second deposition of an adverse witness after learning that he will not voluntarily appear for cross examination during the plaintiff's case-in-chief.

In all of the cases cited by Rottlund, the use of "trial depositions" was limited to a party deposing its own witness to preserve testimony because the witness was likely to become

unavailable during trial. Here, Rottlund wants to re-depose defendants' witnesses (in some cases for the fourth time) specifically for trial. There is no precedent or justification for this demand.

### III. The Court should set limits on the completion of the depositions of Paul Anderson and Steve Sandelin.

Separate and apart from the question of "trial depositions," the depositions of Paul Anderson and Steve Sandelin have not been completed. Mr. Anderson was deposed twice as a Rule 30(b)(6) witness and once in his individual capacity. Even though Mr. Anderson has already sat for more than twelve hours of questioning, Rottlund recently asked the Magistrate to reopen Mr. Anderson's individual deposition because it had "only" been five and one-half hours long. The Magistrate has entered an Order allowing Rottlund an additional seven hours to question Mr. Anderson.

It is clear from Rottlund's instant Motion that during these additional seven hours it intends to rehash areas already covered in order to conduct its "trial deposition" of Mr. Anderson. Defendants object to this ploy. Pinnacle and TCM formally request that Rottlund be instructed not to re-plow old ground, and that valid "asked and answered" objections shall be the basis for an instruction not to answer.

As for Mr. Sandelin, the issue is somewhat different. Pinnacle volunteered to make Mr. Sandelin available for additional questioning in order to cure any prejudice that might have been caused by Mr. Sandelin's untimely disclosure that he had four Rottlund brochures in his files. (This disclosure was the subject of the Magistrate's Order entering sanctions that is currently on appeal before this Court.) The Magistrate has ordered that Rottlund should be reimbursed by Pinnacle for any fees and expenses incurred during this curative deposition.

In the instant motion, Rottlund grossly misrepresents the Magistrate's Orders regarding Mr. Sandelin's deposition when it argues that she decided he be "redeposed" for seven hours (all

presumably at Pinnacle's expense).[2] In fact, this very issue came up before the Magistrate. Far from confirming that her prior Order required that he be redeposed, which she surely would have if that was the intent, the Magistrate refused to grant Rottlund the relief it sought:

> COUNSEL FOR ROTTLUND: Your Honor, this is Mr. Davenport. I had one final point. I apologize for the long pause there. It was a question as it related to your order concerning Mr. Sandelin. I'd like to make sure that we're not necessarily limited to asking questions just about what was in that box. There may be some questions that we need to follow up on as they relate to that box. And also, very much like the BSB issue that came about here, we are videotaping depositions, we have prior testimony, things may have to be reworked and reordered with respect to those types of questions.
>
> MAGISTRATE JUDGE NELSON: Well, I'm just going to hope that you folks can work that out.
>
> (Murdoch Aff., Ex. H, 18:4-21)

Now, just six weeks later, Rottlund informs this Court that the Magistrate's "clear directive" was that Rottlund be permitted to conduct a brand-new, seven hour examination, bringing Mr. Sandelin's total time in the witness chair to *twenty-two* hours. This is nothing short of abusive. The purpose of continuing Mr. Sandelin's deposition, which was voluntarily offered by Pinnacle, was to allow Rottlund to question him on the late-produced documents. Now that its toe is in the door, Rottlund wants full access and *carte blanche* to question Mr. Sandelin on any topic it chooses. Pinnacle requests that Mr. Sandelin's reconvened deposition be limited to questions about the late produced brochures.

## IV. Rottlund's request to bar defendants from calling witnesses it refuses to offer voluntarily for plaintiff's case-in-chief is meritless.

Finally, Rottlund audaciously misrepresents legal precedent when it asserts, "[i]t is well settled that testimony from a witness in a defendant's case-in-chief is precluded if upon request

---

[2] It is worth noting that in every case Rottlund cites where a trial deposition was taken or witnesses were ordered to appear at trial or by satellite, the party demanding the testimony had to pay all costs and expenses. If that were to occur here, it would follow that Rottlund should pay all expenses associated with "trial depositions" or the production of witnesses at trial.

by a plaintiff that witness refuses to appear at trial in plaintiff's case-in-chief." (Rottlund Mem., p. 12) For support, Rottlund cites to the Court the Seventh Circuit's decision in *Traylor v. Husqvarna Motor*, 988 F.2d 729 (7th Cir. 1993). *Traylor*, however, stands for nothing of the kind. In fact, this issue did not even arise in *Traylor*.

In *Traylor*, the defendant's expert gave direct testimony on a Friday and then announced that he was unavailable for cross-examination on Monday. The district court ordered that the expert's cross-examination be videotaped on Saturday and then played for the jury. The Seventh Circuit disapproved, holding, "Although we have no objection to videotaped testimony and do not believe that the fact that this witness's direct testimony was live and his cross-examination taped was reversible error, we do think this sort of 'dual media' testimony is generally, and was in this instance, a bad idea." 988 F.2d at 734. Rottlund grossly distorts the opinion when it cites it for the proposition that

> "A defendant's presentation of a live witness in its own case-in-chief while precluding another party from calling the witness live during its own case-in-chief for cross examination 'give[s] artificially great salience on the part of the [witnesses] examination that favored [defendant] than to the part that favored its opponent.' *Traylor*, 988 F.2d at 734."

(Rottlund Mem., p. 12) The Seventh Circuit never addressed this issue, let alone ruled the way Rottlund claims.

Rottlund's other citations on this issue are equally disheartening. It cites *San Juan* as "finding that the defendant's decision not to voluntarily produce witnesses under its control 'automatically' precluded them [sic] from presenting those witnesses in person during their [sic] case-in-chief." (Rottlund Mem. p. 12) What Rottlund fails to tell the Court is that the preclusion was "automatic" because it was pursuant to a prior pretrial scheduling order. 129 F.R.D. at 425.

Thus, far from being a "well-settled" rule, the decision was unique to that case. Finally, the Court in *Marvin Lumber* is simply silent on the issue of precluding witnesses; it never came up.

The Court should not countenance this manner of misleading advocacy. Pinnacle and TCM should not be faced with the Hobson's choice of offering up its employees for preemptive cross examination or foregoing valuable defense testimony. Nothing in the Rules or the case law supports this demand.

## CONCLUSION

Pinnacle and TCM request that Rottlund's motion be denied in all respects. Pinnacle and TCM should not be ordered to produce their employees at trial for cross-examination by Rottlund during its case-in-chief. Nor should they be barred from brining these witnesses to trial to testify for the defense. Furthermore, Rottlund should not be permitted to question Mr. Anderson during the fourth session of his deposition on topics that have already been covered. Mr. Sandelin's continued deposition should be limited to topics related to the brochures that were tardily produced.

Dated: October 8, 2004

Respectfully Submitted,

By: s/Christopher Murdoch

Edward F. Ryan
Christopher J. Murdoch
Matthew I. Farmer
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th Fl.
Chicago, IL 60603
Telephone: (312) 263-3600
Facsimile: (312) 578-6666

ATTORNEYS FOR DEFENDANT
PINNACLE CORPORATION

AND

s/Darren B. Schwibert
Daniel J. Maertens (#188311)
Cynthia Jokela Moyer (#211229)
Darren B., Schwiebert (#0260642)
FREDRIKSON & BYRON, P.A.
200 South sixth Street #4000
Minneapolis, MN 55402
Tel. (612) 492-712
Fax (612) 492-7077

# 2302679_v1