Court File No. 01-1980/Rottlund/Pinnacle
Murdoch Affidavit dated October 08, 2004

EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

FOURTH DIVISION

THE ROTTLUND COMPANY, INC. )
d/b/a ROTTLUND HOMES, A )
MINNESOTA CORPORATION ) No. 01-CV-1980
)
Plaintiff )
) DEPOSITION OF
vs. ) JASON JORGENSON
)
PINNACLE CORPORATION )
d/b/a TOWN & COUNTRY HOMES, )
AN ILLINOIS CORPORATION, )
TOWN & COUNTRY HOMES, INC., )
A MINNESOTA CORPORATION, )
BLOODGOOD SHARP BUSTER ARCHITECTS & )
PLANNERS OF IOWA, INC., AN IOWA )
CORPORATION, AND THE BLOODGOOD )
GROUP, INC., AN IOWA CORPORATION )
)
Defendants )
)
and )
)
TOWN & COUNTRY HOMES, INC., )
A MINNESOTA CORPORATION )
)
Third-Party Plaintiff )
)
vs. )
)
BLOODGOOD SHARP BUSTER ARCHITECTS & )
PLANNERS OF IOWA, INC., AN IOWA )
CORPORATION )
)
Third-Party Defendant )

Reported by: Connie Overberg, RPR, CSR

DULANEY COURT REPORTING (515) 225-9421
10943 Hickory Drive, Clive, Iowa 50325

* * * *

DEPOSITION OF JASON JORGENSON taken before Connie Overberg, a Certified Shorthand Reporter and Notary Public in and for the State of Iowa, on August 22, 2003, commencing at 9 a.m., at Fairfield Inn and Suites, 7225 Vista Drive, West Des Moines, Iowa.

* * * *

Q. And we have already talked about the different versions of villas that are built, gardens are town home?
A. Yes.
Q. Back-to-back or see-through?
A. Both. I am sorry. Gardens would all be back-to-back.
Q. And vistas?
A. Those are see-through or a row type town home.
Q. And cottages?
A. Cottages are similar to the craftsman. Detached town homes and the garden town homes are a row type of town home.
Q. The gardens and the garden town homes are two different things?
A. Yes.
Q. And so while Mr. Harris was the production manager for Rottlund, he would have overseen all projects for Rottlund that you would have just listed?
A. Yes.
Q. Are there any product lines on a list that you have given that have been discontinued in Iowa?
A. We are not currently building cottages.

Court File No. 01-1980/Rottlund/Pinnacle
Murdoch Affidavit dated October 08, 2004

EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

THE ROTTLUND COMPANY, INC. )
d/b/a ROTTLUND HOMES, A )
MINNESOTA CORPORATION ) No. 01-CV-1980
)
Plaintiff )
) DEPOSITION OF
vs. ) STEVEN THIES
)
PINNACLE CORPORATION )
d/b/a TOWN & COUNTRY HOMES, )
AN ILLINOIS CORPORATION, )
TOWN & COUNTRY HOMES, INC., )
A MINNESOTA CORPORATION, )
BLOODGOOD SHARP BUSTER ARCHITECTS & )
PLANNERS OF IOWA, INC., AN IOWA )
CORPORATION, AND THE BLOODGOOD )
GROUP, INC., AN IOWA CORPORATION )
)
Defendants )
)
and )
)
TOWN & COUNTRY HOMES, INC., )
A MINNESOTA CORPORATION )
)
Third-Party Plaintiff )
)
vs. )
)
BLOODGOOD SHARP BUSTER ARCHITECTS & )
PLANNERS OF IOWA, INC., AN IOWA )
CORPORATION )
)
Third-Party Defendant )

Reported by: Connie Overberg, RPR, CSR

DULANEY COURT REPORTING (515) 225-9421
10943 Hickory Drive, Clive, Iowa 50325

had a code issue we would talk to him in particular.
Q. Other than -- instead of Tim Whitten, you would talk with Tim Johnson?
A. Sure. That was several years ago.
Q. Other than your knowledge that there were these named employees who used to work for Rottlund that ended up working for Town & Country Homes, do you have any other knowledge of Town & Country Homes access to Plaintiff's copyrighted works?
A. No, I don't.
Q. Have you ever seen Town & Country Homes collection of product that is at issue in this case?
A. No, I have not.
Q. Have you seen any photos of it?
A. No.
Q. Any plans?
A. No.
Q. None. And you haven't seen the building?
A. No.
Q. So it would be true you would have no information about the substantial similarities between Defendants' villa product -- excuse me -- the Defendants' homestead product and Plaintiff's villa product?
MR. KRUMMEN: Same objection. You may

answer.

THE WITNESS: I may answer?

MR. KRUMMEN: Sure.

A. There was a third-party comment. That would be the only other thing that I knew.

Q. What third-party comment were you referring to?

A. The paralegal at our local attorney's office's brother worked for Midwestern Interiors and said that Town & Country had very similar product.

Q. All right. Let me try to chase that line. The paralegal at Rottlund's local attorney's office?

A. Yes. Her brother worked for Midwest Home Interiors.

Q. What is the paralegal's name, please?

A. Debbie. I don't know her last name.

Q. What firm?

A. Barnhill & Associates.

Q. Barnhill?

A. Uh-huh, yes.

Q. Do you know if Debbie still works for Barnhill?

A. Yes.

Q. And do you know Debbie's brother's name?

Court File No. 01-1980/Rottlund/Pinnacle
Murdoch Affidavit dated October 08, 2004

EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

THE ROTTLUND COMPANY, INC.,
d/b/a Rottlund Homes, a
Minnesota Corp.,
Plaintiff,
vs Case No. 01 CV 1980
PINNACLE CORPORATION, d/b/a
TOWN & COUNTRY HOMES, an
Illinois Corp., TOWN &
COUNTRY HOMES, INC., a
Minnesota Corp., BLOODGOOD
SHARP BUSTER ARCHITECTS &
PLANNERS OF IOWA, INC., an
Iowa Corp., and THE
BLOODGOOD GROUP, INC., an
Iowa Corp.,
Defendants.
------------------------------
TOWN & COUNTRY HOMES, INC.,
a Minnesota Corp.,
Third-Party Plaintiff,
vs
BLOODGOOD SHARP BUSTER
ARCHITECTS & PLANNERS OF
IOWA, INC., an Iowa Corp.,
Third-Party Defendant.

The deposition of TOM RYAN taken pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, at One Pierce Place, Suite 295-E, Itasca, Illinois, commencing at 8:55 a.m, on the 9th of December 2003.

REPORTED BY TERRI A. CLARK

CSR LICENSE NO. 084-001957

about earlier.

Q. I don't want to waste time, let's move on to the next exhibit then.

(WHEREUPON, Deposition Exhibit No. 283 was marked for identification.)

Q. Mr. Ryan, before you is Exhibit No. 283, it's a report on the cover page from Tracy Cross Associates dated March 19, '95 prepared on behalf of Town & Country Homes, Inc.

The Bates label is PINN 3047 on the front page and on the last page it's PINN 3095. Did I accurately describe Exhibit 283?

A. Yes.

Q. Is Town & Country Homes, Inc. located in Oak Brook, Illinois today?

A. Town & Country Homes, the Pinnacle Corporation is in Lombard, Illinois.

Q. Was it in Oak Brook back in

conducted. Do the different Minnesota
-- strike the question.
Do the different entity
leaders, if you will, stand up and
make reports about how either
Minnesota, Illinois or Florida are
doing?
A. No, only that Mike reports
on Minnesota and Florida. And I am
president and CEO of Chicago so I
report as both, as both titles.
Q. Are the financial statements
that you receive as a shareholder
consolidated financial statements or
do you receive three separate ones,
one for Illinois and one for
Minnesota and one for Florida?
A. There are separate line
items on a single sheet of paper
typically.
Q. Do division presidents ever
come in and make reports, for
example, does Art Plante ever come to
the shareholder meetings and make

homes on and you called that the Homestead parcel, correct?
A. Correct.
Q. Then there is a big parcel called Washington Square, but it's really two different parcels, one deals with the manor townhomes and one deals with row townhomes; correct?
A. Correct.
Q. Are manor townhomes back-to-back?
A. Yeah, I guess as people consider back-to-back. I consider them both. I consider them, you have got four buildings I believe that are six units, otherwise the other ones are four. So you can call them back-to-back quad, quad, whatever you want to call them.
Q. So if there are 72 units out there you're telling me that 24 of the 72 units are in six unit configurations, correct?
A. Correct, yes.

Court File No. 01-1980/Rottlund/Pinnacle
Murdoch Affidavit dated October 08, 2004

EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Rottlund Company, Inc.,
d/b/a Rottlund Homes,
a Minnesota Corporation,

Civil Action No. 01-CV-1980 DSD/SRN

Plaintiff,

v.

Pinnacle Corporation,
d/b/a Town & Country Homes,
an Illinois Corporation.

Defendants.

---

**AFFIDAVIT OF MICHAEL J. RYAN SUBMITTED WITH PINNACLE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

---

Michael J. Ryan, being first duly sworn on oath, states and deposes as follows:

1. I am Chief Executive Officer of Town & Country Homes, Inc., a Minnesota corporation ("TCM"). TCM's principle offices are located in Eden Prairie, Minnesota. TCM, however, also has officers and/or employees in Illinois who perform various administrative functions.

2. I am also Chief Executive Officer of Pinnacle Corporation, an Illinois corporation ("Pinnacle").

3. Pinnacle and TCM share common ownership, and are sometimes described as affiliated corporations or sister corporations. However, Pinnacle is not the parent of TCM, and TCM is not a subsidiary of Pinnacle or of any other company. Each entity takes great care to maintain their respective businesses as independent corporations.

4. Pinnacle and TCM are sometimes referred to as "divisions." Such references are for marketing purposes to indicate that they are sister corporations sharing common ownership and a common CEO. Having common ownership and a common CEO means that TCM can legitimately use and market the experience of its sister corporation.

5. Pinnacle retains the services of Triton-Tek of Chicago, Illinois, to manage its website, located at URL http://www.townandcountryhomes.com. The Pinnacle website has a hyperlink to TCM's website, but TCM, not Pinnacle, originated TCM's website, owns it and controls its content.

6. As CEO of TCM, I necessarily am involved in various aspects of TCM's business. For instance, at the request of Art Plante, TCM's president, I will occasionally interview high level job candidates in my capacity as TCM CEO. Also in my capacity of TCM CEO, I occasionally travel to Minnesota, participate in decisions regarding housing development projects and the like. However, I keep distinct my work as CEO for TCM from my work as CEO for Pinnacle.

7. Paul J. Anderson is Chief Financial Officer for TCM. Mr. Anderson's office is located in Illinois. TCM's payroll is processed in Illinois, but the payer is TCM, as TCM is the employer of TCM's employees.

8. Peter J. Brennan is General Counsel for TCM. Mr. Brennan's office is also located in Illinois.

Dated: February ___, 2002

Michael J. Ryan

Subscribed and sworn to before me this 8th day of February 2002.

Notary Public

"OFFICIAL SEAL"
Karen Blake
Notary Public, State of Illinois
My Commission Expires Oct. 6, 2003

::ODMA\PCDOCS\FBDOCS1\2618402\1

Court File No. 01-1980/Rottlund/Pinnacle
Murdoch Affidavit dated October 08, 2004

EXHIBIT F

00001

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

THE ROTTLUND COMPANY, INC.,
d/b/a Rottlund Homes,
a Minnesota Corporation,
Plaintiff,

vs.

PINNACLE CORPORATION, d/b/a
Town & County Homes, an Illinois
Corporation; TOWN & COUNTRY HOMES,
INC., a Minnesota Corporation;
BLOODGOOD SHARP BUSTER
ARCHITECTS & PLANNERS OF IOWA, INC.,
an Iowa Corporation; and the
BLOODGOOD GROUP, INC., an Iowa
Corporation
Defendants. No. 01-CV-198
(DSD/SRN)

-------------------------------------
TOWN & COUNTRY HOMES, INC., a
Minnesota Corporation,
Third-Party Plaintiff,

vs.

BLOODGOOD SHARP BUSTER
ARCHITECTS & PLANNERS OF IOWA, INC.,
an Iowa Corporation,
Third-Party Defendant.

Deposition of MIKE RYAN, called as a witness herein, pursuant to the applicable provisions of the Federal Rules of Procedure governing the taking of depositions, taken before Deborah Habian, CSR No. 084-002432 on December 11, 2003, at 9:07 o'clock a.m. at M & M Reporting Legal Services, One Pierce Place, Suite 295-E, Itasca, Illinois.

00068

A. That's my memory, yes.
Q. Did Mr. Al Block report to Mr. Bill Ryan after Al Block took over Minnesota but before Bill Ryan left Town & Country?
A. I believe so.
Q. Did Al Block ever report to you after Bill Ryan left Town & Country?
A. That's where I'm not sure of -- at some point, Al moved to Denver with another company. And I don't remember the timing of that, so I don't remember if it was Al or if it was Tom Crosson.
Q. When Mr. Bill Ryan left the company, did you have ultimate responsibility for Town & Country Minnesota?
A. Yes.
Q. So sometime in 1997, you were running both Town & Country Illinois and Town & Country Minnesota, correct?

00069

A. Well, I was running Pinnacle, and somebody, either Al or Tom, was responsible for running Minnesota.

Q. They ran it, but they ultimately reported to you, correct?

A. They had to report to me, yes.

Q. Whereas when you were running Town & Country Illinois, you didn't report to anyone, you were the lead dog, so to speak, correct?

A. You know, I reported to the shareholders.

Q. Okay.

A. Yeah.

Q. Let's focus on Tom Ryan, your brother, leaving Town & Country Minnesota and Al Block takes over as Minnesota President. Are you with me so far?

A. Yes.

Q. That lasted for approximately how long before Tom

00070

Crosson took over Minnesota?

A. Again, I don't really remember those time frames because that's when Bill was running things and I was kind of asked to step aside, so I don't really remember the length of time that Al was up in Minnesota.

Q. Al was reporting to your brother Bill while Al was running the Minnesota division of Town & Country, correct?

A. I believe so.

Q. Was there ever a time when Al Block reported to you while he was running Town & Country of Minnesota?

A. I don't remember the transition, so I don't remember if it was Al or Tom.

Q. Then Al Block leaves Town & Country of Minnesota and Tom Crosson takes over Town & Country of Minnesota, correct?

A. That's correct.

00071

Q. This is probably in that '95 through '97 time frame somewhere, correct?

A. I don't remember the transition for Tom, I don't know if it was '97 or earlier, I don't remember exactly.

Q. What you do remember though is that you ultimately in charge of Town & Country Minnesota, not your brother Bill, at the time Tom Crosson was running the Town & Country division?

MR. MURDOCH: Objection to form.

THE WITNESS: I don't remember the timing of Tom Ryan to Al Block to Tom Crosson. I know for sure that when Art Plant was asked to move up to Minnesota, he was reporting to me. That, I know for sure.

I don't remember the Tom and Al days exactly because I'm

00072

the one that asked Art to move up there and run that company.

BY MR. KRUMMEN:

Q. So we do know that the sequencing of the Town & Country Minnesota division is as follows: It was started and initially run by Tom Ryan, correct?

A. That's correct.

Q. At some point in time prior to 1997, Mr. Al Block took over as the Minnesota division President, correct?

A. Prior to '97, yes.

Q. And he reported to your brother Bill Ryan?

A. Correct.

Q. Then after that, Tom Crosson took over prior to 1997 of the Minnesota division, correct?

A. He took over after Alan, before Art.

Q. Right. And Mr. Crosson may have reported to your brother Bill in

00073

part, he may have reported to you in part?

A. Correct.

Q. You're just not sure?

A. Correct.

Q. And then after Tom Crosson, we're into 1997, and Art Plant took over the Minnesota division at your request and reported directly to you, correct?

A. That's correct.

MR. KRUMMEN: Let's take a break.

VIDEOGRAPHER: We are now going off the record, and the time is 10:07 a.m.

(Break taken.)

VIDEOGRAPHER: We're now back on the record, and the time is 10:19 a.m.

BY MR. KRUMMEN:

Q. Mr. Ryan, I believe you indicated that sometime in 1997 you asked Mr. Art Plant to take over the

00074

Minnesota division, correct?

A. That's correct.

Q. Why did you ask Mr. Art Plant to take over the Minnesota division?

A. Because when I hired Art, I knew that he had an experience with -- at least with Ryeland Homes back on the East Coast of running a home building company.

We brought him in as a Project Manager, and he did project management -- or we used the term Operation Manager as well, that's kind of the same thing, and he ran our Purchasing Department for awhile.

And I just knew after watching Art that he was -- after working with him, you know, for a number of years, that he was capable of running a home building company.

Q. So we're up to 1997 in this deposition, and I think you just told me that Art Plant had been hired by

Court File No. 01-1980/Rottlund/Pinnacle
Murdoch Affidavit dated October 08, 2004

EXHIBIT G

00001

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

FOURTH DIVISION

THE ROTTLUND COMPANY, INC., )
d/b/a ROTTLUND HOMES, a Minnesota)
Corporation, )
Plaintiff, )
v. )
PINNACLE CORPORATION )
d/b/a TOWN & COUNTRY HOMES, )
an Illinois corporation, and )Case No.:
TOWN & COUNTRY HOMES, INC., )01-CV-1980 DSD/SRN
a Minnesota Corporation, )
Defendants. )
---------------------------------)
TOWN & COUNTRY HOMES, INC. )
A Minnesota Corporation, )
Third-Party Plaintiff, )
v. )
BLOODGOOD, SHARP, BUSTER )
ARCHITECTS & PLANNERS OF IOWA, )
an Iowa Corporation. )
Third-Party Defendant. )

The deposition of Paul Anderson, called by the Rottlund Company, Plaintiff, taken pursuant to the provisions of the Federal Rules of Evidence and Civil Procedure pertaining to the taking of depositions, before KATRINA M. BEAUDIN, CSR, RMR, CRR, at M & M Reporting, Inc., One Pierce, Suite 295-E, Itasca, Illinois, on the 17th day of December, 2002, at 9:12 a.m.

00054

Q. Okay. So you are generally familiar with, for example, Town & Country Homes, Inc.'s document retention policy?

A. Yes.

Q. Is that correct even though that entity operates in Minnesota?

A. Yes.

Q. And how is it that you are familiar with their document retention policy, you office in Illinois, correct?

A. But I'm CFO for that company.

Q. Okay.

A. And we'll visit that company on a regular basis.

Q. And your CFO work for Town & Country Homes, Inc., that's typically conducted out of your Chicago office, correct?

A. That's correct.

Q. You don't fly back and forth and say, gee, I have to work for TCH, Inc. today so I better go to Minnesota, correct?

A. No, that's not entirely correct, when the work that I'm doing in Minnesota requires me to be there, I fly up there to conduct business.

00055

When I can handle my affairs in Illinois, I'll handle them down there.

Q. Let's talk about your capacity as CFO of Town & Country Homes, Inc., how much time per year do you spend in that regard?

A. Maybe 20 percent.

Q. Now, you are also the CFO of Pinnacle, correct?

A. Yes.

Q. How much time do you spend in your capacity as CFO of Pinnacle?

A. Probably about the same. Maybe a little bit more.

Q. And so maybe 20 to 25 percent or is that too aggressive?

A. I'm guessing with these percentages.

Q. That's fine.

A. That's probably the window.

Q. All right. If you're spending 20 percent of your time working as CFO of Town & Country Homes, Inc., the question is: How much in terms of the percentage of your time do you spend in Minnesota?

A. I probably spend three days in Minnesota

00056

every six weeks. If you want to do the math on that.

Q. I can do that after the deposition, it is too early in the morning.

MR. FARMER: 1/10th.

BY MR. KRUMMEN:

Q. It sounds like you spend six days every three months times four would be about 24 days a year?

A. That's probably about right.

MR. FARMER: Three days every six weeks.

BY MR. KRUMMEN:

Q. Six days every three months.

MR. FARMER: Three days every six weeks. Five business days a week, three days out of every 30 days. 1/10th of the business calendar.

BY MR. KRUMMEN:

Q. Is that fair to say?

A. That's fair to say.

Q. So --

A. Sometimes I'll spend more than three days, sometimes I might spend less so that's a good ballpark.

Q. You're saying you are spending ten

Court File No. 01-1980/Rottlund/Pinnacle
Murdoch Affidavit dated October 08, 2004

EXHIBIT H

00001

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION
No.: 01-CV-1980 (DSD/SRN)

- - - - - - - - - - - - - - - - - - - - - - - - -

The Rottlund Company, Inc.
d/b/a Rottlund Homes, a Minnesota
Corporation,

Plaintiff,

vs.

Pinnacle Corporation
d/b/a Town & Country Homes,
an Illinois Corporation, and
Town & Country Homes, Inc.,
a Minnesota Corporation,

Defendants,

and

Town & Country Homes, Inc.,
a Minnesota Corporation,

Third-Party Plaintiff,

vs.

Bloodgood Sharp Buster Architects &
Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - -

STATUS CONFERENCE

Wednesday, August 18, 2004

3:25 p.m.

00010

question Mr. Anderson about with relation to the brochure files, but that's that issue.

If this is merely a continuation of his individual deposition, then we believe it should take place in Chicago because that's where he lives and works. And we don't see why Town & Country of Minnesota should have to pay to bring Mr. Anderson up to Minnesota for an individual deposition because of a scheduling conflict from the BSB attorneys.

With regard to Mr. Plante, that's just a working out of a date for his deposition. I think he's available on the 2nd, and I think that's one of the dates that they proposed.

Finally, with regard to Mr. Sandelin who is not going to be until I think sometime in mid-September, there is a wrinkle there which isn't in the letters. And that is that Mr. Sandelin doesn't work for Town & Country anymore or for Pinnacle. He quit about three or four weeks ago, I think. He now works for a new unrelated company.

We've had contact with him. He is willing to appear for deposition, but it's very difficult for him to come to Minnesota for --

00018

to Winthrop & Weinstine's prep time. Hopefully that can be resolved without coming to the Court again.

MR. DAVENPORT: Your Honor, this is Mr. Davenport. I had one final point. I apologize for the long pause there. It was a question as it related to your order concerning Mr. Sandelin.

I'd like to make sure that we're not necessarily limited to asking questions just about what was in that box. There may be some questions that we need to follow up on as they relate to that box.

And also, very much like with the BSB issue that came about here, we are videotaping depositions, we have prior testimony, things may have to be reworked and reordered with respect to those types of questions.

MAGISTRATE JUDGE NELSON: Well, I'm just going to hope that you folks can work that out.

MR. DAVENPORT: We'll do our best, Your Honor. Thank you.

MAGISTRATE JUDGE NELSON: In light of Mr. Schwiebert's schedule in particular, let's