**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**The Rottlund Company, Inc. d/b/a/ Rottlund Homes, a Minnesota Corporation**

**Civil No. 01-1980 (DSD/SRN)**

**Plaintiff,**

**v.**

**Pinnacle Corporation d/b/a/ Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,**

**Defendants,**

**and**

**Town & Country Homes, Inc., a Minnesota Corporation,**

**Third-Party Plaintiff,**

**v.**

**Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation**

**Third-Party Defendant.**

**<u>REPORT AND RECOMMENDATION</u>**

Craig S. Krummen, Esq., and David Davenport, Esq., on behalf of Plaintiff

Darren B. Schwiebert, Esq., on behalf of Defendant Town & Country Homes, Inc.

Christopher Murdoch, Esq., on behalf of Defendant Pinnacle Corp.

Holly J. Newman, Esq., on behalf of Defendant Bloodgood Sharp Buster and The Bloodgood Group, Inc.

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on Defendants BSB's and BGI's Motion for Partial Summary Judgment Against Plaintiff on Non-Copyright Claims and Affirmative Defenses (Doc. No. 471). This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

Defendants BSB and BGI ("the Bloodgood Defendants") seek an order finding, as a matter of law, that: (1) Plaintiff's non-copyright claims are pre-empted by Plaintiff's copyright claim; (2) Plaintiff has produced no evidence to support its non-copyright claims; (3) the Bloodgood Defendants are entitled to summary judgment on the issue of independent creation; and (4) the Villa II is afforded either no copyright protection, or only "thin" copyright protection.

This motion thus involves the following claims set forth in Plaintiff's Seventh Amended Complaint: claims under the Copyright Act, 17 U.S.C. § 102(a) (see, e.g., Seventh Am. Complaint at ¶¶ 107-111; 149-158196-205), Lanham Act (see, e.g., id. at ¶¶ 138, 146, 186, 193) and the Minnesota Uniform Deceptive Trade Practices Act (see, e.g., id. at ¶¶ 141-148; 188-195).

By way of procedural background, in May 2003, Defendants moved to dismiss Plaintiff's

Lanham Act and Deceptive Trade Practices Act claims. (Doc. No. 182-1 and 182-2.) This Court denied Defendants' motions without prejudice, stating that Defendants could renew their motion regarding the Lanham Act and Deceptive Trade Practices Act claims after the Court ruled on whether the Villa II gestalt was entitled to protection under the Copyright Act. (Order of July 21, 2003 at 16.) On August 20, 2004, this Court issued its Report & Recommendation in which it held that the selection, arrangement and combination of elements expressed in Plaintiff's Villa II technical drawings are afforded copyright protection. (August 20, 2004 Report & Recommendation at 30.) The Court therefore now addresses the renewed motions on the Lanham Act and Deceptive Trade Practices Act claims, as well as the Bloodgood Defendants' motions for summary judgment on independent creation and "thin" copyright protection.

In light of prior summary judgment memoranda and recommendations which provide detailed factual backgrounds, the Court incorporates those prior factual recitations by reference, and merely describes herein the facts directly relevant to the specific issues raised in this Report & Recommendation.[1]

## I. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

[1]For full discussion of the factual background of this case, see this Court's Report & Recommendation of August 20, 2004 at 4-14. The Court further notes, that in light of such detailed previous summary judgment memoranda, in their present motion, the Bloodgood Defendants omitted any factual background section in their moving papers.

is entitled to a judgment as a matter of law." A dispute about a material fact, one that may affect the outcome under the governing law, is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

A moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and it must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). All evidence will be viewed in the light most favorable to the nonmoving party. E.g., Liberty Lobby, 477 U.S. at 255.

### A. Preemption of Claims Under the Lanham Act and the Deceptive Trade Practices Act

Under 17 U.S.C. § 301(a), preemption of claims equivalent to rights protected by copyright law is set forth, providing:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103. . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any state.

17 U.S.C. § 301(a). Nothing in Section 301(a) or elsewhere in the Copyright Act . . . 'annuls or limits any rights or remedies under any other Federal Statute.' . . . Nonetheless, courts have limited application of the Lanham Act so as not to encroach on copyright interests." Melvin B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 1.01[D], at 1-79-80 (2002). The Bloodgood Defendants contend that Plaintiff's claims under both the Lanham Act and the Minnesota Deceptive

Trade Practices Act are preempted by the Copyright Act.

**1. Lanham Act Claims**

Plaintiff's claims under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), charge Defendants with knowingly and intentionally making false and misleading statements, descriptions, or representations of fact in interstate commerce in connection with the sale of Defendants' townhome units through their advertising and promotional materials concerning the origin, source, characteristics and/or design of the units. (See Seventh Am. Complaint at ¶¶ 134, 181.) Plaintiff further alleges that these statements either deceived or confused or had the capacity to confuse a substantial segment of the advertising audience; that the statements were material; and that Plaintiff was injured as a result of the representations. (Id. at ¶¶ 135, 182.) Plaintiff charges that Defendants created a false impression of the origin, source, characteristics and design of the allegedly infringing townhome units. (Id. at ¶¶ 138, 185.)

Section 43(a) of the Lanham Act prohibits misrepresentations about the source of a product primarily in two types of activities: (1) false advertising; and (2) "passing off" (also known as "palming off") in which "A" sells its product under "B's." name. Waldman Pub. Corp. v. Landoll, Inc., 43 F.3d 775, 780 (2d Cir. 1994). Section 43(a) also prohibits "reverse passing off," in which "A" sells "B's" product under "A's" name. Id. The Eighth Circuit has described such practices in Pioneer Hi-Bred Internat'l v. Holden Foundation Seeds, Inc., 35 F.3d 1226, (8th Cir. 1994) as follows: "Reverse palming off is essentially the defendant's unauthorized removal of plaintiff's product's identifying marks before reselling the goods. The doctrine includes situations in which a defendant markets another's product that has been only slightly modified and then relabeled." 35 F.3d at 1241 (citations omitted).

Plaintiff characterizes its Lanham Act claims as "reverse passing off" claims, i.e., using a slightly modified product of another and identifying it as one's own, constituting a false designation of origin. (Pl.'s Mem. in Opp. at 18.) Waldman recognized that "a claim of reverse passing off is separate and distinct from a claim of copyright infringement." 43 F.3d at 781 (citing Dodd v. Fort Smith Special Sch. Dist. No. 100, 666 F.Supp. 1278 (W.D. Ark. 1987)). Noting that the two acts – Copyright Act and Lanham Act – address different harms, the Second Circuit explained, "Through a copyright infringement action, a copyright owner may control who publishes, sells or otherwise uses a work. Through a Lanham Act action, an author may ensure that his or her name is associated with a work when the work is used." Id. at 781.

In Maurizio v. Goldsmith, No. 96 CIV 4332, 2001 WL 1568428 (S.D.N.Y. Dec. 5, 2001), the defendant argued that plaintiff's Lanham Act claim was nothing more than a reiteration of the plaintiff's claims under the Copyright Act, requiring dismissal. The court disagreed, holding:

> While the distinction between copyright infringement and the Lanham Act's concept of reverse passing off is somewhat murky, the Second Circuit has concluded that the two causes of action address different harms. In particular, '[t]hrough a copyright infringement action, a copyright owner may control who publishes, sells or otherwise uses a work. Through a Lanham Act action, an author may ensure that his or her name is associated with a work when the work is used.' Thus, it is possible that the misuse of one author's work by another author may result in different harms leaving two separate causes of action under both the Copyright Act and the Lanham Act.

Id. at *4 (quoting Waldman, 43 F.3d at 781).

In other cases, however, courts have found that where Lanham Act claims and the copyright claims essentially track each other, the Lanham Act claims fail. See Weber v. Geffen Records, Inc., 63 F.Supp.2d 458, 463-64 (S.D.N.Y. 1999) (holding that Lanham Act claims were preempted by federal

copyright law); Armstrong v. Virgin Records, Ltd., 91 F.Supp.2d 628, 633 (S.D.N.Y. 2000) (finding Lanham Act claim barred as duplicative of copyright claim). Both Weber and Armstrong involved musicians suing over musical compositions.

In Weber, a former band member sued the recording company and the group Guns N' Roses, comprised of his former band members, asserting that he was the unacknowledged co-author of two copyright-protected songs. 63 F.Supp.2d at 460. Weber brought state law claims of accounting, unfair competition and unjust enrichment, as well as a Lanham Act claim, under a "reverse passing off" theory. Weber contended that Guns N' Roses used two compositions in multiple recordings without giving him co-authorship attribution. Id. The songs in question were copyrighted by the defendants. The court noted:

> Aware that nearly every copyright-based claim involves a charge of improper failure to credit a purported author, the Second Circuit has limited the extent to which a copyright-based claim may support a Lanham Act claim, repeatedly cautioning that 'we reject. . . attempt[s] to convert all copyright claims into Lanham Act violations.'

63 F.Supp.2d at 463, quoting Lipton v. The Nature Co., 71 F.3d 464, 472 (2d Cir. 1995). Instead, for a Lanham Act claim to apply to a copyright-based claim:

> an aggrieved author must show more than a violation of the author's copyright-protected right to credit and profit from a creation. The author must make a greater showing that the designation of origin was false, was harmful, and stemmed from 'some affirmative act whereby [defendant] falsely represented itself as the owner.'

Id., quoting Lipton, 71 F.3d at 473-74. The court analogized this affirmative act requirement to the preemption rule that a state law claim requires an "extra element," beyond those tracing to any copyright, so that the action is qualitatively different from a copyright infringement claim. Id. at 464. In Weber's case, the court held that his allegations mirrored those of a standard copyright violation. He

failed to show the requisite affirmative action of falsely claiming originality beyond that implicit in any allegedly false copyright. Id. Moreover, the court noted that any copyright falsity was not even particularly egregious: "plaintiff alleges only co-ownership, not even sole ownership, and only partial use of his co-authored [c]ompositions in defendants' [s]ongs." Id.

The court in Armstrong concluded likewise, though Armstrong held a copyright and brought claims under both the Copyright Act and Lanham Act. 91 F.Supp.2d at 631. Armstrong alleged that a portion of his musical composition, "Planetary Citizen," was "sampled" by the defendants, which included the musical group"Massive Attack." While Armstrong contended that the attribution of the allegedly infringing work to Massive Attack constituted a false description of authorship and copyright ownership under the Lanham Act, upon review of the record and the complaint, the Lanham Act claims tracked those asserted under copyright law. Because they were duplicative, the court dismissed the plaintiff's Lanham Act claims.

Here, Plaintiff contrasts its copyright claim, which addresses its injuries flowing from the alleged unauthorized use of its Villa II copyrights, with its Lanham Act claim, which addresses its injuries from the alleged use of its designs without credit being given to Plaintiff as the original creator. (Pl.'s Mem. in Opp. at 19.)

Plaintiff alleges that with each sale of each infringing townhome, Defendants gave a false impression of the origin, source, characteristics, and/or design of the units. (Seventh Am. Complaint at ¶¶ 138, 185.) Rather than crediting Plaintiff, during submissions to municipalities, BSB received credit. (Pl.'s Mem. Opp. at 16.) Specifically, Plaintiff points to presentations made by Defendant TCM to the City of Plymouth that the Homestead Collection was "designed by the nationally renowned architectural

firm of Bloodgood, Sharp, Buster." (Davenport Aff., Ex. R131 at D16671.) Advertising and promotional materials from TCM represented that the Homestead Collection design differed from the "ordinary" townhomes offered in the market (id., Ex. R126 at D01663), and touted the value of the Homestead Collection's innovative design. (Id., D01727-1738.) In light of the pleadings and the evidence in the record, the Court cannot find, as a matter of law, that Plaintiff's claims are duplicative of its copyright claims or that Plaintiff fails to make a showing of Defendants' affirmative acts such that preemption is in order. Thus, the Court recommends the denial of the Bloodgood Defendant's motion for summary judgment on the ground that Plaintiff's Lanham Act claim is preempted.

**2. Minnesota Uniform Deceptive Trade Practices Act**

This Court has recognized that a claim under the Minnesota Uniform Deceptive Trade Practices Act[2] requires the same analysis as under the Lanham Act. See Goddard, Inc. v. Henry's Foods, Inc., 291 F.Supp.2d 1021 (D. Minn. 2003) (conduct that violates the Lanham Act also violates Minnesota's Deceptive Trade Practices Act); Group Health Plan, Inc. v. Philip Morris, Inc., 68 F.Supp.2d 1064, 1069-70 (D. Minn. 1999) (claims require the same analysis); Lenscrafters, Inc. v. Vision World, Inc., 943 F.Supp. 1481, 1487 (D. Minn. 1996) (court applies same analysis to claims brought under Lanham Act and substantially similar state claims).

The Copyright Act "expressly preempt[s] rights under state law that are equivalent to any of the bundle or rights encompassed by a federal copyright." Baltimore Orioles, Inc. v. Major League

[2]Minn. Stat. § 325D.44, subd. 1.

Baseball Players Ass'n, 805 F.2d 663, 674 n.20 (7th Cir. 1986), cert. denied, 480 U.S. 941 (1987). "[T]wo conditions must be met for a right under state law to be preempted: (1) the work in which the right is asserted must be fixed in a tangible form and come within the subject matter of copyright and (2) the right must be equivalent to any of the rights specified in § 106." Marobie-Fl, Inc. v. National Ass'n of Fire and Equipment Distributors & Northwest Nexus, Inc., 983 F. Supp. 1167, 1180 (N. D. Ill. 1997) (citing Baltimore Orioles, 805 F.2d at 674).

> A right under state law is 'equivalent' to one of the rights within the general scope of copyright if it is violated by the exercise of any of the rights set forth in § 106. . . .Thus, a right is equivalent to one of the rights comprised by a copyright if it is infringed by the mere act of reproduction, performance, distribution or display.

Baltimore Orioles, 805 F.2d at 676-77 (citations omitted). "But if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright, and there is no preemption." Computer Assoc. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir.1992) (citations omitted).

Thus, as both parties conceded in oral argument, the issue here is the same as the issue under the Lanham Act, namely, whether Plaintiff's state law claims contain an "extra element" such that they are not preempted by its Copyright Act claims. See Weber, 63 F.Supp.2d at 464. As indicated above, the Court finds that Plaintiff has pled sufficient allegations and brought forth evidence to preclude a finding, as a matter of law, that Plaintiff's Minnesota Deceptive Trade Practices Act claims are preempted by, or duplicative of, the Copyright Act claims. The Court thus recommends the denial of

the Bloodgood Defendants' summary judgment motion on this ground.

**B. Prima Facie Evidence Under Lanham Act and Deceptive Trade Practices Act**

As indicated above, this Court has recognized that a claim under the Minnesota Deceptive Trade Practices Act requires the same analysis as under the Lanham Act. See Goddard, 291 F.Supp.2d 1021

The Bloodgood Defendants contend that Plaintiff cannot prove a prima facie case under the Lanham Act or the Minnesota Deceptive Trade Practices Act, thereby entitling them to summary judgment. To prevail under the Lanham Act, a plaintiff must establish:

> 1. the defendant made false statements of fact about its own products, or the plaintiff's products, in an advertisement;
> 2. the advertising actually deceived or tended to deceive a substantial segment of its audience;
> 3. the deception is material because it is likely to influence buying decisions;
> 4. the defendant caused falsely advertised goods to enter interstate commerce; and
> 5. the plaintiff was injured or is likely to be injured as a result.

Lenscrafters,, 943 F.Supp. at 1488 (citation omitted). Further, this Court has held that a plaintiff who wishes to recover money damages for a violation under the Lanham Act and related state statutes, must prove that the defendant's violation "caused actual confusion among the consumers of the plaintiff's product and, as a result of this consumer confusion, the plaintiff suffered actual injury, such as a loss of sales, profits, or of present value." Id. at 1489.

While the Bloodgood Defendants deny that Plaintiff has produced sufficient evidence to establish any of the five elements under the Lanham Act, they focus their attention on two elements in particular, arguing there is no evidence of either confusion in the marketplace or evidence of interstate sales. First, the Bloodgood Defendants argue that to demonstrate confusion in the marketplace,

Plaintiff could have met this element through market research or expert testimony on the likely results of advertising, but failed to do so. (Bloodgood Def.'s Mem. Supp. Summ. J. at 6-7.) Second, as to evidence of interstate sales, the Bloodgood Defendants assert that the facts conclusively show that the goods did not enter interstate commerce. Because the Homestead and Chateau Collections were sold exclusively in Minnesota and the Washington Square townhouse was sold exclusively in Illinois, the Bloodgood Defendants claim there was no interstate commerce. Id.

Plaintiffs, however, argue that they have provided ample evidence in support of their claims under the Lanham Act and Minnesota Deceptive Trade Practices Act, that they meet each element of these claims and that genuine issues of material fact exist, precluding summary judgment.

First, as to making false statements of fact in an advertisement, Plaintiff argues that while Defendants represented the origin of the Homestead Collection, Chateau Collection and Washington Square townhome designs as "innovative" and original, the record reflects that Defendants simply copied Plaintiff's work and passed it off as their own. (Pl.'s Mem. Opp. at 22.) In addition, because none of the Defendants credited Plaintiff as the originating source of the designs, Plaintiff contends that they again misrepresented the origin of the designs and further injured Plaintiff in the form of lost sales and goodwill. Id.

As to the contested element of deception of a substantial segment of the audience, while the Bloodgood Defendants argue that Plaintiff has no survey evidence to show consumer confusion, Plaintiff asserts that actual consumer confusion is presumed as a matter of law where advertisements and promotions are literally false, as Plaintiff contends here. Id., citing Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002). The Novartis

decision provides that "if a plaintiff proves that the challenged commercial claims are 'literally false,' a court may grant relief without considering whether the buying public was actually misled." 290 F.3d at 586 (citation omitted).

In Johnson v. Jones, 149 F.3d 494, 503 (6th Cir. 1998), a copyright infringement case involving architectural drawings and designs, as well as Lanham Act claims[3], the court noted that where the defendant took the plaintiff's product and represented it to be his own work, "It is difficult to imagine how a designation of origin of a product could be more false, or could be more likely to cause confusion or mistake as to the actual origin of the product." Lenscrafters, 943 F.Supp. at 1490 (citation omitted). Moreover, the court in Johnson found consumer confusion where plaintiff and defendant provided the same kinds of services, using similar marketing channels, and competed against each other in the market:

> Furthermore, it is obvious beyond dispute that by taking Johnson's name and seal off of the plans and replacing them with his own, [defendant] intended for people to assume that the plans were his, and not Johnson's. Indeed, this Court is hard-pressed to imagine what effect these actions could possibly have other than to convince anyone who looked at the plans that they were [defendant's] work. Few are the cases demonstrating a more obvious and imminent likelihood of confusion.

Johnson, 149 F.3d at 503.

The Eighth Circuit cited this language with approval in Mid-List Press v. Nora, 374 F.3d 690, 693 (8th Cir. 2004), in an opinion affirming Judge Doty's decision to grant the plaintiff- publisher an injunction. The suit involved claims under the Lanham Act, Minnesota Deceptive Trade Practice Act,

---

[3]Apparently, though it is not specifically addressed in the Johnson opinion, the plaintiff's Lanham Act claim was not preempted by or deemed duplicative of his copyright claim.

and breach of fiduciary duty. Id. at 692. The Court concluded that the defendant's actions were similar to those in Johnson and found that the plaintiff had proven the likelihood of confusion. Id. at 693.

Turning to the other most contested element – whether Defendants caused the falsely advertised goods to enter interstate commerce – the Bloodgood Defendants argue that because the Homestead and Chateau Collections were sold exclusively in Minnesota and the Washington Square townhouse was sold exclusively in Illinois, there was no interstate commerce. Plaintiff, however, cites to Johnson, in which the defendant architect argued that Johnson failed to establish the interstate commerce element of his Lanham Act claim because the house constructed from the infringing plans did not enter interstate commerce. Id. at 503. The court held that the defendant "fundamentally misperceive[d] the nature" of the case, because he failed to grasp, "that the house is only part of the 'goods or services' at issue." Id. Rather, the architects' services were the more relevant "goods or services," and the plaintiff architect was licensed to work in three states. The court held that to the extent that the false designation of the plans hindered the plaintiff's ability to conduct his interstate architecture business, it affected interstate commerce. Id.

Plaintiff contends that its technical drawings and architectural works copyrights are at issue as much as the constructed buildings. (Pl.'s Mem. Opp. at 25.) Moreover, Plaintiff highlights specific facts illustrating that the "goods" entered interstate commerce, such as Larry Moore faxing Rottlund Villa floor plans from his Iowa office to Doug Buster in Illinois. (Davenport Aff., Ex. R32, Ex. R140 at BSB06379-80.) TCM faxed from Minnesota a portion of Plaintiff's designs to BSB in Iowa. (Id., cf. Ex. R73, BSB01262-63 with Ex. R.74; cf. Ex. R77, BSB00975 with Ex. R74.) BSB subsequently

sent a portion of the designs back to TCM in Minnesota. (Id., cf. Ex. R18, RC1004161 and Ex. R74 with Ex. R79, BSB02898 and Ex. R80, BSB02921.) BSB architect Chris Jorgenson testified that various Homestead Collection designs were all kept in Iowa, and for each "jurisdictional transfer, those files were saved down to create the next version. So in that sense, if you want to call that cut and pasting you can." (Id., Ex. R138 at 185.)

Plaintiff contends that these "cut and paste" Homestead Collection designs – which Plaintiff contends rightfully belonged to Plaintiff – were then sent to different states. (Pl.'s Mem. Opp. at 25.) For example, Plaintiff submits that the April 1998 contract between BSB and TCM provides that BSB owns the Homestead Collection designs. (Id., Ex. R52 at D00238.) Plaintiff contends that BSB issued the construction documents from Iowa in August 1999 and transferred them for use at the Centennial Crossing development in Maple Grove, Minnesota. (Id., Ex. R70.) In February 2000, BSB contracted and transferred the Homestead Collection designs from Iowa to the Washington Square development in Aurora, Illinois. (Id., Ex. R.133.) In sum, Plaintiff argues that all of this demonstrates that Defendants circulated the allegedly false/infringing design documents and materials in Minnesota, Iowa and Illinois. (Pl.'s Mem. Opp. at 26.)

In addition, Plaintiff points to a website based in Illinois, which Plaintiff claims Pinnacle and TCM share, advertising the Homestead Collection and other products. (Davenport Aff., Ex. R141 at 9-17.) Plaintiff thus argues that TCM's advertising activity is itself interstate commerce, citing McLain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232, 241-42 (1980).

Also, Plaintiff asserts that the advertisements and promotions have had an effect on interstate commerce because they were disseminated through media outlets such as the Minneapolis Star

Tribune, trade journals and Parade of Homes brochures. (Davenport Aff., Exs. R126-R127, R129-R131.) The advertisements and promotions included external elevations of the Homestead Collection design, photographs of the interior of the Homestead Collection design, and depictions of the floor plan as well. (Id., Exs. R126-127, R129-132.) Plaintiff contends that, analogous to Johnson, the interstate commerce element is satisfied because TCM used numerous sub-contractors and distributed the designs at issue to sub-contractors for bidding and construction purposes. (Id., Exs. R142-R145.) Thus, Plaintiff argues that the interstate commerce element of its reverse passing off Lanham Act claim is satisfied on four grounds: (1) the allegedly infringing designs traveled in interstate commerce; (2) the allegedly infringing designs have had an effect on activity in interstate commerce; (3) the advertisements and promotions have traveled in interstate commerce; and (4) the advertisements and promotions have had an effect on activity in interstate commerce. (Pl.'s Mem. Opp. at 27-28.)

Viewing the evidence in the light most favorable to the non-moving party, as the Court must, genuine issues of material fact exist. The Court therefore recommends that the Bloodgood Defendants' summary judgment motion be denied on the grounds that Plaintiff has failed to establish the prima facie elements of its claims under the Lanham Act and Minnesota Deceptive Trade Practices Act.

**C. Independent Creation**

The Bloodgood Defendants argue that even if Plaintiff is able to prove access and substantial similarity, there is no unlawful copying because they can establish that their work was the result of independent creation, as a matter of law. ((Bloodgood Def.'s Mem. at 7, citing Kootenia Homes, Inc. v. Reliable Homes, Inc., 2002 WL 15594 (D. Minn. 2002); CMM Cable Rep., Inc. v. Ocean Coast

Properties, 97 F.3d 1504, 1513, 1525 (1st Cir. 1990); Repp v. Webber, 132 F.3d 882, 889 (2d Cir. 1997), cert. denied, 525 U.S. 815 (1998)). In support of their motion, the Bloodgood Defendants point to the expert report of Al Bloom (Ex. B to Patrick Aff), which, they contend, details the process by which they independently created their townhome design works.

Mr. Bloom states that BSB and Town & Country met in March 1998 to discuss the program criteria for a new product that Town & Country wanted to design. (Id. at 7.) BSB and Town & Country also went on a tour of several back-to-back townhomes in the Minneapolis area, visiting developments built by Centex, Rottlund, Orin Thompson, GM Homes and others. Id. In April 1998, BSB contracted with Town & Country to provide schematic design services for two product types. The process of design and revision took approximately three months to complete. Id. Prior to completion of the design services, BSB submitted a contract to Town & Country for further architectural services including design development and contract document services. Id. at 8. Revisions on the documents were made fairly continuously from 1999 through 2000. Id.

Mr. Bloom further states that BSB's design consultation process compresses the design time line from a three to four-week process into a period of four days. BSB uses several designers and involves frequent contact with the client's key people. Id. Although this process occurs in a tight time frame, Mr. Bloom opines that it usually does not decrease the total number of hours necessary to reach a mutually agreeable design solution. Id. In the case of the Homestead Collection, for example, Mr. Bloom indicates that while the schematic design process took about three months, Larry Moore's time cards show about eighty-five hours of professional time and Chris Jorgenson's indicate about forty hours of time, for a total of 125 hours of design time for two unit plan types and one building type. Id.

at 9. In Mr. Bloom's experience, the total time for design of a project of this scope would be about seventy hours, thus leading him to conclude that "there was obviously more time involved by BSB than I would think normal, indicating that more design effort was required to reach an acceptable solution." Id.

The Bloodgood Defendants also refer to the affidavits and exhibits filed by Douglas Buster and Larry Moore, in support of their summary judgment motion regarding independent creation. Mr. Moore attests that as an employee of BSB, he designed the Homestead Collection for TCM and that Mr. Jorgenson served as its project manager. (Moore Aff. at ¶ 1-2.) Mr. Moore attaches copies of drawings and of his time sheets, indicating that he spent 72.5 hours in 1998 from the start of the project in April until July when the first set of design development drawings were issued. (Id. at ¶ 3, Exs. to Moore Aff.) Douglas Buster notes that on behalf of BSB, he entered into a contract with Pinnacle to revise the architectural design for the Homestead Collection in February 2000. (Buster Aff. at ¶ 2.) Working as a "subconsultant," to BSB, Mr. Buster made various revisions to the architectural design for the Centennial Crossing Homestead Collection townhouse to produce a townhouse for the Greater Chicago market. He indicates that his revisions included the following: creating a four-plex and six-plex building for Washington Square; creating a hipped roof massing for the smaller four-plex and a smaller gable roof massing for the six-plex; and eliminating masonry from both buildings and recreating a horizontal element in the buildings by using wider siding on the first floor and narrow horizontal siding on the second floor of each building. (Id. at ¶ 3.) Mr. Buster further disavows ever seeing Plaintiff's technical drawings, visiting a Rottlund community or the Villa townhomes, or referring to any of Plaintiff's designs or literature when producing his Washington Square schematic designs. (Id. at ¶¶ 4-

5.) Instead, Mr. Buster contends that the Washington Square schematic design was his own and was not a derivative of any townhouse other than the Centennial Crossing Homestead Collection townhouse. (Id. at ¶ 6.)

Because in most copyright cases there is no direct evidence of copying, "copying may be proven either by direct evidence or by demonstrating circumstantial evidence establishing 'access and 'substantial similarity' of the two works.'" Nelson v. PRN Prod., Inc., 873 F.2d 1141, 1142 (8th Cir. 1989), cert. denied, 493 U.S. 994 (1989). To rebut the Bloodgood Defendants' independent creation argument, Plaintiff argues that it has presented substantial direct evidence that Defendants copied its Villa II drawings and works. In addition, in light of this Court's August 20, 2004 Report & Recommendation, Plaintiff argues that because the Court held that genuine issues of material fact exist concerning substantial similarity – an issue intertwined with independent creation – that independent creation is likewise a jury issue.

This Court fully analyzed issues of access and substantial similarity in its August 20, 2004 Report & Recommendation. Although the Bloodgood Defendants' independent creation argument was not before it at that time, the argument is certainly intertwined with this Court's prior ruling. Other courts addressing allegations of copying have first analyzed access and substantial similarity, then if a presumption of copying arises, defendants have the opportunity to rebut the presumption with persuasive evidence of independent creation. See, e.g., Arthur Rutenberg Homes, Inc. v. Maloney, 891 F.Supp. 1560, 1567 (M.D. Fla. 1995) (first finding a presumption of copying, the burden shifted to defendant to provide persuasive evidence of independent creation, which it failed to establish); Gund v. Russ Berrie & Co., 701 F.Supp. 1013, 1022 (S.D.N.Y. 1988) (defendants argued that even if the

court found substantial similarity between two plush toys, it could then rebut the inference of copying with evidence of independent creation–the Court found no independent creation.)

In the August 20, 2004 Report & Recommendation, this Court found that genuine issues of material fact existed as to direct evidence of copying (August 20, 2004 Report & Recommendation at 38) and as to substantial similarity (the intrinsic analysis). (Id. at 47.) In light of this Court's previous ruling and the interconnection between the issues of copying and independent creation, the Court concludes that genuine issues of material fact preclude a finding, as a matter of law, of independent creation by the Bloodgood Defendants.

**D. "Thin" Copyright Protection of Villa II**

In its August 20, 2004 Report & Recommendation, this Court ruled on the parties' cross motions for summary judgment on validity, as well as Plaintiff's motions for summary judgment on direct copying, access and substantial similarity concerning Plaintiff's § 102(a)(5) copyrighted technical drawings. (August 20, 2004 Report & Recommendation.) The Court granted Plaintiff's motion for summary judgment as to the validity of its technical drawing copyrights (id. at 28); held that Plaintiff owned the Villa II technical drawing copyrights (id. at 23); that Defendants had access to Plaintiff's plans (id. at 44); that the Homestead Collection, Washington Square and Villa II collections plans have substantially similar ideas (id. at 45); and that no party was entitled to summary judgment on the issue of substantial similarity (the intrinsic analysis) of the Villa II and Homestead Collection and Washington Square technical drawings. (id. at 47.)

In this motion, the Bloodgood Defendants seek summary judgment that Plaintiff's Villa II is entitled to only "thin" copyright protection, while acknowledging that this Court's August 20, 2004

Report & Recommendation "answers this question." (Bloodgood Defendants' Reply Mem. at 8.) As the Court stated at the motions hearing, it will not entertain additional argument on this issue, as it has previously ruled. Defendants' motion as to "thin" copyright protection is therefore denied as moot.

**THEREFORE, IT IS HEREBY RECOMMENDED that:**

**1.** Defendants BSB and BGI's Motion for Partial Summary Judgment Against Plaintiff on Non-Copyright Claims and Affirmative Defenses (Doc. No. 471) be **DENIED and DENIED AS MOOT**.

Dated: October 14, 2004

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge