UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br><br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**EIGHTH AMENDED COMPLAINT (Copyright Infringement)**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

COMES NOW Plaintiff, The Rottlund Company, Inc., d/b/a Rottlund Homes ("Plaintiff"), as and for its Eighth Amended Complaint against Defendants Pinnacle and TCM Pinnacle Corporation, d/b/a Town & Country Homes, Town & Country Homes, Inc., Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., and The Bloodgood Group, Inc. (individually and collectively "Defendant(s)"), state and allege as follows, to-wit:

**PARTIES**

1. Plaintiff is a Minnesota corporation whose principal place of business is 3065 Centre Pointe Drive, Roseville, Minnesota.

2. Defendant Pinnacle Corporation ("Pinnacle") is an Illinois corporation whose principal place of business is 1806 South Highland Avenue, Lombard, Illinois.

3. Defendant Town & Country Homes, Inc. ("TCM") is a Minnesota corporation whose principal place of business is 7615 Smetana Lane, Suite 180, Eden Prairie, Minnesota.

4. Defendant Bloodgood Sharp Buster Architects & Planners of Iowa, Inc. ("BSB") is an Iowa Corporation whose principal place of business is 400 Locust Street, Suite 265, Des Moines, Iowa.

5. Defendant The Bloodgood Group, Inc. ("Bloodgood") is an Iowa Corporation. Upon information and belief, Bloodgood's principal place of business is 1601 West Lakes Parkway, West Des Moines, Iowa.

**JURISDICTION AND VENUE**

6. This is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, and for the related claims of false advertising under the Lanham Act and violation of the Minnesota Uniform Deceptive Trade Practices Act. This Court has original and exclusive jurisdiction of this action under 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and supplemental jurisdiction under § 1367(a).

7. Venue is appropriately laid in this judicial district under 28 U.S.C. §§ 1391 and 1400(a).

## JURY DEMAND

8. Plaintiff requests a jury trial for all issues so triable.

## FACTS

9. Plaintiff is a corporation involved in the business of, among other things, building new homes, including, but not limited to, multi-family town homes.

10. Defendants Pinnacle and TCM are also corporations involved in the business of, among other things, building new homes, including, but not limited to, multi-family town homes. Defendants Pinnacle and TCM directly compete against Plaintiff.

11. Defendant BSB is a corporation involved in the business of, among other things, providing architectural services to builders of new homes, including, but not limited to, multi-family homes. Defendant Bloodgood is a corporation involved in the business of, among other things, supervising, controlling, managing, and collecting and distributing profits earned by Defendant BSB and other related entities.

**Original Villa**

12. In or about 1988, Plaintiff created, and embodied in physical form, original works of authorship fixed in a tangible medium of expression. These original works of authorship are comprised in an architectural design plan for Plaintiff's Original Villa product. To the extent any of these original works of authorship may have been created by Architectural Forum, Inc. or any other third party, the ownership and copyright rights were assigned to Plaintiff by written agreement.

13. In or about August 1989, Plaintiff applied to the Register of Copyrights for a Certificate of Registration for the Original Villa original works of authorship. In or about September 1989, a Certificate of Registration was issued by the Register of Copyrights and bears

registration number VAu 159-813. Copyright registration number VAu 159-813 confirms registration of this original work of authorship as a technical drawing pursuant to 17 U.S.C. § 102(a)(5). A true and correct copy of this Certificate of Registration is attached hereto as Exhibit J.

14. In or about October 1993, Plaintiff again applied to the Register of Copyrights for a Certificate of Registration for the Original Villa original works of authorship. In or about October 1993, a Certificate of Registration was issued by the Register of Copyrights and bears registration number VAu 268-380. Copyright registration number VAu 268-380 confers registration of this original work of authorship as a technical drawing pursuant to 17 U.S.C. § 102(a)(5). A true and correct copy of this Certificate of Registration is attached hereto as Exhibit A.

**New Villa**

15. In or about 1991, Plaintiff created, and embodied in physical form, additional original works of authorship fixed in a tangible medium of expression. These original works of authorship are comprised in an architectural design plan for Plaintiff's New Villa product. Plaintiff's New Villa product is related to Plaintiff's Original Villa product in that, among other things, it was prepared by the same architect.

16. In or about October 1993, Plaintiff applied to the Register of Copyrights for a Certificate of Registration for the New Villa original works of authorship. In or about October 1993, a Certificate of Registration was issued by the Register of Copyrights and bears registration number VAu 268-404. Copyright registration number VAu 268-404 confers registration of this original work of authorship as a technical drawing pursuant to 17 U.S.C. §

102(a)(5). A true and correct copy of this Certificate of Registration is attached hereto as Exhibit B.

**Villa II**

17. In or about 1997, Plaintiff created, and embodied in physical form, original works of authorship fixed in a tangible medium of expression. These original works of authorship are comprised in an architectural design plan for Rottlund's Villa II product. Plaintiff's Villa II product relates to Plaintiff's Original Villa product and Plaintiff's New Villa product in that, among other things, all three were prepared by the same architect. Plaintiff's Villa II product is an eight-unit town home complex that contains units known as the Chatham and the Dunhill.

18. On or about June 17, 1999, Plaintiff applied to the Register of Copyrights for a Certificate of Registration for the Villa II original works of authorship. On or about June 22, 1999, a Certificate of Registration was issued by the Register of Copyrights and bears registration number VAu 447-395. Copyright registration number VAu 447-395 confers registration of this original work of authorship as a technical drawing pursuant to 17 U.S.C. § 102(a)(5). A true and correct copy of this Certificate of Registration is attached hereto as Exhibit C.

19. On or about January 4, 2002, Plaintiff applied to the Register of Copyrights for a Certificate of Registration to register the Villa II original works of authorship constructed pursuant to the technical drawing found within registration number VAu 534-723 as an architectural work pursuant to 17 U.S.C. § 102(a)(8). On or about January 7, 2002, a Certificate of Registration was issued by the Register of Copyrights, and bears registration number VAu 534-723. A true and correct copy of this Certificate of Registration is attached hereto as Exhibit D.

20. Plaintiff's Villa II original designs in The Reserve development, located in Plymouth, Minnesota, have also been registered pursuant to 17 U.S.C. §§ 102(a)(5), and copyright registration number VAu 546-285 issued by the Register of Copyrights on February 19, 2002. This registration confers copyright protection for the architectural designs to Plaintiff. A true and correct copy of this Certificate of Registration is attached hereto as Exhibit K.

**The Original Works of Authorship in Original Villa and New Villa Carry Forward and Are Incorporated Into Villa II**

21. Where the same creator owns both the original and derivative copyrights, the only sound interpretation of the Copyright Act is that the derivative work carries forward all preexisting copyrights in the original work.

22. Pursuant to 17 U.S.C. § 106(2), Plaintiff, as the owner of the original material protected by the Original Villa copyright, has the exclusive right to create derivative material therefrom.

23. Pursuant to 17 U.S.C. § 106(2), Plaintiff, as the owner of the original material protected by the New Villa copyright, has the exclusive right to create derivative material therefrom.

24. Plaintiff created, copyrighted, and owns the original works and any potential derivative works concerning the Original Villa, New Villa, and Villa II products.

25. Plaintiff's copyrights on the Villa II product incorporates and protects any and all original copyrighted works in the Original Villa and/or New Villa upon which the Villa II product is based.

26. Plaintiff is not required to allege and prove multiple copyright violations which are dependent upon the exact number of prior copyrights which carry forward and are incorporated into the Villa II copyrights.

**Plaintiff's Construction of Copyrighted Villa II Complexes and Defendants Pinnacle and TCM's Construction of Infringing Complexes**

27. In or about September of 1997, Plaintiff began constructing the Villa II town home complexes throughout the Rush Creek Development, located in Maple Grove, Minnesota. On or about January 16, 1998, Plaintiff completed construction of the first Villa II town home complex in the Rush Creek Development and continued, through December 15, 1998, to construct other town home complexes throughout the Rush Creek Development.

28. On or about July 9, 1998 Marquette Advisors, real estate counselors, formally invited Plaintiff to submit a proposal to purchase a ninety (90) acre parcel of real estate owned by the Estate of Hildur Hollander ("Hollander Property") and construct a three hundred eighty-one (381) unit housing development.

29. The Hollander Property is situated at both the northeast and northwest corner of the intersection of Dunkirk and 89th Avenue North in Maple Grove, Minnesota. A true and correct copy of a location map for the Hollander Property is attached hereto as Exhibit E.

30. The Hollander Property represented one of the largest land holdings in the Maple Grove area and, therefore, represented one of the greatest development opportunities in terms of mass and profitability.

31. Plaintiff submitted a proposal to purchase the Hollander Property and construct the 381 units ("Plaintiff's Bid").

32. Defendants Pinnacle and TCM submitted a competing proposal to purchase the Hollander Property and construct the 381 units ("Defendants' Bid").

33. Marquette Advisors denied Plaintiff's Bid and awarded Defendants' Bid.

34. Pursuant to the terms of Defendants' Bid and subsequent contractual agreements, on or about February 2000, Defendants Pinnacle and TCM began to develop and build, and

continue to develop and build, new homes on the Hollander Property, including multi-family town homes. Defendants Pinnacle and TCM's development project on the Hollander Property is known as Centennial Crossing ("Centennial Crossing Development").

35. Defendants Pinnacle and TCM are currently advertising and building a town home product in the Centennial Crossing Development known as the Homestead Collection ("Homestead Collection").

36. Defendants Pinnacle and TCM are also currently advertising and building the Homestead Collection in a development project, located in Plymouth, Minnesota, known as Harvest Hills ("Harvest Hills Development").

37. Defendants Pinnacle and TCM are currently advertising and planning to build the Homestead Collection in a development project, located in Shakopee, Minnesota, known as Providence Park ("Providence Park Development").

38. Defendants Pinnacle and TCM are currently advertising and planning to build the Homestead Collection in a development project, located in Lakeville, Minnesota, known as Cornerstone Lake ("Cornerstone Lake Development").

39. Defendants Pinnacle and TCM are currently advertising and planning to build the Homestead Collection in a development project, located in Lakeville, Minnesota, known as Springbrooke ("Springbrooke Development").

40. Defendants Pinnacle and TCM are currently advertising and building a town home product in Aurora, Illinois, which is based upon the Homestead Collection and known as the Washington Square Back-to-Back ("Washington Square"). Upon information and belief, this development is known as the Washington Square Development.

41. Upon information and belief, Defendants Pinnacle and TCM are currently advertising, building and/or planning to build the Homestead Collection or the Washington Square products and/or other substantially similar products under other names in other development projects.

42. Upon information and belief, Defendants Pinnacle and TCM are currently advertising, building and/or planning to build other town home products based upon the design of the Homestead Collection and/or Washington Square products.

43. Upon information and belief, the Homestead Collection includes, but is not limited to, Bayview, Starwood, Broadmoor, Savannah and other substantially similar town home units and the Washington Square Back-to-Back includes, but is not limited to, Garfield and other substantially similar town home units ("Infringing Town Home Units").

44. Upon information and belief, Defendants Pinnacle and TCM are profiting from sales of Infringing Town Home Units and other substantially similar products.

**Pinnacle's TCM's and BSB's Direct Infringement of Plaintiff's Copyrighted Villa II and Incorporated Original Works of Authorship**

45. Prior to Defendants Pinnacle and TCM's construction and planned construction of the Infringing Town Home Units, Defendants Pinnacle and TCM had access to Plaintiff's copyright protected original works of authorship.

46. Beginning in late 1997/early 1998, Bloodgood and Defendants BSB, Pinnacle, and TCM worked together in a "team process" and "jointly developed" TCM's infringing back-to-back townhome products and Pinnacle's infringing back-to-back townhome products.

47. Any one of these entities could have subsequently stopped the infringing activities of the others, but each entity chose not to do so because of each its financial self-interest in the infringing activities.

48. In or about April 1998, TCM and BSB signed a contract which provided that TCM and BSB would both design the TCM back-to-back townhome. Pursuant to this contract, TCM was to provide full project information concerning TCM's design objectives, constraints, and criteria and designate a representative with authority to render decisions and approvals regarding BSB's performance.

49. On more than one occasion, beginning in or about April 28, 1998, some or all of the following individuals ("the group") directly accessed and otherwise toured Rottlund's Villa II townhome: Pinnacle Vice President of Product Development, Steve Sandelin, TCM President, Art Plante, TCM employee, Bill Anner, BSB architect, Larry Moore, and BSB architect, Chris Jorgensen.

50. During these tours, one or more individual(s) in the group took pictures of Rottlund's Villa II townhome.

51. During these tours, one or more individual(s) in the group took a brochure of Rottlund's Villa II townhome which depicted the floorplan of Rottlund's Villa II townhome.

52. These tours were necessary so that Defendants BSB, TCM, and Pinnacle could start with Rottlund's back-to-back Villa II townhome design, look for "mistakes" that Rottlund was making with its design, and "find opportunities to one up" Rottlund.

53. Defendants BSB, TCM, and Pinnacle used the information they gathered during these tours of Rottlund's Villa II townhome to design back-to-back townhome products for TCM and Pinnacle which infringe upon on Rottlund's Villa II copyright.

54. On or about May 5, 1998, Defendant BSB architect Larry Moore forwarded to Defendant Pinnacle Vice President of Product Development Steve Sandelin a "Competition product survey for Minneapolis area."

55. After receiving the May 5, 1998 transmittal from Defendant BSB, Defendant Pinnacle destroyed the May 5, 1998 cover sheet and also destroyed the attached "Competition product survey for Minneapolis area."

56. On or about May 18, 1998, BSB received a transmittal from Bloodgood's majority shareholder, Doug Buster, regarding Town & Country, Villas. According to BSB's May 18, 1998 internal correspondence: "Doug Buster called and faxed these to me after talking with Steve Sandelin. Steve was wondering if we could incorporate a breakfast nook in the Villas for Town & Country. Doug thought it might be good to call Art Plante and discuss with him what Steve is suggesting."

57. Bloodgood employees Travis Olsen, a graphic artist, and Courtney Bower, a CADD Technician, also were involved in creating Defendants' infringing townhome designs.

58. Bloodgood majority shareholder Doug Buster later personally redeveloped the exteriors of Defendant TCM's infringing townhome designs so that Defendant Pinnacle could use these designs in the Chicago market.

59. Upon information and belief, in or about late June or early July, 1998, Town & Country Homes Minnesota Division President, Art Plante, forwarded a copy of a picture of Rottlund's Villa II product gabled roof side entry to BSB.

60. Upon information and belief, in or about late June or early July, 1998, Mr. Plante then instructed the BSB representative to "see Rottlund product" and requested that the concept design plan for the Infringing Town Home Units be changed from a sloped roof side entry to a gabled roof side entry which was substantially similar to Plaintiff's gabled roof side entry.

61. Pinnacle Vice President of Product Development, Steve Sandelin, was heavily involved throughout the design process of TCM's infringing back-to-back townhomes. Among

other things, Mr. Sandelin: (a) participated in at least one tour of Rottlund's Villa II townhome and retained pictures taken during this tour; (b) received from BSB a "Competition product survey for Minneapolis area;" (c) participated in numerous phone calls and meetings regarding the design of TCM's infringing back-to-back townhomes; and (d) reviewed numerous sketches, design drawings, and other materials he received from BSB or Art Plante regarding the design of TCM's infringing back-to-back townhomes.

62. Bloodgood, through its majority shareholder Doug Buster, and through its employees Travis Olsen and Courtney Bower, was part of the joint development of Defendants' infringing townhome designs.

63. In short, Defendants Pinnacle, TCM, BSB, and Bloodgood were responsible for creating back-to-back townhome designs and building back-to-back townhome products (the "Infringing Town Home Units").

64. Defendants Pinnacle and TCM's Infringing Town Home Units infringe upon the combination or gestalt of Plaintiff's copyright protected Villa II works of authorship in many respects including, but not limited to, the following:

a. placement of gabled side entries;

b. layout of gabled side entries;

c. proportions of gabled side entries;

d. placement of optional fireplace;

e. layout of optional fireplace;

f. proportions of optional fireplace;

g. architectural detail above optional fireplace, including recessed drywall arch;

h. placement of recessed shelving next to optional fireplace;

i. placement of tile and trim design adjacent to optional fireplace;

j. placement of loft;

k. layout of loft;

l. proportions of loft;

m. architectural detail of loft including railings, spindles, banisters, and molding;

n. placement of second story window in living room;

o. placement of first story windows in living room;

p. proportions of first story windows in living room;

q. placement of garage;

r. layout of garage;

s. placement of garage entry into kitchen area;

t. proportions of garage;

u. placement of living room;

v. proportions of living room;

w. layout of living room;

x. placement of dining room;

y. proportions of dining room;

z. layout of dining room;

aa. placement of stair well;

bb. proportions of stair well;

cc. layout of stair well;

dd. placement of kitchen;

ee. proportions of kitchen;

ff. placement of kitchen pantry;

gg. proportions of kitchen pantry;

hh. layout of shelving in kitchen pantry;

ii. placement of kitchen cabinet peninsula breakfast bar area in dining room;

jj. proportions of kitchen cabinet peninsula breakfast bar area in dining room;

kk. layout of kitchen cabinet peninsula breakfast bar area in dining room;

ll. placement of exterior patio;

mm. proportions of exterior patio;

nn. layout of exterior patio;

oo. entry way from exterior patio into living room area directly adjacent to dining room area;

pp. placement of powder room;

qq. proportions of powder room;

rr. layout of powder room, including single sink and toilet with no tub or shower;

ss. placement of master bedroom/owner's suite;

tt. proportions of master bedroom/owner's suite;

uu. layout of master bedroom/owner's suite;

vv. window placement in master bedroom/owner's suite;

ww. proportions of windows in master bedroom/owner's suite;

xx. placement of owner's suite bathroom;

yy. proportions of owner's suite bathroom;

zz. layout of owner's suite bathroom;

aaa. placement of owner's suite bathroom;

bbb. placement of double sink in owner's suite bathroom;

ccc. proportions of double sink in owner's suite bathroom;

ddd. layout of double sink in owner's suite bathroom;

eee. placement of toilet in owner's suite bathroom;

fff. layout of toilet in owner's suite bathroom;

ggg. placement of bathtub in owner's suite bathroom;

hhh. layout of bathtub in owner's suite bathroom;

iii. placement of second bedroom;

jjj. proportions of second bedroom;

kkk. layout of second bedroom;

lll. window placement in second bedroom;

mmm. proportions of windows in second bedroom;

nnn. roof configuration;

ooo. placement of the exterior sprinkler room;

ppp. proportions of the exterior sprinkler room;

qqq. layout of the exterior sprinkler room;

rrr. external entry to the exterior sprinkler room; and

sss. sloped roof above the exterior sprinkler room.

*Compare* Exhibit F *with* Exhibit G; *Compare* Exhibit H *with* Exhibit I.

65. Defendants Pinnacle and TCM's Infringing Town Home Units are substantially similar to the combination or gestalt of Plaintiff's copyright protected Villa II works of authorship, irrespective of whether Defendants Pinnacle and TCM's town home units are interior units or exterior units.

66. Prior to commencing this action, Plaintiff sent Defendants Pinnacle and TCM a letter and notified them that Defendants Pinnacle and TCM were infringing on Plaintiff's copyrights and other rights. Shortly thereafter, Defendants BSB and Bloodgood were made aware of this letter.

67. In response, on or about July 9, 2001, Town and Country Homes Vice President of Development, Steve Sandelin, wrote to BSB architect Larry Moore and admitted that the Infringing Town Home Units were "obviously similar" to Plaintiff's Villa II product. Shortly thereafter, Defendants BSB and Bloodgood were made aware of this admission.

68. Despite Mr. Sandelin's candid admission, Defendants Pinnacle, TCM, Bloodgood, and BSB continued, and still continue, to infringe on Plaintiff's copyright and violate Plaintiff's other rights.

69. On or about April 2, 2002, Defendant Bloodgood representative James Grundmeier exercised control over Defendant BSB and forwarded the contents of BSB architect Larry Moore's design file for the Town & Country back-to-back townhome project to Defendant TCM attorney Dean Karau. Mr. Grundmeier also forwarded to Mr. Karau work that Defendant BSB had done for other clients.

70. On or about April 25, 2002, Defendant BSB received portions of Rottlund's Villa II construction drawings from Metro Fire Protection, Inc., that concerned Rottlund's sprinkler room and system design.

71. Again, on or about July 8, 2002, Defendant TCM's architect Tim Johnson sent to Defendant BSB portions of Rottlund's Villa II construction drawings that concerned Rottlund's sprinkler room design and sprinkler system design. At the time he generated this

correspondence, Mr. Johnson was a former Rottlund employee. When Mr. Johnson previously worked for Rottlund, he had access to Rottlund's Villa II construction drawings.

72. Defendants TCM and BSB then intentionally and willfully copied Rottlund's Villa II sprinkler room design and sprinkler system design into their infringing design for Defendant TCM's back-to-back townhomes.

73. Upon information and belief, Defendant Bloodgood failed to restrain its subsidiary Defendant BSB from infringing on Rottlund's copyrighted architectural drawings and works because Defendant Bloodgood, at all material times, received Defendant BSB's profits from the infringing conduct and then only returned a portion of those profits to Defendant BSB pursuant to a "formula" that Defendant Bloodgood devised.

74. Defendants Pinnacle and TCM have been promoting, advertising, constructing, offering for sale, and selling these substantially similar Infringing Town Home Units.

75. In 2002, Defendant TCM requested that Defendant BSB forward the CAD designs for the Infringing Town Home Units to Toushie and Montgomery, a third party architecture firm that had been retained by Defendant TCM.

76. Upon information and belief, Defendant TCM intended to work with Toushie and Montgomery and create derivative back to back townhome designs from the Infringing Townhomes' designs and Plaintiff's Villa II Townhomes' designs.

77. Upon information and belief, Defendant TCM, through its President Art Plante and its third party architecture firm Toushie and Montgomery, did make a derivative townhome design based on their knowledge of the Infringing Townhomes' designs. This derivative townhome is known as the Chateau Collection.

78. Indeed, an April 10, 2002 cover letter from Town & Country Homes references the "Homestead Collection" and provides, in pertinent part, as follows: "We need to make some changes anyway so Art Plante feels we should look at making significant architectural changes as opposed to slight changes."

79. This reference to Mr. Plante's choice to make "changes" to the infringing Homestead Collection designs demonstrates that Defendant TCM's latest generation of back to back townhome designs, the Chateau Collection, are illegal derivatives of the Infringing Townhomes' designs and Plaintiff's Villa II designs.

80. Like the infringing Homestead Collection, the Chateau Collection illegal derivatives violate Rottlund's 17 U.S.C. §§ 102(a)(5) and (a)(8) Villa II copyrights.

81. Upon information and belief, Mr. Plante could have chosen to create an original back to back townhome design, but he instead chose to start with an infringing design and make changes to create an illegal derivative design.

82. Defendant TCM's latest generation of back to back townhome designs, the Chateau Collection, are illegal derivatives because, as asserted more fully above, the Copyright Act, 17 U.S.C. § 106(2), extends to Plaintiff the exclusive right to create derivative material from its copyrighted Villa II architectural designs and works.

83. Upon information and belief, Defendant TCM has received approval to construct, and is planning to construct, the Chateau Collection townhomes based on its illegal derivative designs at a development known as Traditions at Clover Ridge located in Chaska, Minnesota, and also at a development known as Pinebrook located in Brooklyn Park, Minnesota. Plaintiff is entitled to damages under the Copyright Act flowing from Defendant TCM's and/or Defendant Pinnacle's use of these illegal derivative townhome designs.

84. The natural, probable and foreseeable result of Defendants Pinnacle and TCM and BSB's wrongful conduct has been and will continue to be to deprive Plaintiff of the benefits of selling town homes constructed in accordance with its original works of authorship and its other products, to deprive Plaintiff of goodwill and the ability to utilize its original works of authorship in other housing developments, and to injure Plaintiff's relations with present and prospective customers.

85. Plaintiff has lost and will continue to lose substantial revenues from the deprivation of the benefits of selling these town homes and other products and utilizing its architectural design plans. Plaintiff will sustain damage as a result of Defendants Pinnacle, TCM, and BSB's wrongful conduct and Defendants Pinnacle and TCM's production and sale of these Infringing Town Home Units. Defendants Pinnacle, TCM, and BSB's wrongful conduct will continue to deprive Plaintiff of opportunities for expanding its goodwill.

86. Defendants Pinnacle, TCM, and BSB have realized substantial profits that are directly and/or indirectly attributable to their infringing conduct. These direct and/or indirect profits include, but are not limited to: Defendant BSB's profits from the architectural and consulting services it provided to Defendants Pinnacle and TCM; Defendants Pinnacle and TCM's profits from the Defendants Pinnacle and TCM's Infringing Town Home Units; and Defendants Pinnacle and TCM's profits from Defendants Pinnacle and TCM's single family homes and other buildings constructed in the same developments where Defendants Pinnacle and TCM sold their Infringing Town Home Units.

87. Upon information and belief, due to municipal and governmental ordinances concerning "smart growth", Defendants Pinnacle and TCM could not have built and sold single family homes and other buildings in various developments where Defendants Pinnacle and TCM

built and sold Infringing Town Home Units unless Defendants Pinnacle and TCM also built multi-family high density housing complexes.

88. Defendants Pinnacle and TCM's construction and sale of Infringing Town Home Units satisfied these smart growth prerequisites and thus allowed Defendants Pinnacle and TCM to build and profit from single family homes and other buildings in these smart growth developments.

89. But for Defendants Pinnacle and TCM's construction and sale of Infringing Town Home Units in these smart growth developments, Defendants Pinnacle and TCM could not have constructed or profited from its sale of single family homes and other buildings in these same developments.

**Defendants Pinnacle and TCM's Contributory Infringement/Vicarious Liability Concerning Plaintiff's Copyrighted Villa II and Incorporated Original Works of Authorship**

90. In addition to Defendants Pinnacle and TCM's direct infringement, upon information and belief, Defendant Pinnacle has, among other things, induced, caused, participated and/or materially contributed to the infringing conduct of Defendant TCM with knowledge of the infringing activity.

91. In addition to Defendants Pinnacle and TCM's direct infringement, upon information and belief, Defendant Pinnacle Corporation, d/b/a Town & Country Homes, has, among other things, participated in, supervised, exercised control over, coalesced with and financially benefited from Defendant TCM's exploitation of Plaintiff's copyright protected original works of authorship.

92. In addition to Defendants Pinnacle and TCM's direct infringement, upon information and belief, Defendant TCM has, among other things, induced, caused, participated

and/or materially contributed to the infringing conduct of Defendant Pinnacle with knowledge of the infringing activity.

93. In addition to Defendants Pinnacle and TCM's direct infringement, upon information and belief, Defendant TCM, has, among other things, participated in, supervised, exercised control over, coalesced with and financially benefited from Defendant Pinnacle's exploitation of Plaintiff's copyright protected original works of authorship.

94. Upon information and belief, Defendants Pinnacle and TCM intend to continue their course of conduct and to wrongfully use, infringe upon, sell and otherwise profit from Plaintiff's copyright protected original works of authorship and works derived from it, unless and until Defendants Pinnacle and TCM are enjoined by this Court.

95. As a direct and proximate result of the acts of Defendants Pinnacle and TCM alleged above, Plaintiff has already suffered irreparable damage and has sustained lost profits. Plaintiff has no adequate remedy at law to redress all of the injuries that Defendants Pinnacle and TCM have caused and intend to cause by their conduct. Plaintiff will continue to suffer irreparable damages and sustain lost profits until Defendants Pinnacle and TCM's actions alleged above are enjoined by this Court.

96. Defendants Pinnacle and TCM's infringing acts and wrongful conduct were and, if continued hereafter, will be, committed knowingly and willfully.

**Defendant BSB's Contributory Infringement/Vicarious Liability Concerning Plaintiff's Copyrighted Villa II and Incorporated Original Works of Authorship**

97. Bloodgood Sharp Buster Architects & Planners of Illinois, Inc., ("BSB Illinois") is a corporation located in Palatine, Illinois. BSB Illinois is engaged in the business of, among other things, providing architectural services to builders of new homes, including, but not limited to, multi-family homes.

98. Defendant BSB and BSB Illinois are related entities. Defendant Bloodgood supervises, controls, and manages Defendant BSB and BSB Illinois. Defendant Bloodgood also collects and distributes the profits earned by Defendant BSB and BSB Illinois.

99. In late December 1999 through late February 2000, BSB worked closely with Defendants Pinnacle and TCM on a project known as a jurisdictional transfer. As part of this jurisdictional transfer, BSB forwarded to BSB Illinois the infringing back-to-back townhome designs and documents that BSB created for TCM and Pinnacle. BSB was paid for, and profited from, its involvement in the jurisdictional transfer.

100. BSB Illinois used the materials it received in the jurisdictional transfer to design, among other things, the Washington Square back-to-back townhomes known as the Garfield and Arlington for Defendant Pinnacle. The Garfield and Arlington designs and architectural works directly infringe on Rottlund's copyrights for its Villa II townhomes.

101. BSB has, among other things, induced, caused, participated, materially contributed to, and/or profited from BSB Illinois' infringing conduct of Rottlund's Villa II copyrights with knowledge of the infringing activity.

## PLAINTIFF'S CAUSES OF ACTION AGAINST DEFENDANTS PINNACLE, TCM, BSB, AND BLOODGOOD

### COUNT I
### Against Defendant TCM: Copyright Infringement Under 17 U.S.C. § 102(a)(5)

102. Plaintiff incorporates paragraphs 1 through 101 as though fully set forth herein.

103. By its actions alleged above, Defendant TCM has infringed and will continue to infringe on Plaintiff's copyright in and relating to its copyright protected original works of authorship by utilizing, promoting, constructing, producing, distributing, selling, offering for sale

and placing upon the market town homes and plans for town homes which are direct copies of Plaintiff's copyrighted original works of authorship.

104. Plaintiff is entitled to an injunction restraining Defendant TCM, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the copyright laws.

105. Plaintiff is further entitled to recover from Defendant TCM the damages it has sustained as a result of Defendant TCM's infringing conduct, including, but not limited to, Plaintiff's actual damages, Defendant TCM's direct and indirect profits, statutory damages, attorneys' fees, as well as any gains, profits and/or advantages obtained by Defendant TCM as a result of each sale attributable to Defendant TCM's acts of infringement.

106. Defendant TCM is also jointly and severally liable to Plaintiff for Plaintiff's actual damages, statutory damages, and attorneys' fees.

**COUNT II**
**Against Defendant TCM: Copyright Infringement Under 17 U.S.C. § 102(a)(8)**

107. Plaintiff incorporates paragraphs 1 through 106 as though fully set forth herein.

108. By its actions alleged above, Defendant TCM has infringed and will continue to infringe on Plaintiff's copyright in and relating to its copyright protected original works of authorship by utilizing, promoting, constructing, producing, distributing, selling, offering for sale and placing upon the market town homes and plans for town homes which are direct copies of Plaintiff's copyrighted original works of authorship.

109. Plaintiff is entitled to an injunction restraining Defendant TCM, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the copyright laws.

110. Plaintiff is further entitled to recover from Defendant TCM the damages it has sustained as a result of Defendant TCM's infringing conduct, including, but not limited to, Plaintiff's actual damages, Defendant TCM's direct and indirect profits, statutory damages, attorneys' fees, as well as any gains, profits and/or advantages obtained by Defendant TCM as a result of each sale attributable to Defendant TCM's acts of infringement.

111. Defendant TCM is also jointly and severally liable to Plaintiff for Plaintiff's actual damages, statutory damages, and attorneys' fees.

**COUNT III**
**Against Defendant TCM: Contributory Infringement**

112. Plaintiff incorporates paragraphs 1 through 111 as though fully set forth herein.

113. Upon information and belief, Defendant TCM, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of Pinnacle.

114. Upon information and belief, Defendant TCM has derived profits off sales of Infringing Town Home Units, Chateau Collection town home units, and other substantially similar products made or sold by Pinnacle.

115. Defendant TCM is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units, Chateau Collection town home units, and other substantially similar products made or sold by Pinnacle.

116. Defendant TCM is jointly and severally liable for statutory damages, the actual damages Plaintiff suffered, and attorneys' fees Plaintiff incurred, as a result of sales of Infringing Town Home Units, Chateau Collection town home units, and other substantially similar products made or sold by Pinnacle.

117. Defendant TCM, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of Defendant BSB and BSB Illinois.

118. Defendant TCM has profited from Defendant BSB's and BSB Illinois' infringing architectural designs for the Infringing Town Home Units.

119. Defendant TCM is jointly and severally liable for statutory damages, the actual damages Plaintiff suffered, and attorneys' fees Plaintiff incurred, as a result of Defendant Bloodgood's, Defendant BSB's and BSB Illinois' sales of infringing architectural designs for the Infringing Town Home Units.

**COUNT IV**
**Against Defendant TCM: Vicarious Liability**

120. Plaintiff incorporates paragraphs 1 through 119 as though fully set forth herein.

121. Upon information and belief, Defendant TCM has the right and ability to supervise the copyright infringement activities of Pinnacle.

122. Upon information and belief Defendant TCM has a direct financial interest in these copyright infringement activities.

123. Upon information and belief, Defendant TCM's economic interests are intertwined with the economic interests of Pinnacle.

124. Upon information and belief, Defendant TCM has derived profits from sales of Infringing Town Home Units, Chateau Collection town home units, and other substantially similar products made by Pinnacle.

125. Defendant TCM is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units, Chateau Collection town home units, and other substantially similar products made or sold by Pinnacle.

126. Defendant TCM is jointly and severally liable for statutory damages, the actual damages Plaintiff suffered, and attorneys' fees Plaintiff incurred, as a result of sales of Infringing

Town Home Units, Chateau Collection town home units, and other substantially similar products made or sold by Pinnacle.

127. Defendant TCM had the right and ability to supervise the copyright infringement activities of Defendant Bloodgood, Defendant BSB, and BSB Illinois.

128. Defendant TCM had a direct financial interest in the copyright infringement activities of Defendant Bloodgood, Defendant BSB, and BSB Illinois.

129. Defendant TCM has profited from Defendant Bloodgood's, Defendant BSB's, and BSB Illinois' infringing architectural designs for the Infringing Town Home Units.

130. Defendant TCM is jointly and severally liable for statutory damages, the actual damages Plaintiff suffered, and attorneys' fees Plaintiff incurred, as a result of Defendant Bloodgood's, Defendant BSB's, and BSB Illinois' sales of infringing architectural designs for the Infringing Town Home Units.

**COUNT V**
**Against Defendant TCM: False Advertising Under the Lanham Act**

131. Plaintiff incorporates paragraphs 1 through 130 as though fully set forth herein.

132. Upon information and belief Defendant TCM has knowingly and intentionally made false and misleading statements, descriptions, or representations of fact in interstate commerce in connection with the sale of the Infringing Town Home Units and/or Chateau Collection town home units through its advertising and promotional materials concerning the origin, source, characteristics, and/or design of the Infringing Town Home Units and/or Chateau Collection town home units.

133. Upon information and belief Defendant TCM's false and misleading statements have actually deceived and/or confused a substantial segment of the advertising audience, or have the capacity to deceive and/or confuse such segment.

134. Upon information and belief the false and misleading statements are material in that they cause deception and/or confusion that is likely to influence purchasing decisions.

135. Plaintiff has been or is likely to be injured as a result of Defendant TCM's false or misleading representations because of an actual and/or potential decline in sales or loss of goodwill.

136. Defendant TCM's failure to attribute to Plaintiff the authorship and copyright ownership of these copyright protected original works of authorship, in connection with the sale of each Infringing Town Home Unit and/or Chateau Collection town home unit, creates a false impression of the origin, source, characteristics, and/or design of the Infringing Town Home Unit and/or Chateau Collection town home unit.

137. Plaintiff is entitled to an injunction restraining Defendant TCM, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the Lanham Act.

138. Defendant TCM's wrongful acts have proximately caused and will continue to cause Plaintiff substantial injury, including loss of customers, dilution of its goodwill, and diminution of opportunity. The harm these wrongful acts will cause to Plaintiff is both imminent and irreparable, and the amount of damage sustained by Plaintiff will be difficult to ascertain if these acts continue. Plaintiff has no adequate remedy at law. At present, the amount of such damages cannot be fully ascertained by Plaintiff. Defendants Pinnacle and TCM are jointly and severally liable to Plaintiff for this conduct.

**COUNT VI**
**Against Defendant TCM: Violation of Minnesota Uniform Deceptive Trade Practices Act**

139. Plaintiff incorporates paragraphs 1 through 138 as though fully set forth herein.

140. Upon information and belief Defendant TCM has knowingly and intentionally made false and misleading statements, descriptions, or representations of fact in commerce in connection with the sale of the Infringing Town Home Units and/or Chateau Collection town home units through its advertising and promotional materials concerning the origin, source, characteristics, and/or design of the Infringing Town Home Units and/or Chateau Collection town home units.

141. Upon information and belief Defendant TCM's false and misleading statements have actually deceived and/or confused a substantial segment of the advertising audience, or have the capacity to deceive and/or confuse such segment.

142. Upon information and belief the false and misleading statements are material in that they cause deception and/or confusion that is likely to influence purchasing decisions.

143. Plaintiff has been or is likely to be injured as a result of Defendant TCM's false or misleading representations because of an actual and/or potential decline in sales or loss of goodwill.

144. Defendant TCM's failure to attribute to Plaintiff the authorship and copyright ownership of these copyright protected original works of authorship, in connection with the sale of each Infringing Town Home Unit and/or Chateau Collection town home unit, creates a false impression of the origin, source, characteristics, and/or design of the Infringing Town Home Unit and/or Chateau Collection town home unit.

145. Plaintiff is entitled to an injunction, pursuant to Minn. Stat. Ann. § 325D.45, restraining Defendant TCM, its officers, agents and employees, and all persons acting in concert

with them, from engaging in any further such acts in violation of the Minnesota Uniform Deceptive Trade Practices Act.

146. Defendant TCM's wrongful acts have proximately caused and will continue to cause Plaintiff substantial injury, including loss of customers, dilution of its goodwill, and diminution of opportunity. The harm these wrongful acts will cause to Plaintiff is both imminent and irreparable, and the amount of damage sustained by Plaintiff will be difficult to ascertain if these acts continue. Plaintiff has no adequate remedy at law. At present, the amount of such damages cannot be fully ascertained by Plaintiff. Defendants Pinnacle and TCM are jointly and severally liable to Plaintiff for this conduct.

**COUNT VII**
**Against Defendant Pinnacle: Copyright Infringement Under 17 U.S.C. § 102(a)(5)**

147. Plaintiff incorporates paragraphs 1 through 146 as though fully set forth herein.

148. By its actions alleged above, Defendant Pinnacle has infringed and will continue to infringe on Plaintiff's copyright in and relating to its copyright protected original works of authorship by utilizing, promoting, constructing, producing, distributing, selling, offering for sale and placing upon the market town homes and plans for town homes which are direct copies of Plaintiff's copyrighted original works of authorship.

149. Plaintiff is entitled to an injunction restraining Defendant Pinnacle, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the copyright laws.

150. Plaintiff is further entitled to recover from Defendant Pinnacle the damages it has sustained as a result of Defendant Pinnacle's infringing conduct, including, but not limited to, Plaintiff's actual damages, Defendant Pinnacle's direct and indirect profits, statutory damages,

attorneys' fees, as well as any gains, profits and/or advantages obtained by Defendant Pinnacle as a result of each sale attributable to Defendant Pinnacle's acts of infringement.

151. Defendant Pinnacle is also jointly and severally liable to Plaintiff for Plaintiff's actual damages, statutory damages, and attorneys' fees.

**COUNT VIII**
**Against Defendant Pinnacle: Copyright Infringement Under 17 U.S.C. § 102(a)(8)**

152. Plaintiff incorporates paragraphs 1 through 151 as though fully set forth herein.

153. By its actions alleged above, Defendant Pinnacle has infringed and will continue to infringe on Plaintiff's copyright in and relating to its copyright protected original works of authorship by utilizing, promoting, constructing, producing, distributing, selling, offering for sale and placing upon the market town homes and plans for town homes which are direct copies of Plaintiff's copyrighted original works of authorship.

154. Plaintiff is entitled to an injunction restraining Defendant Pinnacle, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the copyright laws.

155. Plaintiff is further entitled to recover from Defendant Pinnacle the damages it has sustained as a result of Defendant Pinnacle's infringing conduct, including, but not limited to, Plaintiff's actual damages, Defendant Pinnacle's direct and indirect profits, statutory damages, attorneys' fees, as well as any gains, profits and/or advantages obtained by Defendant Pinnacle as a result of each sale attributable to Defendant Pinnacle's acts of infringement.

156. Defendant Pinnacle is also jointly and severally liable to Plaintiff for Plaintiff's actual damages, statutory damages, and attorneys' fees.

**COUNT IX**
**Against Defendant Pinnacle: Contributory Infringement**

157. Plaintiff incorporates paragraphs 1 through 156 as though fully set forth herein.

158. Upon information and belief, Defendant Pinnacle, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of TCM.

159. Upon information and belief, Defendant Pinnacle has derived profits off sales of Infringing Town Home Units, Chateau Collection town home units, and other substantially similar products made or sold by TCM.

160. Defendant Pinnacle is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units, Chateau Collection town home units, and other substantially similar products made or sold by TCM.

161. Defendant Pinnacle is jointly and severally liable for statutory damages, the actual damages Plaintiff suffered, and attorneys' fees Plaintiff incurred, as a result of sales of Infringing Town Home Units, Chateau Collection town home units, and other substantially similar products made or sold by TCM.

162. Defendant Pinnacle, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of Defendant Bloodgood, Defendant BSB, and BSB Illinois.

163. Defendant Pinnacle has profited from Defendant Bloodgood's, Defendant BSB's, and BSB Illinois' infringing architectural designs for the Infringing Town Home Units.

164. Defendant Pinnacle is jointly and severally liable for statutory damages, the actual damages Plaintiff suffered, and attorneys' fees Plaintiff incurred, as a result of Defendant Bloodgood's, Defendant BSB's and BSB Illinois' sales of infringing architectural designs for the Infringing Town Home Units.

**COUNT X**
**Against Defendant Pinnacle: Vicarious Liability**

165. Plaintiff incorporates paragraphs 1 through 164 as though fully set forth herein.

166. Upon information and belief, Defendant Pinnacle has the right and ability to supervise the copyright infringement activities of TCM.

167. Upon information and belief Defendant Pinnacle has a direct financial interest in these copyright infringement activities.

168. Upon information and belief, Defendant Pinnacle's economic interests are intertwined with the economic interests of TCM.

169. Upon information and belief, Defendant Pinnacle has derived profits from sales of Infringing Town Home Units, Chateau Collection town home units, and other substantially similar products made by TCM.

170. Defendant Pinnacle is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units, Chateau Collection town home units, and other substantially similar products made or sold by TCM.

171. Defendant Pinnacle is jointly and severally liable for statutory damages, the actual damages Plaintiff suffered, and attorneys' fees Plaintiff incurred, as a result of sales of Infringing Town Home Units, Chateau Collection town home units, and other substantially similar products made or sold by TCM.

172. Defendant Pinnacle had the right and ability to supervise the copyright infringement activities of Defendant Bloodgood, Defendant BSB, and BSB Illinois.

173. Defendant Pinnacle had a direct financial interest in the copyright infringement activities of Defendant Bloodgood, Defendant BSB, and BSB Illinois.

174. Defendant Pinnacle has profited from Defendant Bloodgood's, Defendant BSB's, and BSB Illinois' infringing architectural designs for the Infringing Town Home Units.

175. Defendant Pinnacle is jointly and severally liable for statutory damages, the actual damages Plaintiff suffered, and attorneys' fees Plaintiff incurred, as a result of Defendant Bloodgood's, Defendant BSB's and BSB Illinois' sales of infringing architectural designs for the Infringing Town Home Units.

**COUNT XI**
**Against Defendant Pinnacle: False Advertising Under the Lanham Act**

176. Plaintiff incorporates paragraphs 1 through 175 as though fully set forth herein.

177. Upon information and belief Defendant Pinnacle has knowingly and intentionally made false and misleading statements, descriptions, or representations of fact in interstate commerce in connection with the sale of the Infringing Town Home Units and/or Chateau Collection town home units through its advertising and promotional materials concerning the origin, source, characteristics, and/or design of the Infringing Town Home Units and/or Chateau Collection town home units.

178. Upon information and belief Defendant Pinnacle's false and misleading statements have actually deceived and/or confused a substantial segment of the advertising audience, or have the capacity to deceive and/or confuse such segment.

179. Upon information and belief the false and misleading statements are material in that they cause deception and/or confusion that is likely to influence purchasing decisions.

180. Plaintiff has been or is likely to be injured as a result of Defendant Pinnacle's false or misleading representations because of an actual and/or potential decline in sales or loss of goodwill.

181. Defendant Pinnacle's failure to attribute to Plaintiff the authorship and copyright ownership of these copyright protected original works of authorship, in connection with the sale of each Infringing Town Home Unit and/or Chateau Collection town home unit, creates a false impression of the origin, source, characteristics, and/or design of the Infringing Town Home Unit and/or Chateau Collection town home unit.

182. Plaintiff is entitled to an injunction restraining Defendant Pinnacle, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the Lanham Act.

183. Defendant Pinnacle's wrongful acts have proximately caused and will continue to cause Plaintiff substantial injury, including loss of customers, dilution of its goodwill, and diminution of opportunity. The harm these wrongful acts will cause to Plaintiff is both imminent and irreparable, and the amount of damage sustained by Plaintiff will be difficult to ascertain if these acts continue. Plaintiff has no adequate remedy at law. At present, the amount of such damages cannot be fully ascertained by Plaintiff. Defendants Pinnacle and TCM are jointly and severally liable to Plaintiff for this conduct.

## COUNT XII
## Against Defendant Pinnacle: Violation of Minnesota Uniform Deceptive Trade Practices Act

184. Plaintiff incorporates paragraphs 1 through 183 as though fully set forth herein.

185. Upon information and belief Defendant Pinnacle has knowingly and intentionally made false and misleading statements, descriptions, or representations of fact in commerce in connection with the sale of the Infringing Town Home Units and/or Chateau Collection town home units through its advertising and promotional materials concerning the origin, source,

characteristics, and/or design of the Infringing Town Home Units and/or Chateau Collection town home units.

186. Upon information and belief Defendant Pinnacle's false and misleading statements have actually deceived and/or confused a substantial segment of the advertising audience, or have the capacity to deceive and/or confuse such segment.

187. Upon information and belief the false and misleading statements are material in that they cause deception and/or confusion that is likely to influence purchasing decisions.

188. Plaintiff has been or is likely to be injured as a result of Defendant Pinnacle's false or misleading representations because of an actual and/or potential decline in sales or loss of goodwill.

189. Defendant Pinnacle's failure to attribute to Plaintiff the authorship and copyright ownership of these copyright protected original works of authorship, in connection with the sale of each Infringing Town Home Unit and/or Chateau Collection town home unit, creates a false impression of the origin, source, characteristics, and/or design of the Infringing Town Home Unit and/or Chateau Collection town home unit.

190. Plaintiff is entitled to an injunction, pursuant to Minn. Stat. Ann. § 325D.45, restraining Defendant Pinnacle, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the Minnesota Uniform Deceptive Trade Practices Act.

191. Defendant Pinnacle's wrongful acts have proximately caused and will continue to cause Plaintiff substantial injury, including loss of customers, dilution of its goodwill, and diminution of opportunity. The harm these wrongful acts will cause to Plaintiff is both imminent and irreparable, and the amount of damage sustained by Plaintiff will be difficult to ascertain if

these acts continue. Plaintiff has no adequate remedy at law. At present, the amount of such damages cannot be fully ascertained by Plaintiff. Defendants Pinnacle and TCM are jointly and severally liable to Plaintiff for this conduct.

**COUNT XIV**
**<u>Against Defendant BSB: Copyright Infringement Under 17 U.S.C. § 102(a)(5)</u>**

192. Plaintiff incorporates paragraphs 1 through 191 as though fully set forth herein.

193. By its actions alleged above, Defendant BSB has infringed and will continue to infringe on Plaintiff's copyright in and relating to its copyright protected original works of authorship by utilizing, promoting, constructing, producing, distributing, selling, offering for sale and placing upon the market designs and plans for town homes which are direct copies of Plaintiff's copyrighted original works of authorship.

194. Plaintiff is entitled to an injunction restraining Defendant BSB, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the copyright laws.

195. Plaintiff is further entitled to recover from Defendant BSB the damages it has sustained as a result of Defendant BSB's infringing conduct, including, but not limited to, Plaintiff's actual damages, Defendant BSB's direct and indirect profits, statutory damages, attorneys' fees, as well as any gains, profits and/or advantages obtained by Defendant BSB as a result of each sale attributable to Defendant BSB's acts of infringement.

196. Defendant BSB is also jointly and severally liable to Plaintiff for Plaintiff's actual damages, statutory damages, and attorneys' fees.

**COUNT XV**
**Against Defendant BSB: Copyright Infringement Under 17 U.S.C. § 102(a)(8)**

197. Plaintiff incorporates paragraphs 1 through 196 as though fully set forth herein.

198. By its actions alleged above, Defendant BSB has infringed and will continue to infringe on Plaintiff's copyright in and relating to its copyright protected original works of authorship by utilizing, promoting, constructing, producing, distributing, selling, offering for sale and placing upon the designs and plans for town homes which are direct copies of Plaintiff's copyrighted original works of authorship.

199. Plaintiff is entitled to an injunction restraining Defendant BSB, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the copyright laws.

200. Plaintiff is further entitled to recover from Defendant BSB the damages it has sustained as a result of Defendant BSB's infringing conduct, including, but not limited to, Plaintiff's actual damages, Defendant BSB's direct and indirect profits, statutory damages, attorneys' fees, as well as any gains, profits and/or advantages obtained by Defendant BSB as a result of each sale attributable to Defendant BSB's acts of infringement.

201. Defendant BSB is also jointly and severally liable to Plaintiff for Plaintiff's actual damages, statutory damages, and attorneys' fees.

**COUNT XVI**
**Against Defendant BSB: Contributory Infringement**

202. Plaintiff incorporates paragraphs 1 through 201 as though fully set forth herein.

203. Upon information and belief, Defendant BSB, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of Bloodgood, Pinnacle, TCM, and/or BSB Illinois.

204. Upon information and belief, Defendant BSB has derived profits off sales of Infringing Town Home Units, their designs, and/or other substantially similar products made or sold by Bloodgood and/or BSB Illinois.

205. Defendant BSB is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units, their designs, and/or other substantially similar products made or sold by Bloodgood and/or BSB Illinois.

206. Defendant BSB is jointly and severally liable for statutory damages, the actual damages Plaintiff suffered, and attorneys' fees Plaintiff incurred, as a result of sales of Infringing Town Home Units, their designs, and/or other substantially similar products made or sold by Bloodgood, Pinnacle, TCM, and/or BSB Illinois.

**COUNT XVII**
**Against Defendant BSB: Vicarious Liability**

207. Plaintiff incorporates paragraphs 1 through 206 as though fully set forth herein.

208. Upon information and belief, Defendant BSB has the right and ability to supervise the copyright infringement activities of Bloodgood, Pinnacle, TCM, and/or BSB Illinois.

209. Upon information and belief Defendant BSB has a direct financial interest in these copyright infringement activities.

210. Upon information and belief, Defendant BSB's economic interests are intertwined with the economic interests of Bloodgood, Pinnacle, TCM, and/or BSB Illinois as it relates to the sale of the Infringing Town Home Unites and/or their designs.

211. Upon information and belief, Defendant BSB has derived profits from sales of Infringing Town Home Units, their designs, and/or other substantially similar products made by Bloodgood and/or BSB Illinois.

212. Defendant BSB is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units, their designs, and/or other substantially similar products made or sold by Bloodgood and/or BSB Illinois.

213. Defendant BSB is jointly and severally liable for statutory damages, the actual damages Plaintiff suffered, and attorneys' fees Plaintiff incurred, as a result of sales of Infringing Town Home Units, their designs, and/or other substantially similar products made or sold by Bloodgood, Pinnacle, TCM, and/or BSB Illinois.

**COUNT XVIII**
**Against Defendant Bloodgood: Copyright Infringement Under 17 U.S.C. § 102(a)(5)**

214. Plaintiff incorporates paragraphs 1 through 213 as though fully set forth herein.

215. By its actions alleged above, Defendant Bloodgood has infringed and will continue to infringe on Plaintiff's copyright in and relating to its copyright protected original works of authorship by utilizing, promoting, constructing, producing, distributing, selling, offering for sale and placing upon the market town homes and plans for town homes which are direct copies of Plaintiff's copyrighted original works of authorship.

216. Plaintiff is entitled to an injunction restraining Defendant Bloodgood, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the copyright laws.

217. Plaintiff is further entitled to recover from Defendant Bloodgood the damages it has sustained as a result of Defendant Bloodgood's infringing conduct, including, but not limited to, Plaintiff's actual damages, Defendant Bloodgood's direct and indirect profits, statutory damages, attorneys' fees, as well as any gains, profits and/or advantages obtained by Defendant Bloodgood as a result of each sale attributable to Defendant Bloodgood's acts of infringement.

218. Defendant Bloodgood is also jointly and severally liable to Plaintiff for Plaintiff's actual damages, statutory damages, and attorneys' fees.

**COUNT XIX**
**Against Defendant Bloodgood: Copyright Infringement Under 17 U.S.C. § 102(a)(8)**

219. Plaintiff incorporates paragraphs 1 through 218 as though fully set forth herein.

220. By its actions alleged above, Defendant Bloodgood has infringed and will continue to infringe on Plaintiff's copyright in and relating to its copyright protected original works of authorship by utilizing, promoting, constructing, producing, distributing, selling, offering for sale and placing upon the market town homes and plans for town homes which are direct copies of Plaintiff's copyrighted original works of authorship.

221. Plaintiff is entitled to an injunction restraining Defendant Bloodgood, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the copyright laws.

222. Plaintiff is further entitled to recover from Defendant Bloodgood the damages it has sustained as a result of Defendant Bloodgood's infringing conduct, including, but not limited to, Plaintiff's actual damages, Defendant Bloodgood's direct and indirect profits, statutory damages, attorneys' fees, as well as any gains, profits and/or advantages obtained by Defendant Bloodgood as a result of each sale attributable to Defendant Bloodgood's acts of infringement.

223. Defendant Bloodgood is also jointly and severally liable to Plaintiff for Plaintiff's actual damages, statutory damages, and attorneys' fees.

**COUNT XX**
**Against Defendant Bloodgood: Contributory Infringement**

224. Plaintiff incorporates paragraphs 1 through 223 as though fully set forth herein.

225. Defendant Bloodgood, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of Pinnacle, TCM, BSB, and/or BSB Illinois.

226. Defendant Bloodgood has derived profits off sales of Infringing Town Home Units, their designs, and/or other substantially similar products or services made or sold by Pinnacle, TCM, BSB, and/or BSB Illinois.

227. Defendant Bloodgood is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units, their designs, and/or other substantially similar products or services made or sold by BSB and/or BSB Illinois.

228. Defendant Bloodgood is jointly and severally liable for statutory damages, the actual damages Plaintiff suffered, and attorneys' fees Plaintiff incurred, as a result of sales of Infringing Town Home Units, their designs, and/or other substantially similar products or services made or sold by Pinnacle, TCM, BSB, and/or BSB Illinois.

**COUNT XXI**
**Against Defendant Bloodgood: Vicarious Liability**

229. Plaintiff incorporates paragraphs 1 through 228 as though fully set forth herein.

230. Upon information and belief, Defendant Bloodgood had the right and ability to supervise the copyright infringement activities of Pinnacle, TCM, BSB, and/or BSB Illinois.

231. Upon information and belief Defendant Bloodgood has a direct financial interest in these copyright infringement activities.

232. Upon information and belief, Defendant Bloodgood's economic interests are intertwined with the economic interests of BSB and BSB Illinois as it relates to the sale of the Infringing Town Home Units and/or their designs.

233. Upon information and belief, Defendant Bloodgood has derived profits from sales of Infringing Town Home Units, their designs, and/or other substantially similar products or services made by BSB and/or BSB Illinois.

234. Defendant Bloodgood is jointly and severally liable for the aggregate direct and indirect profits derived from sales of Infringing Town Home Units, their designs, and/or other substantially similar products or services made or sold by BSB and/or BSB Illinois.

235. Defendant Bloodgood is jointly and severally liable for statutory damages, the actual damages Plaintiff suffered, and attorneys' fees Plaintiff incurred, as a result of sales of Infringing Town Home Units, their designs, and/or other substantially similar products or services made or sold by Pinnacle, TCM, BSB and/or BSB Illinois.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendants BSB, Bloodgood, Pinnacle, and TCM as follows:

1. That the Court find that Plaintiff has a valid copyright in Copyright Registrations VAu 447-395 and VAu 534-723.

2. That the Court find that Defendants BSB, Bloodgood, Pinnacle, and TCM have infringed Plaintiff's copyrights.

3. That the Court find that Defendants BSB, Bloodgood, Pinnacle, and TCM's infringement has been knowing and willful.

4. That the Court find that there is a substantial likelihood that Defendants BSB, Bloodgood, Pinnacle, and TCM will continue to infringe Plaintiff's copyrights unless enjoined from doing so.

5. That the Court find that Defendants Pinnacle, and TCM have knowingly and willfully violated the Lanham Act and the Minnesota Uniform Deceptive Trade Practices Act.

6. That the Court find that Defendants BSB, Bloodgood, Pinnacle, and TCM are jointly and severally liable to Plaintiff for Plaintiff's lost profits and individually liable to Plaintiff for any of their respective profits attributable to infringements of Plaintiff's copyrights.

7. That Defendants BSB, Bloodgood, Pinnacle, and TCM, their directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined from directly or indirectly continuing to infringe Plaintiff's copyright and construct, advertise, market, offer, sell, display or develop any works derived or copied from Plaintiff's copyright protected original works of authorship or to participate or assist in any such activity.

8. That Defendants BSB, Bloodgood, Pinnacle, and TCM, their directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined to return to Plaintiff any and all originals, copies, facsimiles, or duplicates of the architectural design plans that infringe upon Plaintiff's copyright protected original works of authorship in their possession, control or custody.

9. That Defendants BSB, Bloodgood, Pinnacle, and TCM be required to file with the Court and to serve on Plaintiff, within 10 days after service of the Court's order as herein prayed, a written report, under oath, setting forth in detail the manner and form in which Defendants BSB, Pinnacle, and TCM have complied with the Court's order.

10. That judgment be entered for Plaintiff and against Defendants BSB, Bloodgood, Pinnacle, and TCM for Plaintiff's actual damages according to proof, and for any profits attributable to infringements of Plaintiff's copyright and/or Defendants Pinnacle and TCM's false advertising.

11. That judgment be entered for Plaintiff and against Defendants BSB, Bloodgood, Pinnacle, and TCM for statutory damages based upon Defendants BSB, Pinnacle, and TCM's acts of infringement for each infringing sale.

12. That Defendants BSB, Bloodgood, Pinnacle, and TCM be required to account for all gains, profits, and advantages derived from its acts of infringement, false advertising, and/or their other violations of law.

13. That all gains, profits, and advantages derived by Defendants BSB, Bloodgood, Pinnacle, and TCM from their acts of infringement, false advertising, and/or other violations of law be deemed to be held in constructive trust for Plaintiff's benefit.

14. That the Court enter judgment against Defendants BSB, Bloodgood, Pinnacle, and TCM for Plaintiff's costs and attorneys' fees.

15. That the Court enter judgment against Defendants BSB, Bloodgood, Pinnacle, and TCM for Plaintiff for such other and further relief as the court deems appropriate and equitable.

Dated: October 27, 2004

s/ David A. Davenport
Craig S. Krummen, #259081
David A. Davenport, #00285109
Winthrop & Weinstine, P.A.
**Attorneys for Plaintiff**
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
ddavenport@winthrop.com

2154871v1