UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,

Plaintiff,

v.

Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,

Defendants,

and

Town & Country Homes, Inc., a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

Civil No. 01-1980 (DSD/SRN)

**DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS AND PLANNERS OF IOWA, INC., AND THE BLOODGOOD GROUP, INC.'S OBJECTIONS TO THE OCTOBER 14, 2004 REPORT AND RECOMMENDATION**

**ORAL ARGUMENT REQUESTED**

Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. ("BSB") and The Bloodgood Group, Inc. ("BGI") submit the following objections to the Report and Recommendation issued by Magistrate Judge Nelson on October 14, 2004 (the "Report").

## I. THE REPORT ERRED IN CONCLUDING THAT PLAINTIFF'S LANHAM ACT CLAIM IS NOT DUPLICATIVE OF ITS COPYRIGHT CLAIM.

BSB and BGI moved the Court for summary judgment as to Plaintiff's Lanham Act claims, on the basis that these claims essentially duplicate Plaintiff's Copyright Act claim, and are therefore preempted. See, e.g., NBA v. Motorola, Inc., 105 F.3d 841, 848 (2nd Cir. 1997) (claims which seek to protect legal or equitable rights that are equivalent to one of the bundle of rights protected by the Copyright Act are preempted). In denying BSB and BGI's motion, the Court concluded that Plaintiff's copyright claim "addresses its injuries flowing from the alleged unauthorized use of its Villa II copyrights," while Plaintiff's Lanham Act claim "addresses its injuries from the alleged use of its designs without credit being given to Plaintiff as the original creator." Report at 8. However, both injuries identified in the Report---unauthorized use of copyrighted material and failure to give authorial credit---are, at their heart, copyright injuries. The right to be credited as an author is a right protected by the Copyright Act. 17 U.S.C. § 106A(a)(1)(A). The right to prohibit the unauthorized reproduction of copyrighted materials is also protected by the Copyright Act. 17 U.S.C. § 106(1). Because Plaintiff's Lanham Act claim seeks to protect rights secured by copyright (authorial credit and unauthorized use), that claim is preempted. BSB and BGI do not argue that *all* Lanham Act claims are necessarily preempted---the Report identifies several cases in which Lanham Act claims were found not preempted. However, when a plaintiff seeks to protect, under the guise of another statute, the rights protected by the Copyright Act, the Copyright Act preempts those claims. Such is the case here. For this reason, BSB and BGI respectfully request that the Court grant their motion, and determine that Rottlund's Lanham Act claims are preempted[1].

---

[1] The parties and the Court, in the Report, all agree that Plaintiff's Deceptive Trade Practices Act claim is subject to the same analysis as its Lanham Act claim. Therefore, no separate analysis of this claim is necessary. Should the

## II. THE REPORT ERRED IN CONCLUDING THAT GENUINE ISSUES OF MATERIAL FACT PRECLUDE A FINDING OF INDEPENDENT CREATION.

BSB and BGI moved the Court for summary judgment holding that BSB and BGI had independently created the Homestead Collection and Washington Square townhomes (the "Townhomes"). BSB and BGI argued that the facts in the record before the Court demonstrated, without contradiction, that BSB and BGI independently created the Townhomes. The Report notes that, in a previous report, the Court had found that genuine issues of material fact existed as to issues of direct evidence of copying and substantial similarity. The Court then denied BSB and BGI's motion, holding that, "[i]n light of this Court's previous ruling and the interconnection between the issues of copying and independent creation, the Court concludes that genuine issues of material fact precluding a finding, as a matter of law, of independent creation…." Report at 20.

The Court erred in concluding that, because there are genuine issues of material fact concerning infringement, there must be genuine issues of material fact concerning independent creation. Independent creation is an affirmative defense. See, e.g., Repp v. Webber, 132 F.3d 882, 889 (2nd Cir. 1997); CMM Cable Rep., Inc.. v. Ocean Coast Properties, 97 F.3d 1504, 1513, 1525 (1st Cir. 1990); Kootenia Homes, Inc. v. Reliable Homes, Inc., 2002 WL 15594 (D.Minn. 2002) (attached as Exhibit A to the Affidavit of Ben Patrick submitted in connection with the original motion). Thus, even if the Court had granted summary judgment in Plaintiff's favor determining that the Townhomes infringed on Plaintiff's copyright, the Court could still grant BSB and BGI's motion and determine, as a matter of law, that the undisputed facts in the record demonstrated that BSB and BGI independently created the Townhomes. The two issues are separate and distinct, and a finding of infringement does not preclude a finding of

Court conclude that Plaintiff's Lanham Act claim is preempted, the Court should also conclude that Plaintiff's Deceptive Trade Practices Act claim is preempted.

independent creation which eliminates liability. The Report discusses, at length, the evidence presented by BSB and BGI supporting their claim of independent creation. Report at 17-19. The Report contains no reference to any evidence submitted by Plaintiff to rebut BSB and BGI's evidence of independent creation, nor did the record before the Court contain any such evidence. Thus, BSB and BGI respectfully request that the Court grant their motion regarding independent creation.

## III. THE COURT ERRED IN CONCLUDING THAT THE ISSUE OF "THIN" COPYRIGHT PROTECTION HAS BEEN DECIDED.

While all people may be equal in the eyes of the law, the same does not hold true for copyrights. The author of an entirely original work is afforded complete copyright protection. The author of a derivative work is afforded copyright protection only for those elements original to the derivative work. 17 U.S.C. § 103(b) ("The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material."). The author of a work which combines and arranges standard elements in an original manner is afforded copyright protection only for that specific combination and arrangement of those specific elements. See, e.g., Feist Publications, Inc. v. Rural Telephone Service Company, 499 U.S. 340, 349-351 (1991); Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 136 (2nd Cir. 2003); Domingo Cambeiro Professional Corp., 2000 WL 262597 at *2 (9th Cir. 2000) (attached as Exhibit C to the Affidavit of Ben Patrick submitted in connection with the original motion).

The Court's October 19, 2004 Order, adopting the August 20, 2004 Report and Recommendation, holds that Plaintiff's copyrights are valid. However, the August 20, 2004, Report and Recommendation is silent on the subject of what level of copyright protection

Plaintiff's copyrighted work is to be afforded. Therefore, the Report erred in concluding that "it has previously ruled" on this issue and denying BSB and BGI's motion as moot. Report at 21.

The August 20, 2004 Report and Recommendation (adopted in total by the October 19, 2004 Order) granted Rottlund summary judgment on the first prong of the substantial similarity test based on the Court's conclusion that "the selection, arrangement, and combination of the elements expressed in the technical drawings are sufficiently original and detailed to be afforded copyright protection." August 20, 2004 Report at page 30. As the cases cited above make clear, when a copyrighted work does no more than select, arrange, and combine standard features in an arguably original way, courts have found that the resulting work is afforded only "thin" copyright protection. This determination makes a critical difference, for courts have found that when the copyrighted work is afforded only "thin" protection, even modest dissimilarities in the compared works are more significant than they would be in other works. Howard v. Sterchi, 974 F.2d 1272, 1276 (11th Cir. 1992); Ale House Mgt., Inc., 205 F.3d 137, 143 (4th Cir. 2000); Attia v. Society of NY Hospital, 201 F.3d 50, 58 (2nd Cir. 1999) (While the key is similarity rather than differences, nevertheless dissimilarity can be important in determining whether there is substantial similarity. Furthermore, dissimilarity in realization or expression can make it clear that the similarity extends only to unprotectable concepts or ideas); Kootenia Homes, 2002 WL 15594 at *6 (Dissimilarity may be important in determining whether there is substantial similarity).

The public policy rationale behind "thin protection" is both simple and compelling: if, by copyrighting a townhome that does no more than select, combine, and arrange standard or generic features, an architect could prevent the creation of any substantially similar townhome, that architect could gain a virtual monopoly over certain market segments. If Rottlund is given

the fullest measure of copyright protection, no other builder will be able to build a townhome which utilizes that same standard features that Rottlund has---kitchens, living rooms, dining rooms, fireplaces, bedrooms, two-sink bathrooms, etc. It is for this reason that authors who do no more than select, arrange and combine standard features are given only minimal copyright protection: in order to prevent *de facto* monopolies and encourage advancement in the arts and sciences.

Courts have routinely found that architectural works that do no more than select, arrange and combine standard features are entitled to no more than "thin" copyright protection. In disputes involving "thinly protected" architectural works, the courts have held that it is not sufficient to merely show that the floor plan and layout are generally similar where the treatment of other architectural elements reveals dissimilarities. See Howard, *supra* (In affirming summary judgment for defendant in log home design infringement claim, the court concluded that although the floor plans were visually similar and the layout was generally the same, the dissimilarities were significant, particularly in the roof lines, the dimensions of the rooms, the total area, and the use of bay windows); Kootenia, *supra* (While there are general similarities between the homes, the similarities do not exceed the ideas contained in the plaintiff's home plan. The court noted differences in living and overall space, roof lines, stair locations, number and configuration of windows, juxtaposition of master bath and walk-in closets, layout of mud room and laundry room, arrangement of second floor rooms, and treatment of home office); John Alden Homes, Inc. v. Kangas, 142 F.Supp.2d 1338, 1344-45 (M.D. Fla. 2001), aff'd 37 Fed Appx 979 (11th Cir. 2001) (Despite finding of actual copying of a portion of the floor plan, court found no substantial similarity of protected elements where there were numerous differences in detail including different room sizes, added "jut outs" in bath, family and bedroom, different

wall anglings, different master closet locations, etc.); LaJoie v. Pavcon, Inc., 146 F.Supp.2d 1240, 1247-48 (M.D. Fla. 2000) (Despite similarity of basic floor plans, there was no substantial similarity where allegedly infringing work was larger by over 1000 square feet, had a "European appearance" with different roof lines, a different pool area and veranda, and an additional portico extending from the house to the cabana).

The resolution of this issue will have a significant impact on the jury instructions and special verdict form, should the Court allow one. BSB and BGI's motion which is the subject of the Report was the only motion to place this issue before the Court, thus none of the Court's prior rulings should be deemed to have resolved this issue. BSB and BGI respectfully request that the Court determine that the scope of Plaintiff's copyright protection is limited to the particular combination and arrangement of the particular features selected by Plaintiff, and the Plaintiff must therefore show that the selection, combination and arrangement of features in the Homestead Collection is precisely the same as the selection, combination and arrangement of features in the Villa II in order to prove infringement.

**MACKALL, CROUNSE & MOORE, PLC**

Dated: October 28, 2004.

By: s/ Ben Patrick
Holly Newman (MN Bar #26457X)
Ben Patrick (MN Bar #312460)
1400 AT & T Tower
901 Marquette Avenue
Minneapolis, MN 55402-2859
Telephone: (612) 305-1400
Facsimile: (612) 305-1414

Attorneys for Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. and The Bloodgood Group, Inc.

JBP/jbp#722686v1