UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,

Plaintiff,

v.

Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,

Defendants,

and

Town & Country Homes, Inc., a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

Civil No. 01-1980 (DSD/SRN)

**DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS AND PLANNERS OF IOWA, INC., AND THE BLOODGOOD GROUP, INC.'S OBJECTIONS TO THE OCTOBER 25, 2004 REPORT AND RECOMMENDATION**

**ORAL ARGUMENT REQUESTED**

Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. ("BSB") and The Bloodgood Group, Inc. ("BGI") submit the following objections to the Report and Recommendation issued by Magistrate Judge Nelson on October 25, 2004 (the "Report").

**I. THE REPORT ERRED IN CONCLUDING THAT GENUINE ISSUES OF MATERIAL FACT EXIST AS TO THE DATE THE ALLEGED INFRINGEMENT COMMENCED.**

Defendant Town & Country Homes, Inc. ("TCM") moved for summary judgment seeking a determination, as a matter of law, that the alleged infringement commenced before the Plaintiff registered the copyrights at issue in this case. Report at 6. BSB and BGI join in this motion. The Court held that "[t]his case involves alleged violations of three copyrights: the Villa II technical drawings (registration number VAu 447-395); the Villa II architectural works (VAu 534-723); and The Reserve technical drawings (VAu 547-285)." Report at 7. Registration VAu 447-395 was applied for on June 17, 1999. See Eighth Amended Complaint at ¶ 18 and Exhibit C. Registration VAu 534-723 was applied for on January 4, 2002. See id. at ¶ 19 and Exhibit D. Registration VAu 547-285 was applied for on February 19, 2002. See id. at ¶ 20 and Exhibit K. Thus, the question posed by TCM's motion is whether or not the Defendants' alleged infringement commenced before June 17, 1999, the date of the earliest copyright registration at issue. TCM's motion presented the Court a variety of dates upon which the alleged infringement could be found to have commenced, all of which were substantially prior to June, 1999. See Report at 7-8. BSB's contract for schematic designs of the Homestead Collection was dated April 6, 1998. The schematic designs were completed that summer.

The Report recommends denial of TCM's motion on two bases. First, the Report concludes that Rottlund's prior copyrights in other works precludes a finding that the alleged infringement commenced before Rottlund registered the copyrights at issue in this matter. This conclusion is incorrect, because the Court has recognized that these other copyrights are not at issue in this litigation. The Report clearly identifies the three copyrights alleged to have been infringed. See Report at 7 (quoted above). The existence, and date of registration, of other

copyrights is not relevant to the Court's determination of the issue presented by TCM's motion: whether the Defendants' allegedly infringing conduct commenced prior to the date of registration of the copyrights which Defendants are alleged to have infringed. The Report erred in recommending a denial of TCM's motion based on copyrights which are not at issue in this lawsuit, and which Defendants are not alleged to have infringed.

The second basis upon which the Report recommends denial of TCM's motion regards certain alleged prior conduct on the part of BSB. In particular, Rottlund has alleged that BSB has, in the past, created two designs which infringe on another Rottlund product. The Report relies on these allegations in denying TCM's motion. Report at 8-9. This conclusion is incorrect for several reasons. First, all of this alleged conduct took place before the date of registration for the copyrights at issue in this matter. Therefore, even if this conduct is taken as the date infringement commenced, it is clear that that date is prior to the registration of the copyrights at issue. Second, Rottlund has not produced an ounce of evidence that BSB's prior products actually infringe on Rottlund's prior product. In the absence of any evidence to support Rottlund's allegations, the Report should have rejected the allegations as mere attorney arguments, which is all the allegations are[1]. The Report erred in recommending a denial of TCM's motion based on allegations that are entirely without factual support.

## II. THE REPORT ERRED IN CONCLUDING THAT ROTTLUND HAS PRESENTED EVIDENCE SUFFICIENT TO GET TO THE JURY ON THE ISSUE OF LOST SALES.

Actual damages must bear a "necessary, immediate and direct casual connection," to the defendant's infringement. Big Seven Music Corp. v. Lennon, 554 F.2d 504, 509 (2nd Cir. 1977). Additionally, actual damages must be factually supported and not based on undue

[1] The only *evidence* presented on this issue directly contradicts the *argument* made by Rottlund. Al Bloom, an independent architectural expert stated that BSB's earlier designs are not substantially similar to any Rottlund product.

speculation. Abeshouse v. Ultragraphics, Inc., 754 F.2d 467, 470 (2nd Cir. 1985). Rottlund's theory of actual damages is that it would have built and sold one Villa II townhome unit for every Homestead Collection unit built and sold by TCM. The fatal flaw in this argument is that Rottlund has produced absolutely no evidence to support this theory. The Report concludes that Rottlund has produced evidence that it could have purchased land to build Villa II units on. Report at 20. However, that conclusion does not establish the necessary immediate and direct causal connection to infringement necessary to establish actual damages. Nor does that conclusion establish that Rottlund lost even a single sale. The question is not whether Rottlund could potentially acquire land. Rather, Rottlund must demonstrate by credible evidence which sales were lost as a result of the infringement. Rottlund must also establish that it could build and sell one Villa II unit for each Homestead Collection unit built and sold by TCM. On that precise point, Rottlund has produced no evidence whatsoever.

Rottlund has an alternative theory of actual damages: that it lost sales to TCM in head-to-head competition between the two. Report at 23. Once again, the problem with Rottlund's theory is that it is entirely unsupported by evidence. The Report finds that TCM's developments competed with Rottlund's developments for customers, and concludes on this basis that material issues of fact preclude summary judgment. Report at 23-24. Once again, this conclusion misses the actual dispute: the question is not whether or not Rottlund and TCM compete; the question is whether Rottlund actually lost any sales as a result of the competition. Rottlund has not produced testimony from even a single purchaser that cancelled a purchase agreement with Rottlund in order to purchase a Homestead Collection townhome. In the absence of evidence that sales were actually lost, there is no material issue of fact for a jury to resolve. This was the conclusion that was ultimately reached by the court in Pfanenstiel Architects, Inc. v. Chouteau

Petroleum Co., 978 F.2d 430, 432 (8th Cir. 1992): when a plaintiff does not establish that the sales would in fact have taken place but for the infringement, the lost sales are too speculative to support an award. Because Rottlund has failed to satisfy its burden to come forward with the evidence required to establish actual damages, summary judgment is warranted as to these claims.

## III. THE REPORT ERRED IN DENYING SUMMARY JUDGMENT DISMISSING ROTTLUND'S CLAIM FOR ACTUAL DAMAGES RELATING TO OTHER PRODUCTS BUILT AND SOLD BY TCM.

The Defendants moved for summary judgment seeking dismissal of that portion of Rottlund's actual damages claim which sought actual damages for sales of products other than the Defendants' allegedly infringing product. Rottlund's theory of damages in this respect was that, for every single housing unit of any kind built in any development in which TCM built the Homestead Collection, Rottlund would have built and sold a similar replacement unit but for the infringement. Report at 33. The Report relies on Sunset Lamp Corp. v. Alsy Corp., 749 F.Supp. 520 (S.D.N.Y. 1990), as establishing that this theory of damages is appropriate. The Report erred in relying on Sunset Lamp for this proposition, for the Sunset Lamp case presented facts substantially different to those presented in this case, and which were material to the Sunset Lamp court's holding. In particular, the plaintiff there contended that "it is common practice in the lamp business for department stores to purchase an entire line from a manufacturer, and defendants' sale of an infringing version of the floor lamp at a lower price disrupted Sunset's plans to penetrate this market." Sunset Lamp, 749 F.Supp. at 522. Thus, the theory on which Sunset Lamp was allowed to proceed was as follows: a purchaser of lamps does not purchase lamps one at a time, but rather purchases an entire line of lamps at once. Thus, Alsy's infringement of one model of lamp has cost Sunset sales on its entire line of lamps. In stark

contrast, home purchasers do not simultaneously purchase more than one home. Thus, it cannot be said (nor has Rottlund presented any evidence to support the conclusion that) TCM's sale of the Homestead Collection has cost Rottlund sales of models other than the Villa II.

However, even if Sunset Lamp were applicable to this case, it remains that Rottlund has utterly failed to produce the sort of evidence the Sunset Lamp court concluded would be necessary to proceed: "Plaintiff will have to demonstrate by credible evidence a relationship between sales of non-infringed items and sales of the infringed floor lamp, and further show which sales were prevented as a result of defendants' infringement." Sunset Lamp, 749 F.Supp. at 524-25 (quoted in the Report at page 33-34). Rottlund has produced no evidence connecting sales of its non-infringed items with sales of its allegedly infringed Villa II[2]. Nor has Rottlund produced any evidence to show which sales were prevented as a result of the alleged infringement (other than to broadly aver that "all of them" were prevented). Rottlund has failed to meet the evidentiary threshold set by Sunset Lamp, thus even if the holding in Sunset Lamp were applicable here, Rottlund's claim should be dismissed.

## IV. TO THE EXTENT THAT THE REPORT CONCLUDED THAT TOWN & COUNTRY COULD SEEK INDEMNITY OR CONTRIBUTION FROM BSB OR BGI FOR ANY ATTORNEYS' FEES AWARDED AS PART OF AN AWARD UNDER MINN. STAT. § 325D.45, THE REPORT ERRED.

BSB and BGI moved the Court for an order determining that Rottlund could not recover money damages under Minn. Stat. § 325D.45, the Minnesota Uniform Deceptive Trade Practices Act. BSB and BGI noted that they brought the motion in order to avoid any claim by TCM for contribution and/or indemnity (since Rottlund has not made a direct claim against BSB or BGI

[2] The Report concludes that this evidentiary requirement is fulfilled by Rottlund advertising materials which contend that buyers can, at various stages in their lives, move from one Rottlund product to another. Report at 36. This evidence is insufficient for several reasons: first, it does not prove that such "moving up" actually occurs, it only indicates that it would be possible for one to do so; second, these alleged purchases are far too speculative and remote in time to satisfy the standard established in Sunset Lamp.

under Minn. Stat. § 325D.45). The Report recommended that this motion be granted, but noted that attorneys fees and costs could be awarded under Minn. Stat. § 325D.45. The Report did not address whether TCM might have a valid claim for contribution and/or indemnity should such an award be made. Under Minn. Stat. § 325D.45, subd. 2, attorneys fees can be awarded only if "the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." Neither contribution nor indemnity can be had where liability stems from a willful act. See, e.g., Skaja v. Andrews Hotel Co., 161 N.W.2d 657, 660 (Minn. 1968). BSB and BGI ask that the Court clarify the Report, such that it is clear that TCM has no action against BSB or BGI for contribution or indemnity should an award of attorneys fees be entered against TCM on Rottlund's Minn. Stat. § 325D.45 claim.

## V. BSB AND BGI JOIN PINNACLE AND TCM'S OBJECTIONS TO THE REPORT AND RECOMMENDATION.

BSB and BGI join Pinnacle and TCM in their objection to the October 25, 2004 Report and Recommendation and respectfully request that the Court grant all Defendant's motions for summary judgment on damages issues.

**MACKALL, CROUNSE & MOORE, PLC**

Dated: November 1, 2004.

By: s/ Ben Patrick
Holly Newman (MN Bar #26457X)
Ben Patrick (MN Bar #312460)
1400 AT & T Tower
901 Marquette Avenue
Minneapolis, MN 55402-2859
Telephone: (612) 305-1400
Facsimile: (612) 305-1414

Attorneys for Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. and The Bloodgood Group, Inc.

JBP/jbp#723340v1