UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br><br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE OF THE RELIGIOUS BELIEFS OF PARTIES, WITNESSES AND INDIVIDUALS** |

## INTRODUCTION

Pursuant to Rule 610 of the Federal Rules of Evidence, Rottlund requests an Order from the Court precluding all evidence of the religious beliefs of parties, witnesses and individuals.

## FACTUAL BACKGROUND

Responding to questions from its joint-defense partner Defendant Pinnacle Corporation ("Pinnacle"), Defendant Bloodgood Sharp Buster Architects & Planners of Iowa, Inc. ("BSB") testified, through its corporate designee Doug Buster, that one of the reasons that it knows that it is wrong to copy someone else's design is the fact that several of BSB's partners are Christians with strong morals and ethics.[1] For instance, the following exchange occurred between Pinnacle's counsel and Mr. Buster during BSB's Rule 30(b)(6) deposition:

> Q. Is there any reason that an architect or a nonarchitect working for BSB would know that it's wrong to copy another designer's work?
>
> A. Well, a lot of reasons you would know it. Those who have architectural training are certainly taught ethics through -- both through the AIA and certainly the -- the -- the process of being an architect. In general our company is recognized as a leader in the industry. We expand that reputation to any employee who has ever joined us. I'm not trying to expound my beliefs, but both Doug Sharp and I are Christians. We try to run a Christian business in the best way that we can. We have several partners who we know are strong Christians who have ethical beliefs similar to ours. And all of our partners who run individual regions and divisions are handpicked partners that we believe have very strong moral character or strong ethics and would run a company the way that we'd want the company run.
>
> Q. And to copy another's plans would essentially violate that tenet that you learned at some point in time that said, "Thou shalt not steal," correct?
>
> A. Well, I don't know that we've ever thought of it in that terms. What we would think of it in terms of it wouldn't -- certainly would be an unnecessary process for a firm who is expounded to be a strong -- considered a strong design firm . . ..

(Affidavit of David A. Davenport ("Davenport Aff."), Ex. A at 152:14-153:17.)

---

[1] Rottlund respectfully notes that in bringing this motion is does not challenge the religious beliefs of any witnesses or individuals in any manner.

## LEGAL ARGUMENT

"Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced." F.R.E. 610 (2004). Several policy considerations support the rule against admitting evidence of religious beliefs: (1) it has very little probative value; (2) it is highly prejudicial because "the jury may overweigh the extent to which evidence of religious belief or lack thereof is probative of truthfulness or untruthfulness; (3) if the witness is a party, like here, evidence of religious beliefs may cause the jury to draw inferences about the party's actions; and (4) evidence of a party's religious beliefs "might induce a jury to simply ignore the issues and base a verdict on the extent to which those beliefs are acceptable." Wright & Gold, *Federal Practice and Procedure: Evidence* § 6152. As a result, "Rule 610 states an absolute rule of exclusion without room for *ad hoc* balancing because of the importance of the values that would be undermined by the prejudicial effects of this evidence." *Id.*

The only circumstances under which evidence of religious beliefs may be admissible is if the evidence is offered to show interest or bias for impeachment purposes. *Firemen's Fund Ins. Co. v. Thien*, 63 F.3d 754, 761 (8th Cir. 1995) (district court properly excluded evidence of the tenet of the religion in which the company director was the pastor and to which two witnesses belonged because the evidence was offered for credibility purposes and did not tend to show bias; district court properly admitted proof that all three individuals belonged to the same church because the evidence may have shown bias through religious affiliation). This exception is not applicable here. As the above testimony demonstrates, the joint-defense partners have coordinated their efforts and hope to prejudice the jury by offering evidence of parties', witnesses' and individuals' religious beliefs for the sole purpose of attempting to enhance or

rehabilitate the credibility of those responsible for and involved in the copying of Rottlund's designs. Stated differently, the joint-defense partner Defendants are not seeking to elicit testimony from one another concerning their religious affiliations in order to show their own bias. Thus, the Court should find all evidence of religious beliefs inadmissible.

## CONCLUSION

Based on the foregoing, Rottlund respectfully requests that this Court grant its instant motion.

Dated: November 1, 2004

s/David A. Davenport
Craig S. Krummen, #259081
David A. Davenport, #285109
Suite 3500
225 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 604-6716
Facsimile: (612) 604-6816
Attorneys for Plaintiff The
Rottlund Company, Inc.

2153166v1