UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE OF AND REFERENCES TO ANY BACK-TO-BACK TOWNHOMES THAT ARE NOT AT ISSUE IN THIS CASE** |

## INTRODUCTION

Rottlund will prevail on its architectural copyright infringement claims if it proves "(1) ownership of a valid copyright and (2) copying of its copyrighted work by the defendant." [Doc. No. 347 at p. 6 (citing *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 941 (8th Cir. 1992); *Kootenia Homes, Inc. v. Reliable Homes, Inc.*, 2002 WL 15594, *4 (D. Minn. 2002)).

The Court rejected the Defendants' claims that Rottlund does not own valid copyrights because its architectural designs are unoriginal and granted Rottlund summary judgment that it owns valid copyrights protecting the "'form … [,] arrangement and composition of spaces and elements in [building] design ...'."[1] (Order, 10/19/04, pp. 2-3.) Thus, Rottlund has satisfied the first element of the two-part infringement test.[2] As a result, the Court should exclude all evidence of and references to any back-to-back townhomes that are not at issue in this case because such evidence is not relevant to the remaining question of whether the Defendants copied Rottlund's copyrighted works. Stated differently, because the Court resolved originality questions in Rottlund's favor, evidence and references concerning the Defendants' claims of unoriginality, including evidence of and references to back-to-back townhomes that are not at issue here, are not relevant and should be excluded.

## <u>FACTUAL BACKGROUND</u>[3]

Rottlund owns valid copyrights for its Original Villa, New Villa and Villa II back-to-back townhome designs. (Order, 8/20/04, pp. 14-28, adopted in its entirety by Order, 10/19/04.) Rottlund's copyrights protect the combination, selection and arrangement of the elements which comprise the layout, location, placement and proportions (gestalt or total look and feel) of its Villa designs. *Id.* at 30 ("the Court finds that the selection, arrangement, and combination of the

[1] The Copyright Act protects Rottlund's designs as both technical drawings and architectural works. 17 U.S.C. §§ 102(a)(5) and (a)(8) (2004). Section 102(a)(8) of the Copyright Act protects Rottlund's designs and as-built structures as architectural works. Section 102(a)(5) of the Copyright Act protects Rottlund's designs as technical drawings. The Court has concluded that its legal analysis concerning Rottlund's Villa generation (Original Villa, New Villa and Villa II) designs protected by technical drawing copyright registrations "nearly compels granting of summary judgment in Rottlund's favor of ownership and validity of the *architectural works copyrights* as well . . .." (Order, 8/20/04, p. 28, adopted in its entirety by Order, 8/19/04) (emphasis in original).

[2] Rottlund has also satisfied most of the requirements necessary to establish the second element of the infringement test. (Order, 8/20/04.)

[3] The Court's recent Orders find and/or discuss many of these facts. (*See* Order, 8/20/04, adopted in its entirety by Order, 10/19/04; Order, 10/25/04; Order, 10/28/04).

elements expressed in the technical drawings are sufficiently original and detailed to be afforded copyright protection"), adopted in its entirety by Order, 10/19/04, p. 3.)

All of the Defendants[4] affirmatively claim that the townhomes Rottlund alleges infringe its copyrights – the Homestead Collection, Washington Square Back-to-Backs, and Chateau Collection townhomes – were independently created and do not infringe Rottlund's copyrights. [Doc. No. 435, Pinnacle's Affirmative Defense No. 8 at p. 30; Doc. No. 433, TCM's Affirmative Defenses Nos. 8-9 at p. 29; Doc. No. 429, BSB's Affirmative Defense No. 250 at p. 51; Doc. No. 428, BGI's Affirmative Defense No. 250 at p. 49.]

BSB architect Larry Moore assembled the Town & Country Homes Defendants' Homestead Collection townhomes constructed and sold throughout the Twin Cities suburbs. (Affidavit of David A. Davenport in Support of Plaintiff's Motion in Limine to Exclude All Evidence of and References to any Back-to-Back Townhomes That Are Not at Issue in This Case ("Davenport Aff."), Ex. A at ¶ 2.) Pursuant to his sworn testimony and affidavit previously filed with the Court, Mr. Moore referenced and relied upon three back-to-back townhome projects he had previously worked on for BSB when he assembled the Homestead Collection: (1) Good Value Homes; (2) Midland Homes; and (3) Jerry's Homes. (*Id.* at ¶ 5; Ex. B at 12:24-13:6; Ex. C at 15:18-16:5; Order, 8/20/04, pp. 9-10.) In fact, Mr. Moore testified that the placement and arrangement of room locations and elements for the Homestead Collection came from his review of these prior project files. (*Id.*, Ex. C at 15:18-16:5.)

The Town & Country Homes Defendants also constructed these infringing Homestead Collection townhomes in Illinois. Specifically, the Town & Country Homes Defendants took the

[4] The Defendants are Pinnacle Corp. d/b/a Town & Country Homes ("Town & Country Homes – Illinois") and its Minnesota Division, Defendant Town & Country Homes, Inc. ("TCM") (collectively the "Town & Country Homes Defendants"), Bloodgood Sharp Buster Architects & Planners of Iowa, Inc. ("BSB"), and The Bloodgood Group, Inc. ("BGI") (collectively the "Bloodgood Defendants").

Homestead Collection townhome designs from the Minnesota market to the Chicago market because there was no direct competition for this townhome design in the Chicago market. (Davenport Aff., Ex. D.) As explained more fully in a Town & Country Homes' interoffice memorandum:

> [t]he back-to-back townhomes for Homestead, Aurora [Illinois] will be developed from the working drawings originally prepared for Maple Grove, Minnesota. This product form lacks the direct competition found in the Minnesota market and therefore will not need to be all things to all people. We need to meet on a script to identify options for the Chicago plans before I can finalize the architect's scope of work.

(*Id.*) Once the Town & Country Homes Defendants finalized the outside architect's scope work, the Bloodgood Defendants' architect Doug Buster was selected to perform the work. (*Id.*, Ex. E at 133:25-134:24.) Mr. Buster testified that he performed this work in a mere "day and a half or two" because he simply "re-elevated" the Homestead Collection townhome designs. (*Id.* at 69:11-25; 138:16-139:8.) Defendant BGI admits its involvement in this re-elevation of the Homestead Collection for construction and sale in Chicago. (Doc. No. 428, ¶ 250.) The Town & Country Homes Defendants then renamed the re-elevated Homestead Collection townhomes to the Washington Square Back-to-Back townhomes. (Davenport Aff., Ex. F at 191:3-12.)

Thereafter, on March 12, 2002, the Town & Country Homes Defendants submitted a proposal for a residential community called Traditions at Clover Field to the City of Chaska, Minnesota. (*Id*. Ex. G.) On April 15, 2002, the Town & Country Homes Defendants submitted a revised proposal to the City of Chaska, which included a proposal to develop the Homestead Collection townhomes. (*Id.*, Ex. H.) On May 20, 2002, the City of Chaska passed and adopted a resolution approving the Town & Country Homes Defendants' proposed development as whole. (*Id.*, Ex. I.) Similarly, on August 1, 2002, the Town & Country Homes Defendants submitted a "proposed Pinebrook community" plan to the City of Brooklyn Park, Minnesota. (*Id.*, Ex. J.)

Their proposal was to develop a community comprised entirely of Homestead Collection townhomes. (*Id.*) The City of Brooklyn Park approved the proposal for development in October 2002. (*Id.*, Ex. K.) However, after gaining approval to construct and sell the enormously successful Homestead Collection townhomes, the Town & Country Homes Defendants requested that the City of Chaska and the City of Brooklyn Park permit them to make minor design changes to the previously approved Homestead Collection designs.

For instance, on October 18, 2002, the Town & Country Homes Defendants explained the minor design changes in a facsimile to a Brooklyn Park representative: "We basically added a porch to the end as opposed to just a stoop, added dormers to the ends and kept the shutters on the ends." (*Id.*, Ex. L.) Likewise, on October 25, 2002 and again on November 12, 2002, the Town & Country Homes Defendants explained to Brooklyn Park that some "enhancements" had been made to the "revised architectural elevations." (*Id.*, Exs. M and N.) Similarly, on March 21, 2003, the Town & Country Homes Defendants explained the revisions as "enhancements" and outlined the following differences to the City of Brooklyn Park:

> The attached architectural elevations show the enhancements. Gables were added to break up the mass of the roofline and end elevations. Two different end unit styles/floor plans are now offered. One style features an entrance from the end with an angled living room/bedroom area, while the other enters from the same side as the private driveway without the angle while still offering a porch on the end elevation.

(*Id.*, Ex. O.) Ultimately, the Town & Country Homes Defendants' revised Homestead Collection townhomes in Chaska and Brooklyn Park were renamed the Chateau Collection townhomes. Thus, in an April 4, 2003 memorandum to the City of Chaska, the Town & Country Homes Defendants described the Chateau Collection as "architectural enhancements on the back-to-back product (Homestead Collection) at Traditions." (*Id.,* Ex. P.)

According to the Town & Country Homes Defendants, they were "excited to offer these architectural enhancements" and they requested that Brooklyn Park and Chaska permit them to develop these revised Homestead Collection townhomes in place of the previously approved version of the Homestead Collection townhomes. (*Id.*, Ex. O at D33168.) Based on the Town & Country Homes Defendants' representations regarding the limited scope of the "revisions" or "enhancements" to the Homestead Collection designs, both Brooklyn Park and Chaska approved the Town & Country Homes Defendants' proposal to develop and sell the Chateau Collection townhomes.[5]

Thus, the following back-to-back townhomes are at issue in this case: (1) Rottlund's Original Villa, New Villa, and Villa II townhomes; (2) Town & Country Homes' Homestead Collection, Washington Square Back-to-Back, and Chateau Collection townhomes; (3) Midland Homes' townhomes relied upon by BSB; (4) Jerry's Homes' townhomes relied upon by BSB; and (5) Good Value Homes' townhomes relied upon by BSB.[6]

**LEGAL ARGUMENT**

The Court should exclude all evidence and references related to any back-to-back townhomes that are not at issue in this case because the law of the case is that Rottlund owns valid copyrights covering the works at issue here. *Engineered Products Co. v. Donaldson Co., Inc.*, 313 F.Supp.2d 951, 992 (N.D. Iowa 2004) (summary judgment ruling regarding some of the defendant's defenses were determined as a matter of law and became the law of the case). When it established this fact as the law of the case, the Court disposed of the Defendants' claims that

[5] The Town & Country Homes Defendants hired Tushie Montgomery Architects ("TMA") to assist them with these "architectural enhancements" to the Homestead Collection and entered into contracts with TMA requiring TMA to "[r]eview all available information completed for the project." (*Id.,* Exs.Q-S.) Rottlund's former in-house architect Tim Johnson, who had access to and worked on Rottlund's Villa II designs and who was subsequently on the Town & Country Homes Defendants' Homestead Collection design "red-line" team, executed the contracts with TMA. (*Id.*)

[6] Through separate motion, Rottlund will seek a negative inference concerning Good Value Homes.

Rottlund's copyrighted works are invalid because they are unoriginal. *Pioneer Hi-Bred International, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 145 (N.D. Iowa 2003) (granting motion to exclude evidence of defendant's patent exhaustion defense because the Court disposed of the defense in its summary judgment ruling). Thus, evidence of back-to-back townhomes that are not at issue in this case is not relevant because it has no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable . . .." F.R.E. 401 (2004). Stated differently, because the Court found that no genuine issues of material fact exist concerning the originality of Rottlund's copyrighted works at issue here, all evidence of and references to back-to-back townhomes that are not at issue in this case become irrelevant to the determination of the claims that will be presented to the jury; thus, it is not admissible. F.R.E. 402 ("[e]vidence which is not relevant is not admissible"); *see also Johnson v. Land O' Lakes, Inc.*, 181 F.R.D. 388, 395 (N.D. Iowa 1998) (agreeing with the defendant's decision not to object to the exclusion of references to parties' claims that were disposed of through summary judgment because such evidence is not relevant); *EZ Dock, Inc. v. Schafer Systems, Inc.*, 2003 WL 1610781, *12 (D. Minn. 2003) (granting motion in limine to preclude defendants from offering evidence and argument that would contradict the Court's claim construction because the Court previously established the law of the case through its claim construction order). The Defendants should not be permitted to relitigate the originality of Rottlund's copyrighted works in light of the law of this case. *KPERS v. Blackwell, Sanders, Matheny, Weary & Lombardi, L.C.,* 114 F.3d 679, 687 (8th Cir. 1997) ("The law of the case doctrine precludes the relitigation of a settled issue in the case and requires courts to adhere to decisions made in earlier proceedings."); *Little Earth of the United Tribes, Inc. v. United States Dep't of Housing & Urban Dev.*, 807 F.2d 1433, 1441 (8th Cir. 1986).

Consequently, the Court should preclude the Defendants from providing testimony and references like the following:

> My opinion of back-to-back is that it is an old product. It is a product that is built in cities that do not have aggressive multifamily programs. It is a product that is very old and very familiar throughout the entire design industry. It is a product that has been built from California to Florida, all through the Chicago area, long before I ever came to Chicago and long before we ever came to Minneapolis. It is an old product. It is somewhat of an outdated product, and it's being built in – in markets that are not aggressive. Either in Minneapolis or in Aurora, in terms of their multifamily product offering, it is not needed to be aggressive. So yes, it is a very old product in all cases.

(Davenport Aff., Ex. E at 84:13 – 85:3.)

## CONCLUSION

Based on the foregoing, Rottlund respectfully requests that this Court grant its instant motion.

Dated: November 1, 2004.

s/David A. Davenport
Craig S. Krummen, #259081
David A. Davenport, #285109
Winthrop & Weinstine, P.A.
Suite 3500
225 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 604-6716
Facsimile: (612) 604-6816
Attorneys for Plaintiff The Rottlund Company, Inc.

2152749v1