UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | ) | No.: 01-CV-1980 (DSD/SRN)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE ANY WEIGHT BEING GIVEN TO THE INTERPOSITION OF A DEFENSE BASED ON INNOCENT INFRINGEMENT AND TO EXCLUDE ADMISSION OF ALL EVIDENCE OF THIS DEFENSE** |

## INTRODUCTION

As a matter of law, the Defendants cannot avail themselves of the "innocent infringement" defense. The Copyright Act explicitly provides that *no weight* should be given to a defendant's interposition of a defense based on innocent infringement, where as here, the

Defendants had access to Rottlund's brochures, technical drawings and architectural works containing notice of copyright. *See* 17 U.S.C. § 401(d). The Defendants, therefore, shall receive no reduction of actual or statutory damages from their infringement of Rottlund's copyrighted material. Accordingly, Rottlund respectfully requests that this Court grant its motion in limine to preclude any weight being given to the interposition of a defense of innocent infringement and to exclude admission of all evidence of this defense.

## FACTUAL BACKGROUND

### I. ROTTLUND'S COPYRIGHT NOTICES ARE PROPER.

Rottlund's copyright notices contain the requisite © symbol or the word "Copyright," the year of the first publication of work, and the owner's name ("Rottlund"). (*See* Affidavit of David A. Davenport in Support of Plaintiff's Motion in Limine to Preclude Any Weight Being Given to the Interposition of a Defense Based on Innocent Infringement and to Exclude Admissions of all Evidence of this Defense ("Davenport Aff."), Ex. A at DDI000021-23; Ex. B at 3-4; Ex. C at 2-3; Ex. D at RC101840-43; Ex. E at RCI004150-55, 58-61, 63-66; Ex. F at D0001-13; Ex. G). Moreover, Rottlund's copyrights are affixed to the upper right-hand corner or the lower left or right-hand corners of the material which gives reasonable notice of its claim of copyright. (*Id.*) Indeed, TCM's own alleged copyrights are affixed in the same manner.[1] (*Id.*, *compare with* Ex. H at RCI000105, 111, 113, 126, 128, 134, and 138-139.)

### II. THE COURT HAS ALREADY HELD THAT DEFENDANTS HAD ACCESS TO ROTTLUND'S PLANS WITH A COPYRIGHT NOTICE ON THEM.

#### A. Relevant Facts.

"In 1994, or after the Original Villa and New Villa were created, [Defendant Bloodgood Sharp Buster Architects & Planners of Iowa, Inc.] ("BSB") was working on drawings for Midland

[1] TCM's copyrights are in the lower left-hand corner or lower middle page.

Homes." *The Rottlund Co. v. Pinnacle Corp., et al.*, 2004 WL 1879983, *4 (D. Minn. 2004). "BSB outsourced some of the drawings to another entity named Design, Development Inc." *Id.* "BSB architect Larry Moore gave Design Development a copy of Rottlund's floor plans [for one of its Villa products]." *Id.* "BSB performed a "cut and paste" job on Rottlund's Villa floor plans and elevations and cut off Rottlund's logo and copyright notice during this process." *See Id.* (Davenport Aff., Ex. I at 229:12-230:11; Ex. J; Ex. A at DDI000021-22). "[Larry Moore] or BSB gave the cut and paste Rottlund floor plan to Design Development" and signed a contract that provided the finished design would be "similar to the Rottlund Homes plans . . . " *The Rottlund Co.,* 2004 WL 1879983, *5 (Davenport Aff., Ex. K). BSB subsequently asked itself if the design was enough "departure" from Rottlund's Villa designs to avoid copyright liability. *The Rottlund Co.*, 2004 WL 1879983, *5 (Davenport Aff., Ex. L). BSB then used these infringing designs to prepare the Homestead Collection designs. (*Id.*, Ex. I at 15:18-16:4; Ex. M at 19:21-20:25.)

"[O]n March 11, 1997, Jerry's Homes [for whom BSB was designing a back-to-back townhome] sent BSB architect Chris Jorgenson a fax that contained a Rottlund brochure for the Villas of Meredith Pointe floor plan." *The Rottlund Co.,* 2004 WL 1879983, *5. Subsequent to receiving the fax, BSB altered its construction drawings. *Id.* "In March 1998, Moore and Jorgenson of BSB and Art Plante [President] of [Defendant TCM] toured a variety of townhomes in Minnesota including Rottlund's Villa II." *Id.* Another tour of Rottlund's Villa II, by Plante and Defendant Pinnacle's in-house architect, Steve Sandelin, occurred on April 29, 1998. *Id.* The "Defendants have produced copies of Rottlund brochures, including brochures with floor plans from Sandelin's files." *Id.*

"TCM has hired a number of former Rottlund employees." *Id.* "While at Rottlund [architect] Tim Johnson worked on the design and development of Rottlund's Villa II project." *Id.*

"Sometime thereafter, TCM hired Tim Johnson as an architectural coordinator." *Id.* "Dan Geegan, Marc Harris, and Joey Zorn are other former Rottlund employees that TCM hired." *Id.* "While at Rottlund, Geegan had access to 'the bidding documents, the plans, quantity takeoffs, pricing information, vendor information, anything." *Id.* (Ex. N at 13:22-14:9.) They knew it was Rottlund's policy to copyright with a logo on their materials, plans, and architectural drawings. (Ex. N at 11:15-13:7; 13:22-14:20.) The Homestead Collection was not completed until after these employees joined TCM. *The Rottlund Co.,* 2004 WL 1879983, *5 (Ex. O at 17:3-24; Ex. P; Ex. Q at 58:1-22; Ex. R.).

"On July 5, 2001, Rottlund sent [the Town & Country Homes Defendants] a cease and desist letter claiming that the Homestead Collection is substantially similar to Rottlund's copyrighted designs. *The Rottlund Co.,* 2004 WL 1879983, at *6 (Davenport Aff., Ex. S at PINN02789-90.) "Pinnacle's in-house architect, Steve Sandelin [who], forwarded the letter to BSB, *wrote that the designs are "obviously similar,"* and *inquired whether BSB had a co-ownership agreement with Rottlund.*" *Id.* (Davenport Aff., Ex. S at PINN02788.)

"While TCM was developing the Harvest Hills townhomes (a version of the Homestead Collection) in July 2001, its employee Dan Geegan sent a drawing for a design layout of a sprinkler room to BSB architect Beth Miller." *The Rottlund Co.,* 2004 WL 1879983, at *7 (Davenport Aff., Ex. T.) "The sprinkler room drawings Geegan sent were a portion of Rottlund's Villa II (The Reserve) technical drawings, VAu 546-285, the margin identifying the drawings as Rottlund's was simply cut off." *The Rottlund Co.,* 2004 WL 1879983, at *7. (*Compare* Davenport Aff. Ex. T at BSB01263 with Ex. U at BSB01022.) "A few months later, Beth Miller drafted a note about the sprinkler system and said that Geegan 'is going to call an old arch. friend to determine what they did in this situation." *The Rottlund Co.,* 2004 WL 1879983, at *7 (Davenport

Aff., Ex. V.) The drawing produced by BSB in this litigation had the Rottlund logo and copyright notice scribbled out. (*Id.*, Ex. U at BSB01023.[2])

**B. The Court's Previous Ruling On Summary Judgment Motion.**

The Court found "that Defendants had a reasonable opportunity to view Rottlund's technical drawings." *The Rottlund Co.*, 2004 WL 1879983, *20. "It remains undisputed that, while an in-house architect for Rottlund, Tim Johnson worked on the design development of Rottlund's Villa II project." *Id.* "Thus, not only did Tim Johnson have the opportunity to view the technical drawings, he personally helped create them." *Id.* "Tim Johnson then moved to TCM where he is the coordinator of architecture." *Id.* The Court therefore concluded that: "[t]his plainly constituted direct access to the technical drawings; the Court need not rely on circumstantial evidence." *Id.* The Court further found that "[s]till other former Rottlund employees, Marc Harris and Joey Zorn, joined TCM, and it is reasonable to assume that they at least had an opportunity to view the Villa II drawings during their employment with Rottlund." *Id.* Finally, the Court found that "[a]ccess to both versions of Villa II is established." *Id.* at 21. "Both TCM and BSB had physical possession of the technical drawings for the sprinkler room of the Villa II." *Id.*

The Court further held that "TCM's access to Rottlund's technical drawings reaches the other Defendants." *Id.* "TCM's clear access is reasonably imputed to its architect [BSB] for the Homestead Collection townhomes," and "Pinnacle's in-house architect, Steve Sandelin, was involved in the design of TCM's Homestead Collection from the very beginning-actually recommending BSB as the architect, . . .[t]hus, the inferential chain reaches Pinnacle." *Id.* at 21-22.

---

[2] BSB contends that the scribbling was done by Todd Dosch of Metro Fire Protection, Inc. *Id.* (citing Newman Aff. Ex. M, at 47.) Even if this were the case, the sprinkler room drawing with the scribbled out logo and copyright notice was sent to a former Rottlund employee Tim Johnson who had been involved with the design at Rottlund and undoubtedly knew that this was Rottlund's copyrighted material.

Accordingly, the Court granted Rottlund's "summary judgment on access-that Defendants had a reasonable opportunity to view the Villa II technical drawings." *Id.* at 22.

**LEGAL ARGUMENT**

## I. THE DEFENDANTS CANNOT ASSERT AN INNOCENT INFRINGEMENT DEFENSE.[3]

If appropriate notice of copyright has been given and to which the defendant had access, "then no weight shall be given to such a defendant's interposition of a defense based on innocent infringement in mitigation of actual or statutory damages [exception not applicable][4]." *See* 17 U.S.C. § 401(d); *see Elbe v. Adkins*, 812 F.Supp. 107, 110 (S.D. Ohio 1991) (finding on summary judgment motion that defendant's claims of innocent purpose and unintentional infringement are without weight). Under § 401(d), an alleged infringer is prevented from asserting an 'innocent infringement' defense if a notice of copyright infringement appears." *Matthew Bender & Co. v. West Pub'g Co.,* 240 F.3d 116, 123 (2nd Cir. 2001); *Columbia Pictures Inc. v. Tucker,* 1997 WL 779093 *9 (N.D. Ill. 1997); *Columbia Pictures Indus. Inc. v. Richardson*, 1996 WL 928200 *3

---

[3] BSB and The Bloodgood Group, Inc. (collectively "The Bloodgood Defendants") are also barred from raising the "innocent infringement" affirmative defense because they failed to plead it.

It is well settled that a party must plead an affirmative defense or it is waived. *Jacobs Mfg. Co. v. Sam Brown Co.,* 19 F.3d 1259, 1266 (8th Cir. 1994); *Sayre v. Musicland Group, Inc.*, 850 F.2d 350, 354 (8th Cir. 1988) (finding failure to plead mitigation of damages resulted in a waiver of that affirmative defense and its exclusion from the case); *see Underwater Devices, Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380, 1388 (Fed. Cir. 1983); Fed. R. Civ. P. 8(c); 5 Wright & Miller, Federal Practice and Procedure: Civil 3d § 1278,"Effect of Failure to Plead," at 644-45.

Here, the Bloodgood Defendants served multiple Answers. In each and every one of these Answers, the Bloodgood Defendants failed to plead the innocent infringement affirmative defense. Instead, they wrongly asserted that Rottlund's technical drawings and architectural works at issue are not copyrightable or protected by Rottlund's copyrights, or that the Bloodgood Defendants independently created the infringing designs. (BSB's Answer to Seventh Am. Compl. pp. 50-51 & Bloodgood Group's Answer to Seventh Am. Compl. at pp. at 47-49.). These Defendants cannot now change their theories of the case at this late date. The time for amending their Answers has long since passed. (*See* Scheduling Order: deadline for amendments is March 31, 2004.)

[4] The only exception is "where the infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was:" (1) an employee or agent of a nonprofit educational institution, library or archives, or (2) a public broadcasting entity. Defendants are neither, so the exception does not apply here. *See* 17 U.S.C. § 504(c)(2).

(W.D. Wis. 1996) (precluding defendant's "innocent infringement" defense); *see, e.g., Qualey v. Caring Ctr. of Slidell,* 1996 WL 3915 *2 n.3 (E.D. La. 1996).

**A. Rottlund's Copyright Notices Meet The Statutory Requirements Contained In The Notice Of Copyright Statute, 17 U.S.C. § 401.**

Rottlund's copyright notices clearly meet the statutory form and position requirements. *Tucker,* 1997 WL 779093 *8-9 (N.D. Ill.) (finding videocassettes contained a notice of copyright published both in the form and the position necessary to conform with § 401); *see Columbia Pictures Indus.,* 1996 WL 928200 *4 (W.D. Wis.) (finding that face labels with copyright notice and identity of copyright holder provided enough notice of plaintiffs' ownership to prevent defendants from using an innocent infringement defense).

**1. The form of Rottlund's copyright notices is appropriate.**

A notice of copyright shall consist of the following three elements:

> (1) the symbol © (the letter C in a circle), or the word "Copyright," or the abbreviation "Copr."; and
>
> (2) the year of the first publication of the work; in the case of compilations or derivative works incorporating previously published material, the year date of first publication of the compilation or derivative work is sufficient . . . ; and
>
> (3) the name of the owner of copyright in the work, or an abbreviation by which the name can be recognized, or a generally known alternative designation by the owner.

*See* 17 U.S.C. § 401(b).

Here, Rottlund's notices of copyright contained in its technical drawings themselves and those included in brochures (which were found in the Defendants' files) contain the requisite © symbol, the year date of the first publication of work, and the owner's name ("Rottlund"), thereby complying with 17 U.S.C. § 401(b). (Davenport Aff., Ex. A at DDI000021-23; Exs. C-G.) Another brochure from Rottlund Homes of Iowa (also found in the Defendants' files), complies

with the requirements because the notice contains the word "Copyright," year of the first publication of work, the owner's name ("Rottlund Homes"). (*Id.*, Ex. B at 3-4.) It further contains an explicit warning relating to copyright infringement. *(Id.)* Rottlund has clearly met the form of notice requirements.

**2. The position of Rottlund's copyright notices provide reasonable notice.**

The second requirement for the copyright notice is related to its position. The statute provides that:

> The notice shall be affixed to the copies in such a manner and location as to give reasonable notice of the claim of copyright. The Register of Copyrights shall prescribe by regulation, as examples, specific methods of affixation and positions of the notice on various types of works that will satisfy this requirement, but these specifications shall not be considered exhaustive.

17 U.S.C. § 401(c).

Here, Rottlund's copyrights are affixed to the lower corner of the floor plans contained in the brochures and in the upper corner of the technical drawings. These placements give reasonable notice of Rottlund's claim of copyright in compliance with 17 U.S.C.§ 401(c). (*Id.*) The Defendants cannot credibly challenge the reasonableness of the position of Rottlund's notice, especially since their own alleged copyrights are affixed in the same manner. (Davenport Aff., Ex. H at RCI000105, 111, 113, 126, 128, 134, and 138-39.)

In addition, Rottlund falls within the examples set forth in the Code of Federal Regulations. "Examples of methods of affixation and positions of the copyright notice on various types of works that will satisfy the notice requirement of § 401 (c) is found in 37 C.F.R. § 201.20." *Columbia Pictures Inc. v. Tucker,* 1997 WL 779093 *8 (N.D. Ill.) (finding that 401(c) was satisfied); *see* 37 C.F.R. 201.20(a)(1) ("A notice 'considered acceptable' under [37 C.F.R. § 201.20] shall be considered to satisfy § 401(c).")

"[T]he acceptability of a notice depends upon its being permanently legible to an ordinary user of the work under normal conditions of use, and affixed to the copies in such manner and position that, when affixed, it is not concealed from view upon reasonable examination." *See* 37 C.F.R. 201.20 (c)(1). Here, Rottlund's copyright notices are certainly legible to anyone, including architects and builders.

The Rottlund brochures or pamphlets would fall within the provision relating to "works published in book form." *See* 37 C.F.R. 201.20 (b)(4) (definition). Copyright Notices located on brochures are acceptable if they are on:

* * * *

(5) The first page of the main body of the work;

* * * *

(7) Any page between the front page and the first page of the main body of work, if:

(i) There are no more than ten pages between the front page and the first page of the main body of the work; and

(ii) The notice is reproduced prominently and is set apart from other matter on the page where it appears.

*See* 37 C.F.R. 201.20 (d). Here, the "Your Builder For Life Rottlund Homes" brochure complies with the Regulation because the copyright notice is on the first page after the cover page. (Davenport Aff., Exs. C, D.) Moreover, the floor plans with the copyright notices are located at the bottom and set off from the text. (*Id.,* Ex. D.)

Even though they do not consist of textual matter per se, Rottlund's technical or architectural drawings are "single-leaf" work in that they are printed on one side.[5] *See* 37 C.F.R.

[5] Rottlund's technical drawings, including architectural plans, fall within the definition of "pictorial, graphic and sculptural work." *See* 37 C.F.R. 201.20 (b)(1)(2) & 17 U.S.C. § 101 ("Definitions"). However, the Regulation only discusses "pictorial, graphic and sculptural work" in the

201.20 (b)(9). The copyright notice is acceptable if it is reproduced anywhere on the front or back of the technical or architectural drawings. Rottlund's technical or architectural drawings are prominently displayed by themselves in the upper right-hand corner. (Davenport Aff., Exs. E-G.)

Finally, even if Rottlund's copyrights did not fall within the above specific provisions, the copyrights would be valid under the general catch-all provision that states: "[w]here in a particular case, a notice does not appear in one of the precise locations prescribed in this section but a person looking in one of those locations would be reasonably certain to find a notice in another somewhat different location, that *notice will be acceptable.*" (emphasis added) *See* 37 C.F.R. 201.20 (c )(2).

**B. The Defendants Had Access To Rottlund's Copyrighted Material.**

A showing of "access to" the copyrighted material is the only remaining requirement under Section 401 for the preclusion of an "innocent infringement" defense here. *See* 17 U.S.C. § 401(d). "[A plaintiff] can establish access by showing that the defendants had an 'opportunity to view or to copy, [its] work." *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 942 (8th Cir. 1992). Access can be found based on the defendants' access to a floor plan in a marketing brochure and a plaintiff need not offer evidence that the defendants had access to the architectural drawings filed with the Copyright Office. *Arthur Rutenberg Corp. v. Parrino*, 664 F.Supp. 479, 481 (M.D. Fla. 1987).

Where a defendant's employees had access to manuals during his/her prior employment with a copyright holder thirteen years earlier, this is sufficient to demonstrate a reasonable possibility that the defendant had an opportunity to view the copyrighted material. *Control Data*

---

context of motion pictures and other audiovisual works wherein "a notice affixed directly" onto the work is acceptable. *See* 37 C.F.R. 201.20 (h)(3)(i)(1).

*Sys., Inc. v. Infoware, Inc.,* 903 F.Supp. 1316, 1321 (D. Minn. 1995). Only one of the four Defendants here needs to have access because one defendant's access is fairly attributable to the others. *See Parrino,* 664 F.Supp. at 481; *Kamar Int'l, Inc. v. Russ Berrie and Co.,* 657 F.2d 1059, 1062 (9th Cir. 1981); *Judith Ripka Designs, Ltd. v. Preville,* 935 F.Supp. 237, 246 (S.D.N.Y. 1996).

As discussed above, the Court has already granted summary judgment for Rottlund and held that the Defendants had access to Rottlund's copyrighted material. *The Rottlund Co.*, 2004 WL 1879983, *22 (D. Minn.). This is the law of the case and must not be relitigated. *KPERS v. Blackwell, Sanders, Matheny, Weary & Lombardi, L.C.,* 114 F.3d 679, 687 (8th Cir. 1997) ("The law of the case doctrine precludes the relitigation of a settled issue in the case and requires courts to adhere to decisions made in earlier proceedings."); *Little Earth of the United Tribes, Inc. v. United States Dep't of Housing & Urban Dev.*, 807 F.2d 1433, 1441 (8th Cir. 1986).

**C. The Defendants Should Be Precluded From Raising An Innocent Infringement Defense.**

Since Rottlund's copyright notices meet the statutory notice requirements and the Court has already ruled that the Defendants had access as a matter of law, the Defendants should be precluded from asserting an innocent infringement defense or offering any evidence relating thereto at trial. *See* 17 U.S.C. § 401(d).

## CONCLUSION

For the reasons stated above, Rottlund respectfully requests that this Court grant its motion in limine to preclude any weight being given to the interposition of a defense of innocent infringement and to exclude admission of any evidence of this defense.

Dated: November 1, 2004

s/David A. Davenport
Craig S. Krummen, #259081
David A. Davenport, #285109
Winthrop & Weinstine, P.A.
Suite 3500
225 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 604-6716
Facsimile: (612) 604-6816
Attorneys for Plaintiff The
Rottlund Company, Inc.

2144520v1