UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br>Plaintiff,<br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br>Defendants,<br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br>vs.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN ADVERSE INFERENCE INSTRUCTION REGARDING THE TOWN & COUNTRY HOMES DEFENDANTS' FAILURE TO PRODUCE ART PLANTE'S DESIGN AND DEVELOPMENT FILE AND THE DEFENDANTS' COMPETITION PRODUCT SURVEY** |

## INTRODUCTION

This motion concerns two important files the Town & Country Homes Defendants have not produced in this litigation: (1) "a file with the documentation pertaining to the design and development of [the Town & Country Homes Defendants'] Homestead Collection townhomes," and (2) the "competition product survey for Minneapolis area." (Affidavit of David A. Davenport in Support of Plaintiff's Motion for an Adverse Inference Instruction Regarding the

Town & Country Homes Defendants' Failure to Produce Art Plante's Design and Development File and the Defendants' Competition Product Survey ("Davenport Aff."), Exs. A and B at D00225.)

**FACTUAL BACKGROUND**

On July 5, 2001, Rottlund sent the Town & Country Homes Defendants a cease and desist letter.[1] (Davenport Aff., Ex. C.) Immediately thereafter, on July 9, 2001, Pinnacle's in-house architect – Steve Sandelin – forwarded Rottlund's cease and desist letter to the Town & Country Homes Defendants' outside architects at Defendant Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. ("BSB") and wrote:

> Please see the attached letter, where Rottlund's attorney references the back to back townhomes your firm designed for our Centennial Crossing community in Maple Grove, MN. They are obviously similar to Rottlund's Villa product. Are these designs under a co-ownership agreement with them or are they yours alone? What's our situation with them? We need to develop a response quickly. Please call me at your earliest convenience. Thanks.

(*Id.*, Ex. D at BSB 01931.) Then, on July 16, 2001, TCM's President – Art Plante – wrote to the Town & Country Homes Defendants' counsel at Fredrikson & Byron – Dean Karau – and "attached a file with the documentation pertaining to the design and development of our Homestead Collection townhomes" ("Art Plante's Design and Development File").[2] (*Id.*, Ex. A) (emphasis added). The next day, July 17, 2001, Mr. Karau responded to Rottlund's cease and desist letter on behalf of the Town & Country Homes Defendants. (*Id.*, Ex. E.)

On October 30, 2001, Rottlund filed its Complaint alleging, *inter alia*, that the Town & Country Homes Defendants' architectural designs infringed upon Rottlund's copyrighted

---

[1] Defendant Pinnacle Corporation ("Pinnacle") does business exclusively as Town & Country Homes and its Minnesota Division, Defendant Town & Country Homes, Inc. ("TCM"), does business as Town & Country Homes – Minnesota Division. Thus, Rottlund will collectively refer to Defendants Pinnacle and TCM as the "Town & Country Homes Defendants."

[2] Mr. Plante sent a copy of the letter to Steve Sandelin at Pinnacle. Pinnacle subsequently terminated Fredrikson & Byron and replaced it with Holland & Knight, but Fredrikson & Byron has continued to represent TCM throughout this case.

architectural designs. [Doc. No. 1.] On April 2, 2002, during the midst of a lengthy battle concerning Pinnacle's baseless motion to dismiss for lack of personal jurisdiction, Mr. Karau spoke with BSB architect James Grundmeier by telephone regarding this case and asked Mr. Grundmeier to forward, without ever serving a subpoena on BSB, important documents to him regarding the Town & Country Homes Defendants' infringing designs.[3] (Davenport Aff., Ex. B at D00116.) Later that day, Mr. Grundmeier sent Mr. Karau "the contents of [BSB architect] Larry Moore's design file for the Town & Country project." (*Id.*) (emphasis added). Mr. Karau received the contents of Mr. Moore's design file on April 3, 2002. (*Id.*) *The Rottlund Company, Inc. v. Pinnacle Corp.*, 222 F.R.D. 362, 377 (D. Minn. 2004). One of the documents Mr. Karau received from Mr. Grundmeier is a transmittal cover page demonstrating that Mr. Moore sent Steve Sandelin a "competition product survey for Minneapolis area" ("Competition Product Survey") on May 5, 1998. (Davenport Aff., Ex. B at D00225.)

As the Court recently found, "Rottlund has loudly voiced a reasonable suspicion that the competition product survey would likely have some reference to or include Rottlund materials . . .." *The Rottlund Company*, 222 F.R.D at 367. Despite several Court orders requiring the Defendants to produce the Competition Product Survey to Rottlund, the Defendants have not produced it. In addition, despite the undisputed fact that Mr. Karau received Mr. Moore's design file in the midst of this litigation, the Town & Country Homes Defendants' counsel claim that they do not have the Competition Product Survey.

In addition to discovery and dispositive motion practice, "the Court has conducted [discovery status conferences] at a rate of at least one per month since approximately October of 2002." *The Rottlund Company*, 222 F.R.D at 364. Several of these discovery status conferences

---

[3] Importantly, the Court found that Mr. Karau, along with his associates, violated his duty of candor to this Court in connection with this frivolous motion to dismiss. *The Rottlund Company, Inc. v. Pinnacle Corp.*, 222 F.R.D 362, 376-79 (Minn. 2004).

concerned (1) Art Plante's Design and Development File, and (2) the Competition Product Survey. *See*, *e.g.*, *id.* at 367-68 and 369-373. On February 23, 2004, during one of many discovery status conferences regarding these two files, the following exchange between the Court and the Town & Country Homes Defendants' counsel occurred:

> THE COURT: Okay. Now, I want to address an issue that will take about 15 minutes, so I think I am going to raise it. It's connected to the status conference issue regarding the documents of Fredrikson and I want to talk about it in conjunction with the pending motion to depose Dean Karau. This is my proposal, it's more than a proposal, this is my order, because it is unclear to this Court whether all of the TCM and Pinnacle documents which were forwarded -- and BSB documents which were forwarded to Fredrikson in the early hours of this litigation have actually been produced in this case, I am going to order in lieu of the Karau depositions, so I am going to deny the motion to take Dean Karau's deposition. I am going to deny it without prejudice because we're going to do this in stages, so I am going to deny it without prejudice. And the first stage is I am going to ask Mr. Schwiebert to put together all client documents, that is documents forwarded under many of these transmittals that we have seen so much in this litigation to Mr. Karau or to Ms. Preble or to anybody else at Fredrikson. I don't want letters between your clients and you that clearly seek legal advise (sic) or clearly attorney-client privileged. I am looking for documents that were forwarded, Art Plante's file, BSB's file, Sandalin's (sic) files, all those files that we know were, in fact, forwarded to Mr. Karau. I want those documents produced in camera, all of them, because what I am not certain of is whether some documents were forwarded to Fredrikson from TCM or Pinnacle and then they were no longer in TCM or Pinnacle's possession at the time of production because when I asked the question were the documents attached to the Art Plante memo produced I get the response Art Plante's files were produced. That doesn't answer my question. Am I being clear about this? Let me just say it one more time. Mr. Schwiebert looks confused.
>
> MR. SCHWIEBERT: I apologize, Your Honor.
>
> THE COURT: No problem. I just want to be clear about this. To ensure that all documents that were forwarded by any of the defendants to Mr. Karau because he received documents from all three defendants, have been produced in this litigation, I want to see them in camera from Fredrikson's files and when I say documents I'm talking about documents originally in the possession of the three defendants that were forwarded under these transmittal letters to Fredrikson, because my concern is that at the time then that the productions were made all those documents may not have existed at the clients. I may be wrong about that. I don't know if I am wrong about that, but it seems to me that will alleviate some

of the plaintiff's concerns and at least for now will, in my view at least, obviate the need for Mr. Karau's deposition. Mr. Schwiebert, do you have a question?

MR. SCHWIEBERT: I just want to make sure I understand. You're looking for the transmittal letters and their attachments to the extent those still exist in Fredrikson?

THE COURT: Fredrikson wouldn't have tossed anything, so all that stuff must exist.

MR. SCHWIEBERT: I'm just suggesting you're not talking about every document that we have -- are you talking about every document that we have collected from Art Plante or are you talking about things that were forwarded from Art Plante to Fredrikson as attached to particular exhibits? Does that make sense?

THE COURT: Are you suggesting that there were other documents that you have in your files that were forwarded to you from your clients other than the transmittals that we have seen?

MR. SCHWIEBERT: As part of our document production in this case, yes. We have gone to our client –

THE COURT: Well, to the extent -- no. To the extent that you have produced those documents in this case, I don't need to see them again. Okay?

MR. SCHWIEBERT: You're looking for documents that have not been produced that are in Fredrikson's file.

THE COURT: Well, not exactly. I am not being very clear. With respect to the three famous transmittal letters I'll call them, one BSB documents, Chris Jorgenson documents, one with the Sandalin (sic) documents and one with the Art Plante documents, I want to see what that package looked like when it hit Fredrikson, okay? Okay, clear?

MR. SCHWIEBERT: I just want to ask a question.

THE COURT: Sure.

MR. SCHWIEBERT: If we are unable to reproduce that package as it got to Fredrikson, is that what you want in the affidavit? I am not trying to be coy. I have reason to believe that at least with one of those we are unable to do that. It is not –

> THE COURT: Well, then I need an affidavit explaining that it because it would be highly unusual to discard any of your client's files in the pendency of litigation, so I would certainly need to understand why that's the case.
>
> MR. SCHWIEBERT: Well, the Art Plante transmittal that you're talking about happened before the litigation was pending.
>
> THE COURT: Well, sure.
>
> MR. SCHWIEBERT: Art Plante and, I just want to clarify this because it came up earlier, Town & Country Minnesota, Inc. and Art Plante are clients of Fredrikson and have been for some time.
>
> THE COURT: Right.
>
> MR. SCHWIEBERT: So although we represented Pinnacle at the time they were our client. I do not believe that we can recreate the attachments that were attached to that Art Plante letter. I am just being honest. I don't -- it's not maintained in the file in such a way that you can say it's that.
>
> THE COURT: Well, then I need that in a --
>
> MR. SCHWIEBERT: I can submit an affidavit explaining --
>
> THE COURT: I guess I need an explanation for why on earth that wouldn't be the case, yes.

(Davenport Aff., Ex. F at 168:17–175:10) (emphasis added).

The record is clear, Mr. Karau received Art Plante's Design and Development File for the Homestead Collection townhomes on July 16, 2001, and this important file has not been produced to Rottlund because Fredrikson & Byron cannot "recreate the attachments that were attached to that Art Plante letter" transmitting the file directly to Mr. Karau. (*Compare id*. Ex. A *with* Ex. F at 174:23-25.) The Town & Country Homes Defendants did not provide Rottlund with an affidavit explaining why this very important file, which counsel obtained as a result of Rottlund's cease and desist letter, cannot be produced to Rottlund. Nor did the Town & Country Homes Defendants serve Rottlund with an affidavit to explain why Mr. Karau would have destroyed Art Plante's Design and Development File when litigation was reasonably foreseeable.

Because the Town & Country Homes Defendants have not produced (1) Art Plante's Design and Development File or (2) the Competition Product Survey, this Court should follow the "generally accepted principle of law" recognizing that an adverse inference will arise as a result of missing evidence. *See*, *e.g.*, *Smith v. United States*, 128 F.Supp.2d 1227, 1232 (E.D. Ark. 2000) (citing *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988)).

**LEGAL ANALYSIS**

The Court should give an adverse inference instruction to the jury concerning Art Plante's Design and Development File because the file was destroyed after the Town & Country Homes Defendants knew or should have known that the file was relevant to reasonably foreseeable copyright infringement litigation with Rottlund. The Court should also give an adverse inference instruction to the jury concerning the Competition Product Survey because the Town & Country Homes Defendants failed to produce this document to Rottlund during discovery.

**I. Art Plante's Design and Development File.**

The destruction of business records is sufficient for the Court to give the jury an adverse inference instruction. *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 53 (8th Cir. 1977). In fact, where evidence like Art Plante's Design and Development File is destroyed, an adverse inference instruction may not even be the most appropriate remedy since the instruction does not cure the lack of probative, firsthand evidence; thus, an appropriate remedy in addition to a negative inference instruction is often the exclusion of evidence. *Fischer v. Rheem Mfg. Co.*, 2004 WL 1088328 at *2 (D. Minn. 2004) (citing *Dodd v. Leviton Mfg. Co.*, 2003 WL 21147151 at *1 (Minn. Ct. App. 2003)). Here, Rottlund simply asks that the Court give the jury an adverse inference instruction concerning Art Plante's Design and Development File because the Town &

Country Homes Defendants gave the file to Mr. Karau in response to Rottlund's cease and desist letter, but now this important file cannot be recreated by Mr. Karau or his associates because it has been destroyed. (Davenport Aff., Ex. F at 174:23-25.)

"The Court has broad authority to impose sanctions for the spoliation of evidence." *Fischer*, 2004 WL 1088328 at *1 (citing *Patton v. Newmar Corp.*, 538 N.W.2d 116, 119 (Minn. 1995)). "Sanctions for spoliation are not limited to bad-faith destruction of evidence, but are appropriate when the party destroying the evidence 'knew or should have known' that evidence was 'relevant to imminent litigation'." *Id.* (quoting *Dillon v. Nissan Motor Corp. Co., Ltd.*, 986 F.2d 263, 267 (8th Cir. 1993)). Courts should evaluate the nature of the evidence that is destroyed in light of the claims asserted and the resulting prejudice. *Id.*; *see also Dillon*, 986 F.2d at 267. Many courts have leveled a spoliation sanction where a party and/or its counsel has either destroyed or permitted evidence to be destroyed which is relevant to pending or potential litigation. *See*, *e.g.*, *Dillon*, 986 F.2d at 267 (despite the fact that litigation had not commenced at the time evidence was destroyed, spoliation sanction was ordered because the plaintiff's counsel "knew or should have known that the [destroyed evidence] was an important piece of evidence which should have been preserved in its entirety," but he nevertheless destroyed the evidence); *Capellupo v. FMC Corp.*, 126 F.R.D. 545, 551 (D. Minn. 1989) (spoliation sanction imposed upon the party responsible for creating prejudice by destroying documents relevant to "pending or potential litigation"); *E.E.O.C. v. Jacksonville Shipyards, Inc.*, 690 F.Supp. 995, 998 (M.D. Fla. 1988); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F.Supp. 1443, 1446-55 (C.D. Cal. 1984) (the defendant's destruction of relevant documents after it was on notice of litigation, through, *inter alia*, pre-litigation correspondence, created a negative presumption that the missing documents would have been harmful to its defenses to plaintiff's claims).

The record reveals that the Town & Country Homes Defendants were on notice of potential litigation with Rottlund as a result of Rottlund's July 5, 2001 cease and desist letter. As for TCM, Michael Ryan testified that he received Rottlund's cease and desist letter while working in his capacity as its CEO (Mr. Ryan is also Pinnacle's CEO). (Davenport Aff., Ex. G at 213:12-221:1; Ex. H at 19:11-21:10, 134:13-21.) As for Pinnacle, Steve Sandelin received Rottlund's July 5, 2001 cease and desist letter and forwarded it on to Larry Moore in his July 9, 2001 letter to Mr. Moore. (*Id.*, Ex. D.)

In addition, Mr. Plante sent both Mr. Ryan and Mr. Sandelin copies of his July 16, 2001 letter to Mr. Karau and told Mr. Karau that he "look[ed] forward to seeing your draft response back to the Rottlund attorney . . .." (*Id.*, Ex. A.) Because Mr. Karau was purportedly evaluating Rottlund's copyright infringement claim articulated in its cease and desist letter, Mr. Plante forwarded his Design and Development File for the infringing Homestead Collection to Mr. Karau. (*Id.*) The Town & Country Homes Defendants knew or should reasonably have known that potential litigation with Rottlund concerning the Homestead Collection townhomes was imminent. *See*, *e.g.*, *The Rottlund Co.*, 222 F.R.D. at 364 (finding that Mr. Karau's July 17, 2001 letter in response to Rottlund's cease and desist letter establishes that the Town & Country Homes Defendants knew that Rottlund was alleging infringement of its copyright protected townhome designs); Jamie S. Gorelick, *Destruction of Evidence* § 3.11 (1989) (recognizing that the filing of a complaint is not the magic event that triggers a party's duty to preserve documents relevant to litigation because the case law uniformly recognizes that the duty to preserve relevant documents arises when litigation is reasonably foreseeable).

Mr. Karau's colleague admitted that Art Plante's Design and Development File was destroyed after Mr. Karau received it when he represented to the Court that the file cannot be recreated in order to produce it to Rottlund:

> MR. SCHWIEBERT: If we are unable to reproduce that package as it got to Fredrikson, is that what you want in the affidavit? I am not trying to be coy. I have reason to believe that at least with one of those we are unable to do that. It is not –
>
> THE COURT: Well, then I need an affidavit explaining that it (sic) because it would be highly unusual to discard any of your client's files in the pendency of litigation, so I would certainly need to understand why that's the case.
>
> MR. SCHWIEBERT: Well, the Art Plante transmittal that you're talking about happened before the litigation was pending.
>
> THE COURT: Well, sure.
>
> MR. SCHWIEBERT: Art Plante and, I just want to clarify this because it came up earlier, Town & Country Minnesota, Inc. and Art Plante are clients of Fredrikson and have been for some time.
>
> THE COURT: Right.
>
> MR. SCHWIEBERT: So although we represented Pinnacle at the time they were our client. <u>I do not believe that we can recreate the attachments that were attached to that Art Plante letter.</u> I am just being honest. I don't -- it's not maintained in the file in such a way that you can say it's that.
>
> THE COURT: Well, then I need that in a --
>
> MR. SCHWIEBERT: I can submit an affidavit explaining --
>
> THE COURT: I guess I need an explanation for why on earth that wouldn't be the case, yes.

(Davenport Aff., Ex. F at 173:20-175:10) (emphasis added).

While it is certainly true that Rottlund's evidence of copyright infringement will "raise eyebrows" when presented to the jury, the Town & Country Homes Defendants' counsel's destruction of Art Plante's Design and Development File less than two weeks after Rottlund's

cease and desist letter prejudices Rottlund's ability to present all relevant and important documents to the jury during its case-in-chief. (Report and Recommendation, 8/20/04, p. 38.) Since Mr. Karau needed to review Mr. Plante's Design and Development File to respond to Rottlund's cease and desist letter, it should not be disputed that this file is relevant. (Davenport Aff., Ex. A.) Because the Court must evaluate the nature of the evidence destroyed within the context of Rottlund's claims, Rottlund respectfully suggests that the prejudice to Rottlund concerning its copyright infringement claims is obvious – Rottlund is unable to provide the jury with the relevant, probative evidence that Mr. Plante maintained in his Design and Development File concerning the very design that is alleged to infringe Rottlund's copyrights. *Fischer*, 2004 WL 1088328 at *1. Thus, the Court should give the jury the following two adverse inference instructions:

Failure to Produce Available Evidence

> If a party fails to produce evidence that is under that party's control and reasonably available to that party and not reasonably available to the adverse party, then you may infer the evidence is unfavorable to the party who could have produced it and did not.

Suppression of Evidence

> If you should find that a party or its counsel willfully destroyed evidence in order to prevent its being presented in this trial, you may consider such destruction in determining what inferences to draw from the evidence or facts in this case.

Kevin F. O'Malley, Jay E. Grenig and Hon. William C. Lee, *Federal Jury Practice and Instructions – Jury Trial* §§ 104.26 and 104.27 (2000); *see also Stevenson v. Union Pacific Railroad Co.*, 354 F.3d 739, 746 (8th Cir. 2004) (affirming adverse inference instruction as appropriate sanction for pre-litigation destruction of evidence because the defendant "knew or should have known that the documents would become material and should have preserved

them") (internal quotations omitted); *Smith*, 128 F.Supp.2d at 1232 ("an adverse inference may arise from the fact of missing evidence") (citing *Welsh v. United States*, 844 F.2d 1239 (6th Cir. 1988) (courts should issue the strongest inference permitted where a party wrongfully denies another party evidence necessary to establish a disputed fact)); *Boyd*, 568 F.2d at 53 ("the destruction of business records may be sufficient to raise an unfavorable inference); *Wm. T. Thompson Co.*, 593 F.Supp. at 1455 (defendant's "conduct creates a presumption that the missing data would have permitted [plaintiff] to prove [its claims] that lie at the heart of its complaint"). The Court should also instruct the jury that counsel for the Town & Country Homes Defendants destroyed Art Plante's Design and Development File.

**II. The Competition Product Survey.**

As discussed above, like Art Plante's Design and Development File, Mr. Karau sought and received BSB architect Larry Moore's design file. (Davenport Aff, Ex. B at D00116.) Mr. Moore's design file includes a transmittal page showing that BSB architect Larry Moore sent the Competition Product Survey to Steve Sandelin on May 5, 1998, but the Competition Product Survey was not included in Mr. Moore's design file that was produced, by any of the Defendants, to Rottlund during discovery. (*Id.* at D00225.)

It is a generally accepted principle of law that missing evidence, like the Competition Product Survey, may result in an adverse inference instruction being given to the jury. *Smith*, 128 F.Supp.2d at 1232; *see also* John W. Strong, *McCormick On Evidence* § 264 (5th ed. 1999) (when it would be natural for a party to produce documents in its possession as evidence but that party fails to do so, "tradition has allowed the adversary to use this failure as the basis for invoking an adverse inference" instruction to be given to the jury). Thus, it is well settled that an adverse inference instruction arises when a defendant fails to produce documents in its

possession that are not available to the plaintiff. *Evans v. Robbins*, 897 F.2d 966, 970 (8th Cir. 1990); *see also McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 632 (6th Cir. 2000) (recognizing the generally accepted rule that when relevant information is not produced, an adverse inference that such information would be harmful to the non-producing party may arise); *Wardrip v. Hart*, 949 F.Supp. 801, 804 (D. Kan. 1996) ("the adverse inference rule provides that when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him"); *Weeks v. ARA Servs.*, 869 F.Supp. 194, 195 (S.D.N.Y. 1994); *Natural Gas Pipeline Co. of America v. Odom Offshore Surveys, Inc.*, 697 F.Supp. 921, 927 (E.D. La. 1988) (defendant's failure to produce records created an inference that the evidence would not be favorable to its position). "The inference is that the documents would have been damaging to defendant." *Evans*, 897 F.2d at 970.

The adverse inference rule applies when four factors are present:

> (1) it appears that the documentary evidence exists or existed; (2) the suppressing party has possession or control of the evidence; (3) the evidence is available to the suppressing party, but not to the party seeking production; [and] (4) it appears that there has been actual suppression or withholding of evidence.

*Id.* All of these factors are present here. First, the transmittal page produced by the Town & Country Homes Defendants demonstrates that Larry Moore sent the Competition Product Survey to Steve Sandelin; thus, the document exists or, at least, once existed. (Davenport Aff., Ex. B at D00225.) Second, the Town & Country Homes Defendants either possess or control the Competition Product Survey. Third, as the Court recently held, Rottlund has been seeking production of the Competition Product Survey throughout this litigation, but the Defendants have not produced it despite several Court orders. *The Rottlund Company*, 222 F.R.D at 367 ("Rottlund has loudly voiced a reasonable suspicion that the competition product survey would

likely have some reference to or include Rottlund materials . . ..") Fourth, the Defendants have withheld the document from production, even though the transmittal cover page referring to the Competition Product Survey was sent to Mr. Karau in April 2002. (Davenport Aff., Ex. B at D00225.)

Because Rottlund has established the four factors necessary for an adverse inference to arise, the Court should instruct the jury that the Town & Country Homes Defendants' failure to produce the Competition Product Survey gives rise to the inference that, if produced, it would have been damaging to the Defendants. *Evans*, 897 F.2d at 970. Thus, like Art Plante's Design and Development File, the Court should give the jury the above cited adverse inference instruction and instruct them that none of the Defendants produced the Competition Product Survey.

**CONCLUSION**

Based on the foregoing, Rottlund respectfully requests that the Court grant its instant motion.

Dated: November 1, 2004

s/David A. Davenport
Craig S. Krummen, #0259081
David A. Davenport, #0285109
Winthrop & Weinstine, P.A.
**Attorneys for Plaintiff**
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
ckrummen@winthrop.com

2144249v1