Exhibit A.3

TCM's Homestead Collection from the very beginning-actually recommending BSB as the architect. (Davenport Aff. Ex. U, at 34:2-22). As has been explained in previous Orders of this Court, June 30, 2004 Order, at 6 (Doc. No. 418), Pinnacle's Sandelin commented on or gave input on TCM's Homestead Collection designs. Sandelin toured Rottlund's Villa II with TCM representatives and possibly representatives from BSB. Ultimately, while designs for TCM's Centennial Crossing townhome were finishing up, Pinnacle decided that it would design a back-to-back townhome for Aurora, Illinois "from the working drawings originally prepared for Maple Grove, Minnesota (TCM's Centennial Crossing townhome). (Davenport Aff. Ex. RR; TT). Faced with this relationship between the parties, the Court finds that TCM was in a position to transmit its information to Pinnacle. Thus, the inferential chain reaches Pinnacle.

FN29. TCM and Pinnacle are not totally unrelated entities. Pinnacle does business as Town & Country Homes, and TCM is the allegedly separate Minnesota division of Town & Country Homes.

FN30. The concept of an intermediary usually is found in cases where a party sends a musical recording or literary work to a company and, through an inferential chain, access is established as to the copier. Nimmer, § 13.02[A], 13-17-24. The circumstances here are analogous.

When a reasonable opportunity to view is established, it is appropriate not just to find a mere inference of access but to deem access established. As Nimmer explains:

It would seem clearer and more just in terms of the plaintiff's burden of proof to regard a reasonable opportunity to view as access in itself and not merely as creating an inference of access. This approach is consistent with what is perhaps the more prevailing definition of access, i.e., the opportunity to copy. The trier of fact may conclude that the person who created defendant's work had, but did not avail himself of, the opportunity to view, but this conclusion properly goes to the ultimate issue of copying, and not to the subordinate issue of access.

Nimmer, § 13.02[A], at 13-16 (footnotes omitted).

Plaintiff is entitled to a finding of summary judgment on access--that Defendants had a reasonable opportunity to view the Villa II technical drawings.

2. Substantial Similarity

The Eighth Circuit Court of Appeals has directed that *"Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir.1987), indites the law in this Circuit pertaining to substantial similarity." *Nelson v. PRN Prod., Inc.*, 873 F.2d 1141, 1143 (8th Cir.1989). *Hartman* provides:

There must be substantial similarity "not only of the general ideas but of the expressions of those ideas as well." First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works. Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression. ***23** 833 F.2d at 120.

Thus, at the extrinsic step, district courts in this Circuit are required to consider the similarity of ideas, all of which are unprotectible. *Id.*; *Taylor Corp. v. Four Seasons Greetings LLC*, 171 F.Supp.2d 970, 975 (D.Minn.2001) ("First, an 'extrinsic' analysis is performed to determine whether the general idea of the two works is substantially similar."). The extrinsic test looks at such matters as " 'the type of artwork involved, the materials used, the subject matter, and the setting for the subject." ' *Nelson v. PRN Prod., Inc.*, 873 F.2d at 1143 (*quoting Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir.1977)). Expert evidence is admissible at this stage of analysis (and only at this stage). *Id.*

A comparison of the Villa II plans and the Homestead Collection and Washington Square plans reveals that there is a similarity of ideas. The type of work involved is similar: both are architectural drawings. The subject matter is similar: both depict residential,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

back-to-back townhomes. The materials used are similar. As TCM and Pinnacle's expert, Jeffery Scherer, states, each plan utilizes similar ideas of structure, function, and design: wood framed structure, slab-on-grade; kitchen, dining, living, bathroom, 2-car garage, master bedroom and bath, bedroom, laundry, shared bath, and spare room; gabled roofs, double-hung windows, protected entrances, and siding with masonry base. (Scherer Aff. Ex. A, at 9). [FN31] Further, although concluding that the plans are not "substantially similar," Scherer nevertheless admits that the plans utilize "similar elements, proportions, and roof configurations." *Id.* at 30. Finally, BSB's expert, Albert Bloom, testified on this very topic:

FN31. The Court notes that Pinnacle states Mr. Scherer's report and analysis of the plans, although only explicitly dealing with the Villa II and the Homestead Collection, applies with equal force to Pinnacle's Washington Square product. (Defs.' Mem. in Supp. of Mot. for Partial Summ. J., at 27) (Doc. No. 409).

Q: Are there similarity of ideas between the Villa II and the Homestead Collection?
A: Yes.
Q: When you say there are similarity of ideas between the Villa II and the Homestead Collection, what do you mean?
A: They're very similar in concept. They're both back-to-back townhouse products. They have end units or exterior units. They also have interior units. They're slab-on-grade construction. They're two-car garages. They have similar scope as far as the room counts go in living, dining, kitchen, bedrooming, loft spaces, and there's a similarity as far as the gross mass of the building size.
(Davenport Aff. in Opp'n to Defs.' Mot. for Summ. J., Ex. R101, at 6:17-7:5)

Thus, TCM, Pinnacle, and BSB's own experts agree that the designs share similarity in the details of the objective ideas. This Court finds this level of comparison of ideas to be appropriate under the precedent of this Circuit. To tread into greater levels of detail as Defendants propose, would be to approach a comparison of the expressive coordination and arrangement of ideas, which is clearly saved for the intrinsic stage of the analysis. This conclusion is consistent with *CSM* where the Court, considering the extrinsic test, explained:

***24** A comparison of the objective details of the Everest plans and the two sets of CSM plans shows there is a similarity of ideas between them. Both Everest and CSM proposed and designed a rectangular office showroom for the Roseville site.
840 F.Supp. at 1311.

Whether the drawings' expression is similar, the intrinsic test, depends on the response of an ordinary, reasonable person. *Hartman,* 833 F.2d at 120. In other words, "[i]nfringement of expression occurs only when the total concept and feel of the works in question are substantially similar." *Id.* at 120-21; *see also Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960) (explaining the test as whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same"). Summary judgment at this stage "is not favored." *Id.* at 120; *accord, e.g., Sturdza,* 281 F.3d at 1298 (explaining that " '[b]ecause substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation" ') (quoting *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2d Cir.1980)).

Considering the drawings at issue (the Villa II Rush Creek and Reserve and the Homestead Collection Centennial Crossing and Harvest Hills and the Washington Square), the Court finds that a reasonable juror could find that the total look and feel of how the drawings selected, arranged, and coordinated the elements is substantially similar, but a reasonable juror would not be compelled to so find. Thus, no party is entitled to summary judgment on the issue of substantial similarity (the intrinsic analysis) of the Villa II and Homestead Collection and Washington Square technical drawings.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

D. *Motion to Strike the Scherer Affidavit*

At this point, it is appropriate to discuss the propriety of Jeffery Scherer's expert report. Oral argument was heard on Rottlund's motion on two separate days, due to the length of argument. Rottlund moved to strike the Scherer report after the first hearing but before the second under Rule 56(e) and Federal Rules of Evidence 104(a) and 702. TCM and Pinnacle argue that Rottlund's motion is untimely because it should have been submitted with Rottlund's reply brief and Rottlund never mentioned a dispute with Mr. Scherer's affidavit at the first hearing. This Court is unpersuaded by TCM and Pinnacle's argument. Timeliness of a motion to strike an affidavit is left to the district court's discretion. *Nat'l Union Fire Ins. Co. v. Siliconix, Inc.*, 726 F.Supp. 264, 268 (N.D.Cal.1989). There is no rule requiring a motion to strike to be submitted with a reply brief, although that might be preferable. Contrary to TCM and Pinnacle's argument, Rottlund did object to or contest the Scherer report during the first day of argument; though it did not formally move to strike until after the hearing. Although initially claiming that much of their argument would have to be redone, that concern did not materialize and TCM and Pinnacle have not suffered prejudice due to the timing of the motion. Moreover, even in the absence of Rottlund's motion, the weight given to Scherer's report would be the same.

***25** TCM and Pinnacle also argue that Rottlund's motion should be denied because Rottlund's previous position in the litigation was that expert testimony is necessary for the extrinsic test, and the Court ordered Rottlund to provide a list of the elements of Rottlund's drawings that it claimed were protectible with expert disclosures. There is no dispute that expert testimony is admissible in regard to the extrinsic test. That is not, as explained below, the basis for the motion to strike. In addition, Rottlund's theory of protectible expression does not involve use of individual elements; in other words, Rottlund is not claiming protection for any one element so there is nothing to identify. Rather, Rottlund's protectible expression consists of the selection, arrangement, and coordination of the individual elements, and it has provided Defendants a list of the elements that have been expressively selected, arranged, and coordinated. Further, the Court has engaged, *supra,* in the requisite filtering or analysis of how Rottlund's drawings are protectible.

With regard to the contents of the Scherer report, the Court disregards much of it. Rottlund argues that Scherer's report impermissibly offers an opinion on copyright infringement in general and seeks to redefine the standards for originality and independent creation. TCM and Pinnacle submit that Scherer's report is admissible on the issue of substantial similarity.

One thing is clear: "Although expert opinion evidence is admissible in connection with the first step of the substantial similarity analysis to show *similarity of ideas,* analytical dissection and expert opinion are not called for under the second step in which substantial *similarity of expression* is measured by a different standard--the response of the ordinary, reasonable person." *Hartman,* 833 F.2d at 120 (emphasis added). Thus, expert opinion evidence is admissible under the extrinsic test (ideas), and it is not admissible under the intrinsic test (expression). The Court considers the Scherer affidavit, to the extent it discusses similarity of ideas, but, when Scherer evaluates how individual elements are expressed, the Court finds that such an analysis moves too far into expression; thereby invading the province of the jury. The point at which Scherer purportedly evaluates the townhomes, he simply states that he is going to explain why the townhomes are not "substantially similar." (Scherer Aff. Ex. A, at 17). [FN32] Opining generally on substantial similarity is something Scherer clearly may not do. Substantial similarity is a legal test with two prongs-extrinsic and intrinsic-and the extrinsic prong is the only prong that accepts expert opinion evidence. While Scherer does not always explicitly say he is evaluating expression (the Court does not expect one with no legal training to appreciate the difficult idea/expression dichotomy, and TCM/Pinnacle

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

argue that Scherer's evaluation should be cloaked with the description of comparing objective details of the ideas as opposed to comparing expression), it is telling that at some points he does. For instance, in evaluating the placement of the gabled roof, Scherer tells the Court that use of the gabled roof "is not subject to copyright," but also that "the manner in which each architect independently created his own *expression* of the traditional gable-within the narrow restriction mentioned above-establishes that they are not substantially similar." (Scherer Aff. Ex. A, at 18) (emphasis added).

FN32. Scherer states that the purpose of his report "is to offer my opinion as to whether there is copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*" (Scherer Aff. Ex. A, at 1). Elsewhere, Scherer affirmatively states "I would contend that the arrangement of the basic elements of the interior is also not protectible." *Id.* at 10. The Court will not consider Scherer's " 'attempt to tell the court what result to reach ." ' *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 752-53 (8th Cir.2003); *see also Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir.1988) (explaining the principle that expert opinion evidence that simply tells the jury what result to reach is not helpful).

***26** With regard to originality, the Scherer report reads more like an amicus brief. "The touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact." *McKnight by and through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1408 (8th Cir.1994). The Eighth Circuit has recognized that "[b]ecause the judge and not a witness is to instruct the factfinder on the applicable principles of law, exclusion of opinion testimony is appropriate if the terms used have a separate, distinct, and special legal meaning." *Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411- 12 (8th Cir.1987) (*citing Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir.1977) and *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir.1985)). Scattered throughout the report, Scherer offers his opinions concerning originality. (Scherer Aff. Ex. A, 1-2) ("To determine whether there has been copyright infringement, I will examine the issues of *original works of authorship* ....") (emphasis in original); *id.* at 2 ("[I]t is further assumed that an *Original Work of Authorship* is only the result of an individual working closely and autonomously with an Owner *for the purpose* of producing an original work.") (emphasis in original); *id.* at 12 ("In effect, the marketplace for affordable suburban housing discourages *Original Works of Authorship* that are born from the 'genius' of an individual.") (emphasis in original); *id.* at 17 ("All of the rooms are rectangular and do not posses any distinguishing features that would identify them as original."); *id.* ("There are no distinguishing or original geometric configurations or plan arrangements that convey imagination or originality."). The Court finds that the Scherer report's discussion of originality would be unhelpful to the fact finder. *See EZ Dock, Inc. v. Schafer Sys., Inc.*, 2003 WL 1610781, at *7 (D.Minn. Mar. 8, 2003) ("[I]ssues of law are not properly the subject of expert testimony. It is the *Court's* duty to instruct the jury on the applicable principles of patent law...."). Regardless of what Scherer thinks original means, "original" for purposes of copyright law has a distinct, special legal meaning. The Supreme Court has outlined the special meaning of original:

To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious" it might be. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.

***27** *Feist*, 499 U.S. at 345.

Scherer's report relies on his own standard for originality. *Contra Richmond Homes*, 862 F.Supp. at 1526 ("There is no requirement in

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

copyright law that the plans be particularly unusual; they simply must be original. Mass-produced house floor plans are commonly protected."). The Court, of course, will evaluate originality based on the standard set by the Supreme Court. The Court disregards Scherer's discussion of originality for it is unhelpful.

On the other hand, some of Scherer's discussion about how architects operate and what processes they utilize to develop a drawing may be helpful. Thus, for purposes of this motion, the Court will only disregard the inadmissible portions of the Scherer affidavit and will consider the admissible portions. *See Lee v. Nat'l Life Assurance Co.*, 632 F.2d 524, 529 (5th Cir.1980). The Court will not strike the entire Scherer report but will leave it to the trial judge to determine if a jury should consider particular testimony. *See In re St. Jude Med., Inc. Silzone Heart Valves Prod, Liability Litig.*, No. MDL 01- 1396, 2004 WL 45503, at *16 (D.Minn. Jan. 5, 2004).

The Court does not need to reach the issue of independent creation at this point, and, therefore, does not address the Scherer report's analysis of independent creation.

Based upon the foregoing and all the files, records, and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Plaintiff The Rottlund Company's (Rottlund) Motion for Partial Summary Judgment on Liability Issues of Validity, Direct Copying, Access, and Substantial Similarity Concerning Plaintiff's § 102(a)(5) Copyrighted Technical Drawings (Doc. No. 333) should be GRANTED in part and DENIED in part.
2. Plaintiff's Motion to Strike the Affidavit of Jeffrey Scherer (Doc. No. 369) should be DENIED without prejudice.
3. Defendant Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. and the Bloodgood Group, Inc.'s (hereinafter collectively BSB) Motion for Partial Summary Judgment on Copyright Validity (Doc. No. 350) should be DENIED.
4. Defendants' Motion for Partial Summary Judgment (Doc. Nos. 382, 384, and 406) should be DENIED in part. In a separate report and recommendation, the Court will consider the Defendants' collective motion regarding whether the Chateau Collection technical drawings infringe the Villa II technical drawings; whether the Homestead Collection, Washington Square, and Chateau Collection as-built structures infringe the Villa II as-built structure; and the contributory infringement and vicarious liability claims.

Under D. Minn. L.R. 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties within 10 days a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Any party wishing to oppose such objections must file and serve all parties with its response in accordance with L.R. 72.1(c)(2). Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

2004 WL 1879983 (D.Minn.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.