UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,

Plaintiff,

v.

Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,

Defendants,

and

Town & Country Homes, Inc., a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

Civil No. 01-1980 (DSD/SRN)

**DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS AND PLANNERS OF IOWA, INC., AND THE BLOODGOOD GROUP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTIONS IN LIMINE**

**ORAL ARGUMENT REQUESTED**

Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. ("BSB") and The Bloodgood Group, Inc. ("BGI") submit this Memorandum of Law in Support of their Motion in Limine.

## I. ROTTLUND SHOULD NOT BE PERMITTED TO ARGUE THAT PRIOR BSB AND BGI PRODUCTS INFRINGE ON ROTTLUND'S COPYRIGHTS.

This case, as it regards Rottlund's claims against BSB and BGI, presents one simple question: does the Homestead Collection back-to-back townhouse designed by BSB infringe on the Villa II back-to-back townhouse designed by Rottlund? This is the question posed in the eight versions of Rottlund's Complaint, and the question that the five parties to this lawsuit have been litigating for three years. However, in recent months, Rottlund's submissions to the Court have indicated that it intends, at trial, to argue (and introduce evidence and elicit testimony to support the contention) that several prior products designed by BSB also infringe on Rottlund's copyright on products other than the Villa II. In particular, it appears that Rottlund intends to argue that a back-to-back townhouse designed by BSB for Midland Homes (the "Midland Townhome") and a back-to-back townhouse designed by BSB for Jerry's Homes (the "Jerry's Townhome") both infringe on Rottlund's New Villa or Original Villa copyrights[1]. For the reasons set forth below, Rottlund should not be permitted to introduce into this litigation evidence and arguments concerning these entirely separate townhomes, which were designed for clients other than Town & Country Homes, and built in places other than the Twin Cities.

### A. This evidence is inadmissible pursuant to Rule 404(b) of the Federal Rules of Evidence.

Rule 404(b) holds that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b) was promulgated with the understanding that the admission of an accused's past misdeeds can pose a "peril to the innocent." People v. Zackowitz, 172

[1] Notably, Rottlund has never actually compared the Jerry's Townhome or the Midland Townhome to the Original Villa or New Villa, and the products are, even to the untrained eye, markedly different.

N.E. 466, 468 (N.Y. 1930)(Judge Cardozo's analysis of New York's version of the rule). The possible prejudice is both simple to perceive, and difficult to combat, namely, that testimony regarding uncharged misdeeds will incline the jury to overlook gaps in the plaintiff's actual case and find against the defendant on the basis that the defendant is generally a "wrongdoer." This is precisely how Rottlund intends to use this evidence: Rottlund intends to argue that BSB infringed on Rottlund's copyrights in the past, so BSB must have infringed on the Rottlund copyright at issue in this litigation. Rottlund's questioning of BSB and BGI's expert witness reveals Rottlund's trial strategy for this evidence. Time and again, Rottlund asked if Larry Moore (the architect who designed both the Homestead Collection and the Midland Townhome) was "ethical" or had acted "ethically" or with "integrity" when designing the Midland Townhome:

- "Does the fact that Mr. Moore was concerned about this at all trouble you in terms of your opinion as to the ethical propriety of BSB in designed projects such as the Midland project?"[2]
- "Does that give you pause at all in terms of a lack of an endorsement from Jim Grundmeier, his boss, to whether or not Larry Moore acted ethically in this situation?"[3]
- "So as you sit here today, you don't have an opinion as to whether or not BSB acted ethically when they did not report Larry Moore's Midland design to the AIA?"[4]
- "Do you believe that Mr. Larry Moore's integrity is up to the standards that you lay out here in terms of Doug Buster's integrity?"[5]
- "Do you have an opinion one way or another as to whether or not Larry Moore acted with integrity when he designed the Midland Homes back-to-back product?"[6]
- "What in particular did he testify to that led you to believe he acted ethically when Mr. Larry Moore designed the Midland back-to-back product?"[7]

---

[2] Transcript of the Deposition of Albert Bloom, at page 112, attached as Exhibit A to the Affidavit of Ben Patrick submitted herewith.
[3] Id. at 118.
[4] Id. at 122.
[5] Id. at 244.
[6] Id. at 246-47.
[7] Id. at 247.

The court in Delman Fabrics, Inc. v. Holland Fabrics, Inc. and Martin Levine, 1984 WL 367 (S.D.N.Y. 1984)[8], confronted a similar issue, on even more dramatic facts. In Delman, defendant Holland Fabrics was accused of infringing on a copyright Delman Fabrics held on certain fabric designs. Id. at *1. Holland admitted that the designs at issue were identical, but claimed Holland had purchased the allegedly infringing fabric from a designer who had independently created it. Id. Levine owned Holland. Id. Delman argued to the court that "defendant Levine and others of his corporation have been branded as copyright infringers with some frequency in the past." Id. at *7 The court observed that "[t]his is perfectly true[,]" and quoted from a prior case in which Levine had been a defendant: "[t]he inference is inescapable that Levine has made a practice of copying the designs of other converters, and that an award of statutory damages is appropriate as a deterrent to further activity of this kind." Id. (quoting Lauratex Textile Corp. v. Allton Knitting Mills, Inc. 517 F.Supp. 900, 903-04 (S.D.N.Y. 1981)). The Delman court rejected the proffered evidence regarding Levine's past infringement activities, stating "plaintiff's references to earlier, discrete infringements by Levine fall within the prohibition stated in the first sentence of Rule 404(b)." Id. Thus, in Delman, the court was presented with evidence that a prior court had, after a trial, found that Levine, and the corporations he owned, were routinely engaged in copyright infringement. The court rejected this evidence as prohibited by Rule 404(b). In this case, Rottlund's offer of proof is far weaker. As is discussed below, Rottlund has developed no evidence during discovery to draw the conclusion that the Midland Townhome or the Jerry's Townhome infringe on any copyrights, yet Rottlund intends to argue to the jury

---

[8] Also published at 1984 Copr.L.Dec. P 25,663. A copy is attached as Exhibit B to the Affidavit of Ben Patrick.

that the Jerry's Townhome and Midland Townhome infringe on Rottlund's copyrights[9]. This Court should foreclose this argument, and refuse to receive evidence offered in furtherance of this argument, just as the Delman court rejected similar evidence.

**B. Rottlund lacks the required quantum of evidence to present this evidence under Rule 404(b).**

If the Court concludes that Rule 404(b) does not flatly prohibit Rottlund from introducing evidence concerning the Midland Townhome and the Jerry's Townhome in order to argue that they infringe on Rottlund's copyrights or are evidence of alleged prior misdeeds, it remains that Rottlund lacks the required quantum of evidence. In Huddleston v. United States, 485 U.S. 681 (1988), Chief Justice Rehnquist, writing for a unanimous Court, noted that "[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Id. at 689. This limitation is reflected in the Eighth Circuit's test for the admissibility of evidence under Rule 404(b), which holds that such evidence is only admissible if "there is sufficient evidence to support a finding by the jury that the defendant committed the prior acts…" United States v. Crump, 934 F.2d 947, 954 (8th Cir. 1991) (citing United States v. Anderson, 879 F.2d 369, 378 (8th Cir. 1989)). Thus, before Rottlund can argue to the jury that BSB's designs for the Midland Townhome and Jerry's Townhome infringe on Rottlund's copyrights, Rottlund must satisfy the Court that the evidence it will introduce is sufficient to permit the jury to find that these townhomes do indeed infringe. A review of the record developed in discovery reveals gaping holes in Rottlund's proof on this issue.

[9] It is important to note that Rottlund does not argue that either the Midland Townhome or the Jerry's Townhome infringes on the Rottlund product at issue in this case.

First, Rottlund has no expert testimony to support this conclusion. Indeed, Rottlund's architectural expert testified that he had never compared the Midland Townhome or the Jerry's Townhome to the Rottlund products upon which BSB's designs are alleged to have infringed[10]. Second, no Rottlund witness opined that the Midland Townhome or the Jerry's Townhome infringed on Rottlund's copyrights. Third, BSB's architectural expert, Albert Bloom, did compare these products, and opined that the Midland Townhome did not infringe on Rottlund's copyrights[11].

In short, there is no factual support for Rottlund's allegations. Rottlund has not produced evidence sufficient to permit the jury to conclude that BSB's designs for the Midland Townhome or the Jerry's Townhome infringe on any of Rottlund's copyrights. For this reason, in addition to ruling that such evidence is prohibited by Rule 404(b), the Court should rule that Rottlund has not brought forth sufficient evidence to make this theory admissible under Rule 404(b).

### C. Evidence concerning the Midland Townhome and Jerry's Townhome is not relevant.

Even if Rule 404(b) did not prohibit Rottlund from introducing evidence concerning the Midland Townhome and Jerry's Townhome, that evidence would be inadmissible because it simply is not relevant to the issues presented in this case. The jury will be asked to determine if the Homestead Collection townhome infringes on Rottlund's copyright in the Villa II townhome. Evidence concerning whether or not the Midland Townhome or Jerry's Townhome infringes on Rottlund's copyright in the

[10] See Transcript of the Deposition of Anthony Desnick at pages 63 and 183, attached as Exhibit C to the Affidavit of Ben Patrick.
[11] See Supplemental Expert Disclosure of Albert Bloom at pages 13-15, attached as Exhibit D to the Affidavit of Ben Patrick.

Original Villa townhome or New Villa townhome[12] has no bearing on the question the jury will be asked to resolve. As such, that evidence is irrelevant and inadmissible.

### D. Evidence concerning the Midland Townhome and Jerry's Townhome will cause undue delay and waste the Court's and the jury's time.

Rule 403 allows the Court, in its discretion, to exclude otherwise relevant and admissible evidence if its presentation will cause undue delay or waste the Court's and/or jury's time. If Rottlund is allowed to argue that the Midland Townhome and Jerry's Townhome infringe on Rottlund's copyrights in products other than the Villa II, the result will be a mini-trial on that issue, with both sides presenting evidence, testimony, and witnesses relating solely to that issue. BSB and BGI would be required to call at least two witnesses to testify solely on these issues. None of this evidence will advance the trial, nor will it bear on the question of whether the Homestead Collection townhome infringes on the Villa II townhome. The inevitable result will be juror confusion, waste of time, and an undue delay in the trial. The Court should prohibit the introduction of this evidence for these reasons.

## II. TIMOTHY WHITTEN SHOULD BE PRECLUDED FROM OFFERING EXPERT TESTIMONY.

Rottlund has a motion currently pending before the Magistrate Judge which, if granted, would have the collateral effect of precluding any expert testimony from Rottlund's in-house architect, Timothy Whitten[13]. BSB and BGI have opposed Rottlund's motion. However, Whitten should be precluded from offering expert

---

[12] Rottlund has built three versions of the Villa townhome: the Original Villa, the New Villa, and the Villa II. All three are separately copyrighted.

[13] Rottlund moved to exclude expert testimony from BSB and BGI's employee witnesses on the basis that they had not provided sufficient expert reports during discovery. BSB and BGI believe that expert reports are not required from employee witnesses, and have opposed the motion on that basis. However, if Rottlund's motion is granted, Timothy Whitten's testimony would also be excluded since he did not provide an expert report.

testimony for another reason not raised in Rottlund's prior motion: Whitten's duties at Rottlund regularly involve giving expert testimony. Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires that "with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony," the party intending to offer expert testimony must provide a written report signed by that expert. It is undisputed that, in this case, Whitten has not provided any report. See Affidavit of Ben Patrick at ¶ 6. It is also clear that Whitten's duties at Rottlund regularly involve giving expert testimony.

In at least two other copyright infringement cases in recent years, Whitten has served as an expert witness on behalf of Rottlund. In Rottlund Homes, Inc. v. The Oaks Development Co. et al., Case No. 4-98-CV-10574 (Southern District of Iowa) (hereinafter, the "Oaks Matter"), Rottlund sued an Iowa developer, alleging that the Iowa developer had infringed on Rottlund's copyright in its New Villa Townhome. In the Oaks Matter, Whitten gave expert testimony on behalf of Rottlund during a hearing on Rottlund's motion for an injunction. See Transcript of the Hearing Testimony of Whitten, attached as Exhibit E to the Affidavit of Ben Patrick. Rottlund's motion in that matter was denied, based on Judge Longstaff's conclusion that the New Villa was simply not original, and therefore not likely to be afforded copyright protection. See July 13, 1999 Order at pages 16-20, attached as Exhibit F to the Affidavit of Ben Patrick. The Oaks Matter was settled shortly thereafter.

In The Rottlund Company, Inc. v. Scott Larson Construction, Inc. et al., Case No. 02-1238 (JRT/FLN) (District of Minnesota), Whitten again served as an expert witness.

In one of its memoranda of law submitted to the court in that case, Rottlund cites to excerpts from a transcript of Whitten's deposition. See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment at page 3, attached as Exhibit G to the Affidavit of Ben Patrick.

In addition to this lawsuit and the two lawsuits identified above, Rottlund has been involved in at least two other copyright infringement lawsuits: The Rottlund Company, Inc. v. Wensmann Homes, Inc. et al., Case No. 02-2681 (DWF/SRN) (District of Minnesota) and a case in Iowa against an entity referred to as "Rogers Homes" that was never filed. See Transcript of the Deposition of Jason Jorgensen at pages 12-14, attached as Exhibit H to the Affidavit of Ben Patrick; Transcript of the August 20, 2003 Deposition of Steven Theis at pages 70 and 111-115, attached as Exhibit I to the Affidavit of Ben Patrick. Defendants' ability to ascertain whether Whitten offered any expert testimony is hampered due to Rottlund's refusal to answer discovery requests on the subject.

The record before the Court demonstrates that in at least three separate cases in the last five years, Whitten has served as an expert witness on behalf of Rottlund. Whitten's duties as an employee of Rottlund clearly include regularly giving expert testimony. As such, Whitten was required, pursuant to Rule 26(a)(2)(B), to submit an expert report. Whitten has not done so. Therefore, this Court should preclude Whitten from offering any expert testimony in this case. See MEMS v. The City of St. Paul-Dept. of Fire & Safety Serv., 2002 WL 334411 (D.Minn. 2002), aff'd. 327 F.3d 771 (8th Cir. 2003)[14] (recognizing that "the Federal Rules of Civil Procedure make it absolutely clear that a testifying expert's report 'shall contain a complete statement of all opinions to be

[14] A copy of this opinion is attached as Exhibit J to the Affidavit of Ben Patrick.

expressed and the basis and reasons therefore . . .'" and excluding expert testimony because the Rule 26(a)(2)(B) disclosure was not sufficient).

## III. THE COURT SHOULD PERMIT THE JURY TO TRAVEL TO AND VIEW THE TOWNHOMES AT ISSUE.

The central question in this lawsuit is whether the townhomes built by Pinnacle and Town & Country infringe on the copyright held by Rottlund in its Villa II townhome. Two of the three accused townhomes, and Rottlund's copyrighted townhome, have been built here in the Twin Cities[15]. BSB and BGI believe that a "jury view" of these three townhomes will help the jury understand the evidence presented, and come to a more informed verdict. The decision to conduct a jury view is within the discretion of the Court. United States v. Passos-Paternina, 918 F.2d 979, 986 (1st Cir. 1990), cert. denied, 499 U.S. 982 (1991), and 501 U.S. 1209 (1991); Skyway Aviation Corp. v. Minneapolis, Northfield and Southern Railway Co., 326 F.2d 701, 708 (8th Cir. 1964). The court in Clemente v. Carnicon-Puerto Rico Management Associates, L.C., 52 F.3d 383 (1st Cir. 1995), set forth a detailed set of criteria by which requests for a jury view should be weighed:

> First, counsel should be alerted to a proposed view at the earliest practicable time and given an opportunity to be heard concerning it. * * * Second. . .the jury should be instructed prior to embarking on the view that the view itself is not evidence as such, but, rather, is simply a mechanism to facilitate contextualization of the evidence. * * * Third, counsel should be given the opportunity to attend the view, although the judge may, in his discretion, place limits on their interaction with the subject of the view and with the jurors. * * * Fourth, because the

[15] Town & Country built two very different versions of the Homestead Collection. The version of the Homestead Collection which was built in Lakeville was redesigned to meet Lakeville's particular city-wide requirements, resulting in a building which looks very different from the Homestead Collection townhomes built elsewhere. Thus, BSB and BGI request that the jury be permitted to view the following as-built structures: (1) Rottlund's Villa II at Rush Creek; (2) Town & Country's Homestead Collection at Centennial Crossing; (3) Town & Country's Homestead Collection at Cornerstone Lake; and (4) Town & Country's Chateau Collection in Brooklyn Park. If possible, BSB and BGI request that the jury be permitted to view both the interior and exterior of these buildings.

> judge's oversight is as necessary at a view as in the course of the trial proper, the judge ordinarily should attend the view. * * * Fifth, the court should employ some methodology of fully and accurately recording that which transpires at the view, usually by enlisting the attendance of a court reporter.

Clemente, 52 F.3d at 386. If these procedural safeguards are followed, there is no reason to believe that the view will result in prejudice to any party. On the contrary, an opportunity to view the physical structures which are at issue in this case will doubtless advance the jury's understanding of the evidence presented, and help the jurors in drawing their own conclusions regarding the central issue in this case.

A jury view is of particular importance in this case, as Rottlund has alleged that Pinnacle and Town & Country's as-built townhomes infringe on Rottlund's copyrights in its as-built townhome. The Copyright Act allows both architectural technical drawings and as-built structures to be copyrighted, and Rottlund has alleged infringement as to both its copyrighted technical drawings and its copyrighted as-built structures. While technical drawings can be brought into court and placed before the jury, the same is not true for the as-built structures. The jury will best be able to judge the differences between the as-built structures if they are permitted to view them. For these reasons, BSB and BGI respectfully request that the Court permit a jury view during BSB and BGI's case in chief.

## IV. ROTTLUND SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE RELATING TO THE "COMPETITION PRODUCT SURVEY."

On May 5, 1998, Larry Moore at BSB sent a transmittal to Steve Sandelin at Pinnacle. A copy of this transmittal is attached as Exhibit K to the Affidavit of Ben Patrick. The only notation on the transmittal cover sheet was "Steve: Competition

product survey for Minneapolis area." Larry Moore has testified that he did not keep a copy of the attachments to the transmittal. A copy of Larry Moore's deposition testimony on this issue is attached as Exhibit L to the Affidavit of Ben Patrick. Steve Sandelin has also testified that he did not retain the attachments to the transmittal[16]. Rottlund has speculated, and will argue at trial, that the "competition product survey" contained brochures of Rottlund's Villa II townhome. BSB and BGI ask the Court to preclude Rottlund from raising this issue at trial, because (1) the question of whether the "competition product survey" contained Rottlund brochures is relevant only to the issue of access, which has already been deemed established by summary judgment; and (2) Rottlund's argument that the "competition product survey" contained Rottlund brochures is wholly unsupported by, and in fact contrary to, the evidence.

**A. The contents of the "competition product survey" are relevant only to the issue of access.**

Assuming, *arguendo*, that Rottlund was in fact correct, and the "competition product survey" contained Rottlund brochures, that evidence would be relevant only to establish that the Defendants had access to Rottlund's Villa II. However, the Court has already granted Rottlund's motion for summary judgment, establishing as a matter of law that the Defendants had access to the Villa II technical drawings and as-built structure. Thus, evidence on the issue of access is no longer relevant.

**B. Rottlund's argument is unsupported by any evidence.**

In addition to be irrelevant, Rottlund's argument on this point is unsupported by any evidence, and contrary to Larry Moore's deposition testimony. Larry Moore testified that, while he did not originally recall the contents of the "competition product survey,"

---

[16] Mr. Sandelin's testimony was given on October 29, 2004. BSB and BGI do not, at this time, have a transcript of that testimony to provide to the Court.

he reviewed documents during the course of the litigation which refreshed his recollection regarding the contents of the "competition product survey." A copy of Larry Moore's deposition testimony on this issue is attached as Exhibit M to the Affidavit of Ben Patrick. Deposition Exhibit 265, which is attached as Exhibit N to the Affidavit of Ben Patrick, was identified by Larry Moore as the contents of the "competition product survey." Notably, Exhibit 265 does not contain any Rottlund brochures. Rottlund should be precluded from arguing to the jury a theory (that the "competition product survey" included a Rottlund brochure) for which Rottlund has no evidence, and which is contrary to the only evidence offered on this issue.

## V. BSB AND BGI JOIN IN THE MOTIONS IN LIMINE BROUGHT BY PINNACLE AND TOWN & COUNTRY.

BSB and BGI join in, and incorporate by reference, the motions in limine brought by Pinnacle and Town & Country.

MACKALL, CROUNSE & MOORE, PLC

Dated: November 1, 2004

By: /s/ Ben Patrick

Holly J. Newman (MN Bar #026457X)
Ben Patrick (MN Bar #312460)
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, Minnesota 55402-2859
Telephone: (612) 305-1436

Attorneys for Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. and The Bloodgood Group, Inc.

JBP/jbp#720897v1