UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br><br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY AND REPORTS OF JEFFREY A. SCHERER PURSUANT TO RULES 104(A) AND 702 OF THE FEDERAL RULES OF EVIDENCE** |

## INTRODUCTION

Plaintiff The Rottlund Company, Inc. d/b/a Rottlund Homes ("Rottlund") moves to exclude the testimony and reports of Jeffrey A. Scherer, Defendants Pinnacle Corporation and Town & Country Homes, Inc.'s (collectively the "Town & Country Homes Defendants") expert witness. Rule 702 of the Federal Rules of Evidence requires that expert testimony be stricken if it is not helpful to the trier of fact or if it crosses the line from helping the jury understand the evidence to invading the province of the jury. On October 19, 2004, the Court adopted in its entirety Magistrate Judge Nelson's August 20, 2004 Report and Recommendations ("R&R")[1] finding, among other things, that Scherer's proffered opinions as to the originality of Rottlund's designs "would be unhelpful to the fact finder." *The Rottlund Co., Inc. v. Pinnacle Corp., et al.*, No. Civ. 01-1980, 2004 WL 1879983, at *26 (D. Minn. Aug. 20, 2004) (citing *EZ Dock, Inc. v. Schafer Sys., Inc.*, No. Civ. 98-2364, 2003 WL 1610781, at *7 (D. Minn. Mar. 8, 2003) ("[I]ssues of law are not properly the subject of expert testimony. It is the *Court's* duty to instruct the jury on the applicable principles of patent law. . . .").[2] Magistrate Judge Nelson further found that Scherer's opinions regarding how individual elements are expressed "moves too far into expression; thereby invading the province of the jury." *Rottlund*, 2004 WL 1879983, at *25).[3] For these and other reasons set forth more fully below, this Court should exclude

---

[1] The R&R (Doc. 514) was published on Westlaw as *The Rottlund Co., Inc. v. Pinnacle Corp., et al.*, No. Civ. 01-1980, 2004 WL 1879983 (D. Minn. Aug. 20, 2004). The *Rottlund* decision is attached to the Affidavit of Philip R. Mahowald in Support of Plaintiff's Memorandum of Law in Support of its Motion in Limine to Exclude Expert Testimony and Reports of Jeffrey A. Scherer ("Mahowald Aff."), as Exhibit A. For the sake of consistency, Rottlund shall cite to the Westlaw decision.

[2] Unreported decisions cited herein other than *Rottlund Homes* are attached in alphabetical order as Exhibit B to the Mahowald Affidavit.

[3] Although the R&R specifically addressed Scherer's proffered expert report and testimony only as to Rottlund's Villa II technical drawings, Magistrate Judge Nelson's analysis, findings and conclusions apply equally to Scherer's proffered testimony regarding Rottlund's Villa II architectural works. *See* Magistrate Judge Nelson's Report and Recommendation dated October 28, 2004 (Doc. 599) at 9 (noting that "Mr. Scherer did not explicitly confine his comments to just the architectural plans or to just the as-built structures [of the Villa II and Homestead Collection], when, opining, 'I too agree that these products have obvious superficial similarities.'") (quoting Scherer's Preliminary Expert Report dated August 15, 2003 at 30).

Scherer's reports and opinions in their entirety, as they run counter to Rules 104(a) and 702 of the Federal Rule of Evidence 702.

Contrary to Rules 104(a) and 702 of the Federal Rules of Evidence, the Eighth Circuit's decision in *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117 (8th Cir. 1987), and its progeny, and this Court's decision in *CSM Investors, Inc. v. Everest Development, Ltd.*, 840 F. Supp. 1304 (D. Minn. 1994), Scherer discloses that the purpose of his Preliminary Expert Report dated August 15, 2003 ("Scherer Prelim. Report")[4] and his Supplemental Expert Report dated May 14, 2004 ("Scherer Supplemental Report")[5] is to offer his "opinion as to whether there is copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*" (Mahowald Aff. Ex. C (Scherer Prelim. Report) at 1; Ex. E (Scherer Supplemental Report) at 1.) However, as the Eighth Circuit held long ago in *Hartman*: "Although expert opinion evidence is admissible in connection with the first step of the substantial similarity analysis to show *similarity of ideas*, analytical dissection and expert opinion are not called for under the second step in which substantial *similarity of expression* is measured by a different standard—the response of the ordinary, reasonable person." *Hartman*, 833 F.2d at 120 (emphasis added); *see also Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143 (8th Cir. 1989). Scherer's opinion testimony concerning whether there has been copyright infringement of Rottlund's Villa II technical drawings or Villa II architectural works is not admissible because he cannot assume the role of the fact finder.[6]

---

[4] The Scherer Preliminary Report is attached to the Mahowald Affidavit as Exhibits C and D.

[5] The Scherer Supplemental Report is attached to the Mahowald Affidavit as Exhibit E.

[6] *See* 10/28/04 R&R at 8 (noting that the same substantial similarity analysis applies for both architectural drawings and as-built works) (citing *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1043 (8th Cir. 2003); *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 729 (8th Cir. 2002); *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987)).

Scherer's proffered opinion also runs astray when he opines on "originality" and "independent creation." According to Scherer, to determine whether there has been copyright infringement he must "examine the issues of *original works of authorship* and *independent creation*," and opine on both. (Mahowald Aff. Ex. C (Scherer Prelim. Report) at 1-2 (emphasis in original).) Scherer's proffered opinions do not, however, articulate or apply the binding legal definitions of originality or independent creation to the facts of this case; rather, he simply offers unhelpful, conclusory and uninformative declarations such as "[t]he architect's 'originality' . . . comes in his or her ability to balance the function, aesthetics and budget with integrity and honesty," (*id.* at p. 12,) and "[i]t is my opinion that each town home is an independent act of creation yet their final designs are so dependent on conventional, traditional forms that the town homes are simply not original." (*Id.* at 17).[7] Under well-settled federal law, "[t]he touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact." *McKnight by and through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1408 (8th Cir. 1994). "Because the judge and not a witness is to instruct the factfinder on the applicable principles of law, exclusion of expert opinion testimony is appropriate if the terms used have a separate, distinct, and special legal meaning." *Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411-12 (8th Cir. 1987) (*citing Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977) and *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)). Scherer improperly seeks to define, or rather redefine, these copyright law terms of art to suit his clients' defense theory. (*See, e.g.*, Mahowald Aff. Ex. C (Scherer Prelim. Report) at 2 ("[I]t is further assumed that an *Original Work of Authorship* is only the result of an individual working closely and autonomously with an Owner for the purpose of producing an original work.") (emphasis in

---

[7] Moreover, the originality and independent creation issues are not so scientific, technical or special that expert testimony is necessary to assist the trier of fact.

original); *id.* at 17 ("All of the rooms are rectangular and do not posses [sic] any distinguishing features that would identify them as original."); *id.* ("There are no distinguishing or original geometric configurations or plan arrangements that convey imagination or originality."); *id.* ("The key distinction here is the one between independent acts of creation and originality. It is my opinion that each town home is an independent act of creation yet their final designs are so dependent on conventional, traditional forms that the town homes are simply not original.")). Magistrate Judge Nelson properly disregarded as unhelpful Scherer's proffered opinions regarding originality based on Scherer's "own standard for originality." *Rottlund*, 2004 WL 1879983, at *27 (citing *Richmond Homes Mgmt., Inc. v. Raintree, Inc.*, 862 F. Supp. 1517, 1526 (W.D. Va. 1994) ("There is no requirement in copyright law that plans be particularly unusual; they simply must be original. Mass-produced house floor plans are commonly protected."), *rev'd in part on other grounds*, 66 F.3d 316 (4th Cir. 1995)). Although Magistrate Judge Nelson did not address the admissibility of Scherer's proffered opinion regarding independent creation, *see Rottlund*, 2004 WL 1879983, at *27, Scherer's independent creation opinion is inadmissible for the same reason that it will neither assist nor be helpful to the jury. *See McKnight*, 36 F.3d at 1408; *Hogan*, 812 F.2d at 411-12; *Marx*, 550 F.2d at 509-10; *Torres*, 758 F.2d at 151; *EZ Dock*, 2003 WL 1610781, at *7.

## LEGAL ARGUMENT

### I. General Principles.

#### A. Rules 104(a) And 702 Of The Federal Rules Of Evidence.

The proponent of proposed expert testimony bears the burden of demonstrating that the testimony is admissible. *EZ Dock,* 2003 WL 1610781, at *1 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 & n.10 (1993); *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001)). Rule 104(a)

provides that the court shall determine, as a preliminary question, the admissibility of expert testimony. Fed. R. Evid. 104(a) (2004); *EZ Dock*, 2003 WL 1610781, at *1 (barring expert Arthur Cobb's opinion on lost profits).

Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . ." Fed. R. Evid. 702. Courts evaluate the admissibility of expert testimony pursuant to Rule 702 for relevance and reliability. *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001); *J.B. Hunt Transp., Inc. v. Gen. Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) (court must ensure expert opinions are relevant to the tasks at hand); *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 739 (8th Cir. 2000) (courts are afforded wide latitude and will only be reversed for abuse of discretion when they decide whether expert opinion testimony is relevant and admissible). The requirement that expert testimony assist the trier of fact to understand the evidence or determine a fact in issue is a relevancy requirement. *Bonner*, 259 F.3d at 929. If the proffered expert testimony will not assist the trier of fact to understand the evidence or determine a fact in issue it is not relevant and, therefore, is not admissible. Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.").

The Town & Country Homes Defendants cannot demonstrate that Scherer's "expert" opinion testimony is admissible. Specialized knowledge is not needed to assist the trier of fact to understand the evidence or determine the facts concerning the issues that Scherer offers an opinion on in his Reports.

## II. Liability Expert Opinion Evidence May Be Permitted Only For The Limited Purpose Of Evaluating The Similarity Of The General Ideas Embodied In The Works At Issue In This Case.

It is well established that copyright infringement may be proven by direct or circumstantial evidence of copying. *See, e.g.*, *CSM Investors*, 840 F. Supp. at 1311 (citing *Hartman*, 833 F.2d at 120). Circumstantial evidence of copying exists where the defendant had access to the plaintiff's copyrighted work and there is substantial similarity between the works in question. *Id.* Access is shown by showing a reasonable possibility that the defendant had an "opportunity to view" the plaintiff's work. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 113 (5th Cir. 1978); *Arthur Rutenberg Corp. v. Parrino*, 664 F. Supp. 479, 481 (M.D. Fla. 1987). Substantial similarity is shown through a two-part test. *CSM Investors*, 840 F. Supp. at 1311. First, under the extrinsic test, the general ideas embodied in the works are evaluated for similarity. *Id.*; *see also Nelson*, 873 F.2d at 1143 (holding that the extrinsic test is based merely on "such objective criteria as 'the type of artwork involved, the materials used, the subject matter, and the setting for the subject'").[8] Second, if the general ideas embodied in the works are similar, the expression of the general ideas are evaluated for similarity (the intrinsic test). *Id.* If the differences do not so outweigh the similarities such that the similarities are deemed inconsequential within the total context of the copyrighted work as a whole, substantial similarity exists. *Id.* at 1312. The same two-part test for substantial similarity applies to both technical drawings and architectural works. *See* 10/28/04 R&R at 8 (citing *Taylor Corp.*, 315 F.3d at 104; *Schoolhouse*, 275 F.3d at 729; *Hartman*, 833 F.2d at 120).

This Court's October 19, 2004 Order adopted Magistrate Judge Nelson's August 20, 2004 R&R in its entirety, which held that Rottlund's Villa II technical drawings are valid as a

[8] The *Nelson* court affirmed this Court's conclusion, reached after performing the intrinsic test, "that reasonable minds could not differ as to the absence of substantial similarity."

matter of law, that defendants had access to Rottlund's Villa II technical drawings as a matter of law, and that the general idea of Rottlund's Villa II plans and defendants' Homestead Collection and Washington Square plans is substantially similar as a matter of law.

A. Scherer's Admission That The Ideas Embodied In The Villa II And Homestead Collection And Chateau Collection Works Are Substantially Similar Is The Only Portion Of His Proffered Expert Testimony Admissible At Trial.

In *Hartman*, the Eighth Circuit held that expert opinion testimony may be admissible in connection with the extrinsic test (evaluating the similarity of general ideas embodied in the works), but not in connection with the intrinsic test because the similarity of expression is assessed through the eyes of the ordinary, reasonable person. 833 F.2d at 120. This Court applied this well established precedent in *Schoolhouse, Inc. v. Anderson*, No. 99-1214, 2001 WL 1640081, at *4 (D. Minn. 2001), *affd.*, 275 F.3d 726 (8th Cir. 2002), when it held that "[u]nder the first step, expert testimony may be relevant [but] [u]nder the second step, expert testimony is not relevant . . ." (emphasis added). Thus, although expert opinion testimony may be admissible, expert opinion testimony is not required to assist the trier of fact to understand the evidence related to the similarity of general ideas embodied in the works in question. *See, e.g.*, *CSM Investors*, 840 F. Supp. at 1311 (concluding, without relying upon any expert opinion testimony, that the general ideas embodied in the works at issue were substantially similar because both works embodied the idea of a rectangular office showroom for construction on a commercial site). *Hartman* and its progeny make it clear that expert opinion testimony on liability issues other than the general ideas embodied in the works in question are not relevant in copyright infringement cases like this one. In other words, *Hartman*, *Anderson*, and *CSM Investors* severely limit Scherer's latitude as a liability expert, and the opinions proffered in his expert reports go well beyond what is relevant to this case or helpful to the jury. Scherer may be permitted to testify only as to similarities in the general ideas embodied in the works in question.

He may <u>not</u> testify as to any other issue: e.g., the legal definitions of originality, independent creation or substantial similarity or the ultimate conclusion concerning copyright infringement.

1. The General Ideas Embodied in the Homestead Collection and Chateau Collection Are Substantially Similar to the General Ideas Embodied in the Villa II As-Built Structure and Technical Drawings and Technical Works As A Matter of Law.

Scherer need not testify at trial regarding the similarity of ideas, however, as to the general ideas embodied in the Homestead Collection and Chateau Collection are substantially similar to the general ideas embodied in the Villa II as-built structure and technical drawings and technical works as a matter of law. *See Rottlund*, 2004 WL 1879983, at *23; 10/28/04 R&R at 9. Having already determined the issue, the Court should exclude Scherer's reports and proffered testimony from the trial.

2. Alternatively, If Scherer Is Allowed to Testify at Trial, His Testimony Should Be Confined to the Similarities in the General Ideas Embodied in the Works at Issue.

Scherer concedes, as he must, that the general ideas embodied in the works in question (i.e., the idea of a back-to-back, slab on grade town home for construction on residential sites is embodied in the works at issue) are substantially similar. (*See* Mahowald Aff. <u>Exs. C and D</u> (Scherer Prelim. Report) at 9-10 and 30-31; *see also* Mahowald Aff. <u>Ex. F</u> (Transcript of Deposition of Jeffrey A. Scherer, FAIA dated June 30, 2004 ("Scherer Dep.") at 123:19-129:5.) Under the well established law of the Eighth Circuit and this Court, Scherer's concession is the only portion of his proffered expert testimony admissible at trial. *Hartman*, 833 F.2d at 120; *Nelson*, 873 F.2d at 1143; *Schoolhouse*, 2001 WL 1640081, at *4. Accordingly, the Court should grant Rottlund's motion in limine and preclude Scherer from deviating from or going beyond this specific testimony that the general ideas embodied in the works in question are substantially similar.

## III. Expert Opinion Evidence And Testimony Evaluating The Similarity Of Expression And Copyright Infringement Is Inadmissible.

The remainder of Scherer's Reports, however, constitutes inadmissible "expert" opinion testimony because it provides his misplaced opinions concerning substantial similarity of expression (copyright infringement) and the legal principles of originality and independent creation. *See, e.g.*, *Nelson*, 873 F.2d at 1143; *Hartman*, 833 F.2d at 120; *Schoolhouse*, 2001 WL 1640081, at *4; *CSM Investors*, 840 F. Supp. at 1311-12; *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1300-01 (D.C. Cir. 2002) (recognizing that no federal circuit has been asked to permit expert evidence on the issue of copyright infringement by virtue of substantial similarity).

Scherer plainly states that the Town & Country Homes Defendants retained him for the purpose of offering his irrelevant "opinion as to whether there is copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*" (Mahowald Aff. Ex. C (Scherer Prelim. Report) at 1; Ex. E (Scherer Supplemental Report) at 1).

Accordingly, after conceding the general ideas embodied in the works in question are similar, Scherer compares the expression of these ideas by dissecting the individual elements from the total look and feel or gestalt of the works. (*See* Mahowald Aff. Exs. C and D (Scherer Prelim. Report) at 14-29; *see also* Mahowald Aff. Ex. E (Scherer Supplemental Report) at 2, 4-10.) Thus, to champion the cause of his client, Scherer concludes:

> [I]t is my opinion, stated and illustrated in detail in my early report, that the Town and Country product is not substantially similar to the Rottlund product.

(Mahowald Aff. Ex. E (Scherer Supplemental Report) at 2.)

However, as discussed above, Scherer is not permitted to offer any opinions concerning the expression of ideas because substantial similarity of expression is measured by the response of the ordinary, reasonable person. *Hartman*, 833 F.2d at 120. Thus, Scherer's opinions concerning the expression of ideas are neither relevant nor helpful. Moreover, to evaluate

substantial similarity of expression, dissection of individual elements from the total concept and feel or gestalt of the works is not permitted. *Id.*; *Nelson*, 873 F.2d at 1143; *CSM Investors*, 840 F. Supp. at 1311-12. Accordingly, the ordinary, reasonable person, without any assistance from experts, evaluates whether the total look and feel of the expression of the two back-to-back, slab on grade town homes is substantially similar. *Id.*

In *Sturdza*, the Court of Appeals for the District of Columbia recognized that "the use of expert testimony in copyright cases has received widespread judicial attention" and held that it is well established that expert testimony is not permitted to determine substantial similarity (copyright infringement). 281 F.3d at 1300. The *Sturdza* court faced an architectural works copyright infringement dispute. The court first recognized that there is a growing trend to permit expert testimony regarding substantial similarity in copyright infringement cases involving computer programs because of the complexity of the issues surrounding the technology. *Id.* The court also recognized that one court has permitted expert testimony on substantial similarity in a case involving a "highly specialized musical arrangement." *Id.* (citing *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 736-38 (4th Cir. 1990)). However, the *Sturdza* court correctly recognized that neither it "nor any other circuit . . . has considered whether expert evidence is admissible to show substantial similarity of architectural works, nor has any circuit other than the Fourth approved the use of such evidence outside the computer program context." *Id.* at 1300-01.

This Court previously decided that the issue of substantial similarity of architectural designs is not so highly specialized as to require expert testimony to assist the trier of fact to understand the evidence or determine substantial similarity. *CSM Investors*, 840 F. Supp. at 1311-12 (granting summary judgment on the issue of substantial similarity without relying upon

expert testimony). The Eighth Circuit also decided that the substantial similarity of architectural designs is not so complex an issue as to require expert testimony. *See, e.g.*, *Nucor Corp. v. Tenn. Forging Steel Serv., Inc.*, 476 F.2d 386, 391 (8th Cir. 1973) (reversing, without relying upon expert testimony, district court's conclusion that substantial similarities in architectural designs did not exist). Likewise, courts throughout the federal judiciary agree that architectural copyright infringement cases are not so complex or highly specialized as to require expert testimony to assist the trier of fact to understand the evidence concerning substantial similarity, including courts in the Fourth Circuit. *See, e.g.*, *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 186 F. Supp. 2d 1, 13-14 (D. Mass. 2002); *Nelson-Salabes, Inc. v. Morningside Holdings, L.L.C.*, No. Civ. B-98-2226, 2001 WL 419002, at *3-4 (D. Md. 2001), *aff'd in part, vacated in part on other grounds sub nom. Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505 (4th Cir. 2002); *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560, 1566-68 (M.D. Fla. Mar. 9, 1995); *Richmond Homes Mgmt., Inc. v. Raintree, Inc.*, No. Civ. A. 93-0047, 1994 WL 98922, at *5 (W.D. Va. Mar. 9, 1994). The Court should, therefore, exclude Scherer's opinions (in both his reports and his testimony) regarding the expression of ideas embodied in Rottlund's copyrighted Villa II technical drawings and architectural works and the Defendants' expression of ideas embodied in the infringing Homestead Collection and Chateau Collection town homes.[9]

---

[9] In his Supplemental Expert Report dated May 14, 2004, Scherer tries to reformulate his expert disclosure into an analysis and comparison of the "objective details of the ideas embodied in the product of the defendants." (Mahowald Aff. Ex. E (Scherer Supplemental Report) at 1.) Regardless of how Scherer describes his analysis, it is still inadmissible opinion testimony regarding the expression of ideas. Moreover, the Court should reject any effort by Defendants to retool Scherer's opinion and testimony regarding the similarity of the expression of ideas in Rottlund's Villa II architectural works and Town & Country's Homestead Collection architectural works. (*See* Mahowald Aff. Ex. G (Transcript of Feb. 23, 2004 Hearing) at 161:16-25 (supplemental expert disclosures restricted to facts developed after earlier expert disclosures; no "retooling" of expert reports permitted); Third Amended Pretrial Scheduling Order dated February 25, 2004 (Doc. 342), ¶ 2.a. (ordering that Defendants' supplemental expert disclosures as to Homestead Collection be served by April 15, 2004) and ¶ 2.b. (confining Defendants' May 14, 2004 disclosures to the Chateau Collection).) Accordingly, Scherer's tardy retooling of his Homestead Collection

## IV. Scherer's Opinions Concerning Originality And Independent Creation Are Not Relevant And Should Be Excluded.

In its October 19, 2004 Order, the Court rejected Defendants' contention that Rottlund's works are not original. 10/19/04 Order at 2-3 (quoting *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991) ("Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."). Thus, a work is: 1) an independent creation if it was not copied from other works; and 2) original if it was independently created (not copied) and possesses a minimal degree of creativity, which may be crude, humble or obvious. *Id.*; *see also CSM Investors*, 840 F. Supp. at 1310 (holding that the design of a rectangular office showroom for construction on a commercial site possesses the requisite degree of creativity to satisfy the minimal originality threshold); *Richmond Homes*, 862 F. Supp. at 1526 (mass-produced house floor plans easily satisfy the minimal degree of creativity required for originality). Accordingly, this Court held that the "'form . . .[,] arrangement and composition of spaces in [building] design[s]'" are entitled to copyright protection as original works of authorship. 10/19/04 Order at 3 (quoting 17 U.S.C. § 101).

As the Court has already determined that the arrangement and composition of spaces in Rottlund's Villa II works is entitled to copyright protection, the trier of fact need not consider expert witness testimony regarding Rottlund's independent creation of its copyrighted Villa II designs and works. Likewise, the trier of fact does not need an expert witness to assist them to understand the abundant evidence of the Defendants' copying of Rottlund's copyrighted Villa II designs and works. Thus, Scherer's opinions concerning the originality of Rottlund's

---

opinions was in violation of two prior Court Orders. All references to the Homestead Collection in Scherer's Supplemental Report should be stricken, and any testimony regarding his retooled opinions should be excluded at trial.

copyrighted Villa II designs and works and his incredible opinions regarding the Defendants' alleged independent creation of the Homestead Collection and Chateau Collection town homes are not relevant and are not admissible.

**V. Assuming *Arguendo* That Expert Testimony Concerning Originality And Independent Creation Is Relevant, Scherer's Opinion Testimony On Both Topics Must Be Excluded Because He Improperly Redefines And Misdefines The Binding Legal Definitions Of Both Terms.**

Expert opinion testimony that purports to explain or define the legal meaning of a term is not admissible. *Ways v. City of Lincoln*, 206 F. Supp. 2d 978, 991 (D. Neb. 2002); *EZ Dock*, 2003 WL 1610781, at *7 & *10 (expert opinions on issues of law are not proper subjects of expert opinion testimony because it is the court's duty to instruct the trier of fact on the applicable principles of law). Unfortunately, Scherer does more than violate this basic legal tenet because he completely redefines the definitions of originality and independent creation in order to support the Town & Country Homes Defendants' misplaced arguments that Rottlund's copyrighted Villa II designs and works are not copyrightable and BSB independently created the infringing Homestead Collection and Chateau Collection designs and works.

A. Scherer Redefines "Originality" Of Architectural Works.

Concerning originality, Scherer redefines the United States Supreme Court's definition in *Feist* and argues on behalf of his client that a work is only original if it bears the "signature stamp" of the architect or reveals the architect's "imagination and creative decision-making" to solve a design problem. *Compare* Mahowald Aff. Ex. C (Scherer Prelim. Report) at 2 and 26 *with Feist*, 499 U.S. at 345 ("the requisite level of creativity is extremely low"). In his deposition, Scherer further stated that to "fairly and objectively" opine on whether Rottlund's Villa II or Town & Country's plan is original, he would "have to analyze the plans of several hundred thousand townhomes around the country" to determine if the plans were original.

(Mahowald Aff. Ex. F (Scherer Dep.) at 28:18-29:4.)[10] Based on his misplaced definition of originality, and complete failure to conduct the analysis of "several hundred thousand townhomes around the country," Scherer's Reports and testimony are riddled with unfounded, conclusory opinions that Rottlund's copyrighted Villa II designs are unoriginal. (Mahowald Aff. Exs. C and D (Scherer Prelim. Reports) at 17-33; Ex. E (Scherer Supplemental Report) at 2-10; Ex. J (Affidavit of Jeffrey A. Scherer dated March 7, 2004) ¶ 3 (stating that Rottlund's sprinkler room design "reflects no imagination, vision or original expression").) These unfounded opinions should be excluded from trial.

B. Scherer Redefines "Independent Creation" Of Architectural Works.

As for independent creation, Scherer never even bothers to apply the United States Supreme Court's definition to the facts of this case. He simply concludes: "[i]t is my opinion that the Plaintiff's and the Defendants' architects relied upon the tools at their disposal and responded to the input from their clients in independently creating their designs." (Mahowald Aff. Ex. C (Scherer Prelim. Report) at 7.) While Scherer is correct as to Rottlund's creation of the Villa II architectural works — indeed, it is undisputed that Rottlund independently created its copyrighted Villa II design, thereby rendering it original under *Feist*[11] — Scherer's conclusory opinion regarding BSB's alleged independent creation completely ignores countless facts concerning the Defendants' copying of Rottlund's Villa II designs (i.e., the photograph of Rottlund's product affixed to the Town & Country Homes Defendants' redlines of the Homestead Collection design with the instruction to "see Rottlund's product," the floor plans and pictures of Rottlund's Villa II product that were tardily produced from Pinnacle's in-house architect's files, the multitude of tours that the Defendants took of Rottlund's Villa II product,

[10] It is undisputed that Scherer never performed the analysis he claims is required to "fairly and objectively" opine on the issue of originality.

[11] *See* 10/19/04 Order (Doc. 581) at 2-3 (adopting 08/20/04 R&R in its entirety).

the portions of Rottlund's sprinkler room designs that came from the Defendants' files, *etc.*). (*See* Mahowald Aff. Ex. F (Scherer Dep.) at 16:5-17:14.) In fact, only one of these critical facts is referenced in Scherer's reports. (*See* Mahowald Aff. Ex. D (Scherer Prelim. Reports) at 29-30 ("The citation by Mr. Desnick that exhibit BSB2035A[12] shows that the Defendants were copying the Rottlund gabled entry could only be supported if the designs were substantially similar. . . . [I]t is my opinion that the Defendants' architects were keeping abreast of what was going on in the marketplace and solving a real-world need in a conventional way.").) Scherer further admits in his deposition that he either did not know or could not recall this critical information. (*See* Mahowald Aff. Ex. F (Scherer Dep.) at 16:5-17:14.) For all these reasons, Scherer's opinions regarding independent creation should be excluded from trial.

C. Scherer Inappropriately Weaves His Erroneous Legal Definitions Into His Purported "Factual" Analysis.

Using the Supreme Court's example in *Feist*, Scherer does not and cannot opine that the Defendants created the Homestead Collection ignorant of Rottlund's copyrighted Villa II designs. Instead, Scherer misleadingly sidesteps the overwhelming evidence that the Defendants copied Rottlund's technical drawings and architectural works with a self-sealing argument that the Defendants did not copy Rottlund because its end product was not substantially similar to Rottlund's. (*See* Mahowald Aff. Ex. D (Scherer Prelim. Reports) at 29-30.) Scherer sets up his fallacious argument with the false statement that "it appears that Mr. Desnick is suggesting that [Mahowald Aff., Ex. H (BSB2035A)] is the 'smoking gun' that clearly shows the Defendants' architects infringed on the Plaintiff's design." (*Id.*) Contrary to Scherer's analysis, Mr. Desnick opines that exhibit BSB2035A and numerous other documents and photographs produced by

[12] Mahowald Aff., Ex. H, Bates no. BSB 2034-2036. On July 13, 1998, Defendant TCM's President redlined some preliminary back-to-back town home design documents which were captioned the "The Villas" and returned them to BSB. On the redlined design documents, TCM's President attached a photograph of Rottlund's Villa II side elevation, drew a rough sketch of a gabled entry, and wrote: "see Rottlund product." *Id.*, Bates no. BSB 2035A.

Defendants demonstrate that Defendants *copied* Rottlund's Villa II copyrighted work rather than independently created their Homestead Collection and Chateau Collection. (*See* Preliminary Expert Report of Anthony Desnick, AIA dated May 30, 2003 ("Desnick Prelim. Report")[13] at 15 (discussing BSB02035A and other documents supporting his opinion that Defendants and their architects copied Rottlund's Villa II copyrighted work).) It is for the jury to determine whether Defendants' Homestead Collection and Chateau Collection are substantially similar. Accordingly, Scherer's conclusory opinions that BSB independently created the Homestead Collection, resting on nothing more than the *ipse dixit* of Scherer himself, are meaningless and inadmissible. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 143, 146, 118 S. Ct. 512, 519 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")

D. Scherer's "Market Forces Justify Cheating" Analysis Should Be Excluded.

Rather than evaluate the facts in light of the binding legal definitions of originality and independent creation and attempt to provide an opinion that would assist the trier of fact to understand the evidence bearing upon these two issues, Scherer focuses his undivided attention on furthering his clients' agenda to strip Rottlund's Villa II designs of their copyright protection by arguing that the Court should endorse copyright infringement of architectural designs because "market forces" compel competitors to copy. (Mahowald Aff. Exs. C and D (Scherer Prelim. Report) at 2-33.) Scherer summarizes his "expert" opinion in this regard as follows:

> Any apparent convergence of designs is not a result, in my opinion, of the Defendants' architect infringing on the Plaintiff's designs; rather, it is the result of two different architects working independently within a market system that naturally leads to conformity through the influences of traditional buyer expectations, code and zoning requirements, social conventions (living arrangements), budget restraints, and constructability [sic]. Other influences include expectations of the buyer in regards to style, materials, practical functional arrangements, and convenience.

[13] The Desnick Preliminary Report is attached to the Mahowald Affidavit as Exhibit I.

(*Id.* at 26.)

In *CSM Investors*, this Court flatly rejected Scherer's "market forces justify cheating" argument in a prior copyright infringement case concerning architectural designs and works. The infringer in *CSM Investors* claimed that the infringing architectural designs in question were the necessary result of constraints arising from "city ordinances, an NSP easement, a ponding requirement, certain preferences expressed by the City and what [the infringer] refers to as 'market' factors." 840 F. Supp. at 1312, n.6. This Court rejected the notion that market forces compel and permit copyright infringement by recognizing that these common market forces facing every architect/developer do not result in one plausible expression of the idea of an office showroom for construction on a commercial site. *Id.* at 1312. This Court held that the infringer was free to create its own expression of an office showroom that accommodated the constraints, but could not copy the copyright holder's expression merely because it had to accommodate the same constraints the copyright holder solved with its designs. *Id.* at 1312. Accordingly, just as in *CSM Investors*, the "market forces" that Scherer argues compel and permit cheating "neither strip[] (Rottlund) of its copyright protection nor serve[] as a license for infringement." *Id.* at 1310. Accordingly, the Court should exclude Scherer's proffered testimony regarding market forces.

E. <u>This Court Should Exclude Evidence Relating To Alleged Industry Standard Back-To-Back Town Homes</u>.

Evidence relating to any back-to-back town homes other than the town homes at issue—the Villa, Midland, Jerry's Homes, Good Value, Homestead Collection and Chateau Collection town homes—should be excluded from trial. Scherer opines at various times regarding the use of "standard" or "typical" elements, features and plan arrangements of other town home products. (*See, e.g.*, Mahowald Aff., <u>Ex. C</u> (Scherer Prelim. Report) at 10-13; Mahowald Aff.,

Ex. F (Scherer Dep.) at 95:6-11 ("I think that the Homestead Collection and the Rottlund townhome both used standard elements in solving their design problem."); 96:1-9 ("I don't believe in the Homestead Collection or in the Town & Country townhome the designers relied on any elements or products that weren't standardly available.").) As set forth above, Scherer's proffered testimony regarding other "standard" town homes should be excluded because it would mislead the jury regarding the well-established legal standards for originality and independent creation. Accordingly, the Court should exclude from evidence at trial any testimony from Scherer or any other witness regarding "standard" town home products, including evidence and testimony from Scherer or any other witness regarding other town home products in other developments in the Twin Cities metropolitan area.[14]

In sum, Scherer is not permitted to provide any opinions beyond the similarity of the general ideas embodied in the copyrighted Villa II technical drawings and architectural works and the infringing Homestead Collection and Chateau Collection technical drawings and architectural works. By offering opinions on originality and independent creation, Scherer usurps the role of Congress, the United States Supreme Court, and this Court by rewriting well-established copyright law and opining on his interpretation of what should be deemed original and protectible under the Copyright Act. As for Scherer's analysis of the substantial similarity of the expression of the ideas, Scherer usurps the role of the fact finder and attempts to provide an opinion where one is not permitted since the evidence and factual issues in this case are not remotely scientific or highly specialized such that the trier of fact is unable to understand or determine them. The court should exclude Scherer's impermissible expert opinion testimony regarding originality, independent creation, and substantial similarity of the expression.

---

[14] Mahowald Aff., Ex. C (Scherer Prelim. Report) at 10-13.

## VI. Scherer's Opinion Testimony On "How Architects Operate" Must Be Excluded Because Only The Jury's Common Understanding And Not The Customary Practices Or Usages Are Relevant.

In the R&R, Magistrate Judge Nelson left open the possibility that "some of Scherer's discussion about how architects operate and what process they utilize to develop a drawing may be helpful." *Rottlund*, 2004 WL 1879983, at *27. Upon further analysis, however, it is clear that Scherer's opinion and testimony on this topic would not be helpful to the jury as it is hopelessly intertwined with and tainted by Scherer's impermissible and erroneous legal conclusions regarding originality and independent creation. Although Scherer concedes that he does not know whether Defendants had access to Rottlund's architectural works, or whether Defendants copied Rottlund's architectural works, he nevertheless opines that, based on the end product, Defendants did not copy Rottlund. To reach this conclusion, Scherer opines that the use of another's preliminary designs, even a cut and paste of those designs at the commencement of the design work for a similar product, is routinely practiced:

> "Cut and paste" . . . is an act or process used extensively in the early stages of idea formation by designers to abstract an idea and reconfigure it to test it in a new form.

(*See* Mahowald Aff. Ex. E (Scherer Supplemental Report) at 3.) This testimony would not help the jury. *See Marx*, 550 F.2d at 509 n.11 ("Of course, expert testimony concerning the practices of a particular trade or business is not admissible if, as a matter of substantive law, only the jury's common understanding and not the customary practices or usages are relevant."); *Royal Loan Co. v. United States*, 154 F.2d 556 (8th Cir. 1946) (testimony of securities dealers superfluous in action to recover documentary stamp tax levied on instruments "known generally as corporate securities). Moreover, Scherer's proffered testimony is also inappropriate under Rule 702 because it will not "'assist the trier of fact to understand the evidence or determine a fact in issue . . . .'" *Id.* (quoting Fed. R. Evid. 702). As the court found in *Kindergartners*

*Count, Inc. v. DeMoulin*, such evidence is inappropriate and likely to confuse the jury: "Unlike technical computer programs, the trier of fact does not need an expert to compare two literary works that are expressed in simple English. [The] expert['s] opinion will not change what each work is on its face." 249 F. Supp. 2d 1214, 1232 (D. Kan. 2003) (holding that expert testimony regarding actual copying would likely create unnecessary confusion as the trier of fact "would be exposed to expert evidence regarding 'substantial similarity' of the works as a whole to determine actual copying, yet would be expected to analyze whether the copying was unlawful under the ordinary observer test").[15]

Finally, Scherer's proffered opinions and testimony regarding how architects operate are reflected in what he perceives are the "implications for the ability of an architect to practice if the Plaintiff is successful" and the "chilling effect" architects and builders in the Twin Cities and elsewhere will certainly feel "if this Court decides to protect the amorphous 'Gestalt' of a most conventional entry-level town home." Again, Scherer seeks to tell the jury what he thinks the law is or ought to be, and moves alarmingly closer to outright promotion of jury nullification. *See* Mahowald Aff., Exs. C and D (Scherer Prelim. Report) at 31-32. In addition to being irrelevant and unhelpful, Scherer's expert opinion is also inadmissible because it is contrary to well-settled law regarding originality and independent creation. *See United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) ("Opinions that are 'phrased in terms of inadequately explored legal criteria' or that 'merely tell the jury what result to reach' are not deemed helpful to the jury, . . . and thus, are not admissible under Rule 702.") (quoting Fed. R. Evid. 704 advisory committee note); *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988) (expert

[15] *But cf. Sturdza*, 281 F.3d at 1300 (discussing admission of expert testimony "only to help juries determine 'whether . . . the infringer used the copyrighted work in making his own' (actual copying), not to determine 'whether . . . the copying was . . . an unlawful appropriation' (substantial similarity)") (quoting *Whelan Assocs. V. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1232 (3d Cir. 1986)).

opinion lacking objective factual support cannot help jury and thus is inadmissible under Rule 702); *Hogan*, 812 F.2d at 411 ("Because the judge and not a witness is to instruct the factfinder on the applicable principles of law, exclusion of opinion testimony is appropriate if the terms used have a separate, distinct, and special legal meaning.") (citations omitted); *Torres*, 758 F.2d at 150-51 ("The problem with testimony containing a legal conclusion is in conveying the witnesses' unexpressed, and perhaps erroneous, legal standards to the jury."); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (question asking for legal conclusion supplies fact finder with no information other than what witness believes verdict should be); *Marx*, 550 F.2d at 508-09 (holding that admission of testimony of securities law expert was an error of law and highly prejudicial). Scherer ought not be allowed to testify that architects can "cut and paste" copyright-protected architectural designs and then claim them as their own original and independently created work. (*See* Mahowald Aff. Ex. E (Scherer Supplemental Report) at 3.) Accordingly, Scherer's opinions regarding how architects operate and what processes they utilize to develop drawings are not relevant and are not admissible. *See Marx*, 550 F.2d at 511 (stating that courts must exclude such irrelevant testimony to prevent trials before juries to become "battles of paid advocates posing as experts"); *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 943 F. Supp. 201, 217 (E.D.N.Y. 1996), *vacated on other grounds*, 95 F.3d 1165 (Fed. Cir. 1996) (criticizing expert witness who regards his function "to champion the cause of the party who retains him").

**CONCLUSION**

For the foregoing reasons, the Court should grant Rottlund's motion in limine and restrict Town & Country Homes Defendants' expert Jeffery A. Scherer opinion testimony to the similarity of ideas between Rottlund's Villa II architectural works (the building) and Town &

Country's Homestead Collection and Chateau Collection architectural works (buildings)—the extrinsic test. The Court should specifically preclude any testimony or other evidence from Scherer regarding originality, independent creation, or the intrinsic test.

Dated: November 1, 2004

**s/Philip R. Mahowald**
Craig S. Krummen, #0259081
Philip R. Mahowald, #0274902
David A. Davenport, #0285109
WINTHROP & WEINSTINE, P.A.
**Attorneys for Plaintiff**
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
pmahowald@winthrop.com

2147722v2