Exhibit B.3

Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.

**SCHOOLHOUSE, INC. Plaintiff,**
**v.**
**Jeff ANDERSON, Margaret Richardson, d/b/a Market Solutions, Defendants.**

**No. 99-1214 DSD/JMM.**

Nov. 8, 2001.

Susan C. Laine, and Laine Law office, Minneapolis, MN, and Michael S. Sherrill, and Sherrill Law office, White Bear Lake, MN, for plaintiff.

Christopher K. Sandberg, Kristine M. Boylan, and Lockridge, Grindal and Nauen, Minneapolis, MN, for defendants.

ORDER

DOTY, J.

***1** This matter is before the court on defendant Jeff Anderson's ("Anderson") motion for summary judgment on plaintiff Schoolhouse Inc.'s ("Schoolhouse") claims of copyright infringement and unfair competition under Minnesota statute and the common law, and on plaintiff's motion to dismiss defendant's counterclaims for abuse of copyright and an antitrust violation. Based upon the file, record, and for the reasons stated below, the court: (1) grants defendant's motion for summary judgment on the copyright claim; (2) dismisses plaintiff's state law claims without prejudice; and (3) grants plaintiff's motion to dismiss defendant's counterclaims.

BACKGROUND

Schoolhouse publishes a periodical magazine entitled *Schoolhouse Magazine* which lists facts and statistical information about schools in the Twin Cities area. It obtains the information directly from the school districts. Anderson is a realtor engaged in the business of selling residential properties in the Twin Cities metropolitan area. In connection with his work as a real estate agent, Anderson has developed an internet web site that contains, among other things, factual information about school districts in the greater Twin Cities area. Plaintiff alleges that defendant copied portions of the *Schoolhouse Magazine* tables and published these on his web site. Defendant denies this allegation and argues that he independently obtains this public record information regarding the school districts and that the manner in which he presents the data is dissimilar to plaintiff's magazine. Plaintiff initiated this action for: (1) copyright infringement under 17 U.S.C. § 101 et seq.; (2) unfair business practices under the Minnesota Deceptive Trade Practices statute, Minn.Stat. § 325D.44; and (3) unfair competition under state common law. Defendant counterclaimed abuse of copyright and an antitrust violation.

DISCUSSION

I. Defendant's Motion for Summary Judgment

A. Summary Judgment Standard

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue that facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If a plaintiff fails to support an essential element of a claim,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322-23. With this standard at hand, the court addresses defendant's motion. [FN1]

FN1. Moreover, "it is clear that summary judgment is entirely appropriate in an action for copyright infringement." *Knickerbocker Toy Co. v. Genie Toys Inc.,* 491 F.Supp. 526, 528 (E.D.Mo.1980) citing *Ferguson v. Nat'l Broad. Co., Inc.,* 584 F .2d 111 (5th Cir.1978). To arrive at summary judgment, "a side-by-side comparison of the works involved in a copyright infringement action is both proper and appropriate." *Id.,* citing *McMahon v. Prentice Hall,* 486 F.Supp. 1296 (E.D.Mo.1980).

B. Copyright Infringement

***2** In order to establish a claim of copyright infringement, plaintiff must prove: (1) ownership of a valid copyright, and (2) copying by the defendant of the protected constituent elements of the work. *See Feist Publications, Inc. v. Rural Tel. Servs. Co .,* 499 U.S. 340, 361 (1991) (citing *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 548 (1985)); *Moore v. Columbia Pictures Indus., Inc.,* 972 F.2d 939, 941 (8th Cir.1992) (same).

Plaintiff argues that both elements are satisfied here, and while the copyright laws do not prevent defendant "from using the assembled facts, it most certainly prevents him from copying the original manner in which the facts have been selected and arranged." (Pl.'s Memo. at 2.) Defendant conversely argues that summary judgment is appropriate here because: (1) any copyright that plaintiff holds here is extremely narrow in scope; and (2) since the two works share only underlying ideas, defendant's work does not infringe. Additionally, to support this latter position, defendant contends that plaintiff cannot show substantial similarity between the works sufficient to sustain a claim of copyright infringement.

1. Validity of Copyright

Plaintiff contends that it has a valid copyright because its publication *Schoolhouse Magazine* holds a registration certificate which names plaintiff as the author of the work and specifically references the tables that appear within the magazine.

A copyright certificate is prima facie evidence of a valid copyright. 17 U.S.C. § 410(c). The parties do not dispute the validity of this copyright certificate but do dispute its scope. Plaintiff argues that its copyright includes the selection and arrangement of the facts as displayed in the magazine tables as an "original factual compilation". Essentially, plaintiff contends that two components of the compilation are original and entitled to copyright protection: (1) the selection of specific categories or topics of factual data to present in the tables; and (2) the arrangement and display of the factual data in the tables. Defendant counters that even if plaintiff's copyright is valid for the selection and arrangement of the factual information, it is limited to the actual layout of the data, that is, the tables without included data and the specific topical headings that plaintiff actually uses, not the general idea of a tabular display of school district data or the general topical categories of information regarding the school districts. Moreover, defendant contends that, irrespective of validity, when comparing the two works side by side there exists no similarity sufficient to support a claim of infringement.

Both parties concede that the materials at issue here are a compilation of facts. A compilation of facts is entitled to copyright protection in certain circumstances. Federal law defines a copyrightable compilation as:

[a] work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

***3** 17 U.S.C. § 101. A factual compilation is copyrightable but the underlying facts themselves are not. *Feist,* 499 U.S. at 34. ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected."). Determining "whether an infringement of a compilation copyright has occurred is particularly difficult where less than the entire work is copied," *BellSouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.,* 999 F.2d 1436, 1438 (11th Cir.1993) (en banc), especially when a competitor can take "the bulk of the factual material from a preexisting compilation without infringement." *Id.* at 1445.

The U.S. Supreme Court has recognized that the protection available for a compilation is "thin." *Feist,* 499 U.S. at 349; *see also BellSouth,* 999 F.2d

at 1438 (applying *Feist* and concluding that defendant did not appropriate "original elements" of BellSouth directory "as a whole" by preparing data base and sales leads based upon listing information and units of advertising appearing in preexisting directory); *Key Publications, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 513, 516 (2d Cir.1991) (recognizing copyrightability of specialty directory but concluding no infringement by smaller competing publication that utilized "significantly different principles of [listing] selection").

Plaintiff's tables organize information in two ways: first, the names of the region's school districts are listed alphabetically in the lefthand column; and second, specific categories of information about the school districts (e.g. student population, student to teacher ratios, availability of hot lunch, etc.) are listed across the top row of each table. The corresponding factual data is then provided within the table. [FN2]

FN2. The factual data is public information and both parties concede that it is not entitled to copyright protection per se.

Defendant argues that any copyright protection here is thin. Defendant first argues that the selection and listing of the school districts is not protectable because it is an inclusive alphabetical listing of all of the region's school districts. *See Feist,* 499 U.S. at 362-363 (determining that an alphabetical arrangement is not protectable). Defendant then argues that the general selection of the topical categories is not protectable given the inherent limitations of the particular nature of the underlying factual data. That is, the selection of topics is non-original because there are only a limited number of categories of information that prospective homeowners with school-age children are likely to find relevant. *See Kregos v. Associated Press,* 3 F.3d 656, 664 (2d Cir.1993) (holding that similarity that was necessitated because of the limited number of statistics regarding baseball pitchers was not infringement). Accordingly, defendant contends that plaintiff's copyright is narrow in scope and can only protect the specific manner that plaintiff's tables are arranged and plaintiff's actual topical categories.

The court agrees that plaintiff's copyright is narrow, and after eliminating all of the unprotectable underlying factual data, including the alphabetical listing of school districts and the "ideas" of the general topical categories, plaintiff's copyright is limited to protecting only: (1) the particular manner in which plaintiff has selected and arranged the factual tables as they actually appear in plaintiff's magazine; and (2) the selection of the specific topical categories of information regarding the school districts as plaintiff actually presents them in its publication. In other words, plaintiff's copyright protection is limited to the original elements of the actual manner of presentation through the specific order of the tables and under the actual topical headings. The copyright does not protect the non-original alphabetical arrangement of this data. It does not protect the underlying idea of presenting to prospective home buyers selected data regarding public information on school districts in a tabular form. It does not protect the presentation of the general type of topical categories that are included here (e.g. number of students in a district, average class sizes, student to teacher ratios, testing statistics, etc.). Since there is a limited number of categories of information that prospective homeowners with school-age children are likely to find relevant, some similarity of topical categories is inevitable and permissible. Plaintiff cannot claim copyright protection for these general categories of relevant public information.

***4** Thus, the court concludes that while plaintiff's copyright is valid, it is limited in scope to plaintiff's specific form of expression through the actual arrangement of the factual tables and the specific selection of topical category headings as worded and published in the *Schoolhouse Magazine* tables. With the these limitations in mind, the court now turns to the second part of the infringement analysis--copying.

2. Copying

Under the second step of an infringement determination, plaintiff must prove that the protected work has been copied. Given the "thin" protection that is afforded a factual compilation, the facts must support that defendant copied the protected selection, arrangement, or display to support a claim of infringement. *See Key Publications,* 945 F.2d at 513. Copying of the underlying factual material contained in the compilation is not infringement. *See Warren Publ'g,*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

*Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1515 (11th Cir.1997); *Sid & Marty Kroft v. McDonalds Corp.*, 562 F.2d 1157, 1163 (9th Cir.1977) (protection granted to copyrighted work extends to cover only the particular expression of the idea, never the idea itself). Thus, plaintiff must show copying of the particular form of the expression, not the underlying ideas. Defendant asserts that plaintiff has failed to show copying of the protected parts of plaintiff's work.

In most copyright cases there is not direct evidence of copying. In an absence of direct evidence, and mindful of the court's previous determinations regarding validity, plaintiff may establish copying by proving two elements: (1) that defendant had access to plaintiff's work; and (2) that there is a substantial similarity between the works. *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir.1987). While defendant expressly denies copying plaintiff's materials, he does concede access. Accordingly, to survive summary judgment, plaintiff must establish substantial similarity between the works. *Moore*, 972 F.2d at 945. *See O'Neill v. Dell Publ'g Co., Inc.*, 630 F.2d 685, 690 (5th Cir.1980) (summary judgment proper in copyright action where comparison shows substantial similarity is clearly lacking).

The Eighth Circuit applies a two-step analysis to determine substantial similarity:

> There must be substantial similarity "not only of the general ideas but of the expressions of those ideas as well." First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works. Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression.
> *Hartman*, 833 F.2d at 120 (citations omitted).

In the Eighth Circuit, if the district court is able to examine both works it has sufficient evidence upon which to grant summary judgment because the district court is capable of determining both the intrinsic and extrinsic steps of the *Hartman* analysis. *See Nelson v. PRN Prods. Inc.*, 873 F.2d 1141, 1143 (8th Cir.1991) citing *Hartman*, 823 F.2d at 120. Under the *Hartman* test, the court must first determine whether the details of the works contain objective similarities, and if so, then the court must "examine the works to ascertain if they are so dissimilar that ordinary, 'reasonable minds [can]not differ as to the absence of substantial similarity in expression." ' *Moore*, 972 F.2d at 945, citing *Hartman*, 833 F.2d at 120. Under the first step, expert testimony may be relevant. *Id.* Under the second step, expert testimony is not relevant because the focus is on the similarity of expression from the perspective of the ordinary, reasonable person. *Hartman*, 833 F.2d at 120-121 ("Infringement of expression occurs only when the total concept and feel of the works in question are substantially similar.").

*5 Lastly, although a compilation gains copyright protection with only minimal creativity in the selection and arrangement of facts, *Feist'* s statement that the copyright is "thin" has implications when the holder sues an alleged infringer. "It would seem to follow analytically that more similarity is required when less protectable matter is at issue. Thus, if substantial similarity is the normal measure required to demonstrate infringement, 'supersubstantial' similarity must pertain when dealing with 'thin' works." 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 13.03[A] at 13-28 (1997); *see Transwestern Publ'g Co. v. Multimedia Mktg. Assoc., Inc.*, 133 F.3d 773, 776-777 (10th Cir.1998) (same); *see also Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir.1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."), cert. denied, 513 U.S. 1184 (1995); Jane C. Ginsburg, *No "Sweat"? Copyright and Other Protection of Works of Information After Feist v. Rural Telephone*, 92 Colum. L.Rev. 338, 349 (1992) ( " 'Even if the compilation is deemed original, what kind of copying will be held to infringe it?' The answer [after *Feist* ] appears to be: 'Virtually none, short of extensive verbatim copying." '). Further, because the copyrightability of a factual compilation depends upon the originality in selection, coordination, or arrangement of the facts "as a whole" work, 17 U.S.C. § 101, in an infringement action the court must compare the allegedly infringing work to the protected work as a whole. *See Transwestern*, 133 F.3d at 777.

In the instant case, the court has before it copies of both works and is in a proper position to apply the substantial similarity test. Here, the court concludes

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

that applying the *Hartman* test generates no issue of fact sufficient to preclude summary judgment. While the works appear to contain some objective similarities in detail, the works here are so dissimilar in expression that reasonable minds could not differ as to the absence of substantial similarity. Moreover, when the court focuses on the respective works as a whole, there are many palpable differences. [FN3] Thus, the court readily concludes that there is little similarity between the two works.

FN3. The court specifically notes some of the following palpable differences. The competing works are in different mediums: plaintiff's being a print publication, and defendant's an internet web site. They are very different in appearance. The organization and layout are different. Plaintiff uses large-scale tables with information for up to 20 districts on each page, while defendant's web site presents each school district individually on a separately linked web page. Defendant has no tables comparable to plaintiff's large-scale data tables. Defendant's site does not use a column and row grid like plaintiff's but rather presents its data in well-defined groupings. Furthermore, the topical categories used to organize defendant's site differ widely in number and the actual heading used from plaintiff's, and only five of the topical headings are identically named. (*See* Kathleen Kelly Aff. ¶ 7.) Plaintiff puts all information about athletics into a separate set of tables while defendant integrates information regarding athletics into his main display. Plaintiff has separate sections for charter schools and alternative schools; defendant does not have these categories but rather has a "specialized schools" category. (*See* Margaret Richardson Aff. ¶ 16.) Defendant includes information on preschools and universities; plaintiff does not. (*Id.*) Plaintiff's directory has advertisements throughout; while the defendant's does not.

Plaintiff makes great effort to show that its selection of the topical categories is original and that defendant's work copies these topical headings with substantial similarity. The court is not persuaded by this argument when comparing the two works. Although similar in general topical information, the format, layout, and content varies between the two. Any similarity in categories here is an unavoidable consequence of the type of data being compiled. [FN4] The court agrees with defendant's contention that there are a limited set of facts regarding school districts that are of interest to potential home buyers with school-age children. Thus, while many of the general topics are similar, the means of expression, or words, used on defendant's web pages are different from the means of expression, or words, in plaintiff's print publication. The topical headings are not substantially similar to satisfy a determination of copying under copyright law.

FN4. Copyright protection is minimal when factual materials can only be selected or arranged in a limited universe of meaningful ways. *Kregos,* 3 F.3d at 664 ("[M]uch of the similarity ... is necessitated because there are a limited number of statistics generally considered outcome-predictive by those familiar with the sport.").

***6** Since plaintiff does not show circumstantial evidence of copying sufficient to support a claim of infringement and since no genuine issues of material fact exists, judgment for defendant is warranted. Accordingly, the court grants defendant summary judgment on the copyright infringement claim.

C. Minnesota State Law Claims of Unfair Competition

This court's jurisdiction over plaintiff's state law claims rests upon supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Absent a valid copyright claim, this court lacks jurisdiction over the state law claims. *Id. See Condor Corp. v. City of St. Paul,* 912 F.2d 215, 220 (8th Cir.1990) (holding that courts should "exercise judicial restraint and avoid state law issues wherever possible"). [FN5] Therefore, since the court grants defendant's motion for summary judgment, the state law claims are dismissed without prejudice. *See Fry v. Layne-Western Co.,* 282 F.2d 97, 99 (8th Cir.1960) (unless joined with related federal claim, common law unfair competition is a state action); *Banker's Promotional,* 926 F.2d at 705 (holding that after summary judgment was entered on copyright claim for defendant, pendant state law claims for unfair competition were properly dismissed without prejudice).

FN5. The court notes that even in the absence of dismissal for lack of jurisdiction, the state claims lack merit and defendant would be granted summary judgment. In relevant part, a party violates the Minnesota Deceptive Trade Practices Act when he

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

passes off goods or services as those of another, or causes a likelihood of confusion or misunderstanding as to: (a) the source, sponsorship, approval, or certification of goods or services; (b) affiliation, connection, sponsorship, or association by another; or (c) any other conduct that creates a likelihood of confusion or misunderstanding. Minn.Stat. § 325D.44, subd. 1 (1998). While proof of actual confusion is not required, a party alleging a violation of the deceptive trade practices act must show there is a likelihood of confusion. *See McClure v. American Family Mut. Ins. Co.,* 29 F.Supp.2d 1046, 1065 (D.Minn.1998), aff'd, 223 F.3d 845 (8th Cir.2000). The court concludes that plaintiff has made no such showing here. Furthermore, it is highly improbable that any consumer would be confused or misunderstand that defendant's web site is unaffiliated with plaintiff's magazine. Schoolhouse publishes a periodical magazine that disseminates factual information about school districts, whereas Anderson is a real estate agent of residential properties. Anderson's website is clearly labeled as his own and bears little similarity to Schoolhouse's publication. Plaintiff fails to present sufficient evidence from which a reasonable jury could find in its favor on the alleged violation of Minn.Stat. § 325D.44. *See id.*

II. Plaintiff's Motion to Dismiss

Rule 12(b)(6) provides that a party may move to dismiss a complaint where the complaint does not state a cause of action upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The court must convert a motion to dismiss into one for summary judgment when matters outside the pleadings are considered by the court in determining the Rule 12(b)(6) motion. *See* Fed.R.Civ.P. 12(b)(6); *see Gibb,* 958 F.3d at 816; *see* Charles Allan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1366 (3d ed.1992). Any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings constitutes matters outside the pleadings. *See Gibb v. Scott,* 958 F.2d 814, 816 (8th Cir.1992). The court notes that the parties here have submitted a significant body of evidence through the submission of numerous affidavits that accompanied their respective motions for summary judgment. Moreover, express notice of conversion of a motion to dismiss into a summary judgment motion is unnecessary when the parties have had reasonable opportunity, as here, to present pertinent materials and when the surrounding circumstances give reasonable notice. *See C.B. Trucking Inc. v. Waste Management Inc.,* 137 F.3d 41, 43 (1st Cir.1998) (court acted within its discretion by treating motion to dismiss as motion for summary judgment and without giving parties express notice). Because this lawsuit is no longer in its earliest stages, and given the accompanying motions for summary judgment on plaintiff's claims which include substantial briefing and evidentiary submissions, the court believes a motion for summary judgment is presently appropriate on defendant's counterclaims. Accordingly, the court will consider evidence outside the pleadings thereby treating this matter as a motion for summary judgment. [FN6] *See Gibb,* 958 F.3d at 816. *Lewis v. Kroger Co.,* 109 F.Supp. 484, 486 (D.W.Va.1952) (dismissal warranted when court concluded no infringement by comparing two works).

FN6. The standard for summary judgment as laid out above will also be applied here. *See supra* pp. 3-4.

*7 Thus, based upon the fact that there are no material facts in dispute, the court concludes that defendant's counterclaims of abuse of copyright and an antitrust violation fail as a matter law. The court dismisses defendant's counterclaims and grants plaintiff's motion to dismiss applying Rule 56. *See* Fed.R.Civ.P. 12(b)(6).

At the outset, the court notes that abuse of copyright is generally recognized as an equitable affirmative defense to a copyright infringement claim and is rarely recognized as an independently justiciable cause of action. *See Lasercomb America, Inc. v. Reynolds,* 911 F.2d 970, 973 (4th Cir.1990); *see also M. Witmark & Sons v. Jensen,* 80 F.Supp. 843, 850 (D.Minn.1948) (abuse of copyright recognized as an affirmative defense but only where party unlawfully exceeds or tries to extend copyright beyond its proper scope); *Warner /Chappel Music, Inc. v. Pilz Compact Disc, Inc. et al.,* Civ. No. 99-293, 1999 U.S. Dist. LEXIS 17161, at *5 n. 5, 52 U.S.P.Q.2d 1942 (E.D.Pa. Oct. 26, 1999) (not permitting an affirmative claim of copyright abuse to go forward because there is no "authority in this Circuit for such a claim, and virtually no authority in any Circuit for such a claim ... [t]he Court is not persuaded that this is a viable claim."). In asserting

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

such a defense, a copyright infringer would argue that their infringement is justified under equity because the copyright holder was enforcing its rights in copyrighted material in such a way as to violate antitrust laws or public policy. *Id.*

Here, based upon the court's determination granting defendant summary judgment on the infringement claim, any abuse of copyright affirmative defense, even when posed as a counterclaim, is moot and warrants dismissal. More important, the facts do not support a determination that plaintiff misused its copyright. Irrespective of defendant's subsequent summary judgment success on the copyright claims, the record supports the conclusion that plaintiff originally initiated this copyright infringement claim under the good faith belief, albeit mistaken as determined above, that defendant was infringing upon plaintiff's valid copyright rights. Defendant's counterclaim for abuse of copyright fails as a matter of law and is dismissed with prejudice.

The court also concludes that defendant's antitrust violation counterclaim warrants dismissal when the court juxtaposes the tenets of antitrust law with the undisputed facts in the present matter. Generally, only litigation brought as a mere sham, to cover what is actually nothing more than an attempt to interfere with business relationships of a competitor, is open to antitrust counterclaim actions. *See California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508 (1972). The Noerr-Pennington doctrine also provides that the act of bringing litigation is generally privileged from antitrust liability. *See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of America v. Pennington,* 381 U.S. 657 (1965); and *Surgidev Corp. v. Eye Tech., Inc.*, 625 F.Supp. 800, 803 (D.Minn.1986) (counterclaim based upon allegation that suit was brought by plaintiff with intent to disrupt business dismissed under the Noerr-Pennington doctrine of privilege). Furthermore, as a general rule, "it is no defense to a copyright infringement claim that owner is violating the antitrust laws." *Orth-O-Vision, Inc. v. Home Box Office,* 474 F.Supp. 672, 686 (S.D.N.Y.1979). Thus, the filing of a lawsuit can only invoke antitrust liability when it can be determined to be "sham litigation" intended to disguise anti-competitive activity or is so clearly baseless as to amount to an abuse of process. *See California Motor Transp.*, 404 U.S. at 508; *Razorback Ready Mix Concrete Co., Inc. v. Weaver,* 761 F.2d 484 (8th Cir.1985).

***8** The facts here do not support such a determination, and the record does not reflect that plaintiff attempted to extend the exclusionary power granted by its copyright beyond the protected work itself or initiated this action as sham litigation to interfere with defendant's real estate business. *See Surgidev,* 625 F.Supp. at 803. The facts strongly support the conclusion that plaintiff and defendant are not commercial competitors. Based upon the fairly extensive record here, the court concludes that defendant's counterclaim of antitrust fails as a matter of law and is accordingly dismissed with prejudice.

Therefore, is HEREBY ORDERED that:

1. On the copyright infringement claim, defendant's motion for summary judgment is granted and plaintiff's claim is dismissed with prejudice.

2. The state law claims for unfair competition are dismissed without prejudice.

3. Plaintiff's motion for dismissal of defendant's counterclaims is granted, and defendant's counterclaims are dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY

2001 WL 1640081 (D.Minn.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.