UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br><br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY AND REPORTS OF ARTHUR H. COBB PURSUANT TO RULES 104(A) AND 702 OF THE FEDERAL RULES OF EVIDENCE** |

## INTRODUCTION

Plaintiff The Rottlund Company, Inc. d/b/a Rottlund Homes ("Rottlund") moves to exclude the testimony and reports of Arthur H. Cobb, Defendants Pinnacle Corporation and Town & Country Homes, Inc.'s (collectively the "Town & Country Homes Defendants") expert witness. Rule 702 of the Federal Rules of Evidence requires that expert testimony be stricken if it is not helpful to the trier of fact or if it crosses the line from helping the jury understand the evidence to invading the province of the jury. In the Rebuttal Report of Cobb & Associates, Ltd. dated May 14, 2004 ("Cobb Rebut. Report"), Cobb propounds damage theories that are contrary to both the law and the facts of this case. (Affidavit of Philip R. Mahowald Affidavit in Support of Plaintiff's Motion *in Limine* to Exclude Expert Testimony and Reports of Arthur H. Cobb ("Mahowald Aff."), Ex. A.)[1]

## LEGAL ARGUMENT

### I. General Principles.

#### A. Rules 104(a) and 702 of the Federal Rules of Evidence.

The proponent of proposed expert testimony bears the burden of demonstrating that the testimony is admissible. *EZ Dock,* 2003 WL 1610781,[2] at *1 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 & n.10 (1993); *Bourjaily v. U.S.*, 483 U.S. 171, 175-76 (1987); *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001)). Rule 104(a) provides that the court shall determine, as a preliminary question, the admissibility of expert testimony. Fed. R. Evid. 104(a) (2004); *EZ Dock*, 2003 WL 1610781, at *1 (barring expert Art Cobb's opinion on lost profits).

[1] In during his deposition on June 11, 2004, Cobb stated that the Cobb Rebuttal Report succeeds and replaces his original and supplemental reports. (Mahowald Aff., Ex. B (Transcript of Deposition of Arthur H. Cobb dated June 11, 2004 ("Cobb Dep.") at 8.)

[2] Unreported decisions cited herein are attached in alphabetical order as Exhibit C to the Mahowald Affidavit.

Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . ." Fed. R. Evid. 702. Courts evaluate the admissibility of expert testimony pursuant to Rule 702 for relevance and reliability. *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 929 (8th Cir. 2001); *J.B. Hunt Transp., Inc. v. Gen. Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) (court must ensure expert opinions are relevant to the tasks at hand); *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 739 (8th Cir. 2000) (courts are afforded wide latitude and will only be reversed for abuse of discretion when they decide whether expert opinion testimony is relevant and admissible).[3] The requirement that expert testimony assist the trier of fact to understand the evidence or determine a fact in issue is a relevancy requirement. *Bonner*, 259 F.3d at 929. If the proffered expert testimony will not assist the trier of fact to understand the evidence or determine a fact in issue it is not relevant and, therefore, is not admissible. Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.").

## I. THE COURT SHOULD EXCLUDE COBB'S OPINIONS REGARDING THE INFRINGERS' PROFITS BECAUSE THEY ARE BASED ON FAULTY, UNRELIABLE AND SPECULATIVE APPORTIONMENT METHODOLOGIES.

The Town & Country Defendants cannot demonstrate that Cobb's proffered opinion testimony is admissible. The proposed testimony of Cobb is deficient as a matter of law because

[3] Courts consider a number of non-exclusive factors, such as "(1) whether the theory of technique can be (and has been) tested, (2) whether the theory has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory has been generally accepted." *EZ Dock,* 2003 WL 1610781, at *2 (quoting *Peitzmeier v. Hennessy Indus.*, 97 F.3d 293, 297 (8th Cir. 1996) (quoting *Daubert*, 509 U.S. at 593-94)). Other factors pertinent to assessing the reliability of expert testimony have evolved from *Daubert*'s progeny, including "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled our other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *EZ Dock,* 2003 WL 1610781, at *2 (quoting *Lauzon*, 270 F.3d at 687).

it is essentially guesswork rather than expert testimony supported by reliable facts and a solid foundation of knowledge, skill, training or experience. Cobb's apportionment methodologies lack sufficient facts and data, have never been tested or subject to peer review and publication, and there is no evidence in the record that his methodology has been generally accepted by anyone other than Cobb and Defendants. Lastly, all of his opinions were developed expressly for purposes of testifying in this case rather than being developed independent of this litigation. In short, Cobb's apportionment methodology fails to meet nearly every factor courts consider when evaluating the admissibility of proffered expert testimony, and should therefore be excluded from trial.

**A. To Apportion Infringers' Profits, Defendants Must Prove The Elements of Profit Attributable To Factors Other Than The Copyrighted Work.**

Defendants seek to introduce Cobb's apportionment methodologies to prove the elements of the infringer's profits attributable to factors other than the copyrighted work. The Copyright Act provides that a copyright owner is entitled to recover actual damages as well as "any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). The infringer's profits are awarded to the copyright owner "to prevent the infringer from unfairly benefiting from a wrongful act." *Andreas v. Volkswagen of Am., Inc.,* 336 F.3d 789, 795 (8th Cir. 2003) (quoting H.R.Rep. No. 94-1476, § 504, 94th Cong., 2d Sess. at 161 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5777); *Arthur Rutenberg Corp. v. Dawney,* 647 F. Supp. 1214, 1216 (M.D. Fla. 1986) (same). The Copyright Act "makes clear that there is no gain to be made from taking someone else's intellectual property without their consent." *Walker v. Forbes, Inc.*, 28 F.3d 409, 412 (4th Cir. 1994). To achieve this legal principle, Congress required that all of the infringer's profits be disgorged and awarded to the copyright owner to ensure that the infringer did not unfairly benefit from a wrongful act. *See* 1976 Act Notes of House Comm. on the Judiciary,

94th Cong., report on copyrights 1476 (Comm. Print 1976); *Kleier Adver. Co., Inc. v. James Miller Chevrolet, Inc.*, 722 F. Supp. 1544, 1545 (N.D. Ill. 1989) (Congress intended to award the copyright owner the infringer's profits to deny the infringer any unjust enrichment).

"In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses *and the elements of profit attributable to factors other than the copyrighted work.*" *Andreas,* 336 F.3d at 795 (citing § 504(b)) (emphasis in original); *Fishing Concepts, Inc. v. Ross,* 226 U.S.P.Q. 692, 696 (D. Minn. 1985) (same). Accordingly, "where some of the defendant's profits result from the infringement and other profits are caused by different factors, . . . the burden of proof is on the defendant . . . [to] prove not only 'his or her deductible expenses' but also 'the element of the profit attributable to factors other than the copyrighted work.'" *Andreas,* 336 F.3d at 795 (quoting H.R.Rep. No. 94-1476, § 504, at 161 (quoting § 504(b))). '"Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff. The Defendants must adduce evidence of "specific valuations" of the allocated factors. *See Flying J, Inc. v. Cent. CA Kenworth,* Nos. 00-17290 and 00-17336, 2002 WL 2022061, at **1 (9th Cir. Sept. 30, 2002). An infringer cannot prove its deductible expenses using an average margin of profit. *See Johnson v. Jones*, 149 F.2d 494, 506 (6th Cir. 1998). "In addition to controverting the plain and unambiguous language of the statute, awarding [plaintiff] only [infringer's] average margin of profit flies in the face of common sense." *Id.* (stating that very often the act of infringement allows the infringer to pocket as net profit a much larger percentage of his gross revenue than he could have absent the infringement).

The Supreme Court has held that "an infringer who commingles infringing and noninfringing elements 'must abide by the consequences, unless he can make a separation of the

profits so as to assure to the injured party all that justly belongs to him.'" *Harper & Row Publishers, Inc. v. Nation Enters., Inc.,* 471, U.S. 539, 567, 105 S. Ct. 2218, 2234 (1985) (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.,* 309 U.S. 390, 406, 60 S. Ct. 681, 687 (1940)). If non-infringing factors are so intertwined with infringing factors that it is impossible to apportion profits, then no apportionment is appropriate. *See Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.,* 887 F.2d 399, 407 (2d Cir. 1989); *see also Belford, Clarke & Co. v. Scribner,* 144 U.S. 488, 508, 12 S. Ct. 734, 740 (1892) ("The rule is well settled, that, although the entire copyrighted work be not copied in an infringement, but only portions thereof, if such portions are so intermingled with the rest of the piratical work that they cannot well be distinguished from it, the entire profits realized by the defendants will be given to the plaintiff."); *Callaghan v. Myers,* 128 U.S. 617, 665-66, 9 S. Ct. 177, 191 (1888) (same).

Once the plaintiff demonstrates a nexus between the infringement and either direct profits or indirect profits, the burden then shifts to the defendant to prove apportionment (i.e., the contribution to profits of elements other than the infringed property). *Andreas,* 336 F.3d at 796 (citing *Frank Music I,* 772 F.2d at 518).

In this case, Rottlund claims that defendants infringed the "total look and feel" of Rottlund's Villa II town home. The Defendants, however, endeavor to isolate and exclude design elements from the total look and feel. The Defendants cannot establish and prove that individual design elements are not part of the total look and feel of the infringing Homestead Collection and Chateau Collection town homes, and therefore Defendants cannot apportion any of their profits. *See, e.g.*, *Johnson*, 149 F.2d at 506 (holding that plaintiff was entitled to recover 100% of infringer's gross revenue because infringer's "average margin of profit" analysis was insufficient to meet infringer's burden to prove his deductible expenses); *Twin Peaks*

*Productions, Inc. v. Publications Intern., Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993) (no apportionment where the defendant did not carry its burden of suggesting a rational division of profits); *Nelson-Salabes, Inc. v. Morningside Holdings, L.L.C.*, No. Civ. B-98-2226, 2001 WL 419002, at **9-10 (D. Md. 2001) (holding that defendants' failed to proffer sufficient evidence to permit the court to fairly apportion profits between those profits attributable to the copyrighted work and those profits attributable to other aspects of the assisted living center; rejecting defendants' arguments that no profits could be attributed to infringing front elevation design or footprint based on experts testimony that architectural design was not an important factor in determining the value of an assisted living center), *aff'd in part, vacated in part on other grounds sub nom. Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505 (4th Cir. 2002).

In this motion, Rottlund challenges the methodology Cobb employs to reach his conclusions regarding the apportionment of profits attributable to Defendants' use of the infringing Homestead Collection and Chateau Collection designs. Because Defendants cannot separate the individual design elements or features from the total look and feel of the infringing town home products, the Court could exclude Cobb's proffered apportionment analysis on this basis alone. *Id.* However, assuming, *arguendo*, that Defendants are allowed to apportion profits derived from individual design elements that comprise the total look and feel of the infringing town homes, the particular apportionment analysis proffered by Cobb should be excluded as it is speculative and unreliable. Cobb has failed to provide a rational basis upon which to make a reasonable approximation of the claimed apportionment of profits. *See Sheldon*, 309 U.S. at 408 (expert must provide a rational basis upon which to make a reasonable approximation).

**B. Cobb Provides No Reasonable Basis For Apportioning Profits By Deducting The Costs And Profits For "Common Elements" And "Generic Features."**

Cobb claims that he has "identified methods to estimate TCM and Pinnacle (Washington Square) profits which may be attributable to features subject to copyright." (*See* Mahowald Aff., Ex. A (Cobb Rebut. Report) at 54.) According to Cobb, "Common elements and generic features would not be subject to copyright protection and TCM profits related to common elements and generic features would not be attributable to copyrighted works. Profits not attributable to copyrighted work would not be included in damages." (*Id.*) Cobb's list of "common elements" includes "electrical," "plumbing," "garage doors," "heating/air conditioning," "insulation," "flooring," and "paint." (*Id.* at 56.) He identifies "generic features" as "appliances," "mirror/shower door," and "water softener." (*Id.*)

The next step in Cobb's apportionment analysis is tabulating the costs associated with these "common elements" and "generic features" that he claims are not subject to copyright protection. (*See* Mahowald Aff., Ex. A (Cobb Rebut. Report) at 55-59.) After totaling those amounts in relation to the total costs for the infringing product, Cobb asserts that the costs that "may be attributable to copyrighted works are expected to be less than 20.0 percent of the total costs, indicating that less than 20.0 percent of profits may be attributable to copyrighted works." (*Id.* at 57.) Cobb then multiplies TCM and Pinnacle's profits by 20 percent to calculate the infringer's profits that may be attributable to copyrighted works. (*Id.* at 57-59.)

Cobb's apportionment methodology is flawed in numerous respects. To begin with, the Sixth Circuit flatly rejected this type of "average margin of profit" analysis in *Johnson v. Jones*, and held that the plaintiff was entitled to recover 100% of the infringer's gross revenue. *Johnson*, 149 F.2d at 506. Moreover, Cobb's proffered opinions and testimony fall far short of the relevance and reliability requirements under Fed. R. Evid. 702. Among other things, his

apportionment analysis is contrived solely for this litigation and lacks any reasonable basis in how Town & Country operates its business, or how home builders derive their profits. "This type of calculation, ignoring, as it does, recognized industry practice, 'alone destroys the validity' of [Cobb's] conclusions.'" *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 355 (S.D.N.Y. 2003) (granting motion in limine to exclude expert damage calculation that was speculative and without basis) (quoting *Johnson Elec. N. Am., Inc. v. Mabuchi Motor Am. Corp.*, 103 F. Supp. 2d 268, 281 (S.D.N.Y. 2000)).

During his deposition, Cobb acknowledged that his apportionment methodology was developed solely for this litigation and has not been subjected to peer review. (Mahowald Aff., Ex. B (Cobb Dep.) at 144:25-145:6; 145-7-15; 146:20-147:6; 164:3-7; 164:16-21.) He admitted that he did not know whether Town & Country determined its selling price by adding up all of its costs and then adding 20 percent. (*Id.* at 144:25-145:6.) He admitted that he was not aware of any generally accepted accounting principle or any FASB statement that would say you can fairly attribute profit on a pro rata basis against costs. (*Id.* at 145-7-15.) He further testified that he could not identify any authority to support his apportionment methodology, or identify any prior copyright infringement architectural-related cases where his apportionment methodology was accepted or addressed by a court.[4] (*Id.* at 146:20-147:6; 164:3-7; 164:16-21.) Cobb's proffered apportionment opinion falls short of meeting every one of the factors courts consider under *Daubert* and Rule 702 to unsure the reliability and relevant of expert testimony admitted into evidence. *See EZ Dock,* 2003 WL 1610781, at *2.

[4] Particularly in the context of an architectural works copyright case, Cobb's contrived apportionment argument is unfounded and irrelevant. *See Nelson-Salabes*, 2001 WL 419002, at **9-10 (holding that defendants failed to proffer sufficient evidence to permit the court to fairly apportion profits between those profits attributable to the copyrighted work and those profits attributable to other aspects of the assisted living center; rejecting defendants' arguments that no profits could be attributed to infringing front elevation design or footprint based on experts testimony that architectural design was not an important factor in determining the value of an assisted living center).

Cobb's apportionment methodology should be excluded from trial because he has failed to provide any basis for arbitrarily determining which elements and features are attributable to the infringement, as Rottlund's claim is premised upon Defendants' infringement of the total look and feel of Rottlund's Villa II works. *See Baker*, 254 F. Supp. 2d at 354-55 (granting motion in limine to exclude expert damage calculation that was speculative and without basis); *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984) (upholding district court's exclusion of expert testimony as derived from irrelevant bases); *Johnson Elec.*, 103 F. Supp. 2d at 281 (excluding expert testimony and noting that the proposed expert's inclusion of unfounded and irrelevant calculations "alone destroys the validity of his conclusions"); Fed. R. Evid. 702 (expert testimony must be the product of reliable principles and methods). Cobb's efforts to apportion the infringer's profits with an artificial and arbitrary profit margin on individual elements as opposed to the entire infringing product is nothing more than Cobb's personal litigation theory. "A court may conclude that there is simply too great an analytical gap between the data and the opinion offered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 147, 146, 118 S. Ct. 512, 519 (1997). His opinion, resting on nothing more than the *ipse dixit* of Cobb himself, is meaningless and inadmissible. *Id.* ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Because Cobb's apportionment analysis is unsupported and completely arbitrary, it is not sufficiently reliable to be admitted in evidence. *See Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1997) (holding that a judge must exclude an expert opinion that is unsupported); *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 714-15 (8th Cir. 2001) (citing *Kumho Tire Co., Ltd. v.*

*Carmichael*, 526 U.S. 137, 141 (1999)) (court must act as "gatekeeper" to ensure that expert bases his/her opinion upon a reliable foundation).

## II. THE COURT SHOULD EXCLUDE COBB'S OPINIONS REGARDING ROTTLUND'S ACTUAL DAMAGES RESULTING FROM THE INFRINGEMENT BECAUSE THEY ARE CONTRARY TO APPLICABLE LAW.

Cobb's actual damages analysis should be excluded because it places on Rottlund the *Defendants'* burden of proving that purchasers of Town & Country's infringing town homes would not have purchased Rottlund's town homes in the same geographic vicinity. Instead, Cobb attacks Rottlund's actual damage claim based on what he perceives to be Rottlund's lack of evidence regarding its capacity to build the number of infringing units constructed an sold by TCM. (*See, e.g.*, Mahowald Aff. Ex. A (Cobb's Rebut. Report) dated at 44, 46, 50 (criticizing Rottlund's damage expert for failure to include analysis that Rottlund could have developed the properties at issue).) Although Cobb's selective disregard of the testimony of Rottlund's witnesses regarding Rottlund's capacity is sufficient reason to exclude his opinion, the more fundamental flaw with his analysis is that it distorts and contradicts the applicable law regarding actual damages for infringement of architectural works, and which party bears the burden of proof.

### A. The Measure Of Actual Damages In An Architectural Copyright Infringement Action Is The Lost Profits Suffered By Plaintiff From A Town Home Constructed Pursuant To The Infringing Plans In The Same Geographic Vicinity.

Pursuant to the Copyright Act, the copyright owner is entitled to recover the "actual damages suffered by him or her as a result of the infringement." 17 U.S.C. § 504(b). "[O]nce a copyright holder establishes with reasonable probability the existence of a causal connection between the infringement and a loss of revenue, the burden properly shifts to the infringer to show that this damage would have occurred had there been no taking of copyrighted expression."

*Harper & Row Publishers,* 471 U.S. at 567, 105 S. Ct. at 2234 (citing 3 Nimmer § 14.02, at 14-7 to 14-8.1).

In terms of actual damages, Rottlund will show that it lost entire development opportunities to Town & Country because of the infringing Homestead Collection. As an architectural copyright infringement case, the proper measure for actual damages is lost profits suffered by Rottlund from a home constructed pursuant to the infringing plans. *See* Report and Recommendation dated October 25, 2004 (Doc. 586) (10/25/04 R&R) at 14-15 (citing *Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274, 280-81 (6th Cir. 1988), *aff'ing in relevant part* 686 F. Supp. 160 (E.D. Mich. 1987); *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560 (M.D. Fla. 1995); *Intown Enterprises, Inc. v. Barnes*, 721 F. Supp. 1263, 1267 (N.D. Ga. 1989)). Rottlund's actual damages theory approved by the Eighth Circuit in *Andreas v. Volkswagen of America, Inc.,* 336 F.3d 789, 795-96 (8th Cir. 2003).

In *Robert R. Jones,* the district court clearly and succinctly explained the prerequisites for recovering actual damages in an architectural works copyright infringement case just like this one. 686 F. Supp. at 164-65. *Robert R. Jones* involved two homebuilders "engaged in direct competition" that constructed and sold houses in subdivisions situated in the same geographical proximity – approximately two miles apart. *Id*. at 162, 164. After the plaintiff established the necessary liability elements for infringement of its copyrighted architectural drawings, the court turned to the issue of damages. *Id.* at 164.

The court recognized that no one could be certain that the defendants' infringing homes would have been purchased from plaintiff had no infringing product been put on the market. *Id.* Nevertheless, the court reasonably found that because "there were purchasers and a demand for this particular kind of house in this geographic area," the plaintiff successfully established the

reasonable probability of the existence of a causal relationship between the infringement and a loss of revenue. *Id.* The court also explicitly noted that even though plaintiff "might not have made every one of [defendant's] sales," the burden shifted to defendants to prove that purchasers of their infringing homes would not have purchased plaintiff's homes in the same geographic vicinity. *Id.* Because the defendants failed to carry their burden to establish that purchasers of defendant's homes would not have purchased plaintiff's homes in the same geographic vicinity, it was "presumed [plaintiff] would have sold [the seven homes] absent the infringement." *Id.*

The Sixth Circuit Court of Appeals affirmed the court's rationale, and stated the evidence satisfied the nexus for recovering actual damages. 858 F.2d at 281; *see also Ford Motor Co. v. B&H Supply, Inc.,* 646 F. Supp. 975, 991-92 (D. Minn. 1986) (awarding plaintiff the "actual economic profit" it would have made if defendants had not sold infringing product even though court "necessarily engage[d] in some degree of speculation in establishing lost sales due to sales of infringing product"); *Maloney*, 891 F. Supp. at 1568-69 (awarding actual damages to plaintiff in copyright infringement case involving architectural plans equal to the profits the plaintiff would have realized had the plaintiff constructed and sold the residence at issue); *Cornerstone Home Builders, Inc. v. McAllister,* 303 F. Supp. 2d 1317, 1321 (M.D. Fla. 2004) (same); *accord Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.,* 978 F.2d 430, 432 (8th Cir. 1992) ("The Copyright Act allows recovery of actual damages . . . in recognition that some types of infringement inflict more harm to the copyright owner than the benefit reaped by the infringer, for example, where the infringer's minimal use forecloses a broader market") (citation omitted).

**B. Cobb's Capacity Analysis Contradicts Applicable Law And Ignores The Applicable Burden of Proof.**

Cobb's proffered actual damages critique sidesteps the applicable law. Rather than address whether there were purchasers and a demand for the town homes at issue in the

geographic area where the parties competing developments were located, Cobb criticizes Rottlund's actual damages analysis on the grounds of Rottlund's capacity to build all of the infringing town homes. (Mahowald Aff. Ex. A (Cobb's Rebut. Report) dated at 44, 46, 50.) Given the Defendants' failure to fulfill their burden of proof, Cobb's conclusory criticisms that Rottlund lacked capacity to build the infringing town homes should be excluded. *See, e.g.*, *Gen. Elec.*, 522 U.S. at 146, 118 S. Ct. at 519 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *see also Arkwright*, 125 F.3d at 1183 (holding that a judge must exclude an expert opinion that is unsupported); *Wheeling*, 254 F.3d at 714-15 (citing *Kumho Tire*, 526 U.S. at 141 (court must act as "gatekeeper" to ensure that expert bases his/her opinion upon a reliable foundation)); *De Jager Const., Inc. v. Schleininger*, 938 F. Supp. 446, 449 (W.D. Mich. 1996) (expert's seeking to "weave a story" by deliberately ignoring evidence in the record was factor in excluding opinion regarding damages or fraud).

**C. The Court Should Preclude The Town & Country Defendants From Retooling Cobb's Reports And Opinions To Opine On Rottlund's Actual Damages.**

Rottlund also seeks to exclude from trial any testimony from Cobb regarding Rottlund's actual damages. As of this date, Cobb has failed to opine or otherwise provide a specific dollar amount for Rottlund's actual damages. (Mahowald Aff., Ex. B (Cobb. Dep.) at 22:13-23:1.) Rottlund brings this motion to preclude the Town & Country Defendants from retooling Cobb's expert opinion testimony on the eve of trial to offer expert opinion regarding Rottlund's actual damages.

## III. COBB'S REFERENCES TO COPYRIGHT LAW AND EFFORTS TO REDEFINE THAT LAW SHOULD BE EXCLUDED AT TRIAL.

Cobb's proffered opinion also runs astray when he discusses federal copyright law. Under well-settled federal law, "[t]he touchstone for the admissibility of expert testimony is

whether it will assist or be helpful to the trier of fact." *McKnight by and through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1408 (8th Cir. 1994). "Because the judge and not a witness is to instruct the factfinder on the applicable principles of law, exclusion of expert opinion testimony is appropriate if the terms used have a separate, distinct, and special legal meaning." *Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411-12 (8th Cir. 1987) (*citing Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977) and *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)).

In its October 19, 2004 Order, the Court rejected Defendants' contention that Rottlund's works are not original. 10/19/04 Order at 2-3 (quoting *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991) ("Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."). Thus, a work is: 1) an independent creation if it was not copied from other works; and 2) original if it was independently created (not copied) and possesses a minimal degree of creativity, which may be crude, humble or obvious. *Id.*; *see also CSM Investors*, 840 F. Supp. at 1310 (holding that the design of a rectangular office showroom for construction on a commercial site possesses the requisite degree of creativity to satisfy the minimal originality threshold); *Richmond Homes*, 862 F. Supp. at 1526 (mass-produced house floor plans easily satisfy the minimal degree of creativity required for originality). Accordingly, this Court held that the "'form . . .[,] arrangement and composition of spaces in [building] design[s]'" are entitled to copyright protection as original works of authorship. 10/19/04 Order at 3 (quoting 17 U.S.C. § 101).

As the Court has already determined that the arrangement and composition of spaces in Rottlund's Villa II works is entitled to copyright protection, the trier of fact need not consider

expert witness testimony regarding Rottlund's independent creation of its copyrighted Villa II designs and works. Likewise, the trier of fact does not need an expert witness to assist them to understand the abundant evidence of the Defendants' copying of Rottlund's copyrighted Villa II designs and works. Thus, Cobb's opinions concerning the originality of Rottlund's copyrighted Villa II works are not relevant and are not admissible.

At various point in his Rebuttal Report, Cobb improperly sets forth selected excerpts of what he perceives the copyright law to be. (*See, e.g.*, Mahowald Aff. Ex. A (Cobb Rebut. Report) at 7, 30-32, 34-35, 39, 53, 54-59.) The Court should exclude from the trial any opinions or testimony from Cobb regarding what he perceives federal copyright law to be, including:

- Estimates of TCM profits through March 2004 that may be attributable to copyrighted works would decrease upon identification of additional common elements and upon identification of generic features in addition to the limited sample of generic features analyzed to date and may decrease upon identification of the specific features subject to copyrighted works. (Mahowald Aff. Ex.A (Cobb Rebut. Report) at 7.[5]

- Opinion that "[m]any features of town homes are common and generic. Many similarities of town homes flow from the nature of a house, for example; foundations, windows, doors, walls, traffic patterns, etc. Builders use lofts and fireplaces in designs of houses and town homes." (*Id.* at 30.)

- Discussion of Copyright law, including references to and quotations from the *Kootenia Homes* and *Rottlund Homes, Inc. and Rottlund Homes of Iowa, Inc. vs. The Oaks Development Co., et al.* decisions. (*Id.* at 34-35.)

- Opinion that "[i]f design features did not cause the purchase of a home, a claim for lost profits related to that home would not be appropriate." (*Id.* at 39.)

- Opinion that "[f]urther, many features – for example: electrical wiring, plumbing lines, garage doors, heating and air conditioning, insulation, flooring and paint – may not be subject to copyright; and features – for example: plumbing fixtures and appliances, which are standard – would not be subject to copyright. A claim for lost profits related to features not subject to copyright would not be appropriate." (*Id.* at 39.)

[5] Based on this interpretation of the copyright act, Cobb excludes from his calculation of the infringers' profits, both the costs of, and what he calculates to be the profit from, "standard" features or elements. (*See, e.g.*, Mahowald Aff., Ex. B (Cobb Dep.) at 169:14-19 (discussing allocation of costs and profits from garage doors).)

- Quotation from presentation materials entitled, "Damages and Other Remedies Under the Copyright Act" prepared by Barbara M. Ross, Kim Donat, and Melissa C. Snelson regarding "apportionment." (*Id.* at 53.)

- His opinion contained in the entire section titled "Profits Attributable to Features." (Mahowald Aff. Ex. (Cobb Prelim. Report) at 43-46; Ex. (Cobb Supp. Report) at 46-49; Ex. (Cobb. Rebut. Report) at 54-59.) "Common elements and generic features would not be subject to copyright protection and TCM profits related to common elements and generic features would not be attributable to copyrighted works. Profits not attributable to copyrighted work would not be included in damages." (*Id.* at 54 (quoting *Kootenia Homes, Inc. v. Reliable Homes, Inc., et al.*).)

Cobb concedes that he has no expertise in determining which elements in an architectural building are protected by the copyright act and which elements are not. (Mahowald Aff., Ex. B (Cobb. Dep.) at 165-66.) His testimony regarding copyright law would not assist the jury. *Johnson Controls, Inc.*, 36 F.3d at 1408; *Hogan*, 812 F.2d at 411-12 (the judge and not a witness is to instruct the factfinder on the applicable principles of law). Cobb's proffered legal opinions should be excluded from the trial.

## IV. THE COURT SHOULD EXCLUDE THOSE PORTIONS OF COBB'S REPORT RELATING TO IRRELEVANT AND IMPERTINENT MATTERS.

Certain portions of the Cobb's Rebuttal contain irrelevant and impertinent matters, including the following irrelevant statements:

- A section on Rottlund financial information that includes a discussion of the March 6, 2002 self-tender offer and purchase of publicly-held common stock. The section references litigation "which included claims that the cash purchase price was less than the fair value of the common stock," as well as the settlement of that litigation "without public disclosure of additional payments, if any, or of use of additional capital." (Mahowald Aff. Ex. A (Cobb Rebut. Report) at 9.)

- A discussion culminating in a quotation from the Maple Lakes Master Association Board of Directors minutes, dated March 10, 2003, regarding alleged complaints regarding home owner complaints, Rottlund's alleged non-responsiveness, and a statement about a Condo Board retaining an attorney "for assistance in dealing with Rottlund." (*Id.* at 32.)

One can only question why Cobb chose to include these statements in his Rebuttal Report. They have absolutely no relevance to anything at issue in the trial, and are nothing more

than a gratuitous attack on Rottlund by the Town & Country Defendants' retained expert. To restrain Cobb from straying too far from "independent" expert to paid advocate, these items and issues should be excluded from the trial. *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible"). Moreover, even if these topics were marginally relevant, this evidence should be excluded because the probative value of Cobb's report and testimony on these topics "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury." Fed. R. Evid. 403.

## CONCLUSION

For the foregoing reasons, the Court should grant Rottlund's motion in limine and exclude the Town & Country Homes Defendants' expert Arthur H. Cobb's opinion testimony from the trial. Whatever "small aid [Cobb's] testimony might" arguably provide is far outweighed by "the unfair prejudice which might . . . result [] because of the aura of reliability and trustworthiness" that accompanies an expert's testimony. *United States v. Purham*, 725 F.2d 450, 454 (8th Cir. 1984).

Dated: November 1, 2004

**s/Philip R. Mahowald**
Craig S. Krummen, #0259081
Philip R. Mahowald, #0274902
David A. Davenport, #0285109
WINTHROP & WEINSTINE, P.A.
**Attorneys for Plaintiff**
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
pmahowald@winthrop.com

2155207v1