UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

ORIGINAL

| | |
|---|---|
| The Rottlund Company, Inc.<br>d/b/a Rottlund Homes,<br>a Minnesota Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Scott Larson Construction, Inc.,<br>a Minnesota Corporation<br>d/b/a Scott Larson Homes,<br>Scott E. Larson, an individual<br>d/b/a Scott Larson Homes, and<br>Christine D. Larson, an individual<br>d/b/a Scott Larson Homes,<br><br>Defendants. | No.: 02-1238 (JRT/FLN)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

Defendants initially brought this motion in November 2002, prior to any discovery. The Court correctly denied the motion, noting that Plaintiff should be permitted to conduct discovery. Discovery has shown that the Court should deny Defendants' motion again. For instance, discovery has shown that Scott Larson obtained Plaintiff's copyright protected floor plans and instructed his architects to copy them. (*See* Affidavit of Victoria L. Handler in Support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment ("Handler Aff."), Ex. A (Rolf Depo. Trans., p. 12, line 14 through p. 13, line 18.) The record also demonstrates that Scott Larson obtained and provided his architects the precise square footage calculations of Plaintiff's product. *Id.* at Ex. A (Rolf Depo. Trans., p. 19, line 8 through p. 20, line 10.) Discovery also revealed documents providing evidence that Plaintiff's copyrighted material was traced. (*See* Affidavit of David A. Davenport in Support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment

48

FILED JUL 1 1 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED
DEPUTY CLERK'S INTIALS

("Davenport Aff."), Exs. A and B.) Scott Larson was intimately involved in each developmental and decision-making phase of the infringing product, including sketch and design review, and approval of plans, layouts, elevations and concept drawings. Handler Aff., Exs. A-B (Rolf Depo. Trans., p. 30, line 18 through p. 31, line 3; p. 60, lines 12 through 19; Hoefler Depo. Trans., p. 192, lines 15 through 24.) Plainly stated, the copyright infringement in this case was willful and deliberate, and Mr. Larson's involvement as the central figure directing the infringement was pervasive and dominant.

## FACTS[1]

### A. Scott Larson Homes

Scott Larson Homes is an assumed corporate name. Davenport Aff., Ex. C (Affidavit of Scott E. Larson, 9/18/02, ¶ 5.) Defendant Scott Larson Construction, Inc. has been a Minnesota corporation since 1982 and is a registered name holder of Scott Larson Homes. *Id.*, ¶¶ 3 and 5; Handler Aff., Ex. C (Scott Larson Depo. Trans., p. 7, lines 13-16.) Scott Larson Construction advertises and does business exclusively as Scott Larson Homes. Handler Aff., Ex. C (Scott Larson Depo. Trans., at p. 8, lines 6-11 and 19-25 through p. 9, line 1.) Likewise, until Plaintiff commenced this lawsuit, Scott and Christine Larson were registered name holders of, and persons doing business under, the Scott Larson Homes assumed name. Davenport Aff., Ex. D (Exhibit A to the Larson Affidavit).[2]

Scott Larson is the President of Scott Larson Construction, and serves as the Director and Secretary of Scott Larson Construction's Board of Directors. Handler Aff., Ex. C (Scott Larson

[1] Based on their November 15, 2002 version of this motion, Defendants claim that "the facts of this case are known to the Court." (Defendants' Mem., p. 2.) Since the Court denied the motion and ordered the parties to conduct discovery, Plaintiff respectfully disagrees with Defendants' contention.

[2] Defendants filed an amended assumed name certificate to delete Scott and Christine Larson as registered name holders and persons doing business as Scott Larson Homes in June of 2002, shortly after being served with Plaintiff's Complaint. Davenport Aff., Ex. E (Amendment to Certificate of Assumed Name).

Depo. Trans., p. 5, line 22 through p. 7, line 4.) Christine Larson is the Vice President of Scott Larson Construction, and serves as the Treasurer of Scott Larson Construction's Board of Directors. (*Id.*, p. 7, lines 2-8.) Scott and Christine Larson are Scott Larson Construction's only officers, directors, employees and shareholders. (*Id.*, p. 6, lines 6 through 15.)

**B. Plaintiff's Copyright Claims**

Plaintiff owns copyrights for architectural designs and a town home product known as the New Urban Townhomes. Davenport Aff., Ex. F. Plaintiff has constructed its copyright protected New Urban Townhomes in several communities throughout the Twin Cities. Handler Aff., Ex. E (Timothy Whitten Depo. Trans., p. 52, lines 3-9; p. 53, lines 13-22.)

Plaintiff alleges, among other things, that Defendants have acted in concert to plan, develop, construct, advertise and sell an infringing town home product called the Urban Townhomes, which Scott Larson Homes has constructed, advertised and sold in its Village Point Development located in Chaska, Minnesota. Davenport Aff., Ex. G (Amended Complaint, ¶ 18.) Plaintiff claims that prior to Defendants' planned and actual construction of its Urban Townhomes product, Defendants directly copied Plaintiff's New Urban Townhomes product, or, in the alternative, had access to this copyright protected product and created the substantially similar Urban Townhomes product. (*Id.*, ¶¶ 19-23.) Thus, Plaintiff has asserted several copyright infringement claims, including direct and vicarious liability claims, and contributory copyright infringement claims. (*Id.*, ¶¶ 24-28 and Counts I-IV, VIII-XI, and XV-XVIII.)

**C. Scott Larson Homes' Intentional Copying**

Scott Larson Homes executed an architectural services agreement with Archnet, The Architectural Network, Inc. ("Archnet") on December 7, 2000 ("Agreement"). Davenport Aff., Ex. H. (Hoefler Dep. Ex. 8) Not surprisingly, Archnet has never heard of Scott Larson

Construction, Inc., and testified that when Archnet does business with Scott Larson it is doing business with Scott Larson Homes. Handler Aff., Ex. B (Hoefler Depo. Trans., p. 38, line 25 through p. 39, line 5.) Pursuant to the Agreement, Archnet provided architectural services to Scott Larson Homes related to the infringing Urban Townhomes product. Davenport Aff., Ex. H).

Don Rolf, Archnet's former employee who provided draftsman services for Scott Larson Homes' infringing Urban Townhomes product, testified as follows:

> Q. I am showing you what has been marked as Exhibit Number 2. This is a brochure for Rottlund Homes New Urban Townhomes product. Have you seen this before?
>
> A. Yes, I have.
>
> Q. Do you recall where you saw it?
>
> A. I saw it as we were looking at the Village Point project,[3] we were reviewing this as a guide.
>
> Q. As a guide for the Village Point development?
>
> A. Yes.
>
> Q. Do you recall how you came to see it?
>
> A. I believe Scott Larson brought this in as a guide.
>
> Q. And by guide could you tell me what you mean by guide?
>
> A. He liked the concept.
>
> Q. And so (sic) wanted to use this as a guide for his Village Point development?
>
> A. Right. This seemed to be the trend in the market at the time, as I recall. So he wanted to use it as a guide to develop his project.

[3] As noted above, the Village Point development is where Scott Larson Homes has constructed and is selling its Urban Townhomes product.

> Q. I am showing you Exhibit Number 3. Before I ask you any questions about that I just want to have one follow-up question on Exhibit Number 2. Was Exhibit Number 2 in fact used as a guide for the Village Point development?
>
> A. Yes, I believe it was.

Handler Aff., Ex. A (Rolf Depo. Trans., p. 12, line 14 through p. 13, line 18.)

Archnet, through its Rule 30(b)(6) witness Michael Hoefler, testified that clients often provide Archnet the "starting point" -- pictures, ideas, thoughts -- for products Archnet is asked to design. *Id.* at Ex. B (Hoefler Depo. Trans., p. 39, line 6 through p. 40, line 17.) Archnet denied that this "starting point" may include developer brochures, like Plaintiff's, and testified that Scott Larson only provided Archnet with thoughts and concepts relative to the architectural services Scott Larson Homes sought from Archnet. (*Id.*, at Ex. B at p. 41, line 19 through p. 43, line 18.) Archnet testified further that it did not use Plaintiff's advertising brochure for its New Urban Townhomes product as the "starting point" for Scott Larson Homes' infringing Urban Townhome product, and denied that it traced Plaintiff's floor plans depicted in the brochure. (*Id.*, at Ex. B at p. 193, line 18 through p. 196, line 9.) Similarly, Scott Larson Homes, through its Rule 30(b)(6) witness Scott Larson, denied that it obtained Plaintiff's brochure for its New Urban Townhomes product. Davenport Aff., Ex. I (Defendant Scott E. Larson's Response to Plaintiff's Request for Admissions, Set I, Response Nos. 23-27); Handler Aff. Ex. C (Scott Larson Depo. Trans., p. 141, lines 10-24.)

However, Mr. Rolf's testimony provides additional insight into Mr. Larson's and Mr. Hoefler's precise knowledge of, and important discussions concerning, Plaintiff's individual town home units (Albany and Boston) within its New Urban Townhomes:

> Q. I am now showing you what has been marked as Exhibit Number 5. Do you recognize the handwriting on this exhibit?

A. Yes, I do.

Q. Whose is it?

A. It's mine.

Q. Do you recall being present at a meeting on December 11th of 2000 while you were working at Archnet wherein Anthony and Scott Larson were present?

A. I recalled meeting with Anthony and Scott Larson. It appears that it was December 11th.

Q. Are these your notes from that meeting?

A. It appears that is, yes.

* * *

Q. Underneath Scott Larson's name there is a reference to 1,580 square feet. Do you see that?

A. Yes.

Q. There is also a reference to 1,727 square feet - The Albany. Do you see that?

A. Yes.

Q. Is that information that Scott Larson gave to you at this meeting?

A. I believe it would be.

Handler Aff., Ex. A (Rolf Depo. Trans., p. 19, line 8 through p. 20, line 10.) Plaintiff's New Urban Townhomes Albany unit is 1,727 square feet and its Boston unit is 1,580 square feet. *Id.*, at Ex. E (Whitten Depo. Trans., p. 27, line 25 through p. 29, lines 1-4); Davenport Aff., Ex. J.

Mr. Rolf's testimony further explains important tracing documents and initial Computer Aided Design (CAD) documents, discovered in Archnet's files, which demonstrate the high level piracy that occurred in this case. The tracing documentation is a rough sketch of floor plans that

Archnet testified was produced, in its original form, on "bum-wad paper."[4] *See* Davenport Aff., Ex. A. (Hoefler Dep. Ex. 35.) The tracing becomes self-evident when Exhibit A from the Davenport Affidavit is placed on top of page 2 of Exhibit B from the Davenport Affidavit and placed over a light source such as a light table or window. Mr. Rolf testified that he had discussions with Mr. Hoefler regarding Plaintiff's and Scott Larson Homes' town home product, and Mr. Hoefler instructed Mr. Rolf, like Scott Larson did, to follow Plaintiff's design depicted in its floor plan brochures. Handler Aff., Ex. A (Rolf Depo. Trans., p. 21, line 10 through p. 22, line 9.) Accordingly, Mr. Rolf testified that he sat down at a computer and used Plaintiff's New Urban Townhomes floor plan, which he received from Scott Larson, to create the first CAD drawings for Scott Larson Homes' Urban Townhomes. *Id.* at Ex. A (Rolf Depo. Trans., p. 38, line 13 through p. 50, line 14.) He also testified that the aforementioned tracing documentation, prepared by Mr. Hoefler, appeared to be a direct trace of Plaintiff's floor plan depicted in its advertising brochure and stated that he had no basis to deny that Plaintiff's product had been traced. (*Id.*)

Mr. Rolf's testimony explains why Plaintiff discovered two CAD documents in Archnet's files that identically depict the specific and detailed designs of Plaintiff's copyright protected New Urban Townhomes. Davenport Aff., Exs. K and L (Rolf Dep. Exs. 10 and 11); Handler Aff., Ex. A (Rolf Depo. Trans., p. 37, line 2 through p. 46, line 18.) Mr. Rolf confirmed that Scott Larson wanted a sixteen-unit town house product similar to Plaintiff's, which, of course, is why Scott Larson directed Archnet to copy Plaintiff's New Urban Townhomes and use it as the "guide" or "starting point" for Scott Larson Homes' Urban Townhomes. (*Id.*, p. 50, lines 2-14.)

---

[4] Bum-wad paper "is a tracing paper that you roll out and see through. You overlay that on top of a print or you overlay it just on your desk and you start sketching." Handler Aff., Ex. B (Hoefler Depo. Trans, p. 15, lines 5-9.)

These detailed CAD construction documents, which are identical to Plaintiff's, further prove that Defendants directly copied Plaintiff's copyrights.

However, Scott Larson and Archnet testified that they do not recall any meetings between them that involved discussions concerning Plaintiff's New Urban Townhomes. Handler Aff., Ex. C (Scott Larson Depo. Trans., p. 124, line 10 through p. 125, line 8 and p. 138, lines 9-15); Handler Aff., Ex. B (Hoefler Depo. Trans., p. 199, line 15 through p. 207, line 19.) Thankfully, as Mr. Rolf's testimony illustrates, Mr. Larson's and Mr. Hoefler's inability to recall these important discussions and events did not thwart discovery. In addition, at least two documents produced by Archnet specifically relate to important discussions concerning Plaintiff's individual New Urban Townhomes units (Albany and Boston) and include the precise square footage calculations for each unit. Davenport Aff., Exs. M and N (Rolf Dep. Ex. 5 and Hoefler Ex. 37.) There is little doubt that Defendants willfully and deliberately copied Plaintiff's product.

**D. The Court's November 15, 2002 Order**

The Court denied Defendants' predecessor to this motion on November 15, 2002 and stated that the parties "shall have 90 days to conduct additional discovery on the question of whether the Larsons actually conducted business under the name Scott Larson Homes." Davenport Aff., Ex. O (Order, p. 5.) Discovery demonstrates that the Larsons did business as Scott Larson Homes and, in fact, Archnet does not even know the Scott Larson Construction entity even exists:

> Q. Have you ever heard of an entity known as Scott Larson Construction?
>
> A. No.

Q. So when you did business with Scott Larson and Anthony Larson, it was with Scott Larson Homes?

A. That's correct.

Handler Aff., Ex. B (Hoefler Depo. Trans., p. 38, line 25 through p. 39, line 5.)

Moreover, discovery demonstrates that Scott Larson uses Scott Larson Homes as an instrument to carry out willful and deliberate copyright infringement. For instance, the Agreement, necessary to achieve Scott Larson's desire to copy Plaintiff, was executed by Scott Larson. Davenport Aff., Ex. H. Scott Larson Homes, not Scott Larson Construction, entered into various other agreements with construction contractors to build and sell the infringing town home product. Davenport Aff., Ex. P. Finally, it is undeniable that Scott Larson is the dominant influence in Scott Larson Homes and determined the policies that resulted in the copyright infringement that exists in this case; after all, Scott Larson himself instructed Archnet to copy Plaintiff's product and facilitated the process by providing Archnet with the specific and detailed square footages of Plaintiff's copyrighted designs. Handler Aff., Ex. A (Rolf Depo. Trans., p. 12, line 14 through p. 13., line 18 and p. 19, line 8 through p. 20, line 10.)

## LEGAL ANALYSIS

### A. Summary Judgment Standard.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall only be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (2003); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is deemed "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson*, 477 U.S. at 248. "Material" facts are those which might affect the outcome of the litigation under the applicable law. *Id.*

**B. Defendants Scott And Christine Larson Can Not Escape Direct Liability For Illegal Acts Carried Out Under The Scott Larson Homes Assumed Name.**

Defendants Scott and Christine Larson mistakenly believe that they can absolve themselves of direct liability for the unlawful conduct of Scott Larson Homes by simply arguing that they made a "mistake" when they filed documents, under the penalty of perjury, with the State of Minnesota representing that they did business as Scott Larson Homes. (Defendants' Mem., p. 11.) There are two main problems with this belief: 1) it is legally unsupported because all persons comprising an assumed, fictitious entity are liable for the illegal acts carried out under the name of that entity; and 2) there are genuine issues of material fact concerning whether Scott and Christine Larson did business as Scott Larson Homes.

First, the law provides that any person, including individuals like Scott and Christine Larson, who adopts a commercially assumed name, like Scott Larson Homes, is personally liable for all of the obligations incurred by the assumed name entity because the assumed name entity is merely descriptive of the underlying entities that comprise it. *See e.g.*, *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387 (D. Ne. 1977), *aff'd* 578 F.2d 721 (8th Cir. 1978); *Southern Ins. Co. v. Consumer Ins. Agency*, 442 F. Supp. 30, 31-32 (E.D. La. 1977). Thus, courts have no difficulty concluding that an individual is the proper defendant in an action to enforce an obligation created by or arising out of the conduct of an assumed corporate entity. *See e.g.*, *Jaffe v. Nocera*, 493 A.2d 1003, 1008 (D.C. App. 1985); *Krawfish Kitchen Restaurant, Inc. v. Ardoin*, 396 So.2d 990, 993 (La. Ct. App. 1981). This well established legal principle is grounded in common sense, because any other rule of law would permit persons, such as Scott and Christine Larson, to operate unlawfully under an assumed name and then, when caught, claim that another

registered name holder (one with no assets and whom no one knows exists) -- like Scott Larson Construction, Inc. -- is the party that should be held liable for the unlawful acts carried out under the assumed name.

Second, whether Scott and Christine Larson did business as Scott Larson Homes is a genuine issue of material fact. For example, Scott and Christine Larson claim there is no evidence that they ever did business as Scott Larson Homes, and argue, instead, that all of the evidence supports their claim that everything they did was in their capacity as officers/directors/employees/shareholders of Scott Larson Construction, Inc. However, Scott and Christine Larson filed a sworn statement with the State of Minnesota stating that they did business as Scott Larson Homes. Davenport Aff., Ex. D. Their sworn claim that this ten-year-old filing was a mistake because they never did business as Scott Larson Homes does nothing but create a genuine issue of material fact since the record now contains two contradictory sworn statements from Scott and Christine Larson. A jury should be permitted to decide which statement is more credible, the statement made ten years ago in the ordinary course of business or the statement made after this lawsuit commenced. To argue that summary judgment should be granted simply because Scott and Christine Larson now claim that they made a mistake when they made the first statement ten years ago is akin to arguing that summary judgment should be granted because Scott and Christine Larson deny that Plaintiff's copyrights have been infringed.

As pointed out by Defendants in their moving papers, Scott Larson signed several contracts as "Scott Larson, Pres." (Defendants' Mem., p. 7.) However, Scott Larson signed many documents, such as bidding relating documents, invoices, banking and financial documents, and correspondence related to design instructions, as "Scott Larson," not "Scott Larson, Pres." *See* Davenport Aff., Exs. Q. These documents, at a minimum, create a genuine

issue of material fact concerning whether Scott Larson was doing business as Scott Larson Homes, since he clearly signs some documents in his individual capacity and some documents in his capacity as the President of Scott Larson Construction, Inc. Scott Larson's bare denial that he did not do business as Scott Larson Homes does nothing more than solidify the existence of a genuine issue of material fact. If Scott Larson never did business as Scott Larson Homes, then he would have signed all documents as President of Scott Larson Construction, Inc. He did not. Accordingly, a jury could certainly conclude that this was because he did business as Scott Larson Homes.

A jury should also be permitted to assess Scott and Christine Larson's credibility concerning their claim that they never really did business as Scott Larson Homes. For instance, Scott Larson testified that he is not aware of any evidence, other than his own testimony, to support his claim that he made a mistake when he certified himself and Christine Larson as registered name holders doing business under the Scott Larson Homes assumed name. Handler Aff., Ex. D (Scott Larson Depo. Trans., p. 239, line 19 through p. 245, line 25.) As demonstrated above, Scott Larson also testified that he never obtained Plaintiff's copyright protected floor plans, but Mr. Rolf testified that Scott Larson gave Rottlund's floor plans to Archnet and instructed Archnet to copy them. Plaintiff believes that Mr. Rolf told the truth and that Mr. Larson perjured himself in an attempt to avoid enormous financial exposure for copyright infringement. A jury should be permitted to assess whether Scott Larson's testimony in support of this "mistake defense" is as incredible as his testimony offered to support his denial of copyright infringement. Accordingly, Defendants' motion to dismiss all claims of direct liability against Scott and Christine Larson should be denied.

### C. Alternatively, Scott And Christine Larson Can Not Escape Direct Liability Since They Used Scott Larson Construction, Inc. As An Instrument To Carry Out Willful And Deliberate Copyright Infringement

"When an officer uses a corporation as an instrument to carry out a deliberate infringement or to escape personal liability, he can be held individually liable." *Warner Bros-Seven Arts, Inc. v. Kalantzakis*, 326 F. Supp. 80, 82 (S.D. Tx. 1971); *Adventures In Good Eating v. Best Places To Eat*, 131 F.2d 809, 814 (7th Cir. 1942) (an officer of a corporation is held jointly and severally liable with the company when "he uses the corporation as an instrument to carry out his own willful and deliberate infringements"); *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F. Supp. 730, 733 (S.D.N.Y. 1981) (officer and sole stockholder of corporation jointly and severally liable for infringement because he directly caused the corporate defendant to infringe); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F. Supp. 531, 537 (S.D.N.Y. 1977) ("an individual, including a corporate officer, director or stockholder, who causes a corporate defendant to infringe . . . is jointly and severally liable for the infringement"). This direct liability rule mandating personal liability is neither harsh nor surprising because the corporate officer is simply being held liable for his own intentional misconduct; whereas indirect liability rules, such as contributory infringement and vicarious liability (which will be discussed below), impose liability on the corporate officer for misconduct primarily committed by others. *See e.g.*, *Samet & Wells, Inc. v. Shalom Toy Co., Inc.*, 429 F. Supp. 895, 903-04 (E.D.N.Y. 1977) ("an individual, including an officer or director of a corporation, who participates in the acts constituting infringement is personally liable, jointly and severally with the corporate defendant"); *Kolbe v. Shaff*, 240 F. Supp. 588, 589-90 (S.D.N.Y. 1965).

Scott and Christine Larson argue that they should not be personally liable for Scott Larson Homes' infringement because all of their conduct was carried out in their capacity as

either officers, directors, employees or shareholders of Scott Larson Construction, Inc. Should the Court be inclined to disagree with Plaintiff's legal argument set-forth above, Scott and Christine Larson have made it very clear that they are still directly liable for the infringement of Plaintiff's copyrights in this case because they have used Scott Larson Construction, Inc. as an instrument to carry out willful and deliberate copyright infringement. Plaintiff's floor plans, which Scott Larson directed be copied, contain a copyright notice. *See* Davenport Aff., Ex. B. Thus, in addition to the many facts set-forth above bearing upon willfulness and deliberateness, Scott and Christine Larson cannot seriously dispute that the infringement in this case was willful and deliberate. *Unites States v. Manzer*, 69 F.3d 222, 227 (8th Cir. 1995) (finding that a reasonable jury could conclude that a copyright notice is sufficient, for purposes of willful infringement, to alert an infringer that a product is copyrighted).

Accordingly, Defendants' motion to dismiss all claims of direct liability against Scott and Christine Larson should be denied.

**D. Alternatively, Scott And Christine Larson Can Not Escape Direct Liability Since They Are The Dominant Influence In Scott Larson Construction, Inc. And Determined The Policies That Resulted In Infringement**

Corporate officers are directly liable as joint tortfeasors in copyright and trademark infringement cases where "the officer (is) the dominant influence in the corporation, and determined the policies which resulted in the infringement." *Famous Music Corp. v. Bay State Harness Horse Racing and Breeding Assoc., Inc.*, 423 F. Supp. 341, 344 (D.C. Mass. 1976); *Warner Bros., Inc. v. O'Keefe*, 468 F. Supp. 16, 20 (S.D. Iowa 1977) (corporate officer, who is also sole stockholder of corporation, is personally liable with the corporation for copyright infringement since he "establishes the policies which have resulted in the infringement"); *Tempo Music, Inc. v. International Good Music, Inc.*, 143 U.S.P.Q. 67, 69 (W.D. Wash. 1964)

(president and principal stockholder of corporation held personally liable since he was the "dominant influence" and determined the policies of the corporation).

Scott and Christine Larson are the only officers, directors, employees and shareholders of Scott Larson Construction. Handler Aff., Ex. C (Scott Larson Depo. Trans., p. 5, line 22 through p. 7, lines 2-8.) It can not, therefore, be seriously disputed that Scott and Christine Larson dominate Scott Larson Construction. Simply stated, no one other than Scott and Christine Larson are capable of establishing or determining the policies of Scott Larson Construction. Consequently, neither Scott nor Christine Larson can escape liability for the infringement of Scott Larson Construction because their dominance in the corporation and establishment of its policies renders them directly liable as joint tortfeasors with Scott Larson Construction for the copyright infringement that has occurred here.

Accordingly, Defendants' motion to dismiss all claims of direct liability against Scott and Christine Larson should be denied.

### E. Christine Larson Is Also Derivatively Liable To Plaintiff Pursuant To Contributory Infringement And Vicarious Liability Principles[5]

#### 1. <u>Christine Larson's Contributory Infringement</u>

"One who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another . . ." is jointly and severally liable for the infringement. *Peer International Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 565 (S.D.N.Y. 1995) (quoting *Demetriades v. Kaufmann*, 690 F. Supp. 289, 292-93 (S.D.N.Y. 1988)). The touchstone requirements are knowledge and participation. *Demetriades*, 690 F. Supp. 289. The knowledge requirement is objective, demanding proof that a party knew or had reason to know of the infringing activity. *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987) (citing

[5] Scott Larson rightfully concedes that there is no basis upon which he may move for summary judgment on Rottlund's contributory infringement and vicarious liability claims asserted against him.

*Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159 (2nd Cir. 1971)). Participation is satisfied when a party aids another in an infringing endeavor by promoting or selling the infringing product. *Demetriades*, 690 F. Supp. 289; *Cable/Home Communication v. Network Productions*, 902 F.2d 829 (11th Cir. 1990).

Christine Larson is the Vice President of Scott Larson Construction, and serves as the Treasurer of Scott Larson Construction's Board of Directors. Handler Aff., Ex. C (Scott Larson Depo. Trans., p. 7, lines 2-8.) Christine Larson testified that she is responsible for paying the company's bills and decorating model homes. Handler Aff., Ex. F (Christine Larson Depo. Trans., p. 4, lines 8-10.) She testified that she prepares financial projections, documents related to unit closings, and budget documents, including those specific to the infringing product at issue in this case. (*Id.*, p. 6, line 21 through p. 23, line 17.) She communicates with lending institutions and arranges loan payment obligations for the company, including loans and repayment obligations directly associated with the infringing Urban Townhomes product. (*Id.*, p. 20, lines 13 through 17.) Christine Larson tracks and pays out, among other things, the labor, construction, supervision, overhead and other costs associated with the infringing product. (*Id.*, p. 26, line 21 through p. 32, line 12.) Ms. Larson is also involved in advertising, testifying that she ordered the Parade of Homes signs used for advertising the Urban Townhomes. (*Id.*, p. 90, lines 10 through 22.) These facts demonstrate that Christine Larson had knowledge of and participated in Scott Larson Homes' construction, advertising and selling of the Urban Townhomes product, which is the infringing activity at issue in this case.

Ms. Larson appears to argue that she blindly closed her eyes to Scott Larson Homes' conduct in an effort to claim she did not have actual knowledge, but concedes that "it might be said that in her position as treasurer/bookkeeper she had 'reason to know' that Scott Larson

Homes' development of its Village Point town homes purportedly 'infringed' on the copyrights of the plaintiff . . . ." (Defendants' Mem., p. 15.) Importantly, constructive knowledge, which Ms. Larson acknowledges may be inferred from the facts obtained in discovery, is a question of fact. *Nationwide Educational Development Corp v. Rex Communications, Inc.*, 1990 WL 64595, *5 (S.D.N.Y. 1990) (constructive knowledge is a question of fact and questions such as a party "deliberately clos(ing) its eyes . . ." toward another's infringing activity are sufficient to create an issue of fact to survive summary judgment).

In addition, Christine Larson argues that she should not be liable as a contributory infringer because she did not herself actually copy Plaintiff's product or directly participate in the insidious copying that occurred in this case. However, the contributory infringement principle does not require intent and knowledge of the actual copying since all members of the distribution chain of a product that infringes Plaintiff's copyright are jointly and severally liable regardless of their intent and knowledge of infringement. *See Nationwide Educational Development Corp v. Rex Communications, Inc.*, 1990 WL 64595 (S.D.N.Y. 1990); *see also Costello Pub. Co. v. Rotelle*, 670 F.2d 1035 (D.C. Cir. 1981) (copyright holder may proceed against good faith distributor of infringing product); *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*, 256 F. Supp. 399 (S.D.N.Y. 1966). For instance, in *Ford Motor Co. v. B & H Supply, Inc.*, 646 F. Supp. 975 (D. Minn. 1986), the court examined copyright and trademark infringement claims involving the distribution of automotive parts. The plaintiff sued multiple defendants, including a company that sold the automotive products at issue through telephone solicitations. The plaintiff presented evidence that the multiple defendants "marketed, sold, or distributed automotive parts in the packaging found to be infringing." *Id.* at 988. The court rejected the defendants', including the telemarketer's, innocent intent defense, holding that

"intent is not an element of copyright infringement and, thus, absence of intent is not a valid defense . . .." *Id.* at 989. The court found that each defendant, including the telemarketer, was a "an essential element in the chain of distribution . . ." and jointly and severally liable to the plaintiff. Accordingly, Ms. Larson's argument that she is not liable because she did not actually participate in every aspect of the infringing conduct is misplaced because there is no dispute that she was involved in many other important aspects, including the advertising and sale of the Urban Townhomes.

**2. <u>Christine Larson's Vicarious Liability</u>**

Vicarious liability exits "'[w]hen the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials . . .'." *Peer International*, 887 F. Supp. at 565 (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2nd Cir. 1963)). The touchstone requirements are benefit and control. *Demetriades*, 690 F. Supp. at 293. The requisite degree of control exists where a party has "the right and ability to supervise the infringing activities of another . . .." *Metzke v. May Dept. Stores Co.*, 878 F. Supp. 756, 760 (W.D. Pa. 1995). The requisite degree of benefit exists where a party has "an obvious and direct financial interest in [the infringing] activities." *Id.*; *see also Softel, Inc. v. Dragon Med. & Scientific Communications*, 118 F.3d 955, 971 (2nd Cir. 1997). Where such benefit and control is shown, vicarious liability is imposed, "even in the absence of actual knowledge, on those who fail to supervise the conduct of primary infringers . . .." *Peer International*, 887 F. Supp. at 565.

Christine Larson is an officer, director and employee of Scott Larson Construction, and is responsible for oversight of the company's finances. She also decorates the model homes, and tracked and paid out, among other things, the labor, construction, supervision, overhead and

other costs associated with the infringing Urban Townhomes product. She was also involved in the advertising of the Urban Townhomes. These facts demonstrate Ms. Larson supervised Scott Larson Construction's conduct and activity associated with the infringing Urban Townhomes.

Moreover, Christine Larson does not deny that she was aware of the construction of the infringing Urban Townhomes product. Instead, Christine Larson stridently argues that all of the infringing conduct concerning the Urban Townhomes was committed by Scott Larson Construction. However, Scott Larson Construction has only two employees and two officers, Ms. Larson is one of both. Christine Larson admits that as Treasurer she supervises the financial aspects of Scott Larson Construction's operation. Moreover, as one of only two members of Scott Larson Construction's board of directors, Christine Larson had a duty to supervise the activities of Scott Larson Construction and, if she failed to supervise its infringing conduct, vicarious liability is to be imposed upon her because of her benefit from and control over Scott Larson Construction's conduct. *Peer International*, 887 F. Supp. at 565.

To dispute her obvious and direct financial interest, Ms. Larson argues that "there is no evidence that she 'directly benefited' from the infringing activity." (Defendants' Mem., p. 19.) However, Christine Larson admits that she receives a salary from Scott Larson Homes. (Defendants' Mem., p. 19.) Plaintiff is not required to show a specific profit earned directly from the infringing work in order to demonstrate that Christine Larson had an obvious and direct financial interest in Scott Larson Homes' infringing conduct since "both the legislative history and the case law of the Copyright Act only require the 'direct financial interest' to be tied to the operation as a whole, not exclusively to the act of infringement." *Broadcast Music, Inc. v. Blumonday, Inc.*, 32 U.S.P.Q.2d 1474, 1475 (D.C. Nev. 1994) (citing *Realsongs v. Gulf Broadcasting Corp.*, 824 F. Supp. 89 (M.D. La. 1993)). In fact, the prospect of future revenue is

sufficient to demonstrate a direct financial interest. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001).

Accordingly, Christine Larson's motion to dismiss the derivative liability claims against her should be denied.

**F. The Copyright Act Does Not Preempt Plaintiff's Unfair Competition Claim**

As stated in *Lens Crafters, Inc. v. Vision World, Inc.*, unfair competition claims "describe a general category of torts which courts recognize for the protection of commercial interests." 943 F. Supp. 1481, 1490 (D. Minn. 1996) (internal quotes omitted). Thus, unfair competition is a commercial tort for which no abstract definition exists. *See McCarthy on Trademarks and Unfair Competition*, § 1:8. This commercial tort finds its roots in judicial equity and common law. *Id.* As such, judicial attempts to define unfair competition are based on the notion of fairness. *Id.* at §1.9; *see also Water Gremlin Co. v. Ideal Fishing Float Co.*, 401 F. Supp. 809, 811 (D. Minn. 1975) ("the essence of the law of unfair competition is fair play" and "each case must be decided on its own facts and according to its own merits"). The United States Supreme Court agrees and states that unfair competition occurs when a party acts in a manner that is "contrary to good conscience." *International News Service v. Associated Press*, 248 U.S. 215, 240 (1918). Thus, conduct considered to constitute unfair competition includes false and misleading representations, passing off, and false advertising. *McCarthy on Trademarks and Unfair Competition*, § 1:10; *see also Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1373 (Fed. Cir. 1994).

Defendants argue that Plaintiff's unfair competition claim is based on its copyright infringement claim and is preempted by section 301(a) of the Copyright Act. (Defendants' Mem., p. 20.) However, Plaintiff's unfair competition claim is not preempted by the Copyright

Act because its claim is based upon, *inter alia*, Defendants' false and misleading representations and false advertising associated with its Urban Townhomes product. *See e.g.*, *Zimmerman Group v. Fairmont Foods of Minnesota*, 882 F. Supp. 892, 895 (D. Minn. 1994) (noting that only an unfair competition claim based on acts of copyright infringement is preempted).

For instance, Plaintiff has alleged, *inter alia*, that Defendants have made false and misleading statements, descriptions and representations of fact in interstate commerce in connection with the sale of the Urban Townhomes product. Davenport Aff., Ex. G (Amended Complaint, ¶¶ 61, 69, 103, 111, 145 and 153.) Plaintiff incorporated these allegations in its unfair competition claim. (*Id.*, ¶¶ 76, 118 and 160.) A party's use of a slightly modified product of another and identification of the product as its own constitutes a false and misleading designation of origin and false advertising. *See e.g.*, *Waldman Publishing Corp. v. Landoll, Inc.*, 43 F.3d 775, 780 (2nd Cir. 1994) (citing *Arrow United Industries v. Hugh Richards, Inc.*, 678 F.2d 410 (2nd Cir. 1982)); *Attia v. Society of the New York Hospital*, 201 F.3d 50, 59 (2nd Cir. 1999). Defendants have advertised their infringing Urban Townhomes in interstate commerce and made various representations as to the designs and product. Handler Aff., Ex. D (Scott Larson Depo. Trans., p. 273, lines 6–22). As noted above, conduct considered to constitute unfair competition includes false and misleading representations and designations of origin, and false advertising, which Plaintiff has alleged occurred in this case. Thus, contrary to Defendants' argument, Plaintiff's unfair competition claim is not based on its copyright infringement claim, but rather on Defendants other unlawful conduct.

Accordingly, Defendants' motion to dismiss Plaintiff's unfair competition claim should be denied.

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety.

Dated: June 30, 2003

**WINTHROP & WEINSTINE, P.A.**

By: ______________________

Craig S. Krummen, #259081
David A. Davenport, #285109
3000 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 347-0700
***Attorneys for Plaintiff***

2036713v1