UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Rottlund Company, Inc.,
d/b/a Rottlund Homes,
a Minnesota Corporation

Plaintiff,

vs.

Pinnacle Corporation,
d/b/a Town & County Homes,
an Illinois Corporation, and
Town & County Homes, Inc., a
Minnesota Corporation, Bloodgood Sharp
Buster Architects and Planners of Iowa,
Inc., an Iowa Corporation, and The
Bloodgood Group, Inc.

Defendants.

and

Town & County Homes, Inc., a
Minnesota Corporation,

Third-Party Plaintiff
vs.

Bloodgood Sharp Buster Architects and
Planners of Iowa, Inc., an Iowa
Corporation,

Third-Party Defendant.

No. 01-CV-1980 (DSD/SRN)

**DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS AND PLANNERS OF IOWA, INC. AND THE BLOODGOOD GROUP, INC.'S PROPOSED JURY INSTRUCTIONS**

---

# PRE-TRIAL INSTRUCTIONS

**PROPOSED INSTRUCTION 1**

**NATURE OF THE CASE; BURDEN OF PROOF; DUTY OF THE JURY; CAUTIONARY**

Ladies and gentlemen: I will take a few moments now to give you some initial instructions about this case and about your duties as jurors. At the end of the trial I will give you further instructions. I may also give you instructions during the trial. Unless I specifically tell you otherwise, all such instructions - both those I give you now and those I give you later - are equally binding on you and must be followed.

This is a civil case brought by the Plaintiff, The Rottlund Company, Inc., against the Defendants, Pinnacle Corporation, d/b/a Town & Country Homes, Town & Country Homes, Inc., Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., and The Bloodgood Group, Inc. Rottlund, Pinnacle, and Town & Country are merchant builders and developers---that is, they build houses for sale to the public. Bloodgood is an architectural firm that specializes in designing townhouses and other types of residences for builders and developers to build and sell. Rottlund builds a townhome known as the Villa II. Pinnacle builds a townhome known as the Washington Square Townhome, which was designed in part by Doug Buster, an employee of Bloodgood. Town & Country Homes builds a townhome known as the Homestead Collection which was designed by Larry Moore, an employee of Bloodgood. Town & Country Homes also builds a townhome known as the Chateau Collection which was designed by another architect who is not a party to this lawsuit. Rottlund alleges that the three townhomes built by Pinnacle and Town & Country, that is, the Washington Square Townhome, the Homestead Collection and the Chateau Collection, infringe on Rottlund's copyright in its Villa II townhome. Rottlund also alleges that Pinnacle and Town & Country have engaged in false advertising under the Lanham Act and violated the Minnesota Uniform Deceptive Trade Practice Act in connection with the

sale of these three townhomes. Pinnacle, Town & Country Homes, and Bloodgood deny these allegations, and allege that they independently created the three townhomes. It will be your duty to decide from the evidence whether Rottlund has satisfied its burden of proof on each of its claims.

From the evidence you will decide what the facts are. You are entitled to consider that evidence in the light of your own observations and experiences in the affairs of life. You will then apply those facts to the law which I give you in these and in my other instructions, and in that way reach your verdict. You are the sole judges of the facts; but you must follow the law as stated in my instructions, whether you agree with it or not.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness says, or only part of it, or none of it.

In deciding what testimony to believe, consider the witnesses' intelligence, their opportunity to have seen or heard the things they testify about, their memories, any motives they may have for testifying a certain way, their manner while testifying, whether they said something different at an earlier time, the general reasonableness of their testimony and the extent to which their testimony is consistent with other evidence that you believe.

Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.

Authority: *8th Circuit Manual of Model Civil Jury Instructions,* 1.01 (1999).

## PROPOSED INSTRUCTION 2

## EVIDENCE; LIMITATIONS

I have mentioned the word "evidence." "Evidence" includes the testimony of witnesses; documents and other things received as exhibits; any facts that have been stipulated - that is, formally agreed to by the parties; and any facts that have been judicially noticed - that is facts which I say you must accept as true.

Certain things are not evidence. I will list those things for you now:

1. Statements, arguments, questions and comments by lawyers are not evidence.

2. Exhibits that are identified by a party but not offered or received in evidence are not evidence.

3 . Objections are not evidence. Lawyers have a right and sometimes an obligation to object when they believe something is improper. You should not be influenced by the objection. If I sustain an objection to a question or an exhibit, you must ignore the question or the exhibit and must not try to guess what the information might have been.

4 . Testimony and exhibits that I strike from the record, or tell you to disregard, are not evidence and must not be considered.

5. Anything you see or hear about this case outside the courtroom is not evidence, unless I specifically tell you otherwise during the trial.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose. I will tell you when that occurs, and instruct you on the purposes for which the item can and cannot be used. You should also pay particularly close attention to such an instruction, because it may not be available to you in writing later in the jury room.

Finally, some of you may have heard the terms "direct evidence" and "circumstantial evidence." You are instructed that you should not be concerned with those terms, since the law makes no distinction between the weight to be given to direct and circumstantial evidence.

Authority: *8th Circuit Manual of Model Civil Jury Instructions*, 1.02 (1999).

## PROPOSED INSTRUCTION 3

### RULING ON OBJECTIONS

When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received into evidence. If I sustain the objection, the question cannot be answered and the exhibit cannot be received into evidence.

If I sustain an objection to a question or the admission of an exhibit, you must ignore the question and must not guess what the answer to the question might have been. In addition, you must not consider evidence that I have ordered stricken from the record.

Authority: O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 101.49, Fifth Ed. (2001).

## PROPOSED INSTRUCTION 4

### BENCH CONFERENCES AND RECESSES

During the trial it may be necessary for me to speak with the lawyers out of your hearing, either by having a bench conference here while you are present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence which govern the trial, and to avoid confusion and error. We will, of course, do what we can to keep the number and length of these conferences to a minimum.

Authority: *8th Circuit Manual of Model Civil Jury Instructions*, 1.03 (1999).

**<u>PROPOSED INSTRUCTION 5</u>**

**NO TRANSCRIPT AVAILABLE; NOTE-TAKING**

At the end of the trial you must make your decision based on what you recall of the evidence. You will not have a written transcript to consult. You must pay close attention to the testimony as it is given.

If you wish, however, you may take notes to help you remember what witnesses said. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. And do not let note-taking distract you so that you do not hear other answers by the witness. The Clerk will provide each of you with a pad of paper and a pen or pencil. At each recess, leave them upside down on your chair.

When you leave at night, your notes will be secured and not read by anyone.

Authority: *8th Circuit Manual of Model Civil Jury Instructions*, 1.04 (1999).

**PROPOSED INSTRUCTION 6**

**CONDUCT OF THE JURY**

Finally, to insure fairness, you as jurors must obey the following rules:

*First*, do not talk among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict.

*Second*, do not talk with anyone else about this case, or about anyone involved with it, until the trial has ended and you have been discharged as jurors.

*Third*, when you are outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended and your verdict has been accepted by me. If someone should try to talk to you about the case during the trial, please report it to me.

*Fourth*, during the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case - you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice. If a person from one side of the lawsuit sees you talking to a person from the other side - even if it is simply to pass the time of day - an unwarranted and unnecessary suspicion about your fairness might be aroused. If any lawyer, party or witness does not speak to you when you pass in the hall, ride the elevator or the like, remember it is because they are not supposed to talk or visit with you either.

*Fifth*, do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio, television or Internet reports about the case or about anyone involved with it. In fact, until the trial is over I suggest that you avoid reading any newspapers or news journals at all, and avoid listening to any TV, Internet or radio newscasts at all. I do not know whether there might be any news reports of this case, but if there are you might

inadvertently find yourself reading or listening to something before you could do anything about it. If you want, you can have your spouse or a friend clip out any stories and set them aside to give you after the trial is over. I can assure you, however, that by the time you have heard the evidence in this case, you will know more about the matter than anyone will learn through the news media.

*Sixth*, do not do any research or make any investigation about the case on your own.

*Seventh*, do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.

Authority: *8th Circuit Manual of Model Civil Jury Instructions*, 1.05 (1999).

**PROPOSED INSTRUCTION 7**

**OUTLINE OF TRIAL**

The trial will proceed in the following manner:

First, the Plaintiff's attorney may make an opening statement. Next, the Defendants' attorneys may make opening statements. An opening statement is not evidence but is simply a summary of what the attorney expects the evidence to be.

The Plaintiff will then present evidence and counsel for Defendants may cross-examine. Following the Plaintiff's case, the Defendants may present evidence and Plaintiff's counsel may cross-examine.

There may be some additional presentation of rebuttal evidence by one or more parties.

After presentation of evidence is completed, the attorneys will make their closing arguments to summarize and interpret the evidence for you. As with opening statements, closing arguments are not evidence. Then, I will instruct you further on the law. After that you will retire to deliberate on your verdict.

Authority: *8th Circuit Manual of Model Civil Jury Instructions*, 1.06 (1999) (modified).

**PROPOSED INSTRUCTION 8**

**CHARTS AND SUMMARIES**

Certain charts and summaries may be shown to you in order to help explain facts disclosed by books, records, and other documents that are in evidence in the case. These charts or summaries are not themselves evidence or proof of any facts. If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

In other words, the charts or summaries are used only as a matter of convenience. To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.

Authority: O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, §104.50, Fifth Ed. (2001).

**<u>PROPOSED INSTRUCTION 9</u>**

**CREDIBILITY OF WITNESSES**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, you may consider a witness' intelligence, the opportunity a witness had to see or hear the things testified about, a witness' memory, any motives a witness may have for testifying a certain way, the manner of a witness while testifying, whether a witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things. You need to consider therefore whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail.

Authority: *8th Circuit Manual of Model Civil Jury Instructions*, 3.03 (1999).

**PROPOSED INSTRUCTION 10**

**EXPERT WITNESSES**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – such a person is called an expert witness – is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

Authority: *Modern Federal Jury Instructions,* Fifth Circuit, § 2.19 (1992).

**PROPOSED INSTRUCTION 11**

**COPYRIGHT PROTECTION**

"Copyright" is the name for the protection that the law extends to an author of an original work against the unauthorized appropriation of that work by others. You are probably accustomed to hearing the word "author" used for writers. But under the copyright law, any creator of an original work is referred to as the author. That is the term we use in the copyright law for the creator of an original work. Copyright protection extends only to the expression of the ideas in the author's work, never to the ideas themselves. For example, the idea of a story about a young man and young woman who are love but kept apart by their families could not be protected by copyright law. However, the specific manner in which this general idea is expressed in Romeo and Juliet, or West Side Story, is eligible for copyright protection.

In the context of a work of authorship that is functional in nature, like an architectural plan, one must still distinguish between an idea and the expression of the idea. As a generalization, to the extent architectural plans include generalized motions of where to place functional elements, how to route the flow of traffic, and what methods of construction and principals of engineering to rely on, these are ideas that may be taken and utilized by a successor without violating the copyright of the author or designer. On the other hand, to the extent that the copier appropriates not only the ideas but the author's personal expression of them, infringement may be found. Common elements and generic features are shared by all homes. The Copyright Act does not protect the ideas for juxtaposing these living spaces.

The federal copyright law prohibits the appropriation, or taking, of original and protectible musical, dramatic, literary or other types of works, including architectural works, without the permission of the owner of the copyright in such works, as I shall explain to you.

Authority: O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 160.10, Fifth Ed. (2001) (modified); 17 U.S.C. §§ 106, 501.

Attia v. Society of New York Hospital, 201 F.3d 50 (2d Cir. 1999)

Kootenia Homes, Inc. v. Reliable Homes, Inc., 2002 Copr. L. Dec. P. 28,400, 2002 WL 15594 (D. Minn)

**PROPOSED INSTRUCTION 12**

**COPYRIGHT LAW: POLICY**

There are at least two competing considerations involved in copyright law. On the one hand, the author of a work has the right to reap the benefit of his or her creativity and effort. On the other hand, progress in art and science requires that everyone have the right to develop and create new works using the same ideas and subjects.

The copyright law attempts to strike a balance between these two values, protecting so much of the author's original work as embodies the author's own particular form of expression, but not so much as would prevent others from using the same ideas, themes and subjects in their own forms of expression. For this reason, copyright law assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work. Not all copying is copyright infringement. Incidents, characters or settings which are as a practical matter indispensable or at least standard, in the treatment of a given topic, or elements that are dictated by external factors such as codes, business practices, or marketplace, are not copyrightable. Basic architectural elements are available to all architects and builders and cannot be considered when determining if two works are substantially similar.

Authority: O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 160.10, Fifth Ed. (2001) (modified); *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 349-350 (1991). Atari, Inc. v. North Am. Philips Consumer Elecs. Corp., 672 F2d 607, 616 (7th Cir. 1982); Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc., 220 F3d 376, 401 (5th Cir. 2000).

**PROPOSED INSTRUCTION 13**

**COPYRIGHT INFRINGEMENT: GENERAL REQUIREMENTS**

Not all copying is copyright infringement. To establish infringement, two elements must be proven: (1) ownership of the valid copyright; and (2) copying of constituent elements of the work that are original.

To prove that Pinnacle, Town & Country and Bloodgood infringed Rottlund's copyright, Rottlund must show that they copied from Rottlund's copyrighted work, that there are substantial similarities between their work and the protectible elements of Plaintiff's work, and that the Defendants' work was not independently created.

Rottlund has not claimed infringement of any single element of its Villa II, rather Rottlund has claimed infringement of only the selection, combination and arrangement of elements.

Therefore, in order to prevail on its claim of copyright infringement, Rottlund must prove by the greatest weight of the evidence:

(a) that the Defendants copied the precise selection, combination, and arrangement of features found in the Villa II townhome; and

(b) that such copying amounts to an improper appropriation, or improper taking, by demonstrating that substantial similarity of protectible material exists between the Villa II and the Homestead Collection, Washington Square Townhome, or Chateau Collection.

I will explain each of these key elements to you. If the Plaintiff fails to prove any one of these elements by a preponderance of the credible evidence, you must find for the defendants.

**Authority:** O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 160.20, Fifth Ed. (2001) (modified); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Instruction No. 17.3.1 (1997) ("Ninth Circuit Instructions") (cited in Federal Jury Practice and Instructions § 160.20) Feist Publications, Inc. vs. Rural Telephone Service Company, 499 US 340, 361, 111 S.Ct. 1282, 1298 (1991)

**PROPOSED INSTRUCTION 14**

**COPYRIGHT INFRINGMENT: STANDARD FEATURES**

In addition to establishing that Rottlund is the copyright owner of the Villa II, Rottlund must also prove that Pinnacle, Town & Country and Bloodgood infringed Plaintiff's rights in that work. In order to establish infringement, Rottlund must prove that the Homestead Collection, Washington Square Townhomes or the Chateau Collection was copied or taken from Rottlund's work. No matter how similar the two works are, Rottlund may not recover against Pinnacle, Town & Country or Bloodgood unless the similarity between these works is the result of the copying or taking of Rottlund's work. Thus, the Defendants' townhomes could be identical to the Villa II, but if the Defendants' townhomes were not copied from the Villa II, there is no infringement.

Furthermore, there is no liability unless it is the original aspects of Rottlund's work that are copied or taken. If Pinnacle, Town & Country or Bloodgood copy or take only those portions of the Villa II which were not original to Rottlund, that is, portions which Rottlund had in turn copied or taken from somebody else or which existed elsewhere in the marketplace, then Pinnacle, Town & Country and Bloodgood are not liable for copyright infringement. Pinnacle, Town & Country and Bloodgood are liable only if they copy or take aspects of the Villa II that were original with Rottlund. Therefore, if you find that the selection, combination and arrangement of the elements of the Villa II townhome are not original to Rottlund, or existed elsewhere in the marketplace, then you must conclude that Pinnacle, Town & Country and Bloodgood did not infringe on Rottlund's copyright. Moreover, if you find that the similarities, if any, between the Defendants' townhomes and the Villa II townhome relate to those unprotected elements, then you must also find that Defendants are not liable for copyright infringement.

Authority: O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 160.26, Fifth Ed. (2001) (modified); *Acuff-Rose Music, Inc. v. Fosters, Inc.*, 988 F.Supp 289 (S.D.N.Y. 1997), *aff'd*, 155 F.3d 140 (2d Cir. 1998); *Alberto-Culver Co. v. Andrea Duman, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972); *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989).

**PROPOSED INSTRUCTION 15**

**COPYRIGHT INFRINGEMENT: PROOF**

To prove substantial similarity, Rottlund must prove that the expression of the ideas in Plaintiff's Villa II townhome is substantially similar to the expression of the ideas in the Homestead Collection, Washington Square Townhomes and the Chateau Collection. Rottlund cannot win unless Rottlund can prove that the Villa II was infringed by Pinnacle, Town & Country and Bloodgood. Infringement can be proved by direct or circumstantial evidence. An example of direct evidence would be an admission by an employee of one of the Defendants that the work was copied, or the testimony of someone who saw the work being copied. But typically, proof of that nature is not available in copyright cases. Circumstantial evidence is often resorted to in copyright cases, in an effort to show that infringement has occurred. Circumstantial evidence means the proof of facts that would support a logical inference that copying must have taken place. Among the significant circumstances for you to consider are these issues:

First: Are there similarities in the protectable elements between the Homestead Collection, Washington Square Townhomes or Chateau Collection and the Villa II?

Second: If there are similarities, are they of such a nature that they probably could not have occurred without copying, or are there other apparent explanations for the similarities?

On the subject of similarity, if you find similarities between the works, you must ask yourselves whether the similarities are or are not of the kind that would be likely to occur without copying. Similarity can result from copying, but there are other possible explanations for similarity.

On the other hand, certain similarities may be very convincing proof of copying. The more original, the more unusual or imaginative or arbitrary is the material that you find to be

similar in both works, the less likely that similarity is a coincidence. The more extensive the similarity and the more it extends to small arbitrary details, the more likely as a matter of common sense that it is due to copying, rather than to coincidence, or the suggestiveness of the subject matter.

These are not the only questions that might arise on this issue. You may consider any relevant circumstance, that is, any circumstances from which you may draw an inference either that copying has taken place or that copying has not taken place.

If, after considering all the proof in the case, you found yourselves unable to draw a logical inference one way or the other, then Rottlund has failed in its burden of proof on this issue.

Authority: O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 160.27, Fifth Ed. (2001) (modified).

**PROPOSED INSTRUCTION 16**

**COPYRIGHT: INDEPENDENT CREATION**

If you find by the greatest weight of the evidence that there are substantial similarities between the Homestead Collection, Washington Square Townhome or Chateau Collection and original elements of the Villa II townhome, and if you find by the greatest weight of the evidence that these substantial similarities are the result of copying, you may, but are not required to, infer that Pinnacle, Town & Country or Bloodgood actually copied portions of the Villa II. Against this possible inference, and before reaching your conclusion on the issue of actual copying, you must consider whether Defendants created the townhomes independently of Villa II, that is to say, without copying the Villa II. If Rottlund has demonstrated similarities probative of copying, Pinnacle, Town & Country and Bloodgood may rebut any inference of copying by proving, by the greatest weight of the evidence, that their townhomes were created independently of the Villa II townhome.

With respect to the defense of independent creation, let me remind you that the copyright law only protects against copying. Therefore, if you determine that Pinnacle, Town & Country and Bloodgood independently created their townhomes, no matter how similar they are to the Villa II townhome, you must find for the Defendants. In considering whether Pinnacle, Town & Country or Bloodgood independently created their townhomes, you may consider any relevant circumstance, including testimony regarding the creation of the townhomes, expert testimony, common conventions and styles, whether similar features exist in other townhomes, and Pinnacle, Town & Country and Bloodgood's other works.

Authority: *Proctor & Gamble Co. v. Colgate-Palmolive Co.*, 199 F.3d 74, 77 (2d Cir. 1999); *Grubb v. KMS Patriots*, 88 F.3d 1, 6 (1st Cir. 1996); *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936); *Novak v. NBC*, 752 F. Supp. 164, 168 (S.D.N.Y. 1990); *Siskind v. Newton-John*, 1987 WL 11701, *5 (S.D.N.Y. May 22, 1987).

**PROPOSED INSTRUCTION 17**

**COPYRIGHT: INNOCENT OR UNCONSCIOUS INFRINGEMENT**

If you find that Pinnacle, Town & Country or Bloodgood infringed on Rottlund's copyrights, you may find that the defendants infringement was innocent or unknowing by finding that any copying was neither conscious nor deliberate. One form of innocent infringement, whereby a defendant copies a portion of a work without any knowledge or intent of infringement, is also called subconscious copying. If you find that Pinnacle, Town & Country or Bloodgood innocently copied any protectible portion of the Villa II – whether by subconscious copying or otherwise – then you may deduct overhead costs and other fixed costs from Defendants' gross revenues when calculating profits.

Authority: *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000); *Bright Tunes Music Corp. v. Harrisongs Music, Ltd.*, 420 F. Supp. 177 (S.D.N.Y. 1976); 4 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright*, § 14.03[B] at 14-34-36 (1998).

**<u>PROPOSED INSTRUCTION 18</u>**

**COPYRIGHT: WILLFUL INFRINGEMENT**

If you conclude that Pinnacle, Town & Country or Bloodgood infringed on Rottlund's copyrights, you will be asked to determine whether each Defendant acted willfully in that infringement. You must make this determination of willful conduct separately for each Defendant. You may find that a Defendant willfully infringed on Rottlund's copyrights only if you conclude that the particular Defendant knew that it was infringing on Rottlund's copyrights at the time of the infringement. If you find that the particular Defendant willfully infringed on Rottlund's copyrights, then that particular Defendant is not entitled to deduct its overhead expenses when calculating its profits.

Authority: M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 14.04[B][3]; *Original Appalachian Artworks v. J.F. Reichert, Inc.*, 658 F.Supp. 458, 463 (E.D. Pa. 1987); *RSO Records, Inc. v. Peri*, 596 F.Supp. 849, 859 (S.D.N.Y. 1984).

# TRIAL PROCESS INSTRUCTIONS

**PROPOSED INSTRUCTION 19**

**DUTIES OF JURY: RECESSES**

We are about to take a recess and I remind you of the instruction I gave you earlier. During this recess or any other recess, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone tries to talk to you about the case, please let me know about it immediately. Do not read, watch or listen to any news reports of the trial. Finally, keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

I may not repeat these things to you before every recess, but keep them in mind throughout the trial.

Authority: *8th Circuit Manual of Model Civil Jury Instructions*, 2.01 (1999).

**PROPOSED INSTRUCTION 20**

**DEPOSITION TESTIMONY**

Certain testimony will now be presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be read to you today. This deposition testimony is entitled to the same consideration, and should be weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

Authority: *Modern Federal Jury Instructions*, Fifth Circuit, § 2.23 (1992)

**PROPOSED INSTRUCTION 21**

**VIEW OF LOCATION**

I have concluded that it would be helpful for you to view the townhomes that are at issue in this lawsuit. You will go with the marshals and we will reconvene later this afternoon. While you are viewing the townhomes please do not ask any questions of the lawyers or of the people who may be there. If you have questions, direct them to me. Do not discuss the case with anyone, even the other jurors, while going to or from the locations or at the locations themselves.

Authority: O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 102.26, Fifth Ed. (2001) (modified).

# **CLOSING INSTRUCTIONS**

**PROPOSED INSTRUCTION 22**

**EXPLANATORY**

Members of the jury, the instructions I gave at the beginning of the trial and during the trial remain in effect. I now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now. You must not single out some instructions and ignore others, because all are important. This is true even though some of those I gave you at the beginning of trial are not repeated here.

The instructions I am about to give you now, as well as those I gave you earlier, are in writing and will be available to you in the jury room. I emphasize, however, that this does not mean they are more important than my earlier instructions. Again, all instructions, whenever given and whether in writing or not, must be followed.

Authority: *8th Circuit Manual of Model Civil Jury Instructions*, 3.01 (1999).

**PROPOSED INSTRUCTION 23**

**GENERAL INSTRUCTIONS FOR CHARGE**

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You have heard the closing arguments of the attorneys. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and the parties' contentions.

Answer each question on the special verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions on the special verdict form from a preponderance of the evidence. This means the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence means that the evidence persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose. You may consider such evidence only for the specific limited purposes for which it was admitted.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence – such as testimony of an eyewitness. The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction

between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court had admitted into evidence. If you recess during your deliberations, follow all the instructions that the Court has given you concerning your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in the special verdict form, indicating your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Authority: *Modern Federal Jury Instructions*, Fifth Circuit, § 3.1 (1992).

**PROPOSED INSTRUCTION 24**

**COPYRIGHT DAMAGES: DEFENDANTS' PROFITS**

If you find by a preponderance of the evidence that there are substantial similarities between the Homestead Collection, Washington Square Townhomes or the Chateau Collection and original elements of the Villa II townhome, and if you find that the Defendants' townhomes were not independently created, you may find for Rottlund. You must then decide whether Rottlund is entitled to recover any damages. The law allows a successful plaintiff to recover the actual damages it suffered as a result of the infringement, and also any profits of the defendants attributable to the infringement that you have not already taken into account or properly covered in figuring plaintiff's actual damages.

Regarding the profits of each Defendant, the Plaintiff has the burden of proving each Defendant's gross revenue attributable to the infringement by a preponderance of the evidence. Each Defendant has the burden of proving the expenses to be deducted from the gross revenue, and the portion of the profits, if any, attributable to factors other than the copyrighted work by a preponderance of the evidence. Deductible expenses may include wages paid to employees, employee benefits, operating expenses, production costs – together with other deductions that the Court may allow – incurred in producing the gross revenue. In order to recover profits from any Defendant, Rottlund must first establish with credible evidence how much of each Defendant's gross revenue is attributable to the allegedly infringing use of the Villa II townhome. If Rottlund can satisfy this burden, the burden then shifts to each Defendant to prove its particular expenses and the portion of its revenues attributable to factors other than the allegedly infringing work. If Rottlund cannot satisfy its burden, then Rottlund's claim for Defendants' profits has failed, and you should not award Rottlund any of Pinnacle, Town & Country or Bloodgood's profits.

Authority: O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 160.90 (2001) (modified); Ninth Circuit instructions cited in Federal Practice and Instructions §160.27 (modified); 4 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright*, § 14.03(A) at 14-29 (1998); *On Davis v. Gap*, 246 F.3d 152, 160 (2d Cir. 2001); *University of Colorado Foundation v. American Cyanamid Co.*, 974 F. Supp. 1339 (D. Ct. Colorado 1997), *aff'd*, 196 F.3d 1366 (Fed. Cir. 1999); *Rainey v. Wayne State University*, 26 F. Supp. 2d 963, 971 (E.D. Mich. 1998); *Joseph J. Legat Architects*, *P.C.*, 1991 U.S. Dist. LEXIS 3358, *25-26 (N.D. Ill. Mar. 20, 1991).

**PROPOSED INSTRUCTION 25**

**COPYRIGHT DAMAGES: APPORTIONMENT**

The Plaintiff is only entitled to that portion of Pinnacle, Town & Country or Bloodgood's profits, if any, that is due to the infringement. If the townhomes were profitable for reasons that had nothing to do with the alleged infringement, then Rottlund is not entitled to recover the Defendants' profits, because those profits did not result from the infringement. If you determine that Pinnacle, Town & Country or Bloodgood's profits were due, in part, to the alleged infringement, you must the determine to what extent, those profits were attributable to the infringement.

Authority: O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 160.90, Fifth Ed. (2001) (modified); 4 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright*, § 14.03(A) at 14-29 (1998); *On Davis v. Gap*, 246 F.3d 152, 160 (2d Cir. 2001); *University of Colorado Foundation v. American Cyanamid Co*., 974 F. Supp. 1339 (D. Ct. Colorado 1997), *aff'd*, 196 F.3d 1366 (Fed. Cir. 1999); *Rainey v. Wayne State University*, 26 F. Supp. 2d 963, 971 (E.D. Mich. 1998); *Joseph J. Legat Architects, P.C.*, 1991 U.S. Dist. LEXIS 3358, *25-26 (N.D. Ill. Mar. 20, 1991).

**PROPOSED INSTRUCTION 26**

**COPYRIGHT DAMAGES: ACTUAL DAMAGES—LOST PROFITS**

If you find that Pinnacle, Town & Country or Bloodgood infringed Rottlund's copyrighted work, then Rottlund may recover whatever actual damages it suffered as a result of the infringement. If you determine that either the Homestead Collection or Chateau Collection townhomes infringe on Villa II, "actual damages" means the amount of profit Rottlund proves by a preponderance of the evidence it would have earned on the homes it would have built and sold but for the infringement. If you find that the greatest weight of the evidence suggests that Rottlund would have built and sold a certain number of homes if there was no infringement, then the profit that Rottlund would have earned on those homes represents Rottlund's actual damages. If you are not convinced that Rottlund would have built and sold additional homes if there was not infringement, then Rottlund has not met its burden of proof, and is not entitled to recover any actual damages.

Authority: M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 14.02[A][1]; *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1170 (1st Cir. 1994); *Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274, 277 (6th Cir. 1988); *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F.Supp. 1560 (M.D.Fla. 1995); *Intown Enterprises, Inc. v. Barnes*, 721 F.Supp. 1263, 1267 (N.D.Ga. 1989).

**PROPOSED INSTRUCTION 27**

**COPYRIGHT: ACTUAL DAMAGES---LOST LICENSING FEE**

I have just explained to you the measure of actual damages which you should apply if you conclude that the Homestead Collection or Chateau Collection townhomes infringe on Villa II. If, however, you find that the Washington Square townhome infringes on Villa II, the measure of damages is different. Rottlund builds and sells homes in the Minneapolis area, and the Homestead Collection and Chateau Collection townhomes were also built and sold here in the Minneapolis area. For that reason, there is some possibility that sales of Homestead Collection or Chateau Collection townhomes had an impact on Rottlund sales of its own homes, and it will be Rottlund's burden to prove to you that it did have capacity to build and would have sold additional Villa IIs had there been no infringement. The Washington Square townhome, on the other hand, was built only in Illinois, and Rottlund does not build any homes in Illinois. Thus, the parties have all agreed that the sale of Washington Square townhomes could not have any impact on Rottlund sales at all. If you conclude that the Washington Square townhome infringes on Villa II, Rottlund's actual damages represent the licensing fee that should have been paid to Rottlund for use of its copyrighted work. In other words, if you determine that the Washington Square townhome infringes on Villa II, you must determine what Rottlund would reasonably have charged, and what Pinnacle would reasonably have agreed to pay, in exchange for a license that enabled Pinnacle to use the Villa II designs. In making this determination, you must assume that the Rottlund is willing to grant a license to use its copyrighted work, and that Pinnacle was interested in purchasing such a license. When considering what Rottlund would be willing to accept, you should consider things like the value of the copyrighted work to Rottlund,

and whether Rottlund has granted similar licenses in the past. When considering what Pinnacle would be willing to pay, you should considering things like Pinnacle's desire to make a profit.

In fact, the very definition of a reasonable royalty assumes that, after payment, the infringer will be left with a profit.

Authority: *Georgia-Pacific Corp. v. United States Plywood Corp.*, 328 F.Supp. 1116, 1120 (S.D.N.Y. 1970), *aff'd in rel. part*, 446 F.2d 295 (2d. Cir. 1971), *cert. denied*, 404 U.S. 870 (1971).

**PROPOSED INSTRUCTION 28**

**COPYRIGHT DAMAGES: DAMAGES CANNOT BE SPECULATIVE**

As I explained before, Rottlund may recover only those profits that are attributable to the infringement. In addition, neither a claim for profits nor a claim for actual damages can be based upon speculation. In order to recover the Defendants' profits, Rottlund must show some causal link between the infringement and Defendants' gross revenue. If Rottlund cannot demonstrate with credible evidence a causal connection between the alleged infringement and Defendants' gross revenues, then you may not award Rottlund any of Pinnacle, Town & Country or Bloodgood's profits. Likewise, you may not award Rottlund any actual damages if Rottlund cannot demonstrate with credible evidence a causal connection between the alleged infringement and the alleged lost sales. Similarly, you may not award Rottlund any actual damages if such damages are based on speculation or if there is no rational basis for determining them.

Authority: 17 U.S.C. § 504(b); *On Davis v. Gap*, 246 F.3d 152, 160 (2d Cir. 2001); *Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*, 978 F2d 430, 432 (8th Cir. 1992); *Eiben v. Epstein & Sons, Int'l, Inc.*, 57 F. Supp. 2d 607, 612-613 (N.D. Ill. 1999); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, No. CV-71-2622, 1983 U.S. Dist. LEXIS 20074, at *4 n.4 (C.D. Cal. Jan 12, 1983).

**PROPOSED INSTRUCTION 29**

**JUDGE'S OPINION**

Neither in these instructions nor in any ruling, action or remark that I have made during the course of this trial have I intended to give any opinion or suggestion as to what your verdict should be.

During this trial I have occasionally asked questions of witnesses. Do not assume that because I asked questions I hold any opinion on the matters to which my questions related.

Authority: *8th Circuit Manual of Model Civil Jury Instructions,* 3.02 (1999).

**PROPOSED INSTRUCTION 30**

**BURDEN OF PROOF**

In these instructions you are told that your verdict depends on whether you find certain facts have been proved. The burden of proving a fact is upon the party whose claim or defense depends upon that fact. The party who has the burden of proving a fact must prove it by the greatest weight of the evidence. To prove something by the greatest weight of the evidence is to prove that it is more likely true than not true. It is determined by considering all of the evidence and deciding which evidence is more believable. If, on any issue in the case, the evidence is equally balanced, you cannot find that that issue has been proved.

The greatest weight of the evidence is not necessarily determined by the greater number of witnesses or exhibits a party has presented.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard which applies in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

Authority: *8th Circuit Manual of Model Civil Jury Instructions*, 3.04 (1999) (modified).

**PROPOSED INSTRUCTION 31**

**ELECTION OF FOREPERSON; DUTY TO DELIBERATE; COMMUNICATIONS WITH COURT; CAUTIONARY; UNANIMOUS VERDICT; VERDICT FORM**

In conducting your deliberations and returning your verdict, there are certain rules you must follow.

*First*, when you go to the jury room, you must select one of your members as your foreperson. That person will preside over your discussions and speak for you here in court.

*Second*, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement if you can do so without violence to your individual judgment, because a verdict must be unanimous. Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors. Do not be afraid to change your opinions if your discussions with your fellow jurors persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are not partisans. You are judges - judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

*Third*, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone - including me - how your votes stand numerically.

*Fourth*, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be - that is entirely for you to decide.

*Finally*, the special verdict form is simply the written notice of the decision that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdict, your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom. If more than one form was furnished, you will bring the unused forms in with you.

Authority: *8th Circuit Manual of Model Civil Jury Instructions*, 3.06 (1999) (modified).

## PROPOSED INSTRUCTION 32

### CORPORATE RESPONSIBILITY: EXPRESS, APPARENT, IMPLIED AUTHORITY DEFINED

A corporation is a creation of state law and can act only through its agents – that is, its employees, officers or authorized representatives. In order to find that the act of an agent was binding on the corporation, you must find that the agent had authority to act in the manner in which he or she is alleged to have acted. This authority may be express, apparent or inherent.

Therefore, if you find that the agent acted with express, apparent, or inherent authority to bind the corporation, you may find that the corporation was responsible for his or her conduct.

Authority: Sand, Siffert, Reiss & Batterman, *Modern Federal Jury Instructions*, § 72.01 (1998) (modified).

**PROPOSED INSTRUCTION 33**

**IMPEACHMENT – INCONSISTENT STATEMENTS OR CONDUCT**

A witness may be discredited or impeached by contradictory evidence, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves. If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars and you may reject all the testimony of that witness, or you may give it such credibility as you think it deserves.

An act or omission is "knowingly" done, if voluntarily and intentionally, and not because of mistake or accident or other innocent reason. Thus, you need to consider whether a contradiction is an innocent mis-recollection or lapse of memory and that may depend on whether it has to do with an important fact or only a small detail.

Authority: Devitt, Blackmar & Wolff, *Federal Jury Practice and Instructions*, §73.04 (1987) (modified). *8th Cir. Manual of Model Civil Jury Instructions*, 3.03 (1999) (modified).

**PROPOSED INSTRUCTION 34**

**DAMAGES; MULTIPLE CLAIMS; MULTIPLE DEFENDANTS**

I have two more cautionary instructions before I define the types of damages you may award, if you find that Rottlund has proved liability according to the standards I have enumerated.

First, you should not award compensatory damages more than once for the same injury. For example, if a plaintiff were to prevail on two claims and establish a one dollar injury, you could not award it one dollar compensatory damages on each claim – it is only entitled to be made whole again, not to recover more than it lost. Of course, if different injuries are attributed to the separate claims, then you must compensate it fully for all of the injuries.

Second, you must be careful to impose any damages that you may award on a claim solely upon the Defendant or Defendants who you find to be liable on that claim. Although there are four Defendants in this case, it does not follow that if one is liable, all or any one of the others are liable as well. Each Defendant is entitled to fair, separate and individual consideration of the case without regard to your decision as to the other Defendants. If you find that only one Defendant is responsible for a particular injury, then you must impose damages for that injury only upon that Defendant.

Authority: Sand, Siffert, Reiss & Batterman, *Modern Federal Jury Instructions*, § 77.01, (1998) (modified).

**<u>PROPOSED INSTRUCTION 35</u>**

**DUTY TO DELIBERATE/UNANIMOUS VERDICT**

You will now return to decide the case. In order to prevail, Rottlund must sustain its burden of proof as I have explained to you with respect to each element of the complaint. If you find that Rottlund has succeeded, you should return a verdict in its favor on that claim. If you find that Rottlund failed to sustain its burden on any element of his claim, you should return a verdict against it. Similarly, if you find that the Defendants have failed to sustain their burden with respect to any element of their counterclaim, you must return a verdict against the Defendants on that counterclaim.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when you become convinced that it is erroneous. Your verdict must be unanimous, but you must not surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for any party, and adopt that conclusion which, in your good conscience, appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Authority: Sand, Siffert, Reiss & Batterman, *Modern Federal Jury Instructions*, § 78.01 (1998) (modified).

**PROPOSED INSTRUCTION 36**

**SPECIAL VERDICT**

I have prepared a special verdict form for you to use in recording your decision. The special verdict form is made up of questions concerning the issues in this case. These questions are to be answered "yes" or "no." or in such format that is requested. Your answers must be unanimous and must reflect the conscientious judgment of each juror. You should answer every question except where the verdict form indicates otherwise.

Authority: Sand, Siffert, Reiss & Batterman, *Modern Federal Jury Instructions*, § 78.01 (1998) (modified).

**PROPOSED INSTRUCTION 37**

**DEADLOCK CHARGE: REACHING AGREEMENT**

This case is important for the Plaintiff and for the Defendants. All parties, as well as the Court, have expended a great deal of time, effort and resources in seeking a resolution of this dispute. It is desirable if a verdict can be reached, but your verdict must represent the conscientious judgment of each juror.

While you may have honest differences of opinion with your fellow jurors during the deliberations, each of you should seriously consider the arguments and opinions of the other jurors. Do not hesitate to change your opinion if, after discussion of the issues and consideration of the facts and evidence in this case, you are persuaded that your initial position is incorrect. However, I emphasize that no juror should vote for a verdict unless it represents his or her conscientious judgment.

Authority: Sand, Siffert, Reiss & Batterman, *Modern Federal Jury Instructions*, § 78.01 (1998) (modified).

SNP/djs#721264v1