UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Rottlund Company, Inc.,
d/b/a Rottlund Homes,
a Minnesota Corporation

Plaintiff,

vs.

Pinnacle Corporation,
d/b/a Town & County Homes,
an Illinois Corporation, and
Town & County Homes, Inc., a
Minnesota Corporation, Bloodgood Sharp
Buster Architects and Planners of Iowa,
Inc., an Iowa Corporation, and The
Bloodgood Group, Inc.

Defendants.

and

Town & County Homes, Inc., a
Minnesota Corporation,

Third-Party Plaintiff
vs.

Bloodgood Sharp Buster Architects and
Planners of Iowa, Inc., an Iowa
Corporation,

Third-Party Defendant.

No. 01-CV-1980 (DSD/SRN)

**DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS AND PLANNERS OF IOWA, INC. AND THE BLOODGOOD GROUP, INC.'S PROPOSED SPECIAL VERDICT FORM**

---

**HOMESTEAD COLLECTION**

1. Did Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. ("BSB") and Town & Country Homes, Inc. ("TCM") independently create the Homestead Collection town home designs?

Yes_________ No_________

**If your answer for question 1 was "Yes," go to question 34 and do not answer questions 2-33.**

**If your answer to question 1 was "No," then answer this question:**

***Technical Drawings***

2. Excluding standard features and standard arrangements of standard features, did Rottlund prove by the greatest weight of the evidence that the technical drawings for the Homestead Collection townhomes are substantially similar to the technical drawings for the Villa II?

Yes_________ No__________

**If your answer to question 2 was "No," go to question 10 and do not answer questions 3-9.**

**If your answer to question 2 was "Yes," please answer this question:**

3. Did TCM knowingly and willfully infringe on the Villa II technical drawings?

Yes_________ No__________

4. Did BSB knowingly and willfully infringe on the Villa II technical drawings?

Yes_________ No__________

5. Did The Bloodgood Group, Inc. ("Bloodgood") knowingly and willfully infringe on the Villa II technical drawings?

Yes_________ No__________

6. Did TCM induce, cause, or materially contribute to the infringing conduct of BSB?

Yes_________ No__________

7. Did TCM induce, cause, or materially contribute to the infringing conduct of Bloodgood?

Yes_________ No__________

8. Did BSB induce, cause, or materially contribute to the infringing conduct of TCM?

Yes_________ No__________

9. Did Bloodgood induce, cause, or materially contribute to the infringing conduct of TCM?

Yes_________ No__________

***Architectural Works***

10. Excluding standard features and standard arrangements of standard features, did Rottlund prove by the greatest weight of the evidence that the Homestead Collection townhome buildings are substantially similar to the Villa II townhome buildings?

Yes_________ No__________

**If your answer to question 10 was "No," and your answer to question 2 was "No," go to question 34 and do not answer questions 11-33.**

**If your answer to question 10 was "No," go to question 18 and do not answer questions 11-17.**

**If your answer to question 10 was "Yes," please answer this question:**

11. Did TCM knowingly and willfully infringe on the Villa II townhome buildings?

Yes_________ No__________

12. Did BSB knowingly and willfully infringe on the Villa II townhome buildings?

Yes_________ No__________

13. Did Bloodgood knowingly and willfully infringe on the Villa II townhome buildings?

Yes_________ No__________

14. Did TCM induce, cause, or materially contribute to the infringing conduct of BSB?

Yes_________ No__________

15. Did TCM induce, cause, or materially contribute to the infringing conduct of Bloodgood?

Yes_________ No__________

16. Did BSB induce, cause, or materially contribute to the infringing conduct of TCM?

Yes_________ No__________

17. Did Bloodgood induce, cause, or materially contribute to the infringing conduct of TCM?

Yes_________ No__________

**If your answer to question 2 was "No and your answer to question 10 was "No", then do not answer questions 18 – 33. Go directly to question 34.**

***Actual Damages***

18. Did Plaintiff prove by the greatest weight of the evidence that it lost any Villa II sales as a proximate result of the Defendants' infringement?

Yes_________ No__________

**If you answered "No" to question 18, go to question 22 and do not answer questions 19-21.**

**If you answered "Yes" to question 18, please answer this question:**

19. How many dollars in gross sales do you find from the greatest weight of the evidence that Plaintiff lost as a result of the Defendants' infringement?

$________________

20. What do you find from the greatest weight of the evidence that Plaintiff's profits would have been on the gross sales reflected in your answer to question 19?

$________________

21. What percentage of Plaintiff's lost sales do you find from the greatest weight of the evidence to have been caused by the infringement of each of the parties?

| | |
|---|---|
| TCM | _______% |
| BSB | _______% |
| Bloodgood | _______% |

The total of the percentages given in your answer must equal 100%.

***Defendants' Profits***

22. How many dollars in gross sales do you find from the greatest weight of the evidence that TCM received from sales of Homestead Collection townhomes?

$___________

23. What do you find from the greatest weight of the evidence that TCM's profits were on the gross sales of Homestead Collection townhomes reflected in your answer to question 22?

$___________

24. What percentage of TCM's profits do you find from the greatest weight of the evidence is a result of the infringement?

___________%

25. How much money do you find from the greatest weight of the evidence that BSB received from TCM for its designs for the Homestead Collection townhomes?

$___________

26. What do you find from the greatest weight of the evidence that BSB's profits were on the money reflected in your answer to question 25?

$___________

27. What percentage of BSB's profits do you find from the greatest weight of the evidence is a result of the infringement?

___________%

28. How much money do you find from the greatest weight of the evidence that Bloodgood received for its work on the Homestead Collection townhomes?

$___________

29. What do you find from the greatest weight of the evidence that Bloodgood's profits were on the money reflected in your answer to question 28?

$___________

30. What percentage of Bloodgood's profits do you find from the greatest weight of the evidence is a result of the infringement?

___________%

***Injunction***

31. Is it likely that Town & Country Homes will continue to infringe Plaintiff's copyrights unless ordered to stop doing so?

Yes_________ No__________

32. Is it likely that BSB will continue to infringe Plaintiff's copyrights unless ordered to stop doing so?

Yes_________ No__________

33. Is it likely that Bloodgood will continue to infringe Plaintiff's copyrights unless ordered to stop doing so?

Yes_________ No__________

## WASHINGTON SQUARE

34. Did Defendants The Bloodgood Group, Inc. ("Bloodgood") and Pinnacle Corporation independently create the Washington Square townhome?

Yes_________ No__________

***Technical Drawings***

**If your answer to question 34 was "Yes," go to question 55 and do not answer questions 35-54.**

**If your answer to question 34 was "No," please answer this question:**

35. Excluding standard features and standard arrangements of standard features, did Rottlund prove by the greatest weight of the evidence that the Washington Square technical drawings are substantially similar to the Villa II technical drawings?

Yes_________ No__________

**If your answer to question 35 was "No," please go to question 40 and do not answer questions 36-39.**

**If your answer to question 35 was "Yes," please answer this question:**

36. Did Pinnacle knowingly and willfully infringe on the Villa II technical drawings?

Yes_________ No__________

37. Did Bloodgood knowingly and willfully infringe on the Villa II technical drawings?

Yes_________ No__________

38. Did Pinnacle induce, cause, or materially contribute to the infringing conduct of Bloodgood?

Yes_________ No__________

39. Did Bloodgood induce, cause, or materially contribute to the infringing conduct of Pinnacle?

Yes_________ No__________

***Architectural Works***

40. Excluding standard features and standard arrangements of standard features, did Rottlund prove by the greatest weight of the evidence that the Washington Square townhome building is substantially similar to the Villa II townhome building?

Yes_________ No__________

**If your answer to question 35 was "No," and your answer to question 40 was "No," go to question 55 and do not answer questions 41-54.**

**If your answer to question 40 was "No," go to question 43 and do not answer questions 41 or 42.**
**If your answer to question 40 was "Yes," please answer this question:**

41. Did Pinnacle knowingly and willfully infringe on the Villa II townhome building?

Yes_________ No__________

42. Did Bloodgood knowingly and willfully infringe on the Villa II townhome building?

Yes_________ No__________

43. Did Pinnacle induce, cause, or materially contribute to the infringing conduct of Bloodgood?

Yes_________ No__________

44. Did Bloodgood induce, cause, or materially contribute to the infringing conduct of Pinnacle?

Yes_________ No__________

**If your answer to question 35 was "No" and your answer to question 40 was "No", then do not answer questions 45 – 54. Go directly to question 55.**

***Actual Damages***

45. If Rottlund and Pinnacle Corporation had negotiated a license which would have allowed Pinnacle Corporation to use the Villa II designs as a basis for Pinnacle's townhomes in Chicago, what sum of money would Pinnacle

Corporation reasonably be willing to pay, and Rottlund reasonably be willing to accept, for such a license?

$___________

46. What percentage of Rottlund's lost licensing fee do you find from the greatest weight of the evidence to have been caused by the infringement of each of the parties?

Pinnacle _______%
Bloodgood _______%

The total of the percentages given in your answer must equal 100%.

***Defendants' Profits***

47. How many dollars in gross sales do you find from the greatest weight of the evidence that Pinnacle Corporation received from sales of Washington Square townhomes?

$___________

48. What do you find from the greatest weight of the evidence that Pinnacle Corporation's profits were on the sales of the Washington Square townhomes reflected in your answer to question 47?

$___________

49. What percentage of Pinnacle Corporation's profits from the sales of Washington Square townhomes do you find from the greatest weight of the evidence is a result of the infringement?

___________%

50. How much money do you find from the greatest weight of the evidence that Bloodgood received from its work on the Washington Square townhomes?

$___________

51. What do you find from the greatest weight of the evidence that Bloodgood's profits were on the money reflected in your answer to question 50?

$___________

52. What percentage of Bloodgood's profits do you find from the greatest weight of the evidence is a result of the infringement?

___________%

***Injunction***

53. Is it likely that Pinnacle will continue to infringe Plaintiff's copyrights unless ordered to stop doing so?

Yes_________ No__________

54. Is it likely that Bloodgood will continue to infringe Plaintiff's copyrights unless ordered to stop doing so?

Yes_________ No__________

## CHATEAU COLLECTION

55. Did Touche & Montgomery, Inc. and TCM independently create the Chateau Collection townhomes?

Yes_________ No__________

**If your answer to question 55 was "Yes," do not answer any further questions. Sign this form on the last page and return it to the marshal.**

**If your answer to question 55 was "No," please answer this question:**

***Technical Drawings***

56. Excluding standard features and standard arrangements of standard features, did Rottlund prove by the greatest weight of the evidence that the Chateau Collection technical drawings are substantially similar to the Villa II technical drawings?

Yes_________ No__________

**If your answer to question 56 was "No," go to question 58 and do not answer question 57.**

**If your answer to question 56 was "Yes," please answer this question:**

57. Did Town & Country Homes knowingly and willfully infringe on the Villa II technical drawings?

Yes_________ No__________

***Architectural Works***

58. Excluding standard features and standard arrangements of standard features, did Rottlund prove by the greatest weight of the evidence that the Chateau Collection townhome building is substantially similar to the Villa II townhome building?

Yes_________ No__________

**If your answer to question 58 was "No," and your answer to question 56 was "No," do not answer any further questions. Sign this form and return it to the marshal.**

**If your answer to question 58 was "No," go to question 60 and do not answer question 59.**

**If your answer to question 58 was "Yes," please answer this question:**

59. Did TCM knowingly and willfully infringe on the Villa II townhome building?

Yes_________ No__________

***Actual Damages***

60. Did Rottlund prove by the greatest weight of the evidence that it lost any Villa II sales as a proximate result of TCM's infringement?

Yes_________ No__________

**If you answered "No" to question 60, go to question 63 and do not answer questions 61 or 62.**

**If you answered "Yes" to question 60, please answer this question:**

61. How many dollars in gross sales do you find from the greatest weight of the evidence that Plaintiff lost as a result of TCM's infringement?

$________________

62. What do you find from the greatest weight of the evidence that Plaintiff's profits would have been on the sales reflected in your answer to question 61?

$________________

***Defendants' Profits***

63. How many dollars in gross sales do you find from the greatest weight of the evidence that Town & Country Homes received from sales of Chateau Collection townhomes?

$____________

64. What do you find from the greatest weight of the evidence that Town & Country Homes' profits were on the gross sales of the Chateau Collection townhomes reflected in your answer to question 63?

$____________

65. What percentage of Town & Country Homes' profits from the sales of Chateau Collection townhomes do you find from the greatest weight of the evidence is a result of the infringement?

____________%

***Injunction***

66. Is it likely that Town & Country Homes will continue to infringe Plaintiff's copyrights unless ordered to doing so?

Yes_________ No__________

**When you have answered all the questions you are required to answer pursuant to the instructions on this special verdict form, each juror must sign the form on the last page and the signed form must be returned to the marshal.**

**SIGNATURES**

Dated this ____ day of _________, 200__.

______________________________
Foreperson

______________________________
Juror

______________________________
Juror

______________________________
Juror

______________________________
Juror

______________________________
Juror

______________________________
Juror

______________________________
Juror

______________________________
Juror

______________________________
Juror

______________________________
Juror

______________________________
Juror

HJN/hjn#723759v1