UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Rottlund Company, Inc., d/b/a Rottlund Homes, a Minnesota Corporation,

Plaintiff,

v.

Pinnacle Corporation, d/b/a Town & County Homes, an Illinois Corporation, Town & County Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,

Defendants,

and

Town & County Homes, Inc., a Minnesota Corporation,

Third-Party Plaintiff,

v.

Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

No.: 01-CV-1980 (DSD/SRN)

**PINNACLE CORPORATION AND TOWN & COUNTRY HOMES, INC.'S MEMORANDUM IN SUPPORT OF ITS OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING DAMAGES**

**(ORAL ARGUMENT REQUESTED)**

The issues on appeal to this Court for *de novo* review are: (1) whether Rottlund's 30(b)(6) admission that it does not contend the interior units of the competing works are substantially similar eliminates from this case all of the

profits from the these units; (2) whether Rottlund submitted sufficient admissible evidence to satisfy its burden of proof that a causal nexus exists between the alleged infringement and Rottlund's claim for direct and indirect actual damages; (3) whether Plaintiff's unsupported assertion that a fair market licensing fee would be equal to total profits can be presented to the jury; (4) whether Plaintiff provided admissible evidence to establish a question of fact regarding the existence of a nexus between the accused infringement and defendants' profit from non-accused products; and (5) whether the undisputed 1998 commencement by Bloodgood, Sharp, Buster of the architectural drawings and works at issue precludes statutory damages. Because plaintiff has failed to meet its burden of proof on each of these issues, Pinnacle and TCM's joint motion for summary judgment should be granted.[1]

**1. Apportionment of Profits on Interior Units and Factors Other Than Copyrighted Work.**

Rottlund's Rule 30(b)(6) designee bound Rottlund with his candid admission that his company does not contend in this litigation that the interior units of the accused products are substantially similar to the copyrighted material. Report at 41 ("We're not contending that the interior units of the Rottlund plan is [sic] substantially similar to the interior unit of the Homestead plan."). He further bound the company by stating in his answer that this was true for both the architectural works and technical drawing copyrights asserted in this case.

[1] The Report incorrectly characterizes the motion as TCM's motion. To the contrary, the Magistrate Judge ordered Pinnacle and TCM to file a single joint motion for summary judgment regarding damages.

(Schwiebert Aff., Ex. Q at 905, line 3 - 5) ("Question: Either in the architectural drawings or the as-built structure? Answer: Correct.").

Thus, defendants'motion for summary judgment sought apportionment of the profits from the interior units as "elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). The Report denies the motion soley on the grounds that "[t]his testimony could be interpreted to mean that Mr. Whitten was not offering an opinion about the substantial similarity of individual elements of the allegedly infringing townhomes." Report at 41. Mr. Whitten was testifying as Rottlund's corporate designee, not in his individual capacity. The testimony is about Rottlund's infringement contention in this litigation, not an opinion about individual elements.

This Magistrate drew an unreasonable inference by recasting an unambiguous, undisputed, binding corporate admission regarding Rottlund's contentions in this litigation. The statement may not be deconstructed by the Court simply to create questions of fact where none exist. The Court should hold, as a matter of law, that the profits from the interior units must be apportioned out of the alleged damages.

**2. "But For" Test For Direct And Indirect Actual Damages.**

Rottlund alleges that but for TCM building Homestead and Chateau Collection townhomes Rottlund would have built all of these back-to-back townhomes and all of the other non-accused works in the same developments. The

Report improperly fails to address any evidence presented by Rottlund to support its claim for actual damages as it relates to the Chateau Collection.

The report correctly recognizes that Rottlund "must establish that its loss resulted from the alleged infringement." Report at 18. To satisfy the "but for" proximate cause test to establish actual damages, Rottlund "must demonstrate that the ***existence and amount*** of the loss was a natural and probable consequence of the infringement." Report at 15 (citing *Data General v. Grumman Sys. Support*, 36 F.3d 1147, 1171 (1st Cir. 1994) (emphasis added).

The undisputed evidence is that, with the exception of the Hollander Estate, Rottlund knew of but failed to bid on the land that was acquired by TCM where the Homestead Collection and Chateau Collection have been built. (Schwiebert Aff. Damages, Ex. L at 186-198). The undisputed evidence is that Rottlund elected not to revise its bid on the Hollander Property and was not even in the final round of bidding. (Schwiebert Aff. Damages, Ex. L at 199-201 & Ex. M). Thus, **but for** TCM's alleged infringement, Rottlund's sales would be the same. *See Pfanenstiel*, 978 F.2d at 432 ("Here, there is no evidence that M & S's infringing use of PAI's drawings in Kansas City deprived PAI of any business other than the infringing use itself.").

Rottlund has provided no admissible evidence that a single sale was lost as a "natural and probable consequence of the infringement." *Data General*, 36 F.3d at 1171. The fact that Rottlund offers allegedly "comparable products" (Report at 23) does not establish that Rottlund, as opposed to the many other manufacturers of

back-to-back townhomes in the twin cities market, would have made the sale of the back-to-back townhome *but for* defendants alleged infringement.[2]

In addition to Rottlund's allegation of direct actual damages, Rottlund seeks actual damages for the other non-accused products in the developments that contain the allegedly infringing products. The Report again relies upon comparable products as satisfying Rottlund's burden of establishing a "but for" casual connection between the accused products and actual damages for the non-accused products. Report at 36. This assertion by Rottlund does not satisfy the nexus requirement set forth by the Eighth Circuit in *Andreas v. Volkswagen of America, Inc.*, 366 F.3d 789 (8th Cir. 2003). The fact that other products may be "comparable" does not mean that Rottlund lost sales on non-back-to-back product as a result of the accused product. The Report also relies upon Rottlund's assertion that "guidelines" exist in the municipalities where the accused products were built. There is no evidence in the record that any community would have denied TCM permission to develop without back-to-backs. In fact, such an assertion defies reason as no city requires that every development have back-to-back townhomes.

**3. Actual Damages – Licensing Revenue**

Because Rottlund does no business in Illinois, it cannot claim lost sales as a result of Pinnacle's construction of the Washington Square back-to-back

---

[2] Rottlund argued that evidence tending to show that it offered comparable products the same markets as defendants was sufficient to satisfy the but for causation requirement, citing Jones. The Report rejected this argument, as it should, because Jones is both inapposite to the facts of this case and inconsistent with Eighth Circuit law.

townhomes.[3] Instead, Rottlund seeks a "reasonable licensing fee" equal to the *entire profit margin* Rottlund would have made had it sold its Villa II at Washington Square. The sole basis for its claim that the licensing fee reflects a fair market value is Rottlund's *ipse dixit* assertion that it would have accepted nothing less.

Assuming that the "value-of-use" theory is adopted in the Eighth Circuit,[4] establishing the actual damage in the form of lost "value-of-use" requires more than statements by Rottlund about what it would have charged, which is all it has offered in this case. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2nd Cir. 2001)("The question is not what the owner would have charged, but rather what is the fair market value. In order to make out his claim that he suffered actual damage because of the infringer's failure to pay the fee, the owner must show that the thing taken had a fair market value."). The Report's only attempt to distinguish *On Gap* is that Rottlund and Pinnacle are "direct business competitors." Report at 38. This was not the basis of the *On Gap* decision, and it also false. Rottlund has no Illinois presence, so it does not compete with Pinnacle, which builds homes only in Illinois.

The only evidence regarding the fair market value of these copyrights in a market in which Rottlund was not (or was no longer) building townhomes is the license agreement in Indiana, where Rottlund granted a royalty-free license

[3] The Report incorrectly states that TCM built these townhomes. Report at 36.

[4] The Copyright Act does not explicitly provide for a "value-of-use" claim for damages. However, the "value-of-use" theory has been adopted by some courts. *See* NIMMER ON COPYRIGHT, § 14.02[A][2].

agreement for the copyrights on the Villa II. (Schwiebert Aff. Damages, Ex. O). The Report, however, claims that it cannot rely upon the Indiana license to determine fair market value. Report at 38.

Thus, the only evidence relied upon in the Report is Rottlund's self-serving claim of what it would have charged, which is legally insufficient. Rottlund has failed to show that the copyright had a fair market value in Illinois and Pinnacle is entitled to summary judgment on this theory of damages.

**4. Defendants' Profits on Non-Accused Products**

The plaintiff bears the burden of establishing a nexus between the infringement and the infringers' direct and indirect profits. Report at 28 (citing *Andreas*, 336 F.3d at 796). The Report addresses the nexus between the infringement and defendant's direct profits (sale of accused Homestead collection townhomes). Without any citation to the record, the Report claims that Rottlund has presented evidence that "Defendants touted the innovative qualities of their allegedly infringing townhomes, using such claims in advertisements and presentations to obtain customers." Report at 31. This does not establish the required nexus between the alleged infringement and profits on the sale of non-accused products. Rottlund does not provide any evidence, and none is cited in the Report, that a single row townhome or single family home was sold because of any "advertisements" relating to the Homestead Collection. The Report's reliance upon the fact that TCM did not previously have a back-to-back product, but sold these other products (row townhomes, single family homes) only establishes that TCM

could sell these products *without* the accused Homestead Collection. Finally, the fact that the accused products are profitable does not establish a nexus between the infringement and the non-accused products.

**5. Commencement of Alleged Infringement before Copyright Registration.**

Statutory damages and attorneys' fees are not available if the infringement commences before the effective date of the registration. *See* 17 U.S.C. § 412(1); Report at 6. The Report confirms that the only copyrights asserted in this case are VAu 447-395 (dated June 22, 1999), VAu 534-723 (dated January 7, 2002), and VAu 546-285 (dated February 19, 2002). (Report at 7). Rottlund presented no evidence disputing that BSB commenced its work on the Homestead and Washington Square products in this case in April of 1998. (*Id.*) In fact, the undisputed evidence is that the schematic design was complete by the end of July 1998. (*Id.* at 7 – 8). In architectural works, commencement is "tracing architectural floor plans . . . and not the completion of the construction plans. . . ." (*Id.* at 8, quoting *Cornerstone Home Builders, Inc. v. McAllister*, 311 F. Supp. 2d 1351, 1352 (M.D. Fla. 2004). Thus, attorneys' fees and statutory damages are precluded because the accused infringement commenced prior to the registration.

The Report holds that fact questions exist based upon two unrelated legal matters. First, the Report holds that the dispute over the "carry forward" doctrine precludes summary judgment on this issue. The "carry forward" doctrine has not been adopted by the Eighth Circuit or any district court within the Eighth Circuit. In fact, the Report does not provide any legal support for this theory. Rottlund has

not provided any admissible evidence that the same combination of all 71 identified ideas asserted in this litigation were present in the "New" Villa. The evidence cited by the Report (R20 at 42; R16 at 139) is simply self-serving testimony by Rottlund that the "gestalt" of the New Villa and the Villa II are similar. In fact, Rottlund has not alleged in any of the nine complaints filed to-date that the Homestead Collection or the Washington Square back-to-back townhomes infringe copyrights on the "New" Villa.

Second, the Report cites to Rottlund's asserted facts relating to BSB's development of other townhomes for other clients. These disputed facts, however, do not relate to the commencement of the architectural works accused in this litigation (Homestead and Washington Square) or the registration date for the copyrights at issue VAu 447-395 , VAu 534-723 , and VAu 546-285. At most, these facts would support an *earlier* commencement date by BSB, not a finding of registration prior to commencement.

**4. Notice Sufficient to Demonstrate Willfulness**

The Report holds that Rottlund's July 5, 2001 letter to Michael Ryan at Town & Country Homes in Lombard, Illinois constituted notice to TCM of infringement. The letter was not addressed to Town & Country Homes, Inc. (the Minnesota defendant in this litigation), but rather, was addressed to Mr. Ryan at Town & Country Homes (Pinnacle Corporation d/b/a Town & Country Homes). Admittedly, Mr. Ryan holds positions in both companies. However, the undisputed evidence is that the letter was sent to Pinnacle, not TCM.

In addition, the Report fails to address defendants' other basis for summary judgment regarding the lack of notice – the notice letter is limited to the Homestead Collection. Rottlund has alleged infringement of two other product types in this case – Pinnacle's Washington Square back-to-back and TCM's Chateau Collection. The July 5, 2001 letter cannot constitute written notice for these products. *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1021 (7th Cir. 1991)(notification to defendant of alleged copyright infringement for other works insufficient to satisfy notice requirement).

Finally, the July 5, 2001 letter does not identify the copyrights at issue in this litigation or put the defendants on notice of the deposit material for these copyrights. In fact, two of the asserted copyrights were not registered until after the July 5, 2001 letter. *See* Report at 7.

## CONCLUSION

TCM asks this Court to reject the Report and grant defendants' motion for summary judgment regarding damages.

Dated: November 1, 2004

s/Darren B. Schwiebert
Cynthia Jokela Moyer (#211229)
Darren B. Schwiebert (#0260642)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street #4000
Minneapolis, MN 55402
Tel. (612) 492-7312
Fax (612) 492-7077

ATTORNEYS FOR DEFENDANT
TOWN & COUNTRY HOMES, INC.

- AND –

Edward F. Ryan
Christopher J. Murdoch
Matthew I. Farmer
**HOLLAND & KNIGHT LLP**
131 South Dearborn Street, 30th Fl.
Chicago, IL 60603
Telephone: (312) 263-3600
Facsimile: (312) 578-6666

David Donna (#163624)
**DONNA & DALY**
1460 Buffet Way, Suite 150
Eagan, MN 55121
Telephone: (651) 406-4242
Facsimile: (651) 406-4243

ATTORNEYS FOR DEFENDANT
PINNACLE CORPORATION