UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Rottlund Company, Inc.,
d/b/a Rottlund Homes,
a Minnesota Corporation,

Plaintiff,

v.

Pinnacle Corporation,
d/b/a Town & Country Homes,
an Illinois Corporation,
et al.,

Defendants,

Civil Action No. 01-CV-1980 DSD/SRN

**PINNACLE CORPORATION AND TOWN & COUNTRY HOMES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO BAR REFERENCE TO PHRASE "OBVIOUSLY SIMILAR"**

---

Defendants Pinnacle Corporation ("Pinnacle") and Town & Country Homes, Inc. ("TCM") request that this Court enter an Order barring any argument, testimony, evidence or mention, by any witness or attorney, of the phrase "obviously similar."

This is a copyright infringement case in which a jury will be asked to decide whether one townhome building design is *substantially* similar to another. For more than two years, Rottlund's counsel, Rottlund's officers and Rottlund's architectural "expert" have invoked language from a July 2001 memo written by Steve Sandelin in which Mr. Sandelin used the phrase "obviously similar" to compare materials attached to a cease-and-desist letter from Rottlund's counsel. Rottlund's counsel has repeatedly invoked the phrase throughout this litigation. On September 11, 2002, Mr. Krummen told Magistrate Nelson:

> [Mr. Sandelin's memo says that the Centennial Crossing designs] are, and I'm not embellishing here, I'm quoting, quote, obviously similar, quote, to Rottlund's Villa product.
>
> So you need not take Rottlund's word for it, Your Honor, in terms of substantial or obvious similarity. We have the Town & Country Homes vice president of product development who's paid to figure things out like essential design elements calling what you just looked at obviously similar which we again submit to you even goes beyond the substantial similarity requirement in the copyright act.

(Transcript from September 11, 2002 Hearing, at 6-7.)

No one can argue that the jury will not be confused by the difference between the layman's phrase, "obviously similar," and the legal standard of "substantial similarity." Indeed, even the Magistrate Judge confused the two. During oral argument in January 2004, the Magistrate inadvertently substituted Mr. Sandelin's phrase -- "obviously similar," which is not a legal term -- for her own word choice – "substantially similar," which is the legal standard for infringement:

> MAGISTRATE NELSON: Four days after the letter is written, so maybe two days after Pinnacle receives it, that letter is in Mr. Sandalin's hands. Pinnacle knows he's a key player. And he sends a memo saying, *oh, my goodness, these designs look substantially similar* with regard to our Minnesota project. How are we going to respond to this? (Dkt. 332, Jan. 28, 2004 Hearing Tr. at 89-90 (emphasis supplied).)

The law is undisputed that that designs can be "obviously similar" without infringing. *See, e.g., Mayotte & Assoc. v. MGC Building Co.*, No. 94-72157, 1995 U.S. Dist. LEXIS 19628, at *8, (E.D. Mich., Sept. 6, 1995) ("Moreover, despite the

obvious similarities between Plaintiffs' and Defendants' plans, the Defendants have submitted affidavits citing many (more than 150) differences. . . . Many courts have held substantial similarity to be a question for the jury."); *Hoch v. MasterCard*, 284 F. Supp. 2d 1217, 1223 (D. Minn. 2003) ("Plaintiffs argue that these 'obvious similarities' preclude summary judgment. The Magistrate disagrees and concludes the similarities are nothing more than scenes a faire."). As these decisions make clear, competing works can exhibit obvious similarities and still not be substantially similar.

This is because the determination of substantial similarity turns on whether the *protectible* elements of one design are substantially similar to another. In contrast, a snap judgment that two works are obviously similar is inherently based upon both unprotectible and protectible aspects of the works. Mr. Sandelin testified at his deposition that this is exactly what he meant when he chose the phrase "obviously similar:"

> Q. Looking at Exhibit No. 11, when you see the words there "they are obviously similar." Do you see that?
> A. Yes.
> Q. I'm asking you to explain what you meant by that?
> A. I read the attorney's letter from Winthrop & Weinstine and referenced Rottlund's marketing collateral attachment which shows a small floor plan in the lower right corner.
> Q. Are you looking at the Chatham or the Breckenridge or both?
> A. Actually I'm looking at the Chatham.
> Q. And are you looking at the upper level or the main level or both?
> A. The main level. The lower level, it is called the main level.

> Q. I'm sorry I interrupted your answer. You were describing what you meant by the phrase "obviously similar" and you told me now so far that you have looked at the letter and then the attachment with the main level floor plan for the Chatham?
> A. Correct.
> Q. You can proceed with your answer.
> A. I also referenced the Town & Country Homes ad which is the sheet before it and my knowledge of this product and our floor plans and then I -- you know, looking at this picture down here, I can see there was obvious similarity in the two main level floor plans.
> **Q. What precisely did you mean by "obvious similarities"?**
> **A. Well, the product form is basically a square as it is in all back to backs that we saw with the garage in board, living and dining out board, meaning with windows and the kitchen tucked behind the garage. Our design is similar to that design although it's not shown in the marketing.**

Sandelin Tr., Dec. 16, 2002, at 287-88.

In other words, Mr. Sandelin's conclusion was only relevant to the first issue posed in the substantial similarity analysis: whether there is similarity of idea analyzing the objective details in the works. Mr. Sandelin's judgment that the designs are "obviously similar" has no probative value at all with regard to the second step, which is the only issue before the jury: whether the defendants' works are substantially similar at the level of protectibe expression (i.e., without regard to obvious similarities such as the back-to-back form, etc.)

Given the high likelihood that it will induce confusion, the grave prejudice threatened the defendants by that confusion, and the total lack of probative value, Mr. Sandelin's memorandum should be excluded and all evidence relating to it should also be excluded.

## CONCLUSION

For the reasons stated herein, the defendants request that this Court bar Rottlund from mentioning, eliciting testimony about, offering evidence of, making reference to the phrase "obviously similar," or to Mr. Sandelin's memorandum, during this trial.

Dated: November 1, 2004

s/Darren B. Schwiebert
Cynthia Jokela Moyer (#211229)
Darren B. Schwiebert (#260642)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street #4000
Minneapolis, MN 55402
Telephone: (612) 492-7312

ATTORNEYS FOR DEFENDANT
TOWN & COUNTRY HOMES, INC.

– AND –

Edward F. Ryan
Christopher J. Murdoch
Matthew I. Farmer
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th Fl.
Chicago, IL 60603
Telephone: (312) 263-3600

David Donna (#163624)
DONNA & DALY
1460 Buffet Way, Suite 150
Eagan, MN 55121
Telephone: (651) 406-4242

ATTORNEYS FOR DEFENDANT
PINNACLE CORPORATION

#3037112\1