Court File No. 01-1980 / ROTTLUND / Pinnacle
Davenport Affidavit November 2, 2004

Exhibit A

**EXHIBIT 3**
**10/29/04**




Town & Country Homes Minnesota Developments

1) Centennial Crossing: Maple Grove, MN
2) Cornerstone Lake: Lakeville, MN
3) Harvest Hills: Plymouth, MN
4) Pinebrook Commons: Brooklyn Park, MN
5) Providence Pointe: Shakopee, MN
6) Springbrook: Lakeville, MN
7) Traditions at Clover Ridge: Chaska, MN

Rottlund Developments (which include the Villa II town home product)

8) Club West: Blaine, MN
9) Cornerstone: Plymouth, MN
10) Maple Lakes: Maple Grove, MN
11) The Reserve: Plymouth, MN
12) Rice Creek: Shoreview, MN
13) Rush Creek: Maple Grove, MN
14) Vermillion Grove: Farmington, MN
15) Walnut Grove: Chanhassen, MN

Exhibit B

UNITED STATES DISTRICT COURT DISTRICT O

FOURTH DIVISION No.:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -The Rottlund C

d/b/a Rottlund Homes, a MinnesotaCorporation,

Plaintiff,vs.

Pinnacle Corporationd/b/a Town & Country Homes,

an Illinois Corporation, andTown & Country Homes, Inc.,

a Minnesota Corporation,

Defendants,

and

Town & Country Homes, Inc.,

a Minnesota Corporation,

Third-Party Plaintiff,

vs.

Bloodgood Sharp Buster Architects &

Planners of Iowa, Inc., an Iowa Corporation,

Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

Videotaped

30(b)(6) Deposition of

BLOODGOOD SHARP BUSTER ARCHITECTS &

PLANNERS OF IOWA, INC.

(Testimony of Larry W. Moore)

Thursday, March 6, 2003 (Volume I, pages 1 - 61)

Friday, March 7, 2003 (Volume II, pages 61 - 327)

MR. FARMER: Objection. Form and foundation.
MR. SCHWIEBERT: Calls for speculation.
A I can't remember any.
BY MR. KRUMMEN:
Q Have you ever heard of the term "competition product survey"?
A I do, because I remember there's a transmittal from me on that.
Q That's right. And what does competition product survey refer to?
A That I do not recall.
Q Does it have -- strike the question.
Did the competition product survey in the transmittal that you reviewed transmit Tracy Cross information?
MR. SCHWIEBERT: Objection. Foundation.
MS. NEWMAN: Same objection.
A I don't -- I don't remember Tracy Cross being involved in this process.
BY MR. KRUMMEN:
Q Did the competition product survey that you transmitted to Town & Country Minnesota have materials that you received from Tracy Cross in it?
MR. SCHWIEBERT: Objection. Foundation.

MS. NEWMAN: Same objection. Answer if you know.
A I don't -- I don't -- I don't remember. But I don't think so. I don't think so.
BY MR. KRUMMEN:
Q What did the competition product survey that you transmitted to Town & Country of Minnesota contain?
MR. SCHWIEBERT: Objection. Foundation.
MS. NEWMAN: Same objection.
A I don't recall. I really don't remember what was in that.
BY MR. KRUMMEN:
Q Well, you coined the phrase, correct, "competition product survey"?
MR. FARMER: Objection. Foundation.
MS. NEWMAN: Form.
MR. SCHWIEBERT: Argumentative.
MS. NEWMAN: Go ahead and answer.
A If -- if it was my transmittal.
BY MR. KRUMMEN:
Q In the interests of fair play, sir, why don't I give you that transmittal. It's dated May 5 of 1998. I will have the court reporter mark it, and then we'll all be on the same page.
(Deposition Exhibit Number 114 was marked for

identification by the reporter.)
THE REPORTER: 114.
BY MR. KRUMMEN:
Q Before you as Exhibit Number 114 is a transmittal from you to Steve Sandelin at Town & Country Homes. The date is Tuesday, May 5, 1998, and it relates to a villa townhomes project. Have I accurately characterized the exhibit thus far?
A Correct.
Q The bottom right-hand corner contains the Bates label BSB 01944, and under the "Remarks" you wrote, "Steve," colon, quote, "Competition product survey for Minneapolis area," period, end quote. Have I accurately read that?
A Yes.
Q What does the competition product survey language refer to in your transmittal?
A I do not remember this. I don't think we had any kind of a product or project survey that I remember.
Q How would you go about finding whatever it was that you transmitted to Mr. Sandelin in connection with this Tuesday, May 5, 1998, transmittal, as you sit here today?
MS. NEWMAN: Objection. Foundation. Calls for speculation. You can answer if you know.

A It should be in my files. It should be in my schematic file.

BY MR. KRUMMEN:

Q Now, when you say your files--and one of them was identified as a schematic file--what are you referring to?

A I keep a -- just in a -- a -- a Manila folder just my information that -- that I gather and a place to put things during the schematic phase. The project manager is typically responsible for keeping the -- the project file, but I'll have a schematic folder that I usually keep things in just through the schematic phase, a place -- like I say, a place to keep things.

Q Did you turn that file over to your attorneys in connection with the document discovery in this litigation?

A Yes.

Q Do you believe that Exhibit 114 came out of your schematic file or do you have reason to believe that it came from some other file?

MR. SCHWIEBERT: Objection. Form.

A I do not know which file it came out of.

BY MR. KRUMMEN:

Q Would it be in your, I guess, experience in any

file other than the schematic file that you keep --
MR. FARMER: Object --
BY MR. KRUMMEN:
Q -- a document such as 114?
MR. FARMER: Object to form. Foundation.
MS. NEWMAN: Same objections.
A Potentially.
BY MR. KRUMMEN:
Q What other files at BSB of Iowa could an exhibit like 114 be in? And when I'm talking about "like 114," I'm referring to transmittals that you send or sent to Steve Sandelin.
MR. FARMER: Objection. Form.
MS. NEWMAN: Same objection. Go ahead.
A Normally when I send a transmittal or a fax or something, if -- if it's something that seems important, I might throw it in my file, but I'm not sure I would keep everything that I -- I mean, you said it earlier. Our files are a little disarray. I'm not a good organizer. So if I kept it, it should be in my file.
BY MR. KRUMMEN:
Q Do you know one way or the other if you kept the competition product survey file that was transmitted to Steve Sandelin on or about May 5,

1998, or kept a copy of it?
A I don't. I don't know.
Q And to find out, you would go back and look through your schematic file?
A Yes.
Q Why were you sending a competition product survey file for the Minneapolis area to Steve Sandelin on or about May 5 of 1998?
A I'd be speculating.
MS. NEWMAN: Don't speculate. Answer only if you know.
A I don't know.
BY MR. KRUMMEN:
Q Would anyone else have personal knowledge about your sending a competition product survey to Steve Sandelin on or about May 5, 1998, other than Steve Sandelin?
MR. FARMER: Objection. Form.
MS. NEWMAN: Same objection. Go ahead and answer if you know.
A I don't know.
BY MR. KRUMMEN:
Q Is it your practice to ask an assistant to put together competition product survey files, for example?

MS. NEWMAN: Objection as to form.
MR. FARMER: Object. Form.
A No. But it has been, in the past, that we'd give an administrative assistant the responsibility of gathering information and then firing it off to somebody. So that could be a -- that could be a situation where I wouldn't necessarily know what was in the file, in the -- in the transmittal. I don't know if that's the case here.
BY MR. KRUMMEN:
Q Exhibit 114, the competition product survey referenced there, did it contain any materials from Tracy Cross Associates?
MS. NEWMAN: Objection. Asked and answered. And foundation. Form. Answer if you know.
A I don't know.
BY MR. KRUMMEN:
Q Do you have any knowledge regarding the competition product survey file that's referenced in Exhibit 114, as you sit here today?
MR. FARMER: Objection. Asked and answered.
MS. NEWMAN: Same objection.
A I do not know what that was.

# Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

THE ROTTLUND COMPANY, INC. d/b/a ROTTLUND HOMES, a Minnesota Corporation,

Plaintiff,

vs. No. 01-CV-1980

PINNACLE CORPORATION d/b/a TOWN & COUNTRY HOMES, an Illinois Corporation, TOWN & COUNTRY HOMES, INC., a Minnesota Corporation, BLOODGOOD SHARP BUSTER ARCHITECTS & PLANNERS OF IOWA, INC., an Iowa Corporation, and THE BLOODGOOD GROUP, INC., an Iowa Corporation,

Defendants,

and

TOWN & COUNTRY HOMES, INC., a Minnesota Corporation,

Third-Party Plaintiff,

vs.

BLOODGOOD SHARP BUSTER ARCHITECTS & PLANNERS OF IOWA, INC., an Iowa Corporation,

Third-Party Defendant.

The deposition of STEVE SANDELIN, called by the Plaintiff for examination, taken pursuant to notice and pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Susan Babicki, Certified Shorthand Reporter, Registered Professional Reporter, and Notary Public, at One Pierce Place, Itasca, Illinois, commencing at 9:03 a.m. on the 8th day of December,2003.

MR. KRUMMEN: I want to hear the answer to the question.

THE WITNESS: What's the question, please?

MR. KRUMMEN: That's what we're finding.

(Record read as requested.)

BY MR. KRUMMEN:

Q. All right, sir. I'd like you to stick with Exhibit No. 225, and I'd like you to turn to D 00225, please.

Are you with me?

A. Yes.

Q. On D 00225, do you see it's dated Tuesday, May 5, 1998?

It's a transmittal from Larry to Steve Sandelin at Town & Country Homes. The project is, quote, villa town homes, quote.

Have I accurately identified this particular document?

A. Yes.

Q. Could you read the remarks?
A. "Steve, competition product survey for Minneapolis area."
Q. What do you recall about the competition product survey for the Minneapolis area?
MR. FARMER: Objection, foundation.
THE WITNESS: I don't recall anything about a competition survey.
BY MR. KRUMMEN:
Q. Have you looked through all of your files, not just your Minnesota file, but all of your files to try to find the competition product survey for the Minneapolis area which is referenced on D 00225?
A. Yes, I have.
Q. You've looked through all of your Chicago files, all of your Minnesota files, and everything else that you have access to?
A. I believe so, yes.

Exhibit D

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

No.: 01-CV-1980 (DSD/SRN)

---

The Rottlund Company, Inc.
d/b/a Rottlund Homes, a Minnesota
corporation,

Plaintiff,

vs.

Pinnacle Corporation
d/b/a Town & Country Homes,
an Illinois corporation, and
Town & Country Homes, Inc.,
a Minnesota corporation,

Defendants,

and

Town & Country Homes, Inc.,
a Minnesota corporation,

Third-Party Plaintiff,

vs.

Bloodgood Sharp Buster Architects &
Planners of Iowa, Inc., an Iowa corporation,

Third-Party Defendant.

---

Videotaped Deposition of
LARRY MOORE
Thursday, September 4, 2003
9:40 a.m.

that I received are -- are part of what was sent to Steve.

BY MR. KRUMMEN:

Q. Let's look at Exhibit 114. And where we are is, I have an interrogatory answer telling me that BSB does not know what the attachment to Exhibit 114 is, correct?

A. Correct.

Q. Now, is that true or is that false?

MS. MOYER: Object to the form of the question.

MS. NEWMAN: Same objection. Go ahead.

THE WITNESS: At the time when that was asked and answered, I could not remember what those were.

BY MR. KRUMMEN:

Q. As you sit here today, sir, do you know what the competition product survey for the Minneapolis area attachment to Exhibit 114 is?

A. Specifically, no. I couldn't tell you what is in that, but I do know it's some other plans, some competitor product plans and images and things like that that Art sent down to us.

I didn't -- I didn't have a copy of that in my file. I'm guessing I probably had those just

sent right on to Steve to keep him in the loop. Whether they were faxed or transmittal, I don't know.

Q. So let's back up, and I'm going to spend a few minutes following up on that last answer. If I understand your testimony, you received the competition product survey for the Minneapolis area from Art Plant in or about May of 1998?

MS. NEWMAN: Objection as to form. Go ahead.

BY MR. KRUMMEN:

Q. Is that what you just told me?

A. I think that's the dates, yeah, around there.

Q. Okay. Now, once you got the competition product survey from the Minneapolis area, you forwarded it to Steve Sandelin and did not keep a copy for your own files; is that what you're telling me?

MS. NEWMAN: Objection --

THE WITNESS: It's possible.

MS. NEWMAN: -- as to form. Go ahead.

THE WITNESS: I don't know that I sent it on. That's the point. I mean, I don't know that I personally did it, so --

BY MR. KRUMMEN:

Q. Well, do you have any basis to dispute that the transmittal, which appears in front of you as Exhibit 114, was sent to Steve Sandelin?

A. I have no -- no, I have no basis to dispute that.

Q. So my question is -- we're back in May of 1998, just to set the time. Okay?

A. Uh-huh.

Q. And you have received a competition product survey for the Minneapolis area from Art Plante; is that where we're at?

A. Yeah.

Q. What was in the competition product survey that Mr. Plante sent to you?

A. It appeared to be a number of competitors' products, some plans, some elevations, some ideas that -- that Art liked, this and that, you know, a suggestion to say, "Hey, do we want to think of ideas like this" or, you know, "This works in the market. Should we consider these pieces in part?" So that was the information, I think, we got there.

Q. Did you keep a copy of the competition product survey for the Minneapolis area attachment, which Mr. Art Plante sent to you in or about May of