UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br><br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | Civil No. 01-1980 (DSD/SRN)<br><br>**DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS AND PLANNERS OF IOWA, INC., AND THE BLOODGOOD GROUP, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE REGARDING THE OAKS LITIGATION; EXCLUSION OF EVIDENCE OF OTHER BACK-TO-BACK TOWNHOMES; RELIGIOUS BELIEFS OF WITNESSES; FOR AN ADVERSE INFERENCE INSTRUCTION; AND TO EXCLUDE EVIDENCE OF ROTTLUND'S PRIOR COPYRIGHT LICENSES.**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. ("BSB") and The Bloodgood Group, Inc. ("BGI") submit this Memorandum of Law in Opposition to Rottlund's Motions in Limine regarding The Oaks litigation; exclusion of evidence of other back-to-back townhomes; religious beliefs of witnesses; for an adverse inference instruction; and to exclude evidence of Rottlund's prior copyright licenses.

## I. EVIDENCE FROM THE OAKS LITIGATION IS RELEVANT IN THIS LITIGATION.

Rottlund bases its Motion on the assumption that the Defendants may attempt to introduce into evidence Judge Longstaff's Order in that case, in which Judge Longstaff concluded that Rottlund's New Villa townhome was nothing more than a standard arrangement of standard features. Judge Longstaff's Order is attached as Exhibit A to the Affidavit of Ben Patrick submitted herewith. Rottlund's motion should be denied on two separate bases: first, because the court's Order in The Oaks can be used to cross-examine Rottlund's witnesses; and second, because the sworn testimony of Rottlund's witnesses in The Oaks can be used to cross-examine those witnesses if they appear to give testimony in this matter.

### A. The Order of The Oaks court can be used to cross-examine Rottlund witnesses.

Whether or not the written Order in The Oaks can be entered as an exhibit, it can certainly be used to cross-examine Rottlund's witnesses, for inadmissible evidence can be used for the purpose of impeachment. See, e.g., Harris v. New York, 401 U.S. 222 (1971); United States v. Dennis, 625 F.2d 782 (8th Cir. 1980). Furthermore, Rottlund's motion makes an unwarranted leap in logic to support its conclusion that The Oaks Order should not be admissible. Rottlund correctly notes that The Oaks Order is not binding on the jury in this case. Rottlund then concludes that, for that reason, The Oaks Order is not relevant. No single piece of evidence is ever "binding" on a jury; nevertheless, the lack of a "binding" effect does not render a piece of evidence irrelevant. Rottlund's conclusion is therefore false.

**B. The sworn testimony given by Rottlund's witnesses in The Oaks can be used to cross-examine those witnesses in this matter.**

It is widely acknowledged that a witness's sworn testimony in a prior proceeding can be used to impeach that witness in a later litigation. See, e.g., United States v. Collins, 478 F.2d 837 (5th Cir. 1973); Davis v. McCree, 299 F. 142 (6th Cir. 1924); Zuber v. Northern Pacific Railroad Co., 74 N.W.2d 641 (Minn. 1956); 98 C.J.S. Witnesses, § 703. Rottlund's witness list includes at least two individuals (Steven Theis and Timothy Whitten) who offered sworn testimony at the preliminary injunction hearing held in The Oaks. The law clearly provides that these individuals can be cross-examined with their prior testimony. Additionally, some background information concerning The Oaks litigation will need to be established to lay the foundation for the impeachment. Rottlund has not given the Court any explanation why this use would be improper. Therefore, Rottlund's motion should be denied.

## II. EVIDENCE CONCERNING OTHER BACK-TO-BACK TOWNHOMES SHOULD NOT BE EXCLUDED.

Rottlund has pretended, throughout the course of this litigation, that back-to-back townhomes are Rottlund's unique invention, and that Rottlund and Town & Country Homes are the sole builders of back-to-back townhomes in the Twin Cities. For example, Rottlund's architectural expert claims he was unaware of other back-to-back townhomes built in Minneapolis[1], and Rottlund's financial expert did not take into consideration competition from other builders of back-to-back townhomes when forming her opinions regarding Rottlund's damages[2]. Rottlund now hopes to force this myopic approach on

[1] See Transcript of the Deposition of Anthony Desnick at pages 69-70 and 87-88, attached as Exhibit B to the Affidavit of Ben Patrick.
[2] See Transcript of the Deposition of Melissa Snelson at page 266, attached as Exhibit C to the Affidavit of Ben Patrick.

the Court and the jury. The evidence which Rottlund seeks to exclude falls into three broad categories: other back-to-back townhomes designed by BSB; other back-to-back townhomes built in the Twin Cities; and other back-to-back townhomes built elsewhere. Rottlund's motion should be denied, because this evidence is relevant to show independent creation, and to demonstrate which arrangements of rooms and features are standard, and thus excluded from the comparison the jurors will be asked to make.

**A. Evidence concerning BSB's other back-to-back townhomes should not be excluded.**

While Larry Moore has testified that he reviewed the marketing files for three specific BSB back-to-back townhomes (designed for Jerry's Homes, Midland Homes, and Good Value Homes) prior to designing the Homestead Collection, Larry Moore has testified, and will testify at trial, that he is familiar with BSB's catalogue of work, and with the work done by other designers and builders. Thus, for example, BSB and BGI intend to introduce back-to-back townhome designs done by BSB as far back as the early 1980s. This evidence is relevant on the issue of independent creation, because it shows Larry Moore and BSB had sources for ideas and expressions of ideas other than Rottlund's Villa II. This evidence is also relevant on the issue of standard features. Jurors, when making their comparison of the townhomes at issue in this litigation, are required to filter out, and not compare, elements of the townhomes which are standard features or standard arrangements of standard features[3]. The better educated the jury is as

---

[3] See, e.g., Apple Computers, Inc. v. Microsoft Corp., 35 F.3d 1435, 1446 (9th Cir. 1994); Kregos v. Associated Press, 3 F.3d 656, 663 (2nd Cir. 1993); Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 207 (9th Cir. 1984); Kootenia Homes, Inc. v. Reliable Homes, Inc., 2002 WL 15594 (D.Minn. 2002); Thimbleberries, Inc. v. C & F Enterprises, Inc., 142 F.Supp.2d 1132, 1137-38 (D.Minn. 2001); Control Data Systems, Inc. v. Infoware, Inc., 903 F.Supp. 1316, 1322 (D.Minn. 1995); CSM Investors, Inc. v. Everest Development, Ltd., 840 F.Supp. 1304, 1310 (D.Minn. 1994).

to the various designs used by BSB for back-to-back townhomes, the better able the jury will be to accomplish this task.

Evidence of BSB's past work is also relevant to rebut Rottlund's allegation of infringement. If BSB can show that the elements of the accused townhomes are also present in BSB's past work, the jury should conclude that these elements should not be compared when determining whether the accused townhomes infringe. In Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp., 2004 WL 537176 (6th Cir. 2004), cert. denied, --- S.Ct. ---, 2004 WL 2149146 (Nov. 1, 2004)[4], noted that:

> Ordinarily, similar elements between known work of the plaintiff and the defendant's work will, depending on the degree of uniqueness and originality of the element, support [an inference of copying]. However, where defendant owns a prior work containing the same elements, he has no reason, beyond the illicit thrill of copyright infringement, to copy wrongfully from another what he could legally copy from himself. Therefore, where an element occurs both in the defendant's prior work and the plaintiff's prior work, no inference of copying can be drawn.

Murray Hill, 2004 WL 537176 at page 12 (citing Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 54 (2nd Cir. 1936)("If the defendant has had access to other material which would have served him as well, his disclaimer [of copying] becomes more plausible."); Ellis v. Diffie, 177 F.3d 503, 507 (6th Cir. 1999)("[A]n inference of copying is rebuttable by evidence of independent creation of the allegedly infringing work.")). BSB should, therefore, be permitted to show that the ideas and expression of ideas embodied in the accused townhomes come from its own prior works, rather than Rottlund's works.

[4] A copy of this opinion is attached as Exhibit D to the Affidavit of Ben Patrick submitted herewith.

**B. Evidence concerning other townhomes built in the Twin Cities should not be excluded.**

It is undisputed that BSB employees Larry Moore and Chris Jorgensen came to the Twin Cities and toured products built by various builders. They were accompanied by representatives of Town & Country Homes on this tour. It is also undisputed that this tour included numerous back-to-back products. The jury is entitled to see what other products existed in the marketplace or were part of that tour. Rottlund contends that the purpose of BSB's tour was to find ideas from Rottlund and steal them for their own use. BSB has always denied this allegation, but BSB is also entitled to rebut this allegation by demonstrating that the ideas and expression of the ideas embodied in its townhomes are no more similar to Rottlund's townhome than they are to townhomes built by many different builders in the Twin Cities. Thus, this evidence tends to rebut Rottlund's claim of copyright infringement. This evidence will also be useful to the jury in deciding which features contained in the townhomes are standard and generic, and thus should not be compared. The jury should be allowed to see the products that BSB and Town & Country Homes saw during their tour of the Twin Cities.

**C. Evidence concerning back-to-back townhomes built elsewhere should not be excluded.**

BSB's architects will testify that, as part of their jobs, they routinely review products built all across the country. They do this to stay abreast of market trends, and see how other builders have tackled the same design problems which BSB wrestles with every day. BSB's architects will testify that, for this reason, they are generally familiar with thousands of products built in many markets, and that they draw on this market knowledge when they design townhomes. BSB intends to offer evidence concerning

products built elsewhere which they were familiar with at the time it designed the accused townhomes. Once again, this evidence is relevant because it demonstrates that the ideas and expression of ideas embodied in the accused townhomes came from sources other than Rottlund, and because it will help the jury determine which features embodied in the townhomes at issue in this case are standard and generic, and should not be used when comparing the townhomes.

In conclusion, Rottlund's motion is predicated on the assumption that BSB will use evidence of other products to argue that Rottlund's townhome is unoriginal. As is demonstrated above, BSB intends to use this evidence for several entirely different, and completely proper, purposes. As such, Rottlund's motion should be denied.

## III. ROTTLUND'S MOTION TO EXCLUDE EVIDENCE OF THE RELIGIOUS BELIEFS OF CERTAIN WITNESSES SHOULD BE DENIED.

Rule 610 excludes evidence of a witness' religious beliefs or opinions if the evidence is offered for the purpose of enhancing or impairing a witness' credibility. There are several strong policy considerations supporting this rule. See Wright & Miller, 28 Fed. Prac. & Proc. Evid. § 6153 (2004). However, unlike Rottlund's assertion in its Memorandum[5], evidence of a witness' religious beliefs may be offered not only to show interest or bias for impeachment purposes, but may be offered for any reason other than to impair or enhance a witness' credibility. Id.

[5] Plaintiff cites to *Fireman's Fund Ins. Co. v. Thein*, 63 F.3d 754, 761 (8th Cir. 1995). In this case, the evidence was excluded because it was offered to support actions of witnesses that were irrelevant to the matters at issue in the case. The case does not hold that the *only* allowable use of evidence of a witness' religious beliefs are to show bias or interest for impeachment purposes as Plaintiff claims it does.

In the present case, in the course of various depositions, Rottlund has questioned several BSB witnesses regarding their ethics and morals or the ethics and morals of other BSB witnesses:

- "Does the fact that Mr. Moore was concerned about this at all trouble you in terms of your opinion as to the ethical propriety of BSB in designed projects such as the Midland project?"[6]
- "Does that give you pause at all in terms of a lack of an endorsement from Jim Grundmeier, his boss, to whether or not Larry Moore acted ethically in this situation?"[7]
- "So as you sit here today, you don't have an opinion as to whether or not BSB acted ethically when they did not report Larry Moore's Midland design to the AIA?"[8]
- "Do you believe that Mr. Larry Moore's integrity is up to the standards that you lay out here in terms of Doug Buster's integrity?"[9]
- "Do you have an opinion one way or another as to whether or not Larry Moore acted with integrity when he designed the Midland Homes back-to-back product?"[10]
- "What in particular did he testify to that led you to believe he acted ethically when Mr. Larry Moore designed the Midland back-to-back product?"[11]

If Rottlund pursues this line of questioning at trial[12], evidence concerning the religious beliefs of individual witnesses may be relevant to provide context for their definition of the behaviors they consider ethical or moral. Under Rules 401 and 402, the evidence of a witness' religious beliefs would be admissible so long as it was relevant to the matter at issue and not offered for the purposes forbidden by Rule 610. Evidence pertaining to the witness' religious beliefs would not be offered for the purpose of bolstering credibility, but rather to offer context for the witness' opinion as to whether certain actions were ethical or moral.

---

[6] Transcript of the Deposition of Albert Bloom, at page 112, attached as Exhibit E to the Affidavit of Ben Patrick submitted herewith.
[7] Id. at 118.
[8] Id. at 122.
[9] Id. at 244.
[10] Id. at 246-47.
[11] Id. at 247.
[12] BSB has a pending Motion in Limine which asks the Court to exclude questions like these.

Therefore, Rottlund's Motion should be denied in its entirety or, in the alternative, BSB and BGI should be allowed to introduce evidence of a witness' religious beliefs if Rottlund opens the door by questioning witnesses regarding whether an individual's actions were moral or ethical.

## IV. ROTTLUND'S MOTION FOR AN ADVERSE INFERENCE REGARDING THE COMPETITION PRODUCT SURVEY SHOULD BE DENIED.

Rottlund contends that the Defendants have failed to produce the document known as the "competition product survey" which was forwarded from BSB architect Larry Moore to Steve Sandelin at Pinnacle. This contention is false. As is spelled out in detail in BSB's Motions in Limine, Larry Moore has provided sworn testimony identifying the contents of the "competition product survey", and the documents he identified as the "competition product survey" have been produced in discovery (indeed, they have been marked as a deposition exhibit). Rottlund also alleges that the "competition product survey" must have contained Rottlund materials, and asks for an adverse inference that it did. This contention is also false, and completely unsupported by any evidence whatsoever.

Rottlund begins its analysis of this issue with a statement regarding "missing evidence." Once again, this is incorrect, because the "competition product survey" is not missing. Its contents have been identified by a witness under oath. Rottlund then analyzes the four-part test which considers whether an adverse inference is available. The final factor, that "there has been actual suppression or withholding of evidence" is clearly unsatisfied, since Rottlund has in fact been provided with the "competition product survey."

Finally, even if it is assumed, *arguendo*, that Rottlund was in fact correct, and the

"competition product survey" contained Rottlund brochures, that evidence would be relevant only to establish that the Defendants had access to Rottlund's Villa II. However, the Court has already granted Rottlund's motion for summary judgment, establishing as a matter of law that the Defendants had access to the Villa II technical drawings and as-built structure. Thus, evidence on the issue of access is no longer relevant.

Rottlund's motion lacks the fundamental factual foundation necessary before this Court could grant it. In short, Rottlund now knows the contents of the "competition product survey," but is disappointed that the survey does not contain what Rottlund wishes it did---namely, Rottlund brochures. For this reason, Rottlund pretends that the "competition product survey" has not been produced, and asks this Court to establish by adverse inference a fact which has been conclusively disproved. For these reasons, the Court should deny Rottlund's motion.

## V. EVIDENCE CONCERNING THE LICENSE GRANTED BY ROTTLUND IN CONNECTION WITH THE SALE OF ITS INDIANA OPERATIONS SHOULD NOT BE EXCLUDED.

Rottlund alleges in its Memorandum on this motion that it would have been willing to negotiate a license agreement with Pinnacle and that a reasonable fee for that license would have been Rottlund's incremental profit margin per unit sold. See Plaintiff's Memorandum of Law in Support of It Motion in Limine to Exclude Evidence of the Sale of Its Indiana Division Assets as Evidence of the Fair Market Value of Plaintiff's Villa II Product at page 2. Rottlund seeks to bar the admission of evidence that demonstrates that the one time it has granted a license to use the copyrighted material in question, it utterly failed to assign a value to the license agreement. It is hard to

imagine a document more relevant to the determination of a fair and reasonable license fee.

All relevant evidence is admissible. F.R.E. 402 (2004). Evidence is relevant if it tends to "make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." F.R.E. 401 (2004). The definition of a 'reasonable royalty' assumes that, after payment of the royalty, the "infringer will be left with a profit." Georgia Pacific Corporation v. United States Plywood Corporation, 318 F.Supp. 1116, 1122 (S.D.N.Y. 1970). Contrary to this notion, Rottlund asserts that a reasonable royalty fee would be its incremental profit margin per unit sold. See Memorandum at 2. Rottlund seeks to preclude Defendants from introducing evidence which demonstrates the only license issued to use its Villa II product in the past failed to assign any monetary value to the rights granted.

A list of evidence generally relevant to the determination of the amount of a reasonable royalty for a license may be drawn from a conspectus of the leading case on the subject, Georgia Pacific, *supra*[13]. The following does not represent an exhaustive list of the relevant factors which courts should consider:

> 1. The royalties received for the licensing of the [copyright] in suit, proving or tending to prove an established royalty.
> 2. The rates paid by the licensee for the use of other [copyrighted material] comparable to the [material in question] in the suit.
> 3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the product may be sold.
> 4. The licensor's established policy and marketing program to maintain his [copyright] monopoly by not licensing others to use the [material] or by granting licenses under special conditions designed to preserve that monopoly.
> 5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

[13] *Georgia Pacific* deals with the determination of a reasonable royalty fee for the licensing of patent rights.

> 6. The effect of selling the [copyrighted] specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-[copyrighted] items; and the extent of such derivative or convoyed sales.
> 7. The established profitability of the product made under the [copyright]; its commercial success; and its current popularity.
> 8. The utility and advantages of the [copyrighted material] over the old modes or devices, if any, that had been used for working out similar results.
> 9. The extent to which the infringer has made use of the [copyrighted material]; and any evidence probative of the value of that use.
> 10. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the [copyrighted material].
> 11. The portion of the realizable profit that should be credited to the [copyrighted material] as distinguished from non-copyrighted elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.
> 12. The opinion testimony of qualified experts.
> 13. The amount that a licensor and a licensee would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee-- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the [copyrighted material] -- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent copyright holder who was willing to grant a license.

Id. "The primary inquiry, often complicated by secondary ones, is what the parties would have agreed upon, if both were reasonably trying to reach an agreement." Id. (citing Faulkner v. Gibbs, 199 F.2d 635, 639 (9th Cir. 1952)). The Georgia Pacific factors require consideration not only of the amount that a willing licensee would have paid for the license, but also of the amount that a willing licensor would have accepted. Id. What a willing licensor and a willing licensee would have agreed upon in a hypothetical negotiation for a reasonable royalty would entail consideration of the specific factors mentioned above. Id. Therefore, evidence that Rottlund has previously licensed rights to the copyrighted material in question, and the value (if any) placed on the licensed rights

at the time of the licensing, are certainly relevant factors to consider when attempting to determine a reasonable royalty fee in this case.

Rottlund also seeks to exclude the evidence pertaining to the license agreement between Rottlund and The Augusta Group by arguing that any probative value it may have is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury. "In Rule 403, 'prejudice' does not mean the damage to the opponent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." See Wright and Miller, 22 Fed. Prac. & Proc. Evid. § 5215. Although The Augusta Group's license agreement is clearly a contested piece of evidence that could damage Rottlund's case, this is not enough to exclude the evidence under Rule 403. The parties have different interpretations of the meaning of the document, and each party will have the opportunity to present its interpretation to the jury. The fact that the jury may choose to accept one party's interpretation over the other's is not unfair prejudice. Making a determination of fact based upon the evidence presented by the parties is the essential function of the jury. For these reasons, BSB and BGI respect fully request that the Court deny Rottlund's motion, and allow the jury to decide what this evidence means.

MACKALL, CROUNSE & MOORE, PLC

Dated: November 3, 2004

By: /s/ Ben Patrick

Holly J. Newman (MN Bar #026457X)
Ben Patrick (MN Bar #312460)
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, Minnesota 55402-2859
Telephone: (612) 305-1436

Attorneys for Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. and The Bloodgood Group, Inc.

JBP/jbp#723902v1