Exhibit G

WINTHROP WEINSTINE

ATTORNEYS AND COUNSELORS AT LAW

October 12, 2004

David A. Davenport
(612) 604-6716
ddavenport@winthrop.com

**BY MESSENGER**
The Honorable Susan Richard Nelson
Warren E. Burger Federal Building
Courtroom 242
316 North Robert Street
St. Paul, MN 55101

Re: *The Rottlund Company, Inc. v. Pinnacle Corporation, et al.*
Court File No.: 01-CV-1980 (DSD/SRN)

Dear Magistrate Judge Nelson:

We respectfully submit this letter in response to the additional issues the Town & Country Homes Defendants placed on the agenda for the October 15, 2004 Status Conference through TCM's counsel's October 11, 2004 letter to Your Honor.

On August 15, 2003, Rottlund served discovery on the Town & Country Homes Defendants which was designed to illicit any foundation and/or authentication objections the Defendants may have concerning documents they have produced during discovery. (*See* Exs. A and B.) The Town & Country Homes Defendants refused to provide a substantive response. (*Id.*) Thereafter, as a result of the Court's June 30, 2004 Order, 222 F.R.D. 362 (D. Minn. 2004), Town & Country's Minnesota Division President's -- Art Plante's -- deposition was delayed until September 2, 2004. During his deposition, Mr. Plante's incredible testimony was riddled with "I don't recall" responses concerning most of Town & Country Homes' business records. (*See, e.g.,* Exs. C and D.) After these incredible, self-serving responses, counsel for the joint-defense partners lodged countless misplaced foundation and authentication objections.[1] (*Id.*) In fact, counsel's tactics were so extreme that TCM's counsel physically turned documents over so that the documents were face down and Mr. Plante could not be shown the contents of documents during Rottlund's counsel's questioning. (*See* Ex. K.)

Thereafter, in their reply brief in support of their motion for partial summary judgment on damages, the Town & Country Homes Defendants, for the first time, lodged foundation, authentication and hearsay objections to several documents, many of which bear their own Bates label and were produced by them in response to Rottlund's discovery requests. (Doc. No. 550 at p. 3.) During oral argument, Rottlund demonstrated that at least half of the documents objected to were Town & Country Homes' business records produced in response to Rottlund's discovery,

[1] For instance, the joint defense partners lodged over fifty objections on just two documents produced from their files. (*See* Exs. C and D).

thus all of the foundation, authentication and hearsay objections are baseless. (*See*, e.g. Doc. No. 541 at Exs. R75, R76, R80, R81, R96, R98, R107, R108, R113, and R118.) In addition, Rottlund highlighted the fact that several of the documents were prepared by Town & Country Homes' agent, thus the documents constitute Rule 803(6) business records and easily satisfy Rules 901 and 902 of the Federal Rules of Evidence. (*See, id.* at Doc. No. 541 at Exs. R62, R83; Doc. No. 543 at R140.) After oral argument, Rottlund requested that the Town & Country Homes Defendants lift these, and the other, unfounded objections. (*See* Ex. E.) They refused.

Thus, Rottlund has been forced to serve trial subpoenas on Krista Flemming -- Town & Country Homes' former employee who prepared several of the business records Town & Country Homes objects to on hearsay, foundation and authentication grounds -- and Edina Realty -- Town & Country Homes' agent who prepared the "competition shop" business records produced by Town & Country Homes. Concerning Ms. Flemming, she has informed Rottlund that she does not have any responsive documents. (*See* Ex. F.)

Concerning Edina Realty and the Town & Country Homes Defendants' "competition shop" business records,[2] the Town & Country Homes Defendants wrongly designated these business records as Attorney Eyes Only despite the fact that Rottlund's brochures are included therein. (*See, e.g.*, Ex. G.) As a result, in order for Rottlund to obtain a Rule 902(11) and Rule 803(6) declaration from Edina Realty, Rottlund must compel Edina Realty to first produce the documents because Rottlund cannot even show the "competition shop" documents to the Edina Realty employee who prepared them because the Attorney Eyes Only designations have not been lifted.[3] Accordingly, Rottlund served a trial subpoena duces tecum on Edina Reality on October 8, 2004. The individual who prepared the "competition shop" business records for Town & Country Homes -- Jim Onomiya -- has already located at least some of the responsive documents, but he subsequently made it clear that he has spoken with the Town & Country Homes Defendants' counsel and they instructed Edina Realty to force Rottlund to serve a subpoena duces tecum. (*See* Ex. I.) Thus, the Town & Country Homes Defendants' tactics have created the need for Rottlund to serve a trial subpoena and they have demanded that Rottlund do so, but they now object to the trial subpoena because Rottlund will have yet another evidentiary device to overcome their unfounded hearsay, foundation and authentication objections. The Court should not reward such tactics.

In addition, because the Town & Country Homes Defendants have lodged admissibility objections to public records from various Minnesota cities where they are developing infringing products, even though the Town & Country Homes Defendants produced these public records to Rottlund during discovery, Rottlund has been forced to obtain certified copies of public records on file with the cities of Maple Grove, Plymouth, Shakopee and Chaska. Each City is providing a certification that will satisfy Rules 803(8), 901 and 902 of the Federal Rules Evidence, and

---

[2] Attached hereto as Ex. G is a courtesy copy of Ex. R62 attached to the Krummen Affidavit (Doc. No. 541). The remainder of the "competition shops" produced by the Town & Country Homes Defendants are found at Exs. R83 and R140.

[3] Remarkably, the Town & Country Homes Defendants stipulated that they will lift all designations on November 15, 2004, but not before. (*See* Ex. H at p. 2).

certified copies of many documents previously produced by the Town & Country Homes Defendants -- along with other documents prepared by the Town & Country Homes Defendants and submitted in connection with development projects but withheld from document production to Rottlund in this case. Attached hereto as Exhibit J is a copy of the certification Rottlund received yesterday from the City of Shakopee. Thus, Rottlund now has yet another basis to overcome the misplaced objections lodged by the Town & Country Homes Defendants during the summary judgment phase on damages. (*See, e.g.*, Doc. No. 541 at R53, R78, R99, R103 and R104.)[4]

Finally, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Edina Realty, not the Town & Country Homes Defendants, has standing to move for an order to quash the trial subpoena duces tecum served on them. Fed. R. Civ. P. 45 (2004). The Town & Country Homes Defendants have offered no authority to support their unsupported request that Your Honor issue an order to quash a timely served, narrowly tailored trial subpoena duces tecum designed to address misguided admissibility objections lodged by the Town & Country Homes Defendants.

Very truly yours,

WINTHROP & WEINSTINE, P.A.

David A. Davenport
2151105v1
Enclosures

c: Christopher J. Murdoch, Esq. (via fax and U.S. Mail) (w/enc.)
Darren Schwiebert, Esq. (via messenger) (w/enc.)
Holly J. Newman, Esq. (via messenger) (w/enc.)

---

4 As Rottlund explained during oral argument opposing the Town & Country Homes Defendants' damages summary judgment motion, Rottlund intends to petition the Court for costs and attorneys' fees incurred in connection with these admissibility objections.

Exhibit H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - -

The Rottlund Company, Inc.
d/b/a Rottlund Homes,
a Minnesota corporation,

Plaintiff,

vs. Case No. 01-CV-1980

Pinnacle Corporation (DSD/SRN)
d/b/a Town & Country Homes,
an Illinois Corporation, and
Town & Country Homes, Inc.,
a Minnesota Corporation,

Defendants,

and

Town & Country Homes, Inc.,
a Minnesota corporation,
Third-Party Plaintiff,
vs.
Bloodgood Sharp Buster
Architects & Planners of Iowa,
Inc., an Iowa corporation,
Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

Status Conference
October 15, 2004

MAGISTRATE NELSON: Well that's fine. And the court would just ask all parties, Mr. Davenport included, specifically on the issues that Mr. Murdoch raises to make sure that you've consulted with your client promptly and get those documents promptly. I would presume by Tuesday you would have them.

MR. DAVENPORT: I would certainly be able to speak with our client, Your Honor. In fact I will make a phone call at the end of the day, if it turns out that it is in fact -- there is a need for some underlying data to be produced, and we'll produce them just as soon as we can.

MAGISTRATE NELSON: All right. The court will be available next week, but again, only if your meet-and-confer process simply comes to a dead end, okay?

Anything else about the supplemental damages discovery?

MR. MURDOCH: Not from Pinnacle, Your Honor.

MAGISTRATE NELSON: All right, then let's turn to the issue of third-party subpoenas which sort of dovetails with this --

(Interruption by the reporter.)

MAGISTRATE NELSON: -- the issue about

documents from third-party sources.

(Discussion off the record.)

MAGISTRATE NELSON: So that's the next issue to address. The last letter I received said that the issue was moot with respect to Fleming because there are no documents, and it remains with respect to Edina. And the gist of this, as I understand it, is an effort to authenticate these documents for trial, and the reason that there is a production request is because they have AEO designations and so the copy that Rottlund has in this case can't be shared with Edina.

Is that a fair statement of the issue?

MR. DAVENPORT: Yes, Your Honor. This is David Davenport.

MAGISTRATE NELSON: Okay. Mr. Schwiebert, you raised the issue. What say you?

MR. SCHWIEBERT: Well I realize we got about 18 minutes before we're going to lose you, --

MAGISTRATE NELSON: I know.

MR. SCHWIEBERT: -- I'm going to try to do this as quickly as I can.

MAGISTRATE NELSON: Okay.

MR. SCHWIEBERT: The plaintiff did not seek from Edina Realty or Mr. Onomiya simply the documents

which they intend to authenticate. Instead they asked very broad, reaching requests as outlined in my letter that went in Monday. I talked to Mr. Onomiya, they threatened him with a subpoena if he would not voluntarily produce documents to him. They also said --

MR. DAVENPORT: Your Honor, I just need to weigh in here with the adjectives about me threatening a third party. It's just false.

MAGISTRATE NELSON: Okay. Come on, let's be respectful here. Go ahead.

MR. SCHWIEBERT: They then issued a subpoena on him asking for production of documents six months after the close of discovery. This and the other documents that they're now producing without subpoenas, without us having the benefit of knowing what's in those files or issuing our own subpoenas is all discovery six months after the close of discovery. If they want to subpoena to the trial particular documents or particular witnesses, we have no problem with that. But to seek clear discovery document production from Edina Realty six months after the close of discovery on all documents relating to all three products, Washington Square, Homestead and Chateau, all nine communities, and all

back-to-back townhomes is a broad, reaching discovery request from a third party six months after the close of discovery. What I find amazing is that when they wanted to avoid the discovery into their expert's testimony regarding his previous employment, they sought to quash subpoenas based on the fact it was after the close of discovery. Now, shockingly, they seek discovery from third parties to produce documents at their office six months after the close of discovery and are evidently now doing their work in communities, and I don't know what requests or statements are being made to these communities in order to obtain documents that are being produced to us for the first time, again, six months after the close of discovery. We received a pack on the 13th from the City of Shakopee, from Winthrop, clearly Bates labeled by Winthrop, and a letter on the 14th from the City of Plymouth, again Bates labeled by them. And it appears from Mr. Davenport's representation that additional documents are still going to be produced.

MAGISTRATE NELSON: Well Mr. Schwiebert, I've -- I've had a -- Well I believe I've taken a look at at least an example of that, and what it appeared to be was nothing more than an affidavit

saying -- authenticating the documents and then attaching them.

MR. SCHWIEBERT: Attaching documents --

MR. DAVENPORT: That's correct.

MR. SCHWIEBERT: Attaching documents we've never seen before, Your Honor. I mean presumably my requirement now on behalf of my client is to go out to these cities, do my own investigation of what's in their files, select the documents I want, draft a certification for the same people in Shakopee and then produce those documents, again, six months after the close of discovery and within a month of the trial. I guess I am just amazed, given how many times we extended the schedule and finally got to the close of discovery, six months later, after all the dispositive motions and everything, we're now getting documents. It just has to end, Your Honor. They -- We request that the court tell the plaintiff that discovery ended, they should not be producing documents any more, whether they're digging them or getting them on subpoenas on Edina Realty. It should have ended.

MAGISTRATE NELSON: Mr. Davenport?

MR. DAVENPORT: I'll be brief, Your Honor. You've -- You've hit the nail on the head. What Mr.

Schwiebert neglected to tell you is that in the -- in the few documents that were obtained from the publicly available files in these cities, I am going through the files to find the documents that we need to put in at trial to make our case. These same documents have been produced by the defendants with their own Bates labels; they are city ordinances, city codes relating to things such as density requirements, affordability requirements, et cetera et cetera, which we heard for the first time they had a problem with when we were using them at the summary judgment phase, and I'm sure you recall that. So what we have been forced to do is go out through the city files with copies of what the defendants have produced and find these things in the city's files, and it's not just limited to things such as city council meeting minute notes where Art Plante is making a presentation to the city and they're commenting about what Mr. Plante said, but when it comes to Mr. Plante's scripts produced from the Town & Country's files, Mr. Plante says he doesn't know what it is so they object on authentication and foundation and hearsay requirements. So they -- we're finding these things in the city's files so that we can go ahead and not only have the business

records --

MAGISTRATE NELSON: Mr. Davenport, you're cutting in and out a little bit.

MR. DAVENPORT: I apologize, Your Honor.

So what we're doing is we are trying to overcome what we consider to be bad-faith objections to their business records. For example, Krista Fleming, there are many documents in these city files where Krista Fleming has sent, on Town & Country Homes' letterhead, the application for the planned unit developments. They have sent in the -- the summaries saying here's what our development's going to be, it's going to have life-cycle housing, et cetera, et cetera, Town & Country is pleased to do X, Y and Z, on their letterhead signed by Krista Fleming. They objected, Your Honor, at the summary judgment phase that Rottlund can't rely on these, they're not authentic and they don't pass our business records exception because our client can't recall anything about it. Okay. So we are getting these -- We think we can overcome that at trial, but we are confident we can overcome it with a certified copy from the city to which it was submitted because it's now a public record.

MAGISTRATE NELSON: Okay. Let me just

interrupt here just in an effort to -- to get to the bottom of this. The court has no trouble with you taking -- you getting a certification from the city for documents that were in Town & Country's files or were in some other fashion disclosed to Town & Country, but what I hear Mr. Schwiebert saying is that there are new documents. Is that your view, or not?

MR. DAVENPORT: There are likely a few new documents, Your Honor, because some of the documentation that Town & Country produced would have been maybe an excerpt from a city code, so we -- for example, Maple Grove which I hope to have later today but it'll probably be Monday, we had to go out and get the entire code from the City of Maple Grove in order to get the two or three pages that Town & Country used in their business records to prepare these documents. So yes, there will be some new information so that we have the full scope of the documents. There are also letters that will be new information that we have found that are on Town & Country letterhead. There's a document to the City of Plymouth written by the land -- the former land development manager from Town & Country on Town & Country's letterhead saying, hey, we're going to come

to Plymouth, we want to build this Homestead Collection because it filled a nice niche in Maple Grove, here are the Homestead Collection designs. I don't recall ever seeing that document produced by the defendant, so to the extent that that's a new document, that's correct. But the exercise that we've been engaged in now since that summary judgment hearing has been go out to the cities so that we can lay the foundation and get the certifications in order to overcome these what we consider to be misplaced objections.

MR. SCHWIEBERT: Your Honor, these lists are riddled with things like city council memo prepared by Julie Klima dated September 4th, 2001; city council memo prepared by Julie Klima dated January 2nd, 2002; planning commission minutes for April 5th, 2001. I'm just reading down the list. Planning committee -- commission minutes for April 19th, 2001. The vast majority of this stuff is not stuff that was in Town & Country's files.

MR. DAVENPORT: Your Honor, I have a simple solution to this problem. If in fact Mr. Schwiebert believes that there are new documents that we should not be able to be relied upon, then he ought to bring a motion in limine at trial. If I and my client have

decided it's in our best interest to go out and try to authenticate documents and get certified copies of documents from the City of Plymouth and that's how we want to spend our time the 30 days before trial, he can move in limine to stop us from bringing that evidence into the trial.

MAGISTRATE NELSON: Okay.

MR. DAVENPORT: I don't think he can stop me from going to publicly available files and getting copies.

MAGISTRATE NELSON: Okay. Let me suggest this as a proposal. That certainly is true, you can bring motions in limine. However, it seems to me that the fair way to proceed at this point is to permit Mr. Davenport to get those certifications, I have no trouble with that at all, and certainly if the document in Town & Country's files or Pinnacle's files -- I presume it's just Town & Country's files, was an excerpt and he needs the full scope of the document I don't have any trouble with that. If the document's on TCM letterhead I certainly don't have trouble with that. Or if the document's previously produced I don't have trouble with that.

I have some trouble, though, with documents that have -- that just don't fall within one of those

categories. So let me just say as guidance, that's how this court believes you should proceed. And you can tell Judge Doty at the time of any subsequent motion in limine that that's what this court said.

MR. DAVENPORT: Thank you, Your Honor. Now just real quickly if I may, with respect to Edina Realty. I have spoken with Edina Realty's general counsel, we've been trading some voice mails, and they have every intention of complying with that subpoena. So Edina Realty has no objections, Edina Realty understands exactly what we are trying to do and they are going to comply, and they did it without threat.

MAGISTRATE NELSON: Okay. Now what I think I did last time on the third-party subpoena question was, at the defense's request they believed a formal motion was appropriate. I think that that will have to be the case here as well, and so we'll just leave it at that.

MR. SCHWIEBERT: Can we get a hearing date, Your Honor?

MAGISTRATE NELSON: Yes.

MR. DAVENPORT: Your Honor, if I may before we move on to that specific issue, what would very -- what would make this so much easier is if the Town &

Country defendants would do what they say they're going to do 30 days from now and lift the attorney-eyes-only designation on the competition shop documents, then Edina Realty is able to go ahead and be shown the documents that they themselves prepared and have attached Rottlund brochures to that are marked attorney eyes only and Edina Realty can then provide us with the appropriate certification, so it's entirely possible that they may not even be needed for trial to testify to lay the foundation. But because we have an attorney eyes only designation, we have to subpoena them.

MAGISTRATE NELSON: Mr. Schwiebert, how do you respond to that point?

MR. SCHWIEBERT: The offer was at trial if people go to use exhibits we don't believe the protective order should prevent the open use of documents at trial. We're not suggesting, for example, documents that we object to that never get admitted into evidence suddenly become free things and the protective order is thrown out the window. That was never the offer, that's not the agreement between the parties.

MAGISTRATE NELSON: But my -- my concern is this, that if you should bring a motion to quash the

subpoena, there would be a counter motion to lift this AEO designation. I haven't seen the documents, I don't know if they should have an AEO designation or not, but I think you should address that before the motion.

MR. DAVENPORT: Your Honor, Exhibit G to my October 12th letter to you is an example of the competition shop documents that we are trying desperately to have Edina Realty produce so that we can then say Edina Realty, okay, can you sign a declaration for authentication of business record purposes. And you'll see in Exhibit G the very first thing attached to the just slightly more than one page competition shop is a Rottlund brochure designated attorney eyes only.

MR. SCHWIEBERT: Your Honor, perhaps the solution to Edina Realty is similar to the solution to the cities. Unfortunately the subpoena that they issued for documents is incredibly broad. If the issue is them obtaining copies of the documents we've produced from Edina, I'm sure that issue can be resolved. What we have difficulty with is their broad, sweeping request of Edina Realty as a third party six months after the close of discovery.

MR. DAVENPORT: Edina Realty knows exactly

what Rottlund has requested through that subpoena and that is what Edina Realty is going to produce. They have no objection to doing so.

MR. SCHWIEBERT: But we have an objection to six months after the close of discovery having documents dumped on us one month before the trial. That's not fair.

MAGISTRATE NELSON: Okay. Again here I see a distinction, a distinction between lifting an AEO designation for purposes of certifying documents as authentic. That's one issue. A second issue is the business of having some broad-based subpoena. I think that is of concern and could be the subject of a motion in limine, and again I'm going to guide you consistently, the same guidance I gave before.

We have a few minutes left and I think we better talk about the Sandelin and Anderson depositions. If you believe that we need another status conference, which it looks like we do, what I would suggest you do is call Bev on Monday morning and get something on right away.

MR. DAVENPORT: Thank you, Your Honor.

MAGISTRATE NELSON: She's not here right now.

But let's quickly talk about Sandelin and

# Exhibit I

Edina Realty Home Services

www.edinarealty.com

EDINA REALTY • EDINA REALTY MORTGAGE • EDINA REALTY TITLE

October 22, 2004

David A. Davenport
Winthrop & Weinstine
225 South Sixth Street
Suite 3500
Minneapolis, MN 55402

Re: Rottlund v. Town & Country

Dear Mr. Davenport:

Please be advised that I represent Edina Realty, Inc., and its agent, Jim Onomiya, in connection with the above matter. In that capacity, I have received a copy of your subpoena of Mr. Onomiya. Please direct future communications regarding this matter to my attention.

I have recently learned that there is a dispute between the parties as to whether your subpoena was issued in violation of the discovery deadline in the court's scheduling order. It is my understanding that you previously exchanged voice mails with Henry Brandis, who is in Edina Realty's legal department, but is not an attorney. It is also my understanding that you did not inform Mr. Brandis of this deadline issue or any dispute between the parties.

Nevertheless, we are not objecting to the subpoena. Issues relating to a scheduling order are for the parties to argue and for the court to enforce. If a motion to quash the subpoena is made, however, we will ask the court to allow us to refrain from producing the documents until the issue is decided.

Sincerely,

C.J. Deike, Vice President
Corporate Counsel

cc: Jim Onomiya

EDINA REALTY 6800 France Ave S, Suite 600 Edina, MN 55435 PHONE 952.928.5718 FAX 952.928.5726

Exhibit J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - -

The Rottlund Company, Inc.
d/b/a Rottlund Homes,
a Minnesota corporation,
Plaintiff,

vs. Case No. 01-CV-1980 (DSD/SRN)

Pinnacle Corporation
d/b/a Town & Country Homes,
an Illinois Corporation, and
Town & Country Homes, Inc.,
a Minnesota Corporation,
Defendants,

and

Town & Country Homes, Inc.,
a Minnesota corporation,
Third-Party Plaintiff,

vs.

Bloodgood Sharp Buster
Architects & Planners of Iowa,
Inc., an Iowa corporation,
Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

STATUS CONFERENCE
October 25, 2004

(The following is the status conference hearing, held telephonically, before Magisrate Judge Susan Nelson, in the city of Minneapolis, state of Minnesota, commencing at approximately 10:30 o'clock a.m., October 25, 2004.)

THE COURT: Right.

MR. DAVENPORT: I thought that issue was resolved in such fashion the defendants were free to bring a motion in limine if there are new documents that Edina Realty is producing. I subsequently Friday afternoon got a letter from Edina Realty saying that they understand that there may be a motion to compel and -- excuse me, a motion to quash. They don't intend to object to the subpoena but if there is a motion to quash, then they will not be complying with the subpoena. As I understood the court to say the last time, there is not going to be a motion to quash; is that correct?

THE COURT: Mr. Schwiebert, what's your intent?

MR. SCHWIEBERT: My intention is to file a motion to quash. I thought that was clear from the last status conference when the court said the way to resolve this was a formal motion to quash like the ongoing or the then ongoing University of Minnesota subpoena. We do intend to file a motion to quash the production of these documents.

THE COURT: Okay. I think that's half true. I think I did say that but I also went on to say that if the purpose of this production was for

purposes of authenticity or hearsay connected to already produced documents on TCM's file, it was my strong view those documents ought to be produced, that my concern had to do with new documents and that's where I drew the line, and then I think I said that's guidance for the parties and you ought to bring that to Judge Doty's attention any such time we have a motion in limine. So, I would be concerned if the motion to quash covered documents that have already been produced from TCM's file.

MR. SCHWIEBERT: I understand, Your Honor.

MR. DAVENPORT: Your Honor, if we could, further to this issue, if we could have the court order the attorneys' eyes only designations given to those competition shop documents which I attached an example of in my letter to the court, as you recall it's about a page and a quarter and attached immediately thereafter the brochure of Rottlund

THE COURT: Yes.

MR. DAVENPORT: Designated attorneys' eyes only. As I explained the last time, these designations make it impossible for me to go to Edina Realty, say here's the document, can you sign a declaration that you prepared it, you authored it, et cetera, et cetera. That's why the subpoena issue

is here.

THE COURT: I agree with that, Mr. Schwiebert. Why can't we do that?

MR. SCHWIEBERT: I have no problem with Edina Realty having access to documents Edina Realty authored. I've never taken a contrary position in this case. I'm not going to, however, lift the entire attorneys' eyes only limitation on those documents. If Rottlund wants to transmit to Edina Realty documents authored by Edina Realty, we have no problem with that.

THE COURT: My concern is, though, we will have to lift it at trial anyways, so we can do things at trial, Judge Doty can do things at trial to keep those confidential from the outside world, but I think they will be used at trial, so maybe the parties can come up with some agreement on them It sounds like we should be able to. We are all on the same page.

MR. DAVENPORT: I think so, Your Honor. In fact, Mr. Schwiebert and I, hopefully we can talk about it later today.

THE COURT: Okay.

MR. DAVENPORT: It seems to me the things that we have asked Edina Realty to provide to us are

documents that the defendants have produced.

MR. SCHWIEBERT: We talked about this last time, Your Honor. Their subpoena asked for all documents relating to all three products types, Washington Square, Chateau and Homestead, all seven communities, extremely broad subpoena on Edina Realty, which may produce a volume of information not in Town & Country's files that should not be allowed in this case at this point.

THE COURT: It seems to me the obvious way to resolve this is sit down and review the documents Mr. Davenport is seeking to get authenticated and lift the AEO for the purposes of doing that and going ahead and doing that and then having a separate argument about the volume of documents that have not appeared in this litigation to date.

MR. DAVENPORT: Thank you, Your Honor

THE COURT: Okay. Anything further from the parties?

MR. DAVENPORT: No, Your Honor.

THE COURT: All right. The report recommendation on damages will be issued today and the final report and recommendation on the remainder of defendants' motion for summary judgment will be issued by the end of the week. I've had to shorten

Exhibit K

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br><br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**PLAINTIFF'S DISCOVERY REQUESTS TO DEFENDANT TOWN & COUNTRY HOMES, INC. (SET VII)** |

TO: Defendant Town & Country Homes, Inc. and its attorneys Darren B. Schwiebert, Fredrickson & Byron, P.A., 4000 Pillsbury Center, 200 South Sixth Street, Minneapolis, Minnesota 55402;

Pursuant to Rules 33 and 36 of the Federal Rules of Civil Procedure, Plaintiff, The Rottlund Company, Inc., d/b/a Rottlund Homes ("Rottlund"), hereby requests that Defendant

Town & Country Homes, Inc. ("TCM") through its attorneys, agents, representatives or otherwise, answer the following interrogatories and requests for admission, under oath. Rottlund herein requests that TCM serve its answers to the offices of Winthrop & Weinstine, P.A., Suite 3500, 225 South Sixth Street, Minneapolis, Minnesota, 55402-4629 within thirty (30) days from the date of service hereof.

**DEFINITIONS**

1. "Plaintiff" shall refer to the named party Plaintiff, Rottlund, including its attorneys or other persons acting or purporting to act on behalf of Plaintiff.

2. "Defendants" shall refer to, individually and/or collectively, the named party Defendant Pinnacle Corporation d/b/a Town & Country Homes ("Pinnacle"), TCM, and Defendant Bloodgood Sharp Buster Architects & Planners of Iowa, Inc. ("BSB") including each of their predecessors, successors, parents, divisions, subsidiaries, and affiliates, directly or indirectly, wholly or in part, owned or controlled by them, and each partnership or joint venture to which any of them is a party; and all present and former directors, officers, employees, agents, consultants, attorneys and/or other persons acting for or on behalf of any of them.

3. The word "person(s)" means individuals and entities including, without limitation, sole proprietorships, firms, associates, companies, partnerships, joint ventures, corporations and any other legal, business or governmental entity.

4. "You" or "your" means the persons and/or entities upon whom these requests were served, each of their predecessors, successors, parents, divisions, subsidiaries, and affiliates, directly or indirectly, wholly or in part, owned or controlled by them, and each partnership or joint venture to which any of them is a party; and all present and former directors, officers, employees, agents, consultants, or other persons acting for or on behalf of any of them.

5. The word "document" or "documents" shall mean any written, recorded, or graphic material, whether prepared by you or by another person, that is in your possession, custody, or control. The terms include memoranda; reports; letters; telegrams; electronic correspondence; any communications recorded in any form or medium; notes; minutes; and transcripts of conferences, meetings, and telephone or other communications; contracts and other agreements; statements, ledgers, and other records of financial matters or commercial transactions; notebooks and diaries; diagrams, graphs, charts, blueprints, and other drawings; plans and specifications; publications and published or unpublished speeches or articles; photographs, photocopies, microfilm, microfiche, and other copies or reproductions; tape, disk, and other electronic recordings; and computer printouts. The term "document" also includes electronically-stored data from which information can be obtained either directly or by translation through detection devices or readers; any such document is to be produced in a reasonably legible and usable form. The term "document" includes the original document (or a copy thereof if the original is not available), all drafts, whether or not they resulted in a final document, and all copies which differ in any respect from the original, including any notation, underlining, marking, or information not on the original.

6. "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons, together with all modifications or amendments thereto.

7. "And" and "or" are terms of inclusion and not of exclusion, and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these or any subsequent requests that might otherwise be construed to be outside there scope.

8. "Any" means one or more.

9. "Communicate" means to exchange, transfer, or disseminate facts or information, regardless of the means by which it is accomplished.

10. "Communication" means any exchange, transfer, or dissemination of facts or information, regardless of the means by which it is accomplished.

11. "Describe" means to provide a comprehensive, complete, accurate, and detailed description, explanation, or listing.

12. "Identify" means to state:

a. in the case of a natural person, the person's name, business address, and telephone number;

b. in the case of a person other than a natural person, its name, the address of its principal place of business, its telephone number, the name of its chief executive officer, and, if applicable, the natural person who is your company's primary contact at that entity;

c. in the case of a document, its Bates stamp number, author, addressee(s), each person that received it, type of document (*e.g.*, letter, memorandum, telegram, facsimile, contract, computer disk), present location and custodian, or, if any such document was, but is no longer within your possession or subject to your control, the disposition that was made thereof and the date of such disposition;

d. in the case of a communication, its date, type (*e.g.*, telephone conversation, letter, or meeting), the place where it occurred, the identity of the person who made the communication, the identity of each person who received the communication or who was present when it was made, and the subject matter discussed; and

e. in the case of a contract provision, the paragraph number of the provision in the contract and the number of the page or pages on which the provision appears, as well as the name of each entity in whose contract the provision appears.

13. "Drafted" means wrote or authored.

14. "Drafts" mean preliminary versions of a complete or incomplete document, incomplete preliminary versions of a complete or incomplete document or evolving compositions of a complete or incomplete document.

15. "Each" includes every, and vice versa.

16. "Including" means including, but not limited to.

17. "Person" means any natural person, corporation, firm, company, sole proprietorship, partnership, joint venture, association, institute, or other business, legal, or government entity.

18. "Relate to" means discuss, describe, refer to, forecast, reflect, contain, analyze, study, report on, comment on, evidence, constitute, set forth, consider, recommend, concern, or pertain to, in whole or in part.

19. "Itemize" means to set forth each item or instance in detail or by particulars.

20. "Policy" means a principle, plan, strategy, scheme or course of action.

21. "Process" means manner, policy, method, procedure or operation.

22. "Year" means calendar year, unless otherwise specified.

**INSTRUCTIONS**

1. In answering this discovery, you are required to furnish all information available to you, including information in the possession of your investigators, agents, representatives, attorneys and any other person or persons acting on your behalf.

2. For each document that is produced, identify and specify the particular numbered request(s) in response to which the document is being produced.

3. Produce all documents in the file folders and file cartons in which they have been maintained or stored, slipped, stapled or otherwise arranged in the same form and manner as they were found.

4. Any response to the following discovery shall set forth the request in full before each response. Separate responses shall be provided with respect to each request. If, after a good faith search, you conclude that there have never been documents responsive to a particular request, so state.

5. For each discovery request or portion thereof that you refuse to provide an answer or produce responsive documents based upon any claim of privilege, submit a sworn or certified statement from your counsel setting forth the nature of the privilege claimed. If only a portion of the answer or document is privileged, please answer or produce any and all non-privileged portions.

6. If you object to a specific discovery request as overly broad, burdensome, oppressive, or you otherwise refuse to provide an answer or response to the request, state the facts or other evidence demonstrating the nature of the objection.

7. If any document requested herein was at one time in existence, but has been lost, discarded or destroyed, identify such document as completely as possible, including:

a. the type of document;

b. its date;

c. the date or approximate date it was lost, discarded or destroyed;

d. the reason or reasons for losing, disposing or destroying the document;

e. the circumstances and manner in which it was lost, discarded or destroyed;

f. the identity of the person(s) having knowledge of the contents of the document;

g. the identity of all persons authorizing or having knowledge of the circumstances surrounding the loss, disposal or destruction of the document; and

h. the identity of all persons who lost, discarded or destroyed the document.

8. In the event any discovery request cannot be fully answered or responded to after the exercise of reasonable diligence, you are requested to furnish as complete an answer as possible and explain in detail the reasons why a complete answer or response cannot be given.

9. The singular form of a noun or pronoun includes its plural form, and vice versa.

10. The present tense of verbs shall be construed to include the past; the past tense of verbs shall be construed to include the present.

11. No agreement or stipulation by Rottlund or any of its representatives purporting to modify, limit, or otherwise vary these discovery requests are valid or binding unless confirmed or acknowledged in writing, or made of record in open court, by a duly authorized representative thereof.

12. If compliance with any part of these discovery requests include the submission of information in machine-readable form, the data should be readable by a personal computer employing Microsoft DOS and should be produced on 5-1/4 or 3-1/2 inch magnetic disks in DOS-compatible form. Provide the following information about the data:

a. file name;

b. file format (*e.g.*, ASCII, LOTUS);

c. number of bytes;

d. disk density;

e. operating system and version;

f. record layout (*i.e.*, description, length, and position of each field); and

g. translation tables for encoded fields.

Also submit a printout of the first 100 records.

13. In responding to any discovery request that calls for information or documents relating to "any persons" or "each person," include information or documents relating to your company, if applicable.

**TIME PERIOD**

Unless otherwise stated, these discovery requests call for all information and documents generated, prepared or received during the period from January 1, 1997 up to and including the date of response or production, or which refers to matters occurring within such period.

**SUPPLEMENTATION**

Rottlund reserves the right to request additional discovery. These discovery requests are to be considered as continuing and you are requested to provide, immediately, by way of supplementary answers thereto, such additional information as you or any other person acting on your behalf, may hereinafter obtain which augments, changes, or otherwise modifies your answers now given to these Interrogatories. Likewise, should any documents, as defined herein, responsive to or within the scope of these discovery requests hereafter come into the possession, custody or control of, or become known to you, demand is hereby made that the same be produced immediately.

**CLAIM OF PRIVILEGE**

If you claim that any discovery request herein would result in a disclosure of information, or call for the provision of one or more documents, which you claim is or are privileged, and such

privilege is asserted or documents responsive to a request are withheld on the grounds of privilege, or for any other reason, identify in writing the information or document which is being withheld, and provide the following information:

1. The reason for withholding the information or document;
2. A statement of the basis for the claim of privilege, work product or other ground of nondisclosure; and
3. If the claim of privilege relates to a document, a brief description of such document, including:
    a. the date of the document;
    b. the number of pages of the document;
    c. the name of its author(s) or preparer(s), and an identification by employment and title of each such person;
    d. the name of each person who was sent or has had access to or custody of the original or a copy of the document, and an identification of the employment and title of each such person;
    e. the present custodian of the original and every copy of the document; and
    f. the subject matter of the document.

Any document or part of a document withheld under a claim of privilege must be preserved.

## <u>REQUESTS FOR ADMISSIONS</u>

**<u>REQUEST NO. 1:</u>** For each document you have produced in discovery, except documents generated by Plaintiff, admit that the document was made at or near the time by, or from information transmitted by, a person with knowledge of the information contained in the document.

**REQUEST NO. 2:** For each document you have produced in discovery, except documents generated by Plaintiff, admit that the document was kept in the course of a regularly conducted business activity.

**REQUEST NO. 3:** For each document you have produced in discovery admit that it was generated or received in your ordinary course of business.

**REQUEST NO. 4:** For each document you have produced in discovery, except documents generated by Plaintiff, admit that the document is authentic.

**INTERROGATORIES**

**INTERROGATORY NO. 1:** Please identify each document that you produced, except documents generated by Plaintiff, that you do not admit was made at or near the time by, or from information transmitted by, a person with knowledge of the information contained in the document. For each such document, please state the basis for not admitting that it was made at or near the time by, or from information transmitted by, a person with knowledge of the information contained in the document.

**INTERROGATORY NO. 2:** Please identify each document that you produced, except documents generated by Plaintiff, that you do not admit was kept in the course of a regularly conducted business activity. For each such document, please state the basis for not admitting that it was kept in the course of a regularly conducted business activity.

**INTERROGATORY NO. 3:** Please identify each document that you produced, except documents generated by Plaintiff, that you do not admit was generated or received in your ordinary course of business. For each such document, please state the basis for not admitting that it was generated or received in your ordinary course of business.

**INTERROGATORY NO. 4:** Please identify each document that you produced, except documents generated by Plaintiff, that you do not admit is authentic.

Dated: August 15, 2003

**WINTHROP & WEINSTINE, P.A.**

By ______________________
Craig S. Krummen, #259081
David A. Davenport, #00285109

225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
Telephone: (612) 604-6400

***Attorneys for Plaintiff***
***The Rottlund Company, Inc.***
***d/b/a Rottlund Homes***

2053633v1

# Exhibit L

**From:** Unity Messaging System - WUNITY1
**Sent:** Friday, November 05, 2004 11:54 AM
**To:** Davenport David
**Subject:** Message from 9529285959

Hi Dave, it's C.J., Edina Realty 952-928-5959. Got your message. I.... ya know...I've seen the date it's November 12th for this hearing and... then of course the trial starts Monday. I should... ya know.... if there's an order immediately denying the Motion to Quash I should be able to get you something Friday so we can work on that. I don't know whether...I don't know that I'll be able to attend the hearing...I probably would like to but I'm not sure I'm going to be able to, but we can work something out in the event that you do get an order right away. Anyway, give me a call if you.... if you want to talk a little bit more about being able to do that otherwise maybe we should talk as it approaches the hearing. And then I'll have a better idea of what I'll be able to do as far as the documents, whether we'll have to messenger them over, maybe... maybe you'd be able to send somebody over to pick them up... but we can talk about it.