UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc., d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Pinnacle Corporation, d/b/a Town & County Homes, an Illinois Corporation, Town & County Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br><br>and<br><br>Town & County Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | No.: 01-CV-1980 (DSD/SRN)<br><br>**PINNACLE CORPORATION AND TOWN & COUNTRY HOMES, INC.'S MEMORANDUM IN SUPPORT OF ITS OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING CHATEAU COLLECTION, AS-BUILT WORKS, AND INDIRECT LIABILITY**<br><br>**(ORAL ARGUMENT REQUESTED)** |

The Report and Recommendation dated October 28, 2004 ("Report") creates a standard for copyright infringement that guarantees that *every* allegation of copyright infringement against back-to-back townhome proceeds to a jury trial.

Back-to-back products by Centex, Pulte, D.R. Horton, Bright Keys, Orrin Thompson, GM Homes, Donnay Builders, Twin City Townhomes, Gardner Brothers Homes, etc. in the Twin Cities market – and numerous other manufacturers nationwide – all must proceed to jury trials under the Report's superficial extrinsic analysis because they are all "residential, back-to-back townhomes." Report at 6.

The Report's superficial extrinsic analysis[1] is directly contrary to the Eighth Circuit decisions in *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939 (8th Cir. 1992) and *Hartman v. Hallmark Card, Inc.*, 833 F.2d 117 (8th Cir. 1987). In both *Moore* and *Hartman*, the Eighth Circuit affirmed summary judgment for the defendant under the extrinsic step of the copyright infringement analysis. In both *Moore* and *Hartman*, the Eighth Circuit examined the "objective similarities in the details of the works" under the extrinsic test and held that, as a matter of law, the copyright holder failed to establish objective similarities in the details of the works. *Moore*, 972 F.2d at 945. *Hartman*, 833 F.2d at 120.

Applying the Report's superficial standard to the facts in *Hartman* and *Moore* would have dictated a different result from that reached by the Eighth Circuit. At a superficial level, both works at issue in *Moore* were hip-hop songs. Similarly, at a superficial level, both works at issue in *Hartman* were multi-colored "rainbow" graphics. Thus, in *Hartman* and *Moore*, application of the Report's superficial standard would have resulted in a finding of substantial similarity. That was not the result reached by the Eighth Circuit in either case.

---

[1] The term "superficial" comes from the Report. The Report at page 9 cites Defendants' architectural expert for his statement that there are "superficial similarities" as satisfying the extrinsic step.

The difference between the Report's superficial extrinsic analysis and the Eighth Circuit's requirement for this step of the substantial similarity analysis is highlighted by the Eighth Circuit's pronouncement in *Moore* that "[w]e rely on expert testimony to conduct the extrinsic test." *Moore*, 972 F.2d at 945. Experts are not necessary to perform the Report's superficial analysis. Experts are not necessary to determine that the products are back-to-back townhomes. Experts *are* necessary to compare the "objective similarities in the details of the works."

In addition to being contrary to Eighth Circuit copyright law, the Report's superficial extrinsic test is directly contrary to the decisions from this Court in *Hoch v. MasterCard Intern. Inc.*, 284 F. Supp.2d 1217 (D. Minn. 2003) and *Kootenia Homes, Inc. v. Reliable Homes, Inc.*, No. 00-1117, 2002 WL 15594 (D. Minn. 2002). Following *Hartman* and *Moore*, the Court in both *Hoch* and *Kootenia* granted summary judgment for the defendant based on the lack of similarity in the protectable details identified by analyzing the objective details of the works. Applying the Report's superficial standard, because *Kootenia* involved custom residential single family homes and *Hoch* involved videos of road trips to baseball stadiums by two friends using a Volkswagen van, both copyright holders would have prevailed on summary judgment. Both Courts, however, applied the Eighth Circuit's test for the extrinsic step and held that these superficial similarities were insufficient.

Finally, the Report's superficial extrinsic standard fails to satisfy the constitutional requirement protecting the right of the public to use the ideas of

others as explained by the Supreme Court in *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991):

> As one commentator explains it: "[N]o matter how much original authorship the work displays, the facts and ideas it exposes are free for the taking.... [T]he very same facts and ideas may be divorced from the context imposed by the author, and restated or reshuffled by second comers, even if the author was the first to discover the facts or to propose the ideas." Ginsburg 1868. It may seem unfair that much of the fruit of the compiler's labor may be used by others without compensation. As Justice Brennan has correctly observed, however, this is not "some unforeseen byproduct of a statutory scheme." *Harper & Row*, 471 U.S., at 589, 105 S.Ct., at 2245 (dissenting opinion). It is, rather, "the essence of copyright," ibid., and a constitutional requirement. The primary objective of copyright is not to reward the labor of authors, but "[t]o promote the Progress of Science and useful Arts." Art. I, § 8, cl. 8. Accord, *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156, 95 S.Ct. 2040, 2044, 45 L.Ed.2d 84 (1975). To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work. *Harper & Row*, supra, 471 U.S., at 556-557, 105 S.Ct., at 2228-2229. This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship.

499 U.S. at 349-50.

In addition to applying the incorrect standard for extrinsic step of substantial similarity, the Report failed to compare the works at issue for the intrinsic step of substantial similarity. Instead, the Report improperly relies upon statements made by TCM employees to city officials about some of the differences between the previous Homestead Collection and the Chateau Collection. The fact is that the Chateau Collection is not a revision or modification of the Homestead Collection. But putting that issue to the side, the question remains whether the Chateau Collection is substantially similar to the Villa II technical drawings at issue. A comparison of the side elevations and front elevations of the two works in question –

a comparison that the Report never makes – demonstrates that reasonable jurors could not disagree that the expressions of the works are not substantially similar.

Both side (or end) elevations of Rottlund's 447-395 plan are the same:



(Docket Number 407, Murdoch Aff., Ex E). The Rush Creek Villa II has only two unit types (interior and exterior). The Chateau Collection has three unit types (2 different exterior or end units). The side elevation (above) bears no resemblance to the side elevations of either Chateau end unit townhomes (shown below):




1 EXTERIOR END ELEVATION - A UNIT
SCALE 1/8" = 1'-0"




2 EXTERIOR END ELEVATION - C UNIT
SCALE 1/8" = 1'-0"

(Docket Number 408, Schwiebert Aff., Ex. F)

The front elevations are also dramatically different. Rottlund's 447-395 plan depicts an eight-unit structure:



(Docket Number 407, Murdoch Aff., Ex E)

The Chateau product has a variety of unit configurations (six unit, eight unit, etc.) combining the three unit types. Even comparing just the eight-unit Chateau Collection configuration, it is apparent that, besides both products having four garage doors, the structure looks nothing like Rottlund's Villa II product:




(Docket Number 408, Schwiebert Aff., Ex. F). A similar comparison of the floor plans for the units reveals the same dramatic differences. Thus, the Court should reject the Report's recommendation and grant summary judgment regarding the Chateau Collection.

The Report improperly grants plaintiff summary judgment of access regarding the Chateau Collection and the as-built works despite the fact that the plaintiff never moved for summary judgment on these issues. Thus, the defendants never had an opportunity to brief or argue this issue. In denying defendants' motion for summary judgment on access, the Report relies upon the previous Report and Recommendation relating to the Homestead Collection. Defendants incorporate their entire objections on these issues to the previous Report and Recommendation, herein by reference.

This Court should reject the Report's recommendation regarding vicarious liability between TCM and Pinnacle. There is no evidence that TCM had the right or ability to supervise Pinnacle. The fact that Pinnacle and TCM both pay a fee to a third company (TCH) does not constitute evidence that TCM has the right and ability to supervise Pinnacle that coalesces with an obvious and direct financial interest, or vice versa. If true, this allegation would mean, at most, that the third company (as opposed to either TCM or Pinnacle) had some financial interest. Plaintiff has not presented any evidence that any of Pinnacle's money transferred to TCH ends up at TCM, or vice versa. Similarly, allegations relating to who was bearing expenses during litigation – even if correct – would not establish an obvious and direct financial interest in the building of townhomes. At most, it would establish a common interest in the outcome of the litigation, which is not surprising given the indirect claims alleged by the plaintiff.

This Court should similarly reject the Report's recommendation regarding contributory infringement. Plaintiff has not presented evidence that TCM induced, caused, or materially contributed to the allegedly infringing conduct of Pinnacle, or vice versa. As set forth in Pinnacle and TCM's motion *in limine* regarding corporate separateness, TCM and Pinnacle are separate corporations and plaintiff has never alleged a "piercing the corporate veil" theory in any of its complaints. The facts relied upon by the Report simply indicate some relationship between the two separate corporations. First, the Report cites the fact that Pinnacle, TCM, and BSB toured product in the Twin Cities together. This does not satisfy the contributory infringement standard. Next, the Report improperly relies upon common insurance between Pinnacle and TCM. This does not establish that either party induced, caused, or materially contributed to the other party's construction of back-to-back townhomes. The Report next relies upon sloppy references in TCM's materials regarding whether they are a division or a separate corporation. This evidence is not determinative of corporate separateness and does not establish that TCM or Pinnacle induced, caused, or materially contributed to the other party's construction of back-to-back townhomes.

## CONCLUSION

Pinnacle and TCM ask this Court to reject the Report and grant defendants' motion for summary judgment regarding the Chateau Collection, the as-built products, vicarious liability and contributory infringement.

Dated: November 5, 2004

s/Darren B. Schwiebert

Daniel J. Maertens (#188311)
Cynthia Jokela Moyer (#211229)
Darren B. Schwiebert (#0260642)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street #4000
Minneapolis, MN 55402
Tel. (612) 492-7312
Fax (612) 492-7077

ATTORNEYS FOR DEFENDANT
TOWN & COUNTRY HOMES, INC.

- AND –

Edward F. Ryan
Christopher J. Murdoch
Matthew I. Farmer
**HOLLAND & KNIGHT LLP**
131 South Dearborn Street, 30th Fl.
Chicago, IL 60603
Telephone: (312) 263-3600
Facsimile: (312) 578-6666

David Donna (#163624)
**DONNA & DALY**
1460 Buffet Way, Suite 150
Eagan, MN 55121
Telephone: (651) 406-4242
Facsimile: (651) 406-4243

ATTORNEYS FOR DEFENDANT
PINNACLE CORPORATION