UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants,<br><br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | Civil No. 01-1980 (DSD/SRN)<br><br>**DEFENDANTS BLOODGOOD SHARP BUSTER ARCHITECTS AND PLANNERS OF IOWA, INC., AND THE BLOODGOOD GROUP, INC.'S APPEAL OF MAGISTRATE JUDGE NELSON'S NOVEMBER 1, 2004 ORDER**<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. ("BSB") and The Bloodgood Group, Inc. ("BGI") submit this appeal from the Order issued by Magistrate Judge Nelson on November 1, 2004 (the "Order").

## I. THE ORDER ERRED IN CONCLUDING THAT BSB AND BGI'S EMPLOYEES WERE SUBJECT TO THE REQUIREMENTS OF RULE 26(a)(2)(B).

The Order precludes certain BSB and BGI employees (collectively referred to herein as the "Employees") from providing expert testimony in this matter on the basis that the Employees' expert disclosures did not satisfy the requirements of Fed.R.Civ.P. 26(a)(2)(B) (hereinafter, the "Rule"). However, the Order does not address whether the Rule applies at all to the Employees. The plain text of the Rule, and case law in this district and others, indicates that there is substantial uncertainty as to whether or not the Rule applies to witnesses like the Employees.

The Rule states that expert disclosures shall be made by: "a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony…." Thus, by its plain words, the Rule creates four categories of expert witnesses: (1) those retained by a party to provide expert testimony; (2) those specially employed by a party to provide expert testimony; (3) those whose duties as an employee of the party regularly involve giving expert testimony; and (4) all witnesses who do not fit into the previous 3 categories. Witnesses who fall into categories 1, 2 and 3 must provide reports, while witnesses who fall into category 4 do not. It is undisputed that the Employees (Larry Moore, Chris Jorgensen, Doug Buster and Joe Safin) were not retained by BSB or BGI to provide expert testimony in this case. It is also undisputed that the Employees do not regularly give expert testimony as part of their employment. Therefore, expert disclosures are only required from these witnesses if they have been "specially employed to provide expert testimony." Before the Magistrate Judge, Rottlund relied on Day v. Consolidated Rail Corp.,

1996 WL 257654 (S.D.N.Y. 1996)[1], and the cases which have followed it, for the proposition that the Employees are required to submit expert disclosures. These cases are uninstructive, for (1) the Day case was wrongly decided, and relies on faulty reasoning to reach its conclusion, and (2) the Employees fall within the "hybrid witness" exception to the rule established in Day.

**A. The Day case was wrongly decided and should not be followed by the Court.**

In Day, Consolidated Rail Corp. sought to call Walter Heide, an employee, as an expert witness. While some disclosure was provided regarding Heide, the court found that disclosure to be "inadequate to meet the requirements of Fed.R.Civ.P. 26(a)(2)(B)." Id. at *1. Consolidated Rail argued that the Rule was inapplicable to Heide. The court rejected Consolidated Rail's argument on this basis: "[i]n a case such as this, in which it appears that the witness in question—that is, Mr. Heide—although employed by the defendant, is being called solely or principally to offer expert testimony, there is little justification for construing the rules as excusing the report requirement. Since his duties do not normally involve giving expert testimony, he may fairly be viewed as having been 'retained' or 'specially employed' for that purpose." Id. at *3. In reaching this conclusion, the Day court turns the Rule on its head. Following the Day court's rationale, *any* witness who will give expert testimony must provide a formal, written expert disclosure, for those witnesses who are not employed by a party are obviously "retained" or "specially employed" to provide expert testimony, and those who are employed by a party fall into one of two categories: those to regularly give expert testimony, and those who are "retained" or "specially employed" to give expert testimony in a particular case. Quite simply, under the construction given to the Rule by the Day court, the requirement for a formal, written expert disclosure would be absolute.

---

[1] Attached as Exhibit A to the Affidavit of Ben Patrick submitted in connection with the previous motion, docket no. 454.

The plain language of the Rule demonstrates that this is not what the Rule intended---the Rule applies only to certain discreet, specifically identified categories of witnesses. To the extent that the language of the Rule leaves any doubt as to whether the Rule should be construed narrowly to apply only to the specifically-named categories of witnesses, the Advisory Committee Comments resolve that doubt: "The requirement of a written report in paragraph (2)(B), however, applies *only* to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report." (emphasis added) The Advisory Committee's comments indicate that the Rule applies only to those witnesses who are specifically included in the Rule.

The decision of the court in Minnesota Mining and Manufacturing Co. v. Signtech USA, Ltd., 177 F.R.D. 459 (D.Minn. 1998), does little more than adopt the flawed reasoning of Day, and is uninstructive for the same reasons. Indeed, the court's discussion in that case reveals the circularity of reasoning that underpins the Day decision: "3M has insisted that these witnesses do not have duties which regularly involve giving expert testimony. Therefore, argues Signtech, under Day these experts must be viewed as 'retained' or 'specially employed' to give expert testimony, and 3M must provide expert reports." Id. at 461 (internal citation omitted). Thus, pursuant to the reasoning underpinning Day, if an expert witness does not fall into one category of witnesses required to give expert reports (regularly giving expert testimony as part of his or her employment), that expert *must* fall into another category of witness required to give report reports (those "retained" or "specially employed" to provide testimony).

The court in Navajo Nation v. Norris, 189 F.R.D. 610 (E.D.Wa. 1999), considered and rejected the approach taken by the Day and Signtech courts. As to the Day decision, the court said:

> Adopting the Day approach of requiring a report of every employee-expert would admittedly decrease the time and expense of discovering information by the usual methods allowed in the Rules—interrogatories and depositions. Were this court drafting the rule without the usual comment from others as a part of the rule-making process, such an approach would be given consideration. But, having received the comment of others during the rule-making process, the drafters have amended FRCP 26(a)(2)(B) several times over the years. They imposed the report obligation *only* on the two specific categories of expert witnesses explicitly identified in FRCP 26(a)(2)(B). * * * If the drafters had intended to impose a report obligation on all employee-experts, they could have and would have done so. If a particular District believes such an obligation is wise, it may impose that report requirement on all employee-experts. Absent such a local rule, the plain language of FRCP 26(a)(2)(B) requires the report only of experts in the two explicit categories stated.

Navajo Nation, 189 F.R.D. at 612-613 (emphasis added). Turning to the 3M decision, the court noted:

> Extensively quoting from the Day ruling, the Magistrate Judge essentially adopted its reasoning and ordered 3M to produce the FRCP 26(a)(2)(B) reports for Signtech. Those who drafted FRCP 26(a)(2)(B) could simply have required reports for all employee-experts if that is what they had intended. Neither the Day nor the Minnesota Mining opinions attempt to explain why they did not. This Court finds that the absence of such an explanation together with the plain language of the rule makes those cases unpersuasive as contrary to the plain language of FRCP 26(a)(2)(B).

Id. at 613. Because the court determined that none of the employee-experts had regularly served as experts, and in the absence of any evidence that they had been "retained or specially employed to provide expert testimony," the court concluded that "[t]he plain language of FRCP 26(a)(2)(B) requires this court to deny Norrises' Motion…." Id. The court in Duluth Lighthouse for the Blind v. C. G. Bretting Mfg. Co., Inc., 199 F.R.D. 320, 324-25 (D.Minn. 2000), came to the same conclusion:

> [W]e are not persuaded that the Court, in Signtech, reached a correct result. While we agree with the Court, in Signtech, that it is undesirable for litigants to elude the automatic expert disclosure requirements by guise, contrivance, or artful dodging, we are not empowered to modify the plain language of the Federal Rules so as to secure a result that we think is correct. As the Court carefully explained, in Navajo Nation…the drafters of the Rule 26(a)(2) [sic] could have broadly included employee-experts within the scope of the expert disclosure requirements, but they chose not to.

The critique of the Navajo Nation and Duluth Lighthouse courts regarding the decisions in Day and Signtech is valid. Both the Day and Signtech courts discuss at length the *goals* of the discovery process and the Federal Rules of Civil Procedure, but neither court engages in any analysis of the actual *text* of the Rule. As a result, the court in Day and Signtech engage in a *sub silento* redrafting of the Rule, rather than merely interpreting the Rule, as they were bound to do. The rule adopted by the courts in Navajo Nation and Duluth Lighthouse is the better rule, because those courts confined themselves to *interpreting*, rather than rewriting, the Rule. For this reason, the holding of the Day and Signtech courts should be rejected, and the Order should be reversed.

## II. THE ORDER ERRED IN CONCLUDING THAT THE EMPLOYEES ARE NOT HYBRID WITNESSES.

If the Court concludes that the Rule applies to employee-experts, even when those employees are not retained or specially employed to offer testimony and do not regularly give testimony, the Day court, and the courts that have followed it, have recognized an additional exception for "experts who are testifying as fact witnesses, although they may also express some expert opinions…." Day, 1996 WL 257654 at *2. The Signtech court referred to such witnesses as "hybrid fact/expert witnesses." Signtech, 177 F.R.D. at 461. While treating physicians are the most common example of hybrid fact/expert witnesses, they are not the only witnesses encompassed by the exception, for "it is clear from a review of Fed.R.Evid. 702 that any witness

with expertise in an area of scientific, technical or specialized knowledge which would be helpful to the fact finder would fit into this category as well. It is very common in modern litigation to find fact witnesses who also possess the requisite expertise required by Fed.R.Evid. 702 to permit them to give expert opinion testimony." Sullivan v. Glock, Inc., 175 F.R.D. 497, 500 n.5 (D.Md. 1997). The courts have classified as hybrid fact/expert witnesses those witnesses who have personal knowledge of the subject matter of the lawsuit, which knowledge was obtained prior to the lawsuit as part of their ordinary employment, and who are also qualified to give expert opinions as to the issues in the lawsuit.

In Day, the challenged expert, Walter Heide, had no involvement in the design or maintenance of the railroad tracks on which the accident which was the subject of the lawsuit occurred. There was no indication that Heide had even seen the tracks prior to the lawsuit. In Signtech, the six 3M experts similarly had no knowledge of the facts behind the litigation prior to the commencement of the litigation. These facts stand in stark contrast to the facts in this case. Here, the employee-experts proffered by BSB and BGI (Larry Moore, Chris Jorgensen, Doug Buster and Joe Safin) were all intimately involved in the creation and construction of the townhouse units at issue in this litigation. Larry Moore designed the Homestead Collection. Chris Jorgensen supervised the creation of construction drawings for the Homestead Collection. Doug Buster designed the Washington Square townhouse. Joe Safin supervised the creation of construction drawings for the Washington Square townhouse. As such, each of them are hybrid fact/expert witnesses who are exempt from the requirements of the Rule, even as extended by the Day court. The Order relies on the reasoning in Day (even if that reliance is not explicit) in excluding expert testimony from the Employees, but rejects the exception explicitly created by the Day court which would have enabled the Employees to offer expert testimony. The Order

cites no authority for its rejection of the hybrid witness rule, nor are BSB or BGI aware of any authority which would support such a rejection. For this reason, the Order's determination that the Employees are not hybrid witnesses who are permitted to offer expert opinions should be reversed.

**III. THE ORDER ERRED IN CONCLUDING THAT THE EXPERT DISCLOSURES GIVEN BY THE EMPLOYEES WERE INSUFFICIENT.**

The expert disclosures for the Employees all included resumes, information on articles published, information on past testimony, and were all signed. The Order acknowledges that each of these things, required by the Rule, were done. However, the Order concludes that the expert disclosures were insufficient to satisfy the Rule. BSB and BGI agree that, standing alone, none of these disclosures is sufficient to satisfy the Rule. However, each of the disclosures explicitly references and incorporates the expert disclosure of Al Bloom. Rottlund has never challenged the sufficiency of Mr. Bloom's disclosure, nor is BSB nor BGI aware of any case which holds that an expert disclosure cannot incorporate by reference another expert disclosure. As such, the Employees should, at a minimum, be permitted to offer expert testimony which is parallel to the opinions contained in Mr. Bloom's disclosure.

**IV. THE ORDER ERRED IN CONCLUDING THAT EXCLUSION WAS THE PROPER REMEDY.**

The Order excludes expert testimony from the Employees. This is not the proper remedy. In Upsher-Smith Laboratories, Inc. v. Mylan Laboratories, Inc., 944 F.Supp. 1411 (D.Minn. 1996), the court observed that the Eighth Circuit has "developed a flexible standard in order to preclude fundamental unfairness at the time of Trial." Upsher-Smith, 944 F.Supp. at 1438. This standard considers the following four factors when weighing a motion to exclude expert testimony: "1. the reasons the party fails to name the witness; 2. the importance of the testimony;

3. the amount of time the opposing party needs to properly prepare for the testimony; and 4. whether a continuance would in some way be useful." Id. (citing Patterson v. F. W. Woolworth Co., 786 F.2d 874, 879 (8th Cir. 1986)). Each of these factors in considered in turn below.

As to the first factor, the reason BSB and BGI failed to provide expert disclosures for the Employees is simple: the plain text of the Rule does not require the Employees to issue written reports. As to the second factor, the expert testimony the Employees would provide goes to the heart of BSB and BGI's theory of the case. As Rottlund is well aware (as is discussed below), BSB and BGI have defended this case on the basis that the Homestead Collection and the Villa II are little more than common arrangements of common elements, no more similar to each other than they are to many other back-to-back townhomes, and that the Homestead Collection was adapted from earlier BSB designs which predate the Villa II. The Employees will provide exactly this testimony, based on their long experience in the residential housing industry.

As to the third factor, Rottlund can not credibly argue that it needs any additional time to properly prepare for this testimony. Rottlund was aware that BSB intended, through the Employees, to offer the testimony outlined above no later than May 9, 2003, when Rottlund's counsel discussed the discovery Rottlund felt was necessary so that they could meet that testimony. See Transcript of the May 9, 2003 hearing at pages 59-61, attached as Exhibit B to the Affidavit of Ben Patrick submitted in connection with the initial motion, docket no. 454. Rottlund has deposed all of the Employees, and solicited expert testimony from all of the Employees in those depositions. In short, Rottlund knows, and has known for a long time, what to expect from the Employees. Therefore, Rottlund needs no additional time to prepare to meet this testimony. For this reason, BSB and BGI believe that no continuance is necessary.

The Court should also be wary of Rottlund's gamesmanship in bringing this motion. Expert disclosures were originally due from the parties in August of 2003. Rottlund made no objection to the expert disclosures at the time they were made, and waited for almost a year to bring its motion to exclude. The Eighth Circuit cited with disapproval precisely this sort of gamesmanship in Porchia v. Design Equipment Co., 113 F.3d 877, 882 (8th Cir. 1997):

> Porchia claims that Stork violated Rule 26 by failing to provide adequate and timely information concerning expert witnesses.... Initially, we note that Porchia did not enlist the District Court's assistance to obtain expert witness information, to request additional time to prepare for these expert witness depositions, to redepose an expert witness when previously undiscovered information became available, or to obtain a written report from Stork's vocational rehabilitation expert. Moreover, Porchia has not demonstrated how he was prejudiced by these alleged discovery abuses.

Not surprisingly, the Eighth Circuit affirmed the trial court's denial of Porchia's motion to exclude. Id. The court in Gavco, Inc. v. Chem-Trend Inc., 81 F.Supp.2d 633, 639 (W.D.N.C. 1999), reached a similar conclusion when faced with a motion to exclude expert testimony based on a failure to submit an expert report. The court noted that the movant did not "attempt to depose Dr. Graff, nor have they documented any subsequent requests for his report." Id. The court concluded that the movant:

> could have mitigated any alleged harm by attempting to depose Dr. Graff or filing a motion to compel the production of his expert witness report in anticipation of a deposition; they did neither, and thus are partly responsible for the status quo. The undersigned will balance the equities by…allowing [the movant] to depose Dr. Graff prior to trial, should they desire to do so. Provided, however, any expert witness report shall be disclosed sufficiently in advance of the August trial date to allow a meaningful deposition…

Id. The trial in Gavco was set for August 30, 1999, and the opinion quoted above was issued on May 11, 1999. Id. at 645. Thus, from a trial preparation standpoint, at the time it brought its motion, Rottlund was in substantially the same position as Gavco was. Rottlund's request should have been denied, as Gavco's was.

It can accurately be said that the goal of trials in this country is to uncover the truth and do justice to the best of the court's ability. Rottlund's tactics in connection with this motion reveal its disdain for both goals. Rottlund laid in wait for almost a year, and has even refused to take expert depositions of the Employees, even though BSB and BGI offered to make them available, all in order to bring the instant motion. The exclusion of the Employees would be a triumph of form over substance, and procedure over justice. Rottlund does not, and can not, claim surprise or prejudice with respect to the Employee's testimony. Rottlund has been afforded every opportunity to discover, through written discovery and depositions, the testimony the Employees will offer. The Court must consider Rottlund's willful failure to avail itself of the common and accepted remedies for discovery disputes (remedies Rottlund is well aware of, given the number of discovery disputes which have been brought before this Court) when considering what remedy to fashion. BSB and BGI believe that the law, the facts, and Court's goal of seeking truth and doing justice all weigh against Rottlund's request to exclude the expert testimony of the Employees.

The Court should consider one final issue. As this Appeal makes clear, the law regarding whether or not the Employees were required to file expert disclosures is less than clear. Even within this district, courts have reached opposite conclusions on this question. Should the Employees not be allowed to give expert testimony, and should the Eighth Circuit conclude that the rule established in Navajo Nation and Duluth Lighthouse is the better rule, the only remedy for the exclusion of the Employees will be a new trial, a prospect that no party in this litigation wants. In light of the totality of the facts and law in this case, the Court should permit the Employees to offer expert testimony, and deny Rottlund's motion to exclude as either (1) contrary to the requirements of the Rule; or (2) seeking relief which is not warranted.

**MACKALL, CROUNSE & MOORE, PLC**

Dated: November 8, 2004.

By: s/ Ben Patrick

Holly Newman (MN Bar #26457X)
Ben Patrick (MN Bar #312460)
1400 AT & T Tower
901 Marquette Avenue
Minneapolis, MN 55402-2859
Telephone: (612) 305-1400
Facsimile: (612) 305-1414

Attorneys for Defendants Bloodgood Sharp Buster Architects and Planners of Iowa, Inc. and The Bloodgood Group, Inc.

JBP/jbp#724519v1