UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br>Plaintiff,<br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br>Defendants,<br>and<br><br>Town & Country Homes, Inc., a Minnesota Corporation,<br><br>Third-Party Plaintiff,<br>vs.<br><br>Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation,<br><br>Third-Party Defendant. | ) | No.: 01-CV-1980 (DSD/SRN)<br><br>PLAINTIFF'S CONSOLIDATED RESPONSIVE LEGAL MEMORANDUM IN OPPOSITION TO THE OBJECTIONS OF THE BLOODGOOD DEFENDANTS, TOWN & COUNTRY HOMES AND PINNACLE TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DATED OCTOBER 25, 2004, REGARDING PARTIAL SUMMARY JUDGMENT ON DAMAGES IN PLAINTIFF'S FAVOR |

## INTRODUCTION

Magistrate Judge Nelson's Report and Recommendation dated October 25, 2004 ("R&R") should be adopted in its entirety as it correctly applies the law of copyright infringement damages to the numerous facts in the record that, at a minimum, create a dispute of material fact regarding Rottlund's damages claims. Rottlund will not endeavor to restate all of the substantial evidence supporting its damages theories that was set forth in Plaintiff's Consolidated Memorandum of Law in Opposition to Defendants Pinnacle Corporation and Town & Country Homes, Inc.'s Motion for Summary Judgment Regarding Damages and to Defendants Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., and The Bloodgood Group, Inc.'s Motion for Partial Summary Judgment Against Plaintiff as to Damages dated September 8, 2004 [Doc. 537].[1] As Magistrate Judge Nelson properly concluded, however, this factual record precludes partial summary judgment on all of the damages issues raised in Defendants' separate objections to the R&R. Rottlund will address these issues in the order they were addressed in the R&R.

## I. DISPUTES OF MATERIAL FACT PRECLUDE PARTIAL SUMMARY JUDGMENT ON THE COMMENCEMENT OF INFRINGEMENT ISSUE.

Magistrate Judge Nelson properly found that a dispute of fact exists regarding the commencement of infringement for purposes of evaluating determining Rottlund's entitlement to statutory damages and attorneys' fees. Defendants focus their arguments on one sentence in the R&R that "[t]his case involves alleged violations of three copyrights: the Villa II technical drawings (registration number VAu 447-395); the Villa II architectural works (VAu 534-723); and The Reserve technical drawings (VAu 547-

[1] The Defendants are Pinnacle d/b/a Town & Country Homes ("Pinnacle") and its Minnesota Division, Defendant Town & Country Homes, Inc. ("TCM"), (collectively the "Town & Country Homes Defendants"); and The Bloodgood Group, Inc. ("BGI" ) and its subsidiary Bloodgood Sharp Buster Architects & Planners of Iowa, Inc. ("BSB") (collectively the "Bloodgood Defendants").

285)." (R&R at 6-7 (citing Rottlund's Seventh Am. Complaint at ¶¶ 17-20).) Defendants ignore the remainder of Magistrate Judge Nelson's analysis of the commencement issue, including the fact that Rottlund's Villa II copyrights carry forward the Original Villa and New Villa copyrights.[2] In addition, substantial evidence in the record not only confirms that specific acts of infringement occurred *after* Rottlund's registration of its Villa II copyrights on June 22, 1999, but that every conceivable act that the jury could find commenced the infringement occurred *after* Rottlund's registration of its New Villa copyrights on October 5, 1993. *See* R&R at 6-7.[3] Based on this record, Magistrate Judge Nelson properly found that, at a minimum, a dispute of fact exists precluding judgment as a matter of law. *See* R&R at 6-7.[4]

[2] This Court has already recognized that Rottlund's Villa II copyrights carry forward the Original Villa and New Villa copyrights. *See The Rottlund Co., Inc. v. Pinnacle Corp.*, 01-CV-1980, 2004 WL 1879983 at *18 (D. Minn. Aug. 20, 2004), adopted by Order of October 19, 2004; *accord Donald Frederick Evans and Assocs. v. Continental Homes, Inc.,* 785 F.2d 897, 904 (11th Cir. 1986); 2 M. Nimmer, *Nimmer on Copyright* § 7.16[B][2]. Therefore, Rottlund need not allege and prove multiple copyright violations; it need only prove that the Defendants infringed on its valid Villa II copyright. *Richmond Homes Management, Inc., v. Raintree, Inc.,* 862 F. Supp. 1517, 1525 (W.D. Va. 1994), *aff'd in part and rev'd in part on other grounds,* 66 F.3d 316 (4th Cir. 1995); *O.T. Pickell Builders, Inc. v. Witowski,* No. 96 C 4233, 1998 WL 664949 (N.D. Ill. Sept. 16, 1998). Because its New Villa copyrights carry forward, the fact that the specific acts of infringement commenced *after* Rottlund registered its New Villa copyrights, at a minimum, creates a dispute of fact.

[3] On or about April 6, 1998, well after Rottlund registered its New Villa technical drawings, BSB and the Town & Country Defendants entered into a schematic design contract regarding an infringing "Villa Product" back-to-back town home. (Affidavit of Craig S. Krummen dated September 8, 2004 ("Krummen Aff.") [Doc. 539-541,543], Ex. R42, D00233.) While assembling the "Villa Program" plans, BSB architect Larry Moore used the Midland Homes and Jerry's Homes project files, as well as the Good Value file – files which were previously copied from Rottlund's New Villa copyrighted floor plans and elevations. (*Id.*, Exs. R44, 12:21-13:6, 19:21-20:25; Ex. R23, 15:18-16:5.) According to Mr. Moore, the placement and arrangement of room locations and elements for the Homestead Collection came from his review of these prior project files. (*Id.*, Ex. R23, 15:18-16:5.)

[4] In addition, the Town & Country Defendants' own legal memorandum in support of their motion for partial summary judgment highlighted the fact issue over whether the Homestead Collection plans for developments such as Aurora, Illinois, are different works for purposes of statutory damages and attorneys' fees under the Copyright Act. (*Compare* Town & Country Leg. Mem. at 9 ("[e]ach subsequent Homestead Collection project was a result of a 'jurisdictional transfer' of this work, and not starting a new architectural design from scratch") *with* 9 n.5 ("the undisputed testimony is that the Washington Square back-to-back [sic] contain a [sic] entirely different elevation").)

## II. DISPUTES OF MATERIAL FACT PRECLUDE PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF WILLFULNESS.

The Town & Country Defendants seek to redefine the law on willful infringement. They incorrectly claim that the only way Rottlund can establish willful copyright infringement is by sending a specific notice of the specific infringement to the infringer, and they incorrectly claim that no such notice was provided to them. First, the only case cited by the Town & Country Defendants, *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1020-21 (7th Cir. 1991), actually demonstrates: (1) neither notice nor actual knowledge is required to prove intentional infringement; and (2) whether the infringer acted in reckless disregard of the copyright owner's rights involves a credibility determination reserved for the finder of fact. *Id.* at 1021 ("[O]ne who undertakes a course of infringing conduct may neither sneer in the face of the copyright owner nor hide its head in the sand like an ostrich.").

A jury could reasonably find that Defendants engaged in willful infringement as earlier as 1994, when BSB performed a "cut and paste" job of Rottlund's Villa floor plans and elevations, and cut off Rottlund's logo and copyright notice during this process. (Krummen Aff., Ex. R23, 229:8-16; Ex. R24; Ex. R25 at DDI000021-22.) BSB then gave the "cut and paste" job to a design service and signed a contract that provided the finished design would be "similar to the Rottlund plans." (*Id.,* Ex. R22.) BSB later asked itself if the design was enough "departure" from Rottlund's Villa designs to avoid copyright liability. (*Id.,* Ex. R28) BSB then used these infringing designs to prepare the Homestead Collection designs. (*Id.,* Ex. R44, 19:21-20:25; Ex. R23, 15:18-16:5.)[5]

---

[5] Like the other willful infringers who had knowledge of copyright law in *Saxon v. Blann,* 968 F.2d 676, 681 (8th Cir. 1992) and *Superior Form Builders v. Dan Chase Taxidermy Supply Co.,* 74 F.3d 488, 496-98 (4th Cir. 1996), BSB then signed a contract with Town & Country and represented that it owned the

As for the Town & Country Defendants, Mr. Sandelin produced two different sets of Rottlund's Villa floor plans from his files, which were used to make the infringing Homestead Collection. (*Id.,* Ex. R14 at 6:7-17, 7:4-9:11, 17:19-18:17.) Rottlund's copyright notice appears on both sets of floor plans. (*Id.,* Ex. R47; Ex. R48.) Town & Country of Minnesota hired several former Rottlund employees that had access to Rottlund's Villa floor plans and elevations while working at Rottlund, and Rottlund's policy was to place a copyright notice on all of these Villa designs and elevations. (*Id.,* Ex. R142, 58:1-22; Ex. R143, 11:17-12:7, 13:21-14:9; Ex. R123; Ex. R144, 13:19-25, 15:23-22:22, 25:6-27:3.) These employees were on the Town & Country "red-line team" for the Homestead Collection design process. (*Id.,* Ex. R145.) In short, the Town & Country Defendants intentionally ignored Rottlund's copyright notice, took Rottlund's copyrighted floor plans, and claimed them as their own with a Town & Country copyright notice.

The R&R also properly rejected the Defendants' argument that they did not receive actual notice of the infringement, as the evidence in the record establishes that: (1) Michael Ryan, then-CEO of Town & Country's Minnesota Division, received the July 5, 2001 cease and desist letter on behalf of Defendants Pinnacle and TCM; (2) Steve Sandelin, then-Vice President of Product Development of Town & Country's Illinois Division received it on behalf of Pinnacle, and (3) architect Larry Moore received it on behalf of BSB. *See* R&R at 11-12 (citing Schwiebert Aff., Ex. K; 10/06/04 Order; Krummen Aff., Exs. R91 and R61). Accordingly, the Court should adopt in its entirety

---

copyright interests in the Homestead Collection designs even though BSB knew it wrongfully copied these designs from Rottlund and cut off Rottlund's copyright notice during this "cut and paste" process. (*Id.,* Ex. R42 at D00238.) Certainly, a reasonable juror could find that BSB engaged in willful infringement.

the R&R's recommendation to deny Defendants' motion for partial summary judgment on willfulness.

## III. DISPUTES OF MATERIAL FACT PRECLUDE PARTIAL SUMMARY JUDGMENT ON ROTTLUND'S ACTUAL DAMAGES CLAIM.

The R&R cites to the damages report of Plaintiff's expert, Melissa Snelson, which sets forth in detail Plaintiff's actual damages for all home products sold by TCM in the eight developments at issue, based upon lost profits on the allegedly infringing town homes built and/or planned by Defendants, lost licensing fees in the Washington Square development, and lost profits on additional (non-infringing) home products. *See* R&R at 3-4 (citing Krummen Aff., Ex. R65 at 4, 6).[6] Moreover, Magistrate Judge Nelson correctly found that material facts support Rottlund's actual damages theory, thus precluding partial summary judgment. *See* R&R at 13-24.

As an architectural copyright infringement case, the proper measure for actual damages is lost profits suffered by Rottlund from a home constructed pursuant to the infringing plans. *See* R&R at 14-15 (citing *Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274, 280-81 (6th Cir. 1988), *aff'g in relevant part* 686 F. Supp. 160 (E.D. Mich. 1987); *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560 (M.D. Fla. 1995); *Intown Enterprises, Inc. v. Barnes*, 721 F. Supp. 1263, 1267 (N.D. Ga. 1989)). Rottlund's actual damages theory approved by the Eighth Circuit in *Andreas v. Volkswagen of America, Inc.,* 336 F.3d 789, 795-96 (8th Cir. 2003).

Just as in *Robert R. Jones*, Magistrate Judge Nelson found that Rottlund presented substantial evidence supporting a causal nexus for its actual damages claim, *see* R&R at 18, 20-23 (discussing Rottlund's evidence that TCM's infringing communities were

[6] None of the Defendants' filed a motion *in limine* to exclude Ms. Snelson's damages analysis.

developed in close geographical proximity to Rottlund's projects and competed directly with Rottlund's ongoing developments), as well as the amount of both direct and indirect profits. *See* R&R at 19-20 (discussing calculation of actual damages in Ms. Snelson's expert report).[7] Rottlund proffered evidence of actual damages it lost from products sold at nearby competing developments, including the Hollander property and other development opportunities, where the Town & Country Defendants used the infringing Homestead Collection to take away the opportunities from Rottlund and develop them themselves.[8] For example, in addition to satisfying Maple Grove's housing diversity and affordability guidelines and enabling Town & Country to obtain approval to develop the Hollander property, the Homestead Collection also satisfied the city's prerequisites for "density credits," which Town & Country received and used to build more units, and thereby achieved greater profits. *See* R&R at 20-22. Significantly, Town & Country's Rule 30(b)(6) witness could not identify a single other, non-infringing 8-unit town home the company could have used to satisfy this 8-unit town home requirement. *Id.* at 22 (citing Krummen Aff., Ex. R8 at 151:8-152:9).

Rottlund also claims actual damages based on head-to-head lost sales in nearby developments. Rottlund proffered evidence that every one of the TCM developments in

---

[7] The *Robert R. Jones* district court recognized that although no one could be certain that the defendants' infringing homes would have been purchased from plaintiff had no infringing product been put on the market, the plaintiff successfully established the reasonable probability of the existence of a causal relationship between the infringement and a loss of revenue because "there were purchasers and a demand for this particular kind of house in this geographic area." 686 F. Supp. at 164. The court then found that because the defendants failed to carry their burden to establish that purchasers of defendant's homes would not have purchased plaintiff's homes in the same geographic vicinity, it was "presumed [plaintiff] would have sold [the seven homes] absent the infringement." *Id.*

[8] Rottlund proffered substantial evidence that if Town & Country did not have the infringing product: (1) Rottlund would have acquired the Hollander property and made these Villa II sales; (2) Rottlund would have made these Villa II sales in its Maple Lakes development in Maple Grove; and/or (3) Rottlund would have made these Villa II sales at other developments in close geographic proximity to Maple Grove. *See* R&R at 20-23.

Minnesota using infringing town homes competed in the same geographic vicinity as competing Rottlund developments where Rottlund's Villa II town homes were sold.[9] Town & Country took the demand for the Villa II product out of the market by supplying infringing Homestead Collection town homes in close geographic proximity to other Rottlund Villa II developments and future Villa II developments. (*Id.*, Ex. R17, 341:18-23, 411:19-418:19, 489:23-490:14, 751:19-752:10; Ex. R10, 99:18-100:5; Ex. R16, 71:16-75:1.)[10] In short, Rottlund proffered substantial evidence precluding summary judgment of lost sales to TCM in this head-to-head competition and TCM's saturation of Rottlund's development opportunity with an infringing knockoff product only a few miles away. (*See* Krummen Aff., Ex. R7, 15:9-17:15; Ex. R16, 71:16-75:1; Ex. R3, 62:18-63:22; Ex. R9, 212:21-213:9; Ex. R63 at 7.)

As for Rottlund's claim for lost licensing fees, the R&R correctly found that a dispute of fact exists as to the amount of a licensing that should be resolved at trial by the jury. *See* R&R at 36-39. Defendants "cannot expect to pay the same price in damages as [they] might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law." *Id.* at 37 (quoting *Iowa State Univ. Research Found., Inc. v. American Broadcasting Cos.*, 475 F. Supp. 78, 83 (S.D.N.Y. 1979), *aff'd*, 621 F.2d 57 (2d cir. 1980)).

---

[9] The Town & Country Defendants used the infringing Homestead Collection to acquire developments and to sell competing Homestead Collection products and other products, and usurp Rottlund's economic opportunity to sell the following comparable Rottlund products: Gable Town Homes, New Urban Town Homes, Lodge Single Family Homes, and Traditions Single Family Homes. (Krummen Aff., Ex. R67, (Snelson Rep.) at Exs. 4, 7, 7A 8, 9 and 10; Ex. R62 at D38866, D38874-78; Ex. R75 at D40244-255; Ex. R83 at D39283; Ex. R88 at D16985; BSB Leg. Mem. at 13.)

[10] Defendants' protestations regarding Rottlund's capacity to build all of the infringing town homes and related non-infringing products ignore the testimony of Rottlund's witnesses and other proffered evidence, further highlighting the disputes of material fact that exist with respect to Rottlund's actual damages claims. (*See* Krummen Aff., R5, 211:8-212:5-11, 218:25-220:17, 233:8-234:2, 235:17-24, 347:16-24; Ex. R9, 172:11-22, 179:17-25; Ex. R16, 30:10-23; Ex. R17, 535:8-15, 785:11-786:2; Ex. R18, 21:8-23:12, 27:21-28:4; 87:21-89:16, 88:19-89:16, 145:24-146:8, 149:23-151:5, 152:17-153:6; 161:7-13, 171:19-173:18.)

## IV. DISPUTES OF MATERIAL FACT PRECLUDE PARTIAL SUMMARY JUDGMENT ON ROTTLUND'S INFRINGERS' PROFITS CLAIMS.

### A. Rottlund Met Its Evidentiary Burden To Create A Dispute of Fact Regarding TCM's Profits.

The Copyright Act provides that a copyright owner is entitled to recover actual damages as well as "any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). The infringer's profits are awarded to the copyright owner "to prevent the infringer from unfairly benefiting from a wrongful act." *Andreas,* 336 F.3d at 795 (quoting H.R.Rep. No. 94-1476, § 504, 94th Cong., 2d Sess. at 161 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5777); *Arthur Rutenberg Corp. v. Dawney,* 647 F. Supp. 1214, 1216 (M.D. Fla. 1986) (same). The Copyright Act "makes clear that there is no gain to be made from taking someone else's intellectual property without their consent." *Walker v. Forbes, Inc.*, 28 F.3d 409, 412 (4th Cir. 1994).

"In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses *and the elements of profit attributable to factors other than the copyrighted work.*" *Andreas,* 336 F.3d at 795 (citing § 504(b)) (emphasis in original); *Fishing Concepts, Inc. v. Ross,* 226 U.S.P.Q. 692, 696 (D. Minn. 1985) (same). "[W]here some of the defendant's profits result from the infringement and other profits are caused by different factors, . . . the burden of proof is on the defendant . . . [to] prove not only 'his or her deductible expenses' but also 'the element of the profit attributable to factors other than the copyrighted work.'" *Andreas,* 336 F.3d at 795 (quoting H.R.Rep. No. 94-1476, § 504, at 161 (quoting § 504(b))). "'Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff. If the infringing defendant does not

meet its burden of proving costs, the gross figure stands as the defendant's profits."' *Id.* (quoting *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 772 F.2d 505, 514 (9th Cir. 1985) (*Frank Music I*) (internal citations omitted)).

The R&R correctly finds that Rottlund has proffered sufficient evidence to meet its burden of proving TCM's gross revenues. *See* R&R at 4, 29. Moreover, "genuine issues of disputed material fact abound" regarding whether TCM has met its burden of proving deductible expenses and elements of the profit attributable to factors other than the copyrighted work. *Id.* at 29 (discussing rival expert reports and exhibits).

### B. Genuine Issues of Material Fact Preclude Summary Judgment On Rottlund's Claim For Recovery of Profits From Non-Infringing Products That Are Fairly Attributable to the Infringement.

As recognized in the R&R, when analyzing profits "attributable to the infringement," the Eighth Circuit and courts from across the country have long held that infringers must give up profits that come from non-infringing products as well as profits that come from infringing products. *Id.* at 33-36. For instance, in *Andreas,* the Eighth Circuit ruled the plaintiff could retain profits flowing from sales of Audi's non-infringing TT coupe that had a nexus to Audi's infringing TT coupe advertisement. 336 F.3d at 796. Moreover, the Eighth Circuit's rationale clearly implied that if the TT coupe had infringed the plaintiff's copyright, then the plaintiff could have sought damages off sales of other non-infringing models so long as the TT coupe was used as a "door opener" product for these other sales. *Id.* at 800; *see also Sunset Lamp Corp. v. Alsy Corp.,* 749 F. Supp. 520, 524-25 (S.D.N.Y. 1990) (plaintiff recovered profits from non-infringing line of lamps fairly attributable to infringing lamp).

Rottlund has proffered substantial evidence to create a jury issue on whether the profits earned by the Town & Country Defendants are attributable to the infringement. *See* R&R at 34-36. Town & Country's infringing and non-infringing products were bundled together, promoted together, and approved as one "package deal" that together satisfied city guidelines and requirements concerning density housing, affordable housing, diverse housing and life cycle housing. Without the infringing town homes, the Defendants could not satisfy these guidelines and there would not have been any sales or profits from non-infringing products. Thus, the R&R correctly found that the jury should determine Rottlund's infringers' profits claim and the amount of revenue and profit relating to all products within the five developments where the Town & Country Defendants constructed both infringing and non-infringing products. *See* R&R at 36.[11]

## CONCLUSION

For all of the foregoing reasons, and those previously set forth in Rottlund's Consolidated Memorandum of Law dated September 8, 2004, the Court should adopt the October 25, 2004 Report and Recommendation in its entirety.

Dated: November 8, 2004

**s/Philip R. Mahowald**
Craig S. Krummen, #0259081
Philip R. Mahowald, #0274902
David A. Davenport, #0285109
WINTHROP & WEINSTINE, P.A.
**Attorneys for Plaintiff**
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
pmahowald@winthrop.com

2157114v1

[11] As for the Bloodgood Defendants' separate objection regarding their effort to avoid any claim by TCM for contribution and indemnity arising out of Rottlund's Minnesota Deceptive Trade Practices Act claim, Rottlund notes TCM could possibly assert contribution and indemnity claims for any adverse financial consequences if TCM's unlawful trade practices are enjoined.