UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois corporation, Town & Country Homes, Inc., a Minnesota corporation, Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa corporation,<br><br>Defendants. | No.: 01-CV-1980 (DSD/SRN)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS JOINT MOTION FOR A NEW TRIAL AND FOR JUDGMENT AS A MATTER OF LAW** |

# I. INTRODUCTION

On its motion for a new trial, Plaintiff The Rottlund Company, Inc. d/b/a Rottlund Homes ("Rottlund") respectfully submits that the Court erred when it permitted Jeffrey Scherer, the Town & Country Defendants' liability expert, to perform a highly prejudicial side-by-side comparison of the Defendants' designs and Rottlund's Villa II designs. This testimony was improper under *Hartman v. Hallmark Cards*, Magistrate Judge Nelson's Report & Recommendation dated August 20, 2004, the Court's October 19, 2004 Order adopting the R&R in its entirety, and the Court's statement on page 3056 of the Trial Transcript that Mr. Scherer could not testify that side-by-side comparisons of the designs "don't show copying," or words to that effect. The manner in which this highly prejudicial testimony was presented to the jury also violated Fed. R. Evid. 103(c), 403, and 703.

The Court also erred when it permitted Town & Country to publish and disclose Town & Country's Exhibit 625 to the jury as a demonstrative exhibit during Mr. Scherer's direct examination because it contained a highly prejudicial side-by-side comparison of the Defendants' designs and Rottlund's Villa II designs, including two overlays of computer-generated floor plans. The Court previously prevented Rottlund on three prior occasions from putting in an overlay of the actual floor plans through fact witnesses. *See* Trial Tr. at 1187-91; 1359-62; 1534:7-11.[1]

Additionally, Mr. Scherer improperly redefined copyright law and testified that if the floor plans are "not the same" or are "different," there cannot be copying. The defendants' attorneys seized on this testimony in closing arguments to redefine the Copyright Act's liability standard,

[1] The Court even refused to allow Rottlund to use the overlay during redirect examination of Rottlund's in-house architect to rebut the accusation made during cross-examination that his creation of the overlay constituted unethical copying of portions of the Homestead Collection plans. (Trial Tr. at 1524:23-1525:5.)

and thereby further prejudiced Rottlund. The Court then refused to give a jury instruction similar to Plaintiff's Proposed Instruction No. 64 explaining how the jury should evaluate the similarity of expression consistent with its own decisions in *CSM* and *Taylor*, which relied on the prior Minnesota District Court decision in *Chuck Blore*: "'The existence of differences will not negate infringement unless they so outweigh the similarities that the similarities can only be deemed inconsequential within the total context of the [copyrighted] work.'" *See CSM Investors, Inc. v. Everest Dev't, Ltd.*, 840 F. Supp. 1304, 1312 (D. Minn. 1994) (quoting *Chuck Blore & Don Richman, Inc. v. 20/20 Advertising, Inc.*, 674 F. Supp. 671, 680 (D. Minn. 1987)); *accord Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1043 (8th Cir. 2003) ("[T]he question of whether the [works] are substantially similar . . . becomes whether 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'") (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)).

In addition to defendants' counsel's inappropriate and highly prejudicial reference to Mr. Scherer's inadmissible testimony and Exhibit 625 during closing arguments, the Court allowed BSB and BGI's counsel's to present brochures, photographs, and floor plans that were previously excluded from evidence to the jury during her closing argument. *See* Trial Tr. at 2724:6-2725:18. Rottlund immediately objected to the flagrant display of this improper evidence to the jury, but the Court overruled Rottlund's objection.[2]

---

[2] The photographs, brochures and floor plans were projected onto a large screen that all of the jurors could readily see, but which the Court could not. The Court denied Rottlund's objection without viewing the excluded evidence that was being displayed to the jury, and instructed the jury that "it's up to you to decide what is evidence, what isn't, and if I've excluded something at this point, I can't see the exhibit at all, and it's not on my screen for some reason. So I can't tell, but it's going to be up to you to decide at any rate what evidence is in and what is not at this point

The jury verdict that Defendants' architectural works did not infringe Rottlund's Villa II copyrights was against the weight of the evidence. Any one of the errors identified above in isolation could have improperly influenced the jury's verdict, and is sufficient grounds to grant Rottlund's motion for a new trial. The cumulative effect of all of the errors contributed to a miscarriage of justice that requires a new trial.

## II. BACKGROUND FACTS

### A. THE COURT'S PRIOR RULINGS.

Prior to trial, Rottlund moved for partial summary judgment on liability issues. The Defendants attempted to create a fact issue with Mr. Scherer's Rule 702 opinions by submitting an affidavit from Mr. Scherer which attached his Rule 26(a) disclosure of his opinions regarding Rottlund's copyrighted Villa II and Town & Country's Homestead Collection. (Affidavit of David A. Davenport ("Davenport Aff.") at Ex. A.) Rottlund moved to strike Mr. Scherer's affidavit because the Rule 26(a) disclosure contained inadmissible Rule 702 opinions. On August 20, 2004, Magistrate Judge Nelson issued a comprehensive Report and Recommendation addressing both Rottlund motions ("R & R"). On October 19, 2004, the Court adopted Magistrate Judge Nelson's R & R in its entirety.

Relying on the Eighth Circuit's *Nelson* decision, Magistrate Judge Nelson held that "'[c]opying may be proven either by direct evidence <u>or</u> by demonstrating circumstantial evidence establishing access and substantial similarity of the two works.'" (Order, 8/20/04 at p. 37 (quoting *Nelson v. PRN Prod., Inc.*, 873 F.2d 1141, 1142 (8th Cir. 1989) (emphasis added)).

---

and what you can use in your deliberations." Trial Tr. at 3647:4-11.

Relying on the Eighth Circuit's *Hartman* and *Nelson* decisions, and this Court's *CSM* and *Taylor* decisions, Magistrate Judge Nelson also held that a substantial similarity analysis requires two things: (1) comparison of the general ideas by focusing on objective similarities in the details of the two works; and (2) comparison of the expression of those ideas within the total context and feel of the two works depending upon the response of an ordinary, reasonable person. (Order, 8/19/04 at 44-47.) Consistent with each case relied upon, Magistrate Judge Nelson concluded that expert opinion evidence is admissible in the first step of the analysis (comparison of ideas), but not admissible in the second step (comparison of expression). (*Id.* at 45, 48-49 (citing *Hartman*, 833 F.2d at 120 ("'expert opinion evidence is admissible in connection with the first step . . . expert opinion [is] not called for under the second step . . .'")).[3]

Accordingly, in connection with Rottlund's partial summary judgment motion, Magistrate Judge Nelson relied on Mr. Scherer's Rule 702 opinions concerning his comparison of general ideas, but did not rely on his inadmissible Rule 702 opinions concerning his comparison of expression. (*Id.* at 45-46.) Specifically, Magistrate Judge Nelson concluded that Mr. Scherer's comparison of ideas revealed a similarity in the details of the objective ideas embodied in the Villa II, Homestead Collection and Washington Square designs:

> As TCM and Pinnacle's expert, Jeffrey Scherer, states, each plan utilizes similar ideas of structure, function, and design: wood framed structure,

[3] The Defendants may attempt to argue that *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939 (8th Cir. 1992), should somehow change the analysis articulated in *Hartman*, but as this Court previously recognized, the Defendants argument is misplaced and "can be boiled down to a dissatisfaction with the state of Eighth Circuit law." (Order, 10/19/04 at 5 (citing *Taylor Corp v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1043 (8th Cir. 2003); *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 729 (8th Cir. 2002); *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987); *Moore*, 972 F.2d at 945).) Thus, since this Court adopted Magistrate Judge Nelson's R & R in its entirety and held that "the magistrate judge's substantial similarity analysis . . . correctly applies circuit precedent," it should disregard any of the Defendants' arguments that *Moore* modified the *Hartman* analysis. (*Id.* at 6.)

> slab-on-grade; kitchen, dining, living, bathroom, 2-car garage, master bedroom and bath, bedroom, laundry, shared bath, and spare room; gabled roofs, double-hung windows, protected entrances, and siding with masonry base.

(*Id.*) However, because Mr. Scherer's Rule 702 opinions also compared the expression of these ideas, the Court, relying on *Hartman*, stated:

> This Court finds this level of comparison of ideas to be appropriate under the precedent in this Circuit. To tread into greater levels of detail as Defendants propose, would be to approach a comparison of the expressive coordination and arrangement of ideas, which is clearly saved for [the second step of the analysis].

(*Id.* at 46.)

Thereafter, Magistrate Judge Nelson addressed Rottlund's motion to strike. Again relying on *Hartman*, the Court held that Mr. Scherer may opine only on ideas, not expression, and concluded that he violated this well established expert witness boundary:

> The Court considers the Scherer affidavit, to the extent it discusses similarity of ideas, but, when Scherer evaluates how individual elements are expressed,[4] the Court finds that such an analysis moves too far into expression; thereby invading the province of the jury.

(*Id.* at 49). Thus, because substantial similarity of expression is a legal test fact finders must use to determine for themselves whether evidence of copying exists, Magistrate Judge Nelson concluded that Mr. Scherer's opinions concerning how the expression of ideas compares is not admissible because "expert opinion evidence that simply tells the jury what result to reach is not helpful." (*Id.* at 49 n.32) (citing *Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830

[4] During oral argument on the motion for summary judgment, Town & Country presented to Magistrate Judge Nelson the same slide show of the computer-generated illustrations of Mr. Scherer's side-by-side comparisons which were originally attached as Appendix 1 to Mr. Scherer's Rule 26(a) disclosure. (Davenport Aff., Ex. C at 56:19-68:8.) These are the same side-by-side comparisons in Town & Country's Exhibit 625 that the Court allowed Town & Country to display to the jury during Mr. Scherer's direct examination at trial.

(8th Cir. 1988)). Magistrate Judge Nelson therefore disregarded as inadmissible Mr. Scherer's comparison of expression, including the computer-generated illustrations of those comparisons in Town & Country's Exhibit 625 which were originally attached as Appendix 1 to Mr. Scherer's Rule 26(a) disclosure. (Davenport Aff., Ex. B.)[5]

On November 1, 2004, Rottlund filed a motion in limine seeking, in part, an Order from the Court precluding Mr. Scherer from offering inadmissible comparisons of expression – such as the side-by-side comparisons of the designs at issue found in Appendix 1 of his Rule 26(a) disclosure – to support his opinion that there is no copyright infringement. (Doc. No. 634.) The Court reserved ruling. (Court Minutes, 11/3/04 at p. 2.)

On December 7, 2004, shortly before Mr. Scherer testified at trial, the Court permitted Rottlund to voice its objections to the inadmissibility of Mr. Scherer's side-by-side comparison of expression, which Magistrate Judge Nelson had previously ruled was inadmissible pursuant to the Eighth Circuit's *Hartman* and *Nelson* decisions. Trial Tr. at 3051:4-3057:5. Rottlund provided the Court with a copy of Magistrate Judge Nelson's R & R, highlighted the importance of *Hartman*, and gave the Court a copy of Town & Country Exhibit No. 625 (Appendix 1 from Mr. Scherer's Rule 26(a) disclosure) because it suspected that the Defendants would attempt to offer the exhibit through Mr. Scherer notwithstanding the prior inadmissibility and unhelpfulness rulings. *Id.* at 3051:25-3053:20; *see also* Davenport Aff., Ex. A *compared with* Davenport Aff., Ex. B; Order, 8/20/04 at 48-49.

Town & Country then admitted that Exhibit 625 violated *Hartman* and *Nelson* when its counsel argued that it was not offering the exhibit for purposes of analytical dissection of ideas.

---

[5] Having disregarded Mr. Scherer's inadmissible comparisons of expression, Magistrate Judge Nelson ultimately recommended that the Court deny Rottlund's motion to strike the entirety of

Trial Tr. at 3053:25-3054:21. Rottlund responded by again noting that expert testimony comparing expression, like the expression comparisons found in Exhibit 625, are not permitted in this Circuit. *Id.* at 3055:18-3056:3. The Court stated that Mr. Scherer could testify about his side-by-side comparisons of the town homes in question, but he could not use those comparisons to testify that there was not copying. *Id.* at 3056:4-6. After providing this guidance, the Court reserved ruling on Rottlund's motion in *limine*. *Id.* at 3056:25-3057:5.

## B. FUNDAMENTAL AND MATERIAL ERRORS DURING TRIAL PREJUDICED ROTTLUND.

### <u>ERROR NO. 1</u> Town & Country's Rule 702 Witness Jeffrey Scherer Was Allowed To Do Side-By-Side Comparisons Of Expression Between Defendants' Designs And Rottlund's Villa II Designs.

Town & Country retained architect Jeffrey Scherer to offer a Rule 702 "opinion as to whether there is copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*" (Davenport Aff., Ex. A at 1.) Although the Court indicated that Mr. Scherer could not testify that side-by-side comparisons of the designs "don't show copying," or words to that effect, (Trial Tr. at 5056:4-6), Mr. Scherer was repeatedly allowed to testify at trial (over Rottlund's objections) that he compared the town home design expressed in Town & Country's Homestead Collection to the town home design expressed in Rottlund's copyrighted Villa II architectural work, and that there was no copyright infringement because the individual elements (unprotectible ideas like "kitchen, dining, living, bathroom; gabled roofs, double-hung windows, protected entrances . . .") expressed in the two designs were either "not the same" or were "different."[6] *See*, *e.g.*, Trial Tr. at 3149:1-6, 3149:14-3150:8, 3155:9-17, 3156:24-3157:14,

---

Mr. Scherer's opinions. (*Id.* at 51-52).

[6] *See* Order, 8/20/04 at 45 where the Court discusses the similar ideas embodied in both works at issue.

3159:18-3160:25, 3161:9-14, 3164:6-20, 3164:24-3165:16, 3165:21-3166:10, 3166:15-3167:16.

**<u>ERROR NO. 2</u>** **Town & Country, Through Expert Witness Jeffrey Scherer, Was Permitted To Present Computer-Generated Demonstrative Overlays To The Jury Illustrating Mr. Scherer's Side-By-Side Comparisons Of Expression.**

The Court refused to admit Town & Country's Exhibit 625 because "I don't think there is anything that we're going to help the jury with by showing them overlays," and because "I kept overlays out from the plaintiff's attempt to do the same thing or to show similar things." Trial Tr. at 3145:25-3146:9. The Court further noted that the illustrations of Mr. Scherer's side-by-side comparison of Town & Country's Homestead Collection design expression and Rottlund's Villa II design expression "would encroach on the jury's work that they have to do" and "would not be in conformance with the law of the Eighth Circuit as it relates to this kind of case." Trial Tr. at 3147:3-20. Notwithstanding these concerns, the Court told the jury that "You will not have to go through [Exhibit 625] and make an analysis of your own. You will just see it being done here and you will have to remember it." Trial Tr. at 3147:6-9. The Court essentially instructed the jury to do exactly that which the controlling law of the Eighth Circuit forbids – substitute Mr. Scherer's expert opinion that the Homestead Collection design expression is not a copy of Rottlund's Villa II design expression because the designs are "not the same" or are "different" for the jury's own independent determination pursuant to the ordinary observer standard.

The questions posed to Mr. Scherer immediately following the Court's ruling directly contradicted the Court's prior rulings:

> Q. Mr. Scherer, would you just quickly tell the jury what this first ***overlay*** is?
>
> A. On the left is the Town & Country end unit. On the right is the Rottlund end unit. First floor.
>
> Q. Explain what the second slide is.

> A. If you convert the black lines on the previous left example of Town & Country to red and you overlay them using the upper right corner as the zero point, ***this shows the comparable differences which led me to conclude that they were not direct copies***.

Trial Tr. at 3147:22-3148:6 (emphasis added). Rottlund immediately renewed its objections pursuant to Fed. R. Evid. 403 and 703 and the Court's prior rulings at 3056:1-6 and 3147:3-20. The Court overruled Rottlund's objections. Trial Tr. at 3148:7-8. The Court thereafter permitted Town & Country to display slides from Town & Country's Exhibit 625 to the jury during Mr. Scherer's direct examination (over Rottlund's objections). *Id.* Exhibit 625 contained the computer-generated, side-by-side comparisons of Town & Country's Homestead Collection architectural designs with Rottlund's Villa II architectural designs that were attached to Mr. Scherer's expert disclosure as Appendix 1 and previously disregarded by the Court. Mr. Scherer even presented the jury with exhibits that reflected a direct overlay of the floor plans of these products, despite the Court's prior rulings preventing Rottlund from offering overlays of actual construction documents. Trial Tr. at 3147:22-3148:8; 1187:4-1191:19; 1359:3-1359:10; 1532:18-1534:11. Mr. Scherer was allowed to testify about his ultimate conclusion: "***When I overlay the Town & Country plan to the Rottlund plan, I didn't find anything that would suggest to me that one plan was copied from the other plan***." *Id.* at 3154:4-25 (emphasis added).

**<u>ERROR NO. 3</u>** **Town & Country, Through Expert Witness Jeffrey Scherer, Was Permitted To Present Computer-Generated Demonstrative Overlays To The Jury Illustrating Mr. Scherer's Element-By-Element Comparisons.**

In response to Rottlund's objections to Mr. Scherer's inappropriate and inadmissible

opinion testimony, the Court stated that Mr. Scherer "is not going to be allowed to discuss the elements as they relate to each other to describe why it is there is no evidence of copying." Trial Tr. 3150:15-3151:5. Despite the Court's ruling, and over Rottlund's continuing objections, Mr. Scherer was nevertheless permitted to testify about his element-by-element comparisons and his conclusions that the elements of Town & Country's Homestead Collection were not copies of Rottlund's Villa II because they were "not the same" or were "different." Town & Country was permitted to display (over Rottlund's objections) overlay exhibits to the jury illustrating Mr. Scherer's testimony about his element-by-element comparisons of the design expressed in Town & Country's Homestead Collection architectural works to the design expressed in Rottlund's Villa II architectural works. Trial Tr. at 3149:1-6, 3149:14-3150:8, 3155:9-17, 3156:24-3157:14, 3159:18-3160:25, 3161:9-14, 3164:6-20, 3164:24-3165:16, 3165:21-3166:10, 3166:15-3167:16. The Court erred when it allowed Mr. Scherer's testimony and permitted Town & Country to publish and disclose Town & Country's Exhibit 625 to the jury as a demonstrative exhibit during Mr. Scherer's direct examination because it contained a highly prejudicial element-by-element comparison of the Defendants' designs and Rottlund's Villa II designs, including two overlays of floor plans. The Court previously prevented Rottlund on three prior occasions from putting in to evidence an overlay of actual floor plans through fact witnesses. *See* Trial Tr. at 1187-91; 1359-62; 1534:7-11.

**<u>ERROR NO. 4</u>** **Town & Country's Expert Witness Jeffery Scherer Was Allowed To Provide Testimony That Incorrectly Redefined Copyright Law.**

Mr. Scherer was permitted to testify (over Rottlund's objections) that there was no copyright infringement because the individual elements (unprotectible ideas like "kitchen, dining, living, bathroom; gabled roofs, double-hung windows, protected entrances . . .") expressed in the

two designs were either "not the same" or were "different"[7] *See*, *e.g.*, Trial Tr. at 3149:1-6, 3149:14-3150:8, 3155:9-17, 3156:24-3157:14, 3159:18-3160:25, 3161:9-14, 3164:6-20, 3164:24-3165:16, 3165:21-3166:10, 3166:15-3167:16. By allowing Mr. Scherer to opine on his side-by-side, element-by-element comparison of expression, the Court permitted, and at least tacitly endorsed, Mr. Scherer's erroneous statement of copyright law that nothing can be a copy unless it is identical. This was clearly improper given this Court's definition of "substantial similarity" in *CSM* and *Taylor*.

**<u>ERROR NO. 5</u> Defendants Capitalized On The Erroneous Evidentiary Rulings And Used Mr. Scherer's Inadmissible Testimony And Images From Exhibit 625 During Their Closing Arguments.**

Each of the Defendants capitalized on the Court's error allowing Mr. Scherer's analytical dissection of expression during closing arguments. Mr. Scherer's impermissible testimony was the centerpiece of Town & Country's closing arguments:

> What I told you would happen is exactly what did happen, that the defendants were the parties continually urging you . . . to analyze the plans, the drawings and the photographs of the townhomes and to compare them and that the plaintiffs spent more of their time on other things, on avoiding a side-by-side comparison of the plans.
>
> No clearer example of this came than at the end of the case when Jeffrey Scherer took the stand. He was our expert. He is a former professor of architecture at the University of Minnesota for 20 years. He is a former president of the American Institute of Architects for Minnesota. He got on the stand, ***and he actually compared the plans side by side, and he explained to you why there is no evidence of copying when you look at the plans***. ***He showed you how the townhomes are actually zoned differently, how the rooms are different sizes and how they would be perceived differently by someone who walks through them***.
>
> What happened when the plaintiff's lawyers finally got their chance to cross-examine Mr. Scherer? This was their chance to confront our contention that the plans are not similar enough for you to conclude that they are copies.
>
> Did they go through any of the plans with Mr. Scherer? Did they go over his conclusion that they're not copies? Did they show him any plans at all? No.

[7] *See* Order, 8/20/04 at 45 where the Court discusses the ideas embodied in both works at issue.

> Of course not. They didn't. They went back to the same six or seven tired old exhibits that they have shown you throughout this trial.

Trial Tr. 3597:8-3598:11 (emphasis added).[8]

The principal reason for excluding expert testimony comparing the similarity of expression – invading the providence of the jury to evaluate substantial similarity under an ordinary person standard – was explicitly advocated during Defendants' closing arguments. Pinnacle's counsel told the jury to accept Mr. Scherer's conclusions: "***Jeffrey Scherer, the former professor from the University of Minnesota, looked at these, and he came to the same conclusion you should: These are not copies of one another, ladies and gentlemen***." Trial Tr. 3616:11-14 (emphasis added). He then told the jury that they could answer question No. 1 on the Special Verdict Form based on Mr. Scherer's analytical dissection testimony alone:

> Remember the testimony of Jeffrey Scherer, the former president of the American Institute of Architects from Minnesota, his testimony was simplicity itself. ***He looked at the plans, and he said these aren't copies***. I'm telling you. ***There is absolutely no reason for you to get past the first page of the verdict form. Answer no in response to question one, and your work is done here***.

Trial Tr. 3639:16-22 (emphasis added). TCM's counsel also emphasized Mr. Scherer's inappropriate opinion testimony during his closing argument:

> Finally, architectural expert Jeffrey Scherer, the only architectural expert you heard from during this entire trial explained his conclusion ***from comparing the plans***. There was no evidence of copying at all. They were distinctly different products.

Trial Tr. 3672:18-3673:3 (emphasis added).

---

[8] Pinnacle's counsel's closing argument also addressed Mr. Scherer's element-by-element analytical dissection of expression of the interior units, including the location of the stairs, the shape and size of the kitchens, the two story volume space above the living room, the loft, Trial Tr. 3603:7-19, and exterior units, including the differences between the master bedrooms, second bedrooms, lofts, volume spaces, laundries, closets, bathrooms, kitchens, staircases, dining rooms, and entries. Trial Tr. 3605:8-19, 3607:24-3608:12.

**<u>ERROR NO. 6</u>** **The Court Failed To Provide The Jury With A Complete And Accurate Explanation Of How It Should Evaluate Whether Town & Country's Homestead Collection Design Is Substantially Similar To Rottlund's Villa II Design.**

As highlighted above in connection with Error No. 5, the Defendants told the jurors to rely on Mr. Scherer's testimony to answer Question No. 1 on the Special Verdict Form. This merely exacerbated the prejudice already caused to Rottlund by the admission of Mr. Scherer's testimony and publication of Exhibit 625. Because Mr. Scherer's testimony, as discussed above in connection with Error No. 4, also redefined copyright infringement as requiring proof that the designs are virtually identical ("the same") rather than substantially similar, it was critical that the Court provide the jury with an instruction regarding how it should perform the substantial similarity analysis.

Magistrate Judge Nelson discussed the well-settled ordinary, reasonable person standard for evaluating the comparison of expression in the August 20, 2004 R&R, adopted by the Court. (Order, 8/20/04 at 46 (citing *Hartman*, 833 F.2d at 120-21 ("Infringement of expression occurs only when the total concept and feel of the works in question are substantially similar."); *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (explaining the test as whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same")). This is essentially the same standard articulated by this Court in *CSM*. *See* 840 F. Supp. at 1312 ("It is the presence of substantial similarities, however, rather than differences which determines whether infringement exists. 'The existence of differences will not negate infringement unless they so outweigh the similarities that the similarities can only be deemed inconsequential within the total context of the [copyrighted] work.'") (quoting *Chuck Blore & Don Richman, Inc. v. 20/20 Advertising, Inc.*,

674 F. Supp. 671, 680 (D. Minn. 1987)); *accord Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1043 (8th Cir. 2003) ("[T]he question of whether the [works] are substantially similar . . . becomes whether 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'") (quoting *Peter Pan Fabrics*, 274 F.2d at 489). The Court even permitted Plaintiff's counsel to quote from the *CSM* decision during opening statements. Trial Tr. at 30:14-32:16. However, during the charge conference, the Court decided that it would not include any language from *CSM* or any other decision to instruct the jury on how it should perform the substantial similarity analysis. Thus, there is no instruction defining the substantial similarity standard.

**C. ROTTLUND'S MOTION FOR JUDGMENT AS A MATTER OF LAW.**

At the close of all of the evidence, Rottlund moved the Court for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. Rottlund moved as follows:

> With respect to the specifics of our Rule 50 motion, we would like the court to grant us Rule 50 on infringement, copyright infringement, actual damages, infringer's profits, intentional infringement and damages pursuant to intentional infringement, contributory infringement, and vicarious liability. With respect to the infringement motion, that is made with respect to the Homestead Collection, the Washington Square town homes in Illinois which were exported from Minneapolis to Chicago, and the Chateau Collection here in Minneapolis, which is just a renamed version of the Homestead Collection.

Trial Tr. at 3331:20-3331:6. The Court did not grant Rottlund's motion; it reserved ruling.

On December 13, 2004, the Court charged the jury with instructions and this action was presented to the jury. On December 14, 2004, the jury returned a verdict that the Defendants did not infringe Rottlund's Villa II copyrights. Judgment was entered on December 21, 2004.

## III. ARGUMENT

### A. STANDARDS.

#### 1. Motion for New Trial Pursuant to Rule 59.

A different standard than that for judgment as a matter of law governs a motion for a new trial pursuant to Rule 59 or Rule 50(b). *See White v. Pence*, 961 F.2d 776, 779 (8th Cir. 1992). The standard for the grant of a new trial is less stringent than the standard for a judgment as a matter of law. *Id.* at 779-80. The power of a Federal Judge to grant a new trial on the grounds that a verdict is against the weight of the evidence is clear. *Bryd v. Blue Ridge Rural Elec. Co-op, Inc.*, 356 U.S. 525 (1958); *White*, 961 F.2d at 780. The Court need not view the evidence in the light most favorable to the party in whose favor the verdict was granted. *White*, 961 F.2d at 781-82; *Slatton v. Martin K. Eby Const. Co.*, 506 F.2d 505, 508 n.4 (8th Cir. 1974). Unlike judgment as a matter of law, "[i]n determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" *White*, 961 F.2d at 780 (quoting *Ryan v. McDonough Power Equip., Inc.*, 734 F.2d 385, 387 (8th Cir. 1984) (internal citation omitted)). Indeed, the grant of a new trial on the grounds that the verdict is against the weight of the evidence involves an element of discretion which goes further than the mere sufficiency of the evidence. It embraces all of the reasons which inhere in the integrity of the jury system itself. *White*, 961 F.2d at 781; *Slatton*, 506 F.2d at 508 (stating that "the action of the trial court in setting aside a jury verdict is not in derogation of the right to trial by jury, 'but is one of the historic safeguards of that right'") (citation omitted). "'[T]he true standard for granting a new trial on the basis of the weight of the evidence is simply one which measures the result in terms of whether a miscarriage of justice has occurred. When

through judicial balancing the trial court determines that the first trial has resulted in a miscarriage of justice, the court may order a new trial . . . .'" *White*, 961 F.2d at 780 (quoting *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 187 (8th Cir. 1972)).

Where the trial court weighs and analyzes the evidence on a motion for a new trial, findings that there has been a miscarriage of justice or that the court must reject some of the evidence "are sufficient to support the grant of a new trial." *White*, 961 F.2d at 782. Likewise, a new trial is warranted if the trial court errs in rulings on evidence and in refusing requesting instructions. *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 249, 251, 61 S. Ct. 189, 193-94 (1940) (stating that an affirmative finding that the verdict was against the weight of the evidence or a finding that the trial court's errors in rulings on evidence or refusing requested instructions affected a party's substantial rights requires a new trial); *White v. Honeywell, Inc.*, 141 F.3d 1270, 1274-75 (8th Cir. 1998) (reversing judgment entered after jury trial and remanding for new trial due to errors in evidentiary rulings and refusing to tailor jury instructions to the facts of the case); *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1105-06 (8th Cir. 1988), *superseded on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775. 104 L.Ed.2d 268 (1989), *as stated in Foster v. University of Ark.*, 938 F.2d 111, 115 (8th Cir.1991) (reversing judgment entered on jury verdict and remanding for a new trial because trial court's erroneous evidentiary rulings resulted in unfair prejudice and correction of trial court's evidentiary would improve party's chances of prevailing before a jury); *accord Midcontinent Broadcast. Co. v. North Central Airlines, Inc.*, 471 F.2d 357, 360 (8th Cir. 1973) (stating that trial court's decision granting motion for new trial is reviewed for abuse of discretion). As the Eighth Circuit explained in *Midcontinent Broadcasting Company*, "'If, after the return of the verdict, the court had been off the opinion that it was based upon incompetent testimony

erroneously admitted during the course of the trial, the court had no alternative but to grant a new trial rather than a motion for judgment notwithstanding the verdict." *Midcontinent*, 471 F.2d at 359 (citation omitted).

As explained more fully in Section B *infra*, Rottlund is entitled to a new trial because the Court erred as a matter of law when it admitted Town & Country's expert witness Jeffrey Scherer's analytical dissection testimony, permitted computer-generated illustrations of his inadmissible side-by-side comparisons of expression to be published to the jury in Exhibit 625, and gave incomplete instructions to the jury regarding the test for substantial similarity, and because the verdict was against the weight of the evidence. The combination of these errors affected Rottlund's substantial rights and resulted in an unfair trial. *See Montgomery Ward*, 311 U.S. at 249, 251, 61 S. Ct. at 194 (stating that a new trial is appropriate where substantial errors in admission of evidence or instructions to the jury raise questions of law regarding fairness of trial); *Pelster v. Ray*, 987 F.2d 514, 526-527 (8th Cir. 1993) (reversing and remanding for new trial because of trial court's erroneous admission of expert testimony that was critical to establishing shortcut to a proposition further up parties' evidentiary chain).

**2. Motion for Judgment as a Matter of Law Pursuant to Rule 50(b).**

Whether the evidence presented at trial is sufficient to create an issue of fact for the jury, or if it will permit the Court to enter judgment as a matter of law, is solely a question of law to be determined by this Court. *See Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1505 (8th Cir. 1992) (discussing *de novo* review of trial court's determination of motion for judgment as a matter of law); *see also Bankers Trust Co. v. Lee Keeling & Associates, Inc.*, 20 F.3d 1092, 1099 (10th Cir. 1994). Judgment as a matter of law is appropriate "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury

to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). The question is not whether there is literally no evidence supporting the party against whom the motion is directed, but whether there is evidence upon which the jury properly could find for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A 'scintilla' of evidence, however, is not enough to justify submission of a case to a jury. *See Bankers Trust Co.*, 20 F.3d at 1100 (citation omitted). The Court "must assume as proven all facts that the nonmoving party's evidence tended to show, give [it] the benefit of all reasonable inferences, and assume that all conflicts in the evidence were resolved in [its] favor." *Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir. 1997). The nonmoving party, however, is not given "the benefit of unreasonable inferences or those at war with the undisputed facts." *Sip-Top, Inc. v. Ekco Group, Inc.*, 86 F.3d 827, 830 (8th Cir. 1996) (citations and internal quotations omitted). The motion "must be granted when the non-movant's case rests solely upon speculation and conjecture lacking in probative evidentiary support." *Johnson v. Niagara Mach. & Tool Works*, 666 F.2d 1223, 1225 (8th Cir. 1981) (internal quotations and citation omitted).

**B. ROTTLUND IS ENTITLED TO A NEW TRIAL BECAUSE THE JURY'S VERDICT AGAINST ROTTLUND IS AGAINST THE WEIGHT OF THE ADMISSIBLE EVIDENCE, AND IS A MISCARRIAGE OF JUSTICE.**

Rottlund is entitled to a new trial. The overwhelming and substantial evidence at trial established that Defendants directly copied Rottlund's Villa II technical drawings and town homes when developing Defendants' Homestead Collection, Washington Square and Chateau Collection technical drawings and town homes, and that Defendants' Homestead Collection, Washington Square and Chateau Collection technical drawings and town homes are substantially similar to Rottlund's Villa II technical drawings and town homes. In addition, the Court made critical errors in rulings on evidence and refusing Rottlund's requested jury instructions that affected

Rottlund's substantial rights and require a new trial. The inadmissible expert testimony provide by Mr. Scherer and the corresponding demonstrative Exhibit 625 do not measure up to sufficient evidentiary weight to sustain the jury verdict on the copyright infringement claim against Rottlund. Excluding this evidence that the Court erroneously admitted during the trial, the clear weight of the evidence points to but one conclusion: Defendants' architectural works infringed Rottlund's Villa II copyrights.

**1. The Court Erroneously Permitted Inadmissible Expert Testimony To Rebut The Overwhelming Evidence of Direct Copying and Substantial Similarity.**

The Town & Country Defendants proffered Jeffrey Scherer as an expert to offer his opinion that the Defendants did not copy Rottlund's Villa II works. Pinnacle elicited over Rottlund's objections Mr. Scherer's opinions on whether Defendants' works contained similar expression of ideas as those in Rottlund's Villa II architectural works using a side-by-side, element-by-element, analytical dissection. The Court's admission of Mr. Scherer's expert opinion testimony that Defendants did not infringe Rottlund's Villa II copyrights contravened Rules 103(c), 402, 403, 702 and 703 of the Federal Rules of Evidence, and the Eighth Circuit's decision in *Hartman* and its progeny. As raised in Rottlund's motion *in limine* and again in its objections to Mr. Scherer's testimony during trial, the Eighth Circuit held long ago in *Hartman* that such expert testimony is inadmissible at trial: "Although expert opinion evidence is admissible in connection with the first step of the substantial similarity analysis to show *similarity of ideas*, analytical dissection and expert opinion are not called for under the second step in which substantial *similarity of expression* is measured by a different standard—the response of the ordinary, reasonable person." *Hartman*, 833 F.2d at 120 (emphasis added); *see also Nelson*, 873 F.2d at 1143. Scherer's opinion testimony concerning whether there has been copyright

infringement of Rottlund's Villa II technical drawings or Villa II architectural works was not admissible because he cannot assume the role of the fact finder. *See United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) ("Opinions that are 'phrased in terms of inadequately explored legal criteria' or that 'merely tell the jury what result to reach' are not deemed helpful to the jury, . . . and thus, are not admissible under Rule 702.") (quoting Fed. R. Evid. 704 advisory committee note); *Pelster*, 987 F.2d at 526-527 (reversing and remanding for new trial for err in admitting expert testimony that was within the knowledge or experience of lay people); *Hogan v. American Tel. & Tel. Co.*, 812 F.2d 409, 411 (8th Cir. 1987) ("Because the judge and not a witness is to instruct the factfinder on the applicable principles of law, exclusion of opinion testimony is appropriate if the terms used have a separate, distinct, and special legal meaning.") (citations omitted); *Torres*, 758 F.2d at 150-51 ("The problem with testimony containing a legal conclusion is in conveying the witnesses' unexpressed, and perhaps erroneous, legal standards to the jury."); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (question asking for legal conclusion supplies fact finder with no information other than what witness believes verdict should be); *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 508-09 (2d Cir. 1977) (holding that admission of testimony of securities law expert was an error of law and highly prejudicial).

Shortly after Mr. Scherer took the witness stand, Exhibit 625 was received as a demonstrative exhibit (over Rottlund's objections). Trial Tr. at 3145:25-3147:20. Mr. Scherer was then permitted to opine (over Rottlund's objections) about his side-by-side, element-by-element comparisons of expression while the illustration of those comparisons contained in Exhibit 625 were published to the jury. *See*, *e.g.*, Trial Tr. at 3149:1-6, 3149:14-3150:8, 3155:9-17, 3156:24-3157:14, 3159:18-3160:25, 3161:9-14, 3164:6-20, 3164:24-3165:16, 3165:21-3166:10, 3166:15-3167:16. Mr. Scherer was permitted to opine (over Rottlund's objections) that

the Homestead Collection was not a copy of Rottlund's Villa II because, based on his comparison of the elements (ideas) expressed in the designs, they were "not the same" or were "different." *Id.*

The record reveals that Exhibit 625 and all of Mr. Scherer's testimony based on it is a comparison of expression:

> Q. Mr. Scherer, did you analyze the designs of the Town & Country Homestead and the Rottlund Villa II in connection with your work in this matter?
>
> A. Yes, I did.
>
> Q. And for what purpose did you do that?
>
> A. To see if there was evidence of copying.
>
> Q. What did you conclude?
>
> * * * [Rottlund's objections overruled] * * *
>
> A. That there was not evidence of copying.
>
> Q. Sir, I have handed you what has been marked at T & C Exhibit 625. I would ask you to tell me what this is.
>
> A. This is the analysis that was referred to in the previous question.
>
> Q. Well, what is the analysis made up of?
>
> A. It's made up of looking at the plans and the elevations of the Rottlund and Town & Country products.
>
> Q. Did you put it together?
>
> A. I did.
>
> Q. How did you go about doing it?
>
> A. In the drawings that were given to me that were to scale, we translated those drawings electronically to the same scale and then electronically placed those reproduced drawings side by side.

Q. And do the overlays contained in this exhibit fairly and accurately represent two town homes products at issue in this lawsuit?

A. I believe they do.

Trial Tr. at 3142:7-3145:6. Mr. Scherer's admission demonstrates that Exhibit 625 is a Rule 702 comparison of expression and represents his entire analysis in support of his opinion that copying did not occur. The Court nevertheless overruled Rottlund's objections to the admission of Exhibit 625, received Exhibit 625 as a demonstrative exhibit, and allowed Town & Country and Mr. Scherer to opine and display to the jury Mr. Scherer's side-by-side comparisons "to explain what it is that substantiates his opinion." Trial Tr. at 3145:25-3146:4.[9] In short, Mr. Scherer compared expression, published it to the jury, and relied on that comparison to testify that no copying occurred because there was no similarity in expression since the designs were "not the same" or "different." *See*, *e.g.*, Trial Tr. at 3149:1-6, 3149:14-3150:8, 3155:9-17, 3156:24-3157:14, 3159:18-3160:25, 3161:9-14, 3164:6-20, 3164:24-3165:16, 3165:21-3166:10, 3166:15-3167:16.

[9] Although Exhibit 625 was received as a demonstrative exhibit, the Court acknowledged that Mr. Scherer's side-by-side comparisons of expression in Exhibit 625 would not be helpful to the jury, and that Rottlund had been precluded from introducing evidence over overlays of actual designs. Trial Tr. at 3146:4-9. The Court also recognized that the side-by-side comparisons of expression in Exhibit 625 "would encroach on the jury's work they have to do," and that Exhibit 625 would not be admitted as evidence because it "would not be in conformance with the law of the Eighth Circuit as it relates to this kind of case." Trial Tr. at 3147:13-20. But when Pinnacle requested permission to examine Mr. Scherer with Exhibit 625 displayed for the jury, "so the jury has the benefit of seeing what we are talking about," the Court agreed and permitted Pinnacle to publish Exhibit 625 to the jury during Mr. Scherer's testimony. Trial Tr. at 3146:22-3147:2. Mr. Scherer was then allowed to testify (over Rottlund's objections) regarding his side-by-side comparison of the expression of various elements in Defendants' Homestead Collection designs and Rottlund's Villa II designs while slides from Exhibit 625 were displayed to the jury, even though his testimony and exhibit 625 invaded the province of the jury and contravened the law of the Eighth Circuit. *Id*. at 3147:13-20.

The admission of Mr. Scherer's testimony also contravened several Rules of Evidence. *See, e.g.*, Fed. R. Evid. 103(c) ("In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.");[10] Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible"); Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ."); Fed. R. Evid. 702 (expert testimony not admissible unless it "will assist the trier of fact to understand the evidence or to determine a fact at issue"); Fed. R. Evid. 703 ("Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweigh their prejudicial effect."). The jury not only heard Mr. Scherer's inadmissible expert testimony, but Pinnacle was also permitted to display the inadmissible and highly prejudicial computer-generated illustrations of Mr. Scherer's analytical dissection. Here, the only assistance the jury could possibly obtain from Town & Country's Exhibit 625 is a comparative evaluation of expression of the ideas in Town & Country's works and Rottlund's works, a comparative evaluation that is plainly prohibited under well-settled Eighth Circuit law. *See Hartman*, 833 F.2d at 120. Indeed, the Court specifically recognized that Mr. Scherer's analysis and side-by-side comparison set forth in Exhibit 625 would invade the province of the jury. Trial Tr. at 3147:3-20.

---

[10] Rule 103(c) was violated not just in terms of how the Court should have evaluated potentially inadmissible evidence, but also by the Court's decision to allow inadmissible evidence to be presented to the jury as demonstrative exhibits.

Although the Court refused to formally admit Exhibit 625, Town & Country was nevertheless allowed to use it as a demonstrative exhibit and disclose Exhibit 625 to the jury in a slide show display during Mr. Scherer's direct examination. This testimony and this exhibit were the cornerstones of Town & Country's closing arguments.

Moreover, even assuming, *arguendo*, that this testimony and evidence could provide permissible assistance to the jury, the probative value of Mr. Scherer's opinion did not substantially outweigh the prejudicial effect of the testimony and exhibit. *See* Fed. R. Evid. 403 and 703. Indeed, the inverse is true. This testimony had no probative value under the law of the Eighth Circuit as it was irrelevant and invaded the province of the jury, but was highly prejudicial to Rottlund as it carried "the aura of reliability and trustworthiness" that accompanies an expert's testimony. *United States v. Purham*, 725 F.2d 450, 454 (8th Cir. 1984); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 113 S. Ct. 2786, 2798 (1993) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.") (internal quotation omitted); *accord Pelster*, 987 F.2d at 926 (discussing "especially dangerous use of expert testimony"). As Town & Country triumphantly stated to the jury during closing arguments, "the only architectural expert you heard from during this entire trial explained his conclusion from comparing the plans. There was no evidence of copying at all. ***They were distinctly different products***." Trial Tr. at 3672:18-22 (emphasis added).

Rottlund was faced with a Hobson's choice when the Court allowed the jury to hear Mr. Scherer's analytical dissection of expression testimony. Cross-examination on Mr. Scherer's analytical dissection would only underscore his improper testimony and give him a second

opportunity to restate his inadmissible opinion,[11] while not cross-examining him would allow Defendants to argue (as they all did) that Rottlund was somehow avoiding a side-by-side comparison of the town homes in Defendants' architectural works and Rottlund's Villa II works. Rottlund cannot be faulted for failing to cross-examine Mr. Scherer on his highly prejudicial testimony that never should have been admitted in the first place.[12]

Unfortunately, the Court's curative instruction further confused matters and only exacerbated the prejudice to Rottlund caused by the admission of Mr. Scherer's testimony:

> Members of the Jury, you are going to get an instruction that I hope you will understand. ***This particular witness is not going to be allowed to discuss the elements as they relate to each other to describe why it is there is no evidence of copying***. It has to do with the law, and maybe it's a -- may be a little difficult for you to understand, but we're going to try to make it easy for you to understand.
>
> Unfortunately, the lawyers sometimes don't understand this as it relates to what they want to show, ***and obviously Mr. Scherer is capable of giving any opinion about these elements. He can probably spend days telling us why each of these elements is different***.
>
> Unfortunately, in this kind of a case, that's not relevant. ***So we're only going to allow him to testify as to why he thinks there was not copying***. . . .

Trial Tr. 3150:15-3151:5 (emphasis added).[13] The Court not only suggested to the jury that Mr. Scherer "can probably spend days telling us why each of these elements is different," but told the jury that Mr. Scherer won't "***be allowed to discuss the elements as they relate to each other***

[11] *See, e.g.*, *Marx*, 550 F.2d 510 n.14 (expert "amplified" his opinion on cross-examination). Indeed, "compelling [an] opponent to cross-examine to repair the damage is to invite disaster, for much will turn on the obstinancy of the expert, and repetition before a jury, especially on cross-examination, is likely to impress the jury." *Id.* at 511. Moreover, had Rottlund done so, Defendants could then argue that the prior admission was harmless as the same testimony and evidence was presented to the jury during Rottlund's cross-examination.

[12] Nor can Rottlund be faulted for not calling its liability expert Anthony Desnick as a witness to provide testimony that is not allowed under the controlling law of the Eighth Circuit.

[13] It is unclear why the Court stated Mr. Scherer could testify as to why he thought there was not copying when the Court had previously stated Mr. Scherer could not say, "'These obviously don't show copying,' or words to that effect?" Trial Tr. 3056:4-6.

***to describe why it is there is no evidence of copying***," when moments later Mr. Scherer was allowed (over Rottlund's objection) to just that: a side-by-side, element-by-element comparison of Defendants' works and Rottlund's Villa II works using computer-generated overlays as the basis for his conclusion that Defendants did not copy Rottlund. Even if the Court's instructions were clear, the jury would certainly be confused because Mr. Scherer was allowed to provide the precise testimony the Court told the jury he could not provide. Moreover, no instruction could cure the substantial prejudice to Rottlund caused by Mr. Scherer's inadmissible analytical dissection and supporting computer-generated illustrations.

**2. The Court's Erroneous Allowance of Mr. Scherer's Inadmissible Expert Testimony Confused And Misled The Jury To Require Rottlund To Prove That Defendants' Works Were Virtually Identical To Rottlund's Villa II Works.**

Mr. Scherer's testimony and the publication of Town & Country Exhibit 625 effectively required Rottlund to overcome Mr. Scherer's expert opinion testimony that there can be no copying unless the plans are "the same." Therefore, after resting its case and with Town & Country's last witness, Rottlund was forced to prove copyright infringement by a virtually identical standard, rather than substantially similar standard. Prior to allowing Mr. Scherer to testify, the Court had repeatedly rejected Defendants' "thin protection" arguments and continued efforts to raise Rottlund's burden to require proof to that Defendants' works were either "the same" or "virtually identical" to Rottlund's Villa II. *See, e.g.*, Order, 10/19/04 at 6 n.2; Trial Tr. at 3345:16-21 (denying Town & Country Defendants' Proposed Instructions No. 7). Mr. Scherer's inadmissible opinion testimony impermissibly resurrected Defendants' thin protection legal argument. Mr. Scherer should never have been permitted to opine that Defendants never copied Rottlund because the expressions of ideas were "not the same" or were "different."

**a. Mr. Scherer's Opinion Testimony On "Whether Defendants Copied Rottlund" Must Be Excluded Because It Redefines Copyright Law.**

Defendants will no doubt seek to redefine Mr. Scherer's testimony as merely testimony regarding direct evidence of copying. Mr. Scherer's testimony and conclusions are based on his experience and expertise as an architect.[14] Regardless of what label Defendants or Mr. Scherer use, there can be no question that Mr. Scherer's testimony constitutes the impermissible side-by-side, element-by-element, analytical dissection of the expression of ideas embodied in the works that is expressly prohibited under controlling Eighth Circuit law. The prohibition of expert testimony regarding the similarity of expression would be rendered a nullity if a party could merely relabel the testimony as an analysis of direct evidence of copying to circumvent the prohibition. The Eighth Circuit in *Hartman* rejected a similar argument when it held that "evidence of an industry's custom" is irrelevant under the intrinsic test, and therefore affirmed the district court's refusal to consider proffered literary experts' affidavits listing the similarities of expression. 833 F.2d at 120.[15] The Court erred when it refused to exclude Mr. Scherer's expert testimony from the trial. *Id*.

As the court found in *Kindergartners Count, Inc. v. DeMoulin*, expert opinion testimony such as that given by Mr. Scherer is inappropriate and likely to confuse the jury: "Unlike technical computer programs, the trier of fact does not need an expert to compare two literary works that are expressed in simple English. [The] expert['s] opinion will not change what each

[14] Mr. Scherer testified as a Rule 702 expert. Unlike other fact witnesses, including Tim Whitten, Doug Buster, Larry Moore, and Art Plante, who testified on the basis of their first hand knowledge regarding the similarity and differences between Defendants' works and Rottlund's works, Mr. Scherer has no such first hand knowledge.

[15] In addition, as Mr. Scherer himself admitted on cross-examination, his opinion testimony and demonstrative exhibit 625 did not reflect the substantial direct evidence of copying introduced at trial by Rottlund. The fact that Mr. Scherer ignored the direct evidence of copying also requires

work is on its face." 249 F. Supp. 2d 1214, 1232 (D. Kan. 2003) (holding that expert testimony regarding actual copying would likely create unnecessary confusion as the trier of fact "would be exposed to expert evidence regarding 'substantial similarity' of the works as a whole to determine actual copying, yet would be expected to analyze whether the copying was unlawful under the ordinary observer test").[16] The concerns regarding expert opinion testimony raised in the *Kindergartners Count* case became reality in this case because the Court refused to exclude Mr. Scherer's improper opinion testimony.

In *Marx & Co., Inc. v. Diners' Club, Inc.*, the Second Circuit reversed a judgment entered on a jury verdict and remanded for a new trial because the trial court erred when it allowed an expert to testify about highly prejudicial legal opinions. 550 F.2d at 507-12. The Second Circuit held that "notwithstanding the general discretion allowed to trial judges respecting expert testimony," the admission of the testimony of a securities law expert was "an error of law and highly prejudicial." 550 F.2d at 508 (citations omitted). The Second Circuit recognized that "expert testimony concerning the practices of a particular trade or business is not admissible if, as a matter of substantive law, only the jury's common understanding and not the customary practices or usages are relevant." *Id.* at 509 n.11 (citation omitted).

---

the exclusion of Mr. Scherer's opinion testimony. Trial Tr. at 3167:21-3182:25.

[16] *But cf. Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1300 (D.C. Cir. 2002) (discussing admission of expert testimony "only to help juries determine 'whether . . . the infringer ***used*** the copyrighted work in making his own' (actual copying), not to determine 'whether . . . the copying was . . . an unlawful appropriation' (substantial similarity)") (quoting *Whelan Assocs. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1232 (3d Cir. 1986)). Here, Mr. Scherer does not opine on whether Defendants ***used*** Rottlund's Villa II works. Instead, he opines that Defendants did not copy Rottlund because the expression of elements dissected from the context of the entire work are "not the same" or are "different." In other words, Mr. Scherer's testimony relates only to whether there was unlawful appropriation of expression – substantial similarity. Expert opinion testimony regarding substantial similarity of expression is not relevant and is inadmissible in this Circuit.

**b. Mr. Scherer's Opinion Testimony On "Whether Defendants Directly Copied Rottlund" Must Be Excluded Because It Ignores The Only Evidence Introduced At Trial Regarding That Issue.**

Mr. Scherer's conclusory opinion that Defendants did not copy Rottlund is based exclusively on his side-by-side comparison of the elements, the analytical dissection prohibited under controlling federal law. *See*, *e.g.*, Trial Tr. at 3149:1-6, 3149:14-3150:8, 3155:9-17, 3156:24-3157:14, 3159:18-3160:25, 3161:9-14, 3164:6-20, 3164:24-3165:16, 3165:21-3166:10, 3166:15-3167:16. Although the Defendants may now argue that he was opining on direct evidence of copying, Mr. Scherer admitted that he disregarded countless facts concerning the Defendants' copying of Rottlund's Villa II designs (i.e., the photograph of Rottlund's product affixed to the Town & Country Homes Defendants' redlines of the Homestead Collection design with the instruction to "see Rottlund's product," the floor plans and pictures of Rottlund's Villa II product that were produced from Pinnacle's in-house architect's files, the multitude of tours that the Defendants took of Rottlund's Villa II product, or the portions of Rottlund's sprinkler room designs that came from the Defendants' files, *etc.*). *See* Trial Tr. at 3167:21-3182:25.[17]

Mr. Scherer's testimony was misleading and prejudicial because he sidestepped the overwhelming evidence that the Defendants copied Rottlund's technical drawings and architectural works with a self-sealing argument that the Defendants did not copy Rottlund's Villa II because the town homes expressed were "not the same" as Rottlund's Villa II or were "different." Accordingly, Scherer's conclusory opinions regarding this ultimate issue reserved for

[17] In addition, Mr. Scherer's Rule 26(a) disclosure plainly states that he was retained to offer his "opinion as to whether there is copyright infringement arising under the Copyright Act" and "to determine whether there had been copyright infringement, I will examine the issues of *original works of authorship* and *independent creation*." (Davenport Aff., Ex. A at Report pp. 1-2.) Any argument that Mr. Scherer was offered to opine on direct evidence of copying would directly contradict his Rule 26(a) disclosure.

the jury rests on nothing more than the *ipse dixit* of Scherer himself, and should have been excluded. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")

**c. Mr. Scherer's Opinion Testimony Invaded The Province Of The Jury.**

Mr. Scherer's opinion squarely addressed an ultimate issue of fact – whether Defendants' works infringed Rottlund's copyrights. Although expert opinion testimony regarding an ultimate issue of fact is permissible, *see* Fed. R. Evid. 704(a), "courts must guard against 'invad[ing] the province of the jury on a question which the jury was entirely capable of answering without the benefit of . . . expert opinion.'" *Robertson v. Norton Co.*, 148 F.3d 905, 908 (8th Cir. 1998) (quoting *Walton v. Sherwin-Williams Co.*, 191 F.2d 277, 285-86 (8th Cir. 1951)). This is especially true in this case because, under well-settled Eighth Circuit law, Mr. Scherer's analytical dissection of expression is not helpful to the jury and should have been excluded. *See* R&R, 8/20/04 at 49 (citing *Hartman*, 833 F.2d at 120) and n.32 ("The Court will not consider Scherer's "'attempt to tell the court what result to reach.'") (quoting *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 752-53 (8th Cir. 2003)); *see also Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir. 1988) (explaining the principle that expert opinion evidence that simply tells the jury what result to reach is not helpful).

Furthermore, Mr. Scherer's improper opinions went to the primary issue upon which the jury had to make a judgment. Accordingly, the Court erred in allowing Mr. Scherer to give opinions specifically about the similarity of expression and Rottlund was prejudiced as a result. *See Marx*, 550 F.2d at 509 n.11 (stating that expert testimony is not admissible "if, as a matter of substantive law, only the jury's common understanding and not the customary practices or usages

are relevant."); *Royal Loan Co. v. United States*, 154 F.2d 556 (8th Cir. 1946) (testimony of securities dealers superfluous in action to recover documentary stamp tax levied on instruments "known generally as corporate securities). Rottlund is entitled to a new trial because of the substantial prejudice caused by the erroneous admission of Mr. Scherer's expert testimony. *See Weisgram v. Marley Co.*, 169 F.3d 514, 517-21 (8th Cir. 1999) (holding that portions of testimony from three different expert witnesses each lacked a sufficient foundation because they had exceeded the scope of the witness's expertise and thus were unreliable under Rule 702, and therefore it was an abuse of discretion to allow the testimony), *aff'd*, 528 U.S. 440, 120 S. Ct. 1011 (2000); *Robertson*, 148 F.3d at 907-08 (ordering new trial after manufacturing/ceramics/materials expert offered opinions as to the adequacy of grinding wheel warnings because the opinion was not sufficiently reliable under *Daubert* due to the expert's lack of training, research, practical knowledge, or experience with respect to warning labels).

**3. The Substantial Prejudice To Rottlund Caused By The Erroneous Admission Of Mr. Scherer's Testimony Was Compounded By The Arguments Made During Closing Argument Regarding That Testimony.**

The prejudice to Rottlund was even further increased because each of the Defendants capitalized on the Court's error allowing Mr. Scherer's analytical dissection of expression during closing arguments. *See Whitted*, 11 F.3d at 786-87 (stating that prejudice caused by inadmissible expert testimony was increased because of the use made of that testimony during closing arguments); *accord Lambert v. Midwest City Memorial Hosp. Auth.*, 671 F.2d 372 (10th Cir. 1982) (reversible error occurs when counsel's closing remarks introduce extraneous matter which has a reasonable probability of influencing the jury). Indeed, the principal reason for excluding expert testimony comparing the similarity of expression – invading the providence of the jury to evaluate substantial similarity under an ordinary person standard – was explicitly advocated during

Defendants' closing arguments. Trial Tr. 3616:11-14. In fact, Town & Country's counsel specifically told the jury that they could answer question No. 1 on the Special Verdict Form based on Mr. Scherer's analytical dissection of expression testimony alone. Trial Tr. 3639:16-22.

**4. The Substantial Prejudice To Rottlund Caused By The Admission of Mr. Scherer's Testimony Was Increased By The Court's Insufficient Jury Instructions Regarding How The Jury Should Evaluate Whether The Works At Issue Are Substantially Similar.**[18]

The substantial prejudice to Rottlund caused by the erroneous admission of Mr. Scherer's testimony was compounded by the Court's refusal to provide the jury with a clear instruction regarding how it should evaluate whether Defendants' works were substantially similar to Rottlund's Villa II works. Copyright infringement – whether Defendants directly copied Rottlund or whether the expression of ideas in Defendants' works was substantially similar to the expression of ideas in Rottlund's Villa II works – was the only liability issue for the jury to determine. The Court instructed the jury that "[t]o prove that defendants Pinnacle, Town & Country Minnesota and/or BSB infringed plaintiff Rottlund's copyrights, Rottlund must show either that defendants directly copied Rottlund's Villa II or that there are substantial similarities between each of the Homestead Collection, Chateau Collection or Washington Square Townhomes and each of Rottlund's Villa II copyrights that are the result of copying." Instruction No. 21. In Instruction 23, the jury was instructed to consider: "Are there similarities between the

[18] The Court also erred when it failed to give the jury an instruction regarding an adverse inference and/or spoliation of evidence, such as Plaintiff's Proposed Instruction Nos. 41 and 42, and the Court's proposed Instruction No. 18, because there was substantial evidence in the record that Defendants may have intentionally destroyed relevant and incriminating documents.

Homestead Collection, Washington Square Townhomes or Chateau Collection and the protectible expression of Rottlund's Villa II?" Finally, in Instruction 24, the jury was instructed: "Works are substantially similar if the expression of ideas in plaintiff's copyrighted Villa II and the expression of ideas in the Homestead Collection, Washington Square Townhomes or Chateau Collection are substantially similar. The test for expression of ideas is whether an ordinary reasonable person would find the total concept and feel to be substantially similar."

Even though Rottlund introduced evidence of over 70 elements that more than satisfied the definition of substantial similarity, *see, e.g.*, Exs. 134 and 597; Trial Tr. 1352:21-1356:22, none of the Court's instructions to the jury addressed the how any differences that might exist between Defendants' works and Rottlund's Villa II works should be addressed. Without any instruction or direction, the jury was either left to speculate on its own what its analysis should be, or else turn to the "only architectural expert" who testified during the case. Under either scenario, whether the jury reached its verdict through speculation or reliance on Mr. Scherer's testimony, Rottlund was substantially prejudiced by the Court's failure to give the jury adequate guidance and instruction on how to evaluate whether the works at issue were substantially similar. These defects in the Court's instructions contributed to a miscarriage of justice. *See Pate v. Seaboard R.R., Inc.*, 819 F.2d 1074, 1083 (11th Cir. 1987) (an instruction that misleads the jury or leaves the jury to speculate as to an essential point of law "is sufficiently fundamental to warrant a new trial") (quoting *Cruthirds v. RCI, Inc.*, 624 F.2d 632, 636 (5th Cir. 1980)).[19]

[19] Even if other admissible evidence regarding other theories for non-infringement (*i.e.*, independent creation) might conceivable have influenced the jury's decision, Rottlund is still entitled to a new trial. "When evidence relevant to one of two theories subsumed in a verdict is erroneously admitted, the verdict is set aside unless we are 'convinced that the jury proceeded only on the sound ground.'" *Robertson*, 148 F.3d at 908 (quoting *Mueller v. Hubbard Milling Co.*, 573 F.2d 1029, 1039 (8th Cir. 1978)). Given the substantial direct and circumstantial

## C. ROTTLUND IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

Rottlund renews its request for judgment as a matter of law on the issues of copyright infringement, vicarious liability and contributory infringement. Copyright infringement may be proven by direct evidence of copying or circumstantial evidence of copying by demonstrating access and substantial similarity. *Nelson*, 873 F.2d at 1142. Vicarious liability for copyright infringement exists where the right and ability to supervise coalesce with an obvious financial interest in the exploitation of a copyright. *See*, *e.g.*, *Rottlund Co. v. Scott Larson Const., Inc.*, 02-CV-1238, 2004 WL 742054, *5 (D. Minn. 2004).[20] Contributory infringement exists where a party has knowledge of the infringing activity and induces, causes or materially contributes to the infringing conduct of another. *See*, *e.g.*, *id.* at *6.

The record is replete with facts to support judgment as a matter of law in Rottlund's favor on these issues.[21] As a result, Rottlund respectfully requests that the Court direct entry of judgment as a matter of law in Rottlund's favor on the issues of copyright infringement, vicarious liability and contributory infringement, and grant a new trial on the remaining issues.

### 1. There Was Not A Legally Sufficient Evidentiary Basis For A Reasonable Jury To Find That Defendants' Architectural Works Did Not Infringe Rottlund's Villa II Copyrights.

There was not a legally sufficient evidentiary basis for a reasonable jury to find that

---

evidence of copying presented by Rottlund, as well as the testimony of both Rottlund's in-house architect and Pinnacle's in-house architect regarding the similarity of the works at issue, it simply cannot be said with any conviction that the jury based its verdict solely on the hotly contested independent creation defense. Accordingly, Rottlund is entitled to a new trial. *Id.* (holding that the district court abused its discretion in admitting expert opinion testimony; reversing judgment of district court and remanding for a new trial).

[20] The unpublished decision cited herein is attached as Exhibit D to the Davenport Affidavit.

[21] For instance, as the Court noted at trial, Rottlund's direct evidence of copying is "obvious." Trial Tr. at 3139:10-3140:2.

Defendants' Homestead Collection, Washington Square and Chateau Collection technical drawings and town homes did not infringe Rottlund's Villa II technical drawings and town homes. The evidence at trial established as a matter of law that Defendants directly copied Rottlund's Villa II technical drawings and town homes when developing Defendants' Homestead Collection, Washington Square and Chateau Collection technical drawings and town homes.

The evidence at trial also established as a matter of law that that Defendants' works infringed Rottlund's Villa II copyrights because they are substantially similar. No reasonable jury could find that the total look and feel of Defendants' Homestead Collection, Washington Square and Chateau Collection technical drawings and town homes was not substantially similar to Rottlund's Villa II technical drawings and town homes. *See* Order, 8/20/04 at 46; *Hartman*, 833 F.2d at 120-21. As a matter of law, an ordinary observer, "unless he set out to detect the disparities [between the works at issue], would be disposed to overlook them, and regard their aesthetic appeal as the same,'" *Taylor*, 315 F.3d at 1043 (quoting *Peter Pan Fabrics*, 274 F.2d at 489), or otherwise conclude that any differences between the works "'so outweigh the similarities that the similarities can only be deemed inconsequential within the total context of the [copyrighted] work,'" *CSM*, 840 F. Supp. at 1312 (quoting *C. Blore*, 674 F. Supp. at 680).

Because Rule 59(e) of the Federal Rules of Civil Procedure permits Rottlund to move for an order altering or amending judgment within ten days after judgment is entered, Rottlund respectfully requests that the Court amend and enter judgment consistent with any order directing entry of judgment as a matter of law in Rottlund's favor. *See* Fed. R. Civ. P. 59(e) (2004).

Dated: December 22, 2004

**s/Philip R. Mahowald**
Robert R. Weinstine, #115435
Craig S. Krummen, #0259081
Philip R. Mahowald, #0274902
David A. Davenport, #0285109
WINTHROP & WEINSTINE, P.A.
**Attorneys for Plaintiff**
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
pmahowald@winthrop.com

2167271v1