IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc., d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Pinnacle Corporation, d/b/a Town & County Homes, an Illinois Corporation, Town & County Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br><br>Defendants. | No.: 01-CV-1980 (DSD/SRN)<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR ATTORNEY'S FEES AND COSTS PURSUANT TO 17 U.S.C. § 505 AND FED. R. CIV. P. 54(d)(2)** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR ATTORNEY'S FEES AND COSTS PURSUANT TO 17 U.S.C. § 505 & FED. R. CIV. P. 54(d)(2)**

Defendants Pinnacle Corporation, Town & Country Homes, Inc., Bloodgood Sharp Buster Architects & Planners of Iowa, Inc. and The Bloodgood Group, Inc. (hereinafter collectively referred to as the "Defendants"), submit the following memorandum of law in support of their motion for an award of attorneys' fees and costs pursuant 17 U.S.C. § 505 and Fed. R. Civ. P. 54(d)(2).

## I. Prevailing Defendants are entitled to Attorneys' Fees and Costs under the Copyright Act.

After more than three years of contentious litigation and a four week trial, the jury rendered an unambiguous verdict in favor the defendants on all claims

asserted by plaintiff. As prevailing parties under the Copyright Act, Defendants should be awarded their fees and costs. 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.")

With regard to section 505, a party's status as defendants is irrelevant. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 523 (1994), the Supreme Court found that "The legislative history of § 505 provides no support for treating prevailing plaintiffs and defendants differently with respect to the recovery of attorney's fees." The Court held that "prevailing plaintiffs and prevailing defendants are to be treated alike," and specifically rejected a standard that required defendants (but not plaintiffs) to show that the original suit was frivolous or brought in bad faith. *Id.*, at 520-21, 534.

The Supreme Court left the decision to award fees to the trial court's discretion, but it cited with approval several nonexclusive factors the Third Circuit considers in making an award of fees. *Id.* at 534, n.19. The factors included "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (*citing Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). It bears emphasis, however, that the *Fogerty* Court labeled these factors "nonexclusive" and

specifically rejected a requirement that the defendant show the plaintiff's claim was frivolous or brought in bad faith. *Id.*; *see also Mary Ellen Enter., Inc. v. Camex, Inc.*, 68 F.3d 1065, 1072 (8th Cir. 1995) (finding "[b]ad faith or willfulness is not a prerequisite to an award of attorneys' fees" under the Copyright Act); *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996) (holding "blameworthiness is not a prerequisite to awarding fees to a prevailing defendant").

Indeed, after remand of *Fogerty*, the Ninth Circuit held that attorney's fees can be awarded to a prevailing defendant without any showing of culpability on the part of the plaintiff. *Fantasy v. Fogerty*, 94 F.3d at 555 ("[A]n award of attorney's fees to a prevailing defendant that furthers the underlying purposes of the Copyright Act is reposed in the sound discretion of the district courts, and such discretion is not cabined by a requirement of culpability on the part of the losing party.") Relying on the Supreme Court's instruction that "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encourage to litigate meritorious claims of infringement," the Ninth Circuit held that Fogerty's successful defense on the merits furthered the purposes of the Copyright Act and entitled him to an award of fees regardless of whether the plaintiff acted in good faith throughout the litigation. *Id.* at 558-9 (*citing Fogerty,* 510 U.S. at 527).[1]

[1] Since *Fogarty*, other Circuits have gone further than the Ninth and adopted a presumption that fees should be awarded when the defendant prevails on all claims, as it did here. *See Assessment Tech. of WI, LLC v. Wiredata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004) ("*When the prevailing party is the defendant*, who by definition receives not a small award but no award, *the presumption in favor of awarding fees is very strong*.") (emphasis added); *Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 325 (5th Cit. 1998) ("In *McGaughey*, 12 F.3d at 65, we observed that '[a]lthough attorney's

**II. Defendants' success furthered the purposes of the Copyright Act.**

Defendants' success in this action furthered the purposes of the Copyright Act in at least two ways. First, it insured the public's access to original architectural works and competition in the homebuilding industry. Second, Defendants successfully defeated Rottlund's reliance on the "total concept and feel" or "gestalt" theory of copyright infringement. Thus, consistent with the Supreme Court's teachings in *Fogerty,* Defendants should be awarded their attorneys' fees regardless of Rottlund's motives or culpability.

**A. Defendants' success against Rottlund's claims insured the public's access to creative architectural products.**

One of the practical effects, if not an outright goal, of Rottlund's copyright infringement claim was to limit the public's access to creative designs for back-to-back townhomes and thereby chill competition in the marketplace. Despite giving lip service to the contrary, Rottlund made clear its intent to force Pinnacle and Town & Country from the back-to-back market through this litigation. Indeed, it maintained its request for an injunction barring Town & Country from constructing and selling additional back-to-backs during trial and even submitted proposed jury instructions related to this relief.

Rottlund's continued pursuit of a claim based on Town & Country's Chateau Collection townhomes further demonstrated Rottlund's desire to keep the defendants from offering *any* back-to-backs, rather than to protect the limited scope of its own copyrights. As the evidence conclusively demonstrated, and the jury

fees are awarded in the trial court's discretion [in copyright cases], *they are the rule rather than the exception and should be routinely awarded.*") (emphasis added).

quickly concluded, the Chateau Collection townhomes were not at all similar to Rottlund's copyrighted Villa II. In fact, Rottlund failed to offer any proof that the Chateau Collection was at all similar to the Villa II. During trial, Rottlund's chief trial counsel did not even recognize the Chateau, mistaking a modified Homestead that was never built for the Chateau Collection.

Rottlund's use of litigation to squelch competition is inconsistent with the goals of the Copyright Act. As the Supreme Court explained in *Fogerty*, the monopoly privileges conferred by a copyright are limited, and their purpose is to stimulate, not dampen, creativity for the public's benefit:

> The limited scope of the copyright holder's statutory monopoly . . . reflects a balance of competing claims upon the public interest: Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts. The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.' To this end copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.

*Fogerty*, 510 U.S. at 526-7 (citations omitted).

In short, Defendants should not be penalized (through the costs of a suit) for defending themselves and their original designs. By vigorously defending against Rottlund's claims, Defendants assured the public's access to new and original back-to-back townhomes as well as the benefits of competition in that marketplace. "A successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement

claim by the holder of a copyright." *Id.* at 527.

Under similar circumstances, other courts have not hesitated to award a prevailing defendant its attorney's fees. *See Consolidated Sawmill Machinery Int'l, Inc. v. Hi-Tech Eng'g, Inc.*, 879 F. Supp. 945, 974 (E.D. Ark. 1995) (defendant awarded fees where plaintiff sought to harm competitor through litigation).

**B. <u>Defendants' success helped clarify the proper boundaries of copyright law</u>.**

Throughout this litigation, Rottlund repeatedly refused to identify the protectible elements of its copyrights, claiming instead that defendants infringed the "gestalt," or the "total concept and feel" of their designs. (*See, e.g.,* Trial Tr. 1150:8-12: " And you understand that we don't come into this courtroom saying that because you have a toilet or a bedroom or a certain kind of a roof, that you copied us, *it's the whole total look and feel. That's our case, correct*?") (emphasis supplied)

Defendants, on the other hand, refused to concede the validity of this theory. Throughout the litigation, Defendants insisted that only the protectible aspects of a copyrighted work could be infringed, and that Rottlund's "total look and feel" theory was a ploy to avoid serious analysis. Defendants' position was consistent with the recommendations of Nimmer:

> More broadly, the touchstone of "total concept and feel" threatens to subvert the very essence of copyright, namely the protection of original *expression*. "Concepts" are statutorily ineligible for copyright protection; for courts to advert to a work's "total concept" as the essence of its protectible character **seems ill-advised in the extreme**. Further, the addition of "feel" to the judicial inquiry, being a wholly amorphous referent, merely **invites abdication of analysis**. In addition, "total concept and feel" should not be viewed as the *sine qua non* for infringement – similarity that is otherwise actionable cannot be

> rendered defensible simply because of a different concept and feel. In sum, therefore, the frequent invocations of this standard do little to bring order to the inquiry into what constitutes substantial similarity, and **would be better abandoned**.

4 M. Nimmer, *Nimmer on Copyright* § 13.03[A][1][c] at 13-39. (2003)(emphasis supplied). Nimmer even acknowledges with dismay the renewed invocation of the virtually meaningless incantation of "total look and feel" in architectural cases. *Id.* at 13-40.

Defendants' successful challenge to this theory will help to move architectural copyright law toward this desired end. *Fogerty*, 510 U.S. at 527 ("Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement."). In this regard, the defendants' victory on a jury verdict, instead of on a technical defense, makes an award of fees all the more proper. *See Fogerty*, 94 F.3d at 556; *Budget Cinema, Inc. v. Watertower Assoc.*, 81 F.3d 729, 732 (7th Cir. 1996) (noting that "loss on the merits should cut the other way in [favor of] awarding fees," not merely calling it even).

## III. Rottlund's Legal and Factual Positions Were Unreasonable

Defendants are also entitled to an award of fees because of the unreasonableness of the factual and legal positions advanced by Rottlund and the need in these particular circumstances to advance considerations of compensation to

a victorious defendant. *Fogerty*, 510 U.S. at 534 n.9; *Lieb,* 788 F.2d at 156; *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996).

A. Rottlund refused to engage in reasonable settlement discussions.

Over the course of three years of litigation, Rottlund never made a written settlement demand. *See Yankee Candle*, 140 F. Supp. 2d at 116-17 (awarding fees and noting that the plaintiff made no "meaningful pre-litigation attempt to resolve the companies' differences"). In fact, Rottlund did not make any specific settlement demand until several hours into the court-ordered settlement discussions that took place just six days before trial. (Prior to Magistrate Boylan's insistence that Rottlund make a demand, Rottlund consistently maintained that defendants needed to make an offer of "at least eight figures.") Rottlund's refusal to seriously entertain settlement, while simultaneously pursing aggressive litigation, shows the unreasonableness of its position.

B. Rottlund unreasonably refused to identify the "protectible" elements of its design.

Over the course of the seventeen days of trial, Rottlund actually avoided comparing the specifics of its designs to the Defendants' designs in front of the jury, and refused to identify the protectible elements of its Villa design. In a similar situation, the Ninth Circuit concluded that a plaintiff's refusal to compare two architectural works and identify the source of similarities between the two designs was objectively unreasonable and entitled the prevailing defendant to a fee award. *See Domingo Cambeiro Professional Corp. v. Advent*, Nos. 99-17057, 99-15893, 2000

WL 262597, at *3-4 (9th Cir. March 7, 2000) ("Under the test set forth in *Apple Computer*, it was objectively unreasonable for Cambeiro to refuse to identify the source of the alleged similarity between its works and the New York Hotel."). Likewise, two other courts found that the plaintiffs' refusal to identify protectible elements of a copyrighted work was objectively unreasonable and awarded fees to the prevailing defendants. *Bridgeport Music, Inc. v. Dimension Films*, 383 F.3d 390, 405 (6th Cir. 2004) (upholding award of fees to defendants, in part, because plaintiff made "broad generalizations" regarding infringing conduct "without any specific information as to what any individual defendant did"); *Matthews v. Freedman*, 157 F.3d 25, 28 (1st Cir. 1998) ("Indeed, Matthews' own argument (just quoted) is practically explicit in its refusal to distinguish what is protectible from what is not."). Rottlund's failure to identify the protectible elements of its design was objectively unreasonable and the prevailing defendants in this case are likewise entitled to an award of fees.

### C. Rottlund's pursuit of other claims was unreasonable.

For three years, Rottlund pursued a number of other legal claims under the (Lanham Act and the Minnesota Deceptive Trade Practices Act), only to concede during trial that there was no evidence to support the claims. *See Bridgeport Music*, 383 F.3d at 405 (awarding fees and noting that plaintiff only dismissed non-viable claims "in response to defendant's dispositive motions"). Rottlund's failure to present any evidence in support of these claims during trial, evidences the unreasonableness of the prosecution of these claims. Even though it dismissed the

non-copyright claims at the close of evidence, Rottlund steadfastly refused to dismiss these claims during the prior three years of litigation. Still, even though it failed to present any evidence to support the claims, Rottlund did not willingly remove these claims from consideration until the court openly questioned the viability of the claims during trial. (*See, e.g.,* Trial Tr., 2051:21 – 2052:10: "There are some of these motions [for judgment as a matter of law] that potentially will be granted because there has been no evidence at all . . . . And I'm thinking, for example, the Minnesota claim under the Deceptive Practices Act, also the Lanham Act. It seems to me you both have admitted that there's been no evidence on those.").

**D. <u>Rottlund's pursuit of duplicative damages was unreasonable</u>.**

Rottlund's claim for both actual damages and defendants' profits was unreasonable because the Copyright Act only permits the recovery of one type of damages but not both. *Compare* 17 U.S.C. § 504(b), (c), *with* Trial Tr. 186:23- 187:4. ("Here's what we're going to ask for. Number one, these are Rottlund's actual damages since September 30th, $17,648,822. That's with all the water out of the bucket. That's our actual damages net profit, $17,648,000. But because I submit to you that this copyright infringement was intentional, intentional, we are also permitted to ask you for the infringer's profits."). The law does not permit recovery of both types of damages and Rottlund's pursuit of these duplicative damages claims was unreasonable. *See Budget Cinema*, 81 F.3d at 733 (noting fees should

be awarded to prevailing defendant because plaintiff sought both statutory damages and attorney's fees which were not permitted under the Copyright Act).

Also, prior to trial Rottlund continually made the unsupported assertion that it could obtain damages not just for any infringing townhomes, but for *every home built* in Town & Country Minnesota's developments where any infringing townhomes were present. *See Budget Cinema*, 81 F.3d at 733. Rottlund pressed forward with this theory – taking extensive discovery on the subject and issuing expert reports calculating the damages for both townhomes and non-accused designs – only to drop this contention on the first day of trial. (*See* Trial Tr., 186:8-15.) Rottlund's pursuit of this theory drove much of the discovery and defined the perceived size of the case. In the end, it turned out that Rottlund had no intention of pursing these damage claims.

### E. Rottlund's claims were unreasonable in light of the ruling by Judge Longstaff in the *Oaks Development* case.

The ruling in the *Oaks Development*, No. 98 CV 10574 (S.D. Iowa), by Judge Longstaff, demonstrates that Rottlund should have been aware of the unreasonableness of its Villa-related claims before this lawsuit began. *See Rottlund Homes, Inc. v. Oaks Development Co.*, No. 98 CV 10574, slip op., 16-19, 30-34 (S.D. Iowa July 13, 1999). Judge Longstaff's opinion foreshadowed the jury's verdict in this case, as Judge Longstaff repeatedly noted the lack of factual and legal support for Rottlund's claims. *Id.* at 16-17 ("A back-to-back, side-by-side, slab on grade, two story townhome is simply *not* an original idea; yet, these elements are the essence of Rottlund's claim to originality.") (emphasis in original). Rottlund disregarded

Judge Longstaff's ruling and presented virtually the same theory and evidence in this case, resulting in a defense verdict on all of the claims. *See Yankee Candle*, 140 F. Supp. 2d at 116 ("Plaintiff's choice to bring such a factually weak claim, frivolous or not, is a relevant consideration in the determination of whether to award attorneys' fees."); *Matthews*, 157 F.3d at 29. The jury's defense verdict in this case objectively demonstrates that Judge Longstaff was correct and that Rottlund's claims were unreasonable. *See Queenie, Ltd. v. Nygard Int'l*, 204 F. Supp. 2d 601, 607-08 (S.D.N.Y. 2002) ("The jury's verdict supports the conclusion that there was no factual or legal basis for a copyright infringement claim").

**F. Defendants should be compensated for presenting a meritorious defense.**

Although it was not the Defendants' choice to litigate, they defended this action to ultimate victory, despite the cost of plaintiff's vigorous prosecution. *Diamond Star Building*, 30 F.3d at 506. Because Defendants were forced to defend, they should be awarded their fees and costs expended in presenting a meritorious defense and ultimately prevailing upon plaintiff's claims. If defendants such as Pinnacle, Town & Country, and Bloodgood Sharp & Buster are not compensated when they prevail, then the law will not be advanced because settlement will often be more cost effective than vindication. *See Assessment Tech.*, 361 F.3d at 437; *See Yankee Candle*, 140 F. Supp. 2d at 119 ("An overly restrictive approach would ignore the realities of litigation and force small competitors to settle weak claims like Yankee's solely because the fight would be too costly to wage.").

Rottlund made this suit very expensive to defend and an award of fees would

compensate Defendants for their efforts. As this court noted during the trial, plaintiff filed a significant number of lengthy and unnecessary motions. (*See, e.g.,* Trial Tr., 833:5 – 841:10.) *See also Bridgeport Music*, 383 F.3d at 405 ("The plaintiffs took every opportunity to inundate the Court with paperwork"). This constant motion practice occurred throughout the course of the litigation and one need only glance at the court's docket to see the number of motions brought by Rottlund was excessive. *Id.* (awarding fees to defendants because plaintiff placed "heavy emphasis on discovery disputes and motion practice and little attention paid to narrowing the issues and refining the claims"). Rottlund also increased the costs of litigation by insisting on monthly status hearings and mischaracterizing the proceedings thereafter, requiring all such hearings be transcribed. *See Consolidated Sawmill*, 879 F. Supp. at 947 (defendant awarded fees where plaintiff was shown to have "intended to cripple" defendant with litigation expenses). Thus, the fees expended by the defendants were a direct result of Rottlund's overly aggressive litigation posture and the defendants should be reimbursed for defending this case in the face of such tactics. *Diamond Star Building Corp. v. Freed*, 30 F.3d 503, 506-07 (4th Cir. 1994) ("Sussex's defense, on the other hand, was not only compelled in light of Diamond Star's persistence, but was also meritorious"); *Bridgeport Music*, 383 F.3d at 405 (awarding fees to defendants because "plaintiff's tactics have contributed to the multiplication of fees by all parties").

Rottlund also unnecessarily prolonged discovery, adding significant costs for which Defendants should be reimbursed. *See Yankee Candle*, 140 F. Supp. 2d at

116-17 ("An inference of improper motivation can also be drawn from the economically coercive manner in which the case was prosecuted."). About one year ago, on the eve of the first scheduled trial date, Rottlund sought leave to amend its complaint for the seventh time to add claims and take discovery regarding the Chateau collection and the sprinkler room. Rottlund was given a choice of going to trial or extending discovery. Rottlund chose to prolong discovery. The individual claims regarding the sprinkler room were ruled to be irrelevant, resulting in a year's worth of unnecessary discovery and fees.

## II. The Amount of Fees & Costs Requested are Reasonable

The starting point in determining if a requested fee award is reasonable is the lodestar method, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Bailey v. Runyon*, 50 F. Supp. 2d 891, 893-94 (D. Minn. 1999); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433-36 (1983) ("A request for fees should not result in a second major litigation.").

The *in camera* declaration of Edward F. Ryan, Darren Schwiebert and Ben Patrick sets forth the hours expended and the rates charged for the attorneys who worked on this matter. The affidavits separately set forth all of the expenses incurred. As set forth in the affidavits, the total fees claimed are as follows: [2]

| | Fees | Expenses |
|---|---|---|
| Pinnacle | $2,764,993.00 | $295,878.27 |
| Town & Country | $1,299,563.00 | $217,626.34 |
| BSB | $ 842,749.72 | $263,229.24 |

[2] The declaration have been filed *in camera* to preserve their attorney client privilege. In so doing, the defendants follow Rottlund's practice of submitting fee requests *in camera*. *See* Docket No. 325.

The rates of the partners and associates who performed work on this case are reasonable in comparison to other large Chicago and Minneapolis firms. *See Bailey*, 50 F.Supp.2d at 893 ("In ascertaining what constitutes a 'reasonable hourly rate,' the court must consider the 'ordinary fee for similar work in the community.'") (citation omitted). Several large Chicago firms such as Vedder Price, Gardner Carton & Douglas, and Bell, Boyd & Lloyd have partner rates ranging from $240 - $500 and associate rates ranging from $150 - $300. *See* Steve Seidenberg, *Despite it All, Rates Rose at Many Firms*, National Law Journal, Dec. 2001, at B16-B19. Also, large Minneapolis firms such as Merchant & Gould and Fredrickson & Byron have partner rates between $230 and $430 and associate rates between $135 and $290. *Id.*; *see also* Law Office Management & Administration Report, *More Data to Add to Your Review of Billing Rates*, Jan. 2004, at 1. The rates for experienced trial attorneys or specialty work, such as intellectual property, typically are at the higher end of those scales. *See* New York Law Journal, *Decisions of Interest*, Friday, Feb. 20, 2004, vol. 231, at 23; The Controller's Report, *Legal Rates*, Sept. 2003, at 2; *see also Westendorp v. Independent School Dist. No. 273 (Edina, MN)*, 131 F.Supp.2d 1121, 1125-26 (D. Minn. 2000). Thus, the individual rates of the attorneys are reasonable in light of similar work performed in the community. *See Bailey*, 50 F.Supp.2d at 893

Additionally, in determining whether the requested lodestar amount is reasonable, the most important factor to consider is the magnitude of success obtained in the case as a whole. *See Bailey*, 50 F.Supp.2d at 893-94. In this case,

Defendants were totally vindicated by the jury returning an entirely favorable defense verdict in just twenty-four hours after more than four weeks of trial. *Hensley*, 461 U.S. at 434-35 (holding that where a party "has obtained excellent results, his attorney should recover a full compensatory fee . . . and indeed in some cases of exceptional success an enhanced award may be justified."). The result was exceptional considering the vigor with which plaintiff prosecuted this action before and during trial. *See Westendorp*, 131 F.Supp.2d at 1126-27 (noting the exceptional success obtained as a key factor justifying award of fees). Thus, the amount of requested fees is also reasonable in light of the tremendous success obtained.

The reasonableness of the amount of the request for fees and costs is also supported by a number of other factors, including: (1) the time and labor required; (2) the length of the litigation and the vigor of the prosecution put forth by the plaintiff at all stages of the litigation; (3) the high degree of expertise and skill demonstrated by defense counsel; (4) awards in similar cases; (5) the detail and clarity of counsel's billing records; and (6) the substantial voluntary reductions already applied. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974).

***1. The time and labor required***

The plaintiff put up a vigorous assault, requiring a large number of hours to defend the case. The case proceeded for three years, monthly status conferences were held, more than 59 depositions were taken, and in excess of 35 sets written discovery requests, of varying types, were propounded. An immense amount of

paper was generated in this case; on average, plaintiff sent the various defendants in this case more than two pieces of correspondence, per day, nearly every day from the day the case began until it ended. The amount of time and labor required to manage, respond, and advocate this type of complex spirited litigation supports the requested amount of fees and costs. *See Johnson*, 488 F.2d at 717-18 ("The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities.").

*2. The length of the litigation and the vigor of the prosecution at all stages of the litigation*

As set forth above, this case was the subject of signification motion practice, discovery, and hearings for nearly three years. Moreover, this was a substantial matter that required a vigorous defense because Rottlund claimed, prior to trial, over $100 million dollars in damages. Due to the length of time the case was active and the intensity of the case, the defendants' fee request is entirely reasonable.

*3. The high degree of expertise and skill demonstrated by Defendants' lawyers*

This court had the chance to observe and judge the skill and expertise of Pinnacle, Town & Country, and Bloodgood Sharp & Busters' counsel over the course of the pre-trial and trial proceedings. *See Johnson*, 488 F.2d at 717-18 ("The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court. The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration."). The defendants submit that the

high expertise and skill of their lawyers was aptly demonstrated at trial and by the favorable jury verdict.

### *4. Awards in similar cases*

Comparable awards are difficult to find because of the inherent differences between cases. *See Johnson*, 488 F.2d at 717-18 (“The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit.”). Comparisons to this case are particularly difficult to find because of the length of the litigation, the vigor of the prosecution, and the fact that the case went to trial and verdict. *See Fantasy*, 94 F.3d at 561. Hence, there are few other copyright cases where the length of the litigation would have led to similar fees being incurred. However, there are four similar cases which provide a benchmark for comparison to this case and demonstrate that the requested award is reasonable.

In *Goss Int’l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. C00-35 LRR, 2004 WL 123413, at *12 (N.D. Iowa, June, 2, 2004), the court awarded the prevailing party more than $3.4 million in attorneys’ fees and expenses and over $681,000 in costs. The *Goss* case went on for nearly three years, involved an intensive amount of discovery, and then finally went to trial and verdict. *Id.* at *1-12. This case similarly began three years ago, involved an intensive amount of discovery and then finally went to trial and verdict.

In *Religious Technology Center v. Scott*, 1996 WL 171443, at *5-6 (9th Cir. April 11, 1996), the appellate court upheld the district court’s award of over $2.9

million in attorney's fees to the prevailing defendant. The court noted that the amount was reasonable in light of the fact that defendant was confronted with a request for permanent injunctive relief and a claim for damages which would have ruined the business. *Id.* In this case, the defendants were likewise confronted with a large damage claim, which could have crippled or ruined their business. Thus, the defendants' response in this case, like that of the defendant Scott in *Religious Technology Center*, was reasonable in light of the amount at stake. *Id.*; *see also Compaq Computer Corp. v. Ergonome, Inc.*, 196 F. Supp. 2d 471, 474 (S.D. Tex. 2002) (awarding $ 2.7 million in attorney's fees to prevailing party).

In *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 140 F. Supp. 2d 111, 124-27 (D. Mass. 2001), the district court awarded the prevailing defendant more than $1.1 million in attorney's fees and $117,000 in costs. The court found that the fees were reasonable in light of the "hardball" litigation faced by the defendant. *Id.* at 118. The defendants similarly faced a vigorous prosecution and were forced to respond accordingly, resulting in the expenditures in this case.

Finally, in *Fantasy, Inc. v. Fogerty*, 94 F.3d at 555, the Ninth Circuit upheld the district court's award of fees to the prevailing defendant, John Fogerty (former lead singer and songwriter for Creedence Clearwater Revival) of more than $1.3 million because the defense furthered the purposes of the Copyright Act and because Fogerty prevailed on the merits, rather than on a technical defense. *Id.* at 555-56. The defendants in this case, likewise prevailed on the merits and their defense of this lawsuit furthered the purposes of the Copyright Act by ensuring that

unprotectible basic elements of construction used by home builders nationwide remain in the public domain.

Thus, fee awards in comparable cases demonstrate that Defendants' fee request is reasonable.

### *5. The detail and clarity of counsel's billing records*

Defendants have provided detailed information regarding their billing. (*See in camera* Declarations and attached billing summaries.) These records demonstrate that the defendants' request for fees is reasonable and that the amount requested should be awarded. *See Westendorp v. Independent School Dist. No. 273 (Edina, MN)*, 131 F. Supp. 2d 1121, 1127 (D. Minn. 2000).

### *6. The substantial voluntary reductions already applied*

Because the case law distinguishes between a "reasonable" attorney's fee that may be awarded under a fee-shifting statute and an attorney's fee in the open market, Defendants volunteer a 10% across the board discount on their fees. *See Ford Motor Co. v. B&H Supply, Inc.*, Civ. No. 3-85-865, 1987 WL 59519, at *4 (D. Minn. April 13, 1987).[3] These substantial voluntary reductions further demonstrate that the remainder of Defendants' request is reasonable. *See Westendorp*, 131 F. Supp. 2d at 1127.

---

[3] However, it should be noted that the active participation and attendance at various court hearings by local counsel was required by court order.

### 7. *All fees and costs related to disputes between the Defendants, and related to sanctions imposed against the individual defendants, have been removed.*

Finally, it bears noting that the Defendants have removed from this petition all fees and costs which relate to either (1) disputes between the Defendants; or (2) sanctions imposed against the individual defendants, including the fees and costs incurred opposing those sanctions. While intra-Defendant disputes, and sanction requests, can be viewed as the natural and probable result of a litigation as lengthy and contentious as this one has been, and while for that reason Defendants could legitimately make a claim for the recover of these fees and costs, Defendants have voluntarily removed these fees and costs from this petition.

## CONCLUSION

Based on all the foregoing, Pinnacle, Town & Country, and Bloodgood Sharp & Buster request the Court grant their request for fees as follows:

| | Fees | Expenses |
|---|---|---|
| Pinnacle | $2,488,494.00 | $295,878.27 |
| Town & Country | $1,169,606.70 | $195,863.70 |
| BSB | $ 758,474.00 | $263,229.24 |

**Dated: January 20, 2004**

Respectfully submitted,
s/Edward F. Ryan
Edward F. Ryan
Christopher J. Murdoch
Matthew I. Farmer
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th Fl.
Chicago, IL 60603
Telephone: (312) 263-3600
Facsimile: (312) 578-6666

ATTORNEYS FOR DEFENDANT
PINNACLE CORPORATION

s/Darren B. Schwiebert
Cynthia Jokela Moyer
Darren B. Schwiebert
FREDRIKSON & BYRON, P.A.
200 South Sixth Street #4000
Minneapolis, MN 55402
Telephone: (612) 492-7312
Facsimile: (612) 492-7077

ATTORNEYS FOR DEFENDANT
TOWN & COUNTRY HOMES, INC.

s/ Holly J. Newman
Holly J. Newman
Ben Patrick
MacKall, Crounse & Moore
1400 AT&T
901 Marquette Avenue
Minneapolis, MN 55402
Telephone: (612) 604-6400
Facsimile: (612) 604-6816

ATTORNEYS FOR DEFENDANTS
BLOODGOOD SHARP BUSTER
ARCHITECTS & PLANNERS OF IOWA,
INC. AND THE BLOODGOOD GROUP,
INC.

# 2477956_v6