UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Rottlund Company, Inc. d/b/a Rottlund Homes, a Minnesota Corporation,<br><br>Plaintiff,<br>vs.<br><br>Pinnacle Corporation d/b/a Town & Country Homes, an Illinois Corporation, and Town & Country Homes, Inc., a Minnesota Corporation, Bloodgood Sharp Buster Architects and Planners of Iowa, Inc., an Iowa Corporation, and The Bloodgood Group, Inc., an Iowa Corporation,<br>Defendants, | No.: 01-CV-1980 (DSD/SRN)<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS PURSUANT TO 17 U.S.C. § 505 AND FED. R. CIV. P. 54(d)(2)** |

## INTRODUCTION

Congress did not incorporate and codify the British Rule when it enacted § 505 of the Copyright Act. *Fogerty v. Fantasy, Inc.*, 510 U.S. 531, 533-34 (1994). Yet the Defendants nonetheless advocate the application of the British Rule as the basis for their claim that they are entitled to recover attorneys' fees solely because the jury concluded they did not infringe the total look and feel of Rottlund's valid Villa II copyrights.

Defendants also argue that Rottlund should pay their alleged taxable costs, but they refuse to allow Rottlund to have a fair opportunity to examine and respond to their cost petition which Defendants filed *in camera*. However, the fact that the Defendants seek nearly $750,000.00 in costs and have not cited 28 U.S.C. § 1920 or referenced the Bill of Costs Guideline for the District of Minnesota makes it is readily apparent to Rottlund that the Defendants seek to tax unrecoverable costs. Defendants' petition also seeks recovery of fees and

costs relating to issues and aspects of this case in which they did not "prevail," as well as relating to activities for which they were sanctioned by the Court.

The Court should deny the Defendants' motion in its entirety.

## FACTS

### A. Facts Related To Summary Judgment.

The Court held as a matter of law that Rottlund owns valid § 102(a)(5) technical drawing copyrights for all of its Villa town homes designs, including its Original Villa, New Villa and Villa II copyrighted designs. (Order, 8/20/04 at 14-28, adopted in its entirety by Order, 10/19/04.) The Court concluded as a matter of law that Rottlund's copyrights protect the total look and feel, or the "selection, arrangement, and combination of elements expressed," of Rottlund's designs. (Order, 10/19/04 at 3 ("[t]he magistrate judge correctly noted copyright's protection of the form … [,] arrangement and composition of spaces and elements in [building] design").) Thus, at trial, none of the Defendants argued that Rottlund's copyrights were invalid and the Court instructed the jury that Rottlund owned valid copyrights protecting the total look and feel of its Villa II designs.

After the Court's summary judgment rulings in Rottlund's favor, it was no longer disputed that "'copying may be proven either by direct evidence or by demonstrating circumstantial evidence establishing access and substantial similarity of the two works'." (Order, 8/20/04 at 37 (quoting *Nelson v. PRN Prod., Inc.*, 873 F.2d 1141, 1142 (8th Cir. 1989), adopted in its entirety by Order, 10/19/04.) In addition, because the Court held as a matter of law that all of the Defendants had access to Rottlund's valid copyrights, the first prong of Rottlund's *prima facie* circumstantial evidence case of copy was established. (Order, 8/20/04 at 38-44, adopted in its entirety by Order, 10/19/04.) Similarly, applying the well established two-

part substantial similarity test (similarity of ideas and similarity of expression), the Court held as a mater of law that Rottlund had more than satisfied the next prong of the circumstantial evidence *prima facie* case of copying. (Order, 8/20/04 at 44-47, adopted in its entirety by Order, 10/19/04 at 5-6; Order, 10/28/04 at 6-9, adopted in its entirety by Order, 11/9/04.)

Thus, at trial, only two *prima facie* fact issues concerning copying remained unresolved: (1) direct evidence of copying; and (2) substantial similarity of expression. Concerning the former, the Court declined to grant Rottlund summary judgment but noted the strength of Rottlund's case when it stated that Rottlund's direct evidence of copying "might raise eyebrows." (*Id.* at 38.) Concerning the latter, the Court declined to grant Rottlund summary judgment, stating that "a reasonable juror could find the total look and feel of how the drawings selected, arranged, and coordinated the elements is substantially similar, but a reasonable juror would not be compelled to so find." (*Id.* at 47.)

In sum, Rottlund prevailed on nearly all legal and factual issues concerning its *prima facie* case of copying at summary judgment, thus dispelling and precluding any claim that Rottlund took unreasonable legal and factual positions or that this was a frivolous case.

**B. Facts Related To The Defendants' Counterclaims And Affirmative Defenses.**

The Defendants asserted declaratory judgment counterclaims seeking to invalidate Rottlund's copyrights. The Defendants vigorously litigated these claims throughout the case, each ultimately moving for summary judgment. Rottlund prevailed when the Court denied the Defendants' summary judgment motions, granted Rottlund's summary judgment motion, and ruled as a matter of law that Rottlund owns valid copyrights protecting the total look and feel of its architectural designs. (Order, 8/20/04, adopted in its entirety by Order, 10/19/04.) Yet, to support their motion, the Defendants continue to argue incorrectly that the Court erred.

(Defendants' Mem. at 7 ("Defendants' successful challenge to this [total look and feel] theory will help to move architectural copyright law toward its desired end").)

In addition, the Defendants asserted almost fifty affirmative defenses between them. While many of the defenses overlapped and the Defendants were parties to a joint-defense agreement, each Defendant stridently litigated these defenses separately throughout the case and all of them filed several duplicative and unsuccessful motions related to the defenses. In addition, the Defendants filed unsolicited memoranda of law "to support" motions filed by their joint-defense partner. (*See, e.g.,* Doc. Nos. 177 and 230.)

The Defendants' duplication of effort and continued assertion of factually and legally untenable counterclaims and affirmative defenses unnecessarily increased the costs of this litigation and caused substantial delays. For instance, Defendant Pinnacle (Town & Country Homes Illinois) asserted as an affirmative defense that this Court lacked personal jurisdiction over it and moved to dismiss in January 2002, almost three months after Rottlund filed its Complaint. *The Rottlund Company, Inc. v. Pinnacle Corporation*, 222 F.R.D. 362, 364-65 (D. Minn. 2004). Pinnacle refused to respond meaningfully to Rottlund's discovery and even refused to provide Rule 26(a) disclosures while its motion was pending. *Id.* at 366. The Court ultimately concluded that the motion was baseless and sanctionable because Pinnacle, and its former counsel, violated their duty of candor to the Court in connection with the motion. *Id.* at 376-379. Nevertheless, because Pinnacle objected to the Report and Recommendation to deny the motion to dismiss, the motion delayed the case for seven months and resulted in an amended pretrial scheduling order.

During this time, Pinnacle's Minnesota Division (Defendant Town & Country Homes Minnesota or TCM) filed a motion for leave to amend to assert additional counterclaims. (Doc.

No. 77.) This motion related to the Defendants' copyright misuse and unclean hands affirmative defenses and sought leave to assert an abuse of process claim, a defamation claim, and to sue one of Rottlund's principals (David Rotter) in his individual capacity. (*Id.*) Just like the motion to dismiss, the Court concluded that the motion to amend was unsupported and "frivolous." (Order, 10/10/02 at 10.)

Similarly, each of the Defendants filed multiple dispositive motions related to, among other things, their invalidity, unenforceability and non-infringement affirmative defenses. These motions involved various objectively unreasonable factual and legal claims, including, for example, arguments that the Defendants did not have standing to make and the "wholly without merit and factual support" argument that Rottlund committed a fraud upon the Copyright Office in connection with its copyright registrations. (Order, 8/20/04 at 20-21 and 25, adopted in its entirety by Order, 10/19/04.) None of the Defendants prevailed on any of these motions, either with respect to the Homestead Collection, Washington Square or Chateau Collection town homes. Likewise, the Defendants moved to dismiss Rottlund's Lanham Act claim and argued the untenable legal position that the claim was pre-empted by the Copyright Act. Rottlund prevailed when the Court recognized the viability of the claim as a matter of law. When the Defendants moved for summary judgment based on unreasonable factual arguments, Rottlund again prevailed. (Order, 10/14/04, adopted in its entirety by Order, 10/29/04.)

In sum, the Defendants vigorously pursued factually and legally unsupportable counterclaims and affirmative defenses throughout the case despite the fact that their claims and defenses were objectively unreasonable.

### C. Facts Related To Discovery.

After nearly two years of discovery, which was stymied for seven months by Pinnacle's motion to dismiss and required Rottlund to file successful motions to compel for every set of discovery it served in the case, the Court recognized "a troubling pattern of conduct involving abuse of the judicial process, discovery incompetence, and defiance of Court orders, not to mention periodic episodes of brazen disrespect to the Court and an instance of cowardly harassment during a deposition." *The Rottlund Company*, 222 F.R.D. at 364. As the Court noted, it was intimately familiar with this unreasonable and vexatious conduct by Town & Country Homes and its counsel because the Court was compelled to conduct status conferences or motion hearings approximately every month during discovery. *Id.*

This conduct was not unique to Town & Country Homes and its counsel since the Court also had to sanction the Bloodgood Defendants' counsel for discovery abuses. Specifically, because counsel elected to defy a clear discovery Order and deliberately chose to withhold responsive documents from production to Rottlund, the Court ordered depositions to be conducted again and required Bloodgood and its counsel to pay Rottlund's fees and expenses. (Handler Aff. at Ex. G.)

The Defendants' abusive discovery tactics combined to thwart Rule 1 of the Federal Rules of Civil Procedure at every instance, caused the parties to incur substantial attorneys' fees that should otherwise not have been incurred, and resulted in substantial motion practice to enforce prior Court orders.

For example, near the close of discovery in September 2003 with trial scheduled to begin a few months later, Rottlund discovered that Town & County Minnesota had again failed to comply with a discovery Order. (Doc. No. 239.) This discovery "unearthed two developments

that TCM did not disclose pursuant to this Court's order – the Traditions at Clover Ridge development in Chaska, Minnesota and the Pinebrook development in Brooklyn Park, Minnesota." (Order, 9/11/03 at 7.) As with many of Rottlund's discoveries concerning the Defendants' defiance of Court discovery orders, Rottlund had to bring a discovery motion and a motion to amend. (Doc. No. 239.) The Court granted Rottlund's motions and required Town & Country Homes to "shoulder any additional discovery in connection with the Chateau Collection amendments due to its failure to make disclosures." (Order, 9/11/03 at 7.) The Court subsequently amended the Scheduling Order and trial was again delayed, this time until November 2004.[1]

In sum, the Defendants' discovery misconduct and repeated defiance of Court orders, coupled with their counterclaim and affirmative defense motion practice discussed above, resulted in three amended pre-trial scheduling orders during discovery and multiple trial readiness delays.

**D. Facts Related To Third-Party Claims.**

"On October 17, 2002, Defendant BSB became a party in the present case, when Defendant TCM asserted claims against it for contribution and indemnity." (Order, 3/31/03 at 2.) Thereafter, BSB filed a counterclaim against TCM. (*Id.*) When BSB resisted bifurcation of these claims, the Court ordered expedited discovery and these parties agreed to expedite dispositive motion practice. Town & Country and Bloodgood conducted this discovery, both written discovery and depositions. Although the motion practice was not expedited, BSB eventually filed a motion for partial summary judgment which was granted in part and denied in part after lengthy briefing and oral argument between the Defendants. (Doc. No. 280.; Order,

---

[1] Despite the clarity of Magistrate Judge Nelson's Order, the Defendants attempt to convince this Court that Rottlund caused this delay. (Defendants' Mem. at 14.)

12/24/03.) As a result of litigating these third-party claims, the Defendants incurred attorneys' fees and costs which they cannot seek to recover from Rottlund.

**E. Facts Related To The Defendants' Duplication Of Effort.**

The Defendants operated under an oral joint-defense agreement throughout discovery. (Affidavit of Craig S. Krummen ("Krummen Aff.) at ¶ 2 and attachment.) Despite their agreement, each Defendant sent a lawyer to nearly every deposition and there was substantial duplication of effort. (*Id.* at ¶ 4.) There were exceptions to this rule, however. For instance, Town & Country Minnesota's counsel did not attend depositions in Chicago, as Pinnacle's counsel represented both Town & Country Homes Defendants. (*Id.*) Likewise, at Town & Country's in-house architect's – Steve Sandelin's – trial deposition in November 2004, neither Town & Country Minnesota nor Bloodgood's counsel attended; instead, only Pinnacle's counsel attended for the Defendants. (*Id.*) Yet, at every other deposition, in Minnesota, in Iowa, and in Illinois, lawyers for each joint-defense partner attended and duplicated the efforts of one another. (*Id.*)

For example, these joint-defense partners conducted Rottlund's Rule 30(b)(6) deposition for twelve days. (Affidavit of Victoria Handler ("Handler Aff.") at ¶ 2.) They then conducted nearly twenty-five individual depositions, ranging from construction personnel in Iowa to Rottlund's principals in Minnesota. (Handler Aff. at ¶ 3.) However, only five Rottlund employees testified at trial. (Handler Aff. at ¶ 4.)

Similarly, throughout pre-trial motion practice, the Defendants routinely submitted separate briefs in support of or in opposition to the same motion. For their part, the Bloodgood Defendants would volunteer unsolicited memoranda of law in support of arguments made by the

Town & Country Defendants, even though the same arguments and case law had already been offered by the Town & Country Defendants. (*See*, *e.g.*, Doc. Nos. 177 and 230.)

In sum, throughout discovery and pre-trial motion practice, and despite their joint-defense agreement, the Defendants incurred substantial attorneys' fees because of their duplication of effort.

## LEGAL ARGUMENT

### I. THE DEFENDANTS ARE NOT ENTITLED TO RECOVER ATTORNEYS' FEES SIMPLY BECAUSE THEY PREVAILED ON A FACT ISSUE THAT WAS UNRESOLVED AFTER SUMMARY JUDGMENT.

Attorneys' fees awards are discretionary with the Court. 17 U.S.C. § 505. While there is no precise rule or formula, the federal courts often consider the following factors: (1) frivolousness; (2) motivation; (3) objective unreasonableness (both in the factual and legal components of the case); and (4) the need in the particular circumstance to advance considerations of compensation and deterrence. *Fogerty*, 510 U.S. at 534 n. 19; *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996). Rottlund would respectfully submit that the Court's prior rulings in its favor and against the Defendants on summary judgment, and this Court's determination that the remaining issues were properly triable to a jury establishes the objective reasonableness of Rottlund's position and precludes any award of attorneys' fees or costs in this case.

#### A. Rottlund's Copyright Infringement Claims Were Not Frivolous.

"A claim or defense is frivolous if a proponent can present no rational argument based upon the evidence or law in support of that claim or defense." Black's Law Dictionary 668 (6th Ed. 1990). The Defendants must know that it would be improper to argue that Rottlund's copyright infringement claims were frivolous since Rottlund prevailed on many of the *prima*

*facie* elements of its copyright infringement claims through summary judgment.[2] Consequently, the Defendants argue that they should recover attorneys' fees without a showing of frivolousness because the factors noted above in *Fogerty* are non-exclusive considerations. (Defendants' Mem. at 2-3.) Thus, the Defendants implicitly acknowledge that Rottlund's copyright infringement claims were asserted in good faith and are not frivolous.

This factor weighs heavily in Rottlund's favor and against awarding the Defendants attorneys' fees. *See*, *e.g.*, *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 123 (8th Cir. 1987) (denying defendant's attorneys' fees award because plaintiff's complaint was colorable and not baseless);[3] *Quinn v. City of Detroit*, 23 F.Supp.2d 741, 752 (E.D. Mich. 1998) (denying defendant's motion for costs and attorneys' fees since plaintiff's copyright infringement action was not frivolous because plaintiff prevailed in showing ownership of a valid copyright at summary judgment); *Brewer-Giorgio v. Bergman*, 985 F.Supp. 1478, 1483 (N.D. Ga. 1997) (no attorneys' fees awarded because the plaintiff's copyright infringement claim was not frivolous since it demonstrated that the defendant had access to valid copyrights).[4]

**B. Rottlund Was Motivated To Protect Its Valid Copyrights.**

At trial, Rottlund's witnesses testified that its copyrighted designs are vital to the company's success. (Trial Trans. at 291:8-15.) Rottlund's witnesses testified that Rottlund employs an in-house architectural staff, including an experienced architect with over twenty years of residential design experience. (*Id.* at 1258:20-1263:5, 1576:9-13, 1576:22-1577:9.) Rottlund's designs are original and valuable company assets. (*Id.* at 1368:21-1369:9.)

---

[2] Rottlund's Lanham Act claims survived summary judgment as well. (Order, 10/14/04, adopted in its entirety by Order, 10/29/04.)

[3] While *Hartman* was decided prior to *Fogerty*, the *Hartman* Court's analysis is consistent with *Fogerty*. *Compare Hartman*, 833 F.2d at 122-23, *with Fogerty*, 510 U.S. at 1033.

[4] As in *Bergman*, Rottlund established on summary judgment that the Defendants all had access to Rottlund's copyrighted technical drawings. (Order, 8/19/04 at 38-44, adopted in its entirety by Order, 10/20/04.)

Rottlund's witnesses testified that Rottlund observed the Defendants' town homes at issue and believed the designs infringed Rottlund's Villa II copyrights; thus, Rottlund subsequently conducted an investigation. (*Id.* at 1417:2-1418:8.) Thereafter, Rottlund sent the Defendants a cease and desist letter and invited a meeting between the parties. (*Id.* at 1312:3-8.) The Defendants did not want to discuss the matter and declined Rottlund's invitation. (*Id.* at 1314:12-16.) Thereafter, Rottlund elected to commence this action to protect its copyrighted designs. (*Id.* at 1314:12-18.)

The Defendants posed a single, inappropriate question arguably aimed at Rottlund's motivation in this lawsuit, but the testimony did nothing to establish an improper motivation:

> Q. And Pat Ruelle was the president of your Rottlund Iowa operations at one point in time; isn't that right?
> A. That's correct.
> Q. And did you ever tell Mr. Ruelle that it's Rottlund's business policy to threaten competitors with copyright lawsuits to keep them out of the market?
> A. No, I have not.

(*Id.* at 345:7-13.) In fact, Mr. Rotter's testimony contradicts the Defendants' unsupported claim that Rottlund was motivated to stifle competition in hopes of creating a monopoly. There simply is no evidence that Rottlund's motivation to protect vital company assets through an infringement action was improper in any way.

This factor weighs heavily in Rottlund's favor and against awarding the Defendants attorneys' fees. *See*, *e.g.*, *Brod v. General Pub. Group, Inc.*, 32 Fed.Appx. 231, 236 (9th Cir. 2002) (no attorneys' fees awarded where plaintiff resorted to the legal system in an effort to protect what it thought was its copyrighted photographs, even though the defendant prevailed); *Lotus Development Corp. v. Borland International, Inc.*, 140 F.3d 70, 74 (1st Cir. 1998) (denying defendant attorneys' fees award despite some evidence that plaintiff's copyright infringement

claim was motivated by anti-competitive purposes because plaintiff prosecuted an action with a reasonable likelihood of success on the merits);[5] *Waite v. Patch Products, Inc.*, 12 Fed.Appx. 330, 336 (6th Cir. 2001) (denying attorneys' fees award because plaintiff's copyright infringement claims were asserted in good faith and warranted under existing law); *Bergman*, 985 F.Supp. at 1483 (no attorneys' fees awarded to prevailing defendant where, at the time the action was brought, the plaintiff was motivated by the desire to protect its copyrights from what it perceived was the defendant's unlawful copying); *Belmore v. City Pages, Inc.*, 880 F. Supp. 673, 680 (D. Minn.) (denying defendant's attorneys' fees award because the defendant could not demonstrate that the plaintiff was motivated by bad faith when it commenced the action).

**C. The Legal And Factual Components Of Rottlund's Case Were Objectively Reasonable.**

1. The Defendants' "settlement discussions" argument.

The Defendants cite *Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 140 F.Supp.2d 111 (D. Mass. 2001), and argue that the legal and factual components of Rottlund's case were unreasonable because "Rottlund never made a written settlement demand." (Defendants' Mem. at 7-8.) Even if the absence of a written settlement demand could render the legal and factual components of a party's case unreasonable, which it cannot, the components of the plaintiff's case in *Yankee Candle* are readily distinguishable from the case at bar. For example, the *Yankee Candle* plaintiff filed suit without any notice to defendant and "without any meaningful pre-litigation attempt to resolve the companies' differences."[6] *Id.* at 116. The plaintiff was then denied a preliminary injunction based on a finding that it was unlikely to prevail on the merits.

---

[5] It is important to note, the Defendants offered no evidence that Rottlund's copyright infringement claim was motivated by anti-competitive purposes.

[6] The Defendants mistakenly rely upon this quotation from *Yankee Candle* to support their argument that the case stands for the proposition that the factual and legal components of Rottlund's case are unreasonable because Rottlund did not make a written settlement demand during litigation. (Defendants' Mem. at 7-8.)

*Id.* at 114. At this time, the Court specifically noted the "marked weakness" of the plaintiff's claim. *Id.* at 116. Yet, the plaintiff aggressively plowed forward. *Id.* During discovery, the defendant developed evidence that the plaintiff was motivated to prosecute the action for anti-competitive purposes. *Id.* Also during discovery, like the Court recognized here when its sanctioned the Defendants' counsel in this case, the plaintiff's counsel's litigation style in *Yankee Candle* was unprofessional, abusive and discourteous. *Id.* at 116-18, n. 5 and 6.

In the case at bar, the Court concluded as a matter of law that the Defendants had notice of Rottlund's copyright infringement claims prior to Rottlund filing suit. (Order, 10/23/04, adopted in its entirety by Order, 11/19/04.) The Defendants rejected Rottlund's invitation for pre-litigation settlement discussions. (Trial Trans. at 1312:3-8 and 1314:12-16.) The Court never expressed a view that Rottlund's copyright infringement claims were weak. There is no evidence that Rottlund was motivated to commence this action for any purpose other than to protect its valid copyright interests. Thus, *Yankee Candle* does not support the Defendants' misplaced argument.

2. <u>The Defendants' "protectible expression" argument</u>.

Next, the Defendants argue that the legal components of Rottlund's copyright infringement claims were unreasonable because "Rottlund unreasonably refused to identify the 'protectible' elements of its design." (Defendants' Mem. at 8.) As discussed above, the Court resolved nearly all of the questions of law applicable to Rottlund's *prima facie* case of copyright infringement in Rottlund's favor on summary judgment, including this one.

During discovery, the Defendants served interrogatories on Rottlund asking Rottlund to identify the elements of its copyrighted designs for which it sought copyright protection. (Order, 8/20/04 at 29 (citing Davenport Aff. Ex. SSS), affirmed in its entirety by Order, 10/19/04.)

Rottlund answered the Defendants' interrogatories and listed some seventy elements which comprise, in their placement, layout, and proportions, the protectible total look and feel or gestalt of its copyrighted Villa II expression. (*Id.*) Through summary judgment, the Court specifically concluded that Rottlund sufficiently identified the protectible expression at issue in the case. (*Id.* at 29-36.) In addition, the Court held as a matter of law that this legal component of Rottlund's copyright infringement claim was legally sound and well supported by precedent. (*Id.*) After the Defendants' objected to this Court from the underlying Report and Recommendation, this Court held that Defendants' continued protestations in this regard "can be boiled down to a dissatisfaction with the state of Eighth Circuit law." (Order, 10/19/04 at 5.)

Because Rottlund prevailed at summary judgment on this issue, it can hardly be seriously argued that the legal components of Rottlund's copyright infringement case were objectively unreasonable for an alleged failure to identify the protectible expression at issue in the case. Yet, this is precisely the Defendants' argument and they offer *Domingo Cambeiro Professional Corp. v. Advent*, 2000 WL 262597 (9th Cir. 2000), in support. Like *Yankee Candle*, *Domingo* does not support the Defendants' argument.

The *Domingo* court awarded attorneys' fees to the prevailing defendant because it found that the plaintiff's prosecution of its case was objectively unreasonable since the plaintiff failed to litigate its case pursuant to the Ninth Circuit's substantial similarity test articulated in *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994). *Domingo*, 2000 WL 262597 at *2-3. At summary judgment, this Court specifically rejected the Defendants' arguments that Rottlund's copyright infringement claims should be dismissed because Rottlund failed to litigate its case pursuant to this Ninth Circuit law. (Order, 10/19/04 at 5-6.) This Court then adopted the Magistrate Judge's legal analysis of Rottlund's claims, which Rottlund prosecuted under Eighth

Circuit law. (*Id.*) Thus, because Rottlund prosecuted its case pursuant to the applicable precedent in this jurisdiction and its claims were objectively reasonable as demonstrated by the prior rulings of this Court, the *Domingo* court's attorneys' fees award is inapposite.[7]

3. The Defendants' "other claims" argument.

The Defendants next argue that Rottlund's pursuit of its Lanham Act and Minnesota Deceptive Trade Practices Act claims were unreasonable and support an attorneys' fees award. (Defendants' Mem. at 9-10.) Yet, as discussed above, the Defendants filed multiple dispositive motions concerning these claims and each time their motions were denied. For example, the Defendants unsuccessfully moved to dismiss these claims pursuant to Fed. R. Civ. P. 12. (Order, 7/21/03 at 16.) The Defendants subsequently moved for summary judgment; Rottlund again prevailed. (Order, 10/14/04 at 16.)

The Defendants argue that "Rottlund's failure to present any evidence in support of these claims during trial, evidences the unreasonableness of the prosecution of these claims." (Defendants' Mem. at 9.) However, this argument is misplaced because the evidence Rottlund relied upon to survive summary judgment was introduced into evidence at trial. (*See*, *e.g.*, Order, 10/14/04 at 11-16 (discussing some of Rottlund's *prima facie* evidence).) The Defendants failed to cite a single case awarding attorneys' fees to a defendant where a plaintiff voluntarily dismissed alternative claims that are related to its copyright infringement claims after the plaintiff's copyright infringement claims survived all possible dispositive motions, including Rule 50. Yet this is precisely the relief the Defendants request here. The Court should deny it.

[7] The *Bridgeport Music* and *Matthews* decisions are also inapposite and Defendants' cites readily distinguish these cases from the case at bar. (Defendants' Mem. at 9.) For instance, the Defendants acknowledge that the plaintiff in *Bridgeport Music* "made 'broad generalizations' regarding infringing conduct" and the *Matthews* plaintiff refused to identify its protectible expression. (*Id.*) As the Court confirmed through its rulings on the matters for summary judgment, Rottlund did far more than the plaintiffs in either *Bridgeport Music* or *Matthews*.

4. The Defendants' "duplicative damages" argument.

The Defendants argue that Rottlund's pursuit of actual damages and wrongful profits was unreasonable. (Defendants' Mem. at 10.) However, § 504(b) of the Copyright Act entitles a copyright owner "to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are not attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. 504(b) (2004) (emphasis added). Thus, Rottlund's pursuit of both types of damages was reasonable.

Moreover, as with liability issues, the Court confirmed the reasonableness of Rottlund's pursuit of actual damages and wrongful profits during summary judgment. Specifically, in response to the Defendants' summary judgment motion on this precise issue, the Court rejected the Defendants' arguments that Rottlund could not pursue both types of damages. (Order, 10/25/04 at 24-27, adopted in its entirety by Order, 11/9/04.) In fact, at oral argument on Defendants' motion, defense counsel was forced to concede that no case law supported their contention concerning the pursuit and calculation of actual damages and wrongful profits. (*Id.* at 27.)

The Defendants also argue that it was unreasonable for Rottlund to pursue profits from sales of non-infringing products. (Defendants' Mem. at 11.) The Court denied the Defendants' summary judgment motion on this issue as well; thus, again recognizing that Rottlund took a reasonable position on the facts and law. (Order, 10/25/04 at 36 ("the Court recommends the denial of Defendants' motions for summary judgment as to Plaintiff's damages claims for non-infringing products"), adopted in its entirety by Order, 11/9/04.)

5. The Defendants' "*Oaks Development*" argument.

The Defendants argue that Rottlund was unreasonable on the facts and law of this case because Rottlund was denied a preliminary injunction in a case in Iowa in 1998 involving a different defendant, different products, and different counsel. (Defendants' Mem. at 11-12.) Specifically, the Defendants argue that Judge Longstaff's preliminary injunction opinion concerning originality and validity issues foreshadowed the jury's fact specific verdict in this case. (*Id.* at 11.) Yet, at summary judgment in this case, the Defendants did not rely on this preliminary injunction opinion to support their arguments and two of the issues Rottlund prevailed on were originality and validity. (Order, 8/20/04, adopted in its entirety by Order, 10/19/04.)[8] Thus, the jury in this case was instructed that Rottlund's Villa generation copyrights are valid as a matter of law. Neither *Yankee Candle* nor *Queenie, Ltd. v. Nygard Int'l*, 204 F.Supp.2d 601 (S.D.N.Y. 2002), both cited by the Defendants, can be interpreted creatively enough to support the Defendants' arguments.

In sum, none of the Defendants' arguments discussed above support a conclusion that the legal and factual components of Rottlund's case were unreasonable. In fact, the Court previously confirmed the reasonableness of Rottlund's legal and factual positions in this case in several summary judgment orders either granting Rottlund summary judgment on liability issues or denying Defendants' summary judgment on liability and damages issues. Thus, this factor weighs heavily in Rottlund's favor and against awarding the Defendants attorneys' fees. *See, e.g.*, *Bergman*, 985 F. Supp. at 1483 (plaintiff was not objectively unreasonable in its positions simply because the court ultimately found no substantial similarity).

[8] Likewise, no evidence concerning this Iowa case was introduced at trial.

**D. An Attorneys' Fees Award In This Case Will Not Advance Considerations Of Compensation And Deterrence.**

"Under the Copyright Act, the question is whether a successful *defense* of the action furthered the purpose of the Act, not whether a *fee award* would do so. *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 816 (9th Cir. 2003) (citing *Fogerty*, 510 U.S. at 527) (emphasis in the original). Nevertheless, the Defendants argue that because litigation is expensive and this case went to a jury, they should be awarded their attorneys' fees. (Defendants' Mem. at 12-14.)[9] But, as noted above, Congress did not codify the British Rule. *Fogerty*, 510 U.S. at 533-34. Thus, courts do not award attorneys' fees to a party simply because they may prevail at trial, because to do so would be to adopt the British Rule rather than further the purpose of the Copyright Act. *Id.* Consequently,

> [t]he touchtone of attorneys' fees under § 505 is whether imposition of attorneys' fees will further the interests of the Copyright Act, *i.e.*, by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure 'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works.

*Mitek Holdings, Inc. v. Arce Engineering Co., Inc.*, 198 F.3d 840, 842-43 (11th Cir. 1999) (quoting *Fogerty*, 510 U.S. at 526-27). As a result, considerations of compensation and deterrence hinge on furthering the interests of the Act, not compensating a party for their efforts as the Defendants argue. *Id.*

In addition to their argument that they should be compensated simply because they defended this action, the Defendants argue that they furthered the purposes of the Copyright Act

---

[9] The Defendants offer the Court many incorrect assertions of fact throughout their brief. If these assertions were supportable, Rottlund respectfully submits that the Defendants would have provided the Court with citations to a factual record. For example, the Defendants argue Rottlund is responsible for the length of the Court's docket in this case and the transcribed monthly Status Conferences conducted by Magistrate Judge Nelson. As the Court has previously recognized through its published decision, the Defendants' unreasonable and vexatious conduct is to blame. *The Rottlund Company*, 222 F.R.D. 362. This conduct, which substantially increased the costs of litigation, should not now be rewarded with an attorneys' fees or costs award.

by: (1) ensuring the public's access to creative architectural products; and (2) clarifying the proper boundaries of copyright law. (Defendants' Mem. at 4-7.)

The premise of the Defendants' first argument is that their defense stopped "Rottlund's use of litigation to squelch competition" and prevented Rottlund from obtaining a monopoly in the back-to-back town home market. (*Id.* at 4-5.) However, as discussed above, there is no evidence to support the Defendants' premise. Moreover, simply because the jury concluded in this one highly fact specific instance that the Defendants did not infringe the total look and feel of Rottlund's Villa II copyrights does not diminish the validity or enforceability of Rottlund's valid copyrights in any manner whatsoever. In short, the public has no less or greater access to the works protected by Rottlund's valid and enforceable copyrights now than it did prior to the commencement of this action.

The premise of the Defendants' second argument is that they successfully challenged and defeated Rottlund's claim that its copyrights protect the total look and feel of its designs. (Defendants' Mem. at 6-7.) The premise of this argument is also flawed. As the Court is well aware, the Defendants' repeated unsuccessful challenges to Rottlund's claim were costly. The Court specifically held that these challenges "boil[] down to a dissatisfaction with the state of Eighth Circuit law." (Order, 10/19/04 at 5.) In addition, since the jury was instructed that Rottlund's copyrights protect the total look and feel of its copyrighted designs, it is Rottlund, not the Defendants, who successfully and clearly demarcated the proper boundaries of copyright law for future cases.

This factor, like the others, weighs heavily in Rottlund's favor and against awarding the Defendants attorneys' fees. *See*, *e.g.*, *Quinn*, 23 F.Supp.2d at 752 (denying defendant attorneys' fees award because the Copyright Act is "better served when plaintiffs are not unduly penalized

for bringing potentially successful infringement claims, even if such claims are ultimately unsuccessful); *Bergman*, 985 F.Supp. at 1484 (denying defendant attorneys' fees award because plaintiffs should not be discouraged from seeking to protect their rights under the Copyright Act); *Kebodeaux v. Schwegmann Giant Super Markets, Inc.*, 33 U.S.P.Q.2d 1223, 1224 (E.D. La. 1994) (plaintiffs should not be deterred from bringing infringement actions when they have good faith reason to believe their copyrights have been infringed).

Based upon the application of the factors courts consider when evaluating attorneys' fees in cases like this one, Rottlund respectfully requests that the Court deny Defendants' motion for attorneys' fees in its entirety.

## II. ALTERNATIVELY, ROTTLUND SHOULD BE PERMITTED TO EVALUATE AND CHALLENGE THE DEFENDANTS' ALLEGED DOCUMENTATION SUPPORTING THEIR MOTION FOR ATTORNEYS' FEES AND COSTS BEFORE ANY AWARD IS GRANTED.

The Defendants argue that the nearly $5 million in attorneys' fees and $750,000 in costs they seek to recover are reasonable based upon their *in camera* documentation filed with the Court. (Defendants' Mem. at 14-21.) Since the Defendants filed their allegedly supportive documentation *in camera* and they bear the burden of proof, the Court should strike the Defendants' motion as they have deprived Rottlund the right to meaningfully challenge any fee or cost award if the Court is inclined to grant either.

"While not required in every case, an evidentiary hearing, or at the very least an opportunity to submit evidence, is necessary to determine the propriety of a fee award if it is evident that the material facts necessary for those determinations are genuinely in dispute and cannot be resolved from the record." *Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 147 (2nd Cir. 2001) (reversible error to award attorneys' fees without providing the party subject to paying the fees the opportunity to present evidence challenging the

propriety and amount of the fees sought). While Rottlund does not seek an evidentiary hearing, it does request, if the Court is inclined not to strike the instant motion and to grant the Defendants any attorneys' fees or costs, the opportunity to receive, and challenge where appropriate, the *in camera* filings.

If the Defendants filed the required documentation to support their cost petition and they are truly seeking to tax only recoverable costs, the cancelled checks and receipts necessary to support the enumerated costs are not subject to the attorney-client privilege. Moreover, Rottlund is aware of at least one instance where a Defendant – Town & County Minnesota – has refused to pay a $2,700.00 invoice for copying expenses incurred at the Defendant's request. (Handler Aff. at ¶¶ 6-13 and Exs. A-E.) If any Defendant, like this one, is seeking to recover a cost it did not incur, Rottlund deserves the opportunity to bring it to the Court's attention.

Similarly, if the Defendants seek to recover the same costs, Rottlund deserves the opportunity to bring this to the Court's attention. As the Court knows, Town & Country Homes hired three law firms to represent it in this action, lead counsel from Illinois and two Minnesota law firms. If these Defendants seek to recover duplicative costs associated with this representation decision, they should not be permitted to do so. Likewise, in connection with the sanction the Court issued against Town & Country and its counsel, the Court ordered local counsel to assume an active role in discovery. (Handler Aff. at ¶ 14 and Ex. F.) If Town & County seeks attorneys' fees and costs in connection with its local counsel obligations and related sanction, or any of the costs associated with the monthly Status Conferences the Court had to conduct, Rottlund deserves the opportunity to challenge this impropriety.

In addition, if a Defendant seeks to recover costs that have been borne by another Defendant in connection with their joint-defense agreement or assumed by another Defendant as

a result of the Defendants' settlement agreement reached on the eve of trial, this Defendant cannot now seek to recover those costs a second time.

Likewise, in connection with their attorneys' fees argument, the Defendants argue that their hourly rates and amount of time on the case are reasonable. (Defendants' Mem. at 14-16.) Yet, the Defendants never disclose the purported reasonable rate or amount of time spent on the case. (*Id.*) In addition, Town & Country Homes' Illinois counsel is comparing its hourly rate to Chicago hourly rates, which are notoriously higher than Minneapolis hourly rates and are not reasonable in this community. *See*, *e.g.*, *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 532 (8th Cir. 1999) (a reasonable hourly rate relates to the local market rate). Similarly, its Minnesota counsel is comparing its hourly rate to Merchant & Gould, an intellectual property boutique law firm that commands a higher hourly rate than a general practice, full service law firm. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (reasonable hourly rates should be calculated according to similar services by lawyers of reasonably comparable skill, reputation and experience in the local community).

The Defendants cite a few cases which they claim "provide a benchmark for comparing to this case and demonstrate that the requested award is reasonable." (Defendants' Mem. at 18.) For instance, the Defendants cite *Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, 2004 WL 123413 (N.D. Iowa 2004).[10] However, *Goss* involved an award of attorneys' fees pursuant to the Antidumping Act of 1916, 15 U.S.C. § 72, which "codifies an award of attorneys' fees for a party who prevails on a dumping claim;" it was not a copyright case where attorneys' fees and costs are discretionary with the court. 2004 WL 123413 at *1. The Defendants also cite

[10] The Defendants also cite *Yankee Candle*, 140 F.Supp.2d 111, which Rottlund has already distinguished above.

*Religious Technology Center v. Scott*, 1996 WL 171443 (9th Cir. 1996).[11] However, the *Scott* court awarded the defendant attorneys' fees under the Copyright and Lanham Acts because it found the plaintiff abused the federal court system by using it to destroy an opponent rather than resolve an actual dispute, brought its claims in bad faith to harass the defendant and engaged in highly questionable litigation tactics. 1996 WL 171443, *5.[12] *Scott* is hardly persuasive given the facts and the Defendants' conduct in this case.

Rottlund respectfully suggests that these are only a few examples of potentially improper requests for attorneys' fees and costs which the Defendants may have made in their petition. If the Court is inclined to award the Defendants either attorneys' fees or costs, Rottlund respectfully requests the opportunity to receive, and challenge where appropriate, the *in camera* filings before such an award is granted.

## III. IT APPEARS THAT THE DEFENDANTS' SEEK TO RECOVER COSTS THAT ARE NOT TAXABLE.

Like their *in camera* documentation submitted to the Court to purportedly establish the reasonableness of the attorneys' fees they seek to recover, the Defendants also filed their petition to recover nearly $750,000.00 of alleged taxable costs *in camera*. Thus, Rottlund has been deprived the right to meaningfully challenge the specific costs sought by the Defendants. Nonetheless, it is clear that their petition is significantly flawed on its face as the Defendants failed to cite 28 U.S.C. § 1920 and did not even refer to the Bill of Costs Guideline for the

---

[11] Lastly, the Defendants cite *Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir. 1996). The fee award granted by that Court was based on an analysis of the factors discussed above in detail, but the outcome was entirely different than it should be in this case given the very different factual background and circumstances concerning application of the evidence in this case to these factors.

[12] The *Scott* court also found, like this Court did when it first sanctioned Bloodgood and its counsel and then Pinnacle and its counsel, that the plaintiff destroyed and concealed documents, refused to comply with many court orders, needlessly delayed and multiplied the proceedings, and filed frivolous and offensive motions. 1996 WL 171443, *5.

District of Minnesota in their brief in support of their petition. Thus, it appears the Defendants seek to recover costs that are not taxable.

Federal Rule of Civil Procedure 54(d)(1) states that unless a statute provides or a Court directs otherwise, costs, other than attorneys' fees, are allowed as of course to the prevailing party. Fed. R. Civ. P. 54(d)(1) (2005). However, like attorneys' fees awards, the Copyright Act expressly provides the federal courts with wide discretion concerning the recovery of costs; thus, costs are not allowed as a matter of course in a copyright case. 17 U.S.C. § 505; *National Football League v. PrimeTime 24 Joint Venture*, 131 F.Supp.2d 458, 484 (S.D.N.Y. 2001) (cost awards are discretionary); *Martin v. City of Indianapolis*, 28 F.Supp.2d 1098, 1103 (S.D. Ind. 1998) (district courts enjoy wide discretion regarding cost awards). When evaluating cost petitions, courts consider the same factors discussed above in connection with attorneys' fees awards. *See*, *e.g.*, *Waite*, 12 Fed.Appx. at 336 (affirming district court's denial of costs based on its balancing of the *Fogerty* factors); *Bridgewater Music, Inc. v. Lorenzo*, 255 F.Supp.2d 795, 797 (M.D. Tenn. 2003). Because these factors weigh heavily against awarding attorneys' fees, they also weigh heavily against permitting the Defendants to recover their costs.

If, however, the Defendants are permitted to recover any costs, the costs which they may tax are limited by 28 U.S.C. § 1920. *Pinkham*, 84 F.3d at 294 (taxable costs are limited to the costs expressly identified in § 1920). Section 1920 limits the taxation of costs as follows:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2005). In addition, the District of Minnesota provides guidelines to direct parties in properly filing documents with the Court in support of cost petitions. Although the guidelines are not legal authority and should not be cited as such, these guidelines are nonetheless intended to be instructive and Rottlund must generally rely upon them since the Defendants filed their cost petition *in camera*.

Since the Defendants precluded Rottlund from having a fair opportunity to challenge their cost petition, Rottlund is left with the task of raising questions about the costs which the Defendants seek to tax by highlighting some general rules of law applicable to cost petitions. For example, in this district, fees paid to private process servers, like messengers, do not qualify as taxable costs pursuant to 28 U.S.C. § 1920(1). *See Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985); *Shimek v. Michael Weinig AG*, 2003 WL 328038 (D. Minn. 2003). It is also widely held that expert witness fees are limited by and may not be in excess of the amount set forth in 28 U.S.C. § 1821. *Pinkham*, 84 F.3d at 294; *Artisan Contractors Ass'n of America, Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1039 (11th Cir. 2001). In addition, as the Court's guidelines make clear, travel expenses of counsel, fees for computerized legal research, secretarial services, paralegal services and investigative services are not taxable. Likewise, costs for long distance telephone calls, faxes, messengers, and express mail are not taxable pursuant to § 1920(4) because they are not "exemplification and copies of papers necessarily obtained for use in the case." *Id.*; *Scanlon v. Kessler*, 23 F.Supp.2d 413, 418 (N.D.N.Y. 1998) (expedited mailing, courier services and various transportation costs are not taxable).

Similarly, as the Court's guidelines make clear, costs of deposition transcripts may only be taxed if the deponent testified at trial or the deposition was admitted into evidence. Here, forty-three depositions were conducted over the course of approximately seventy-three different

days during discovery, with the Defendants conducting the substantial majority of them. (Handler Aff. at ¶ 5.) Only nineteen deposed witnesses testified at trial. (*Id.*) Moreover, the Court ordered several depositions to be conducted and required Defendants to bear all of the fees and costs associated therewith. *The Rottlund Company,* 222 F.R.D. 362. (Handler Aff. at Ex. G.) Thus, the Defendants' cost petition is improper if it seeks to tax costs associated with the majority of the depositions conducted in this case.

Since § 505 of the Copyright Act modifies Federal Rule of Civil Procedure 54(d)(1) to provide that a party's recovery of costs, like attorneys' fees, is discretionary with the Court, and based on the Defendants' failure to file their petition consistent with the applicable statues, rules and guidelines of this Court, Rottlund respectfully requests that the Court deny the Defendants' cost petition in its entirety.

## CONCLUSION

Based on the foregoing, Rottlund respectfully requests that the Court deny the Defendants' motion in its entirety.

Dated: March 11, 2005

**WINTHROP & WEINSTINE, P.A.**

s/ David A. Davenport
Craig S. Krummen, #0259081
David A. Davenport, #0285109
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
ddavenport@winthrop.com

**Attorneys for Plaintiff**

2213156v1