Exhibit C

Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.
Lauren MACAN-WIGHTMAN, Plaintiff,
v.
Andre BAJDA and John Bajda, Defendants and Third-Party Plaintiffs,
v.
Gregory John Wightman, Third-Party Defendants.
No. Civ. 5-96309(RLE).

March 26, 1998.

MEMORANDUM ORDER

ERICKSON, Magistrate J.

I. *Introduction*

***1** On March 19, 1998, the Court heard argument on the Plaintiff's Motion for Leave to Amend her Complaint to Substitute Western National Mutual Insurance Company ("Western") as the sole Defendant. At the Hearing on the Motion, the Plaintiff appeared by Tyrone P. Bujold, Esq., Western appeared by Gregory M. Weyandt, Esq., and no appearances were made by or on behalf of the Defendants or the Third-Party Defendant. For reasons which follow, we grant the Plaintiff's Motion.

II. *Factual and Procedural Background*

This action was commenced on October 11, 1996, with the filing of the Plaintiff's Complaint which invoked the Court's diversity of citizenship jurisdiction. As originally prosecuted, the action sounded in tort, as the Plaintiff sought to recover damages for the personal injuries that she claims to have sustained when an automobile, which was being driven by her husband, and in which she was a passenger, collided with a vehicle which was being driven by the Defendant Andrea Bajda.

On November 26, 1996, the Defendants filed their Answer to the Plaintiff's Complaint and, on the following day, they filed a Third-Party Complaint against the Plaintiff's husband, Gregory John Wightman. At the time of the accident, the Wightman vehicle was insured by an automobile insurance policy which was issued by Western and, consistent with the terms of that policy, Western retained Gregory M. Weyandt to represent the interests of the Third-Party Defendant, whose Answer to the Third-Party Complaint was filed on January 24, 1997.

In late January of 1998, on the eve of the Trial in this matter, the Defendants' agreed to settle the Plaintiff's claims against them for $50,000.00, which reflected the limits of the Defendants' automobile insurance policy. As required by Minnesota law, see, *Schmidt v. Clothier,* 338 N.W.2d 256, 263 (Minn.1983), the Plaintiff promptly notified Western-which serves as her underinsured motorist ("UIM") insurance carrier-of the Defendants' settlement offer and, in due course, Western declined to substitute its own settlement draft for the draft which was extended by the Defendants' insurer. As a consequence of Western's election not to substitute its own draft, the Plaintiff was entitled to settle her claim with the Defendants, and to release them from all liability with respect to her tort claims. *Id.,* see also, *Washington v. Milbank Insurance Company,* 562 N.W.2d 801, 803 (Minn.1997); *Employers Mutual Companies v. Nordstrom,* 495 N.W.2d 855, 856 (Minn.1993). We are informed that the Plaintiff, and the Defendants, are in the process of finalizing their settlement, and the Defendants are not a part of the dispute currently before the Court.

In her present Motion, the Plaintiff seeks leave of the Court to amend her Complaint, so as to substitute Western for the Defendants in her original action, in order that she may prosecute her UIM claim against Western with the least amount of expense, and inconvenience, to all concerned. According to the Plaintiff, her $50,000 settlement with the Defendants, has not adequately compensated her for the injuries she assertedly sustained in her accident with the Defendants, thereby giving rise to her UIM claim. While not disputing the Plaintiff's entitlement to assert a UIM claim against it, Western maintains that she cannot bring that claim in Federal Court for, as a result of her settlement with the Defendants, she is unable to demonstrate that the monetary amount of her damages, which remain in controversy, exceeds the $75,000.00 threshold that is necessary if diversity jurisdiction is to attach. See, *Title 28 U.S.C. § 1332(a).*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

III. *Discussion*

*2 In seeking to substitute Western for the Defendants, the Plaintiff relies upon the language of Rule 25(c), Federal Rules of Civil Procedure, which, as here pertinent, provides as follows:

In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

At the Hearing on the Motion, Western expressly disavowed any argument that its substitution, pursuant to Rule 25(c), would be inappropriate, and our own review confirms the correctness of this concession.

A Motion for substitution of parties, under Rule 25(c), falls within the sound discretion of the District Court. *ELCA Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc.*, 53 F.3d 186, 190 (8th Cir.1995); *Froning's Inc. v. Johnston Feed Services, Inc.*, 568 F.2d 108, 110 n. 4 (8th Cir.1978); *Fischer Bros. Aviation, Inc. v. NWA, Inc.*, 117 F.R.D. 144, 145-46 (D.Minn.1987). Rule 25(c) substitution is a procedural device, which is not intended to affect the substantive rights of the involved parties; rather, substitution is " 'designed to allow an action to continue unabated when an interest in a lawsuit changes hands,' rather than requiring the initiation of an entirely new lawsuit." Therefore, as a procedural mechanism, Rule 25(c) does not substantively determine what causes of action survive a transfer of interest but, instead, it provides a substitution procedure for a cause of action which does so survive. *ELCA Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc.*, supra at 191.

In the present action, we agree with the parties that the circumstances here warrant a substitution of Western for the Defendants, so that the Plaintiff may pursue her UIM claim, with the least inconvenience, and expense, to everyone, and without prejudice to any of the parties' respective interests. In reaching this conclusion, we are closely guided by the governing Minnesota substantive law. Under Minnesota law, underinsured coverage has been typically understood as constituting excess coverage, which is to be utilized only after the cause of action against the insured tortfeasor has been concluded. *Employers Mutual Companies v. Nordstrom*, supra at 856. As explained by the Minnesota Supreme Court:

Underinsured motorist coverage is not an alternative to liability. This is not some optional protection which an injured party can choose in lieu of asserting a claim against an insured tortfeasor. It is merely excess coverage under the liability limit that would be available when damages were uncompensated merely because the tortfeasor carried inadequate liability insurance.

*Johnson v. American Family Mut. Ins. Co.*, 426 N.W.2d 419, 422 (Minn.1988).

In light of these considerations, the Minnesota Supreme Court has determined that an injured claimant, such as the Plaintiff, cannot pursue a UIM claim against her automobile insurer, until the threshold issue of the defendant's asserted liability, in tort, has been resolved. *Washington v. Milbank Insurance Company*, supra at 806; *Employers Mutual Companies v. Nordstrom*, supra at 857-58.

*3 As a consequence, to proceed with a UIM claim against Western, the Plaintiff first had to avail herself of one of two options:

1. pursuing her tort claim against the Defendants to its conclusion at Trial, and then, if the judgment exceeded the liability limits of the Defendants' insurance policy, pursue an action against Western for UIM benefits; or
2. settling her tort claim with the Defendants for "the best settlement" while providing Western with a *Schmidt-Clothier* notice of the settlement, and then maintaining an action against Western for UIM benefits.

*Washington v. Milbank Insurance Company*, supra at 805; *Employers Mutual Companies v. Nordstrom*, supra at 857.

As we have already related, the Plaintiff elected to follow the second of these courses and, accordingly, her UIM claim against Western has now been perfected. Of course, her underlying interest, in obtaining a full recovery for her asserted injuries, remains unchanged. What has been altered is the identity of the entity from whom she can properly seek the full measure of her recovery. Under these circumstances, a substitution of Western, for the original Defendants, is entirely appropriate.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Notably, the proposed substitution will not affect either parties' substantive rights since, if substitution were to be denied, the Plaintiff would remain at liberty to bring her UIM action against Western in a separate proceeding, in State or Federal Court. Since the matter has already been fully discovered in this action, and as counsel for both the Plaintiff and Western have participated in this action since its infancy, we believe that the substitution of Western, for the original Defendants, is here warranted.FN1

FN1. While counsel for Western also represented counsel for the Third-Party Defendant in this action, we are advised that the Third-Party Defendant does not object to counsel's representation of Western, as against the Plaintiff. *February 6, 1998 Affidavit of Mullen J. Dowdal*, at ¶ 8. This agreement is essential as, for these purposes, the Third-Party Defendant had interests, at the inception of this action, which appear to have been in conflict, with those of the Plaintiff.

Notwithstanding its concession that its substitution for the original Defendants is procedurally appropriate, Western opposes the Plaintiff's Motion because, in its view, she has not demonstrated that an amount in excess of $75,000.00 remains in controversy. In this respect, Western emphasizes the fact that the Plaintiff has agreed to accept a settlement amount of $50,000.00 from the Defendants, and that she has also received $18,226.14 in no-fault insurance benefits. In light of these recoveries, Western argues that the Plaintiff cannot demonstrate, by a preponderance of the evidence, that she has suffered damages which satisfy the diversity jurisdiction threshold, since any recovery which the Jury might award to the Plaintiff would be subject to an offset in the total amount of the proceeds that she has already recovered from the Defendants, and through her receipt of no-fault benefits. According to Western, the Jury would have to award the Plaintiff a recovery in excess of $143,226.14-a sum which represents $75,000.00 + $50,000.00 + $18,226.14-in order for this Court's diversity jurisdiction to be properly invoked, and Western seriously questions the Plaintiff's ability, on the basis of the facts known to it, to recover that size of a damages award.

*4 The difficulty with this argument is that it ignores the well-established principle that the requirements for diversity jurisdiction need only be satisfied at the time that the action was filed. *Freeport-McMoRan Inc. v. KN Energy, Inc.*, 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991); *Rosado v. Wyman*, 397 U.S. 397, 405 n. 6, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). As a corollary to this principle, it is equally well-settled that, if the amount in controversy exceeds the jurisdictional amount when a suit is first filed in Federal Court, the fact that subsequent events may reduce the total amount in controversy will not divest the Court of diversity jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Lynch v. Porter*, 446 F.2d 225, 228 (8th Cir.1971), cert. denied, 404 U.S. 1047, 92 S.Ct. 711, 30 L.Ed.2d 739 (1972). Since, in this instance, Western appears to concede that the amount in controversy requirement was satisfied at the time that this action was filed, any subsequent events, which may have reduced the amount in controversy-including the Plaintiff's apparent settlement of her claims with the Defendants, and her receipt of no-fault benefits-will not operate to divest the Court of its properly invoked diversity jurisdiction.FN2

FN2. Our analysis is not altered by the proposed substitution of Western for the Defendants under Rule 25(c). In this respect, we draw our guidance from the Court's decision, in *Freeport-McMoRan Inc. v. KN Energy, Inc.*, 498 U.S. 426, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991). In that case, jurisdiction was similarly premised upon diversity of citizenship and, after the Complaint was filed, the District Court allowed a limited partnership to be substituted-per Rule 25(c)-for the plaintiffs, although certain of the substituted, limited partners enjoyed the same State citizenship as did the Defendant. On appeal, the Court of Appeals ordered the suit to be dismissed, reasoning that, "although complete diversity was present when the complaint was filed,' the addition of [the limited partnership] as a plaintiff destroyed jurisdiction." *Id.* at 427 [internal citation omitted]. Upon the Petitioners' request for review, the Supreme Court granted *certiorari*, and summarily reversed the Court of Appeals' Order of dismissal. In so doing, the Supreme Court reiterated the rule that, "if [diversity] jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Id.* at 428. Although *Freeport-McMoran* is not a precise fit with the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

circumstances presented here, we find its reasoning to be closely analogous. Stated succinctly, if a Rule 25(c) substitution, which adds a non-diverse party, does not operate to defeat diversity jurisdiction which has been validly invoked, then it is self-evident that diversity jurisdiction is not divested by a substitution whose effect is to reduce the amount in controversy, to an amount which is below the jurisdictional threshold.

Although this analysis is fully dispositive of Western's objection to the proposed substitution, we further express our view that, under the governing law, the Plaintiff has adequately alleged a jurisdictional amount which is in excess of the threshold. In this respect, a Complaint which alleges, in good faith, a jurisdictional amount, in excess of $75,000.00, suffices to confer diversity jurisdiction upon the Court. *Larkin v. Brown,* 41 F.3d 387, 388 (8th Cir.1994). However, where the defendant challenges the amount alleged as insufficient, legally or factually, then the party invoking diversity jurisdiction must prove the requisite amount by a preponderance of the evidence. *State of Mo. ex rel. Pemiscot Cty. v. Western Surety Co.,* 51 F.3d 170, 173 (8th Cir.1995). Accordingly, "[o]nce jurisdiction is challenged, 'if, from the proofs, the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.' " *Id.,* quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* supra at 289 [modification in original].

Applying this stringent standard, we are unable to say, to a "legal certainty," that the Plaintiff will be unable to prove damages in excess of $75,000.00. Here, we are presented with uncontroverted evidence that the Plaintiff has already incurred more than $30,000.00 in medical expenses, as well as over $26,000.00 in lost wages. *March 17, 1998 Affidavit of Mullen J. Dowdal, Exhibits A and B.* In addition, we are advised that the Plaintiff has obtained medical opinions to the effect that she has suffered a permanent disability, as a result of the injuries she claims to have sustained in the automobile accident, and that she intends to proffer, at Trial, evidence of "significant non-economic damages" which she has suffered and, assertedly, will continue to suffer in the future. In light of these offerings, which are substantiated by sworn averments, we are not persuaded, to a legal certainty, that the Plaintiff will not be able to satisfy the diversity of citizen monetary threshold at the time of Trial.

*5 Therefore, we grant to Plaintiff's Motion for leave to amend her Complaint so as to substitute Western as the sole named Defendant in this matter. FN3

FN3. Lastly, as a housekeeping matter, we deny the Defendants' outstanding Motions *in limine* to exclude certain evidence from the Trial in this matter. As is related in the text of this Order, the Plaintiff has settled her claims with the Defendants, thereby rendering moot the Defendants' Motions *in limine.* In an abundance of caution, however, our denial of the Motions *in limine* is without prejudice to their refiling, should subsequent circumstances so warrant.

NOW, THEREFORE, It is-

ORDERED:

1. That the Defendants' Motions *in limine* [Docket No. 30] are DENIED, without prejudice.

2. That the Plaintiff's Motion for Leave to Amend her Complaint to Substitute Western National Mutual Insurance Company [Docket No. 41] is GRANTED.

3. That the Plaintiff is directed to file her Amended Complaint, in substantially the same form as that appended to her Motion, and Western is directed to serve an Answer, or to otherwise respond, as required by the governing Rules of Civil Procedure.

4. That the Plaintiff's Motion for Leave to Serve and File a Reply Brief [Docket No. 45] is GRANTED.

D.Minn.,1998.
Macan-Wightman v. Bajda
Not Reported in F.Supp., 1998 WL 333959 (D.Minn.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit D

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

THE ROTTLUND COMPANY, INC.,

Plaintiff,

v.

PINNACLE CORPORATION, ET AL.,

Defendant.

Case No. 01-1980 ADM/AJB

NOTICE OF
SETTLEMENT CONFERENCE

---

A settlement conference will be held on September 27, 2006 at 9:00 a.m., in Suite 720, 180 East 5th Street, St. Paul, Minnesota, before the undersigned United States Magistrate Judge.

Counsel who will actually try the case and each party, armed with full settlement discretion, shall be present. If individuals are parties to this case, they shall be present. If a corporation or other collective entity is a party, a duly authorized officer or managing agent of that party shall be present. This means that each party must attend through a person who has the power to change that party's settlement posture during the course of the conference. If the party representative has a limit, or "cap" on his or her authority, this requirement is not satisfied. If an insurance company is involved, the responsible agent must be present.

In order to encourage the parties to address the issue of settlement on their own, counsel must confer in person at least ten (10) days prior to the date of the settlement conference, to engage in a full and frank discussion of settlement. If the case does not settle, each attorney shall submit to the undersigned at least one week before the date of the settlement conference a confidential letter setting forth the parties' respective settlement positions before the meeting, their respective positions following the meeting and a reasoned,

itemized analysis justifying their client's last stated settlement position. **This letter shall be submitted to the undersigned by e-mail to the following address: boylan_chambers@mnd.uscourts.gov.**

Failure of any lawyer to submit this letter will result in the settlement conference being rescheduled and the imposition of an appropriate sanction on the attorney whose failure caused the conference to be postponed. Additional sanctions may be imposed for failure to comply with any of the other foregoing instructions.

Dated: August 8, 2006

s/ Arthur J. Boylan
ARTHUR J. BOYLAN
United States Magistrate Judge

Exhibit E

Fredrikson & BYRON, P.A.

August 31, 2006

**VIA EMAIL**
The Honorable Arthur J. Boylan
United States Magistrate Judge
United States District Court
180 East 5th Street, Room 700
St. Paul, MN 55101

Re: Rottlund Homes, Inc. v. Pinnacle Corporation, et al.
Civil No. 01-1980 (ADM/AJB)

Dear Magistrate Judge Boylan:

Defendants submit this letter in response to the letter dated August 22, 2006 from Rottlund Homes, Inc. Defendants agree that additional discovery by both sides may be necessary as part of preparing for the trial in this matter and believe that a status conference to discuss adopting a procedure for the additional discovery is appropriate.

However, Defendants specifically oppose Rottlund's attempt to seek a motion to compel by letter, purportedly in the context of settlement discussions, that is not relevant to any matter currently in dispute and not the subject of any pending discovery requests. Hovstone Properties Illinois L.L.C., a Delaware limited liability company, is successor-in-interest to Pinnacle Corporation d/b/a/ Town & Country Homes. Hovstone Properties Minnesota L.L.C., a Delaware limited liability company, is successor-in-interest to Town & Country Homes, Inc. Fredrikson & Byron, P.A. is now legal counsel for both entities. This "series of transactions," as Rottlund characterizes it, is not the subject of this lawsuit and not relevant to any claim or defense.

Sincerely,

Todd A. Wind
*Attorney at Law*
**Direct Dial:** 612.492.7046

cc: Robert R. Weinstine (via e-mail)
Holly J. Newman (via email)

Attorneys & Advisors
main 612.492.7000
fax 612.492.7077
www.fredlaw.com

Fredrikson & Byron, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota
55402-1425

MEMBER OF THE WORLD SERVICES GROUP
*A Worldwide Network of Professional Service Providers*

OFFICES
Minneapolis, London, & Monterrey, Mexico

Exhibit F

WELCOME TO THE OFFICE OF THE **Minnesota** Secretary of State Online Access

PROfile

DA Home UCC Business Services Account Session Briefcase Help/FAQs About Login

**BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY**

| | | | |
|---|---|---|---|
| **Filing Number:** | 1279999-3 | **Entity Type:** | Assumed Name |
| **Original Date of Filing:** | 3/17/2005 | **Entity Status:** | Active |
| **Entity Date to Expire:** | 03/17/2015 | | |

**Name:** Town & Country Homes

**Address:** 7615 Smetana Ln #180
Eden Prairie, MN, 55344

Additional Entity Detail | Return to Search List | New Search

DA Home | OSS Home | Contacts | Privacy Policy | Terms & Conditions

Use of this site and services indicates your acceptance of the Terms & Conditions of Use.
©Copyright 2001 , Minnesota Office of the Secretary of State. All Rights Reserved.

WELCOME TO THE OFFICE OF THE Minnesota Secretary of State Online Access



## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 1441543-2 | **Entity Type:** | Assumed Name |
| **Original Date of Filing:** | 7/20/2005 | **Entity Status:** | Active |
| **Entity Date to Expire:** | 07/20/2015 | | |

| | |
|---|---|
| **Name:** | Town & Country Homes |
| **Address:** | 7615 Smetana Ln #180<br>Eden Prairie, MN, 55344 |

Additional Entity Detail | Return to Search List | New Search



Use of this site and services indicates your acceptance of the Terms & Conditions of Use.
©Copyright 2001 , Minnesota Office of the Secretary of State. All Rights Reserved.




# CORPORATION FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| Entity Name | TOWN AND COUNTRY HOMES OF ILLINOIS, INC. | File Number | 49962541 |
| Status | GOODSTANDING | | |
| Entity Type | CORPORATION | Type of Corp | DOMESTIC BCA |
| Incorporation Date (Domestic) | 01/27/1972 | State | ILLINOIS |
| Agent Name | ROBERT P BOHNENSTIEHL | Agent Change Date | 03/07/1990 |
| Agent Street Address | #6 SUGAR LANE | President Name & Address | ROBERT P BOHNENSTIEHL 6 SUGAR LN COLLINSVILLE 62234 |
| Agent City | COLLINSVILLE | Secretary Name & Address | MARGARET M BOHNENSTIEHL SAME |
| Agent Zip | 62234-0000 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 01/09/2006 | For Year | 2006 |

**Return to the Search Screen**

BACK TO CYBERDRIVEILLINOIS.COM